UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

The Archdiocese of Saint Paul and
Minneapolis,

        Debtor.

Bankruptcy Case No. _____

**DEBTOR'S VERIFIED APPLICATION FOR ORDER PURSUANT TO 11 U.S.C. § 327(a), FED. BANKR. P. 2014 AND MINN. BANKR. L.R. 2014-1 AUTHORIZING AND APPROVING EMPLOYMENT AND RETENTION OF BGA MANAGEMENT, LLC D/B/A ALLIANCE MANAGEMENT AS FINANCIAL ADVISOR NUNC PRO TUNC TO THE PETITION DATE**

TO:    United States Bankruptcy Judge and the United States Trustee and other parties in interest identified in Local Rule 2014-1.

    1.    The above-named debtor and debtor-in-possession (the "Debtor" or "Archdiocese") has filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, Title 11, United States Code, and requires representation of financial restructuring consultants in the course of the cases. The Debtor seeks approval of this application for employment of a professional (the "Application") to employ the financial and turnaround consulting firm BGA Management, LLC d/b/a Alliance Management ("Alliance") to continue to assist it as a financial consultant during the case, to perform other consulting services necessary to the Debtor's continuing operations, and to advise on and facilitate the sale of the Debtor's disposable assets.

    2.    This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334, Bankruptcy Rule 5005, and Local Rule 1070-1. This is a core proceeding. The petition in this case was filed on January 16, 2015 (the "Petition Date"). The case is now pending in this Court.

3. This Application arises under 11 U.S.C. §§ 327(a) and 328, and Bankruptcy Rule 2014. This Application is filed under Local Rules 2014-1 and 9013-4. The Debtors seek an order authorizing the employment of Alliance.

4. Information concerning the Debtor's history and business operations, its capital structure, and the events leading up to the commencement of this chapter 11 case can be found in the Affidavit of the Very Reverend Father Charles V. Lachowitzer, Vicar General and Moderator of the Curia (the "Lachowitzer Affidavit"). In further support of this Application, the Debtor respectfully represents as follows:

## BACKGROUND

5. The Debtor seeks to employ Alliance as its financial advisor because of Alliance's expertise in reorganizations under chapter 11 of the Bankruptcy Code and because of the Debtor's familiarity with Alliance. Alliance has been consulting with the Debtor since approximately June 3, 2014. Since that time, the Debtor has paid Alliance a total of $379,196.85, including the bankruptcy retainer. Based on the Debtor's prepetition experience, the Debtor believes that Alliance's consultants are competent and experienced in assisting entities in Chapter 11 and that Alliance's employment is in the best interests of the estate.

6. The Debtor has paid Alliance a retainer of $102,485.33 prior to filing, and has agreed that the firm will hold the retainer in trust for application against its final allowed fees. The Debtor proposes that employment be on an hourly rate, and pursuant to the terms set out in the agreement between the Debtor and Alliance, dated June 3, 2014 (the "Professional Services Agreement") attached hereto as **Exhibit A**, subject to the approval of the Court.

7. Additional background on the qualification of Alliance are contained in the attached Unsworn Declaration of Michael Knight, and incorporated by reference.

## SCOPE OF SERVICES

8. In accordance with the terms of the Professional Services Agreement, Alliance will perform the following services, among others, to the extent they are desired or necessary:

    (a) Analyze and review the business, operations, financial condition and prospects of the Debtor and assist the Debtor in the preparation of schedules and the statement of financial affairs;

    (b) Assist the Debtor in budgeting matters;

    (c) Provide financial advice and assistance to the Debtor;

    (d) Assist the Debtor in evaluating, structuring, negotiating and implementing a restructuring plan;

    (e) Assist the Debtor in preparing for the first meeting of creditors in this case and in meeting its financial reporting obligations in the bankruptcy proceeding;

    (f) Assist the Debtor or participate in negotiations with creditors and other stakeholders;

    (g) Participate in hearings before the Court with respect to the matters upon which Alliance has provided advice, including, as relevant, coordinating with Debtor's counsel with respect to testimony in connection therewith; and

    (h) Assist the Debtor draft, analyze and prepare business plans and alternative proposals, and, as requested, assist in the preparation of the Plan of Reorganization.

9. The above description of the Professional Services Agreement is intended to be a summary and in the event it is inconsistent the terms of the Professional Services Agreement will control.

10. The Debtor requires Alliance's advice and services in order to maximize the value of its estate. All of the services that Alliance will provide to the Debtor will be undertaken at the request of the Debtor and will be appropriately directed by the Debtor so as to avoid duplicative efforts among the professionals retained in this case.

**COMPENSATION**

11.     As more fully set out in the Professional Services Agreement, and subject to this Court's approval, Alliance will submit its bills monthly to the Debtor, and will be paid in accordance with local bankruptcy practice, which is governed by paragraph 9 of this Court's Instructions for Filing a Chapter 11 Case. Alliance will be reimbursed its fees and paid for work performed on the basis described in the Professional Services Agreement. Alliance's professionals will charge hourly rates ranging from $285 to $495, subject to normal and customary increases which occur in January of each calendar year.

12.     The Professional Services Agreement provides that the Debtor shall reimburse Alliance's reasonable business and travel expenses, including reasonable attorneys' fees incurred in the preparation for or work in bankruptcy, processing fee applications, providing litigation support, and similar legal issues arising in the course of the engagement.

**INDEMNIFICATION AND LIMITATION OF LIABILITY**

13.     In addition, the Debtor has agreed to indemnify Alliance if, in connection with any work, service or matters subject to the Professional Services Agreement, Alliance or its officers, directors, employees or agents become involved in any capacity in any action or legal proceeding, pending or threatened.  The Debtor agrees to (a) reimburse reasonable legal fees, disbursement and other expenses and (b) defend, indemnify and hold harmless Alliance against any and all losses, claims, damages, and liabilities.

14.     Debtor and Alliance have agreed that Alliance's liability for any and all claims for damages that Debtor may have against Alliance for breach of contract and/or simple negligence, shall be limited in their aggregate amount to the dollar value of the fees actually paid to Alliance by Debtor for professional services rendered.  Alliance and the Debtor have further agreed that the indemnity clause and limitation of liability shall not apply to the extent that the action or

legal proceeding is a result of a breach of Alliance's fiduciary duty or from the bad faith, self dealing, gross negligence, or willful misconduct of Alliance or any of its directors, officers, employees or agents as determined by a legal tribunal of appropriate jurisdiction, and that all requests for payment of indemnification hereunder shall be submitted to the Bankruptcy Court and approved after notice and hearing as reasonable in light of the situation. Any reimbursement of attorney fees hereunder are subject to the standards of 11 U.S.C. § 330. Similar indemnity agreements with similar limitations have been previously approved in large Chapter 11 cases in this district. See, e.g., In re Lyman Holding Company, Case No. 11-45190, ECF No. 140 (Bankr. D. Minn. Aug. 30, 2011) (order approving employment of financial consultant for debtors with nearly identical indemnification language).

15.   The Debtor's agreement to the indemnity is reasonable because the indemnity is a precondition to Alliance's willingness to enter into the Professional Services Agreement. The Debtor and Alliance believe that the indemnity provisions are customary and reasonable for restructuring and financial advisory services, both out-of-court and in chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions that are customary in chapter 11 cases. See id.

**MISCELLANEOUS**

16.   In accordance with paragraph 9 of this Court's Instructions for Filing a Chapter 11 Case, the Debtor proposes that (a) Alliance be authorized to schedule a hearing on its applications for allowance of fees and reimbursement of expenses not more than once every ninety (90) days, (b) Alliance be allowed to submit regular monthly bills to the Debtor, with copies to the Committee of Unsecured Creditors and the Office of the United States Trustee, and (c) the Debtor be authorized to pay up to 80% of such fees and 100% of costs on a monthly basis, subject to later court approval under Section 330 of the Bankruptcy Code.

17. The Debtor has reviewed the Unsworn Declaration of Michael Knight, and believes that the employment of Alliance is in the best interests of its estate and that Alliance does not represent or hold or represent any interest adverse to the estates, and is "disinterested" within the meaning of Section 327(a) of the Bankruptcy Code. In the event the United States Trustee, the Court, or other party asserts or is concerned that Alliance is not qualified to represent the Debtor, the Debtor requests that a hearing be scheduled.

18. The Debtor believes the granting of this Motion is in the best interests of the Debtor and is in the best interests of all creditors and other parties in interest in this Chapter 11 proceeding. The Debtor's decision to enter into the Professional Services Agreement is an appropriate exercise of the Debtor's business judgment and will greatly benefit the Debtor's estate and creditors. In this case, the Debtor requires the stability and expertise that financial restructuring and turnaround management professionals can provide. The requested relief is the best – and most cost-efficient – option available to maximize the value of the assets of this estate. The Debtor seeks approval of the employment for the purpose of preserving the value of the Debtor's assets consistent with the obligations imposed pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

19. No previous application has been made for employment of a financial consultant. The Debtor is contemporaneously making application for employment of Chapter 11 counsel.

20. This application has been served on the parties set forth in Local Rule 2014-1(a).

WHEREFORE, the Debtor requests an order approving the employment of Alliance as financial restructuring consultant.

Dated: __1/16__, 2015                   ARCHDIOCESE OF SAINT PAUL
                                    AND MINNEAPOLIS

                                    By: _____

                                    Its: _____CFO_____

## Exhibit A

Professional Services Agreement



601 Carlson Parkway
Carlson Towers, Suite 110
Minneapolis, MN 55305
952-475-2225 [Main]
952-475-2224 [Fax]
www.alliancemgmt.com

## Professional Services Agreement

**Client: Archdiocese of St. Paul and Minneapolis**     **Client File: 214.07-ASPM:01(TA)**

This Agreement, dated and entered into this 3rd day of June, 2014, by and between **The Archdiocese of St. Paul and Minneapolis** (hereinafter **"Client"**), 226 Summit Avenue, St. Paul, Minnesota 55102-2197, and BGA Management, LLC d/b/a **Alliance Management** (hereinafter **"Consultant"**), Carlson Towers, Suite 110, 601 Carlson Parkway, Minnetonka, MN 55305, sets forth the terms and conditions of the business relationship of the parties hereto.

### 1. Consulting Assignment.

**1.1    Retention of Consultant, Access to Information and Cooperation.** Client acknowledges it is retaining Consultant for the purpose of assisting Client with bankruptcy planning, general financial planning, the possible restructuring of Client's general finances and/or the implementation of other strategic options. Client agrees to provide Consultant access to complete and timely information concerning Client's finances and operations and to cooperate fully with Consultant on Consultant's work.

**1.2    General Scope of Work.** Consultant will advise Client regarding the proposed reorganization of Client's finances, and work with Client, upon Client's request, to complete the following:

  a. Research and assess Client's financial and operational condition, including:
  (1) interviewing key employees; and,
  (2) reviewing financial, operations and business data.
  b. Assist Client with the preparation of schedules, documents, forecasts, analysis and other financial materials to be used in Client's business and anticipated bankruptcy.
  c. Assist Client in the review of its business and financial model, forecast and preparation of monthly budgets, which work may include the following:
  (1) a review and evaluation of all sources of revenue;
  (2) a review of all operating expenses;
  (3) a detailed asset analysis, including leasehold interests;
  (4) a review of Client's cash management disciplines; and,
  (5) an overview of Client's financing options.
  d. Upon request, assist in communication with Client's creditors, professional advisors, claimants, adverse parties and others have a legal or business relationship with Client.
  e. Attempt to assist and advise Client on such other matters as Client may request, including, but not limited to, a possible plan of reorganization, negotiation with claimants and/or restructuring of various aspects of the Client's enterprise.

### 2.   Compensation.

**2.1    Professional Fees.** Consultant's work, as set forth in Section 1., above, will be performed for the following fees: consulting services shall be billed by Consultant and paid for by Client at the rate of $285 per hour for Brock Kline, $365 per hour for Dave Burke, $395 per hour for Chris Tomas, $495 per consulting hour for Michael Knight. Other professionals may perform work for Client with

Client's prior written consent; such persons shall be billed at their then current hourly rates. Client agrees to provide Consultant with retainer deposits in minimum increments of $25,000 for future services requested, with such deposits paid in advance of Consultant providing services. To ensure a smooth flow of work, Consultant shall remit a new invoice any time the retainer balance is less than $5,000. Consultant reserves the right to stop services if Client fails to keep a retainer account with Consultant's firm. Fees left on deposit that remain unearned by Consultant will be promptly returned to Client at the conclusion of the assignment, or upon written request.

**2.2     Expenses.** In addition to Consultant's fees, Client shall reimburse Consultant for Consultant's reasonable business expenses associated with Consultant's work hereunder, including reasonable attorneys fees incurred in the preparation for or work in bankruptcy, processing fee applications, providing litigation support, and similar legal issues arising in the course of Consultant's engagement herein. Any reimbursement of Consultant's attorneys fees shall be subject to the standards of Bankruptcy Code §330. Mileage shall be billed the prevailing IRS rate. Parking, long distance telephone, cell phone, photocopies, and other reasonable expenses shall be reimbursed at Consultant's cost. Client agrees that expense reimbursement will be paid upon receipt of invoices therefore supported by appropriate documentation, unless otherwise ordered by the Bankruptcy Court.

**2.3     Litigation Support.** Should Consultant be required to provide testimony, discovery documents, depositions or other activities related to its work hereunder, Client agrees to fully reimburse Consultant for all its document expenses for providing such litigation support including, but not limited to, out-of-pocket expenses, legal fees, preparation time, and time providing testimony, depositions, affidavits, sworn statements and/or interviews. Consultant's professional time for such work shall be billed hourly at the respective rates listed above.

**2.4     Collection.** A 1.5% per month charge will be added to all delinquent accounts. If Consultant initiates any suit or collection action for non-payment, Consultant shall be entitled to recover its reasonable legal costs, expenses and attorneys fees.

**2.5     Survival.** Client's obligation to pay Consultant's fees and other compensation set forth in this Section 2 shall survive the termination of this Agreement.

**2.6     Court Approval Required.** Consultant acknowledges that in a Chapter 11 reorganization case, its fees and costs are subject to Bankruptcy Court approval and that payment shall be in accordance with local practice.

## 3.     Other Business Terms

**3.1     Retention in Bankruptcy.** In the event of a filing for reorganization under Chapter 11 of the U.S. Bankruptcy Code, Client agrees to use its best efforts to retain Consultant under §328 and the terms of this Agreement.

**3.2     Termination.** Either party may terminate this Agreement upon ten (10) days written notice. Upon termination, Client shall be obligated to pay to Consultant any portion of Consultant's fees that have been earned in part or in full but remain unpaid at the time of such termination, including any Success Fees that may become due subsequent to termination.

**3.3     Indemnity and Limitation of Liability.** If, in connection with any work, services or matters that are the subject of this Agreement, Consultant (for purposes of this section, "Consultant" shall include both Consultant and its officers, directors, employees and agents) becomes involved in any capacity in any action or legal proceeding, pending or threatened, Client agrees (a) to reimburse Consultant for the reasonable legal fees, disbursements, and other expenses including the cost of investigation and preparation incurred by Consultant as such fees, disbursements and expenses are incurred, and (b) Client agrees that it shall defend (with counsel selected by Consultant), indemnify and hold Consultant harmless, against any and all losses, claims, damages, liabilities, joint or several, to which Consultant may become subject arising out of any such claim, action or legal proceeding, including, but not limited to, employee or government claims (and any fines or penalties relating thereto) for failure to pay any employee withholding obligation or benefits; claims of any creditor, employee, supplier or other party relating in any way to a claim of decline, damage or

2

financial impairment of Client's enterprise; or, Client's failure to pay any obligation when due. Client further agrees that Consultant's liability for any and all claims for damages that Client may have against Consultant shall be limited in their aggregate amount to the dollar value of the fees actually paid to Consultant by Client for professional services rendered; however, this limitation of liability does not apply in cases where it has been determined by a tribunal of appropriate jurisdiction that the proximate cause of Client's damage was Consultant's negligence or willful intent. The parties agree that this Section 3.3 is subject to the review and approval of the bankruptcy court.

**3.4  Miscellaneous**

3.4.1  Consultant shall receive general direction from Tom Mertens and Joe Kueppers.

3.4.2  The parties agree that any and all disputes between them, and any claim by either party that cannot be amicably settled, shall be determined solely and exclusively by binding arbitration in accordance with the rules of the arbitration adopted by Ramsey Court District Court, unless such a dispute arises after Client is in bankruptcy, in which case the Bankruptcy Court would retain jurisdiction. This Agreement shall be governed by the laws of the State of Minnesota, and any disputes relating to this Agreement shall be venued in the County of Ramsey, State of Minnesota. Nothing contained in this Agreement shall bar the right of either party to obtain injunctive or preliminary injunctive relief under the usual rules of equity against acts or threatened conduct that will cause damage or irreparable harm to the moving party.

3.4.3  Client agrees that all work papers prepared by Consultant are the property of Client, with the exception of Consultant's notes. Copies of Consultant's work product held by Client shall be made available to Consultant at a reasonable cost and upon reasonable request.

3.4.4  Consultant does not provide legal advice or legal services of any kind and Client agrees to rely upon advice from its own legal counsel as to all legal matters.

3.4.5  Client acknowledges that it is entering into this Agreement without any promises or representations by Consultant or any third party as to the actual results that will be achieved by Consultant or through this engagement.

3.4.6  There shall be no changes or modifications to this Agreement, and none shall be implied or binding, unless both parties agree to such changes or modifications in writing.

3.4.7  Facsimile copies of this Agreement, signed in counterpart, shall be considered for all purposes, including delivery, the same as originals.

3.4.8  The provisions of this Agreement shall, where applicable, survive the expiration period of this Agreement, including any extensions hereof.

3.4.9  This Agreement embodies the whole and entire agreement between Client and Consultant. There are no promises; terms, conditions or obligations other than those contained herein. This Agreement shall supersede all previous agreements, communications and representations made by or between the parties with or to one another.

**CONSULTANT**
*Alliance Management*

By: _____
Its: President

**CLIENT**
*Archdiocese of St. Paul and Minneapolis*

By: _____
Its: _____ CFo

Archdiocese of MSP – PSA v2 – 6 2 14.doc

3

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

The Archdiocese of Saint Paul and Minneapolis,

       Debtor.

Bankruptcy Case No. _____

**UNSWORN DECLARATION OF MICHAEL KNIGHT IN SUPPORT OF APPLICATION TO EMPLOY BGA MANAGEMENT, LLC D/B/A ALLIANCE MANAGEMENT**

Michael Knight makes the following declaration in support of the application of the above-named debtor (the "Debtor") to employ BGA Management, LLC d/b/a Alliance Management ("Alliance") as business and financial restructuring consultant and in compliance with Bankruptcy Rule 2016(b), and Local Rule 1007-1.

1. I am the founder and president of the financial restructuring and turnaround management consulting firm of Alliance. I make this Unsworn Declaration in support of the Debtor's application to employ Alliance in this case.

2. Alliance is a financial restructuring and turnaround management firm that provides corporate renewal, management advisory and investment banking services to small and middle-market companies. The principals of Alliance are active members in the Turnaround Management Association, the American Bankruptcy Institute, the Minnesota State Bar Association Bankruptcy Section, and the Hennepin County Bar Association, among other organizations. Alliance has successfully completed hundreds of engagements in a wide variety of industries.

3. Alliance has worked with the Debtor on financial restructuring matters since June 3, 2014. Accordingly, Alliance is intimately familiar with all aspects of the Debtor's operations and finances.

4. Alliance has run a conflicts search with respect to the Debtor and its creditors. Alliance requires its professionals, before accepting the representation of a new client, or the representation of an existing client in a new matter, to perform a conflict check. In this case, inquiry was made of the professionals working for Alliance regarding any connections or conflicts with secured creditors, the twenty largest unsecured creditors of the Debtor, and the Debtor. In addition, a search has been performed of Alliance's records of prior and current engagements for any potential conflicts.

5. Alliance has never been an elected officer or director of the Debtor, and no member of Alliance is an insider of the Debtor.

6. Based on the above-referenced conflicts check and to the best of my knowledge, Alliance does not hold or represents any interest adverse to the Debtor's estate, and does not have any connection with the Debtor, any creditors of the estate, any party in interest, their respective attorneys or accountants, the United States Trustee, or any person employed in the Office of the United States Trustee, except as set out below. In addition, Alliance does not employ any person that is related to a judge of this Court or the United States Trustee for this region, within the meaning of Bankruptcy Rule 2014, except as stated below:

(a) Alliance has been asked to perform an analysis of a parish savings account program managed by and for another Diocese. This work is unrelated to any matter associated with the Debtor.

7. None of the above-noted relationships constitute actual conflicts, but may be "connections" within the meaning of Rule 2014, and are therefore disclosed. The Debtor has been advised of the above and has waived any conflicts.

8. There may be other persons within the scope of Bankruptcy Rule 2014 that, unknown to me, Alliance has represented in particular matters in the past. We agree not to represent such persons who are creditors or other parties in interest in this case while representing the Debtor, without further disclosure. Alliance agrees to update the disclosure information from time to time if and when additional parties with an interest in or a relationship with the Debtor are identified by the Debtor, in writing, to Alliance.

9. Except as the Court may determine from the circumstances disclosed above, Alliance does not hold or represent any interest adverse to the estate, and Alliance is a "disinterested person," within the meaning of 11 U.S.C. § 327(a).

10. Prior to the filing date, the Debtor paid Alliance a retainer of $102,485.33, which the Debtor and Alliance have agreed will serve as a Chapter 11 retainer. Alliance has worked with the Debtor since approximately June 3, 2014 as a financial advisor. Alliance has been paid current on an hourly basis. To the extent that there are any unpaid fees and costs for the day or two prior to the Petition Date, these fees and costs will be included and fully disclosed in Briggs and Morgan's first interim fee application. Alliance fees and costs for pre-filing services have been paid in full, including the following payments made in the 90 days prior to the Petition Date:

| Date | Amount |
|---|---|
| 1/14/2015 | 19,000.00 |
| 12/10/2014 | 25,000.00 |
| 11/20/2014 | 25,000.00 |
| 11/10/2014 | 75,000.00 |
| 10/30/2014 | 25,000.00 |

-3-

11. The compensation agreed to be paid by the Debtor to Alliance for its services in the bankruptcy case is set out in the Professional Services Agreement attached as Exhibit A to the Application, all as may be allowed by the Court following periodic fee application.

12. The source of all payments to Alliance was or will be from current income of the Debtor. In the bankruptcy case, Alliance has not received and will not receive transfer of property other than such payments of the Debtor.

13. Alliance has not shared or agreed to share with any other person, other than with members or associates of the firm, any compensation paid or to be paid.

14. Alliance requests that it be allowed to schedule fee applications at 90-day intervals and to receive monthly payment from the Debtor in accordance with the procedures set out in paragraph 9 of Court's Instructions for Filing a Chapter 11 Case, as requested by the Debtor in the Application.

15. Alliance is aware of the conflict and disgorgement rules regarding representation of debtors in Chapter 11 cases, and has the financial ability to return fees if the Court so orders at any point in the case.

16. The indemnity provision of the application shall control in the event of a conflict with the Professional Services Agreement.

17. I declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Dated: __1/15__, 2015

_____
Michael Knight, President
BGA Management, LLC d/b/a Alliance Management

-4-

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                  Bankruptcy Case No. _____

The Archdiocese of Saint Paul and
Minneapolis,

       Debtor.

# ORDER APPROVING EMPLOYMENT OF BGA MANAGEMENT, LLC D/B/A ALLIANCE MANAGEMENT

      This case came before the court on the application of the debtor to employ the financial consulting firm of Alliance Management, Inc. ("Alliance"), in this Chapter 11 case. It appears that it is necessary for the debtor to employ a financial restructuring consultant and it appears that the professional selected by the debtor does not hold or represent an interest adverse to the estate and that it is disinterested within the meaning of 11 U.S.C. § 327(a).

      IT IS ORDERED:

      1. The employment of Alliance as financial restructuring consultant to the debtor is approved.

      2. Fee applications by Alliance may be heard on 90-day intervals from commencement of the case.

      3. The debtor is authorized to pay monthly invoices of Alliance under the procedures in Instruction No. 9(c) of the Instructions for Filing a Chapter 11 Case, adopted by this court effective January 27, 2003.


Dated:                                                                        _____

                                                                      UNITED STATES BANKRUPTCY JUDGE