UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

The Archdiocese of Saint Paul and
Minneapolis,

        Debtor.

Bankruptcy Case No. 15-30125

CHAPTER 11 CASE

**DEBTOR'S APPLICATION TO EMPLOY REAL ESTATE BROKER**
**(NorthMarq Real Estate Services, LLC)**

TO:    The United States Bankruptcy Judge, the United States Trustee, and other parties in interest identified in Local Rule 2014-1.

1.    The above-named debtor and debtor-in-possession (the "Debtor" or "Archdiocese") has filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, Title 11, United States Code, and requires the assistance of a real estate broker in the course of this case. The Debtor seeks approval of this application for employment of a professional (the "Application") to employ Northmarq Real Estate Services, LLC ("NorthMarq") as its real estate broker with respect to the sale of certain real property:

    (a)    Hayden Center, 328 West Kellogg Blvd., St. Paul, MN;

    (b)    Chancery Offices, 226 Summit Avenue, St. Paul, MN;

    (c)    Dayton Building, 244 Dayton Avenue, St. Paul, MN; and

    (d)    Vacant Lot, 250 Dayton Avenue, St. Paul, MN (collectively, the "Properties").[1]

2.    The Archdiocese has not yet incurred or paid any fees or expenses to NorthMarq in connection with the sale of the Properties.

---

[1] Additional information related to the Properties is contained in the Archdiocese's Schedule A.

3. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334, Bankruptcy Rule 5005, and Local Rule 1070-1. This is a core proceeding. The petition in this case was filed on January 16, 2015 (the "Petition Date"). The case is now pending in this Court.

4. This Application arises under 11 U.S.C. §§ 327(a) and 328, and Bankruptcy Rule 2014. This Application is filed under Local Rules 2014-1 and 9013-4. The Archdiocese seek an order (1) authorizing the employment of NorthMarq, and (2) approving the terms and conditions of NorthMarq's Exclusive Brokerage Listing Agreement For Sale (the "Listing Agreement"). A copy of the Listing Agreement is attached hereto as **Exhibit A**.

5. Information concerning the Archdiocese's history and business operations, its capital structure, and the events leading up to the commencement of this chapter 11 case can be found in the Affidavit of the Very Reverend Father Charles V. Lachowitzer (the "Lachowitzer Affidavit"). In further support of this Application, the Archdiocese respectfully represents as follows:

**BASIS FOR RELIEF REQUESTED**

6. Pursuant to section 327 of the Bankruptcy Code, a debtor-in-possession may employ professionals that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to assist the debtor-in-possession in carrying out its duties under the Bankruptcy Code. Section 328 of the Bankruptcy Code provides that a professional may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

7. Bankruptcy Rule 2014 requires that an application for retention of a professional person include:

-2-

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

8.     By this application, the Archdiocese requests that the court approve the employment and compensation arrangements described in the Listing Agreement pursuant to 11 U.S.C. §§ 327(a) and 328.

## BACKGROUND

9.     NorthMarq is an experienced full service commercial real estate firm located in Bloomington, Minnesota. NorthMarq has provided real estate brokerage services to the Archdiocese for over 10 years and is familiar with the business and operations of the Archdiocese.

10.    Additional background on the qualification of NorthMarq are contained in the attached Unsworn Declaration of Paul Donovan (the "Donovan Declaration"), and incorporated by reference.

## SCOPE OF SERVICES AND COMPENSATION

11.    The parties propose to enter into the Listing Agreement, which would govern the relationship between NorthMarq and the Archdiocese. Under the Listing Agreement, NorthMarq shall serve as the Archdiocese's real estate broker in connection with the sale of the Properties. NorthMarq would receive a commission based upon the aggregate gross sales price of the Properties, due upon the closing of a sale of the Properties. The commission, as set forth in the Listing Agreement, is 4.00% of the first $2 million, 3.00% of the next $1 million, and 2.00% of any remaining amounts in excess of $3 million for the sale of the Properties in aggregate. As detailed in the Donovan Declaration, the fee structure set forth in the Listing Agreement is approximately 30% to 50% below market rate. In addition, as detailed in the Listing Agreement,

the Archdiocese will not pay any commission to NorthMarq if a winning bid to purchase the Properties is received from any party on the Excluded Parties list contained therein within the first 90 days of the listing unless such bid is increased through a bidding process in which NorthMarq increases the final sale price through introduction of a Non-Excluded Party bidder. In such a situation, NorthMarq would receive a commission only for the value added. No commission is due and payable from the Archdiocese unless a successful closing of the sale of the Properties occurs and the Archdiocese has received the sale proceeds.

12. The Archdiocese and NorthMarq acknowledge that any potential sale will require court approval and will be subject to higher and better bids. In the event that the broker receives bids from both Excluded and Non-Excluded Parties, the broker will coordinate with the Archdiocese and the Official Committee of Unsecured Creditors to determine which bid will generate the greatest return for the estate following payment of any required commission or other sales costs.

13. The above description of the Listing Agreement and commission is intended to be a summary and in the event it is inconsistent the terms of the Listing Agreement will control.

14. The Archdiocese proposes that NorthMarq's final fees be authorized in conjunction with the approval of the Application, and that upon the close of the sale of the Property, the Archdiocese shall be authorized to immediately pay in full NorthMarq's commission, and no further application for fees shall be made by NorthMarq with respect to the sale of the Properties.

15. All of the services that NorthMarq will provide to the Archdiocese will be undertaken at the request of the Archdiocese and will be appropriately directed by the Archdiocese so as to avoid duplicative efforts among the professionals retained in this case.

**MISCELLANEOUS**

16. To the best of the Archdiocese's knowledge, information, and belief, and based on the Donovan Declaration, the Archdiocese believes that the employment of NorthMarq is in the best interests of its estate and that NorthMarq does not represent or hold or represent any interest adverse to the estate, and is "disinterested" within the meaning of the Bankruptcy Code. In the event the United States Trustee, the Court, or other party asserts or is concerned that NorthMarq is not qualified to represent the Archdiocese, the Archdiocese requests that a hearing be scheduled.

17. The Archdiocese believes that the granting of this Application is in its best interests and the best interests of all creditors and other parties in interest in this Chapter 11 proceeding. The Archdiocese's decision to enter into the Listing Agreement is an appropriate exercise of the Archdiocese's business judgment and will benefit the Archdiocese's estate and creditors.

18. No previous application has been made for employment of a real estate broker.

19. This application has been served on the parties set forth in Local Rule 2014-1(a).

WHEREFORE, the Archdiocese requests an order (a) approving the employment of NorthMarq as real estate broker, (b) authorizing payment to NorthMarq on the terms set forth herein, (c) approving the terms and conditions of the Listing Agreement, and (d) granting such other relief as the court deems just and equitable.

Dated:                                            ARCHDIOCESE OF SAINT PAUL
                                                  AND MINNEAPOLIS

                                                  By: _Joseph F. Kueppers_ (signature)
                                                  Its: _Corporate Secretary_

**Exhibit A**

Listing Agreement

Project: Hayden Center, Chancery Offices, 244 Dayton, 250 Dayton

# EXCLUSIVE BROKERAGE LISTING AGREEMENT FOR SALE

THIS AGREEMENT entered into this 1st day of March, 2015, by and between ARCHDIOCESE OF SAINT PAUL AND MINNEAPOLIS, a Minnesota Religious Corporation, ("**Owner**") and NORTHMARQ REAL ESTATE SERVICES LLC, a Minnesota limited liability company ("**Broker**").

In consideration of the mutual covenants contained herein, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Owner hereby employs Broker and grants to Broker the exclusive right to negotiate a sale on the real property described on Exhibit A attached hereto ("**Property**") upon the terms and conditions hereinafter set forth.  This Agreement shall apply to all portions of the Property, except such exclusions as may be agreed upon in writing by Owner and Broker and attached to this Agreement, if any.

2. The term of this Agreement ("**Term**") shall commence on the date hereof and end at midnight on February 28, 2016.

3. Broker hereby accepts and agrees to use its continuing and best efforts to effect a sale of the Property upon such terms and conditions as may be acceptable to Owner. The acceptance of such terms and conditions will be determined acceptable by Owner at their sole discretion upon the receipt of an offer.

NOTICE:   THE COMMISSION RATE FOR THE SALE, LEASE, RENTAL, OR MANAGEMENT OF REAL PROPERTY SHALL BE DETERMINED BETWEEN EACH INDIVIDUAL BROKER AND ITS CLIENT.

4. Broker shall be paid a commission pursuant to the schedule set forth on Exhibit B, if:

   a. Owner agrees to sell, contract for sale, exchange or convey all or a portion of the Property with a party obtained by Broker, Owner, or by or through anyone else prior to the expiration of this Agreement under terms determined acceptable by Owner at their sole discretion;

   b. Any contract for the sale, option, exchange or conveyance of the Property, or any part thereof, is made directly or indirectly by the Owner or Owner's agent under terms determined acceptable by Owner at their sole discretion: (i) prior to the expiration of this Agreement; or (ii) within one hundred eighty (180) days after the expiration of this Agreement ("**Override Period**"), provided if the Property is sold, optioned, exchanged or conveyed to a person or entity with whom Broker has negotiated or to whom said Property has been submitted by Broker prior to such expiration in an effort to  sell, option or exchange said Property or to any other person who has made an affirmative showing of interest in the Property, provided that Broker shall have submitted to the Owner within seventy-two (72) hours after the expiration of this Agreement a list of such persons or entities ("**Protected Parties**").  Any party who has submitted an offer to Owner or has been shown the Property by Owner during the Term of this Agreement shall be deemed a Protected Party without being listed in any such notice.

5. If the commission is due as a result of the execution of a sale between Owner or Owner's agent and a buyer, the entire commission shall be payable as outlined in Exhibit B. If the commission is due as a result of an option to purchase the Property, a sales commission in the percentage provided on Exhibit B based on the price paid for the option and for any extensions thereof shall be paid upon execution of such option or payment of such extensions; and in the event the option is exercised (whether during the Term of this Agreement or anytime thereafter) a sales commission based on the gross sales price pursuant to the schedule set forth in Exhibit B less such amounts previously received by Broker due to the option payments (if such option payments are applied against the gross sales price).  Owner agrees to pay Broker the commission set forth above if the Property is sold or a contract to do so is entered into by Owner within the Override Period to any Protected Person at the time of closing of such transaction.  In all other events the entire commission shall be payable upon request of Broker.    In the event any potential purchaser forfeits its earnest money under a purchase

agreement, the Broker shall be entitled only to the appropriate percentage, according to the commission schedule of Exhibit B, of the amount of the forfeited funds.  If Owner fails to pay the commission within 5 days of the date the same is due, the delinquent amount shall bear interest at twelve per cent (12%) per annum (or at such lesser lawful rate, if said rate is usurious). No commission due and payable from Owner unless a successful closing of the sale of the property (ies) occurs and Owner has received the sale proceeds.

6. In the event a third party ("**Third Party Broker**") (any other broker including other NorthMarq Real Estate Brokerage LLC brokers that are not a part of the listing team as identified on Exhibit B) cooperates with Broker in obtaining a buyer or other party for which a commission is due hereunder, then the commission otherwise due shall be that set forth in Exhibit B.  Owner hereby authorizes Broker to disburse part of the Broker's commission, which may become due and payable hereunder, to a Third Party Broker, including brokers solely representing buyers of the Property, in accordance with industry practice.  For purposes of Exhibit B, "**Gross Sales Price**" shall mean the total amount to be paid for the Property including assumption of existing liabilities (excluding, however, current and subsequent year taxes and assessments).

7. Broker is authorized to advertise the Property in whatever manner it deems appropriate subject to Owner's prior approval of all advertising mediums.  Broker is further authorized to place signs in and about the Property if in Broker's opinion, such would facilitate the sale of the Property and Owner approves such placements.

8. Owner agrees that it shall:

   a. Furnish Broker with such scale floor plans and building specifications as Broker may require in its conduct of the leasing program;

   b. Furnish Broker with pertinent information regarding the status of established tenants, including rent rolls which, among other data, set forth lease expirations;

   c. Fully cooperate with Broker in effectuating purchase contracts of the Property;

   d. Furnish to any buyer a commitment for an owner's ALTA form B title insurance policy, in accordance with industry standards and execute a general warranty deed conveying marketable title to the Property to the buyer, together with such other instruments as is customary in Minnesota with the sale of real estate;

   e. Furnish to any buyer a copy of the most recent environmental Phase I and/or Phase II reports, if any which Owner may have with respect to the Property;

   f. Furnish to Broker and any buyer complete and accurate rent rolls and other pertinent financial information concerning the Property;

   g. Fully disclose the location and any information Owner may have concerning any wells, septic systems and/or underground tanks on the Property; and

   h. Forward to Broker any inquiries of any sort received with regard to purchasing   the Property or any portion thereof.

9. Broker agrees that it shall:

   a. Endeavor to procure buyers by all reasonable means available, including direct solicitation, consultation and marketing presentations, mail campaigns, processing of inquiries received from any and all sources and advertising, all as Broker deems prudent;

   b. Provide Owner with written reports in such format and at such time as Owner shall reasonably request detailing the status of the sale program.

10. The expenses incurred by Broker in performance of this Agreement shall be borne as follows:

Broker will pay for marketing brochures, "For Sale" signs, mailers, website advertising. Owner will not be responsible for any costs unless approved in writing by owner in advance.

11.    Owner warrants that it is the record owner of the Property and has the legal authority to enter into this Agreement through the signatories hereto subject to the approval of the U.S. Bankruptcy Court.

12.    Broker warrants that it is a duly licensed broker under the laws of Minnesota and that all agents and salespersons working for Broker in connection with the Property are also duly licensed salespersons and/or brokers under the laws of Minnesota. Broker further warrants that it has the legal authority to enter into this Agreement through the signatories hereto. Broker agrees to hold Owner harmless from any liability, damages, costs and expenses arising from any incorrect information (unless supplied by Owner) given by Broker to others with respect to the Property.

13.    Any notice desired or required to be given hereunder shall be effective as of the third day after mailing postage pre-paid, certified mail, return receipt requested, or the date of actual receipt if by other means, by delivery to the address set forth below:

> FOR OWNER:
>
> Archdiocese of Saint Paul and Minneapolis
> 328 West Kellogg Boulevard
> St. Paul, MN 55102
> Attn: Thomas J. Mertens
>
> FOR BROKER:
>
> NorthMarq Real Estate Services LLC
> 3500 American Blvd. West, Suite 200
> Bloomington, Minnesota 55431
> Attn: Mike Ohmes & Paul Donovan

14.    This agreement shall be governed by the laws of Minnesota and shall be amended, modified or terminated only in writing signed by both parties.

15.    Owner does not request the Broker to arrange for closing services. Owner will separately arrange for its closing services arising out of any sale of the Property.

16.    Broker represents buyers looking for property including properties which may be similar to the Property. If a buyer represented by Broker becomes interested in the Property a dual agency will be created. This means that Broker will owe the same duties to the buyer that it owes to the Owner. Broker cannot act as dual agent unless both Owner and the buyer agree to the dual agency after it is disclosed to each of Owner and buyer. By agreeing to a possible dual agency, Owner will be giving up the right to exclusive representation in the proposed transaction; however, if Owner decides not to agree to a possible dual agency, it may be giving up the opportunity to sell the Property to buyers represented by Broker. Having read and understood the foregoing, Owner hereby agrees to dual agency representation and will consider offers made by buyers represented by Broker.

17. This Agreement is subject to the approval of the U.S. Bankruptcy Court.

18.  Notwithstanding anything to the contrary in this Agreement, including anything contained in paragraphs 4 and 5, the parties agree that no commission related to the sale of the properties identified in Exhibit A will be due (a) unless the applicable sale is approved by the bankruptcy court following notice and hearing (it being understood that Owner shall promptly file, and thereafter diligently seek, court approval of any contract approved by the Owner) or (b) in the event that the proposed purchaser fails to close under any contract approved by the Owner or court. The parties agree that any sale of the property may be subject to higher or better offers to purchase. Owner agrees that the commission payable hereunder shall be due and payable to Broker in the event that the Owner receives a higher or better offers to purchase from a third party following submission of a proposed sale agreement for court approval, but only at the rate set forth herein in connection with the initial sale contract.

IN WITNESS WHEREOF, the undersigned have executed this Agreement the day and year first above written.

| **BROKER:** | **OWNER:** |
|---|---|
| NORTHMARQ REAL ESTATE SERVICES LLC | ARCHDIOCESE OF SAINT PAUL AND MINNEAPOLIS |
| By: _____ <br>     Michael W. Ohmes <br> Its: Executive Vice President | By: _____ <br><br> Its: _____ |

# EXHIBIT A

# PROPERTY

Description:             **Hayden Center**
Street Address:          328 West Kellogg Boulevard, St. Paul, MN 55102
PID:                     06.28.22.22.0090
Size:                    58,383 sf
Parcel Size:             1.77 acres


Description:             **Chancery Offices**
Street Address:          226 Summit Avenue, St. Paul, 55102
PID:                     01.28.23.11.0072
Size:                    44,060 sf
Parcel Size:             3.38 acres


Description:             **244 Dayton Avenue**
Street Address:          244 Dayton Avenue, St. Paul, MN 55102
PID:                     01.28.23.11.0028
Size:                    12,201 sf
Parcel Size:             0.12 acres


Description:             **250 Dayton (Vacant Lot behind Dayton Building)**
Street Address:          250 Dayton Avenue, St. Paul, MN 55102
PID:                     01.28.23.11.0032
Parcel Size:             .0789 acres
Legal Description:       The North ½ of Lot 7, except the East 23.5 feet and the East 6 feet of the North 116.65 feet of Lot 8, Selby Block being Auditor's Subdivision No. 5, Ramsey County, Minnesota

# EXHIBIT B

# COMMISSION SCHEDULE AND SCOPE OF WORK

## Sale

Paid to NorthMarq based upon the aggregate gross sales price of all properties listed in Exhibit A:
- 4.00% of the first $2 million
- 3.00% of the next $1 million
- 2.00% of any remaining amounts in excess of $3 million

As an example, if one property is sold for $4 million, the commission on this sale will be $130,000 (4% of $2 million, plus 3% of $1 million, plus 2% of $1 million). Any future gross sales proceeds from other properties listed in Exhibit A will have a commission rate of 2% applied.

Any buyer's representatives will receive compensation from the buyer.


Protected List:

Broker and Owner have agreed that no commission will be due in connection with the sale to any party identified in a separate list provided by Owner to Broker (each, an "Excluded Party" and, collectively, the "Excluded Parties"). The list of Excluded Parties will reference the name and the particular property the Excluded Party is interested in. The list of Excluded Parties shall remain confidential, except the list may be disclosed to the United States Trustee or any official committee in this case or as a public record in connection with any dispute between the Owner and Broker or a motion to approve a sale to an Excluded Party or as necessary to evaluate competing bids. In addition, notwithstanding the foregoing, a sale commission shall be due and payable upon a sale to an Excluded Party to the extent of any increase in the gross sales price payable by an Excluded Party following the submission of the Excluded Party's initial offer to purchase. Said offers to purchase must be received within ninety days of the commencement of the marketing the properties for sale. By way of example only, if an Excluded Party increases its initial offer from $2,000,000 to $3,000,000 a commission on the $1 million increase would be applied to the commission schedule listed above.


Listing Team

Paul J. Donovan, Executive Director
Jeremy A. Striffler, Associate

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bankruptcy Case No. 15-30125 |
| The Archdiocese of Saint Paul and Minneapolis, | CHAPTER 11 CASE |
| Debtor. | |

### UNSWORN DECLARATION OF PAUL DONOVAN IN SUPPORT OF DEBTOR'S APPLICATION TO EMPLOY REAL ESTATE BROKER

Paul Donovan makes the following declaration in support of the application of the above-named debtor (the "Archdiocese") to employ NorthMarq Real Estate Services, LLC ("NorthMarq") as real estate broker and in compliance with Bankruptcy Rule 2016(b), and Local Rule 1007-1.

1. I am Executive Director of the Advisory Service Group with NorthMarq. I make this Unsworn Declaration in support of the Archdiocese's application to employ NorthMarq in this case. The facts set out herein are personally known to me and if called as a witness I could and would testify thereto.

2. NorthMarq is the largest commercial real estate brokerage company in the Twin Cities with extensive knowledge of the Twin Cities metro area market. NorthMarq seeks employment as real estate broker with respect to real property located at:

- Hayden Center, 328 West Kellogg Blvd., St. Paul, MN;
- Chancery Offices, 226 Summit Avenue, St. Paul, MN;
- Dayton Building, 244 Dayton Avenue, St. Paul, MN; and
- Vacant Lot, 250 Dayton Avenue, St. Paul, MN (collectively, the "Properties").

3. NorthMarq has successfully served the Archdiocese on real estate matters for over 10 years and has illustrated a keen skill in improving cash flow primarily for parishes through successful lease or sale transactions. Accordingly, NorthMarq is familiar with the Archdiocese's business operations and real estate. In addition, the team of professionals assigned to this project has extensive experience is selling special purpose properties, office properties, and redevelopment/repurpose properties. The Properties being marketed will require these perspectives. We will simultaneously pursue all opportunities to achieve the highest sale price in the shortest period responsibly possible.

4. The commission fee structure outlined in the Listing Agreement is approximately 30% to 50% below market rate. Typical fee structure would likely be 6% of the gross sale proceeds and possibly 7% if a cooperating broker is involved. Additionally, such fees would not be applied cumulatively, but rather on a property by property basis.

5. To the best of my knowledge, no employee of NorthMarq is a relative of, or has been connected with, any judge of the bankruptcy court for this district, the United States Trustee in this district or any employee of the office of the United States Trustee in this district.

6. NorthMarq has run a conflicts search with respect to the Archdiocese and its creditors. In this case, inquiry was made of the professionals working for NorthMarq regarding any connections or conflicts with secured creditors, the twenty largest unsecured creditors of the Archdiocese, and the Archdiocese. In addition, a search has been performed of NorthMarq's client database for any potential conflicts.

7. Based on the above-referenced conflicts check and to the best of my knowledge, NorthMarq is a disinterested person as that term is used in the Bankruptcy Code and does not hold or represent any interest adverse to the Archdiocese's estate.

8.      The Archdiocese has made no prepetition payments to NorthMarq nor are any payments due to NorthMarq in connection with the sale of the Properties to date.

9.      Given the "fixed" nature of NorthMarq's fees, which are typical in the real estate industry, NorthMarq requests that it fees be authorized in conjunction with the approval of the Application, and that that upon the close of the sale of the Properties, the Archdiocese shall pay in full NorthMarq's commission as set forth in the Listing Agreement, and no further application for fees shall be made by NorthMarq in connection with the sale of the Properties.

10.     I declare under penalty of perjury that the foregoing is true and correct according to the best of my current knowledge, information, and belief.

Dated: March 5, 2015

_____
Paul Donovan
NorthMarq Real Estate Services, LLC

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

The Archdiocese of Saint Paul and
Minneapolis,

        Debtor.

Bankruptcy Case No. 15-30125

CHAPTER 11 CASE

# ORDER APPROVING EMPLOYMENT OF NORTHMARQ REAL ESTATE SERVICES, LLC

This case came before the court on the application of the debtor to employ NorthMarq Real Estate Services, LLC as real estate broker relating to the sale of real property located at Hayden Center, 328 West Kellogg Blvd., St. Paul, MN; Chancery Offices, 226 Summit Avenue, St. Paul, MN; Dayton Building, 244 Dayton Avenue, St. Paul, MN; and Vacant Lot, 250 Dayton Avenue, St. Paul, MN (collectively, the "Properties").  It appears that it is necessary for the debtor to employ a real estate broker and that the professional selected by the debtor does not hold or represent an interest adverse to the estate and that it is disinterested within the meaning of 11 U.S.C. § 327(a).

IT IS ORDERED:

1. The employment of NorthMarq as real estate broker on the terms set forth in NorthMarq's Exclusive Brokerage Listing Agreement For Sale is approved.

2. The debtor is authorized to pay NorthMarq's commission upon the closing of the sale of the Properties on the terms set forth in that Listing Agreement without need to seek further order of this court.

Dated:                                                              _____
                                                                  Robert J. Kressel
                                                                  UNITED STATES BANKRUPTCY JUDGE