UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

In re:

The Archdiocese of Saint Paul and
Minneapolis,

        Debtor.

Bankruptcy Case No.  15-30125

Chapter 11 Case

---

**NOTICE OF HEARING AND VERIFIED MOTION OF THE ARCHDIOCESE OF
SAINT PAUL AND MINNEAPOLIS TO EXTEND TIME TO FILE A PLAN AND
DISCLOSURE STATEMENT AND OBTAIN CONFIRMATION OF A PLAN
PURSUANT TO 11 U.S.C. § 1121**

---

TO:    All parties in interest as specified in Local Rule 9013-3:

The  Archdiocese of Saint Paul and Minneapolis (the "Archdiocese" or "Debtor")

through its undersigned attorneys, respectfully moves the Court for the relief requested below

and gives notice of hearing.

## NOTICE OF MOTION

1.    The Court will hold a hearing on this motion at 10:30 a.m. on April 9, 2015,

before the Honorable Robert J. Kressel in Courtroom 8W, United States Courthouse, 300 South

Fourth Street, Minneapolis, Minnesota 55415.

2.    Any response to this motion must be filed and served not later than April 4, 2015,

which is five days before the time set for the hearing (including Saturdays, Sundays and

holidays).  **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE**

**COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

## JURISDICTION

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334, Fed. R. Bankr. P. 5005 and Local Rules 1070-1 and 9013-2(g).  This matter is a core

proceeding under 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§

1408 and 1409.  The captioned Chapter 11 case was filed on January 16, 2015 (the "Petition Date"), and is now pending in this Court.

4.      On February 19, 2015, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").  No trustee or examiner has been appointed in this Chapter 11 case.

5.      This motion arises under 11 U.S.C. § 1121.  This motion is filed under Fed. R. Bankr. P. 9014 and Local Rules 9013-1 through 3.

6.      For a description of the Archdiocese and its operations, the Archdiocese respectfully refers the Court and the parties in interest to the Affidavit the Very Reverend Father Charles V. Lachowitzer, Vicar General and Moderator of the Curia (the "First Day Affidavit") filed on the Petition Date.

### **RELIEF REQUESTED**

7.      Section 1121 of the Bankruptcy Code provides that during the first 120 days after commencement of the case, only the debtor may file a plan.  The debtor has an additional 60 days within which it alone may solicit acceptance to a filed plan.  11 U.S.C. § 1121(b) and (c). In this case, the 120-day exclusivity period expires on May 16, 2015, and the 180-day exclusivity period expires on July 16, 2015.

8.      The Archdiocese respectfully request that the Court enter an order, under 11 U.S.C. § 1121(b), extending the period within which the Archdiocese has the exclusive right to file a plan of reorganization to November 30, 2015 and, under 11 U.S.C. § 1121(c)(3), extending the period within which the Archdiocese has the exclusive right to gain acceptances of a plan of reorganization to January 29, 2016.

9.      Committee counsel has been provided with an opportunity to review and comment on a prior draft of this motion and the accompanying status report.  The Archdiocese

6975808v5

expects that the Committee will either join in this motion through a separate filing or, at the very least, refrain from opposing it.

## BASIS FOR RELIEF

10.     The Archdiocese appeared before the Court on January 20, 2015, on a series of first day motions, at which time the Court directed that the parties engage in mediation before former Magistrate Judge Arthur Boylan.

11.     The Committee and the Archdiocese have actively participated in the mediation process on a nearly weekly basis.  The Archdiocese's insurance carriers and certain of the parishes located in the region served by the Archdiocese have also participated in the mediation process.  The Archdiocese and the Committee believe that discussions to date have been fruitful and that the mediation process may provide the best hope for a prompt successful reorganization. The Archdiocese has also assisted the Committee in its ongoing review and analysis of Archdiocesian assets.

12.     The Archdiocese has submitted herewith a status report to outline the efforts made to date by the Archdiocese and others in connection with the mediation and case administration process.  As indicated in the attached status report, there are a number of difficult issues to be resolved prior to completion of the mediation process.  In particular, it is imperative that the Archdiocese and the Committee have sufficient time to negotiate with the liability insurance carriers for contribution toward a comprehensive and global settlement and consensual plan of reorganization.  It is highly unlikely that the negotiation of these issues will be completed in time to permit the Archdiocese to file its plan within 120 days of the Petition Date. A finalized settlement cannot be completed with the consent of most, if not all, necessary parties until the bar dates are established, the complete universe of claims is known, the parties have time and

6975808v1

sufficient information to evaluate the claims, and the parties have time to evaluate and negotiate their settlement positions.

13.     The Archdiocese intends to file a motion to establish bar dates in this case prior to the hearing on this motion. The establishment of appropriate bar dates, in the view of the Archdiocese, is a necessary first step before all parties can complete their analysis of claims and finalize a consensual plan of reorganization with necessary clarity.

14.     It is possible that, if required to do so, the Archdiocese could file a plan of reorganization and disclosure statement by the May 16, 2015 deadline.  The Archdiocese and the Committee believe, however, that doing so would be both counter-productive and an inefficient use of judicial and estate resources.  The same issues will still have to be negotiated and the parties would then need to spend time and money in preparation for hearings on the disclosure statement and confirmation while negotiating open issues.  Both parties believe that this case will be more efficiently resolved through a joint or consensual plan.

15.     The Bankruptcy Code provides that the Court may "for cause reduce or increase the 120 day period or the 180 day period."  11 U.S.C. § 1121(d).  The Archdiocese respectfully submits that the requisite cause exists under Section 1121(d) for an extension of the exclusivity periods through November 30, 2015 (with respect to the deadline to file a plan) and January 29, 2016 (with respect to the deadline for confirmation).  The Archdiocese is current on its post-Petition Date obligations and believes that the relief requested in this motion will not prejudice the interest of any creditors.

16.     Pursuant to Local Rule 9013-2, this motion is verified and accompanied by a memorandum of law, proposed order, and proof of service.

17.     Pursuant to Local Rule 9013-2, the Archdiocese gives notice that it may, if necessary, call Thomas J. Mertens, Chief Financial Officer of the Archdiocese of Saint Paul and

Minneapolis, to testify at the hearing on the motion regarding the facts set forth herein. The witness's business address is 328 Kellogg Blvd W, Saint Paul, MN 55102.

WHEREFORE, the Archdiocese requests entry of an order:

(a)    Under 11 U.S.C. § 1121(b), extending the period within which the Archdiocese has the exclusive right to file a plan of reorganization to November 30, 2015;

(b)    Under 11 U.S.C. § 1121(c)(3), extending the period within which the Archdiocese has the exclusive right to gain acceptances of a plan of reorganization to January 29, 2016; and

(c)    Granting the Archdiocese such other and further relief as may be just and equitable.

Dated:  March 26, 2015                    Respectfully submitted,

                                          BRIGGS AND MORGAN, P.A.


                                          *e/ Richard D. Anderson*
                                          Richard D. Anderson (#2306)
                                          randerson@briggs.com
                                          Charles B. Rogers (#0130588)
                                          crogers@briggs.com
                                          Benjamin E. Gurstelle (#389968)
                                          bgurstelle@briggs.com
                                          2200 IDS Center
                                          80 South 8th Street
                                          Minneapolis, MN 55402
                                          Telephone: (612) 977-8400
                                          Facsimile: (612) 977-8650

                                          Attorneys for The Archdiocese of Saint Paul and Minneapolis

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                    Chapter 11 Case

The Archdiocese of Saint Paul and
Minneapolis,
                        Debtor.

## VERIFICATION OF THOMAS J. MERTENS

I, Thomas J. Mertens, Treasurer / Chief Financial Officer of the Archdiocese of Saint

Paul and Minneapolis, do hereby certify and declare under the penalty of perjury that the facts

contained in the Notice of Hearing and Verified Motion of the Archdiocese of Saint Paul and

Minneapolis to Extend Time to File a Plan and Disclosure Statement and Obtain Confirmation of

a Plan Pursuant To 11 U.S.C. § 1121 are true and correct to the best of my knowledge,

information, and belief.

Dated: _March 26_____, 2015        _____
                                                Thomas J. Mertens

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

The Archdiocese of Saint Paul and
Minneapolis,

          Debtor.

Bankruptcy Case No.  15-30125

Chapter 11 Case

**MEMORANDUM IN SUPPORT OF VERIFIED MOTION OF THE ARCHDIOCESE OF SAINT PAUL AND MINNEAPOLIS TO EXTEND TIME TO FILE A PLAN AND DISCLOSURE STATEMENT AND OBTAIN CONFIRMATION OF A PLAN PURSUANT TO 11 U.S.C. § 1121**

## INTRODUCTION

The Archdiocese of Saint Paul and Minneapolis (the "Archdiocese" or "Debtor") respectfully submits this memorandum in support of its Verified Motion to Extend Time to File a Plan and Disclosure Statement and Obtain Confirmation of a Plan Pursuant to 11 U.S.C. § 1121. Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the motion filed in connection herewith.

## FACTS

The factual basis for this memorandum is set forth in the motion and is incorporated as though fully set forth herein.

## DISCUSSION

A.      **The Legal Standard**

In pertinent part, Section 1121 of the Bankruptcy Code provides:

Who may file a plan.

(a)      The debtor may file a plan with a petition commencing a voluntary case, or at any time in a voluntary case or an involuntary case.

(b)     Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.

(c)     Any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if—

(1)     a trustee has been appointed under this chapter.

(2)     the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter, or

(3)     the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.

(d)(1)  Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

(2)(A)  The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.

(B)     The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121.

Section 1121 of the Bankruptcy Code gives the Debtor the exclusive right to file a plan during the first 120 days after the order for relief.  11 U.S.C. § 1121(b).  This 120-day period may be increased or reduced "for cause."  11 U.S.C. § 1121(d).  The term "cause" is not defined in Section 1121.  The Bankruptcy Appellate Panel for the Eighth Circuit Court of Appeals has emphasized that the burden of establishing good cause is on the moving party, and that "the granting of an extension [should] be based 'on a showing of some promise or probable success for reorganization" and "an extension should not be employed as a tactical measure to put

-2-

pressure on parties in interest to yield to a plan they consider unsatisfactory." *In re Hoffinger Industries, Inc.*, 292 B.R. 639, 643 (B.A.P. 8th Cir. 2003). The legislative history of Section 1121 indicates that "cause" is to be viewed flexibly so as to promote the orderly, consensual and successful reorganization of the debtor's affairs. *See* H.R. Rep. No. 595, 95th Cong., 2d Sess. 231, 232, reprinted in 1978 U.S.C.C.A.N., 5963, 6190. Congress has recognized that, depending upon the circumstances, the 120-day exclusivity period often will not afford the debtor sufficient time to formulate a plan. *See* H.R. Rep. No. 595, 95th Cong., 2d Sess. 231, 232.

The *Hoffinger* court listed the following factors to be balanced in deciding whether to extend or shorten the 120 and 180 periods of exclusivity.

> (1)  the large size of the debtor and the consequent difficulty in formulating plan of reorganization for a huge debtor with a complex financial structure;
>
> (2)  the need of the creditors' committee to negotiate with the debtor and the ability to prepare adequate information;
>
> (3)  the existence of good faith progress towards reorganization;
>
> (4)  the existence of an unresolved contingency;
>
> (5)  the fact that the debtor is paying bills as they become due;
>
> (6)  the length of previous extensions of exclusivity;
>
> (7)  breakdowns in plan negotiations, such that the continuation of the debtor's exclusivity period would result in the debtor having an unfair bargaining position over creditors;
>
> (8)  the debtor's failure to resolve fundamental reorganization matters essential to its survival; and
>
> (9)  the gross mismanagement of the debtor.

*Id.* at 633-34. "It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each." *Id.* at 634.

**B.**      **Cause Exists for this Court to Extend the Exclusive Periods.**

This case represents one of 12 cases filed under Chapter 11 on behalf of Catholic dioceses in the United States. Exclusivity periods have been routinely extended in many of these cases. *See, e.g.*, *In re Archdiocese of Milwaukee*, Case No. 11-20059 (Bankr. E.D. Wis. Filed January 4, 2011) (ECF Nos. 237, 482, 822) (exclusivity period extended from May 4, 2011 to July 5, 2012); *In re Catholic Diocese of Wilmington, Inc.*, Case No. 09-13560 (Bankr. D. Del. Filed October 18, 2009) (ECF Nos. 360, 632, 834, 1076, 1192) (exclusivity period extended from February 15, 2010 to April 19, 2011); *In re Diocese of Davenport*, Case No. 06-02229 (Bankr. S.D. Iowa Filed October 10, 2006) (ECF Nos. 99, 170, 194) (exclusivity period extended from February 7, 2007 to November 16, 2007).

As noted in the motion, the basis for extending the exclusivity periods in this case is at least as strong – if not considerably stronger – than the bases advanced by the debtors in these other cases. Among other things, as noted in the motion, the Archdiocese is current on its postpetition obligations and is actively pursuing mediation in good faith, and has proceeded with dispatch. Unfortunately, it is not practical to submit a plan within the 120-day period in light of the status of negotiations and the need for a bar date that will lend more clarity to the discussions.

The Archdiocese expects that the Committee will either join in this motion through a separate filing or, at very east, refrain from opposing it. Obviously, the Committee's support of the Motion (tacit or otherwise) should be given great weight in the Court's consideration of the motion. The Archdiocese believes that an extension of the exclusivity periods of Section 1121 of the Bankruptcy Code is necessary to seek a consensual resolution through the mediation process and to complete the claims process.

6975808v5

## <u>CONCLUSION</u>

As set forth in the motion, the Archdiocese respectfully requests that the Court grant the

motion and grant the Archdiocese such other and further relief as may be just and equitable.

Dated:  March 26,  2015                Respectfully submitted,

                                        BRIGGS AND MORGAN, P.A.

                                        *e/ Richard D. Anderson*
                                        Richard D. Anderson (#2306)
                                        randerson@briggs.com
                                        Charles B. Rogers (#0130588)
                                        crogers@briggs.com
                                        Benjamin E. Gurstelle (#389968)
                                        bgurstelle@briggs.com
                                        2200 IDS Center
                                        80 South 8th Street
                                        Minneapolis, MN 55402
                                        Telephone: (612) 977-8400
                                        Facsimile: (612) 977-8650

                                        Attorneys for The Archdiocese of Saint Paul and
                                        Minneapolis

6975808v5

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

The Archdiocese of Saint Paul and
Minneapolis,

                Debtor.

Bankruptcy Case No.  15-30125

CHAPTER 11 CASE

## ORDER TO EXTEND TIME TO FILE A PLAN AND DISCLOSURE STATEMENT AND OBTAIN CONFIRMATION OF A PLAN PURSUANT TO 11 U.S.C. § 1121

This case came on before the court on the motion of the Archdiocese of Saint Paul and Minneapolis to extend time granted to the debtor to file a plan and disclosure statement and obtain confirmation of a plan pursuant to 11 U.S.C. § 1121.

Based on the motion and file,

IT IS ORDERED:

1.     The period within which the Archdiocese has the exclusive right to file a plan of reorganization pursuant to 11 U.S.C. § 1121(b) is extended to the end of the day on November 30, 2015.

2.     The period within which the Archdiocese has the exclusive right to gain acceptance of a plan of reorganization pursuant to 11 U.S.C. § 1121(c)(3) is extended to the end of the day on January 29, 2016.

Dated:

_____
Robert J. Kressel
United States Bankruptcy Judge

**Supplement to Notice of Hearing and Verified Motion of the Archdiocese of Saint Paul and Minneapolis to Extend Time to File a Plan and Disclosure Statement and Obtain Confirmation of a Plan Pursuant to 11 U.S.C. § 1121**

## STATUS REPORT

The following report briefly summarizes the activities of the Archdiocese of Saint Paul and Minneapolis (the "Archdiocese") in connection with the pending Chapter 11 case from the filing of the Chapter 11 petition on January 16, 2015 (the "Petition Date") through mid-March 2015.

### A.    Mediation and Settlement Efforts

The Archdiocese and its counsel have engaged in settlement discussions with various parties on the following dates from the Petition Date through mid-March: January 18, 19, 21, 22, 28, 29, and February 3, 5, 11, 12, 19, and 20, and March 5, 6, and 12.  With the objective of achieving global resolution and the presentation of a plan of reorganization, the Archdiocese has engaged in discussions with the following groups:

#### 1.    Survivors' counsel/unsecured creditors committee

The Archdiocese has compiled and made disclosure of all assets in its possession, discussed the potential availability of those assets to pay victim claims, and answered questions raised by survivors' counsel and the Committee for Unsecured Creditors ("Committee"). The Archdiocese and its counsel have also analyzed and preliminarily discussed issues with the survivors' counsel and the Committee relating to leases, the sale of certain archdiocese assets and pre-bankruptcy transfers.

In connection with its ongoing communications with survivor's counsel and the Committee, the Archdiocese and its counsel have discussed and outlined general plan provisions relating to: (i) the establishment of a committee to administrate victim/survivor claims, (ii) a future claims representative, (iii) establishment of bar dates for general and abuse-related claims, and (iv) application of a channeling injunction to various participants in the settlement process including the parishes within the region of the Archdiocese, religious orders, insurers and other parties potentially liable for victim claims.

Finally, counsel for the Archdiocese has: (i) reviewed approximately 139 notice of survivor claims and responses to over 34 claimant questionnaires; (ii) reviewed and evaluated those claims; and (iii) provided notice to other potentially culpable parties including parishes and religious orders. Archdiocese counsel continues to evaluate claims against the Archdiocese clergy for the purpose of providing appropriate disclosures and evaluating clergy status as further detailed below.

#### 2.    Parishes within the region of the Archdiocese

The Archdiocese and its counsel have encouraged all 187 parishes in this archdiocese to retain common bankruptcy and coverage counsel in order to enhance the prospects for an

efficient resolution of victim/survivor claims. The Archdiocese and its counsel have met with counsel for the parishes and discussed potential resolution of parish claims against assets held by the Archdiocese, the formation of a parish creditors committee, and payment of parish fees and disbursements.

The Archdiocese and its counsel have also met with coverage counsel for the parishes in order to evaluate survivor claims, potentially available coverage, asserted coverage defenses, and strategies for global settlement. To date, parish counsel has identified over ten insurance carriers with applicable coverage for parishes with respect to victim claims. A number of these carriers also insure the Archdiocese.

### 3.    Insurance carriers

While formal discovery and motion practice in the coverage action is not proceeding, insurance related work has necessarily continued informally in furtherance of mediation efforts. The Archdiocese has over 30 different policies spanning the late 1940s to the present. The policies were issued by over 15 different carriers, some of whom are affiliated but most of whom are not. The carriers have raised a myriad of coverage defenses. In some cases the coverage defenses are common to all carriers, but many are unique to a specific carrier or policy. As explained in more detail below, while much remains to be done, the parties have made some progress.

First, the Archdiocese and its counsel have continued to look for policy information for time periods in which policies or parts of a policy were missing. A number of the missing policies and policy pages have now been located. The Archdiocese expects that it will be able to establish coverage through virtually the entire time period at issue.

Second, as part of the process of evaluating the extent to which carriers should pay in any mediated resolution, the Archdiocese and its counsel have been developing responses to the many coverage defenses raised by each of the carriers. As to the defenses based on policy language as opposed to fact, the Archdiocese and its counsel have been reviewing each policy and applicable case law. While this process has been completed as to a number of the carriers, it is continuing for others and should be completed by mid to late April. Work on policy defenses based on factual contentions has begun, and the Archdiocese will seek further information from the carriers as to the basis for their defenses.

Third, the Archdiocese and its counsel have responded to requests from the carriers for many different categories of information. The first such category is information related to the claims and claimants. The Archdiocese and its counsel have also been working with the carriers and the Unsecured Creditors Committee on the form of the Tort Claimant Questionnaire. The carriers requested that the form include many different questions they require to evaluate the claims. The parties appear to now be in general agreement on the form, with two carriers continuing to object to the form as insufficient. Other categories of information the carriers have requested include information about prior settlements, discovery in prior cases and policy related information. The Archdiocese and its counsel have provided some of this information and is working on providing additional information. To date, the Archdiocese has produced approximately 150,000 pages of documents to the carriers.

Fourth, as discussed above the Archdiocese has been preparing for and participating in preliminary mediation sessions that include its carriers. As part of the evaluation of what each carrier should pay in any mediated settlement, counsel for the Archdiocese has endeavored to evaluate every pending claim, noticed claim, and potential victim claim. Using information about both pending and possible claims, counsel for the Archdiocese has created a computer model that allows the user to assume a settlement value for each claim, allocate it across all triggered policy years, and apply any policy terms that affect the determination of what a carrier owes as to each claim (such as retention or policy limits) to arrive at the amount a carrier owes both as to a given claim and for all claims. The model allows the user to adjust both the settlement values and change certain assumptions based on carriers' positions.

The primary issues for negotiation and resolution include:

- Obtaining more specific and more comprehensive information regarding defenses of the insurance carriers coverage defenses;

- Determining a methodology for evaluating and negotiating the value of victim claims;

- Arriving at a process for evaluating and resolving more significant coverage defenses including the primary coverage defense that coverage may not apply where alleged clergy sexual abuse was purportedly expected or intended by the Archdiocese; and

- Agreeing on plan provisions that will be a necessary part of global resolution with carriers.

A final settlement cannot be achieved with the consent of most, if not all, necessary parties, until a bar date is established, the universe of claims is known, the parties have sufficient information and time to evaluate the claims, and the parties have time to evaluate and negotiate their settlement positions.

Finally, the Archdiocese and its counsel have prepared and submitted more than 20 claims to Home Insurance Company, an insolvent carrier. This necessitated preparation of formal claim submissions to the Liquidator. Counsel for the Archdiocese has participated in a number of very preliminary discussions with the Liquidator and expects to shortly commence negotiations in earnest for liquidation of those claims pursuant to applicable statutes.

**4.      Religious orders implicated in notices of claims**

At the request of survivors' counsel, the Archdiocese has placed every applicable religious order implicated in a notice of claim on notice of the claim's existence and the orders' potential liability. Counsel for the orders has expressed a potential willingness to participate in these settlement discussions. The Archdiocese and its counsel are in the process of seeking each order's participation in an upcoming April 2 mediation.

6975808v5

**5.      Other third parties**

The Archdiocese and its counsel have engaged in discussions with numerous third parties holding claims against assets held by the Archdiocese and outlined potential methodologies for resolving their claims in potential plan provisions.

All potentially liable parties for the vast majority of victim/survivor claims have been or are being brought to the negotiating table. Claims are being evaluated and barriers to settlement are being minimized or addressed with negotiating focus on the large material issues involved in arriving at a global monetary settlement. Plan and legal issues are being addressed but cannot be finalized until discussions with carriers for the Archdiocese, parishes and religious orders are completed.

**B.      Case Administration and Motion Practice/Briefing**

**1.      Bar date motion**

The Archdiocese believes that a bar date needs to be established in this case to allow the Archdiocese to proceed with a reorganization plan and to avoid protracted proceedings that may deplete the assets available to pay survivors and other creditors.  To this end, counsel for the Archdiocese has directed much of its efforts to researching and drafting all relevant bar-date motion papers and exhibits while working with insurers, the Committee and survivors' counsel to minimize disputes in connection with the motion.  These motion papers, which will be filed in advance of the April 16 hearing, include: (i) the Notice of Hearing, Verified Motion, Supporting Memorandum, and Proposed Order; (ii) the Non-Tort Proof of Claim Form; (iii) the Abuse Survivor Proof of Claim Form; (iv) the Non-Tort Bar Date Notice; (v) The Abuse Survivor Bar Date Notice; and (vi) the Publication Notice.

Counsel for the Archdiocese provided drafts of each of these documents to insurers and the Committee well in advance of its anticipated filing and has negotiated multiple revisions in an effort to achieve consensus on certain provisions while narrowing disputed provisions that will need to be resolved by the court.  Counsel for the Archdiocese has also coordinated with the Archdiocese's communications department to begin the process of facilitating the broad notice and publication procedures that will need to be completed upon entry of the bar-date order.

**2.      Schedules and Statement of Financial Affairs**

Following the Petition Date, Archdiocese and its counsel continued to work to prepare and draft schedules of assets and liabilities and statements of financial affairs which were subsequently filed on January 30, 2015.  The Archdiocese has also updated its schedules and statement of financial affairs to reflect additional creditors as additional information arrived postpetition and to clarify information contained in the initial schedules and SOFA. The amended and supplemental schedules and statement of financial affairs were filed on March 12, 2015.

### 3.      Retention applications

Counsel for the Archdiocese further drafted and submitted a verified statement in support of the Archdiocese's motion to employ Briggs and Morgan and, in connection with that filing, performed appropriate supplemental conflict checks and coordinated firm-wide audit responses. Counsel for the Archdiocese also facilitated the drafting and submission of the application to retain a financial advisor for the Archdiocese, special legal counsel to handle ordinary course matters, and NorthMarq as real estate broker for the sale of several parcels of real property.

### 4.      Information sharing agreements

To facilitate mediation efforts described in Section A above, counsel for the Archdiocese negotiated and drafted an information-share agreement with survivors' counsel and committee counsel to facilitate mediation, the exchange of relevant documents, and to otherwise assist in achieving a global resolution of all claims.

### 5.      Executory contracts and unexpired leases

Counsel for the Archdiocese has also undertaken initial review and analysis of the Archdiocese's executory contracts and unexpired leases, and in connection with that review and analysis drafted and brought a motion to reject an executory contract with Infor (US), Inc. The Archdiocese also intends to either assume an existing lease for the Byrne Residence or to seek an extension of the deadline for assumption or rejection of the lease.

### 6.      Communications with creditors, plan and program participants, and other interested parties

The Archdiocese and its counsel have engaged in discussions and communications with various creditors, plan and program participants, and other interested parties and their counsel relating to a variety of issues in connection with this Chapter 11 case including separate counsel retained to represent the trustees of the Archdiocese Medical Benefit Plan. This has included, among several other items, responding to requests for information, discussions relating to health plan and pension plan operations, communications with financial institutions regarding Archdiocese accounts and accounts held for others, and determining the treatment of various interests.

### 7.      Preparation of reports, meeting of creditors, and other meetings and communications with the United States Trustee's office

Counsel for the Archdiocese has worked closely with the Archdiocese and its financial advisor to timely prepare and file monthly operating reports, the initial financial report to the United States Trustee, the Rule 2015.3 report regarding entities in which the Archdiocese holds an interest, and to provide other required or requested information to the United States Trustee's office. Counsel for the Archdiocese and the Archdiocese's Chief Financial Official attended the first meeting of creditors in this case and have been engaged in ongoing communications with various representatives of the United States Trustee. The Archdiocese has filed the necessary monthly operating reports.

### 8.    Plan drafting

Counsel for the Archdiocese has begun its efforts to outline a plan of reorganization for the Archdiocese in connection with the mediation efforts referenced above and has provided Committee counsel with a preliminary term sheet.

### 9.    Service, administrative issues, and motion practice

Counsel for the Archdiocese facilitated service of the case filing on all potential tort claimants identifiable through reasonable diligence, which included an examination of the Archdiocese's historical books and records.  Counsel for the Archdiocese made its best efforts to ascertain current contact information for the unrepresented potential tort claimants by cross-checking the Archdiocese's internal files against public records.  Counsel for the Archdiocese also facilitated service of the case filing on those additional creditors added to the schedules and master mailing matrix following the petition date.  In addition, the Archdiocese and its counsel have reviewed proofs of claim and related documents as they have been filed and performed related and additional administrative services.  The Archdiocese and its counsel have engaged in extensive file and document review of various documents relating to plans, programs, contracts, leases, bequeaths, and funds to determine the treatment of such items in this case.

## C.    <u>Clergy Investigations and Disclosures</u>

Child protection protocols will be a part of the plan of reorganization.  Since the Petition Date, the Archdiocese and its counsel have worked with survivors' counsel and assisted the Archdiocese in implementing the child protection protocols first announced to the public on October 13, 2014.  The Archdiocese and its counsel have further assisted the Archdiocese in (i) conducting various clergy investigations and follow-up based on the results of Kinsale's comprehensive document review and (ii) providing appropriate notifications to law enforcement and the public regarding historic and pending accusations of sexual abuse of a minor.  Where appropriate, the Archdiocese and its counsel have also assisted in coordinating notifications to affected parishes and other dioceses and religious orders.  The efforts of the Archdiocese and its counsel have included the following:

- Coordinating with Tim O'Malley, Director of Ministerial Standards and Safe Environment, and other members of his team to: (i) conduct clergy-specific investigations; (ii) identify additional historic accusations of sexual misconduct from various files flagged by Kinsale during its review of roughly 3,333 clergy files in early 2014; (iii) determine appropriate follow-up action needed on each file; and (iv) implement and carry out appropriate follow-up investigations to the extent not already completed.

- Providing appropriate disclosures to law enforcement agencies in connection with historic and pending accusations of sexual abuse of minors.

- Responding to multiple requests for information from law enforcement agencies and, where appropriate, conducting document and ESI searches of Archdiocesan records/email servers to comply with law enforcement requests for information.

- Identifying through the review and analysis of victim advocacy records and clergy files, additional former clergy members subject to public disclosures on the grounds that a substantiated claim of sexual abuse of a minor has been asserted against them in the past.

- For each substantiated claim, drafting and coordinating the submission of notification letters to the affected clergy (if living), their next of kin (if deceased), and each of their respective orders, diocese and parishes where they held assignments.

- Editing and revising Archdiocese website content and press statements advising the public of the new disclosures and confirming the accuracy of published data for each priest through Archdiocesan and public record searches.

- Working and coordinating with survivors' counsel to provide information to the public regarding accusations of sexual abuse of a minor.  In some cases, this work has also included communicating with counsel retained by certain of the accused clergy members.

- Collaborating and ensuring the full sharing of information with the Archdiocese's victim advocacy office.

6975808v5