UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

The Archdiocese of Saint Paul and Minneapolis,                    Case No. 15-30125

Debtor.                         MEMORANDUM AND
ORDER DENYING
SUBSTANTIVE
CONSOLIDATION

_____

At Minneapolis, Minnesota, July 28, 2016.

This chapter 11 case came on for hearing on the motion of the unsecured creditors committee to substantively consolidate the debtor and over 200 Catholic nonprofit, non-debtor entities.

Edwin H. Caldie and Robert T. Kugler appeared on behalf of the unsecured creditors committee.  Richard D. Anderson and Benjamin E. Gurstelle appeared on behalf of the debtor. Dennis D. O'Brien appeared on behalf of the parish committee.    Mary Jo A. Jensen-Carter appeared on behalf of a group of parishes.  Phillip L. Kunkel appeared on behalf of the Catholic Community Foundation of Minnesota, Benilde-St. Margaret's School, and Grace High School dba Totino-Grace High School.  S. Steven Prince appeared on behalf of DeLaSalle High School. Adam C. Ballinger appeared on behalf of Our Lady of Grace Church.   Michael J. Iannacone appeared on behalf of the Catholic Finance Corporation, Faithful Shepherd Catholic School, the Guardian Angels Catholic Church of Oakdale, Minnesota, and other churches.   Cameron A. Lallier appeared on behalf of the Church of Saint Anne-Saint Joseph Hien.  Jeffrey R. Anderson and Michael G. Finnegan appeared on behalf of certain personal injury creditors.  Paul L. Ratelle appeared on behalf of the Church of St. Patrick of Edina, Minnesota.  Alyssa M. Troje appeared on behalf of St. Dominic Catholic Church, St. Stephen's Catholic Church, and others.  John A. Hedback appeared on behalf of The Catholic Cemeteries.  Andrew T. Brever appeared on behalf of the Church of St. Charles Borromeo of Minneapolis, Minnesota.  Sarah J. Wencil appeared on behalf of the United States Trustee.  Louis T. DeLucia appeared telephonically on behalf of the Catholic Mutual Relief Society of America.  Pamela J. Tillman appeared telephonically on behalf of TIG Insurance Company.  Peter J. Horst appeared telephonically on behalf of certain underwriters at Lloyd's, London.  Russell W. Roten appeared telephonically on behalf of certain underwriters at Lloyd's, London.   Joshua D. Weinberg appeared telephonically on behalf of Hartford Accident and Indemnity Company.

The court has jurisdiction over this proceeding under 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  For reasons stated below, the motion is denied.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on 07/28/2016
Lori Vosejpka, Clerk, by LH

## PROCEDURAL HISTORY

The Archdiocese of Saint Paul and Minneapolis filed a voluntary chapter 11 petition on January 16, 2015.  On May 23, 2016, the unsecured creditors committee moved to substantively consolidate the debtor and over 200 non-debtor Catholic entities, naming the following entities as targets:  187 parishes in the Archdiocese, consolidated schools, the Catholic Community Foundation of Minnesota, the Francophone African Chaplaincy, Segrado Corizon de Jesus [*sic*], the Chaplaincy of Gichitwaa Kateri [*sic*], Newman Center and Chapel [*sic*], the Catholic Finance Corporation, The Catholic Cemeteries, Totino Grace High School, DeLaSalle High School, and Benilde-St. Margaret High School [*sic*].  The committee did not assert or seek derivative standing.  Certain personal injury creditors joined the committee's motion.

The debtor and numerous targeted entities objected.  On June 2, 2016, I ordered Federal Rule of Bankruptcy Procedure 7012 to apply to the motion.  In response, the debtor and many targeted entities filed motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) or to dismiss for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), as applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b).  The following parties filed motions for judgment on the pleadings or to dismiss the substantive consolidation motion:  the debtor; the parish committee; the Catholic Community Foundation of Minnesota; Benilde-St. Margaret's School, DeLaSalle High School, and Grace High School dba Totino-Grace High School; Church of St. Patrick of Edina, Minnesota; Our Lady of Grace Church; the Catholic Finance Corporation; and Faithful Shepherd Catholic School, Guardian Angels Catholic Church of Oakdale, Church of St. Joseph of Rosemount, and Church of St. Thomas Becket.  Some movants joined in other movants' motions.

Other parties joined in certain motions opposing consolidation.   A large group of parishes joined in the motions filed by the debtor, the parish committee, and others.  St. Dominic Catholic Church, St. Stephen's Catholic Church and School, Church of St. Thomas the Apostle, St. Ambrose of Woodbury, St. Bartholomew Catholic Faith Community, Church of St. Pius X, Christ the King Church, the Church of the Incarnation, St. Vincent de Paul Catholic Church, the Church of the Epiphany, Immaculate Heart of Mary, St. Michael Catholic Church, and Saint Peter Claver Church joined in the motions filed by the debtor, the parish committee, and St. Patrick of Edina.  The Catholic Cemeteries joined in the motion filed by the debtor.  The Church of St. Charles Borromeo joined in the motions filed by the debtor, the parish committee, and St. Patrick of Edina.  The Church of Saint Anne-Saint Joseph Hien joined in the motions filed by the debtor, the parish committee, and St. Patrick of Edina.

### DISCUSSION

**Motion to Dismiss and Motion for Judgment on the Pleadings**

I ordered Federal Rule of Bankruptcy Procedure 7012 applicable to the substantive consolidation motion. Rule 7012(b) provides that Federal Rule of Civil Procedure 12(b)–(i) applies. Fed. R. Bankr. P. 7012, *incorporating* Fed. R. Civ. P. 12(b)–(i).

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6), *as incorporated by* Fed. R. Bankr. P. 7012(b). When reviewing motions to dismiss under Civil Rule 12(b)(6), courts accept factual allegations as true, construing all reasonable inferences from those allegations in favor of the non-movant. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010) (citation omitted). "A motion to dismiss should be granted if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Trooien v. Mansour*, 608 F.3d 1020, 1026 (8th Cir. 2010) (quotation omitted). The complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if "the plaintiff pleads [sufficient] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Plausibility "requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 89:  (quotation omitted).

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c), *as incorporated by* Fed. R. Bankr. P. 7012(b). On a Federal Rule of Civil Procedure 12(c) motion, if matters outside the pleadings are presented to the court and the court does not exclude them, the motion is treated as a motion for summary judgment under Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 12(d), *as incorporated by* Fed. R. Bankr. P. 7012(b).

The grant of either a motion to dismiss or a motion for judgment on the pleadings is proper when there is no material fact in dispute and the movant is entitled to judgment as a matter of law. *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (quotation omitted). Generally, a court may not consider materials outside the pleadings, but courts may consider certain "materials that are part of the public record" and "materials necessarily embraced by the pleadings" such as "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Id.* (quotation omitted).

**Standing**

The debtor and many of the targeted entities argue that the committee's request for substantive consolidation should be denied because the committee lacks standing to seek substantive consolidation. They argue that only the trustee or debtor-in-possession has standing

to pursue turnover, avoidance, or recovery actions regarding property of the estate.  The Eighth Circuit has not ruled on whether an unsecured creditors committee has standing to pursue substantive consolidation.

Generally, for standing in a chapter 11 case, a party must satisfy statutory standing under 11 U.S.C. § 1109, constitutional standing under Article III, and the evolving prudential standing requirements.  *See Hughes v. Tower Park Props., LLC (In re Tower Park Props., LLC)*, 803 F.3d 450, 456 (9th Cir. 2015).

Section 1109(b) provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."  11 U.S.C. § 1109(b).  Clearly, the committee has statutory standing. This contrasts with the statutory avoidance powers where Congress has bestowed exclusive standing on the trustee, or in reorganization cases, the debtor in possession.

To have "constitutional standing, the plaintiff must show that it has suffered an 'injury in fact' that is:  concrete and particularized and actual or imminent; fairly traceable to the challenged action of the defendant; and likely to be redressed by a favorable decision." *United States v. United Sec. Sav. Bank*, 394 F.3d 564, 567 (8th Cir. 2004) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  Here, the committee alleges that is being denied access to assets held by the targeted entities, which should be included in the estate for distribution. Under this view, denial of substantive consolidation could have a negative impact on the distribution to unsecured creditors, while a grant of substantive consolidation might add more assets, and admittedly more liabilities, to the estate, which *could* increase distributions to creditors.  In this light, unsecured creditors and its representative, the committee,  could have an interest in the outcome of substantive consolidation, which confers constitutional standing on the committee to pursue substantive consolidation.

Previously, the Supreme Court recognized at least three prudential standing doctrines: "'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)). Since then, however, the Court realigned the zone-of-interests test and the generalized-grievances test.  "Whether a plaintiff comes within the zone of interests is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Grasso Enterprises, LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting *Lexmark*, 134 S. Ct. at 1387).   "While we have at times grounded our reluctance to entertain such [generalized grievances] suits in the counsels of prudence  . . .  we have since held that such suits do not present constitutional cases or controversies. They are barred for constitutional reasons, not prudential ones." *Lexmark*, 134 S. Ct. at 1387 n.3 (citations and internal quotation marks

4

omitted).  Here, no party challenged the committee's standing under any of these principles.  In seeking substantive consolidation, the committee seeks relief for its own interests, or more precisely, that of its constituency.  The matter involves a particularized grievance for consolidating estates.  Since substantive consolidation is not a statutory cause of action, the zone of interests test is not implicated here.  In sum, the committee meets prudential standing requirements as well.  The committee has standing to make a motion for substantive consolidation.

**Motion v. Adversary Proceeding**

Relying on *In re The Julien Company*, 120 B.R. 930 (Bankr. W.D. Tenn. 1990), the debtor and the targeted entities contend that even if the committee had standing, the court should deny the motion for substantive consolidation on procedural grounds, arguing that the committee should have sought substantive consolidation of non-debtors in an adversary proceeding rather than by motion.  The parish committee concurs, adding that Federal Rule of Bankruptcy Procedure  7001(1) requires an adversary proceeding for the recovery of money or property and that Federal Rule of Bankruptcy Procedure 7001(7) requires an adversary proceeding for obtaining "other equitable relief."

With exceptions, Bankruptcy Rule 7001(1) requires an adversary proceeding in order to recover money or property.  Fed. R. Bankr. P. 7001(1).  Substantive consolidation, however, is not tantamount to turnover.  Instead, substantive consolidation is an equitable, judicial remedy that is distinct from the express, statutory remedies of turnover or other recovery actions.  Ssubstantive consolidation is traditionally sought by motion.

In any event, certain procedural rules for adversary proceedings and contested matters are virtually the same.  *See* Fed. R. Bankr. P. 9014(c) (listing certain Part VII rules applicable to contested matters).  To the extent that they are not, a court may direct that certain rules of Part VII of the Bankruptcy Rules apply to a contested matter.  *Id.* ("[U]nless the court directs otherwise . . . ").

**Substantive Consolidation with Non-debtors**

The debtor and the targeted entities next argue that a bankruptcy court's equitable powers under 11 U.S.C. § 105(a) do not extend to substantive consolidation of a debtor and non-debtors.

The Eighth Circuit has not addressed the issue.  First, a bankruptcy court's authority, if any, to order substantive consolidation arises under a bankruptcy court's general equitable powers under § 105(a).  *First Nat'l Bank of El Dorado v. Giller (In re Giller)*, 962 F.2d 796, 799 (8th Cir. 1992).  However, "[a]lthough a bankruptcy court is essentially a court of equity, its broad equitable powers may only be exercised in a manner which is consistent with the provisions of the Code."  *Johnson v. First Nat'l Bank of Montevideo, Minn.*, 719 F.2d 270, 273 (8th Cir. 1983) (citations omitted).  Section 105(a) permits a bankruptcy court to "issue any

order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Code.  11 U.S.C. § 105(a).  But it is a general rule of law that a bankruptcy court "may not contravene specific statutory provisions" when exercising § 105(a) authority.  *Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014); *see also Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206–07 (1988).  Indeed, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."  *Siegel*, 134 S. Ct. at 1194 (quoting *Norwest*, 485 U.S. at 206).  The Supreme Court said:

> It is hornbook law that § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." 2 Collier on Bankruptcy ¶ 105.01[2], p. 105–6 (16th ed. 2013). Section 105(a) confers authority to "carry out" the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits.

*Siegel*, 134 S. Ct. at 1194.

Second, substantively consolidating a debtor with non-debtors over their objections squarely implicates § 303(a).  In addition to its other statutory standing, procedural and substantive requirements, § 303(a) bars the involuntary bankruptcy of "a corporation that is not a moneyed, business, or commercial corporation."  11 U.S.C. § 303(a).  The accompanying legislative history explains, "Eleemosynary institutions, such as churches, schools, and charitable organizations and foundations, likewise are exempt from involuntary bankruptcy."  S. Rep. No. 95-989, at 32 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5818.  To determine whether an entity is a "moneyed, business, or commercial corporation," courts consider "the classification of the corporation by the state; the powers conferred upon it; and the character and extent of its main activities."  *Yehud-Monosson USA, Inc. v. Fokkena (In re Yehud-Monosson USA, Inc.)*, 458 B.R. 750, 755–56 (B.A.P. 8th Cir. 2011) (quoting *Missco Homestead Ass'n v. United States*, 185 F.2d 280, 282 (8th Cir. 1951)).  Also, Black's Law Dictionary defines eleemosynary as "[o]f, relating to, or assisted by charity; not-for-profit."  *Black's Law Dictionary* (10th ed. 2014).  The debtor and the targeted, non-debtor Catholic entities are not moneyed, business, or commercial corporations; they are organized as religious corporations and organizations under Minnesota law conferring powers to certain religious corporations and organizations; and the character of their activities are predominantly religious services, religious education, and charitable services.  As such, they are not subject to involuntary petitions under § 303(a).

Last, ordering substantive consolidation of eleemosynary non-debtors over their objections contravenes and is inconsistent with § 303(a).  Substantive consolidation would order eleemosynary non-debtors into the bankruptcy process over their objections.  This would, in effect, circumvent and contravene § 303(a).  In light of the bankruptcy court's limited power under § 105(a) and in light of § 303(a)'s prohibition of involuntary bankruptcy cases against "a corporation that is not a moneyed, business, or commercial corporation," 11 U.S.C. § 303(a), I conclude that I lack authority to substantively consolidate the debtor with the targeted entities.

6

**Consolidation Generally**

Even if I had the authority to substantively consolidate the debtor with non-consenting, eleemosynary non-debtors, the committee failed to allege sufficient facts to support substantive consolidation.

Generally, a grant of substantive consolidation is an equitable power, *In re Giller*, 962 F.2d at 799, not expressly authorized by the Code but is of "judicial gloss," *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir. 1988).

Substantive consolidation treats separate legal entities as if they were a consolidated entity, *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005) by pooling those entities' assets and liabilities and satisfying each entity's liabilities from the common pool of assets, *In re Huntco Inc.*, 302 B.R. 35, 38 (Bankr. E.D. Mo. 2003) (citation omitted). Consolidation restructures the rights of creditors and may dilute some creditors' recovery. *Owens*, 419 F.3d at 205.

The objective of substantive consolidation is the "equitable treatment of all creditors." *Augie/Restivo*, 860 F.2d at 518. Courts should apply the doctrine sparingly, however, because substantive consolidation can possibly harm some creditors. *See Huntco*, 302 B.R. at 38 (citation omitted).

The Eighth Circuit approved substantive consolidation of chapter 11 corporate debtors in *In re Giller*. Under *In re Giller*, courts consider: "1) the necessity of consolidation due to the interrelationship among the debtors; 2) whether the benefits of consolidation outweigh the harm to creditors; and 3) prejudice resulting from not consolidating the debtors." *Id.* at 799 (citing *In re N.S. Garrott & Sons*, 48 B.R. 13 (Bankr. E.D. Ark. 1984)). "The analysis, however, should not only focus upon [the] interrelationship, but also on the necessity of consolidation because of it." *Huntco*, 302 B.R. at 39 (citation omitted). "Because substantive consolidation is purely an equitable remedy, a court should not employ it when it would benefit one set of creditors at the expense of another unless the proponent can advance some equitable reason for such a redistribution." *Id.* at 40.

Some examples illustrate the necessity of consolidating interrelated debtors, including "abuses of the corporate form;" one debtor's financing other debtors without a regular repayment schedule; all the other debtors having headquarters rent-free in one debtor's building; one debtor's assets securing other debtor's loans; some debtors' employees performing uncompensated services for all debtors; and many of the interrelated debtors being insolvent. *Giller*, 962 F.2d at 798–99.

Another court, in *In re Circle Land & Cattle Corp.*, 213 B.R. 870 (Bankr. D. Kan. 1997), explained other equitable grounds that could require substantive consolidation: "general creditors have dealt with the entities as a single economic unit to their detriment; that a necessity

exists for consolidation to protect creditors; that a harm to the creditors could be avoided by the remedy; or that the benefits of consolidation outweigh any resulting harm to general creditors." *Id.* at 876.

Consolidation was also justified when "the inability of the court and creditors to unravel the snarled skein of affairs of the entities involved the need for consolidation of their estates into one bankruptcy estate outweigh any incidental prejudice that might affect the creditors of either party," *In re Lewellyn*, 26 B.R. 246, 253 (Bankr. S.D. Iowa 1982), and when "the interrelationships of the group are hopelessly obscured and the time and expense necessary even to attempt to unscramble them [are] so substantial as to threaten the realization of any net assets for all the creditors." *Chem. Bank New York Trust Co. v. Kheel*, 369 F.2d 845, 847 (2d Cir. 1966).

The committee alleges in its motion that the debtor, through the Archbishop, exercises control over the targeted Catholic entities and properties, arguing that the debtor and non-debtors function as a single, interrelated operation subject to the debtor's direct control and authority through the Archbishop.[1]  The committee further contends that the targeted entities' assets are intertwined with the debtor under certain canon law applications, arguing that Canon law, federal tax law, and Vatican decrees require the debtor to exercise authority over non-debtor assets, and that when viewing the debtor's and non-debtors' assets through those sources' lens, the debtor's assets become indistinguishable from those of the non-debtors.   The committee also alleges that the liabilities are inextricably intertwined because clergy sexual abuse claims have been asserted against the debtor, parishes, and schools, arguing that most, if not all, of the claims asserted against those parishes were asserted against the debtor.

 The committee failed to sufficiently establish that the interrelationship warrants consolidation.  To demonstrate the interrelationship, the committee alleges facts naming only a few of the more than 200 targeted entities.   And for the most part, the committee generally identifies the rest of the non-debtors as "consolidation parties," "parishes," "schools," or "chaplaincies."  Allegations generically identifying actors fail to meet plausibility under *Iqbal* and *Twombly*.  A claim is facially plausible if "the plaintiff pleads [sufficient] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Those allegations concerning generic actors are insufficient because they fail to identify and show how each non-debtor's characteristics or actions make them individually subject to substantive consolidation.  It is also unreasonable to infer all the non-debtors are liable for the actions or characteristics of a few named non-debtors because the plausibility standard generally does not allow holding hundreds of non-debtors liable for the conduct of one.  Facts demonstrating grounds for substantive consolidation should have been alleged as to each and every non-debtor individually, but the committee did not do so here.

Even if the committee had alleged facts identifying each non-debtor, the motion fails to show how the interrelationship requires consolidation.  There is no doubt that the Catholic Church is hierarchical in its organization and authoritarian in doctrinal matters.  But those

---

[1] In this they equate the Archbishop with the Archdiocese.  However,  that is neither factually nor legally correct.

characteristics are insufficient for a court to ignore its corporate legal structure.  The typical substantive consolidation is reserved for situations where the finances of two or more debtors are so confusingly intertwined that it is impossible to separate them.  Nothing of the sort is alleged here.  There were insufficient facts demonstrating a complete abuse of the non-debtors' corporate form under Minnesota law governing religious corporations and organizations.  For example, the committee contends that the Archbishop and Vicar General have certain managerial functions and oversight over the non-debtors.   Even if the Archbishop exercises control over the targeted Catholic entities and properties, such exercises of authority, alone, fail to constitute an abuse of the corporate form as such acts are duly contemplated under Minnesota law governing religious corporations and organizations.  The *ex officio* roles of the Archbishop and the Vicar General (mandated, by the way, by Minnesota corporation law) do not mean that the finances of the targeted entities are *inextricably* intertwined with those of the debtor.  The committee also avers that the targeted entities' assets were intertwined with the debtor under certain canon law or other law applications.  Such averments are simply conclusions void of plausibility.  Plausibility requires more than conclusions.  *Twombly*, 550 U.S. at 555.

Further, the committee did not allege sufficient facts demonstrating the interrelationship among the targeted entities collectively, not just the interrelationship of the debtor vis-à-vis each targeted entity, and not just the interrelationship of one targeted entity with another.
There were insufficient facts alleging that  a substantial number of non-debtors share the same board, same staff, same assets, or same liabilities so as to make them accountable for each other's liabilities under substantive consolidation.   Although there are certainly financial transactions between the Archdiocese and many of the targeted entities, their finances are distinct and not tangled or intertwined.

The committee failed to sufficiently show that the benefits of consolidation outweigh the harm to creditors.  The committee argues that substantive consolidation would decrease litigation and increase the pool of assets available to pay claims.  For this point, the committee contends that the creditor pool in this case consists mostly of clergy sexual abuse claimants whose claims "could easily exceed $1 billion," that clergy sexual abuse claims have been asserted against non-debtor parishes and schools, and that the liabilities against those parishes and schools are difficult to segregate.  The committee also concluded that little to no harm would result to creditors upon substantive consolidation.

The committee's arguments with respect to the second factor are implausible because they are contradictory and internally inconsistent.  If some claims have been asserted against some, not all, of the targeted non-debtor parishes and schools, then it is inferable that there are some demarcations of liability.  As such, the alleged liabilities of the targeted entities are not inextricably intertwined.

In addition, the committee concludes that little to no harm would result to creditors, but this conclusion falls far too short to explain how the creditor constituency would change if all of the over 200 non-debtors were substantively consolidated with the debtor.  This conclusion also ignores the scope of the liabilities of the over 200 non-debtors, who may very well have a wide

range of debts themselves.  Also, the committee has not alleged that clergy sexual abuse claims have been asserted against all of the targeted entities. In fact, some of those entities pleading claim just the opposite.  Substantive consolidation does not reasonably result in the same benefits for all creditors.  Creditors of the non-debtors who have no sexual abuse claims asserted against them would not benefit from substantive consolidation as much as the creditors of non-debtors who do have clergy sexual abuse claims asserted against them because those creditors do not face similar risks of litigation.  Substantive consolidation could dilute the recovery of creditors of non-debtors who do not have clergy sexual abuse claims asserted against them.  Since "substantive consolidation is an equitable remedy, a court should not employ it when it would benefit one set of creditors at the expense of another unless the proponent can advance some equitable reason for such a redistribution."  *Huntco*, 302 B.R. at 40.  Here, the facts alleged in the motion do not show how the benefit of consolidation outweighs the harm to certain creditors.

Lastly, the committee alleges that a denial of substantive consolidation results in prejudice because the channeling injunction included in the Archdiocese's proposed plan, significantly prejudices the committee.  Issues surrounding confirmation of the plan, including the propriety of the channeling injunction are more appropriately reserved for a plan confirmation dispute.

## Other Arguments

Because other factors compel me to deny the motion, I need not address other arguments made by the parties, including those based on the First Amendment and the Religious Freedom Restoration Act.

IT IS ORDERED:

1.   The motions of the targeted entities are granted.
2.   The motion of the committee of unsecured creditors to substantively consolidate the estates of the debtor and the targeted Catholic entities is denied.

/e/ Robert J. Kressel

_____
Robert J. Kressel
United States Bankruptcy Judge

10