## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Case No. 15-30125 |
| The Archdiocese of Saint Paul and Minneapolis, | Chapter 11 |
| Debtor. | |

### OBJECTION OF THE ARCHDIOCESE OF SAINT PAUL AND MINNEAPOLIS TO SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

The Archdiocese of Saint Paul and Minneapolis (the "Archdiocese" or the "Debtor") submits this objection to the

> Second Amended Chapter 11 Plan of Reorganization of the Official Committee of Unsecured Creditors of the Archdiocese of Saint Paul and Minneapolis

(the "UCC Plan") [ECF No. 890]. The disclosure statement supporting the UCC Plan was filed by the Official Committee of Unsecured Creditors (the "UCC") on December 19, 2016 (the "UCC Disclosure Statement") [ECF No. 891].

This objection is filed under Section 1128 of the Bankruptcy Code and this Court's May 18, 2017 order. Terms not otherwise defined in this objection are defined in accordance with the UCC Plan or UCC Disclosure Statement, as appropriate.

### OBJECTIONS TO UCC PLAN CONFIRMATION

**1.     Improper funding mechanism**

The UCC Plan rests on a funding mechanism not authorized by the Bankruptcy Code. This mechanism contemplates that "…the Bankruptcy Court will determine the value of the Debtor's assets and the Debtor will then pay that value into the Trust." Plan § 5.2(b). The

Bankruptcy Code, however, does not authorize a bankruptcy court to value assets for purposes of fixing the amount of the contribution to be made by the debtor to the plan following confirmation. This Court cannot be required to "supplement" a plan at confirmation to include a material term such as the amount of the contribution to be made by the debtor under the plan. The UCC has failed to comply with the Bankruptcy Code, as required by Section 1129(a)(1), as a result of its inclusion of an unauthorized funding mechanism.

This objection presents a threshold legal issue.

**2.    Failure to provide adequate means for implementation**

The UCC Plan requires that the "value" of all Archdiocese assets be turned over to the Trust, either at confirmation or three years thereafter (with interest). The Archdiocese believes that this provision would, by definition, render the Archdiocese insolvent as of the date of confirmation.

The UCC Plan contemplates that the Archdiocese will obtain funding for the required Trust payment through "increases in Parish assessments, fundraising, loan financing, and/or the sale of selected assets." UCC Plan § 5.2(b).  The financing mechanism outlined in the UCC Plan is illusory in that, among other things, the Archdiocese cannot compel third parties to make loans or donations. Certain of the funding mechanisms, including, for example, the proposal that the Archdiocese increase parish assessments by some unspecified amount, represent a violation of Canon Law, the First Amendment and the Religious Freedom Restoration Act ("RFRA").  Parish assessments do not represent a civil legal obligation of the parish.

The UCC Plan fails to provide adequate means for implementation, as required by Section 1123(a)(5). This represents a threshold legal issue.

**3.   UCC Plan not feasible**

As stated, the UCC Plan cannot be implemented as drafted.

However, if confirmed, the UCC Plan would require further reorganization of the Archdiocese in violation of Section 1129(a)(11) in that, among other things, the balance to be contributed to the Trust at confirmation likely will be exhausted to pay administrative expenses, leaving little, if anything, available to fund litigation against the carriers.

Additionally, the Archdiocese will not be able to pay operating expenses, the non-Tort Claims payable by the Archdiocese under the UCC Plan, including any contribution or indemnity claims not discharged at confirmation, and fund the GIF. The Archdiocese is unlikely to have access to insurance monies to pay Tort Claim defense costs or judgments. The UCC Plan expressly allows Tort Claimants to obtain judgments and to execute on Archdiocese property during the appeal process following the entry of judgment on any individual Tort Claim and insurance claim as to such Tort Claim.

The operation of the UCC Plan presents a question of law. Other feasibility issues may present both legal and factual issues to the extent that the UCC Plan does not contemplate the liquidation of the Archdiocese.

**4.   Improper liquidation**

The Archdiocese objects to the UCC Plan on the grounds that that the UCC Plan represents a thinly disguised improper liquidation of a non-profit religious entity in violation of the Bankruptcy Code, including Section 1112(c) of the Bankruptcy Code.

The Archdiocese further objects to the proposed liquidation of the Archdiocese as a violation of the First Amendment and RFRA. The UCC Plan does not comply with applicable non-bankruptcy law, as required by Section 1129(a)(3) of the Bankruptcy Code.

This objection presents a threshold legal issue.

5. **False and misleading liquidation analysis**

The Archdiocese objects to the UCC Plan's incorporation of or reliance on alleged liquidation values set forth on Exhibit C to the UCC Disclosure Statement as a basis for valuation. The valuations set forth on Exhibit C are inaccurate and grossly misleading. Among other things, the alleged liquidation analysis does not take into account mortgage liens, the interests of tenants under leased property or the fact that certain property carries restrictive donative intent and may not be considered estate property. This is improper under, among other provisions, Sections 541 and 1129(a)(1) of the Bankruptcy Code.

This objection represents mixed questions of law and fact.

6. **Improper assignment of claims**

The UCC Plan provides for an assignment of various rights and "causes of action" to the Trust, including the transfer of avoidance actions and other time-barred claims under Section 546 in violation of Sections 1129(a)(1), (2) and (3) of the Bankruptcy Code.

This objection presents a threshold legal issue.

7. **Improper assignment of Home settlement**

The UCC Plan requires the assignment of the Archdiocese Claim in the liquidation proceeding of Home Insurance Company. UCC Plan §5.2(e). The UCC Plan, however, does not provide for the channeling injunction required under the proposed settlement agreement with Home. Plan at Exhibit G. For this reason, the UCC Plan fails to provide adequate means for its implementation under Section 1123(a)(5) and fails to comply with the applicable provisions of the Bankruptcy Code, as required by Section 1129(a)(1) of the Bankruptcy Code.

This objection presents a threshold legal issue.

8323897v9

**8.     Improper designation of Class 3 Claims as unimpaired**

The UCC Plan contemplates that the GIF Plan will be transferred to the Trust (less a $1 million reserve). This proposed treatment does not take into account the claims of GIF participants with regard to past contributions and does not preserve the legal, equitable or contractual rights of the GIF participants to the GIF fund and has effectively stripped the creditors in Class 3 of security for payment of the claims dealt with in Class 3. The UCC's treatment of the creditors in Class 3 as unimpaired does not comply with the applicable provisions of the Bankruptcy Code, including Sections 1123(a)(2), 1123(a)(3), 1124, 1129(a)(1), 1129(a)(7), 1129(a)(8), and 1129(b)(1) of the Bankruptcy Code.

This objection presents a threshold legal issue.

**9.     Improper assignment of workers' compensation funds**

The GIF includes a workers' compensation deposit required to be maintained with the State of Minnesota. The UCC Plan, however, also provides for the assignment of this deposit in the amount of approximately $3,871,158. Plan at Exhibit D. The underlying agreements between the Archdiocese and the Commissioner of Commerce provides that the Archdiocese shall have no right, title or interest in the deposit. The provisions of the UCC Plan violate applicable non-bankruptcy law and the provisions of Section 1129(a)(3) of the Bankruptcy Code.

This objection presents a threshold legal issue.

**10.    Improper designation of Class 14 Claims as unimpaired**

By its terms, the UCC Plan required that the Archdiocese "assume" its participation in the AMBP and transfer the entire balance in the AMBP accounts to the Trust.

Class 14 creditors are clearly impaired under the terms of the UCC Plan as currently drafted. The UCC Plan violates Sections 1123(a)(2), 1123(a)(3), 1124, 1129(a)(1), 1129(a)(7), 1129(a)(8), and 1129(b)(1) of the Bankruptcy Code.

8323897v9

The Archdiocese is aware of a stipulation regarding the AMBP filed today [Docket No. 1059] purporting to "clarify" provisions of the UCC Plan. The Archdiocese assumes that the timing of the filing was not accidental. The Archdiocese reserves its original objection as to the improper characterization of the creditors in Class 14. The Archdiocese also gives notice that it may seek to supplement this objection in light of this last-minute filing. As a threshold matter, the UCC's assertion that amounts in the AMBP "must be included in any valuation of the Archdiocese's assets" creates additional issues as to the proposed means for implementation of the UCC Plan and may raise other confirmation issues.

This objection may represent a mixed question of law of fact.

**11.   Improper designation of Class 8 Claims as unimpaired**

Class 8 claims are defined in the UCC Plan to include outstanding deposits made to the Inter-Parish Loan Fund and claims for assessment overpayments. The UCC Plan provides for payment of these claims through a credit against future assessments. The UCC Plan does not leave unaltered the legal, equitable and contractual rights of claimants in Class 8 and does not reinstate or cure any existing defaults and payment of Class 8 claims as required under Section 1124(2) of the Bankruptcy Code. Consequently, the UCC Plan does not comply with the applicable provisions of the Bankruptcy Code, including Sections 1123(a)(2), 1123(a)(3), 1124, 1129(a)(1), 1129(a)(7), 1129(a)(8), and 1129(b)(1) of the Bankruptcy Code.

This objection presents a threshold legal issue.

**12.   Improper designation of Class 13 Claims as unimpaired**

The UCC Plan provides that the creditors in Class 13 will not receive any property "in accordance with 11 U.S.C. § 502(e)." UCC Plan § 4.13. However, to the extent that claims in Class 13 are not disallowed, such claims are clearly impaired and should be deemed to reject the plan.

**13.    Disenfranchisement of impaired creditors**

The UCC Plan is intended to prevent impaired creditors in Class 3, Class 8, and Class 14 from voting on the UCC Plan. In so doing, the UCC has attempted to prevent this Court from considering the preferences of creditors when examining competing bankruptcy plans, as contemplated by Section 1129(c) of the Bankruptcy Code and has violated Sections 1129(a)(7) and (8) of the Bankruptcy Code.

This objection presents a threshold legal issue.

**14.    Improper treatment of Class 12 Claims**

The UCC Plan purports to provide for the treatment of certain claims in accordance with the Trust Distribution Plan. UCC Plan § 4.12(b). The Archdiocese objects to the treatment of claims in Class 12 to the extent that the Trust Distribution Plan does not specify the treatment of such claims. For this reason, the UCC has failed to comply with the provisions of Section 1123(a)(3) of the Bankruptcy Code.

In addition, the UCC has proposed that liability for other claims in Class 12 "be assumed and paid in full by the Reorganized Debtor." UCC Plan §4.12(b). The UCC Plan violates Section 1123(a)(4) of the Bankruptcy Code by providing for different treatment of certain Class 12 claims.

This objection presents a threshold legal issue.

**15.    Unfair discriminates between Class 6 Claims and Class 7 Claims**

Under the UCC Plan, Class 6 Claims (Pending Tort Claims) will be paid through Trust proceeds and will be administered under the distribution procedures outlined in the UCC Plan. These claims will receive the benefit of settlements with insurers. Class 7 Claims (Future Tort Claims) receive none of these benefits. The UCC Plan, as drafted, violates the unfair discrimination provisions of §§1122 and 1123(a)(4) of the Bankruptcy Code.

8323897v9

**16.     Likely administrative insolvency under the UCC Plan**

The UCC has failed to establish that the funds available at the effective date will be sufficient to pay all administrative expenses as required by Section 1129(a)(9)(A) of the Bankruptcy Code.

This objection may represent a mixed question of law and fact.

**17.     Failure to comply with applicable non-bankruptcy law concerning religious corporations**

Chapter 315 of the Minnesota Statutes includes various provisions relating to the management of religious societies and the use, disposition or encumbrance of property by a church or religious society.  The UCC Plan disregards these provisions.  The UCC Plan further violates RFRA and the First Amendment through, among other things, provisions dealing with the appointment of officers and directors (UCC Plan §15.3) the collection of parish assessments (UCC Plan §8.4 (b)) and the appointment of the Trustee as representative of the Archdiocese (UCC Plan §6.1 (c)).  These provisions render the UCC Plan unconfirmable under various provisions of the Bankruptcy Code, including Section 1129(a)(3) and 1129(a)(16) of the Bankruptcy Code.

This objection may represent a mixed question of law and fact.

**18.     Acceptances obtained through improper solicitation**

The Archdiocese objects to the UCC Plan to the extent that the UCC has relied on acceptances of the UCC Plan or expressions of preference for the UCC Plan obtained or procured through improper solicitation.  Such solicitations include, but are not limited to, publication of false and misleading statements concerning the amounts available under the UCC Plan and statements to the effect that (a) the alternative plan of reorganization filed by the Debtor called for the Archdiocese to contribute only a small fraction of its assets (or less than one

- 8 -

percent of its assets), and (b) the Debtor's plan represents an attempt to shield its assets. This violates, among others, Sections 1125, 1126(b), 1129(a)(1), and 1129(a)(2) of the Bankruptcy Code. The UCC Plan is also replete with undefined terms and inconsistencies that may have affected the solicitation, balloting and feasibility of the plan in violations of Sections 1125(a)(1), and 1129(a)(8), (10) and (11) of the Bankruptcy Code.

This objection may represent a mixed question of law and fact.

19. **Improper separation of rights and liability**

The UCC Plan violates Section 1129(a)(3) by proposing a means forbidden by law, as it assigns to the Trust the right to pursue Archdiocese's interests in insurance policies but does not assign the Archdiocese's liability. The proposed separation of rights and liabilities violates public policy.

20. **Proposed turnover of confidential reports**

The press release issued by counsel for the UCC on or about May 11, 2017 states that "[t]he Committee's plan also calls for the immediate release of the investigative report concerning former Archbishop John Nienstedt, and requires an immediate end to all payments being made to priests credibly accused of sexually abusing children." To the extent that the UCC Plan is consistent with this press release, such provisions violate applicable attorney-client and work-product doctrines and represent a violation of Section 1129(a)(3) of the Bankruptcy Code.

This objection may represent a mixed question of law and fact.

21. **The UCC Plan was not proposed in good faith**

The UCC Plan is tainted by the false and misleading representations referenced above, violates several provisions of the Bankruptcy Code and other applicable law and is premised on a unreasonable, illogical and inappropriate funding mechanism not contemplated or permitted

under the Bankruptcy Code. At the same time, the UCC Plan leaves the Archdiocese destitute and without important rights, provides the Archdiocese essentially no relief, delays (and potentially eliminates) the Archdiocese's discharge for Tort Claims (UCC Plan § 6.2) and improperly divests the Archdiocese and its carriers of the right to control the Archdiocese's defense of Tort Claims. (UCC Plan §6.2(l)). The UCC Plan, when considered in its entirety, fails to comply with the good faith requirement of Section 1129(a)(3).

This objection may represent a mixed question of law and fact.

**22.   Joinder in other objections**

The Archdiocese specifically joins in:

(a)  All other filed objections to the UCC Plan filed by the parishes, the official parish committee or other non-debtor Catholic entities;

(b) Objections A and B filed by Travelers Casualty and Surety Company and objections F and I to the extent the UCC Plan requires the Archdiocese to breach any duty to cooperate owed to Non-Settling Insurers or otherwise divests the Archdiocese or Non-Settling Insurers of the right to control the defense of Tort Claims contrary to the policies and Minnesota law; and

(c) Objections 18, 19, 23 and 31 filed by Certain Underwriters at Lloyd's, London

each to the extent not already stated or inconsistent with the Archdiocese's objections here or the Archdiocese plan.

WHEREFORE, for the reasons set forth above, the Archdiocese of Saint Paul and Minneapolis respectfully requests that the Court deny confirmation of the UCC Plan and provide the Archdiocese with such other and further relief as may be just and equitable.

Undersigned counsel certifies that each objection stated in numbered paragraphs 1 through 21 contains 200 words or less.

8323897v9

Respectfully submitted,

BRIGGS AND MORGAN

Dated:  June 7, 2017   BY:   */e/ Richard D. Anderson*
Richard D. Anderson (#2306)
randerson@briggs.com
Charles B. Rogers (#0130588)
crogers@briggs.com
Benjamin E. Gurstelle (#0389968)
bgurstelle@briggs.com
2200 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 977-8400
Facsimile: (612) 977-8650

Attorneys for the Archdiocese of Saint Paul and Minneapolis

8323897v9