## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                         Case No. 15-30125

The Archdiocese of Saint Paul and              Chapter 11
Minneapolis,

       Debtor.

---

**MEMORANDUM OF LAW AND APPENDIX IN SUPPORT OF THE OBJECTIONS OF TRAVELERS CASUALTY AND SURETY COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY, AMERICAN HOME ASSURANCE COMPANY, TIG INSURANCE COMPANY, AND FIREMAN'S FUND INSURANCE COMPANY TO THE SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

---

Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company), Hartford Accident and Indemnity Company, American Home Assurance Company, TIG Insurance Company, as Successor by Merger to International Insurance Company, and Fireman's Fund Insurance Company (collectively, the "Insurers"), pursuant to the Court's June 15, 2017 Scheduling Order, (ECF No. 1090), respectfully submit this memorandum of law in support of their objections to the Second Amended Plan of Reorganization of the Official Committee of Unsecured Creditors of the Archdiocese of Saint Paul and Minneapolis (the "UCC Plan"), (ECF No. 890). Terms not otherwise defined herein have the meaning ascribed to them in the UCC Plan. For ease of reference, the relevant UCC Plan provisions are set forth in the attached Appendix. The Insurers' objections are:

**A.     The UCC Plan Does Not Satisfy Section 1129(a)(3) Of The Bankruptcy Code.**

Section 1129(a)(3) of the Bankruptcy Code requires a plan to be proposed in good faith and not by any means forbidden by law. A plan is proposed in good faith only if it is likely to achieve goals consistent with the purposes of the Code. *See Search Market Direct, Inc. v. Jubber*

(*In re Paige*), 685 F.3d 1160, 1179 (10th Cir. 2012).  A plan achieves a result consistent with the purposes of the Code when the "plan is proposed with a legitimate and honest purpose to reorganize and has a reasonable hope of success." *In re Sun Country Development, Inc.,* 764 F.2d 406, 408 (5th Cir. 1985).  These considerations are especially important in the unique circumstances of this case because this particular Debtor is not an ordinary commercial operation, but rather a unique non-profit religious organization that serves a multitude of interests.

The UCC Plan is neither consistent with the purposes of the Code nor being proposed with the intention of providing the Debtor with a fresh start.  The UCC Plan classifies Claims into 16 separate classifications.  Few, if any, of the Claims in the 16 Classes are being discharged as of the Effective Date.  Other than Class 6 Claims (Pending Tort Claims), the UCC Plan calls for the Debtor's assumption of liability on account of the vast majority of Claims or for their payment in full on the Effective Date or otherwise leaves creditors' rights unaltered.  Likewise, the Debtor is not granted a discharge of Class 6 Claims (Pending Tort Claims) unless and until all such claims are settled or fully adjudicated. (UCC Plan Section 14.2(b).)  In other words, the UCC Plan does not provide for the adjustment of the debts that Congress intended in enacting the Code.  If the UCC Plan were to be confirmed, the Debtor would emerge from this chapter 11 case burdened with essentially the same amount of debt and litigation it had when it entered bankruptcy.  Such a result, especially given the unique character of this particular debtor, would not serve any of the statutory and equitable purposes for which the Code was enacted.  As such, the UCC Plan cannot reasonably be deemed to be proposed in good faith.

**B.      The UCC Plan Does Not Satisfy Sections 1123(a)(5) Or 1129(a)(11) Of The Code.**

Section 1123(a)(5) of the Code requires that the Court find that a plan contains adequate means for its implementation.  Section 1129(a)(11) requires that the Court find that confirmation

is not likely to be followed by the liquidation or a need for further reorganization of the debtor or any successor to the debtor, unless such liquidation or reorganization is proposed in the plan. A plan is feasible only if it offers a reasonable prospect for success and is workable. *Travelers Ins. Co. v. Pikes Peak Water Co.* (*In re Pikes Peak Water Co.*), 779 F.2d 1456, 1460 (10th Cir. 1985). "Put differently, a feasible plan is not a guarantee of success but rather offers a reasonable assurance of success." *FB Acquisition Prop. I, LLC v. Gentry* (*In re Gentry*), 807 F.3d 1222, 1225 (10th Cir. 2015). Whether a debtor has the ability to meet its plan obligations is essential to a determination of feasibility. *In re Riverbend Leasing LLC*, 458 B.R. 520, 530 (Bankr. S.D. Iowa 2011). The test is whether the things that will be done after confirmation can be done as a practical matter under the facts and circumstances of the case. *In re Clarkson*, 767 F.2d 417, 420 (8th Cir. 1985); *In re Richards*, 2004 Bankr. LEXIS 388, at *7, 2004 WL 764526 (Bankr. N.D. Iowa Apr. 2, 2004). The test does not require certainty but it should not be based purely on speculation, hopes, and dreams. *In re Plymouth Oil, Co., LLC,* 2013 Bankr. LEXIS 4543, at 23 (Bankr. N.D. Iowa 2013); *In re Associated Wood Prods.,* 323 B.R. 479, 482-483 (Bankr. D. Minn. 2005). As this Court once said, "[i]f the plan cannot fly, it needs to be fixed before, not after, it leaves the ground." *Id.* at 483.

Given these statutory requirements, the UCC Plan cannot be fixed and should not be allowed to leave the ground. The UCC Plan provides no reasonable assurance that it will be a success or capable of implementation. It is vague and illusory as to how much money is needed to fund it and where the money will come from. It is incumbent on the UCC as the plan proponent to propose a feasible funding mechanism. *In re Consul Restaurant Corp.,* 146 B.R. 979, 984 (Bankr. D. Minn. 1992). Instead, the UCC Plan offers "Funding Options" including the possibility that the Debtor can increase Parish assessments, increase fundraising, obtain loans, or

sell unspecified assets. (UCC Plan Section 5.2(b)). That is conjecture, not a plan. It is too speculative to satisfy the feasibility requirements under sections 1123(a)(5) and 1129(a)(11) of the Code.

**C.    The UCC Plan Unfairly Discriminates Between Class 6 Claims and Class 7 Claims.**

Equality of distribution among creditors is a core principle of the Code. *Fokkena v. Fredrikson & Byron, P.A. (In re Hyman Freightways, Inc.)*, 2006 U.S. Dist. LEXIS 92206, at *6 (D. Minn. Dec. 19, 2006). The Code requires that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to other claims or interests in such class." 11 U.S.C. § 1122; *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1313 (8th Cir. 1987). The Code also requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4).

Under a cramdown, a plan may not unfairly discriminate between similar creditor classes. *See* 11 U.S.C. § 1129(b); *In re 11,111, Inc.*, 117 B.R. 471, 478 (Bankr. D. Minn. Aug. 17, 1990). A plan discriminates unfairly if similar claims are treated differently without a reasonable basis for the disparate treatment. *In re Union Fin. Servs. Group, Inc.*, 303 B.R. 390, 421 (Bankr. E.D. Mo. 2003). Courts determine whether the plan discriminates unfairly using the following four-part inquiry:

1.  whether the discrimination has a reasonable basis;

2.  whether the debtors can carry out the plan without discrimination;

3.  whether the discrimination proposed is in good faith;

4.  whether the degree of discrimination is directly related to the basis or rationale for the discrimination, i.e., does the basis for the discrimination demand that this degree of differential treatment be imposed.

*In re Apex Oil Co.*, 118 B.R. 683, 710-711 (Bankr. E.D. Mo. 1990); *see also In re Hoffinger Indus.*, 2005 Bankr. LEXIS 420, at *19 (Bankr. E.D. Ark. Jan. 24, 2005) (plan "clearly and unequivocally" discriminated by classifying known tort claimant in separate class from general unsecured creditors).

Under the UCC Plan, Class 6 Claims (Pending Tort Claims) and Class 7 Claims (Future Tort Claims) are substantially similar but are afforded starkly disparate treatment.  Both classes are holders of Tort Claims.  The only difference between the two Classes is that holders of Class 7 Claims are individuals who were under a disability recognized by Minnesota law and did not file a proof of claim by the Claim Filing Date.  While the Debtor's Plan affords holders of Pending Tort Claims and Future Tort Claims substantially similar treatment and creates a trust for both Classes' benefit, the UCC Plan does not. Class 6 Claims (Pending Tort Claims) are funded by a Trust, are administered under special distribution procedures, and receive the benefit of settlements with insurers. (UCC Plan Sections 4.6(b) and 6.2).  Class 7 Claims (Future Tort Claims) receive none of these benefits under the UCC Plan.  (UCC Plan Section 4.7).  The UCC Plan provides no basis for this dissimilar treatment.

**D.     The UCC Plan Requires The Court To Issue An Improper Advisory Opinion As To Whether The Contemplated Assignment Of The Transferred Insurance Interests Constitutes A Breach Of The Insurance Policies.**

The UCC Plan provides that the Court must decide at the Confirmation Hearing whether the assignment of the Transferred Insurance Interests violates the Insurance Policies.  (UCC Plan Section 6.1(b)(4).)  That question will not be properly before the Bankruptcy Court at a Confirmation Hearing because the Court cannot declare the rights and obligations of the parties in the context of a Confirmation Hearing.  *See* Fed. R. Bankr. P. 7001 (requiring an adversary procedure to recover money or property); *see also Sunflower Racing v. Mid-Continent Racing &*

*Gaming Co. (In re Sunflower Racing)*, 226 B.R. 673, 694 (D. Kan. 1998) (bankruptcy court lacks equitable power to determine contractual rights in the context of a confirmation proceeding); *MFS Telecom, Inc. v. Motorola, Inc. (In re Conxus Communs., Inc.)*, 262 B.R. 893, 900 (D. Del. June 4, 2001) (bankruptcy court lacks equitable power to enjoin contract counterparty from exercising rights after post-confirmation breach). The ruling called for by the UCC Plan would, therefore, be an advisory opinion, which the Court lacks the power to issue. *See United States Nat'l Bank v. Independent Ins. Agents of Am.*, 508 U.S. 439, 446 (1993) ("a federal court [lacks] the power to render advisory opinions").

### E.   The UCC Plan Requires The Court To Issue An Improper Advisory Opinion On What Defenses The Insurers Can Raise In Future Litigation.

The UCC Plan purports to preserve the Insurers' defenses, "except any defense (1) regarding the assignment . . . of the Transferred Insurance Interests; (2) effected by operation of law because of confirmation of this Plan; or (3) based on res judicata or collateral estoppel related to facts determined by the Bankruptcy Court." (UCC Plan Sections 6.1(b)(3), (c) and 6.3(a).) The question of what defenses can be asserted in any future coverage litigation will not be properly before the Court at a Confirmation Hearing. An order confirming a plan that purports to decide that question would be an impermissible advisory ruling, which the Court lacks the power to issue. *See United States Nat'l Bank*, 508 U.S. at 446.

Further, as noted above in Section D, the Court cannot declare the rights and obligations of the parties in the context of a Confirmation Hearing.

The UCC Plan seeks entry of an order by this Court stating that its findings will have a preclusive effect in other cases. A court cannot unilaterally dictate that its findings will have preclusive effect for all purposes in the future, and thereby bind all future courts to rule consistently with that Court's instructions. *Blankenship v. Chamberlain*, 695 F. Supp. 2d 966,

974 (E.D. Mo. 2010); *Midway Motor Lodge v. Innkeepers' Telemanagement & Equipment*, 54 F.3d 406, 409 (7th Cir. 1995). *See also Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 396 (1996) (Ginsburg, J., concurring in part, dissenting in part) ("A court conducting an action cannot predetermine the res judicata effect of the judgment; that effect can be tested only in a subsequent action.") (citing 7B Wright, Miller & Kane, Federal Practice and Procedure §1789 at 245 (2d ed. 1986)); *Covanta Onondaga Ltd. v. Onondaga County Resource*, 318 F.3d 392, 397-98 (2nd Cir. 2003) ("the first court does not get to dictate to other courts the preclusion consequences of its own judgment").  The settled rule is that the subsequent court, not the rendering court, determines the preclusive effect of a judgment.  *Midway Motor Lodge*, 54 F.3d at 409.  *See also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 223 (1985) (holding that "[t]he collateral-estoppel effect of an arbitration proceeding is at issue only after arbitration is completed").  These rules apply with equal force to bankruptcy rulings.  *See Gordy v. Coffman (In re Gordy)*, 2016 Bankr. LEXIS 4555, at *3 (Bankr. N.D. Ind. Nov. 28, 2016) (state court can determine scope of bankruptcy court order granting relief from the automatic stay).

There is no procedural authority under which the UCC can ask this Court to address and predetermine the preclusive effect of the UCC Plan or confirmation on Insurers' future rights and defenses in coverage disputes, if any.  The preclusive effect of the Court's rulings can only be determined by the court in which the issue of claim or issue preclusion is asserted.  Because the UCC Plan states otherwise, it is not in conformity with law and therefore cannot be confirmed.

## F.    The UCC Plan Requires The Archdiocese To Breach Its Duty To Cooperate With The Insurers.

As explained above in Section B, Section 1123(a)(5) of the Code requires that the Court find that a plan contains an adequate means for implementation.  In this case, the UCC Plan creates conflicting duties and obligations that the Debtor cannot simultaneously meet.  First, the

UCC Plan purports to require the Archdiocese to honor its duty to cooperate with the Insurers. (*See, e.g.,* Section 6.1(b)(3).)  But it also requires the Archdiocese to cooperate with the Tort Claims Reviewer and the Trustee in connection with the administration of the Trust Distribution Plan, (UCC Plan Section 6.2(b)), and the prosecution of claims against the Insurers, (*see*, *e.g.*, UCC Plan Section 6.1(c)(1)(i)).  The Archdiocese and the Insurers are adverse to the Trustee and the Tort Claims Reviewer with respect to the Tort Claims.  The UCC Plan cannot, consistent with the Archdiocese's duty to cooperate with the Insurers, require the Archdiocese to cooperate with the Tort Claims Reviewer or the Trustee with respect to the Tort Claims. As a result, the Debtor cannot meet its post-closing obligations.  Therefore, the UCC Plan is not feasible on its face.

## G.    The UCC Plan Improperly Requires The Court To Grant Litigation Claimants Standing And A Right Of Intervention In The Insurance Coverage Adversary Proceeding.

The UCC Plan provides that "all Litigation Claimants will be deemed to have the right to join or intervene into the Insurance Coverage Adversary Proceeding."  (UCC Plan Section 6.2(i)(5).)  The Court does not have plenary authority to grant standing and a right of intervention in an adversary proceeding; those matters are governed by Rule 7024 and Article III of the Constitution, which limits standing to claimants with a genuine "case or controversy." The Insurance Coverage Adversary Proceeding involves contractual disputes between the Archdiocese and its insurers, and the Litigation Claimants are not parties to any of the contracts at issue.  Accordingly, there is no actual controversy between the Litigation Claimants and the Archdiocese's insurers.  *See Miller v. Market Men's Mut. Ins. Co.*, 262 Minn. 509, 511 (1962) ("It is established in this state that an injured person possesses no direct cause of action against the insurer of the tortfeasor prior to recovery of judgment against the latter.")  And, the Litigation

Claimants do not have standing to participate in the Insurance Coverage Adversary Proceeding. *See United Fire & Cas. Co. v. Titan Contrs. Serv.*, 2014 U.S. Dist. LEXIS 137446, at *5 (E.D. Mo. Sept. 29, 2014) (holding that tort claimants have no standing to participate in insurance coverage case between insurer and insured). Therefore, intervention would not be appropriate under the applicable Rules. *See Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1009 (8th Cir. 2007) (holding that potential future judgment creditors of an insured do not possess an interest in a coverage case between the insured and its insurer that could justify intervention under Rule 24 of the Federal Rules of Civil Procedure).

In any event, those issues will not be properly before the Court at a Confirmation Hearing, and any order purporting to make rulings about the hypothetical issue of whether claimants—who have not yet even elected to become Litigation Claimants—have standing and a right of intervention in the Insurance Coverage Adversary Proceed would, under the authorities cited above in Section D, be an impermissible advisory ruling.[1]

**H.      The UCC Plan Requires The Court To Issue A Prohibited Advisory Opinion Regarding Whether The UCC Plan Satisfies Conditions In The Insurance Policies.**

The UCC Plan sets forth procedures for establishing the Archdiocese's liability "for the purpose of insurance coverage under . . . Non-Settling Insurer's Insurance Policies." (UCC Plan Section 6.2(l)(1).) Some or all of the Insurance Policies contain conditions to the Insurers' liability, including the establishment of the Archdiocese's liability by either a settlement consented to by the Insurers or a judgment after an actual trial. Whether the procedures contemplated by the UCC Plan satisfy any conditions in any of the Insurance Policies will not be properly before the Court at a Confirmation Hearing. Therefore, confirming a plan that purports

---

[1]    Significantly, Litigation Claimants may have Claims that, even if proven, would not be covered under any insurance policies at issue in the Insurance Coverage Adversary Proceeding, either because the Claims do not trigger coverage or coverage is excluded under the policies.

to deem such conditions satisfied by the UCC Plan would constitute an impermissible advisory opinion, which the Court lacks the power to issue. *See United States Nat'l Bank*, 508 U.S. at 446. Further, the Court cannot declare the rights and obligations of the parties in the context of a Confirmation Hearing. *See* Fed. R. Bankr. P. 7001; *see also In re Sunflower Racing*, 226 B.R. at 694; *MFS Telecom*, 262 B.R. at 900.

**I.    The UCC Plan's Procedures For Establishing The Archdiocese's Liability Are Collusive And Violate The Archdiocese's And The Insurers' Rights.**

The UCC Plan provides that "the Trustee may object to [a] Class 6 claimant's Claim or initiate a court proceeding contemplated by 28 U.S.C. § 157, over any objection of a Non-Settling Insurer, if the purpose is to obtain a judicial determination as to whether the Archdiocese . . . is liable, and the amount of such liability, for the purpose of insurance coverage under such Non-Settling Insurer's Insurance Policies." (UCC Plan Section 6.2(l)(1); *see* also UCC Plan Section 6.3(a)(1).) This procedure is objectionable.

First, the existence and amount of the Archdiocese's liability can only be determined by a trial in the district court. *See* 28 U.S.C. § 157(b)(5). With certain exceptions not relevant here, bankruptcy courts have authority to enter final orders in "core proceedings." *See* 28 U.S.C. § 157(b)(1). The definition of "core proceeding" includes the allowance or disallowance of claims against the estate, but expressly excludes the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims for purposes of distribution. *See* 28 U.S.C. §157(b)(2)(B); *In re EBG Health Care II, Inc.*, 303 B.R. 626, 630 (Bankr. W.D. Mo. 2003) ("bankruptcy courts may not hear personal injury tort or wrongful death claims"). Proceedings that liquidate or estimate personal injury tort claims are "non-core" proceedings. *In re Roman Catholic Archbishop*, 339 B.R. 215, 219 (Bankr. D. Or. 2006). A bankruptcy court may hear non-core proceedings and submit proposed findings of fact and conclusions of law to

the district court for consideration.  *See* 28 U.S.C. § 157(c).  The district court will exercise *de novo* review of any finding or conclusion of the bankruptcy court to which a party objects.  *Id*

Second, the procedure is collusive and rife with conflicts of interests, and prevents the Insurers from asserting their right to object to claims.  Numerous bankruptcy courts, including one in the Eighth Circuit, have held that insurers have standing to object to claims when the insurance proceeds will be used to pay those claims.  *In re Standard Insulations, Inc.*, 138 B.R. 947, 950 (Bankr. W.D. Mo. 1992); *Church Mut. Ins. Co. v. Am. Home Assur. Co. (In re Heating Oil Partners, LP)*, 422 Fed. Appx. 15, 17 (2d Cir. 2011); *In re Berkshire Foods, Inc.*, 302 B.R. 587, 590 (Bankr. N.D. Ill. 2003). One court has held that even if the insurer's obligation to pay a claim is not established, the insurer still has standing to object if it is obligated to defend the debtor.  *Frontier Ins. Co. v. Westport Ins. Corp. (In re Black)*, 460 B.R. 407, 415 (Bankr. M.D. Pa. 2011).

In the case at hand, the Trustee is a fiduciary of Pending Tort Claimants.  The Trustee's interest is in maximizing the Archdiocese's liability in order to maximize a recovery for Pending Tort Claims.  Authorizing the Trustee to control the objection process unfairly and improperly divests the Archdiocese and/or the Insurers of the right to control the Archdiocese's defense.

Third, the UCC Plan requires the Court to overrule future objections that the Insurers may make in connection with the claims allowance process.  Because no such objections will be properly before the Court at a Confirmation Hearing, any order purporting to decide future objections would be a prohibited advisory opinion.

**J.     The UCC Plan Contains An Impermissible Assignment Of Proceeds From Personal Injury Claims To The Trust.**

The UCC Plan assigns to the Trust the right to receive proceeds of Tort Claimants' personal injury claims.  (*E.g.,* Section 6.2(i)(2)(i)-(ii), 6.2(i)(3), 6.4(c)).  These provisions violate

11 U.S.C. §1129(a)(3) because the assignment of the proceeds of the Tort Claimants' personal injury claims is barred by applicable law and invalid.

Personal injury claims are not assignable under Minnesota law. *See Leuthold v. Redwood County*, 206 Minn. 199, 201 (1939) (explaining that the test for determining if a claim is assignable is whether it survives to the personal representative of a decedent); Minn. Stat. §573.01 (providing that, except for actions arising out of an injury to a person, all other causes of action survive the death of the holder). *See also*, *e.g.*, *Nat'l Union Fire Ins. Co. v. Grimes*, 278 Minn. 45 (1967) (recognizing rule "forbidding the assignment of claims for personal injuries"). Where a personal injury claim is not assignable, the proceeds of such a claim are likewise not assignable because "there is no sound basis for distinguishing between the cause of action and its proceeds as far as assignability is concerned." *Southern Farm Bureau Cas. Ins. v. Wright Oil Co.*, 248 Ark. 803, 809 (1970). *See also, e.g.*, *Karp v. Speizer*, 132 Ariz. 599, 601 (App. 1982) (rejecting party's "attempt to avoid the general rule by contending that only the proceeds of the claim were here involved"); *McGhee v. Charley's Other Brother*, 391 A.2d 1289, 1293 (N.J. Super. Ct. Law Div. 1978) ("Since the trust agreement transfers from Mozee to the Automobile Association a right to payment out of the proceeds of a settlement or judgment not yet received, it accomplishes exactly the same objective as contractual arrangements found to be void."); *North Carolina Baptist Hospitals, Inc. v. Mitchell*, 362 S.E.2d 841, 843 (N.C. App. 1987) ("the assignment of proceeds in a cause of action for personal injury is in violation of public policy and thus invalid"); *Harvey v. Cleman*, 400 P.2d 87, 90 (Wash. 1965) (rejecting argument that there is a difference between assigning a cause of action and assigning the proceeds of any recovery).

**K.      The UCC Plan's Provisions Dealing With Prosecution Of Tort Claims And Claims Against The Insurers Involve Champerty And Maintenance.**

The UCC Plan provisions relating to the prosecution of Tort Claims and Claims against the Insurers violate 11 U.S.C. §1129(a)(3) because they violate Minnesota's prohibition of champerty and maintenance.  Champerty is an agreement between a litigant and a stranger to a lawsuit by which the stranger pursues the litigant's claims as consideration for receiving part of any judgment or proceeds.  *Johnson v. Wright*, 682 N.W.2d 671, 675 (Minn. App. 2004). Maintenance is assistance in prosecuting or defending a lawsuit given to a litigant by someone who has no bona fide interest in the case.  *Id.*  Champerty and maintenance have long been barred by Minnesota law because they "tend to stir up strife and contention and vexatious and speculative litigation, and prevent the amicable compromise of claims between citizens." *Huber v. Johnson*, 70 N.W. 806, 807 (Minn. 1897).

In *Huber*, the defendant had a claim for damages against a railway company.  70 N.W. at 806.  The plaintiff, who was a stranger to the defendant and the claim, entered into a contract with the defendant, pursuant to which the plaintiff agreed to pay for an attorney to prosecute a lawsuit in the name of the defendant against the railway company.  *Id.*  The contract provided that the plaintiff was entitled to half of any recovery, and that the claim could not be settled without plaintiff's consent and, if the defendant did settle without the plaintiff's consent, the defendant had to pay the plaintiff a fixed and arbitrary amount.  *Id.* at 806-07.  After the defendant settled with the railway company without the plaintiff's consent, the plaintiff sued on the contract.  *Id.* at 807.  The Minnesota Supreme Court held that the contract was champertous and void as against public policy because the plaintiff was a stranger to both the defendant and the claim, and had no object to intermeddling in the matter except pure speculation.  *Id.* at 808. The court held that the most objectionable part of the contract was the portion requiring the

13

defendant to gain plaintiff's consent before settling the claim.  The Court explained: "The law favors the compromise of disputes without litigation, and it is difficult to conceive of any stipulation more against public policy than one which prohibits a party from settling his own dispute, or at least prevents it except by his subjecting himself to the payment of an arbitrary penalty for doing so."  *Id.*

The UCC Plan violates Minnesota's prohibition against champerty and maintenance because it sets up a scheme pursuant to which the Trust will fund speculative and vexatious litigation relating to Tort Claims and related insurance Claims and prevent the amicable compromise of those Claims by the interested parties.  The UCC Plan provides that the Trust will pay advances to Tort Claimants on their Tort Claims and sets up convoluted and collusive procedures for prosecuting Tort Claims against the Archdiocese.  The UCC Plan further provides that, if such claims are successful against the Archdiocese, related insurance Claims will be prosecuted against the Insurers, which are the only potential source of recovery with respect to the litigation of Tort Claims under the UCC Plan.[2]   (UCC Plan Sections 6.)  The Trust, which is a stranger to both the Tort Claims and any related insurance claims, is required to fund the litigation relating to those claims.  (*E.g.*, Sections 6.1(a), 6.2(i)(2), 6.2(i)(4), 6.4(a), 6.4(b).)  Indeed, the Trust is obligated to fund *both sides* of any Tort Claim litigation that results in a recovery.  (*E.g.*, UCC Plan Sections 6.1(a), 6.2(i)(2)).  The Trust also has the right to receive any and all resulting recoveries, (*e.g.* UCC Plan Sections 6.1(i)(2), 6.4(c)), and neither Tort Claims nor related insurance claims can be settled without the Trust's consent, (UCC Plan Sections 6.4(a), 6.4(c)).

---

[2]   While the UCC Plan provides that if a Litigation Claimant obtains a judgment against the Archdiocese and no Insurer is implicated by the Litigation Claim, then the judgment will be satisfied by the Trust up to the amount awardable to the Litigation Claimant under the Trust Distribution Plan, the UCC Plan does not explain where the Trust will get the money to do that.

The Tort Claimants do not give up the right to prosecute their claims in exchange for the advances that they receive. To the contrary, the UCC Plan strongly promotes litigation of Tort Claims and discourages any compromise and settlement. To be sure, Tort Claimants can choose to be either Distribution Plan Claimants or Litigation Claimants, (UCC Plan Section 6.2(d)), but the UCC Plan is structured to provide powerful incentives for Class 6 Claimants to elect to proceed as Litigation Claimants. For example, the Trust can force a Distribution Plan Claimant to litigate his or her Tort Claim by simply objecting to the Claim "if the purpose is to obtain a judicial determination as to whether the Archdiocese . . . is liable, and the amount of such liability, for the purpose of insurance coverage under such Non-Settling Insurer's Insurance Policies." (UCC Plan Section 6.2(l).) Because the Trust's interest is in maximizing insurance recoveries, the Trust will presumably object to most if not all of the Distribution Plan Claims, and the Distribution Plan Claimants will be forced to litigate their claims notwithstanding that they chose not to be a Litigation Claimant.

Tort Claimants are further encouraged to be Litigation Claimants rather than Distribution Claimants because the full amount of any recovery associated with the prosecution of a Distribution Plan Claimant's Claim will go to the Trust and be distributed among all Tort Claimants, whereas Litigation Claimants can potentially receive from the Trust a portion of any recovery resulting from litigation of their claims. (UCC Plan Sections 6.2(d), 6.2(i)(2).) Significantly, however, the potential for any such recovery by Litigation Claimants is severely limited both because they only have a chance to recover on amounts that are in excess of their attorneys' fees, the Trust's attorneys' fees, and the advance they previously received from the Trust and because the UCC Plan places very low percentage caps on any such recovery. (UCC Plan Section 6.2(g), 6.2(i)(2).)

Thus, under the UCC Plan: (1) a Tort Claimant is encouraged to litigate his or her Tort Claim; (2) the Tort Claimant receives an advance on the Tort Claim at the outset of litigation; (3) there are limitations on the Tort Claimant's right of recovery in connection with a litigated Tort Claim because, among other reasons, the Trust and other Tort Claimants have the right to receive some or all of any recovery; (4) the Tort Claimant has no obligation to return the advance the Tort Claimant received if the Tort Claimant litigates the Tort Claim to judgment and loses; and (5) the Trust assumes control over litigation of the claim to the extent that the Tort Claimant cannot settle without the Trust's consent; and (6) the Trust will pay the Tort Claimant's attorneys' fees if the Tort Claimant recovers any amount in connection with a litigated claim.[3] This is precisely the type of champertous arrangement that is barred by Minnesota law because it strongly encourages litigation and discourages Tort Claimants from settling their claims.  *See Maslowski v. Prospect Funding Partners LLC*, 890 N.W.2d 756, 763 (Minn. App. 2017) (affirming trial court's refusal to enforce forum selection clause in contract with litigation funding company because of concern that the contract violated Minnesota's prohibition on champerty in that "a litigant with no obligation to pay advances back has no incentive to settle, unless the amount recovered would exceed her attorney's fees plus the amount she would owe to the litigation funding company.")  In fact, the UCC Plan is far worse, because the Tort Claimants cannot settle any Tort Claims without the Trust's consent.  *See Huber*, 70 N.W. at 808 ("it is difficult to conceive of any stipulation more against public policy than one which prohibits a party from settling his own dispute").

In short, the UCC Plan's scheme for prosecuting Tort Claims and related insurance claims constitutes the exact type of "perver[sion of] the remedial process of the law" that the

---

[3]  The Tort Claimant presumably has no duty to pay legal fees if the Tort Claimant fails to recover anything in connection with a litigated claim.

prohibition of champerty and maintenance is designed to prevent.  *Id.*  Rather than resolving the Tort Claims pending against the Debtor, it warps the natural incentives of litigation and settlement to encourage speculative and vexatious litigation against the Reorganized Debtor and prevents reasonable settlements.   The UCC Plan's apparent attempt to foment continued litigation of these Claims defeats the central purpose of this reorganization case, which is intended to resolve the Tort Claims and give the Debtor a fresh start.  For that reason, the UCC Plan should not be confirmed.

**L.      Joinder In Other Objections And Reservation Of Rights.**

The Insurers join in, and incorporate herein by reference, the following objections of Certain Underwriters at Lloyd's, London, The Continental Insurance Company, National Fire Insurance Company, and Continental Casualty Company: Objection Nos. 2, 3, 4, 6, 7, 8, 17, 19, 22, 26, and 32.  The Insurers also reserve the right to join in the objections filed by any other party.

**The attorneys for Travelers Casualty and Surety Company are authorized by the attorneys for Hartford Accident and Indemnity Company, American Home Insurance Company, TIG Insurance Company, and Fireman's Fund Insurance Company to file this memorandum of law in support of the objections of Travelers, Hartford, American Home, TIG, and Fireman's Fund to the Second Amended Chapter 11 Plan of Reorganization of the Official Committee of Unsecured Creditors of the Archdiocese of Saint Paul and Minneapolis with their electronic signatures.**

Respectfully submitted,

O'MEARA, LEER, WAGNER & KOHL, P.A.

Date:  July 7, 2017                 /e/ Dale O. Thornsjo
                                    Dale O. Thornsjo                    (#162048)
                                    Lance D. Meyer                     (#393073)
                                    Suite 600
                                    7401 Metro Boulevard
                                    Minneapolis, Minnesota 55439-3034
                                    Telephone: (952) 831-6544
                                    Facsimile: (952) 893-8398
                                    E-mail: DOThornsjo@OLWKLaw.com
                                           LDMeyer@olwklaw.com

                                    DRINKER BIDDLE & REATH LLP

                                    Frederick P. Marczyk (PA #89878)
                                    (admitted *pro hac vice*)
                                    One Logan Square, Suite 2000
                                    Philadelphia, Pennsylvania 19103-6996
                                    Telephone: (215) 988-2700
                                    Facsimile: (215) 988-2757
                                    E-mail: frederick.marczyk@dbr.com

                                    *Attorneys for Travelers Casualty and Surety
                                    Company*


                                    SHIPMAN & GOODWIN LLP

                                    /e/ Joshua D. Weinberg
                                    James P. Ruggeri
                                    Joshua D. Weinberg
                                    1875 K Street NW, Suite 600
                                    Washington, DC 20006-1251
                                    Telephone: (202) 469-7754
                                    Facsimile: (202) 469-7751
                                    E-mail: jruggeri@goodwin.com
                                           jweinberg@goodwin.com

                                    *Attorneys for Hartford Accident and Indemnity
                                    Company*

18

SQUIRE PATTON BOGGS (US) LLP

/e/ Jason F. King
Jason F. King
The Legal Center
One Riverfront Plaza
1037 Raymond Boulevard
Newark, NJ 07102
Telephone: (973) 848-5600
Facsimile:  (973) 848-5601
E-mail:  jason.king@squirepb.com

*Attorneys for American Home Insurance Company*

MEISSNER TIERNEY FISHER & NICHOLS S.C.

/e/ Michael J. Cohen
Michael J. Cohen
111 East Kilbourn Avenue. 19th Floor
Milwaukee, WI 53202
Telephone: (414) 273-1300
Facsimile: (414) 273-5840
E-mail: mjc@mtfn.com

*Attorneys for TIG Insurance Company*

MOSS & BARNETT

/e/ Charles E. Jones
Charles E. Jones (MN Bar #0202708)
150 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: 612-877-5259
Facsimile: 612-877-5012
E-mail: Charles.Jones@lawmoss.com

CROWELL & MORING LLP

/e/ Mark D. Plevin
Mark D. Plevin
Three Embarcadero Center, 26th Floor
San Francisco, CA 94111
Telephone: (415) 365-7446
Facsimile: (415) 986-2827
E-mail: mplevin@crowell.com

*Attorneys for Fireman's Fund Insurance Company*

**APPENDIX**
**Pertinent Plan Provisions Relating to Objections**

The following are specific provisions of the UCC Plan to which the Insurers object.  For

ease of reference, the provisions are grouped together based on the objection to which they relate

in the order in which the objections appear in the Insurers' Memorandum of Law.

**A.    The UCC Plan Does Not Satisfy Section 1129(a)(3) Of The Bankruptcy Code.**

Sections 3.1 and 14.2(b) of the UCC Plan:

> **3.1 SUMMARY**. The categories of claims listed below classify
> claims (except for Administrative Claims and Priority Tax Claims)
> for all purposes, including voting, confirmation of this Plan, and
> distribution pursuant to this Plan.

| CLASS | DESCRIPTION | IMPAIRMENT | VOTING |
|-------|-------------|------------|--------|
| 1 | Priority Claim | Unimpaired | No |
| 2 | Governmental Unit Claims | Unimpaired | No |
| 3 | General Insurance Fund | Unimpaired | No |
| 4 | Archdiocese of Saint Paul and Minneapolis Priests' Pension Plan Claims | Unimpaired | |
| 5 | Archdiocese of Saint Paul and Minneapolis Lay Employees' Pension Plan Claims | Unimpaired | No |
| 6 | Pending Tort Claims | Impaired | Yes |
| 7 | Future Tort Claims | Impaired | Yes |
| 8 | Inter-Parish Loan Fund and Assessment Overpayment Claims | Unimpaired | No |
| 9 | Trade Vendors and General Unsecured Creditors | Unimpaired | No |
| 10 | Secured Claim of Premier Bank | Unimpaired | No |
| 11 | Guaranty Claims | Unimpaired | No |
| 12 | Other Tort Claims and Unsecured Claims | Impaired | Yes |
| 13 | Abuse Related | Unimpaired | No |

| | Contingent Claims | | |
|---|---|---|---|
| 14 | Archdiocese Medical and Dental Plan | Unimpaired | No |
| 15 | Non-Credibly Accused Priest Support Payments | Unimpaired | No |
| 16 | Credibly Accused Priest Support Payments | Impaired | Yes |

## 14.2 DISCHARGE AND INJUNCTION

**(b)**     **Class 6 Tort Claims.**  With respect to Class 6 Claims, the Archdiocese and the Reorganized Debtor shall not receive a discharge on account of a Class 6 Claim until such Class 6 Claim is settled with the Archdiocese, Reorganized Debtor and the Non-Settling Insurers or such Class 6 Claim is fully adjudicated and determined and subject to Final Order.  The discharge hereunder shall not limit in any way the obligations of Non-Settling Insurers to defend and pay the Archdiocese's or Reorganized Debtor's liability for Class 6 Claims under the Insurance Policies.

**B.**      **The UCC Plan Does Not Satisfy Sections 1123(a)(5) And 1129(a)(11) Of The Code.**

Section 5.2(b) of the UCC Plan:

> **5.2 FUNDING THIS PLAN.**
>
> **(b) Funding Options**. Under this Plan, the Bankruptcy Court will determine the value of the Debtor's assets and the Debtor will then pay that value into the Trust. The Debtor may fund the Plan as it deems appropriate, whether through increases in Parish assessments, fundraising, loan financing and/or the sale of selected assets. …Thus, to permit the Debtor to contribute the liquidation value of all of its assets, in conformance with Section 1129(a)(7) of the Bankruptcy Code.

**C.    The UCC Plan Unfairly Discriminates Between Class 6 Claims and Class 7 Claims.**

Sections 4.6, 4.7 and 6.2(a) and (c) of the UCC Plan:

### 4.6 PENDING TORT CLAIMS (CLASS 6).

**(a) Definition**. A "Class 6 Claim" means a Pending Tort Claim.

**(b) Summary.** …Distribution from the Trust, however, does not preclude or affect claims or recoveries by Class 6 claimants against the Archdiocese, the Reorganized Debtor or Non-Settling Insurers. The Trust shall fund the defense of the Archdiocese and the Reorganized Debtor as against any Litigation Claims brought by Class 6 Claimants, but only to the extent that the Archdiocese or Reorganized Debtor is not defended or otherwise reimbursed for its defense expenses by any Insurer. The Trust shall advance funding or indemnify the Archdiocese and the Reorganized Debtor with respect to any judgments or settlements of any Litigation Claims brought by Class 6 claimants, but only to the extent that such judgments or settlements are not funded, or the Archdiocese or the Reorganized Debtor is not indemnified for them, by any Insurer. The Trust shall pursue recoveries against any Non-Settling Insurers in respect of the Transferred Insurance Interests. … The Class 6 Claims will not be released or discharged against the Archdiocese or Reorganized Debtor until such claims are settled with the Archdiocese or Reorganized Debtor and its Insurers or are fully adjudicated, resolved and subject to Final Order . . . .

\*\*\*

### 4.7 FUTURE TORT CLAIMS (CLASS 7).

**(a) Definition.**    A Class 7 Claim means a Future Tort Claim ("Class 7 Claim").

**(b) Treatment.**    Liability for Class 7 Claims shall be assumed by the Reorganized Debtor.  To preserve coverage under Insurance Policies issued by Non-Settling Insurers, Class 7 claimants specifically reserve any and all claims which Class 7 claimants have against the Archdiocese or Reorganized Debtor.  The Class 7 Claims will not be released against the Archdiocese or Reorganized Debtor until such Class 7 Claims are settled with the Archdiocese

or Reorganized Debtor and its Insurers, or until such Class 7 Claims are fully adjudicated and determined and subject to Final Order. The Non-Settling Insurers remain fully liable for their obligations related in any way to the Class 7 Claims. The eventual release of these Class 7 Claims will be pursuant to the principles set forth in Pierringer v. Hoger, 124 N.W.2d 106 (Wis. 1963) and Frey v. Snelgrove, 269 N.W.2d 918 (Minn. 1978). Regardless of the eventual release of the Archdiocese and Reorganized Debtor, the Class 7 Claimants will expressly reserve their rights against other Persons, including joint tortfeasors, who will remain severally liable on any Class 7 Claims.

*\*\**

## 6.2 TREATMENT OF CLASS 6 CLAIMS.

**(a) Trust Liability.** On the Effective Date, the Trust shall automatically and without further act or deed assume all liability for preserving, managing and distributing Trust Assets to Class 6 claimants pursuant to the Trust Distribution Plan. The Trust does not assume any liabilities of the Archdiocese or Reorganized Debtor . . . .

*\*\**

**(c) Distributions to Qualified Claimants**. The Tort Claims Reviewer shall determine whether a Class 6 Claimant is entitled to a distribution under the Trust Distribution Plan ("Qualified Claimant"). For all Qualified Claimants, the Tort Claims Reviewer will determine the number of points to be assigned to the Qualified Claimant pursuant to the Trust Distribution Plan. The Trust will notify every Qualified Claimant of his or her assigned number of points and will mail every Qualified Claimant a Claim Resolution Agreement, attached as Exhibit E. In order to receive any distribution from the Trust, the Qualified Claimant must execute the Claim Resolution Agreement and mail it back to the Tort Claims Reviewer by First Class Mail, Postage Paid. In the Claim Resolution Agreement, the Class 6 Claimant shall release any Settling Insurer from further liability on the Class 6 Claims and waive any right to pursue a direct action under Minn. Stat. § 60A.08, subd. 6 or other applicable law against any Settling Insurer. Once the Tort Claims Reviewer receives the executed Claim Resolution Agreement, the Trust will make an immediate partial distribution to such Qualified

Claimant pursuant to the terms of the Trust Distribution Plan. The amount of the initial distribution each Qualified Claimant receives will be based on his or her assigned points, with each Qualified Claimant sharing pro rata in the Trust Assets to be distributed to Qualified Claimants. . . . The Qualified Claimant is entitled to future distributions from the Trust if additional Trust Proceeds become available as a result of settlements with a Non-Settling Insurers or any judgment awarded and collected by the Trust or a Litigation Claimant. . . .

**D.    The UCC Plan Requires The Court To Issue An Improper Advisory Opinion As To Whether The Contemplated Assignment Of The Transferred Insurance Interests Constitutes A Breach Of The Insurance Policies.**

Section 6.1(b)(4) of the UCC Plan:

> **6.1(b)(4)**  The determination of whether the assignment and transfer of the Transferred Insurance Interests provided for in this Section is valid, and does not void, defeat or impair the insurance coverage issued by the Non-Settling Insurers, shall be made by the Bankruptcy Court at the confirmation hearing. If a party in interest (which, for this purpose, shall include Non-Settling Insurers) fails to timely file an objection to the proposed assignment and transfer of the Transferred Insurance Interests or other terms of the Plan related to the Insurance Policies by the date set to file such objections, that party in interest shall be deemed to have irrevocably consented to the assignment and transfer of Transferred Insurance Interests and other Plan terms related to the Insurance Policies and will be forever barred from asserting that the assignment and transfer of the Transferred Insurance Interests or other Plan terms affect the ability of the Trust or Class 6 claimants to pursue the Non-Settling Insurers, or any of them, for insurance coverage. In the event that the Bankruptcy Court enters a Final Order that the assignment and transfer of the Transferred Insurance Interests is valid and does not defeat or impair coverage of the Non-Settling Insurers, following the Effective Date, the Archdiocese and Reorganized Debtor shall not be relieved of any obligations under the Non-Settling Insurers' Insurance Policies. In order to ensure that the Archdiocese and Reorganized Debtor will abide by applicable obligations under the Insurance Policies, any release, discharge and/or injunction issued as a result of this Plan or in connection with this bankruptcy shall not encompass any claim by the Trust that the Archdiocese and/or Reorganized Debtor breached obligations under the Insurance Policies thereby causing the Trust to suffer damages, including in the amount of the insurance coverage lost as a result of the breach, and such a claim shall be an allowed claim for breach of contract against the Reorganized Debtor.

E.    **The UCC Plan Requires The Court To Issue An Improper Advisory Opinion On What Defenses The Insurers Can Raise In Future Litigation.**

Sections 6.1(b), 6.1(c), 6.3(a) and 6.3(d) of the UCC Plan:

### 6.1 THE TRUST

**(b) Transferred Insurance Interests**. … The Interests delineated in Section 6.1(b)(2) and defined as Transferred Insurance Interests are additional Trust Assets.

***

(3)  . . . If the Trust brings an action against a Non-Settling Insurers to assert any claim or to determine the Non-Settling Insurers' obligation to provide coverage . . ., the Non-Settling Insurer may raise any defense to coverage as if the action had been brought by the Archdiocese or Reorganized Debtor, except any defense (1) regarding the appointment; (2) effected by operation of law because of confirmation of this Plan; or (3) based on res judicata or collateral estoppel related to facts determined by the Bankruptcy Court.

***

**(c)    Appointment of Trustee as Estate Representative to Enforce Insurance Interests and Obtain Insurance Recoveries**. If the Bankruptcy Court does not enter a Final Order approving the assignment and transfer of the Transferred Insurance Interests to the Trust, then pursuant to the provisions of Section 1123(b)(3)(B) of the Bankruptcy Code, the Trustee is hereby appointed as the representative of the Archdiocese's Estate for the purpose of retaining and enforcing all of the Archdiocese's and the Estate's interests under the Non-Settling Insurers' Insurance Policies against the Non-Settling Insurers with respect to the Class 6 Claims. Any recoveries on such interests by the Trustee will be paid to the Trust. The determination of whether the appointment of the Trust as the Archdiocese's and the Estate's representative is valid, and does not defeat or impair the insurance coverage otherwise provided by Non-Settling Insurers, shall be made by the Bankruptcy Court at the confirmation hearing. If a party in interest (which, for this purpose, shall include the Non-Settling Insurers) fails to timely file an objection to the proposed appointment by the deadline for filing objections to confirmation of this Plan, that party in interest shall be deemed to have irrevocably consented to

the appointment and will be forever barred from asserting that the appointment in any way affects the ability of the Trust to pursue Non-Settling Insurers, or any of them, for insurance coverage. …If the Trust brings an action against a Non-Settling Insurer to assert any claim or to determine the Non-Settling Insurer's obligation to provide coverage for any Class 6 Claim, the Non- Settling Insurer may raise any defense to coverage as if the action had been brought by the Archdiocese or the Reorganized Debtor, except any defense (1) regarding the appointment; (2) effected by operation of law because of confirmation of this Plan; or (3) based on res judicata or collateral estoppel related to facts determined by the Bankruptcy Court . . . .

***

### 6.3    NON-SETTLING INSURERS.

**(a) Preservation of Rights and Obligations.**

(1) In the event: (i) a Class 6 Claim is pursued in state or federal court by a Class 6 claimant against the Archdiocese or Reorganized Debtor, or (ii) the Trust asserts an objection to or otherwise seeks a determination of liability as to a Class 6 Claim, then the Archdiocese, Reorganized Debtor, the Trust and each Non-Settling Insurer shall retain any and all legal and factual defenses that may exist in respect of such Class 6 Claim and all coverage defenses. The rights, duties and obligations of each Non-Settling Insurer and the Archdiocese or Reorganized Debtor under the Insurance Policies with respect to such Class 6 Claim are not impaired, altered, reduced, or diminished by: (a) any distribution to Class 6 claimants pursuant to this Plan, the Trust Agreement, and the Trust Distribution Plan; (b) the transfer and assignment of the Archdiocese's Transferred Insurance Interests in the Insurance Policies issued by the Non-Settling Insurers; (c) releases granted to Settling Insurers under the Plan; or (d) any other provision of this Plan, the Trust Agreement, or the Trust Distribution Plan. Non-Settling Insurers retain any defenses that they would be able to raise if the claim for coverage were brought by the Archdiocese or Reorganized Debtor, except any defense (1) related to the transfer of Transferred Insurance Interests to the Trust; (2) effected by operation of bankruptcy law as a result of confirmation; or (3) based on facts determined by the Bankruptcy Court in connection with the confirmation.

***

**(d) This Plan is Neutral as to Insurance Policies**. For the
avoidance of doubt, solely with respect to the Non-Settling
Insurers, nothing in the Plan, the Trust Agreement, the Trust
Distribution Plan, the Confirmation Order, or any other order of
the Bankruptcy Court to the contrary (including any other
provision that purports to be preemptory or supervening or grants a
release): (i) shall affect, impair, or prejudice the rights and
defenses of any Non-Settling Insurer, the Archdiocese, the
Reorganized Debtor, the Trust, or any other insureds under any
Insurance Policy in any manner, including any defenses to any
claim for insurance; (ii) shall constitute a settlement or resolution
of the Archdiocese's or Reorganized Debtor's liability to a
claimant; (iii) shall in any way operate to, or have the effect of,
impairing or having any res judicata, collateral estoppel, or other
preclusive effect on, any party's legal, equitable, or contractual
rights or obligations under any insurance policy in any respect; or
(v) shall otherwise determine the application or non-application of
any provision of any Insurance Policy and any such rights and
obligations shall be determined under the Insurance Policy and
applicable law.

**F.**    **The UCC Plan Requires The Archdiocese To Breach Its Duty To Cooperate With The Insurers.**

Sections 6.1(b)(3), 6.1(c) and 6.2(b) of the UCC Plan:

**6.1 THE TRUST**

**(b)(3)**  The foregoing assignment and transfer of the Transferred Insurance Interests does not affect the Archdiocese's, the Reorganized Debtor's or any Non-Settling Insurer's right to contest the Archdiocese's, or any other insured's, liability or the amount of damages in respect of any Tort Claims. Notwithstanding the assignment and transfer of the Transferred Insurance Interests, the Archdiocese and Reorganized Debtor shall not be relieved of any obligations or duties under any Insurance Policy (including without limitation any duty to cooperate) and shall continue to honor such duties and obligations as required by such applicable Insurance Policies and applicable law.   The transfer and assignment of the Transferred Insurance Interests does not affect any insurers' rights, obligations or duties under applicable Insurance Policies or applicable law.  If the Trust brings an action against a Non-Settling Insurer to assert any claim or to determine the Non-Settling Insurer's obligation to provide coverage for any Tort Claim, the Non-Settling Insurer may raise any defense to coverage as if the action had been brought by the Archdiocese or the Reorganized Debtor, except any defense (1) regarding the assignment and transfer of the Transferred Insurance Interests; (2) effected by operation of law because of confirmation of this Plan; or (3) based on res judicata or collateral estoppel related to facts determined by the Bankruptcy Court.

***

**(c)**     **Appointment of Trustee as Estate Representative to Enforce Insurance Interests and Obtain Insurance Recoveries**. . . .

(1)  In the event that a Final Order is entered holding that: (a) the assignment of the Transferred Insurance Interests . . . [is] invalid . . ., . . . the Archdiocese and the Reorganized Debtor will retain their Interests under each Insurance Policy.

(i)    At the reasonable request of the Trust, the Reorganized Debtor will assert its interests against a Non-Settling Insurers, including, but not limited to, by filing a lawsuit for recovery of policy proceeds.  The Reorganized Debtor will cooperate and assist the Trust in enforcing any

right or prosecuting any claim based on the Transferred Insurance Interests.  This cooperation includes, but is not limited to, providing access to documents and electronic information and providing clergy, employees, agents, and volunteers to testify in depositions and at trial. . . .

\*\*\*

## 6.2     TREATMENT OF CLASS 6 CLAIMS

**(b)**     **Payment of Class 6 Claims.**  The Trust shall pay Class 6 Claims in accordance with the terms of the Plan, the Confirmation Order, the Trust Agreement and the Trust Distribution Plan.  The Archdiocese or the Reorganized Debtor shall reasonably cooperate with the Tort Claims Reviewer and the Trustee as requested by the Tort Claims Reviewer or the Trustee in connection with any inquiries by either in the administration of the Trust Distribution Plan.  Under no circumstance shall the Tort Claims Reviewer's review of a Class 6 Claim or a determination regarding a distribution thereon have any effect on the rights of a Non-Settling Insurer.

**G.    The UCC Plan Improperly Requires The Court To Grant Litigation Claimants Standing And A Right Of Intervention In The Insurance Coverage Adversary Proceeding.**

Section 6.2(i)(5) of the UCC Plan:

### 6.2    TREATMENT OF CLASS 6 CLAIMS

(i)(5)   As of the Effective Date, all Litigation Claimants will be deemed to have the right to join or intervene into the Insurance Coverage Litigation Adversary Proceeding.

H.    **The UCC Plan Requires The Court To Issue A Prohibited Advisory Opinion Regarding Whether The UCC Plan Satisfies Conditions In The Insurance Policies.**

Section 6.2(l)(1) of the UCC Plan:

### 6.2    TREATMENT OF CLASS 6 CLAIMS

***

**(l)    Objections and Litigation After the Effective Date.**

(1)    Regardless of whether a Class 6 claimant elects treatment as a Distribution Plan Claimant or a Litigation Claimant, the Trustee may object to that Class 6 Claimant's Claim or initiate a court proceeding contemplated by 28 U.S.C. § 157, over any objection of a Non-Settling Insurer, if the purpose is to obtain a judicial determination as to whether the Archdiocese or Reorganized Debtor is liable, and the amount of such liability, for the purpose of insurance coverage under such Non-Settling Insurer's Insurance Policies.

**I.     The UCC Plan's Procedures For Establishing The Archdiocese's Liability Are Collusive And Violate The Rights Of The Archdiocese And The Insurers.**

Sections 6.2(l)(1) and 6.3(a)(1) of the UCC Plan:

**6.2     TREATMENT OF CLASS 6 CLAIMS**

**(l)     Objections and Litigation After the Effective Date.**

(1)     Regardless of whether a Class 6 claimant elects treatment as a Distribution Plan Claimant or a Litigation Claimant, the Trustee may object to that Class 6 Claimant's Claim or initiate a court proceeding contemplated by 28 U.S.C. § 157, over any objection of a Non-Settling Insurer, if the purpose is to obtain a judicial determination as to whether the Archdiocese or Reorganized Debtor is liable, and the amount of such liability, for the purpose of insurance coverage under such Non-Settling Insurer's Insurance Policies.

\*\*\*

**6.3     NON-SETTLING INSURERS**.

**(a) Preservation of Rights and Obligations.**

(1) In the event: (i) a Class 6 Claim is pursued in state or federal court by a Class 6 claimant against the Archdiocese or Reorganized Debtor, or (ii) the Trust asserts an objection to or otherwise seeks a determination of liability as to a Class 6 Claim, then the Archdiocese, Reorganized Debtor, the Trust and each Non-Settling Insurer shall retain any and all legal and factual defenses that may exist in respect of such Class 6 Claim and all coverage defenses. The rights, duties and obligations of each Non-Settling Insurer and the Archdiocese or Reorganized Debtor under the Insurance Policies with respect to such Class 6 Claim are not impaired, altered, reduced, or diminished by: (a) any distribution to Class 6 claimants pursuant to this Plan, the Trust Agreement, and the Trust Distribution Plan; (b) the transfer and assignment of the Archdiocese's Transferred Insurance Interests in the Insurance Policies issued by the Non-Settling Insurers; (c) releases granted to Settling Insurers under the Plan; or (d) any other provision of this Plan, the Trust Agreement, or the Trust Distribution Plan. Non-Settling Insurers retain any defenses that they would be able to raise if the claim for coverage were brought by the Archdiocese or Reorganized Debtor, except any defense (1) related to the transfer of Transferred Insurance Interests to the Trust; (2) effected by

operation of bankruptcy law as a result of confirmation; or (3) based on facts determined by the Bankruptcy Court in connection with the confirmation.

**J.     The UCC Plan Contains An Impermissible Assignment Of Proceeds
From Personal Injury Claims To The Trust.**

Section 6.2(i)(2), 6.2(i)(3) and 6.4(c) of the UCC Plan:

**6.2     TREATMENT OF CLASS 6 CLAIMS**

\*\*\*

**(i)     Litigation Claims.**  In the event a Litigation Claimant
obtains a judgment against the Archdiocese or Reorganized Debtor
or achieves a settlement with the Archdiocese, Reorganized Debtor
and/or any Non-Settling Insurer on his or her Class 6 Claim, then
such recovery will be turned over to the Trust for distribution
pursuant to this Plan.

\*\*\*

(2)  In the event that any Non-Settling Insurer is implicated
by the Litigation Claim, and (a) either a settlement is achieved with
such Non-Settling Insurer(s) as to such Litigation Claim or (b) the
Litigation Claimant obtains a judgment against the Archdiocese or
Reorganized Debtor and either (i) the Trust or (ii) the Litigation
Claimant obtains a recovery from any such Non-Settling Insurer(s)
as to such judgment, then such recovery shall be turned over to the
Trust for distribution pursuant to this Plan.  Such recovery shall
first go to reimburse the Trust or the Litigation Claimant, as the
case may be, for all reasonable attorneys' fees and costs incurred in
connection with pursuing the recovery against the Non-Settling
Insurer(s) relating to the Litigation Claim.  Any remaining amount
of any such recovery shall be divided as follows:

(i)     If a settlement is obtained with the
Archdiocese, Reorganized Debtor, or Non-Settling
Insurer(s) on the Litigation Claim before any judgment was
obtained in the Litigation Claim, then the Litigation
Claimant is entitled to receive a portion of such settlement
up to a maximum amount of:  the total amount awardable
for that Litigation Claimant's Litigation Claim under the
Trust Distribution Plan plus 15% of the total settlement,
with the remainder to go to the Trust.  The 15% will be
payable by the Trust only if the settlement or judgment is in
an amount sufficient to pay the total amount awardable
under the Trust Distribution Plan for that Litigation
Claimant's Claim plus the 15%.

(ii)    If a judgment is obtained on the Litigation Claim and the resolution with or judgment against the Archdiocese, Reorganized Debtor, or Non-Settling Insurer is obtained thereafter, then the Litigation Claimant is entitled to receive a portion of such judgment or settlement up to a maximum amount of:  the total amount awardable for that Litigation Claimant's Litigation Claim under the Trust Distribution Plan plus 30% of the total settlement or judgment, with the remainder to go to the Trust.  The 30% will be payable by the Trust only if the settlement or judgment is in an amount sufficient to pay the total amount awardable under the Trust Distribution Plan for that Litigation Claimant's Claim plus the 30%.

(3)    The Trust's payment to a Litigation Claimant that has recovered a judgment or settlement does not affect, diminish or impair the Trust's right to collect the policy proceeds respecting such Class 6 Claim from any Non-Settling Insurer, nor does it affect, diminish or impair the Trust's right to bring any claims against the Non-Settling Insurer that have been assigned to the Trust or that belong to the Trust by operation of law.

\*\*\*

### 6.4    TRUST POWERS WITH RESPECT TO CLASS 6 CLAIMS AND NON-SETTLING INSURERS

\*\*\*

(c)    If the Trust successfully resolves an insurance coverage dispute or otherwise receives a recovery of insurance proceeds relating to any Class 6 Claim(s), such proceeds shall become Trust Assets, and shall increase the amount available to pay Class 6 Claims, pursuant to the Trust Distribution Plan.  In such event, and on a periodic basis accumulating all such recoveries, the Trust shall make supplemental payments to Class 6 claimants in accordance with the Trust Agreement and Trust Distribution Plan.

**K.**     **The UCC Plan's Provisions Dealing With Prosecution Of Tort Claims And
Claims Against The Insurers Involve Champerty And Maintenance.**

Sections 6.1(a), 6.2(i)(2), 6.2(i)(4), 6.4(a), 6.4(b) and 6.4(c) of the UCC

Plan:

### 6.1 THE TRUST.

**(a) Purpose, Formation and Assets**. The Trust shall be
established for the purposes described in this paragraph. The Trust
shall receive the transfer and assignment of assets as provided in
Articles V and VI, including from amounts transferred from the
Plan Implementation Account, Settling Insurer Contributions, and
the Transferred Insurance Interests, of which the Trust is, and shall
be deemed to be, the sole assignee.  The Trust shall make
distributions to the Class 6 claimants, as provided by this Plan, the
Trust Agreement, and the Trust Distribution Plan. The Trust shall
fund the defense of the Archdiocese and Reorganized Debtor as
against any Litigation Claims brought by Class 6 claimants, but
only to the extent that the Archdiocese or Reorganized Debtor is
not defended or otherwise reimbursed for its defense expenses by
any Insurer.  The Trust shall advance funding or indemnify the
Archdiocese and Reorganized Debtor with respect to any
judgments or settlements of any Litigation Claims brought by
Class 6 claimants, but only to the extent that such judgments or
settlements are not funded, or the Archdiocese or the Reorganized
Debtor is not indemnified for them, by any Insurer.  The Trust
shall pursue recoveries against any Non-Settling Insurers in respect
of the Transferred Insurance Interests.  The Trust shall fund the
costs and expenses in executing these functions, all such functions
to be executed in accordance with this Plan, the Trust Agreement,
and the Trust Distribution Plan, with the aim of preserving,
managing and maximizing Trust Assets to pay Class 6 claimants
and with no objective to continue or engage in the conduct of a
trade or business.  The proposed Trust Agreement is attached
hereto as <u>Exhibit D</u>. …

\*\*\*

### 6.2     TREATMENT OF CLASS 6 CLAIMS

\*\*\*

**(i)     Litigation Claims.**  In the event a Litigation Claimant
obtains a judgment against the Archdiocese or Reorganized Debtor
or achieves a settlement with the Archdiocese, Reorganized Debtor

and/or any Non-Settling Insurer on his or her Class 6 Claim, then such recovery will be turned over to the Trust for distribution pursuant to this Plan.

\* \* \*

(2)     In the event that any Non-Settling Insurer is implicated by the Litigation Claim, and (a) either a settlement is achieved with such Non-Settling Insurer(s) as to such Litigation Claim or (b) the Litigation Claimant obtains a judgment against the Archdiocese or Reorganized Debtor and either (i) the Trust or (ii) the Litigation Claimant obtains a recovery from any such Non-Settling Insurer(s) as to such judgment, then such recovery shall be turned over to the Trust for distribution pursuant to this Plan. Such recovery shall first go to reimburse the Trust or the Litigation Claimant, as the case may be, for all reasonable attorneys' fees and costs incurred in connection with pursuing the recovery against the Non-Settling Insurer(s) relating to the Litigation Claim. Any remaining amount of any such recovery shall be divided as follows:

(i)     If a settlement is obtained with the Archdiocese, Reorganized Debtor, or Non-Settling Insurer(s) on the Litigation Claim before any judgment was obtained in the Litigation Claim, then the Litigation Claimant is entitled to receive a portion of such settlement up to a maximum amount of:  the total amount awardable for that Litigation Claimant's Litigation Claim under the Trust Distribution Plan plus 15% of the total settlement, with the remainder to go to the Trust. The 15% will be payable by the Trust only if the settlement or judgment is in an amount sufficient to pay the total amount awardable under the Trust Distribution Plan for that Litigation Claimant's Claim plus the 15%.

(ii)     If a judgment is obtained on the Litigation Claim and the resolution with or judgment against the Archdiocese, Reorganized Debtor, or Non-Settling Insurer is obtained thereafter, then the Litigation Claimant is entitled to receive a portion of such judgment or settlement up to a maximum amount of:  the total amount awardable for that Litigation Claimant's Litigation Claim under the Trust Distribution Plan plus 30% of

the total settlement or judgment, with the remainder
to go to the Trust.  The 30% will be payable by the
Trust only if the settlement or judgment is in an
amount sufficient to pay the total amount awardable
under the Trust Distribution Plan for that Litigation
Claimant's Claim plus the 30%.

\*\*\*

(4)    If a Non-Settling Insurer has refused to
defend the Archdiocese or Reorganized Debtor with respect
to any Litigation Claim, the Trust will advance or
reimburse the Archdiocese or Reorganized Debtor for
reasonable attorneys' fees and other expenses incurred in
defending the Litigation Claim, provided the Trust has
consented in advance, such consent not to be withheld
unreasonably.  If any Non-Settling Insurer has refused to
indemnify the Archdiocese or Reorganized Debtor with
respect to any settlement or judgment of a Litigation Claim,
the Trust will advance or reimburse the Archdiocese or
Reorganized Debtor for any judgment or settlement
incurred by the Archdiocese or Reorganized Debtor on
such Litigation Claim incurred, provided the Trust has
consented in advance to any such settlement, such consent
not to be withheld unreasonably.  The Trust's advancement
or reimbursement of the Archdiocese or Reorganized
Debtor for such defense costs and/or judgment or
settlement payments, and any distributions made by the
Trust to the Litigation Claimant and other Class 6
claimants, will not affect, diminish or impair the Trust's
right to bring claims against any Non-Settling Insurer for
refusing to defend and/or indemnify the Archdiocese or
Reorganized Debtor, including but not limited to claims for
payment of policy proceeds, bad faith, wrongful failure to
settle, and extra-contractual damages authorized by law.

\*\*\*

## 6.4    TRUST POWERS WITH RESPECT TO CLASS 6 CLAIMS AND NON-SETTLING INSURERS

(a)    With the consent of the Trustee, the Archdiocese or
Reorganized Debtor may enter into a settlement of a Class 6 Claim
allowed by applicable non-bankruptcy law including but not
limited to settlements consistent with *Miller v. Shugart*, 316
N.W.2d 729 (Minn. 1982) or *Drake v. Ryan*, 514 N.W.2d 785

(Minn. 1994), and may enter into an arrangement with Class 6 claimant's counsel providing such counsel will receive reasonable compensation from any recovery from the Archdiocese, the Reorganized Debtor or a Non-Settling Insurer as provided in Section 6.2.

(b)     The Trustee may use the Trust Assets, to prosecute litigation against the Non-Settling Insurers.

(c)     If the Trust successfully resolves an insurance coverage dispute or otherwise receives a recovery of insurance proceeds relating to any Class 6 Claim(s), such proceeds shall become Trust Assets, and shall increase the amount available to pay Class 6 Claims, pursuant to the Trust Distribution Plan.  In such event, and on a periodic basis accumulating all such recoveries, the Trust shall make supplemental payments to Class 6 claimants in accordance with the Trust Agreement and Trust Distribution Plan.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In re:                                                          Case No. 15-30125

The Archdiocese of Saint Paul and                               Chapter 11
Minneapolis,

            Debtor.

_____

### UNSWORN CERTIFICATE OF SERVICE
_____

I, Dale O. Thornsjo, declare under penalty of perjury that on July 7, 2017, I caused

the following document:

**Memorandum of Law and Appendix in Support of the Objections of
Travelers Casualty and Surety Company, Hartford Accident and
Indemnity Company, American Home Assurance Company, TIG
Insurance Company, and Fireman's Fund Insurance Company to the
Second Amended Chapter 11 Plan of Reorganization of the Official
Committee of Unsecured Creditors**

to be filed electronically with the Clerk of Court, and that a copy of the above-referenced

document was delivered to the parties who are Filing Users, by automatic e-mail

notification pursuant to the Electronic Case Filing System, and this notice constitutes

service pursuant to Local Rule 9006-1(a).   The following parties required to receive

service under Local Rule 9013-3(b) have received service by ECF:

The Plan Proponent and Attorneys for Official Committee of Unsecured Creditors:

Philip J. Ashfield – phillip.ashfield@stinsonleonard.com
Edwin H. Caldie – Edwin.Caldie@stinsonleonard.com
Robert T. Kugler – robert.kugler@stinsonleonard.com

<u>Attorneys for the Debtor</u>:

Richard D. Anderson – <u>randerson@briggs.com</u>
Benjamin Gurstelle – <u>bgurstelle@briggs.com</u>
John R. McDonald – <u>jmcdonald@briggs.com</u>
Aaron G. Thomas – <u>athomas@briggs.com</u>

<u>The United States Trustee</u>:

Robert Raschke – <u>robert.raschke@usdoj.gov</u>
Sarah K. Wencil – <u>Sarah.J.Wencil@usdoj.gov</u>

Executed on:  July 7, 2017.                    Signed:  <u>/e/ Dale O. Thornsjo            </u>
                                               Dale O. Thornsjo
                                               O'MEARA, LEER, WAGNER & KOHL, P.A.
                                               7401 Metro Boulevard, Suite 600
                                               Minneapolis, MN 55439
                                               952-831-6544

2108474

2