**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | |
| The Archdiocese of Saint Paul and Minneapolis, | Case No. 15-30125 |
| | Chapter 11 |
| Debtor. | |

**CATHOLIC MUTUAL RELIEF SOCIETY OF AMERICA'S OBJECTION**
**TO THE SECOND AMENDED PLAN OF REORGANIZATION OF THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS**

**INTRODUCTION**

Catholic Mutual Relief Society of America ("CMRS") respectfully submits this objection to confirmation of the Second Amended Chapter 11 Plan of Reorganization ("Plan") of the Official Committee of Unsecured Creditors ("Committee") of the Archdiocese of Saint Paul and Minneapolis ("Archdiocese") [ECF No. 890].

CMRS and the Archdiocese negotiated a settlement with respect to coverage under the CMRS certificates ("Certificates"), the terms of which settlement are being memorialized in an agreement to be approved by this Court ("CMRS Settlement"). The Committee is aware of the CMRS Settlement and Certificates, as expressly acknowledged in the Committee's Disclosure Statement [ECF No. 891] and Plan. Pursuant to the CMRS Settlement, CMRS is prepared to fund $14 million to pay claims held by the Committee's constituency, and leave certain coverage under the Certificates in place for the Archdiocese's benefit – yet the Committee has elected to designate CMRS as a "Non-Settling Insurer" under the Plan. The Plan, instead, rejects the $14 million recovery and elects to pursue the uncertainties of litigation. As a party in interest, CMRS is thus compelled to object to confirmation of the Plan pursuant to 11 U.S.C. § 1128(b).

## OBJECTIONS TO PLAN

1.  **The Plan Contains Material Inaccuracies and Inconsistencies.**  The Plan is replete with undefined terms and inconsistencies that may have affected the solicitation, balloting and feasibility of the Plan in violation of § 1125(a)(1) and § 1129(a)(8), (10) and (11). *See, e.g.*, *In re Mirant Corp.*, 334 B.R. 787, 799 (Bankr. N.D. Tex. 2005) (enjoining solicitation of votes where Debtors' solicitation materials were replete with inaccuracies). An example of each such objectionable provision is as follows:

   a) "Channeling Claim," defined at § 1.1(s) of the Plan, is not used anywhere else in the Plan, evidencing that there are no "Channeled Claims."

   b) "Channeling Injunction," defined at § 1.1(t) of the Plan refers to the injunction imposed pursuant to "Section 14.3 of the Plan."  But there is *no* Section 14.3 of the Plan.  Nor is there a Channeling Injunction in the Plan, despite the sporadic use of the term. However, ¶ 2(B)(3) of the Settlement Agreement with the Home Insurance Company ("Home Agreement" affixed as Exhibit G to the Plan), the *only Settling Insurer* identified in Exhibit L of the Plan, expressly requires that any plan contain a Channeling Injunction, channeling all Tort Claims to the Trust.

   c) "Settling Insurer Supplemental Injunction," defined at § 1.1(nnn) of the Plan, is defined to have the meaning ascribed to it in "§ 13.5 of the Plan."  But there is no § 13.5 in the Plan. Nor is there a Settling Insurer Supplemental Injunction, despite the fact that the Plan expressly provides (as an inducement) that any Non-Settling Insurer may become a Settling Insurer, and in exchange, shall be the beneficiary of a "Settling Insurer Supplemental Injunction." *See* § 6.3(a)(3) of the Plan.

   d) Trust Agreement, Exhibit D to the Plan, a document fundamental to the Plan's implementation, provides that it is entered into pursuant to the Committee's original Plan, filed in August 2016, and incorporates definitions from *that* Plan – not the Plan presently subject to confirmation.  Moreover, § 2.1 of the Trust Agreement (Corpus of the Trust) includes "*$34,500,000 in cash proceeds from Insurance Settlements*" -- when no such sum (or insurance settlements) are provided for in the Plan.  To the extent creditors voted in reliance of such a provision, such solicitation was not done in good faith. *See In re Mirant*, 334 B.R. at 799 (plan confirmation process would be fatally flawed if creditors relied upon misleading information when casting their ballots).

   e) Plan and Home Agreement are Inconsistent.  Section 2(B)(3) of the Home Agreement requires that any plan contain a channeling injunction that enjoins

(and channels to the trust) any third-party claims by other insurers alleging contribution, indemnification, subrogation under the Home Insurance Policies. However, § 6.2(a) of the Plan provides for the exact opposite, immunizing the Trust from any such claims. Thus, the Plan violates the *only* Settling Insurer agreement.

**2. The Absence of a Channeling Injunction and Settling Insurer Supplemental Injunction Renders the Plan Unconfirmable.** Regardless of whether "channeling injunctions" or "settling insurer supplemental injunctions" are appropriate or enforceable, the Plan expressly intends to provide for such injunctive relief as an inducement for Non-Settling Insurers to become Settling Insurers. *See* § 6.3(a)(3) of the Plan. But the Plan contains no "Channeling Injunction" or "Settling Insurer Supplemental Injunction." And in the absence of such protections, it is improbable that any insurer would agree to settle with the Archdiocese or the Trust (post-confirmation). Virtually every other diocesan consensual plan or settlement with an insurer contained such injunctions as an inducement to fund the Trust, and agree to settlements benefitting Tort Claimants. *See, e.g.*, Order Confirming Plan, *In re Roman Catholic Diocese of Gallup*, Case No. 1:13-bk13676 Dkt. No. 591 (Bankr. N.M., June 23, 2016); Order Confirming Plan, *In re Catholic Bishop of Northern Alaska*, Case No. 08-00110 Dkt. No. 689 (Bankr. Ala., Feb. 17, 2010); Order Confirming Plan, *In re Roman Catholic Bishop of Helena, Montana*, Case No. 14-60074 Dkt. No. 475 (Bankr. Mo., March 5, 2015). Here, the Plan provides no such assurances of protection to induce settlements with insurers. And to be enforceable, the Plan (on which creditors voted) must contain such injunctive relief, with adequate notice to all persons to be enjoined. *See, e.g., In re Lower Bucks Hosp.*, 471 B.R. 419, 459 (Bankr. E.D. Pa. 2012), *aff'd*, 488 B.R. 303 (E.D. Pa. 2013), *aff'd*, 571 F. App'x 139 (3d Cir. 2014) (refusing to grant third party releases in plan based on finding that voting creditors did not receive sufficient notice of releases and injunction. Because such provisions were omitted, the Plan must be re-solicited in

order to effectuate § 6.3(a)(3), and any "Settling Insurer Supplemental Injunction," the scope of which no creditor or other party in interest has seen.

3. **The Plan is Inconsistent with the Insurance Neutrality Provision.** Section 6.3(d) of the Plan (entitled "This Plan is Neutral as to Insurance Policies," the insurance neutrality provision) provides that "nothing in this Plan, the Trust Agreement...Confirmation Order, or any other order of the Bankruptcy Court…" shall affect the rights of Non-Settling Insurers under the applicable policies or at law. A plan may be considered "insurance neutral" if it neither "increases an insurer's pre-petition obligations nor impairs its pre-petition contractual rights" *See In re Pittsburgh Corning Corp.*, 453 B.R. 570, 584 (Bankr. W.D. Pa. 2011). However, § 6.3(a)(1) of the Plan directly conflicts with insurance neutrality, providing that Non-Settling Insurers retain any defenses to a claim for coverage, etc., "*except* any defense (1) related to the transfer of the Transferred Insurance Interests to the Trust; (2) effected by operation of bankruptcy law as a result of confirmation; or (3) based on facts determined by the Bankruptcy Court in connection with confirmation." Section 6.3(a)(1) guts the insurance neutrality provisions of the Plan, and is inconsistent with the Plan's other provisions relating to the retention of rights by Non-Settling Insurers. Such a provision should be removed, and until such time, the Plan should not be confirmed.

4. **"Best Interest of Creditors" and Class 7 Treatment.** The Plan's treatment of Future Tort Claimants violates the "best interest of creditors" test of § 1129(a)(7)(A)(ii). Pursuant to section 1129(a)(7), "a debtor's Chapter 11 plan may only be confirmed, *inter alia*, if any holder of an impaired claim or interest either accepts the plan or receives no less than he would under a Chapter 7 liquidation" *In re Diwan, L.L.C.*, 848 F.3d 1147, 1149 (8th Cir. 2017). Although the Archdiocese and Reorganized Debtor will not receive a discharge under the Plan,

Future Tort Claimants will not be paid from Trust (which receive the liquidation value of all Archdiocese assets). Future Tort Claimants will be relegated to seek recovery only from the Non-Settling Insurers because, pursuant to the Plan, all the Reorganized Debtor's assets (or the liquidation value thereof) will have been put into the Trust, from which Class 7 claimants receive *no* distribution. *See* sections 4.7(b) and 6.1(a) of the Plan. Under the Plan, the Reorganized Debtor shall "assume" liability for Class 7 Claims (an "impaired" class under the Plan) – but under the Plan, the entire liquidation value of the Debtor's assets must be transferred to the Trust (from which fund, only Class 6 Claims are paid).

Simply put, if the Archdiocese was liquidated, the Class 7 claimants would share *pari passu* with the holders of Class 6 Tort Claims, from the proceeds of the Archdiocese assets and/or the Trust. Under the Plan, as presently structured, Class 7 claimants will not, thereby violating § 1129(a)(7).

**5.** **Plan is Not Feasible.** The Plan is not feasible under § 1129(a)(11) because: (a) the Archdiocese cannot be compelled to obtain a secured loan in excess of $38 million to fund the Trust; (b) the Archdiocese will not have the requisite credit worthiness to obtain and carry a $38 million loan; and (c) the Plan requires access to "donor restricted funds" that may not be property of the estate available to creditors – and may be subject to the rights of the donor third-parties. Pursuant to section 1129(a)(11), a plan may only be confirmed if it is not likely to be followed by a liquidation or further financial reorganization, unless such liquidation is contemplated by the plan. *In re Danny Thomas Properties II Ltd. P'ship*, 241 F.3d 959, 962 (8th Cir. 2001). "[A]s a practical matter it requires the court to find that the plan is "workable" before it may be confirmed." *Id.*

Moreover, the Plan is a *de facto* involuntary liquidation of a "not for profit" which is impermissible as a matter of law under § 303(a). Section 5.2(b) of the Plan requires payment of the liquidation value of all personal assets of the Archdiocese to the Trust." Section 303(a) bars the involuntary bankruptcy of a corporation that is not a moneyed, business, or commercial corporation. This Court has already decided that the Debtor and non-debtor Catholic Entities are not moneyed, business, or commercial corporations. *See In re Archdiocese of Saint Paul & Minneapolis*, 553 B.R. 693, 701 (Bankr. D. Minn. 2016). Not for profit organizations may not be the subject of an involuntary bankruptcy petition. *Id.* at 701-702. The Plan is, therefore, unconfirmable because it is a blatant attempt to circumvent the prohibition against involuntary liquidation of a not-for-profit entity.

6.  **Classes 8, 13 and 15 are Impaired – Not Unimpaired**. Under section 1124 of the Bankruptcy Code, a class of claims is "impaired" under a plan of reorganization unless, with respect to each claim in the class, the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124. "By this standard, any alteration of a creditor's rights, no matter how minor, constitutes 'impairment.'" *In re Windsor on the River Assocs., Ltd.*, 7 F.3d 127, 130 (8th Cir. 1993). The Plan improperly classifies and treats Classes 8 (Inter-Parish Loan Fund and Assessment Overpayment Claims), 13 (Abuse Related Contingent Claims) and 15 (Non-Credibly Accused Priest Support Payment Claims) as unimpaired, when they are plainly impaired – thereby denying the creditors in those classes the right to vote, which (i) renders it impossible for this Court to make the requisite determination under § 1129(c) based upon the "preference of creditors" because three impaired classes of creditors were denied the right to vote; and (ii) allows for the Committee to skirt the obligation of this Court under § 1129(c) to determine the

"preference of creditors" in confirming competing Plans, and (ii) allows, albeit improperly, the Committee to skirt its obligation to satisfy the cramdown provisions of § 1129(b).

Class 8 Claimants are "impaired" because instead of cash, they are receiving a future "credit" on account of their alleged overpayments – thereby altering their legal rights, and rendering them "impaired" under § 1124 of the Bankruptcy Code. Similarly, Classes 13 and 15 Claimants are impaired because they are receiving no payment and retaining no property under the Plan – clear "impairment" under § 1124(1).

## CONCLUSION

For the reasons stated above, CMRS respectfully requests that the Court deny confirmation of the Committee's Plan, and grant such other and further relief as may be just and equitable. CMRS respectfully joins in any other objections filed with respect to the Plan, to the extent consistent with this objection, and hereby reserves its right to be heard on such objections at the hearing.

Dated: July 7, 2016

        SCHIFF HARDIN LLP

        By:  */e/ Louis T. DeLucia*
          Louis T. DeLucia
          Alyson M. Fiedler
          666 Fifth Avenue, 17th Floor
          New York, NY  10103
          T: 212.753.5000
          F: 212.753.5044
          Email: ldelucia@schiffhardin.com
                 afiedler@schiffhardin.com

        and

        BARNES & THORNBURG LLP

        By:  */e/ Christopher J. Knapp*
          Christopher J. Knapp, #0344412
          Connie Lahn, #0269219

        225 South Sixth Street
Suite 2800
Minneapolis, MN 55402-4662
T. 612.367.8706
F. 612.333-6798
Email: Christopher.Knapp@btlaw.com
       Connie.Lahn@btlaw.com

*Counsel for Catholic Mutual Relief Society of America*

CH2\19617066.3