# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bankruptcy Case No. 15-30125 |
| The Archdiocese of Saint Paul and Minneapolis, | Chapter 11 |
| Debtor. | |

## CERTAIN INSURERS' PLAN OBJECTIONS TO THE SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE ARCHDIOCESE OF SAINT PAUL AND MINNEAPOLIS

# **TABLE OF CONTENTS**

Objection--1.    The Plan Violates 11 U.S.C. § 1129(a)(1) ............................................. 2

   A.    Pertinent Plan Provision(s).  *See* Appendix Tab I..................................... 2

   B.    Applicable Statute(s).................................................................................. 2

   C.    Applicable Case law ................................................................................... 2

   D.    Argument .................................................................................................... 2

Objection--2.    Sections 3.1 and 4.13 of the Plan Violate 11 U.S.C. §§ 1129(a)(1), 1123(a)(2)
and 1124(1)...................................................................................................... 3

   A.    Pertinent Plan Provision(s).  *See* Appendix Tab II. .................................. 3

   B.    Applicable Statute(s).................................................................................. 3

   C.    Applicable Case law ................................................................................... 3

   D.    Argument .................................................................................................... 4

Objection--3.    Section 5.2(b) Violates 11 U.S.C. §§ 1129(a)(3) and 1129(a)(11) ...................... 4

   A.    Pertinent Plan Provision(s).  *See* Appendix Tab III. ................................ 4

   B.    Applicable Statute(s).................................................................................. 4

   C.    Applicable Case law ................................................................................... 4

   D.    Argument .................................................................................................... 6

Objection--4.    Section 5.2(b) Violates 11 U.S.C. §§ 1129(a)(3) and 1129(a)(11) Because the
Committee Plan Fails to Explain How its Proposed Funding Options Can Be
Obtained. ....................................................................................................... 6

   A.    Pertinent Plan Provision(s).  *See* Appendix Tab III. ................................ 6

   B.    Applicable Statute(s).................................................................................. 6

   C.    Applicable Case law ................................................................................... 6

   D.    Argument .................................................................................................... 7

Objection--5.    Section 5.2(b) Violates the Religious Freedom Restoration Act, 42
U.S.C. § 2000bb Through 42 U.S.C. § 2000bb-4 ("RFRA"), Because it Imposes
a Substantial Burden on the Debtor to Seek Funding from Its Operations ........... 7

   A.    Pertinent Plan Provision(s).  *See* Appendix Tab III. ................................ 7

   B.    Applicable Statute(s) and U.S. Constitutional Amendments............................ 7

   C.    Applicable Case law ................................................................................... 8

   D.    Argument .................................................................................................... 10

DM3\4695830.1

Objection--6.    Section 4.13 Violates 11 U.S.C. § 1129(a)(7) and 1124(1) Because It Provides More Favorable Treatment to the Holders of Class 6 Claims than to Other Unsecured Claims .................................................................................... 11

    A.    Pertinent Plan Provision(s).  *See* Appendix Tab II. ........................................ 11

    B.    Applicable Statute(s) ........................................................................................ 11

    C.    Applicable Case law ......................................................................................... 11

    D.    Argument ........................................................................................................... 12

Objection--7.    Sections 3.1, 3.2, 4.3, 4.4, 4.5, 4.7, 4.8 , 4.9, 4.13, 4.14, 4.15, 4.16, Taken Together, Violate 11 U.S.C. § 1123(a)(2), 1124(1) and 1129(a)(8) ................... 12

    A.    Pertinent Plan Provision(s).  *See* Appendix Tab IV ....................................... 12

    B.    Applicable Statute(s) ........................................................................................ 12

    C.    Applicable Case law ......................................................................................... 13

    D.    Argument ........................................................................................................... 13

Objection--8.    Sections 5.29(b), 6.1(a), 6.2(a), 6.2(c) and Other Sections Violate 11 U.S.C. §§ 1129(a)(11), 1123(a)(5) and 1123(b)(3) ....................................................... 13

    A.    Pertinent Plan Provision(s).  *See* Appendix Tab V. ....................................... 13

    B.    Applicable Statute(s) ........................................................................................ 13

    C.    Applicable Case law ......................................................................................... 14

    D.    Argument ........................................................................................................... 14

Objection--9.    The Committee Plan Cannot Be Confirmed Because Sections 1.1(sss), 5.2(e)(1), 6.1(b)(2) and 6.2(a) Are Inconsistent With Each Other ...................................... 15

Objection--10.    The Committee Plan Cannot Be Confirmed Because Sections 5.2(e)(1), 6.1(a) and 6.1(b) Are Inconsistent with Section 1.1(sss) ............................................... 15

    A.    Pertinent Plan Provision(s).  *See* Appendix Tab VI ....................................... 15

    B.    Applicable Statute(s) ........................................................................................ 15

    C.    Applicable Case law ......................................................................................... 15

    D.    Argument ........................................................................................................... 15

Objection--11.    Sections 1.1(sss), 5.2(e)(1), 6.1(a) and 6.1(b) Violate Applicable State Law ..... 15

    A.    Pertinent Plan Provision(s).  *See* Appendix Tab VII. ..................................... 15

    B.    Applicable Statute(s) ........................................................................................ 15

    C.    Applicable Case law ......................................................................................... 16

    D.    Argument ........................................................................................................... 16

ii

Objection--12.  Sections 1.1(sss), 5.2(e)(1), 6.1(a) and 6.1(b) Violate 11 U.S.C. § 1129(a)(1), and 1123(a)(5) ............................................................................................... 17

    A.   Pertinent Plan Provision(s).  See Appendix Tab VII. ...................................... 17

    B.   Applicable Statute(s) ...................................................................................... 17

    C.   Applicable Case law ....................................................................................... 17

    D.   Argument ........................................................................................................ 17

Objection--13.  Withdrawn. ......................................................................................... 18

Objection--14.  Withdrawn ........................................................................................... 18

Objection--15.  Section 4.3 Violates Applicable State Law ....................................... 18

    A.   Pertinent Plan Provision(s).  See Appendix Tab VIII. .................................... 18

    B.   Applicable Statute(s) ...................................................................................... 18

    C.   Applicable Case law ....................................................................................... 19

    D.   Argument ........................................................................................................ 20

Objection--16.  Section 4.3 Violates the Due Process Clause of the U.S. Constitution .............. 23

    A.   Pertinent Plan Provision(s).  See Appendix Tab IX. ...................................... 23

    B.   Applicable Statute(s) and Constitutional Provision(s) .................................... 23

    C.   Applicable Case law ....................................................................................... 24

    D.   Argument ........................................................................................................ 24

Objection--17.  Sections 4.15 and 4.16 violate 11 U.S.C. §§ 1129(a)(3) and (a)(7) ................... 25

    A.   Pertinent Plan Provision(s).  See Appendix Tab X. ....................................... 25

    B.   Applicable Statute(s) ...................................................................................... 25

    C.   Applicable Case law ....................................................................................... 25

    D.   Argument ........................................................................................................ 25

Objection--18.  Sections 4.15 and 4.16 Violate RFRA Because They Purport to Interfere with the Debtor's Determinations About How to Compensate Its Employees Who Have Claims in Classes 15 and 16. ............................................................................ 26

    A.   Pertinent Plan Provisions.  See Appendix Tab X. .......................................... 26

    B.   Applicable Statutes ......................................................................................... 26

    C.   Applicable Case law ....................................................................................... 26

    D.   Argument ........................................................................................................ 26

Objection--19.  Section 6.3(a)(1) Violates 11 U.S.C. § 1129(a)(3) ............................ 27

    A.   Pertinent Plan Provision(s).  See Appendix Tab XI. ...................................... 27

DM3\4695830.1

B.   Applicable Statute(s)................................................................... 27

C.   Applicable Case law .................................................................. 27

D.   Argument ................................................................................... 27

Objection--20.  Sections 4.6 and 4.7 Violate 11 U.S.C. § 1129(a)(3). .............. 27

A.   Pertinent Plan Provision(s).  *See* Appendix Tab XII. .................. 27

B.   Applicable Statute(s).................................................................. 27

C.   Applicable Case law .................................................................. 28

D.   Argument ................................................................................... 28

Objection--21.  Section 4.6 Violates 11 U.S.C. § 1129(a)(3).......................... 28

A.   Pertinent Plan Provision(s).  *See* Appendix Tab XI..................... 28

B.   Applicable Statute(s).................................................................. 28

C.   Applicable Case law .................................................................. 28

D.   Argument ................................................................................... 28

Objection--22.  Sections 4.6 and 6.2 Violate 11 U.S.C. § 1129(a)(3) Because There Is No
Bankruptcy Purpose in Allowing the Class 6 Claimants to Be Paid by the
Trust and to Also Litigate Their Claims Against the Reorganized Debtor Post-
Effective Date. ............................................................................ 29

A.   Pertinent Plan Provision(s).  *See* Appendix Tab XIII. ................. 29

B.   Applicable Statute(s).................................................................. 29

C.   Applicable Case law .................................................................. 29

D.   Argument ................................................................................... 29

Objection--23.  Section 5.2(b) Violates the First Amendment, 11 U.S.C. §§  1123(a)(5),
1129(a)(11), 1129(a)(16) and RFRA.......................................... 30

A.   Pertinent Plan Provision(s).  *See* Appendix Tab III..................... 30

B.   Applicable Statute(s) and Constitutional Provision(s)................... 30

C.   Applicable Case law .................................................................. 31

D.   Argument ................................................................................... 31

Objection--24.  Sections 4.6, 6.2 and Exhibit E Violate 11 U.S.C. §§ 101(5), 1129 (a)(3),
1129(a)(7) and 502 .................................................................... 32

A.   Pertinent Plan Provision(s).  *See* Appendix Tab XIV.................... 32

B.   Applicable Statute(s).................................................................. 32

C.   Applicable Case law .................................................................. 33

iv

D.    Argument ................................................................................................ 33

Objection--25.  Sections 6.2(a), 6.2(c), and 16.20 Violate 11 U.S.C. §§ 1129(a)(1) and
1141(a) ................................................................................................ 34

A.    Pertinent Plan Provision(s).  *See* Appendix Tab XV. .................................... 34

B.    Applicable Statute(s) ............................................................................... 34

C.    Applicable Case law ............................................................................... 34

D.    Argument ............................................................................................. 35

Objection--26.  Section 6.1(b)(2) Violates Applicable State Law ............................... 35

A.    Pertinent Plan Provision(s).  *See* Appendix Tab VI. .................................... 35

B.    Applicable Statute(s) ............................................................................... 35

C.    Applicable Case law ............................................................................... 35

D.    Argument ............................................................................................. 35

Objection--27.  Section 6.1(b)(4) Violates Applicable State Law ............................... 36

A.    Pertinent Plan Provision(s).  *See* Appendix Tab XVI. .................................. 36

B.    Applicable Statute(s) ............................................................................... 36

C.    Applicable Case law ............................................................................... 36

D.    Argument ............................................................................................. 37

Objection--28.  Withdrawn. ............................................................................. 37

Objection--29.  Sections 6.1(c), 6.1(c)(1)(i) and 8.4 Violate RFRA ......................... 37

A.    Pertinent Plan Provision(s).  *See* Appendix Tab XVII. ................................. 37

B.    Applicable Statute(s) ............................................................................... 37

C.    Applicable Case law ............................................................................... 37

D.    Argument ............................................................................................. 37

Objection--30.  Section 8.4(b)(3) Violates RFRA ................................................. 38

A.    Pertinent Plan Provision(s).  *See* Appendix Tab XVIII. ............................... 38

B.    Applicable Statute(s) ............................................................................... 38

C.    Applicable Case law ............................................................................... 38

D.    Argument ............................................................................................. 38

Objection--31.  Section 15.3 Violates RFRA ...................................................... 38

A.    Pertinent Plan Provision(s).  *See* Appendix Tab XIX. .................................. 38

B.    Applicable Statute(s) ............................................................................... 38

C.  Applicable Case law ......................................................................... 39

D.  Argument .................................................................................... 39

Objection--32.  Section 16.8(a) Violates Applicable Law Governing the Court's Post-
   Confirmation Related-to Jurisdiction .................................................. 39

A.  Pertinent Plan Provision(s).  *See* Appendix Tab XX. ...................................... 39

B.  Applicable Statute(s) ........................................................................ 39

C.  Applicable Case law ......................................................................... 40

D.  Argument .................................................................................... 41

CONCLUSION .............................................................................................. 44

APPENDIX ................................................................................................. 48

DM3\4695830.1

# <u>TABLE OF AUTHORITIES</u>

## Cases

*In re A.P.I. Inc.*, 331 B.R. 828 (Bankr. D. Minn. 2005) ...................................................................2

*Ad Hoc Comm. of Non-Consenting Creditors v. Peabody Energy Corp. (In re Peabody Energy Corp.)*, 2017 U.S. Dist. LEXIS 47231 (E.D. Mo. Mar. 30, 2017) ...........................................................................................................................................5

*Allied Prods. Corp. v. ITT Indus. (In re Allied Prods. Corp.)*, Case No. 03-cv-1361, 2004 U.S. Dist. LEXIS 5288 (N.D. Ill. Mar. 31, 2004) ...................................15

*In re Amatex Corp.*, 755 F.2d 1034 (3d Cir. 1985) .......................................................................42

*In re Banks*, 241 B.R. 434 (Bankr. E.D. Ark. 1999) ....................................................................23

*Barger v. Hayes Cnty. Non-stock Co-op (In re Barger)*, 233 B.R. 80 (B.A.P. 8th Cir. 1999) .....................................................................................................................................33

*Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147 (D.N.J. 2005) ....................................................................................................................................44

*In re Berkshire Foods, Inc.*, 302 B.R. 587 (Bankr. N.D. Ill. 2003) ............................................44

*Boddie v. Connecticut*, 401 U.S. 371, 377-78; 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) ............................................................................................................................................43

*In re Broadview Lumber Co., Inc.*, 118 F.3d 1246 (8th Cir. 1997) .............................................15

*In re Cary Metal Products, Inc.*, 152 Bankr. 927 (Bankr. N.D. Ill. 1993) .................................41

*Combs v. Central Texas Annual Conference of United Methodist Church*, 173 F.3d 343 (5th Cir. 1999) ........................................................................................................9

*In re Combustion Eng'g, Inc.*, 391 F.3d 190 (3d Cir. 2004) ........................................................43

*Conoco, Inc. v. Republic Ins. Co.*, 819 F.2d 120 (5th Cir. 1987) ...............................................18

*Cutcliff v. Reuter (In re Reuter)*, 427 B.R. 727 (Bankr. W.D. Mo. 2010) .....................................4

*Daewoo Motor Am., Inc. v. Gulf Ins. Co. (In re Daewoo Motor Am., Inc.)*, 302 B.R. 308 (C.D. Cal. 2003) ....................................................................................................40

*Danny Thomas Props. II Ltd. Pshp. v. Beal Bank, S.B.B. (In re Danny Thomas Props. II Ltd. Pshp.)*, 241 F.3d 959 (8th Cir. 2001) ...............................................................5

*Diocese of Winona, et. al. v. Interstate Fire & Cas. Co., et. al.,* 89 F.3d 1386 ................. 18, 20-22

*Diwan, L.L.C. v. Maha-Vishnu (In re Diwan, L.L.C.)*, 848 F.3d 1147 (8th Cir. 2017) ................................................................................................................11

*EEOC v. Catholic University of America*, 83 F.3d 455, 462-63 (D.C. Cir. 1996) ........................9

*Finova Capital Corp. v. Larson Pharmacy Inc. (In re Optical Techs., Inc.)*, 425 F.3d 1294 (11th Cir. 2005) ................................................................................34

*Food Mkt. Merch., Inc. v. Scottsdale Indem. Co.*, 196 F. Supp. 3d 1004 (D. Minn. 2016) ..............................................................................................................19

*In re Forty-Eight Insulations, Inc.*, 133 B.R. 973 (N.D. Ill. 1991) ................................17

*G-I Holdings, Inc. v. Hartford Accident and Indem. Co. (In re G-I Holdings, Inc.)*, 278 B.R. 376 (Bankr. D.N.J. 2002) ................................................................40

*Gellington v. Christian Methodist Episcopal Church, Inc.*, 203 F.3d 1299 (11th Cir. 2000) ....................................................................................................9

*In re Gilbertson Rests. LLC*, 2005 Bankr. LEXIS 554 (Bankr. N.D. Iowa Apr. 4, 2005) ..............................................................................................................11

*In re Global Indus. Techs.*, 645 F.3d 201 (3d Cir. 2011).........................................41, 43

*Gopher Oil Co. v. America Hardware Mut. Ins. Co.*, 588 N.W.2d 756 (Minn. App. 1999) ..........................................................................................................36

*In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213 (Bankr. D.N.J. 2000) ................33

*Greenpond South, LLC v. GE Capital Corp.*, 2015 U.S. Dist. LEXIS 5307 (D. Minn. Jan. 16, 2015) ......................................................................................40

*Hanson v. First Bank of S. D., N.A.*, 828 F.2d 1310 (8th Cir. 1987) ..............................4

*Hartford Underwriters Ins. Co. v. Magna Bank, N.A. (In re Hen House Interstate, Inc.)*, 177 F.3d 719 (8th Cir. 1999) ................................................................42

*In re Holthoff*, 58 B.R. 216 (Bankr. E.D. Ark. 1985) ....................................................3

*Horne v. Dep't of Agric.*, 135 S. Ct. 2419 (2015)..........................................................23

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 132 S. Ct. 694, 181 L. Ed. 2d 650 (2012) ....................................................... 8-9

*Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 73 S. Ct. 143, 97 L. Ed. 120 (1952)..................................................................................................................9

*Landgraf v. Usi Film Prods.*, 511 U.S. 244 (1994) ......................................................23

viii

*Landry v. Exxon Pipeline Co. Mendoza Marine, Inc.*, 260 B.R. 769 (Bankr. M.D. La. 2001) ............................................................................................................ 15-16

*In re Loganbill*, 554 B.R. 871 (Bankr. W.D. Mo. 2016) ............................................14

*In re Lull Corp.*, 162 B.R. 234 (Bankr. D. Minn. 1993) ............................................11

*Marcus Hook Dev. Park, Inc.*, 153 B.R. 693, 700 (Bankr. W.D. Penn. 1993) ............................44

*Martin v. Catholic Diocese of Wilmington, Inc. (In re Catholic Diocese of Wilmington, Inc.)*, 484 B.R. 629 (D. Del. 2012)...................................................25

*Montana v. Goldin (In re Pegasus Gold Corp.)*, 296 B.R. 227 (D. Nev. 2003)..........................40

*Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869 (9th Cir. 2012) .........................................................................43

*Noreen v. Slattengren*, 974 F.2d 75 (8th Cir. 1992) ...................................................5

*Official Unsecured Creditors' Committee v. Michaels (in the Matter of Marin Motor Oil, Inc.)*, 689 F.2d 445 (3d Cir. 1982) ...............................................43

*Overton's, Inc. v. Interstate Fire & Cas. Ins. Co. (In re Sportstuff, Inc.)*, 430 B.R. 170 (B.A.P. 8th Cir. 2010) ......................................................................17

*Pacifica L 51 LLC v. New Invs. Inc. (In re New Invs., Inc.)*, 840 F.3d 1137 (9th Cir. 2016) ...........................................................................................13

*Paul v. Monts*, 906 F.2d 1468 (10th Cir. 1990) .......................................................34

*In re Petters Co., Inc.*, 419 B.R. 369 (Bankr. D. Minn. 2009) .....................................17

*In re Pleasant Woods Assocs. Ltd. Partnership*, 2 F.3d 837 (8th Cir. 1993).....................5

*In re Polytherm Industries, Inc.*, 33 B.R. 823 (W.D. Wis. 1983) ...................................3

*Save Mart Supermarkets v. Underwriters at Lloyd's London*, 843 F. Supp. 597 (N.D. Cal. 1994)..............................................................................................18

*In re Schauer*, 835 F.2d 1222 (8th Cir. 1987)..........................................................36

*SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230 (3d Cir. 2008) ...........................................................................................23

*In re Star Ambulance Serv., LLC*, 540 B.R. 251 (Bankr. S.D. Tex. 2015)....................13

*State Nat. Ins. Co. v. County of Camden*, No. 08-5128(NLH)(AMD), 2012 WL 6652819 (D.N.J. Dec. 19, 2012) ....................................................................18

*Term Loan Holder Comm. v. Ozer Group, L.L.C. (In re The Caldor Corp.)*, 303
F.3d 161 (2d Cir. 2002)................................................................................43

*Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443 (2007)...............................15

*In re United States Brass Corp.*, 110 F.3d 1261 (7th Cir. 1997).................................40

*In re United States Brass Corp.*, 301 F.3d 296 (5th Cir. 2002)...................................40

*United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem.
Ass'n (In re United States Lines, Inc.)*, 197 F.3d 631 (2d Cir. 1999) .....................40

*United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S. Ct. 2309, 76 L. Ed. 2d
515 (1983) ...............................................................................................19

*In re Valley Park Group, Inc.*, 96 B.R. 16 (Bankr. N.D.N.Y. 1989) ..............................3

*In re W.R. Grace & Co.*, 475 B.R. 34 (D. Del. 2012)............................................ 15-16

*Wigley v. Wigley (In re Wigley)*, 557 B.R. 678 (B.A.P. 8th Cir. 2016) .........................2

*Windsor on the River Assocs. v. Balcor Real Estate Fin. (In re Windsor on the
River Assocs.)*, 7 F.3d 127 (8th Cir. 1993).................................................................3

*Windsor v. McVeigh*, 93 U.S. 274 (1876) ...................................................................43

*In re WorldCom, Inc.*, 401 B.R. 637 (Bankr. S.D.N.Y. 2009)....................................34

*Young v. Evangelical Free Church (In re Young)*, 82 F.3d 1407 (8th Cir. 1996),
*vacated*, 521 U.S. 114 (1997) ................................................................... 8-10, 26

*Young v. Northern Illinois Conference of United Methodist Church*, 21 F.3d 184
(7th Cir. 1994)........................................................................................................9

*In Re Young*, 141 F.3d 854 (8th Cir. 1998)............................................................. 8-9

## Statutes

11 U.S.C. § 101......................................................................................2, 31, 33

11 U.S.C. § 502......................................................................................2, 32, 33

11 U.S.C. § 541..........................................................................................19, 24

11 U.S.C. § 726.....................................................................................11-12, 24-25

11 U.S.C. § 1109.......................................................................................... 42-44

11 U.S.C. § 1123...........................................................................................*Passim*

DM3\4695830.1

11 U.S.C. § 1124 ................................................................................................................ *Passim*

11 U.S.C. § 1126 ........................................................................................................................ 3

11 U.S.C. § 1129 ................................................................................................................ *Passim*

11 U.S.C. § 1141 .............................................................................................................. 2, 34-35

28 U.S.C. § 157 ................................................................................................................... 39-41

28 U.S.C. § 1334 ................................................................................................................. 39-41

42 U.S.C. § 2000bb ............................................................................................................... 7, 9

42 U.S.C § 2000bb-1 ................................................................................................................ 7

42 U.S.C. § 2000bb-3 .............................................................................................................. 7

42 U.S.C. § 2000bb-4 .............................................................................................................. 7

Minn. Stat. § 315.12 ............................................................................................................ 30-31

Minn. Stat. § 315.16 ............................................................................................................... 31

**Other Authorities**

Fed. R. Bankr. P. 7001(2) ................................................................................................ 23-24

MRPC 1.7 ............................................................................................................................... 32

DM3\4695830.1

Certain Underwriters at Lloyd's, London, who subscribed severally and not jointly as their interests appear to Policy Nos. SL 3721, SL 3722, SL 3723, ISL 3115, ISL 3116, ISL 3117, ISL3675, ISL3613, ISL3614 and ISL3615; Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of (Excess Insurance Company Ltd and/or London & Edinburgh Insurance Company Ltd as successor to London & Edinburgh General Insurance Company Ltd)); RiverStone Insurance (UK) Limited (as successor in interest to Sphere Drake Insurance Ltd.); RiverStone Management Limited for and on behalf of Markel International Insurance Company Limited (formerly known as Terra Nova Insurance Company Limited); Tenecom, Ltd. (formerly known as The Yasuda Fire and Marine Insurance Company (U.K.); Dominion Insurance Company Ltd.; Stronghold Insurance Company Ltd.; and, CX Reinsurance Company Limited (formerly known as CNA Reinsurance of London Ltd.) (collectively "London Market Insurers" or "LMI"), Interstate Fire & Casualty Company ("IFC"), and The Continental Insurance Company, as successor to The Fidelity And Casualty Company Of New York, National Fire Insurance Company, and Continental Casualty Company (together, "Continental", (collectively, LMI, IFC and Continental are referred to herein as "Certain Insurers"), through their undersigned attorneys, having submitted their list of objections ("Initial Objections") to the Second Amended Chapter 11 Plan of Reorganization of the Official Committee of Unsecured Creditors of the Archdiocese of Saint Paul and Minneapolis ("Plan"), hereby join in the contemporaneously filed Memorandum of Law and Appendix in Support of the Objections of Travelers Casualty and Surety Company, Hartford Accident and Indemnity Company, American Home Assurance Company, TIG Insurance Company, and Fireman's Fund Insurance Company to the Second Amended Chapter 11 Plan of Reorganization of the Official Committee of Unsecured Creditors, and supplement their Initial Objections in accordance with the Court's instructions as follows.

1

For ease of reference, the relevant Plan provisions are set forth in the attached Appendix.

## **OBJECTIONS**[1]

### Objection--1.   **The Plan Violates 11 U.S.C. § 1129(a)(1)**

**A.  Pertinent Plan Provision(s).**  *See* **Appendix Tab I.**

**B.  Applicable Statute(s)**

11 U.S.C. 1129(a)(1)

(a) The court shall confirm a plan only if all of the following requirements are met: (1) The plan complies with the applicable provisions of this title.

**C.  Applicable Case law**

"Section 1129(a)(1) requires that a plan comply with the applicable provisions of the Bankruptcy Code". *Wigley v. Wigley (In re Wigley)*, 557 B.R. 678, 685 (B.A.P. 8th Cir. 2016). Thus, confirmation is precluded if any terms of a plan violate the Bankruptcy Code. *In re A.P.I. Inc.*, 331 B.R. 828, 868 (Bankr. D. Minn. 2005).

**D.  Argument**

The Plan violates 11 U.S.C. § 1129(a)(1) because it fails to comply with the following provisions of Title 11 of the United States Code, as set forth below:  11 U.S.C. § 101, *et. seq.*: 11 U.S.C.  §§  502(b)(1); 1123(a)(2); 1123(a)(5); 1124(1); 1129(a)(3); 1129(a)(7); 1129(a)(8); 1129(a)(11); 1129(a)(16); and 1141(a).

---

[1] Capitalized terms not defined herein shall take the meaning ascribed to them in the Plan.

**Objection--2.**     <u>Sections 3.1 and 4.13 of the Plan</u> [2] <u>Violate 11 U.S.C. §§ 1129(a)(1),
1123(a)(2) and 1124(1)</u>

**A. Pertinent Plan Provision(s).** *See* Appendix Tab II.

**B. Applicable Statute(s)**

<u>11 U.S.C. § 1123(a)(2)</u>

(a) Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall …
(2) specify any class of claims or interests that is not impaired under the plan…

<u>11 U.S.C. § 1124(1)</u>

Except as provided in section 1123(a)(4) of this title, a class of claims or interests
is impaired under a plan unless, with respect to each claim or interest of such
class, the plan … (1) leaves unaltered the legal, equitable, and contractual rights
to which such claim or interest entitles the holder of such claim or interest…

**C. Applicable Case law**

Where a plan fails to specify properly which classes of claims are impaired, the plan

violates 11 U.S.C. § 1123(a)(2) and is ineligible for confirmation. *See In re Valley Park Group,

Inc.*, 96 B.R. 16, 22 (Bankr. N.D.N.Y. 1989).  "The statutory provisions relating to

reorganizations divide classes of claims into those that are impaired under the reorganization

plan and those that are not".  *In re Polytherm Industries, Inc.*, 33 B.R. 823, 828 (W.D. Wis.

1983).  "Only impaired classes have a right to vote to accept or reject a reorganization plan. *See

11 U.S.C. § 1126*". *Id.*

"Under 11 U.S.C. § 1124(1), a class of claims is 'impaired' under a plan of

reorganization unless, with respect to each claim in the class, the plan 'leaves unaltered the legal,

equitable, and contractual rights to which such claim or interest entitles the holder of such claim

or interest'", *Windsor on the River Assocs. v. Balcor Real Estate Fin. (In re Windsor on the River*

---

[2] All references to "Sections" and "Exhibits" herein are to Sections and Exhibits of the Plan,
unless otherwise designated.

*Assocs.)*, 7 F.3d 127, 130 (8th Cir. 1993).  "By this standard, any alteration of a creditor's rights, no matter how minor, constitutes 'impairment'".  *Id*.  "The determination of these claims being impaired or unimpaired is significant".  *In re Holthoff*, 58 B.R. 216, 219 (Bankr. E.D. Ark. 1985).

### D.  Argument

Class 13 claims are indemnity or contribution claims by the Parishes against the Debtor, which are contingent upon the Parishes being held liable to an abuse claimant.  The Plan designates Class 13 as unimpaired.  However, Class 13 is in fact impaired because its legal rights are altered, since the claims in Class 13 receive nothing under the Plan.  Consequently, the designation of the Class 13 claims as unimpaired violates both 11 U.S.C. §§ 1124(1) and 1123(a)(2).

**Objection--3.**     **Section 5.2(b) Violates 11 U.S.C. §§ 1129(a)(3) and 1129(a)(11)**

### A.  Pertinent Plan Provision(s).  *See* Appendix Tab III.

### B.  Applicable Statute(s)

<u>11 U.S.C. §§ 1129(a)(3) and (a)(11)</u>

The court shall confirm a plan only if all of the following requirements are met:…
(3) The plan has been proposed in good faith and not by any means forbidden by law... (11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

### C.  Applicable Case law

"Good faith" is not defined in the Code but, "a plan is considered proposed in good faith if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Code".  *Hanson v. First Bank of S. D., N.A.*, 828 F.2d 1310, 1315 (8th Cir. 1987), *overruled in part on other grounds, Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*,

DM3\4695830.1

507 U.S. 380, 387 (1993).  "[F]or purposes of determining good faith under section 1129(a)(3) … the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code".  *Cutcliff v. Reuter (In re Reuter)*, 427 B.R. 727, 770 (Bankr. W.D. Mo. 2010).

Whether a plan is proposed in good faith turns on an examination of the totality of the circumstances surrounding the plan and the bankruptcy filing. *Noreen v. Slattengren*, 974 F.2d 75, 76 (8th Cir. 1992). "These standards include serving Bankruptcy Code objectives, such as 'preserving going concerns and maximizing property available to satisfy creditors, giving debtors a fresh start in life, discouraging debtor misconduct, the expeditious liquidation and distribution of the bankruptcy estate to its creditors, and achieving fundamental fairness and justice'". *Ad Hoc Comm. of Non-Consenting Creditors v. Peabody Energy Corp. (In re Peabody Energy Corp.)*, 2017 U.S. Dist. LEXIS 47231, 16-17 (E.D. Mo. Mar. 30, 2017) (quoting *In re W.R. Grace & Co.*, 729 F.3d 332, 346 (3d Cir. 2013)).

11 U.S.C. 1129(a)(11) "establishes what is commonly known as the 'feasibility' requirement, and as a practical matter it requires the court to find that the plan is 'workable' before it may be confirmed".  *Danny Thomas Props. II Ltd. Pshp. v. Beal Bank, S.B.B. (In re Danny Thomas Props. II Ltd. Pshp.*), 241 F.3d 959, 962 (8th Cir. 2001) (citations omitted). "Feasibility determinations must be 'firmly rooted in predictions based on objective fact'".  *Id.*, (citations omitted).  "One of these requirements is a finding by the court that 'confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan….'" *Danny Thomas Props. II Ltd. Pshp. v. Beal Bank, S.B.B. (In re Danny Thomas Props. II Ltd. Pshp.)*, 241 F.3d 959, 962 (8th Cir. 2001) (citations omitted).  However, a proposed plan is not feasible when

there is no margin of error contained in the debtor's financial projections, because there is no

cash reserve to protect against a shortfall.  Such a plan is not proposed in good faith, because of

the inadequate cash reserve.  *See In re Pleasant Woods Assocs. Ltd. Partnership*, 2 F.3d 837,

837-838 (8th Cir. 1993).

### D.  Argument

Section 5.2 violates 11 U.S.C. §§ 1129(a)(3) and (a)(11) because it states:  "Under this

Plan, the Bankruptcy Court will determine the value of the Debtor's assets and the Debtor will

then pay that value into the Trust".  That requirement leaves no margin of error should an

adverse event occur; hence, the Court cannot determine that confirmation of the Plan will not be

followed by the liquidation of the Reorganized Debtor or further financial reorganization.  To the

contrary, such a forced liquidation following confirmation makes the Plan not feasible as a

matter of law.

**Objection--4.    Section 5.2(b) Violates 11 U.S.C. §§ 1129(a)(3) and 1129(a)(11) Because the Committee Plan Fails to Explain How its Proposed Funding Options Can Be Obtained.**

### A.  Pertinent Plan Provision(s).  *See* Appendix Tab III.

### B.  Applicable Statute(s)

11 U.S.C. § 1129(a)(3).  *See* Objection 3, *supra* at page 4.

11 U.S.C. § 1129(a)(11),  *See* Objection 3, *supra* at page 4.

### C.  Applicable Case law

*See* Objection 3, *supra* at page 4, for a discussion of the pertinent case law under 11

U.S.C. § 1129(a)(3) and 11 U.S.C. § 1129(a)(11).

6

**D.  Argument**

Section 5.2(b) requires the Debtor to fund the Plan by depositing into the Trust the equivalent of whatever sum the Bankruptcy Court determines the Debtor's assets to be worth. Because the valuation has not yet occurred, and is not likely to occur until the confirmation hearing, the asset value is unknown.  Moreover, the Plan fails to specify how the Debtor will obtain the funds equivalent to the asset value.  It states "[t]he Debtor may fund the Plan as it deems appropriate", and suggests multiple sources of funding, including increases in Parish assessments, fundraising, loan financing, and/or the sale of select assets.  Plan at § 5.2(b).

Section 5.2 then contradicts its own terms by stating: "[t]he Debtor's assets need not be sold or otherwise liquidated through this Plan".  *Id*.  The Plan does not set forth what amount is required to fund the Plan, and it does not include any mechanism by which the Plan will actually be funded.  However, the requirement that the Debtor pay into the Trust the full value of its assets will render the Debtor immediately insolvent and incapable of functioning.  Thus, Section 5.2(b) violates 11 U.S.C. § 1129(a)(3) and 1129(a)(11).

**Objection--5.   Section 5.2(b) Violates the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb Through 42 U.S.C. § 2000bb-4 ("RFRA"), Because it Imposes a Substantial Burden on the Debtor to Seek Funding from Its Operations**

**A.  Pertinent Plan Provision(s).  *See* Appendix Tab III.**

**B.  Applicable Statute(s) and U.S. Constitutional Amendments**

U.S. Constitution, Amendment I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…").

Section 2000bb-1 of RFRA

(a) In general--Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

7

(b) Exception --Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person … (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

(c) Judicial relief -- A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

Section 2000bb-3 of the RFRA

(a) In general--This chapter applies to all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993.

(b) Rule of construction--Federal statutory law adopted after November 16, 1993, is subject to this chapter unless such law explicitly excludes such application by reference to this chapter.

(c) Religious belief unaffected--Nothing in this chapter shall be construed to authorize any government to burden any religious belief.

**C.  Applicable Case law**

Under controlling authority from the Supreme Court, the Court may not interfere "in an internal church decision that affects the faith and mission of the church itself". *Hosanna-Tabor Evangelical Lutheran Church & Sch. v.  EEOC*, 565 U.S. 171, 132 S. Ct. 694, 707, 181 L. Ed. 2d 650 (2012).  Under RFRA, the threshold inquiry is whether a government action "substantially burdens" a person's religious practice. *Young v. Evangelical Free Church (In re Young)*, 82 F.3d 1407, 1418 (8th Cir. 1996) ("*Young I*"), *vacated*, 521 U.S. 114 (1997), *on remand*, 141 F.3d 854 (8th Cir. 1998) ("*Young II*").  To be considered a "substantial burden", "the governmental action must 'significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual [religious] beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion'". *Young I*, 82 F.3d at 1418

(citations omitted).  When governmental action is shown to "substantially burden" a person's free exercise right, the government must demonstrate that the substantial burden is in furtherance of a compelling government interest and is the least restrictive means of furthering that compelling governmental interest.  *Id*. at 1419.  What constitutes a "compelling governmental interest" is not set forth or defined in the statute, however, case law has described such interests as "those of the 'highest order'".  *Id*.

"Congress enacted RFRA 'to restore the compelling interest test … and to guarantee its application in all cases where free exercise of religion is substantially burdened [and] to provide a claim or defense to persons whose religious exercise is substantially burdened by government".  *Young II*, 141 F.3d 854, 858 (8th Cir. 1998) (citing 42 U.S.C. § 2000bb(b)(1) & (2)) (emphasis added).

RFRA and the First Amendment bar actions even if the suit does not involve an issue of religious doctrine, but concerns merely the governance structure of the church, if doing so would interfere with the church's management.  *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116, 73 S. Ct. 143, 97 L. Ed. 120 (1952); *Young v. Northern Illinois Conference of United Methodist Church*, 21 F.3d 184, 187 (7th Cir. 1994); *Combs v. Central Texas Annual Conference of United Methodist Church*, 173 F.3d 343, 350 (5th Cir. 1999); *EEOC v. Catholic University of America*, 83 F.3d 455, 462-63 (D.C. Cir. 1996).  These cases "affirm the fundamental right of churches to 'decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine'".  *EEOC,* 83 F.3d. at 462, citing *Kedroff*; *see also Gellington v. Christian Methodist Episcopal Church, Inc.*, 203 F.3d 1299, 1304 (11th Cir. 2000).

RFRA and the First Amendment apply in bankruptcy cases.  In *Young I*, the United States Court of Appeals for the Eighth Circuit explicitly found that "the interests advanced by the

9

bankruptcy system are not compelling under the RFRA". *Young I*, 82 F.3d at 1418. The Eighth

Circuit reaffirmed this holding on remand in *Young II* by finding that RFRA "has effectively

amended the Bankruptcy Code . . .". 141 F. 3d at 861. At issue in *Young I* and *Young* II was an

attempt by a bankruptcy trustee to enforce a specific fraudulent transfer provision of the

Bankruptcy Code against a church. Holding in favor of the church, the Eighth Circuit found the

trustee's attempt to enforce the fraudulent transfer provision posed a substantial burden on the

debtors' free exercise of religion under RFRA. As noted by the court, the interests of providing

debtors with a fresh start and protecting the interests of creditors are not compelling

governmental interests under RFRA. *Young I*, 82 F.3d at 1420.

### D. Argument

Section 5.2(b) requires the Debtor to fund the Plan by depositing into the Trust the

equivalent of whatever sum the Bankruptcy Court determines the Debtor's assets to be worth.

Because the valuation has not yet occurred, and is not likely to occur until the confirmation

hearing, the asset value is unknown. Moreover, the Plan fails to specify how the Debtor will

obtain the funds equivalent to the asset value. It states "[t]he Debtor may fund the Plan as it

deems appropriate", and suggests multiple sources of funding, including increases in Parish

assessments, fundraising, loan financing, and/or the sale of select assets. Plan at § 5.2(b).

Forcing the Debtor to fund the Plan through any of the proposed funding sources would

substantially burden the Debtor's exercise of its religion because it would allow the Committee

to utilize the Bankruptcy Code to regulate how the Debtor operates. The Plan cannot be

confirmed because Section 5.2(b) violates RFRA and the First Amendment to the U.S.

Constitution by imposing a substantial burden on the Debtor through the requirement that the

Debtor fund the Plan from its operations.  Moreover, the Plan does not present a compelling government interest for such substantial burden.

**Objection--6.**   **Section 4.13 Violates 11 U.S.C. § 1129(a)(7) and 1124(1) Because It Provides More Favorable Treatment to the Holders of Class 6 Claims than to Other Unsecured Claims.**

A.  **Pertinent Plan Provision(s).**  *See* **Appendix Tab II.**

B.  **Applicable Statute(s)**

11 U.S.C. 1129(a)(3).  *See* Objection 3, *supra* at page 7;

11 U.S.C. § 1129(a)(7)

(a) The court shall confirm a plan only if all of the following requirements are met…(7) With respect to each impaired class of claims or interests…(A) each holder of a claim or interest of such class…(i) has accepted the plan; or (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date…

11 U.S.C. § 1124(1)           *See* Objection 2, *supra* at page 2;

11 U.S.C. § 726

(a) … property of the estate shall be distributed… (2) second, in payment of any allowed unsecured claim … timely filed under section 501(a) of this title [11 USC § 501(a)].

C.  **Applicable Case law**

*See* Objection 3, *supra* at page 4, for a discussion of the pertinent case law under 11 U.S.C. § 1129(a)(3).

"Under the Bankruptcy Code, a debtor's Chapter 11 plan may only be confirmed, *inter alia*, if any holder of an impaired claim or interest either accepts the plan or receives no less than he would under a Chapter 7 liquidation (the best-interest-of-the-creditors test), 11 U.S.C. § 1129(a)(7)(A)".  *Diwan, L.L.C. v. Maha-Vishnu (In re Diwan, L.L.C.)*, 848 F.3d 1147, 1149 (8th

Cir. 2017).   Under 11 U.S.C. § 726, prepetition tort claims are simply prepetition unsecured claims.   *See, e.g., In re Lull Corp.*, 162 B.R. 234, 241 (Bankr. D. Minn. 1993).   Class 13 Claims (Abuse-Related Contingent Claims) for reimbursement are also prepetition unsecured claims once the contingency has been resolved, *i.e.*, when the Parish-related defendant has been found to be liable for the underlying claims.   *See, e.g., In re Gilbertson Rests. LLC*, 2005 Bankr. LEXIS 554 (Bankr. N.D. Iowa Apr. 4, 2005).

### D.  Argument

Under the Plan, the Class 13 claims are contingent claims for reimbursement.   Under 11 U.S.C. § 726, contingent claims for reimbursement and tort claims have the same priority.   Because both Class 6 and Class 13 claims have similar legal priority, neither class would be entitled to be paid a higher percentage in chapter 7.   However, under the Plan, Class 13 claims receive nothing, while Class 6 claims are paid.   Thus, the Plan has a payment scheme different than that set forth in 11 U.S.C. § 726, and it violates 11 U.S.C. § 1129(a)(7).

**Objection--7.   Sections 3.1, 3.2, 4.3, 4.4, 4.5, 4.7, 4.8 , 4.9, 4.13, 4.14, 4.15, 4.16, Taken Together, Violate 11 U.S.C. § 1123(a)(2), 1124(1) and 1129(a)(8)**

**A.  Pertinent Plan Provision(s).  *See* Appendix Tab IV.**

**B.  Applicable Statute(s)**

11 U.S.C § 1123(a)(2)          *See* Objection 2, *supra* at page 2.

11 § U.S.C. § 1124(1)          *See* Objection 2, *supra* at page 2.

11 U.S.C. § 1129(a)(8)

(a) The court shall confirm a plan only if all of the following requirements are met… (8) With respect to each class of claims or interests…(A) such class has accepted the plan; or (B) such class is not impaired under the plan.

DM3\4695830.1

### C.  Applicable Case law

*See* Objection 2, *supra* at page 3, for a discussion of the pertinent case law under 11

U.S.C. § 1123(a)(2) and 11 U.S.C. § 1124(1).

### D.  Argument

As discussed above, Section 5.2 will render the Reorganized Debtor insolvent.  Under

Sections 4.3, 4.4, 4.7, 4.8, 4.9, 4.13, 4.14, 4.15, and 4.16, the claimants in Classes 3, 4, 7, 8, 9,

13, 14, 15 and 16 will receive claims against the insolvent Reorganized Debtor in exchange for

their claims against the assets of the estate.  Only the Class 6 claims will be paid from estate

assets.  Because the claimants in Classes 3, 4, 7, 8, 9, 13, 14, 15 and 16 are receiving claims

against the insolvent Reorganized Debtor in exchange for their rights against the estate assets,

their claims are impaired.  However, Sections 3.1 and 3.2 improperly categorize Classes 3, 4, 7,

8, 9, 13, 14, 15 and 16 as unimpaired, thereby depriving them of the right to vote in violation of

11 U.S.C. § 1123(a)(2) and § 1124(1).  Thus, the claimants in such Classes will neither be paid

in full nor allowed to vote to accept the Plan, violating 11 U.S.C. § 1129(a)(8).

**Objection--8.    Sections 5.29(b), 6.1(a), 6.2(a), 6.2(c) and Other Sections Violate 11 U.S.C.
§§ 1129(a)(11), 1123(a)(5) and 1123(b)(3).**

### A.  Pertinent Plan Provision(s).  *See* Appendix Tab V.

### B.  Applicable Statute(s)

11 U.S.C. § 1129(a)(11).  *See* Objection 3, *supra* at page 4.

11 U.S.C. §§ 1123(a)(5)

(a) Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall…
(5) provide adequate means for the plan's implementation…

13

### C.  Applicable Case law

*See* Objection 3, *supra* at page 4, for a discussion of the pertinent case law under 11 U.S.C. §1129(a)(11).

"Chapter 11 provides that a debtor's plan of reorganization must provide adequate means for the plan's implementation…".  *Pacifica L 51 LLC v. New Invs. Inc. (In re New Invs., Inc.)*, 840 F.3d 1137, 1138 (9th Cir. 2016).   A plan that fails to include adequate means for its implementation cannot be confirmed.   *In re Star Ambulance Serv., LLC*, 540 B.R. 251, 261 (Bankr. S.D. Tex. 2015).

### D.  Argument

The Plan violates 11 U.S.C. § 1123(a)(5) because it fails to provide adequate means for its implementation.  Sections 6.1(a) and 6.2(a) presume the existence of settlements with insurers that cannot come into existence.  The insurance settlements require certain terms and conditions to be specified in the Plan, *i.e.*, that there be an injunction of claims against the Debtor and that contribution claims by Non-Settling Insurers be enjoined.  The Plan includes neither provision.  Hence, those settlements will never come into effect, precluding implementation of the Plan, thereby violating 11 U.S.C. 1123(a)(5).

Moreover, the Plan violates 11 U.S.C. § 1129(a)(11).  Because, as noted above, the insurance settlements will never come into effect, the Plan cannot be carried out according to its terms; hence, it is not feasible.

DM3\4695830.1

**Objection--9.**   **The Committee Plan Cannot Be Confirmed Because Sections 1.1(sss),**
**5.2(e)(1), 6.1(b)(2) and 6.2(a) Are Inconsistent With Each Other**

**Objection--10.**   **The Committee Plan Cannot Be Confirmed Because Sections 5.2(e)(1),**
**6.1(a) and 6.1(b) Are Inconsistent with Section 1.1(sss)**

### A.  Pertinent Plan Provision(s).  *See* Appendix Tab VI.

### B.  Applicable Statute(s)

None.

### C.  Applicable Case law

When a plan includes inconsistent terms, it cannot be confirmed.  *In re Loganbill*, 554
B.R. 871, 885 (Bankr. W.D. Mo. 2016).

### D.  Argument

Section 1.1(sss), the definition of "Transferred Insurance Interests", does not include the
right to insurance coverage for the Class 6 Claims to be resolved by the Trust.  It includes only
the "proceeds" of "Insurance Policies", and the right to sue Non-Settling Insurers for their
conduct in handling claims, *i.e.*, bad faith claims.  Section 5.2(e)(1) transfers the Transferred
Insurance Interests to the Trust.  Because of the definition in Section 1.1(sss), that transfer does
not include the right to insurance coverage.  However, Section 6.1(b)(2) presumes the Trust has
the right to obtain insurance coverage for Tort Claims channeled to the Trust.  Because Section
1.1(sss) does not include claims for insurance coverage, 6.1(b)(2) is inconsistent with Section
1.1(sss), and the Committee Plan cannot be confirmed.

**Objection--11.**   **Sections 1.1(sss), 5.2(e)(1), 6.1(a) and 6.1(b) Violate Applicable State Law**

### A.  Pertinent Plan Provision(s).  *See* Appendix Tab VII.

### B.  Applicable Statute(s)

None.

DM3\4695830.1

### C.  Applicable Case law

The nature and extent of a bankruptcy debtor's property interests are governed by state law.  *See In re Broadview Lumber Co., Inc.*, 118 F.3d 1246, 1250 (8th Cir. 1997); *Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 450, 452 (2007)) ("'[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.').  Thus, "[p]roperty of the estate comes into the estate subject to all restrictions applicable to that property under state law, unless the restriction is undone by the Bankruptcy Code." *Landry v. Exxon Pipeline Co. Mendoza Marine, Inc.*, 260 B.R. 769, 786 n. 62 (Bankr. M.D. La. 2001); *Travelers*, 549 U.S. at 451.  This rule applies equally to insurance proceeds.  *In re W.R. Grace & Co.*, 475 B.R. 34, 126 (D. Del. 2012) (holding that the tort claimants did not have a state-law right to the insurance proceeds, so they could not claim a right to the proceeds in bankruptcy); *Allied Prods. Corp. v. ITT Indus. (In re Allied Prods. Corp.)*, Case No. 03-cv-1361, 2004 U.S. Dist. LEXIS 5288 at *25-26 (N.D. Ill. Mar. 31, 2004).  So, unless the applicable state law is contradicted by a Bankruptcy Code provision, a claimant has a right to the proceeds in bankruptcy only if it has a right to the proceeds under state law.  *In re W.R. Grace & Co.*, 475 B.R. at 126-27; *Landry*, 260 B.R. at 786 n. 62.

### D.  Argument

Sections 1.1(sss), 5.2(e)(1), 6.1(a) and 6.1(b) provide for the assignment of the Transferred Insurance Interests to the Trust.  The definition of Transferred Insurance Interests does not include the right to insurance coverage for the Class 6 Claims to be resolved by the Trust.  It includes only the "proceeds" of Insurance Policies, and the right to sue non-settling insurers for their conduct in handling claims, *i.e.*, bad faith claims.  Plan, Section 1.1(sss).

"Insurance Policies" are defined as "any contract, binder, certificate, or policy of insurance in effect on or before the Effective Date issued to, allegedly issued to, or for the benefit of the Archdiocese, or any of its predecessors in interest, successors or assigns, under which coverage exists or may exist for a Tort Claim." Plan, 1.1(nn). Assuming the Insurance Policies provide coverage for the Tort Claims, that is not the only type of claim or liability that is covered. Accordingly, Sections 1.1(sss), 5.2(e)(1), 6.1(a) and 6.1(b) purport to transfer insurance proceeds paid for such non-Tort Claims to the Class 6 Claimants. However, as discussed above, only the claimants for whose benefit such proceeds are paid have any right to such proceeds. As a result, Sections 1.1(sss), 5.2(e)(1), 6.1(a) and 6.1(b) violate state law.

**Objection--12.    Sections 1.1(sss), 5.2(e)(1), 6.1(a) and 6.1(b) Violate 11 U.S.C. § 1129(a)(1), and 1123(a)(5)**

### A.  Pertinent Plan Provision(s).  See Appendix Tab VII.

### B.  Applicable Statute(s)

11 U.S.C. § 1123(a)(5).  *See* Objection 8, *supra* at page 13.

### C.  Applicable Case law

A Bankruptcy Court cannot divest a non-debtor assured of its interest under insurance policies. *See In re Forty-Eight Insulations, Inc.*, 133 B.R. 973 (N.D. Ill. 1991). The rights of a non-debtor assured are separate contractual rights from those of a debtor. *In re Petters Co., Inc.*, 419 B.R. 369 (Bankr. D. Minn. 2009). The Court cannot impair or extinguish such rights. *Overton's, Inc. v. Interstate Fire & Cas. Ins. Co. (In re Sportstuff, Inc.)*, 430 B.R. 170, 178 (B.A.P. 8th Cir. 2010).

### D.  Argument

Sections 1.1(sss), 5.2(e)(1), 6.1(a) and 6.1(b) provide for the assignment of the Transferred Insurance Interests to the Trust. The Transferred Insurance Interests include "the

proceeds of such Insurance Policies". Plan, Section 1.1(sss)(i). "Insurance Policies" are defined as "any contract, binder, certificate, or policy of insurance in effect on or before the Effective Date issued to, allegedly issued to, or for the benefit of the Archdiocese, or any of its predecessors in interest, successors or assigns, under which coverage exists or may exist for a Tort Claim." Plan, 1.1(nn). That definition includes the insurance policies subscribed by LMI ("LMI Policies"). The LMI Policies not only provide coverage to the Debtor, but they also provide coverage to non-debtors, *e.g.*, the Parishes.

Proceeds of the LMI Policies come into existence when LMI indemnify a non-debtor assured. The Plan purports to transfer those proceeds to the Trust, even though only the respective assured Parish would have had a right to such proceeds, and neither the Debtor nor the Class 6 Claimants would have an exclusive right to such proceeds. Because such proceeds cannot be assigned to the Trust, the Plan does not provide adequate means for its implementation, which violates 11 U.S.C. § 1123(a)(5).

**Objection--13.** **Withdrawn.**


**Objection--14.** **Withdrawn**


**Objection--15.** **Section 4.3 Violates Applicable State Law**

   **A. Pertinent Plan Provision(s).** *See* **Appendix Tab VIII.**

   **B. Applicable Statute(s)**

N/A.

18

### C.  Applicable Case law

Excess indemnity policies, such as those subscribed by LMI, do not have a duty to defend and they reimburse covered loss only after there is a finding the loss is covered.  *Save Mart Supermarkets v. Underwriters at Lloyd's London*, 843 F. Supp. 597, 603-604 (N.D. Cal. 1994); *See also Diocese of Winona, et. al. v. Interstate Fire & Cas. Co., et. al.,* 89 F.3d 1386, 1397 and notes 13 and 14 (8th Cir. 1996).   An indemnity contract only covers the insured's actual payments.  *See Conoco, Inc. v. Republic Ins. Co.*, 819 F.2d 120 (5th Cir. 1987).

Insurance policies often have policy conditions precedent to coverage. These can include requirements that: claims be defended; loss or settlement amounts be paid; the insured utilize a third party administrator for claims handling; the insured cooperate with the insurer; and, the insured permit the insurer to associate in the defense.  *See State Nat. Ins. Co. v. County of Camden*, No. 08-5128(NLH)(AMD), 2012 WL 6652819, *4-*5 (D.N.J. Dec. 19, 2012).  The Minnesota courts have examined conditions precedent to coverage and found that an insured's failure to comply with such conditions excuses the insurer from its coverage obligations. *See Food Mkt. Merch., Inc. v. Scottsdale Indem. Co.*, 196 F. Supp. 3d 1004, 1007-09 (D. Minn. 2016), *aff'd*, No. 16-3427, 2017 U.S. App. LEXIS 9089 (8th Cir. May 25, 2017).

*See* the cases cited in Objection 12, *supra*, regarding the Bankruptcy Court's lack of authority to divest non-debtors from their interests under insurance policies.

Under 11 U.S.C. § 541(d), a debtor's estate includes property as to which the debtor holds only legal title, "but not to the extent of any equitable interest in such property that the debtor does not hold".  This limitation excludes from property of the debtor's estate, property of others held in trust by the debtor.  *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10, 103 S. Ct. 2309, 76 L. Ed. 2d 515 (1983).

DM3\4695830.1

### D. Argument

Section 4.3 of the Plan violates state law because it (1) deprives non-debtor assureds of their property rights in the GIF Fund, and (2) increases the risks that Certain Insurers agreed to insure by eliminating policy requirements, including those assumed by the Archdiocese as a self-insured.

#### 1. The GIF Program

The Archdiocese created the Self-Insurance Program on September 1, 1980, to allow it and the related non-debtor Catholic entities (collectively, "Participating Entities") to obtain insurance coverage at a lower cost. *See* Notice of Hearing and Verified Motion of the Archdiocese of St. Paul and Minneapolis for Order (1) Granting Expedited Relief and (2) Authorizing Maintenance of Protected Self-Insurance Program, ECF No. 11, filed January 16, 2015, ¶¶15-16. The losses covered by the Self-Insurance Program are subject to retentions paid by the Participating Entities, primarily from the GIF Fund. *Id.* Once the retained losses are paid, excess losses are covered by excess insurance policies, subject to such policies' terms. *Id.* Funds to pay the retention amounts and the premiums for the excess policies were collected from the Participating Entities and deposited into the GIF Fund. *Id.* at ¶¶16-17. The collected funds are held for the benefit of the Participating Entities and the majority of the contributions were from non-debtor Catholic entities.[3] The Debtor may not use the money in the GIF Fund unless it

---

[3]    *See* Notice of Hearing and Expedited Motion for an Order Authorizing Settlement of a Dispute, ECF No. 191, ¶17; Response of the Official Parish Committee of Unsecured Creditors to the Motion of the Debtor for an Order Authorizing Use of Property Outside the Ordinary Course of Business (GIF),  ECF No. 510, filed December 10, 2015; Response of the Church of St. Patrick of Edina, Minnesota to Debtor Motion for an Order Authorizing Settlement of a Dispute, ECF No. 202, filed April 29, 2015 at 2; The Church of Saint Anne-Saint Josphien's Response to Debtor's Expedited Motion for an Order Authorizing Settlement of a Dispute, ECF No. 513, filed December 11, 2015, ¶¶5-6).

has the consent of each of the Participating Entities.  *See* Objection of St. Stephen's Catholic Church and School, *et. al.*, to the Motion of the Debtor for an Order Authorizing Use of Property Outside the Ordinary Course of Business (GIF), ECF No. 514, filed December 11, 2015, at 2. The GIF Fund has been used to pay abuse claims.  ECF No. 11 at ¶19.[4]

### 2.    The LMI Package Policies

The Archdiocese replaced standard Comprehensive General Liability policies on September 1, 1980 with a Protected Self-Insurance Program. *Diocese of Winona*, 89 F.3d at 1389-90; *see also* Argument D.1. The GIF Program, *supra* at pages 19-20.   Under the Self-Insurance Program, the Archdiocese served as a self-insurer up to $100,000 per occurrence, this feature is known as "self-insured retention," or "SIR".  *Diocese of Winona*, 89 F.3d at 1389-90. The Archdiocese purchased two layers of insurance for losses in excess of the SIR.  LMI severally subscribed to the first layer, with a limit of $100,000 per occurrence ("LMI Package Policies"), and Interstate provided the next layer. *Id.* at 1390. The LMI Package Policies continued to September 1, 1986, when they specifically excluded coverage for sexual abuse. *Id.* The LMI Package Policy limits and the SIRs were written on an ultimate net loss basis inclusive of defense costs, and therefore, the limits erode as defense costs are incurred.  *Id*. at 1397.

The LMI Package Policies provided coverage to the Participants in the Self Insurance program, which included the Archdiocese and its Parishes and other entities.  *See* Argument D.1. The GIF Program, *supra* at pages 19-20.[5]  The Assureds under the LMI Package Policies, who

---

[4]    *See also* ECF No. 191 at ¶¶12-14; Stipulation and Agreement for Use of General Insurance Fund, ECF No. 191-1, filed April 15, 2015; Notice of Hearing and Motion of the Archdiocese of St. Paul and Minneapolis for an Order Authorizing Use of Property Outside the Ordinary Course of Business (GIF), ECF No. 483, filed November 25, 2015, ¶¶8-11,15-16.

[5]    The LMI Package Policies provide coverage to the Named Assured Archdiocese of St. Paul and Minneapolis and its "Parishes, Schools, Cemeteries and Other Agencies or directly connected organizations… and [a]ny official, trustee or employee of the Named Assured while

are the Participating Entities in the Self-Insurance Program, utilize the GIF Fund (and any additional amounts required) to satisfy defense obligations and to pay covered loss under the LMI Package Policies, up to the SIR amounts.  *Id*; *see also Diocese of Winona*, 89 F.3d at 1390. The LMI Package Policies provide excess, indemnity coverage only, and do not require LMI to defend or settle claims.  *See generally Diocese of Winona*, 89 F.3d at 1398 and note 13.[6]  Under the Package Policies, LMI reimburse a Participating Entity only after a claim is resolved, after any ultimate net loss is paid by a Participating Entity, and after coverage has been determined. *Id.*

### 3.   The Plan Deprives the Participating Entities of Their Separate Property and LMI of Their Rights under the LMI Package Policies

Section 4.3 of the Plan contemplates that most of the GIF Fund will be transferred to the Trust (less a $1 million reserve).  *Id*.  This violates the terms of the agreement between the Archdiocese and other Participating Entities.  This also violates state law because the GIF Fund is not exclusively the property of the Debtor, but instead is the property of the Participating Entities (of which the Debtor is just one).   This proposed treatment strips the non-debtor Participating Entities of their property.   The non-debtor Participating Entities face state court lawsuits filed by the same claimants who filed Proofs of Claim in this case.   These non-debtors expect to utilize the GIF Fund to satisfy SIR obligations as well as proceeds from the LMI Package Policies to defend against and resolve these state court lawsuits to the extent they are covered under the policies.

---

acting within the scope of his duties as such . . ..”  They also provide that “The inclusion hereunder of more than one Assured shall not operate to increase Underwriters' Limits of Liability”.

[6]     The LMI Policies require the Participating Entities to utilize a service organization, at the Assured's expense, to "discharge the Assured's obligations under the terms of [the policies] by administering a complete claims handling program" and to maintain and furnish records to LMI.

DM3\4695830.1

Section 4.3 also violates the terms of the LMI Package Policies. The GIF Funds exist, in part, to meet the contractual obligations that the Participating Entities have under the LMI Policies. These obligations include, but are not limited to: paying the SIRs; utilizing a service organization; defending and settling claims; cooperating with the excess insurers; and resolving claims and obtaining a determination of coverage before seeking excess indemnity coverage. By transferring the majority of the GIF Fund to the Trust, the Participating Entities will no longer be able to satisfy their conditions precedent to obtaining coverage under the LMI Package Policies, thereby vitiating LMI's coverage obligations under such policies.

It appears that the Plan is, among other things, an attempt to force LMI to pay claims without the SIRs being exhausted, and to face liability for claims without complete claims handling, and where a defense is, at best, a second thought and subject to conflicts of interest. This would be in violation of the terms of the LMI Package Policies. This effort is clearly contradicted by Sections 6.3(a)(1) and 6.3(d), which purport to make the Plan absolutely neutral with respect to LMI.

**Objection--16.   Section 4.3 Violates the Due Process Clause of the U.S. Constitution**

**A.  Pertinent Plan Provision(s).**  *See* **Appendix Tab IX.**

**B.  Applicable Statute(s) and Constitutional Provision(s)**

U.S. Constitution, Amendment XIV, Section 1

… nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Constitution, Amendment V

 . . . nor shall private property be taken for public use, without just compensation.

Fed. R. Bankr. P. 7001(2)

DM3\4695830.1

An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings: … (2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property …

## C.  Applicable Case law

The "Takings Clause prevents the Legislature … from depriving private persons of vested property rights except for a 'public use' and upon payment of 'just compensation.'" *Landgraf v. Usi Film Prods.*, 511 U.S. 244, 266 (1994).  *See also Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2425 (2015) (holding that the Takings Clause applies to personal property). "[W]here the Rules require an adversary proceeding -- which entails a fundamentally different, and heightened, level of procedural protections -- to resolve a particular issue, a creditor has the due process right not to have that issue resolved without one.  *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230, 242 (3d Cir. 2008); *see also In re Banks*, 241 B.R. 434, 436 (Bankr. E.D. Ark. 1999).

## D.  Argument

Here, to divest the Parishes of their property interest in the GIF Fund, the Plan must provide for such divestment only after a successful suit has been brought under Bankruptcy Rule 7001(2).  The GIF Fund was established to, among other things, pay self-insured retentions to satisfy the Participating Entities' defense obligations under the LMI Policies.  *See* Verified Motion of the Archdiocese of Saint Paul and Minneapolis for Order (1) Granting Expedited Relief and (2) Authorizing Maintenance of Protected Self Insurance Program, ECF No. 11, Filed January 16, 2015, at 5-6.  The GIF Fund was funded by payments from both the Debtor and the Parishes.  *Id*.  The Parishes hold the equitable interest in the GIF Fund.  *Id*. The Debtor holds mere legal title as trustee. Thus, the funds are not property of the estate. 11 U.S.C. § 541(d).  However, under the Committee Plan, the GIF Fund will be assigned to the Trust and used to pay

24

claims.  Trust Agreement, Section 2.1.  This taking violates the Takings Clause and the Due

Process Clause of the U.S. Constitution for two reasons.  First, the Parishes have not been

provided with the opportunity to litigate their interests in the GIF Fund by an adversary

proceeding.  Second, the Parishes are not being provided with any compensation for the Plan's

attempted confiscation of the $5,000,000 to be paid from the GIF Fund to the Trust.  The Plan

provides only that the Parishes' rights in the GIF Fund will be compensated by being replaced

with claims against the insolvent, Reorganized Debtor.  Plan, Section 4.3.  Thus the Committee

Plan violates the Fifth and Fourteenth Amendments to the U.S. Constitution.

**Objection--17.   Sections 4.15 and 4.16 violate 11 U.S.C. §§ 1129(a)(3) and (a)(7)**

   **A.  Pertinent Plan Provision(s).  *See* Appendix Tab X.**

   **B.  Applicable Statute(s)**

   11 U.S.C. § 726.  *See* Objection 6, *supra* at page 11.

   11 U.S.C. § 1129(a)(7).  *See* Objection 6, *supra* at page 11.

   **C.  Applicable Case law**

   *See* Objection 6, supra at page 11 for the pertinent case law under 11 U.S.C. §§ 726 and

1129(a)(7).

   **D.  Argument**

   Under the Plan, the Class 15 and 16 claims are unsecured claims.  Under 11 U.S.C. §

726.  Class 6 also comprises unsecured claims.  Because Classes, 6, 15, and 16 claims all have

similar legal priority, none of these classes would be entitled to be paid a higher percentage in a

chapter 7.  However, under the Plan, Class 15 and 16 claims receive nothing, while Class 6

claims are paid.  Thus, the Committee Plan has a payment scheme different to that set forth in 11

U.S.C. § 726. That difference violates 11 U.S.C. § 1129(a)(7).

**Objection--18.** **Sections 4.15 and 4.16 Violate RFRA Because They Purport to Interfere with the Debtor's Determinations About How to Compensate Its Employees Who Have Claims in Classes 15 and 16.**

### A. Pertinent Plan Provisions. *See* Appendix Tab X.

### B. Applicable Statutes

11 U.S.C. § 1129(a)(3). *See* Objection 3, *supra* at page 4.

RFRA. *See* Objection 5, *supra* at page 7.

### C. Applicable Case law

*See* Objection 5, *supra* at pages 8-10 for a discussion of the pertinent case law under RFRA. There is no authority for a plan to deprive priests of agreed compensation when there has been no finding that the priest is an actual abuser. *Martin v. Catholic Diocese of Wilmington, Inc. (In re Catholic Diocese of Wilmington, Inc.)*, 484 B.R. 629 (D. Del. 2012).

### D. Argument

Sections 4.15 and 4.16 set forth the treatment for Class 15 Claimants (Non-Credibly Accused Priests) and Class 16 Claimants (Credibly Accused Priests), all of whom are either active or inactive employees of the Debtor. Under Section 4.15(b), the Debtor is compelled to disclaim any liability under civil law for Class 15 Claims and the Reorganized Debtor is obligated to honor its post-Effective Date obligations in accordance with the Debtor's prior practices. Likewise, under Section 4.16(b), the Debtor is precluded from making all payments due to Class 16 Claimants and the Reorganized Debtor is precluded from making all future payments that are to become due to Class 16 Claimants and both entities are required to turn said funds over to the Trust instead.

Forcing the Debtor and Reorganized Debtor to (i) withhold compensation from their active and inactive employees and (ii) turn said funds over to the Trust would substantially

DM3\4695830.1

burden the Debtor's exercise of its religion and the Reorganized Debtor's exercise of its religion. It would be flatly contrary to *Young I* and *Young II* as it would allow the Committee to utilize the Bankruptcy Code to regulate how the Debtor operates and whether it compensates its employees. Based on the foregoing, Sections 4.15 and 4.16 violate RFRA.

**Objection--19.   Section 6.3(a)(1) Violates 11 U.S.C. § 1129(a)(3)**

**A.  Pertinent Plan Provision(s).  See Appendix Tab XI.**

**B.  Applicable Statute(s)**

11 U.S.C. § 1129(a)(3).  *See* Objection 3, *supra* at page 4.

**C.  Applicable Case law**

*See* Objection 3, *supra* at pages 4-5 for a discussion of the pertinent case law under 11 U.S.C. § 1129(a)(3).

**D.  Argument**

Section 6.3(a)(1) violates 11 U.S.C. § 1129(a)(3) because it does not serve Bankruptcy Code objectives.  Instead of limiting the Debtor's liability to payments made by the Trust, Section 6.3(e) specifies that Trust payments do not affect the Debtor's liability.  Thus, even though the value of all of the Debtor's assets are to be paid into the Trust, Plan, Section 5.2(b), none of those assets reduce the Debtor's liability.  These requirements are contrary to the purpose of giving the Debtor a fresh start, which is at the core of chapter 11 reorganizations.  Section 6.3(a)(1) is thus in bad faith and violates 11 U.S.C. § 1129(a)(3).

**Objection--20.   Sections 4.6 and 4.7 Violate 11 U.S.C. § 1129(a)(3).**

**A.  Pertinent Plan Provision(s).  *See* Appendix Tab XII.**

**B.  Applicable Statute(s)**

11 U.S.C. § 1129(a)(3).  *See* Objection 3, *supra*.

27

### C.  Applicable Case law

*See* Objection 3, *supra* at pages 4-5 for a discussion of the pertinent case law under <u>11</u> <u>U.S.C. § 1129(a)(3)</u>.

### D.  Argument

Sections 4.6 and 4.7 were not proposed in good faith, as they seek to benefit only the lawyers for Class 6 and Class 7 claimants to the detriment of the Debtor, the Reorganized Debtor, and all other creditors.  Sections 4.6 and 4.7 authorize all Tort Claimants to sue the Reorganized Debtor in state court for Tort Claims against the Debtor.  This defeats the cornerstone of chapter 11, providing a debtor with a fresh start, and is far from fair or just. Sections 4.6 and 4.7 do not seek to expeditiously pay the Tort Claims.  Instead, they will cause an increase in the litigation that was underway pre-bankruptcy to the benefit of the claimants' lawyers.  Accordingly, Sections 4.6 and 4.7 violate 11 U.S.C. § 1129(a)(3).

**Objection--21.**  <u>Section 4.6 Violates 11 U.S.C. § 1129(a)(3).</u>

### A.  Pertinent Plan Provision(s).  *See* Appendix Tab XI.

### B.  Applicable Statute(s)

<u>11 U.S.C. § 1129(a)(3)</u>.  *See* Objection 3, *supra* at page 4.

### C.  Applicable Case law

*See* Objection 3, *supra* at pages 4-5 for a discussion of the pertinent case law under 11 U.S.C. § 1129(a)(3).

### D.  Argument

Sections 4.6 was not proposed in good faith, because it does not maximize the property available to creditors and hinders the Debtor from obtaining a fresh start.  This section authorizes the Tort Claimants to sue the Reorganized Debtor for Tort Claims after confirmation, and

requires the Trust to indemnify the Reorganized Debtor for the costs of defending such Tort

Claims.  If, instead, the liability for the Tort Claims were channeled to the Trust for assessment

and payment and the Debtor were discharged at confirmation, then using insurance money for

defense costs, instead of indemnity, would be unnecessary.  Such funds could instead be used to

indemnify the Tort Claimants.  The only apparent purpose for Section 4.6 is to increase the fees

paid to the Tort Claimants' lawyers.  Based on the foregoing, Section 4.6 violates 11 U.S.C.

§ 1129(a)(3).

**Objection--22.   Sections 4.6 and 6.2 Violate 11 U.S.C. § 1129(a)(3) Because There Is No
Bankruptcy Purpose in Allowing the Class 6 Claimants to Be Paid by the
Trust and to Also Litigate Their Claims Against the Reorganized Debtor
Post-Effective Date.**

**A.  Pertinent Plan Provision(s).**  *See* **Appendix Tab XIII.**

**B.  Applicable Statute(s)**

11 U.S.C. 1129(a)(3).  *See* Objection 3, *supra* at page 4.

**C.  Applicable Case law**

*See* Objection 3, *supra* at pages 4-5 for a discussion of the pertinent case law under 11

U.S.C. § 1129(a)(3).

**D.  Argument**

Sections 4.6 and 6.2 were not proposed in good faith, because they would deprive the

Reorganized Debtor of its fresh start.  Pursuant to Sections 4.6 and 6.2, Class 6 Claimants are

entitled to receive a payment from the Trust on account of their Class 6 Claim *and* also permitted

to sue the Reorganized Debtor on account of the same claim post-Effective Date.  Further, if a

Class 6 Claimant obtains a recovery in state court, the Class 6 Claimant keeps just a percentage

of the recovery but the claimants' lawyers are fully compensated for their attorneys' fees and

costs.

DM3\4695830.1

The dual recovery system that would be established under the Plan defeats the cornerstone of chapter 11 by preventing the Reorganized Debtor from obtaining a fresh start. First, the dual recovery system is unnecessary; instead, all Class 6 Claims (and Class 7 Claims) should either be allowed to pursue their state court claims or be satisfied pursuant to the terms of the Trust – not both.  Second, the dual recovery system not only authorizes, but also encourages, lawyers for the Tort Claimants to initiate a lawsuit.  Conversely, if the Claimants were required to choose their remedy, either (a) a quick payment by the Trust, or (b) extended civil litigation, the litigation would be drastically reduced, thereby reducing the need to pay attorneys' fees and costs incurred by Tort Claimants and any defense costs associated therewith at the expense of the Tort Claimants.

Based on the foregoing, Sections 4.6 and 6.2 of the Committee Plan violate 11 U.S.C. § 1129(a)(3).

**Objection--23.**  **Section 5.2(b) Violates the First Amendment, 11 U.S.C. §§ 1123(a)(5), 1129(a)(11), 1129(a)(16) and RFRA**

**A.  Pertinent Plan Provision(s).**  *See* **Appendix Tab III.**

**B.  Applicable Statute(s) and Constitutional Provision(s)**

11 U.S.C. § 1123(a)(5).  *See* Objection 8, *supra* at page 13.

11 U.S.C. § 1129(a)(11).  *See* Objection 3, *supra* at page 4.

11 U.S.C. § 1129(a)(16)

(a) The court shall confirm a plan only if all of the following requirements are met… (16) All transfers of property under the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

Amendment I

*See* Objection 5, *supra* at page 7.

30

RFRA

*See* Objection 5, *supra* at page 7.

Minn. Stat. § 315.12

. . . by and through its trustees, [a religious corporation] may sell and convey, encumber, or otherwise dispose of real estate. To do so, the trustees must first be authorized by resolution of the society adopted by a two-thirds vote of the members present and voting at a meeting called for that purpose.

### C.  Applicable Case law

*See* Objections 3, 5, 8, *supra,* at pages 4-5, 8-10, 13, for a discussion of the pertinent case law.

### D.  Argument

Section 5.2(b) contemplates that the Debtor will sell or encumber its property to liquidate the value of its assets.  This provision violates 11 U.S.C. § 1129(a)(16) because the Debtor is organized as a religious Diocesan Corporation under Minnesota Stat. 315.16.  *See* Affidavit of the Very Reverend Father Charles V. Lachowitzer Regarding Structure and Pre-Filing History of Debtor and in Support of Chapter 11 Petition and First Day Pleadings at 5, ECF No. 22 at 5. Because the Committee Plan would obligate the Debtor to sell such property without first obtaining the approval required by Minn. Stat. 315.12, it violates 11 U.S.C. § 1129(a)(16).

In addition, because the Plan contemplates a method for its implementation that cannot occur without the Debtor's cooperation, which it does not have, it violates 11 U.S.C. § 1123(a)(5).  Because the Committee cannot show that its Plan is feasible without such unobtainable cooperation, the Plan also violates 11 U.S.C. § 1129(a)(11).

Moreover, the Plan, by requiring the Debtor to sell or encumber property without providing for the trustee approval required by Minn. Stat. § 315.12, places a substantial burden on how the Debtor chooses to exercise its religion, violating the First Amendment and RFRA.

31

**Objection--24.** <u>Sections 4.6, 6.2 and Exhibit E Violate 11 U.S.C. §§ 101(5), 1129 (a)(3),
1129(a)(7) and 502</u>

    **A.  Pertinent Plan Provision(s).** *See* **Appendix Tab XIV.**

    **B.  Applicable Statute(s)**

<u>11 U.S.C. § 101</u>

In this title the following definitions shall apply…(5)"The term "claim" means—
(A) right to payment, whether or not such right is reduced to judgment, liquidated,
unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,
equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of
performance if such breach gives rise to a right to payment, whether or not such
right to an equitable remedy is reduced to judgment, fixed, contingent, matured,
unmatured, disputed, undisputed, secured, or unsecured…(10) The term
"creditor" means— (A) entity that has a claim against the debtor that arose at the
time of or before the order for relief concerning the debtor …

<u>11 U.S.C. § 1129(a)(3)</u>        *See* Objection 3, *supra* at page 4.

<u>11 U.S.C. §1129(a)(7)</u>        *See* Objection 6, *supra* at page 10.

<u>11 U.S.C. § 502</u>

(a) A claim or interest, proof of which is filed under section 501 of this title, is
deemed allowed, unless a party in interest, including a creditor of a general
partner in a partnership that is a debtor in a case under chapter 7 of this title,
objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if
such objection to a claim is made, the court, after notice and a hearing, shall
determine the amount of such claim in lawful currency of the United States as of
the date of the filing of the petition, and shall allow such claim in such amount,
except to the extent that—

    (1) such claim is unenforceable against the debtor and property of the
debtor, under any agreement or applicable law for a reason other than because
such claim is contingent or unmatured…

<u>Minnesota Rules of Professional Conduct 1.7</u>

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the
representation involves a concurrent conflict of interest. A concurrent conflict of
interest exists if: (1) the representation of one client will be directly adverse to
another client…

DM3\4695830.1

### C.  Applicable Case law

*See* Objection 3, *supra* at pages 4-5 for a discussion of the pertinent case law under 11 U.S.C. § 1129(a)(3).    *See* Objection 6, *supra* at pages 11-12 for a discussion of the pertinent case law under 11 U.S.C. § 1129(a)(7).

"Of course, the classification and treatment of classes of claims is always subject to the good faith requirements under § 1129(a)(3)." *In re Greate Bay Hotel & Casino, Inc.,* 251 B.R. 213, 240 (Bankr. D.N.J. 2000).  "In essence, the good faith inquiry looks at the debtor's fairness in dealing with creditors." *Barger v. Hayes Cnty. Non-stock Co-op (In re Barger)*, 233 B.R. 80, 83 (B.A.P. 8th Cir. 1999).

### D.  Argument

The Plan is unfair to persons who have a right to payment, *i.e.*, creditors.  Sections 4.6 and 6.2 work together to ensure that all persons who filed Tort Claims are paid, regardless of merit.  Neither provision requires that only a Tort Claimant who has a right to payment under state law is paid.  These provisions are contrary to the requirements of 11 U.S.C. § 101(5) and 502(b), because they provide for payments to claimants who do not have a right to payment under applicable state law.  Moreover, these provisions violate the good faith requirements of 11 U.S.C. § 1129(a)(3) because they operate against maximizing assets for legitimate creditors.  Instead, all persons who filed a proof of claim, regardless of whether they have a right to payment, will take a share of the Trust assets, thereby depriving creditors with an actual right to payment of their full share of the Trust's funds.

Moreover, in such a situation, the representation by a lawyer of both (i) persons who have a right to payment under a limited fund and (ii) persons who do not have a right to payment under a limited fund represents a conflict of interest under the Minnesota Rules of Professional

Conduct. When there is a limited fund to pay claimants, the filing and pursuit of a claim on behalf of a client who does not have a right to payment necessarily reduces the payment to a client who does have a right to payment.

**Objection--25. <u>Sections 6.2(a), 6.2(c), and 16.20 Violate 11 U.S.C. §§ 1129(a)(1) and 1141(a)</u>**

**A. Pertinent Plan Provision(s).** *See* **Appendix Tab XV.**

**B. Applicable Statute(s)**

<u>11 U.S.C. §§ 1129(a)(1)</u>. *See* Objection 1, *supra* at page 2.

<u>11 U.S.C. § 1141(a)</u>

(a) …the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

**C. Applicable Case law**

"Section 1141(a) simply lists the parties that are bound by a confirmation order." *Finova Capital Corp. v. Larson Pharmacy Inc. (In re Optical Techs., Inc.)*, 425 F.3d 1294, 1302 n.8 (11th Cir. 2005); *Paul v. Monts*, 906 F.2d 1468, 1471 (10th Cir. 1990) (parties not listed in 11 U.S.C. § 1141(a) are not bound by a confirmation order). There is only one exception to the rule that 11 U.S.C. § 1141(a) describes the universe of parties that can be bound by a plan. *In re WorldCom, Inc.*, 401 B.R. 637, 647 (Bankr. S.D.N.Y. 2009). "Such exception is when an individual or entity appears and participates in litigation regarding an issue dealt with by a confirmed plan or confirmation Order…." *Id.*, quoting *Dycoal, Inc. v. IRS (In re Dycoal, Inc.)*, 327 B.R. 220, 223 (Bankr. W.D. Pa. 2005).

### D.  Argument

11 U.S.C. § 1141(a) identifies which parties are bound by a confirmed plan. A debtor's insurers are *not* one of the entities identified in 11 U.S.C. § 1141(a).  However, Section 16.20 provides that "[t]he rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator successor, or assign of such entity."  The Non-Settling Insurers are referenced throughout the Committee Plan.  *See, e.g.*, 6.1(c).  Thus, Section 16.20 violates 11 U.S.C. § 1141(a) because it seeks to bind the Non-Settling Insurers even though such entities are not named in 11 U.S.C. § 1141(a), and even if such entities have not litigated issues relating to confirmation of the Committee Plan.  As a result, Section 16.20 violates 11 U.S.C. §§ 1129(a)(1) and 1141(a).

**Objection--26.   Section 6.1(b)(2) Violates Applicable State Law.**

### A.  Pertinent Plan Provision(s).  *See* Appendix Tab VI.

### B.  Applicable Statute(s)

11 U.S.C. § 1129(a)(3).  *See* Objection 3, *supra* at page 4.

### C.  Applicable Case law

N/A.

### D.  Argument

Section 6.1(b)(2) specifies that, after the assignment of insurance policies to the Trust, the Trust shall have the right to obtain insurance coverage for the Debtor's liability for "claims". Under applicable state law and the Certain Insurers' policies, there is no insurance coverage for "claims"; coverage exists to indemnify only against judgments and reasonable settlements with the insurers' consent, and only after a final judgment finding such coverage exists.  This Section wrongly expands insurers' burdens under such insurance policies.

In addition, Section 6.1(b)(2) specifies: "No limitations on recovery from Non-Settling Insurers shall be imposed by ... any distribution from the Trust to any Class 6 claimant." This provision violates the LMI Policies because it allows Class 6 Claimants to obtain a double recovery on their claim. Should a claimant be paid $500,000 by the Trust, and then bring a direct action against a Non-Settling Insurer for $5,000,000, the Non-Settling Insurer would be unable, as a consequence of Section 6.1(b)(2), to raise as a partial defense that the claimant had already been paid $500,000. There is no support for such a scheme under the Bankruptcy Code, and such scheme is contrary to applicable state law on indemnity insurance.

**Objection--27.   Section 6.1(b)(4) Violates Applicable State Law**

**A.  Pertinent Plan Provision(s).**  *See* **Appendix Tab XVI.**

**B.  Applicable Statute(s)**

<u>N/A.</u>

**C.  Applicable Case law**

A debtor's estate succeeds to only such title and rights as the debtor had when the petition for bankruptcy was filed. *In re Schauer,* 835 F.2d 1222, 1225 (8th Cir. 1987). "State law defines the debtor's interest in property which becomes part of the bankruptcy estate." *Schauer*, 835 F.2d at 1225. In *Gopher Oil Co. v. America Hardware Mut. Ins. Co.,* 588 N.W.2d 756 (Minn. App. 1999), the Minnesota Court of Appeal noted that "[a]n assignment of a loss does not expand the risk to cover other activities; it only allows a change in the identity of the insured to reconnect the policy's coverage to the insured loss." *Id.*, n. 3.   Thus, the duties of an assured and satisfaction of conditions precedent to coverage applicable to an assured apply to any assignee after an assignment.

36

**D.  Argument**

Section 6.1 assigns the Transferred Insurance Interests to the Trust.  However, the Transferred Insurance Interests do not constitute of pot of cash from which the Trust can make withdrawals as it sees fit.  Coverage for abuse claims under the Insurers' policies is contingent upon the performance of conditions precedent, *see* Objection 15, *supra*, and other duties by the assured.  However, nothing in the Plan requires the Trust to perform the duties of an insured under the Insurers' policies.  In essence, then, the Plan seeks to confer on the Trust the benefits of coverage under the Insurers' policies without requiring the Trust to fulfill the conditions precedent to obtaining such coverage.  Under applicable state law no assignment can have such effect.  Hence, the Plan violates applicable state law.

**Objection--28.   Withdrawn.**

**Objection--29.   Sections 6.1(c), 6.1(c)(1)(i) and 8.4 Violate RFRA**

**A.  Pertinent Plan Provision(s).  *See* Appendix Tab XVII.**

**B.  Applicable Statute(s)**

RFRA.  *See* Objection 5, *supra* at page 7.

**C.  Applicable Case law**

*See* Objection 5, *supra* at pages 8-10 for a discussion of the pertinent case law under RFRA.

**D.  Argument**

The Plan (a) appoints the Trustee as the representative of the Reorganized Debtor with respect to the insurance policies and (b) requires the Reorganized Debtor to allow suits to be filed in its name, thereby interfering in the Debtor's conduct of its religious mission.  Such interference imposes a substantial burden on the Debtor, and violates RFRA.

DM3\4695830.1

**Objection--30.  <u>Section 8.4(b)(3) Violates RFRA.</u>**

    **A.  Pertinent Plan Provision(s).  *See* Appendix Tab XVIII.**

    **B.  Applicable Statute(s)**

<u>RFRA</u>.  *See* Objection 5, *supra* at page 7.

<u>U.S. Constitution, Amendment I</u>.  *See* Objection 5, *supra* at page 7.

    **C.  Applicable Case law**

*See* Objection 5, *supra* at pages 8-10, for a discussion of the pertinent case law under <u>11</u> U.S.C. § 1129(a)(3) and RFRA

    **D.  Argument**

Section 8.4(a)(3) violates RFRA and the First Amendment because it interferes with the Debtor's free exercise of religion by imposing the substantial burden of allowing the Trustee to collect assessments from the Parishes.  Such assessments are not civil obligations that the Debtor could collect as damages under a breach of contract claim.  Rather, assessments are a duty imposed by canon law and are part of the free exercise of religion under the First Amendment of the U.S. Constitution and RFRA.  Such assessments are paid only because that is the way the Archdiocese and the Parishes choose to conduct their religious mission.  By requiring that such assessments be paid to the Trust instead of to the Archdiocese, the Plan imposes a substantial burden on how the Debtor and the Parishes choose to practice their religious mission.  Hence, requiring that the Trust be paid on such assessments violates RFRA.

**Objection--31.  <u>Section 15.3 Violates RFRA</u>**

    **A.  Pertinent Plan Provision(s).  *See* Appendix Tab XIX.**

    **B.  Applicable Statute(s)**

<u>RFRA</u>.  *See* Objection 5, *supra* at page 10.

### C.  Applicable Case law

*See* Objection 5, *supra* at pages 10-12, for a discussion of the pertinent case law under RFRA.

### D.  Argument

Section 15.3 provides for the appointment of Members, directors, and officers of the Debtor.  However, given the controlling and persuasive case law cited in Objection 5, *supra*, the Committee cannot use 11 U.S.C. § 1129(a)(5) to justify the appointment of the Members of the Reorganized Debtor or the directors and officers of the Reorganized Debtor without violating RFRA.  Such matters are internal church decisions that affect the governance and mission of the Debtor.

Without such an appointment, the Plan cannot be confirmed because it does not comply with 11 U.S.C. § 1129(a)(5).

**Objection--32.  Section 16.8(a) Violates Applicable Law Governing the Court's Post-Confirmation Related-to Jurisdiction**

### A.  Pertinent Plan Provision(s).  *See* Appendix Tab XX.

### B.  Applicable Statute(s)

28 U.S.C. § 157(b) (1)

Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 1334(a), (b)

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction

of all civil proceedings arising under title 11, or arising in or related to cases under title 11….

## C.  Applicable Case law

"A bankruptcy court cannot establish jurisdiction merely by inserting [a provision to that effect] into a confirmation order, [since it has] no power to reserve jurisdiction beyond what Congress has given or what is necessary to effectuate the plan of reorganization." *Montana v. Goldin (In re Pegasus Gold Corp.)*, 296 B.R. 227, 233 (D. Nev. 2003) (quotations omitted); *see also In re United States Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002) ("The source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan.  The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§ 1334 and 157") (quotations omitted)).

Ample case law has held that an insurance coverage dispute is a non-core, related-to proceeding.  *See Daewoo Motor Am., Inc. v. Gulf Ins. Co. (In re Daewoo Motor Am., Inc.)*, 302 B.R. 308, 312 (C.D. Cal. 2003); *G-I Holdings, Inc. v. Hartford Accident and Indem. Co. (In re G-I Holdings, Inc.)*, 278 B.R. 376, 382 (Bankr. D.N.J. 2002); *In re United States Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997); *United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass'n (In re United States Lines, Inc.)*, 197 F.3d 631, 638 (2d Cir. 1999) (reasoning that the fact that the policies will augment the assets of the estate has an insufficient effect on the administration of the estate to render the proceeding "core").

However, post-confirmation, a Bankruptcy Court's related-to jurisdiction is narrowed. "[A] bankruptcy court retains jurisdiction, even post-confirmation, 'over aspects of a plan related to its administration and interpretation.'" *Greenpond South, LLC v. GE Capital Corp.*, 2015 U.S. Dist. LEXIS 5307 (D. Minn. Jan. 16, 2015) (citing *In re Fairfield Cmtys., Inc.*, 142 F.3d at 1095. "The purpose of post-confirmation jurisdiction is essentially and necessarily limited to

protecting the order confirming the plan and preventing interference with the execution of the plan." *In re Jr. Food Mart*, 161 B.R. 462, 463 (Bankr. E.D. Ark. 1993); *see also In re Johns-Manville Corp.*, 7 F.3d 32, 1993 U.S. App. LEXIS 25547 (2d Cir. 1993); In *re Cary Metal Products, Inc.*, 152 Bankr. 927 (Bankr. N.D. Ill. 1993)).

## D.  Argument

The post-confirmation jurisdiction contemplated by the Plan violates 28 U.S.C. §§ 157 and 1334, because it goes far beyond the mere interpretation of a plan or administration of the estate.  The Plan purports to extend the Court's post-confirmation jurisdiction to "matters related to the assets of the Estate or of the Trust, … or the recovery, liquidation, or abandonment of Trust Assets", Plan at 16.8(a)(6), and over "disputes regarding the Archdiocese's, the Trustee's, or any Insurer's rights and duties in connection with the defense of Litigation Claims under Section 6.2(f)", *id*. at (a)(18).  None of the above matters relates to the interpretation or administration of the Plan.  Quite the opposite, they all involve a determination of rights under applicable state law, and such matters are outside the Court's post-confirmation jurisdiction.  Accordingly, the Plan violates applicable law governing the Court's post-confirmation related-to jurisdiction.

### Insurers Have Standing to Raise the Above Objections

As set forth in Objections 9, 10, 11, 15, 22, 24, 25, 26, 27, and 32, above, Certain Insurers' rights would be affected were the Plan to be confirmed.  As parties asked to pay claims against the Archdiocese, insurers have broad standing to participate in the bankruptcy case. *In re Global Indus. Techs.*, 645 F.3d 201, 204 (3d Cir. 2011) ("when a federal court gives its approval to a plan that allows a party to put its hands into other people's pockets, the ones with the pockets

are entitled to be fully heard and to have their legitimate objections addressed. In short, they at least have bankruptcy standing.").

Moreover, under the Archdiocese's Plan, Certain Insurers are treated as settling insurers, pay the agreed amounts under their respective settlements, and obtain releases from the Archdiocese and/or the parishes, and are protected by the injunction in the Archdiocese's Plan. Under the Plan, Certain Insurers cannot settle, do not obtain releases, and are not protected by any injunction. Thus, Certain Insurers have a strong interest in defeating confirmation of the Plan.

The Bankruptcy Code gives all parties in interest in chapter 11 cases the right to "raise and be heard on" any issue in a case under this chapter. 11 U.S.C. § 1109(b). "The proper construction of any statute, the Bankruptcy Code included, begins with the language of the statute itself". *Hartford Underwriters Ins. Co. v. Magna Bank, N.A. (In re Hen House Interstate, Inc.)*, 177 F.3d 719, 722 (8th Cir. 1999), *aff'd sub nom.*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). "When the language of the Bankruptcy Code is clear and unambiguous, 'our sole function . . . is to enforce it according to its terms.'" *Id*. at 722-23 (quoting *Rake v. Wade*, 508 U.S. 464, 471, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993).

Section 1109(b) is unambiguous. It clearly and expressly permits a party in interest to raise and be heard on "any issue" in a chapter 11 case. 11 U.S.C. § 1109(b). Nothing in the statute itself justifies any restriction on insurers' unambiguous statutory right to participate fully in this bankruptcy case. On the contrary, the "exact language" of § 1109(b) "grants a right to appear and be heard not in 'a case' but 'on any issue in a case.'" … The "issues" referred to in § 1109(b) occur in proceedings, which themselves occur in and constitute part of the "case…". Thus, Section 1109(b), by its terms, is to be read broadly so as to have the greatest

possible reach. *In re Amatex Corp.*, 755 F.2d 1034 (3d Cir. 1985). "We hold, therefore, that the phrase "any issue in a case" plainly grants a right to raise, appear and be heard on any issue regardless whether it arises in a contested matter or an adversary proceeding." *Term Loan Holder Comm. v. Ozer Group, L.L.C. (In re The Caldor Corp.)*, 303 F.3d 161, 169 (2d Cir. 2002).

"[T]he broad and absolute construction of section 1109(b) comports with the usual expectation of parties in interest that they will have a right to be heard as parties in interest, by the tribunal adjudicating their interests. This expectation has its roots in notions of due process and fair play." *Official Unsecured Creditors' Committee v. Michaels (in the Matter of Marin Motor Oil, Inc.)*, 689 F.2d 445, 457 (3d Cir. 1982), *cert. denied sub nom.*, 459 U.S. 1206 (1983). Due process rights, of course, extend to bankruptcy proceedings. *See, e.g., In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 n. 64 (3d Cir. 2004). "[D]ue process requires, at a minimum…that persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard… at a meaningful time and in a meaningful manner." *Boddie v. Connecticut*, 401 U.S. 371, 377-78; 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

Without affording insurers an opportunity to be heard, this Court would be without jurisdiction to affect their contractual rights. *Windsor v. McVeigh*, 93 U.S. 274, 277 (1876).

Moreover, the trend for many years has been that insurers have broad standing in bankruptcy court. *See, e.g., Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 885-886 (9th Cir. 2012) (reversing a confirmation order that followed a bankruptcy court ruling that insurers lacked standing to be heard at confirmation; the Ninth Circuit found insurer standing where "the plan may economically affect [insurers] in

substantial ways," stating, "As a general matter, parties with potential responsibility to pay claims against debtors regularly have standing to participate in bankruptcy cases"); *Global Indus. Techs.*, 645 F.3d at 211 ("Without a contrary signal from Congress, we will not read a provision that confers a broad right of participation [11 U.S.C. § 1109(b)] to be a restriction on access to bankruptcy proceedings."); *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 158 (D.N.J. 2005) ("parties with potential responsibility to pay claims against debtors regularly have standing to participate in bankruptcy cases.") (citing *In re Peter Del Grande Corp.*, 138 B.R. 458, 459 (Bankr. D.N.J. 1992); *In re Berkshire Foods, Inc.*, 302 B.R. 587, 588-90 (Bankr. N.D. Ill. 2003); *Marcus Hook Dev. Park, Inc.*, 153 B.R. 693, 700 (Bankr. W.D. Penn. 1993).

Here, also, where Certain Insurers would be affected by the Plan, they have standing.

## **CONCLUSION**

WHEREFORE, Certain Insurers respectfully request that the Court enter an Order denying confirmation of the Committee Plan.

Dated: July 7, 2017                                    Respectfully submitted,

By: */e/ Gerald H. Bren*
Gerald H. Bren (Minn. SBN. 174737)
Fisher Bren & Sheridan, LLP
920 Second Avenue South, Suite 975
Minneapolis, MN 55402
Telephone: (612) 332-0100
Email: gbren@fisherbren.com

Catalina J. Sugayan (Ill. SBN. 6191764)
Sedgwick LLP
One North Wacker Drive, Suite 4200
Chicago, IL  60606
Telephone: (312) 641-9050
Email: catalina.sugayan@sedgwicklaw.com

DM3\4695830.1

Russell W. Roten
Jeff D. Kahane
Duane Morris LLP
633 West Fifth Street, Suite 4600
Los Angeles, CA 90071
Telephone: (213) 689-7439
Email: rwroten@duanemorris.com
Email: jkahane@duanemorris.com

***Attorneys for London Market Insurers***


/s/ Charles E. Jones
Charles E. Jones (#0202708)
**MOSS & BARNETT**
150 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone: 612-877-5259
Facsimile: 612-877-5012
Charles.Jones@lawmoss.com

Mark D. Plevin (*pro hac vice)*
Crowell & Moring LLP
Three Embarcadero Center
San Francisco, CA 94115
Telephone: (415) 986-2800
Facsimile: (415) 986-2827
mplevin@crowell.com

***Attorneys for Interstate Fire and Casualty
Company***

*/s/ Jeanne H. Unger*
Jeanne H. Unger (MN #131404)
Jeffrey D. Klobucar (MN #0389368)
**BASSFORD REMELE, PA**
100 South Fifth Street, Suite 1500
Minneapolis, Minnesota 55402-3707
(612) 333-3000
(612) 376-1239 (Facsimile)
junger@bassford.com

and

45

*/s/ Laura McNally*
Laura McNally (*pro hac vice*)
**LOEB & LOEB, LLP**
321 North Clark Street, Suite 2300
Chicago, Illinois 60610
(312) 464-3155
(312) 464-3111 (Facsimile)
lmcnally@loeb.com

*and*

*/s/ David Christian*
David Christian (*pro hac vice*)
**DAVID CHRISTIAN ATTORNEYS LLC**
3515 West 75th Street, Suite 208
Prairie Village, Kansas 66208
(913) 674-8215
dchristian@dca.law

***The Continental Insurance Company, as successor to the Fidelity and Casualty Company of New York, National Fire Insurance Company, and Continental Casualty Company***

46

PROOF OF SERVICE

I, Jeff D. Kahane, declare under penalty of perjury that on July 7, 2017, I caused the

foregoing document to be filed electronically with the Clerk of Court, and that a copy of the

above-referenced document was delivered to all parties who are Filing Users, by automatic email

notification pursuant to the Electronic Case Filing System, including all parties required to

receive service under Local Rule 9013-3(b), and this notice constitutes service pursuant to Local

Rule 9006-1(a).

Dated: July 7, 2017                              Respectfully submitted,

                                                By: /e/ Gerald H. Bren
                                                Gerald H. Bren (Minn. SBN. 174737)
                                                Fisher Bren & Sheridan, LLP
                                                920 Second Avenue South, Suite 975
                                                Minneapolis, MN 55402
                                                Telephone: (612) 332-0100
                                                Email: gbren@fisherbren.com

                                                Catalina J. Sugayan (Ill. SBN. 6191764)
                                                Sedgwick LLP
                                                One North Wacker Drive, Suite 4200
                                                Chicago, IL  60606
                                                Telephone: (312) 641-9050
                                                Email: catalina.sugayan@sedgwicklaw.com


                                                Russell W. Roten
                                                Jeff D. Kahane
                                                Duane Morris LLP
                                                633 West Fifth Street, Suite 4600
                                                Los Angeles, CA  90071
                                                Telephone: (213) 689-7439
                                                Email: rwroten@duanemorris.com
                                                Email: jkahane@duanemorris.com

                                                ***Attorneys for London Market Insurers***

47

**<u>APPENDIX</u>**

**Pertinent Plan Provisions**

**I.    Objection 1:**

Sections 1.1(sss), 3.1, 3.2, 4.3, 4.4, 4.5, 4.6, 4.7, 4.8, 4.9, 4.13, 4.14, 4.15, 4.16, 5.2(b), 5.2(e)(1) 6.1(a), 6.1(b), 6.2(a), 6.2(c), 6.2(d), 6.2(f), 6.3(a)(1), 16.20.

These provisions are set out separately below.

48

## II.    Objections 2, 6, and 14:

**3.1 SUMMARY**. The categories of claims listed below classify claims (except for Administrative Claims and Priority Tax Claims) for all purposes, including voting, confirmation of this Plan, and distribution pursuant to this Plan.

| CLASS | DESCRIPTION | IMPAIRMENT | VOTING |
|---|---|---|---|
| 1 | Priority Claim | Unimpaired | No |
| 2 | Governmental Unit Claims | Unimpaired | No |
| 3 | General Insurance Fund | Unimpaired | No |
| 4 | Archdiocese of Saint Paul and Minneapolis Priests' Pension Plan Claims | Unimpaired | |
| 5 | Archdiocese of Saint Paul and Minneapolis Lay Employees' Pension Plan Claims | Unimpaired | No |
| 6 | Pending Tort Claims | Impaired | Yes |
| 7 | Future Tort Claims | Impaired | Yes |
| 8 | Inter-Parish Loan Fund and Assessment Overpayment Claims | Unimpaired | No |
| 9 | Trade Vendors and General Unsecured Creditors | Unimpaired | No |
| 10 | Secured Claim of Premier Bank | Unimpaired | No |
| 11 | Guaranty Claims | Unimpaired | No |
| 12 | Other Tort Claims and Unsecured Claims | Impaired | Yes |
| 13 | Abuse Related Contingent Claims | Unimpaired | No |
| 14 | Archdiocese Medical and Dental Plan | Unimpaired | No |

49

| 15 | Non-Credibly Accused Priest Support Payments | Unimpaired | No |
| 16 | Credibly Accused Priest Support Payments | Impaired | Yes |

## 4.13 ABUSE RELATED CONTINGENT CLAIMS (CLASS 13).

**(a) Definition**. A "Class 13 Claim" means a claim for contribution, indemnity or reimbursement arising out of the Archdiocese's liability to pay or defend against any Class 6 or Class 7 Claim and any entity subrogated to such claims.

**(b) Treatment**. Class 13 Claims shall not receive or retain any property under this Plan in accordance with 11 U.S.C. §502(e).

50

**III.**    **Objection 3, 4, 5, and 23:**

**5.2 FUNDING THIS PLAN.**

**(b) Funding Options**. Under this Plan, the Bankruptcy Court will determine the value of the Debtor's assets and the Debtor will then pay that value into the Trust. The Debtor may fund the Plan as it deems appropriate, whether through increases in Parish assessments, fundraising, loan financing and/or the sale of selected assets. …Thus, to permit the Debtor to contribute the liquidation value of all of its assets, in conformance with Section 1129(a)(7) of the Bankruptcy Code.

DM3\4695830.1

IV.   **Objection 7:**

**3.1 SUMMARY.** The categories of claims listed below classify claims (except for Administrative Claims and Priority Tax Claims) for all purposes, including voting, confirmation of this Plan, and distribution pursuant to this Plan.

| CLASS | DESCRIPTION | IMPAIRMENT | VOTING |
|---|---|---|---|
| 1 | Priority Claim | Unimpaired | No |
| 2 | Governmental Unit Claims | Unimpaired | No |
| 3 | General Insurance Fund | Unimpaired | No |
| 4 | Archdiocese of Saint Paul and Minneapolis Priests' Pension Plan Claims | Unimpaired | |
| 5 | Archdiocese of Saint Paul and Minneapolis Lay Employees' Pension Plan Claims | Unimpaired | No |
| 6 | Pending Tort Claims | Impaired | Yes |
| 7 | Future Tort Claims | Impaired | Yes |
| 8 | Inter-Parish Loan Fund and Assessment Overpayment Claims | Unimpaired | No |
| 9 | Trade Vendors and General Unsecured Creditors | Unimpaired | No |
| 10 | Secured Claim of Premier Bank | Unimpaired | No |
| 11 | Guaranty Claims | Unimpaired | No |
| 12 | Other Tort Claims and Unsecured Claims | Impaired | Yes |
| 13 | Abuse Related Contingent Claims | Unimpaired | No |
| 14 | Archdiocese Medical and Dental Plan | Unimpaired | No |

52

| 15 | Non-Credibly Accused Priest Support Payments | Unimpaired | No |
| 16 | Credibly Accused Priest Support Payments | Impaired | Yes |

**3.2   CLASSIFICATION AND VOTING.** The claims against the Archdiocese shall be classified as specified above (other than Administrative Claims and Priority Tax Claims, which shall be unclassified and treated in accordance with Article II). Consistent with Section 1122 of the Bankruptcy Code, a claim is classified by the Plan in a particular class only to the extent the claim is within the description of the class, and a claim is classified in a different class to the extent it is within the description of that different class.

**4.3    GENERAL INSURANCE FUND (CLASS 3).**

**(b)  Treatment.** The Reorganized Debtor will assume the Archdiocese's participation in the GIF and all liabilities to Class 3 claimants on the Effective Date. The Reorganized Debtor will continue to sponsor the GIF and will cause to be paid claims and administrative expenses under the GIF in accordance with the Archdiocese's prior practice.

**4.4    ARCHDIOCESE OF SAINT PAUL AND MINNEAPOLIS PRIESTS' PENSION PLAN CLAIMS (CLASS 4).**

**(b)  Treatment.** The Reorganized Debtor will assume the Archdiocese's participation in the Priests' Pension Plan and all liabilities associated therewith (including, but not limited to, any underfunding liabilities) and will continue to meet its obligations under the Priest Plan as they become due.

**4.5    ARCHDIOCESE OF SAINT PAUL AND MINNEAPOLIS LAY EMPLOYEES' PENSION PLAN CLAIMS (CLASS 5).**

**(b)  Treatment.** The Reorganized Debtor will assume the Archdiocese's participation in the Lay Employees' Pension Plan and all liabilities associated therewith (including, but not limited to, any underfunding liabilities) and will meet its obligations under the Lay Employees' Pension Plan as they become due.

**4.7 FUTURE TORT CLAIMS (CLASS 7).**

**(b)  Treatment.** Liability for Class 7 Claims shall be assumed by the Reorganized Debtor.

**4.8 INTER-PARISH LOAN FUND AND ASSESSMENT OVERPAYMENT CLAIMS (CLASS 8).**

DM3\4695830.1

**(b) Treatment.** Unless otherwise agreed by an individual claimant and the Archdiocese, Archdiocesan Parishes who hold Class 8 Claims will be satisfied by a credit against the future assessments that would otherwise be due by such Parish after the Effective Date. The credit contemplated in this paragraph will be applied as determined by the Reorganized Debtor in accordance with its general practice in calculating assessments, until such time as the Class 8 Claim of such parish has been satisfied in full, without interest.

### 4.9 TRADE VENDOR CLAIMS (CLASS 9).

**(b) Treatment.** Class 9 Claim holders shall receive, directly from the Reorganized Debtor, payment in full of such allowed Class 9 Claims, on the Effective Date.

### 4.13 ABUSE RELATED CONTINGENT CLAIMS (CLASS 13).

**(b) Treatment.** Class 13 Claims shall not receive or retain any property under this Plan in accordance with 11 U.S.C. §502(e).

### 4.14 ARCHDIOCESE MEDICAL AND DENTAL PLAN (CLASS 14).

**(b) Treatment.** The Reorganized Debtor will assume the Archdiocese's participation in the AMBP and all liabilities to Class 4 claimants on the Effective Date. The Reorganized Debtor will continue to sponsor the AMBP and will cause to be paid claims and administrative expenses under the AMBP in accordance with the Archdiocese's prior practices.

### 4.15 NON-CREDIBLY ACCUSED PRIEST SUPPORT PAYMENTS (CLASS 15).

**(b) Treatment.** The Archdiocese has disclaimed any liability under civil law for Class 15 Claims and holders of Class 15 Claims shall receive no distribution under this Plan on account of such claims. Notwithstanding the fact that Class 15 Claims receive no distribution, the Reorganized Debtor shall honor its post-Effective Date obligations with respect to non-credibly accused inactive priests in accordance with the Archdiocese's prior practices.

### 4.16 CREDIBLY ACCUSED PRIEST SUPPORT PAYMENTS (CLASS 16).

**(b) Treatment.** All payments due or to become due to the holder of a Class 16 claim shall be forfeited to the Trust and the Reorganized Debtor shall make all such payments directly to the Trust.

**5.2 Funding Options.** Under this Plan, the Bankruptcy Court will determine the value of the Debtor's assets and the Debtor will then pay that value into the Trust. The Debtor may fund the Plan as it deems appropriate, whether through increases in Parish assessments, fundraising, loan financing and/or the sale of selected

assets. …Thus, to permit the Debtor to contribute the liquidation value of all of its assets, in conformance with Section 1129(a)(7) of the Bankruptcy Code.

DM3\4695830.1

V.      **Objection 8:**

**5.2 FUNDING THIS PLAN.   (b) Funding Options.**   Under this Plan, the Bankruptcy Court will determine the value of the Debtor's assets and the Debtor will then pay that value into the Trust. The Debtor may fund the Plan as it deems appropriate, whether through increases in Parish assessments, fundraising, loan financing and/or the sale of selected assets. …Thus, to permit the Debtor to contribute the liquidation value of all of its assets, in conformance with Section 1129(a)(7) of the Bankruptcy Code.

**6.1 THE TRUST.**

    **(a) Purpose, Formation and Assets**. The Trust shall be established for the purposes described in this paragraph. The Trust shall receive the transfer and assignment of assets as provided in Articles V and VI, including from amounts transferred from the Plan Implementation Account, Settling Insurer Contributions, and the Transferred Insurance Interests, of which the Trust is, and shall be deemed to be, the sole assignee.  The Trust shall make distributions to the Class 6 claimants, as provided by this Plan, the Trust Agreement, and the Trust Distribution Plan. The Trust shall fund the defense of the Archdiocese and Reorganized Debtor …. The Trust shall advance funding or indemnify the Archdiocese and Reorganized Debtor with respect to any judgments or settlements of any Litigation Claims brought by Class 6 claimants, …The Trust shall fund the costs and expenses in executing these functions, all such functions to be executed in accordance with this Plan, the Trust Agreement, and the Trust Distribution Plan, …

**6.2(a) TREATMENT OF CLASS 6 CLAIMS.**

**(a) Trust Liability.**   On the Effective Date, the Trust shall automatically and without further act or deed assume all liability for preserving, managing and distributing Trust Assets to Class 6 claimants pursuant to the Trust Distribution Plan. The Trust does not assume any liabilities of the Archdiocese or Reorganized Debtor . . ..

***

**6.2(c) TREATMENT OF CLASS 6 CLAIMS.**

**(c) Distributions to Qualified Claimants**. The Tort Claims Reviewer shall determine whether a Class 6 Claimant is entitled to a distribution under the Trust Distribution Plan ("Qualified Claimant"). For all Qualified Claimants, the Tort Claims Reviewer will determine the number of points to be assigned to the Qualified Claimant pursuant to the Trust Distribution Plan. The Trust will notify every Qualified Claimant of his or her assigned number of points and will mail every Qualified Claimant a Claim Resolution Agreement, attached as Exhibit E. In order to receive any distribution from the Trust, the Qualified Claimant must

56

execute the Claim Resolution Agreement and mail it back to the Tort Claims Reviewer by First Class Mail, Postage Paid. In the Claim Resolution Agreement, the Class 6 Claimant shall release any Settling Insurer from further liability on the Class 6 Claims and waive any right to pursue a direct action under Minn. Stat. § 60A.08, subd. 6 or other applicable law against any Settling Insurer…

**Committee Plan, Exhibit D: The Archdiocese of Saint Paul and Minneapolis Trust Agreement**

**Section 2.1.**  The Trust Assets shall include all property transferred to the Trust pursuant to the Plan and future orders of the Bankruptcy Court, including (but not limited to) all rights of every kind, nature and description transferred to the Trust pursuant to Section 5.1 of the Plan, future orders of the Bankruptcy Court, or otherwise belonging to the Trust, including (but not limited to): …$34,500,000 in cash proceeds from Insurance Settlements…

**VI.**    **Objections 9 and 10:**

**1.1 DEFINED TERMS. . . . (sss)**    "Transferred Insurance Interests" means all rights and interests of the Debtor and the Reorganized Debtor in Insurance Policies in respect of actual or potential coverage for any Class 6 Claim will be assigned and transferred to the Trust under the Plan: (i) the proceeds of such Insurance Policies, and (ii) all claims and causes of action that currently exist or may arise in the future against Non-Settling Insurers based on their conduct concerning insurance coverage for, or defense or settlement of, any Class 6 Claim, including but not limited to all claims and causes of action for breach of the Insurance Policies, vexatious refusal, bad faith, wrongful failure to settle, and for any other similar claim or cause of action, including any and all such claims or causes of action providing for penalties, extra-contractual damages, punitive damages and attorneys' fees and costs...

**5.2 FUNDING THIS PLAN. . . . (e)(1) Non-Cash Assets Transferred Directly to the Trust.**    Upon establishment of the Trust, the following will be automatically and without further act or deed be assigned and transferred directly to the Trust …:

(1) The Transferred Insurance Interests in accordance with Section 6.1;

**6.1 THE TRUST. . . . (b) Transferred Insurance Interests**. … the Interests delineated in Section 6.1(b)(2) and defined as Transferred Insurance Interests are additional Trust Assets.

(1) The Transferred Insurance Interests are hereby assigned and transferred to the Trust automatically and without further act or deed. The foregoing assignment and transfer shall not be construed as an assignment and transfer of the Insurance Policies.

(2) The Archdiocese's and Reorganized Debtor's interests in and rights to proceeds under the Insurance Policies are vested in the Trust notwithstanding any state law or private contractual provisions to the contrary, and such vesting of rights shall not diminish nor impair the coverage provided under any of the Insurance Policies. … The Trustee shall be entitled to all policy proceeds due by virtue of a judgment or settlement of a Class 6 Claim. The Trust shall be fully authorized to act in its own name, or in the name of the Archdiocese or Reorganized Debtor, to enforce any right, title or interest of the Archdiocese and the Reorganized Debtor in the Transferred Insurance Interests. The Trust shall have the right to pursue judgment against Non-Settling Insurers to determine the existence and amount of coverage available for the Archdiocese's liability for Class 6 Claims…

DM3\4695830.1

## VII.    Objections 11 and 12:

**1.1 DEFINED TERMS. . . . (sss)**    "Transferred Insurance Interests" means all rights and interests of the Debtor and the Reorganized Debtor in Insurance Policies in respect of actual or potential coverage for any Class 6 Claim will be assigned and transferred to the Trust under the Plan: (i) the proceeds of such Insurance Policies, and (ii) all claims and causes of action that currently exist or may arise in the future against Non-Settling Insurers based on their conduct concerning insurance coverage for, or defense or settlement of, any Class 6 Claim, including but not limited to all claims and causes of action for breach of the Insurance Policies, vexatious refusal, bad faith, wrongful failure to settle, and for any other similar claim or cause of action, including any and all such claims or causes of action providing for penalties, extra-contractual damages, punitive damages and attorneys' fees and costs...

**5.2 FUNDING THIS PLAN. . . . (e)(1) Non-Cash Assets Transferred Directly to the Trust.**    Upon establishment of the Trust, the following will be automatically and without further act or deed be assigned and transferred directly to the Trust …:

(1) The Transferred Insurance Interests in accordance with Section 6.1;

## 6.1 THE TRUST.

**(a) Purpose, Formation and Assets**. The Trust shall be established for the purposes described in this paragraph. The Trust shall receive the transfer and assignment of assets as provided in Articles V and VI, including from amounts transferred from the Plan Implementation Account, Settling Insurer Contributions, and the Transferred Insurance Interests, of which the Trust is, and shall be deemed to be, the sole assignee.  The Trust shall make distributions to the Class 6 claimants, as provided by this Plan, the Trust Agreement, and the Trust Distribution Plan. The Trust shall fund the defense of the Archdiocese and Reorganized Debtor …. The Trust shall advance funding or indemnify the Archdiocese and Reorganized Debtor with respect to any judgments or settlements of any Litigation Claims brought by Class 6 claimants, …The Trust shall fund the costs and expenses in executing these functions, all such functions to be executed in accordance with this Plan, the Trust Agreement, and the Trust Distribution Plan, …

**(b) Transferred Insurance Interests**. … the Interests delineated in Section 6.1(b)(2) and defined as Transferred Insurance Interests are additional Trust Assets.

(1) The Transferred Insurance Interests are hereby assigned and transferred to the Trust automatically and without further act or deed. The foregoing assignment and transfer shall not be construed as an assignment and transfer of the Insurance Policies.

59

(2) The Archdiocese's and Reorganized Debtor's interests in and rights to proceeds under the Insurance Policies are vested in the Trust notwithstanding any state law or private contractual provisions to the contrary, and such vesting of rights shall not diminish nor impair the coverage provided under any of the Insurance Policies. … The Trustee shall be entitled to all policy proceeds due by virtue of a judgment or settlement of a Class 6 Claim. The Trust shall be fully authorized to act in its own name, or in the name of the Archdiocese or Reorganized Debtor, to enforce any right, title or interest of the Archdiocese and the Reorganized Debtor in the Transferred Insurance Interests. The Trust shall have the right to pursue judgment against Non-Settling Insurers to determine the existence and amount of coverage available for the Archdiocese's liability for Class 6 Claims…

DM3\4695830.1

**VIII. Objection 15:**

### 4.3      GENERAL INSURANCE FUND (CLASS 3).

**(a) Definition**. A "Class 3 Claim" means an allowed claim against the Archdiocese held by Catholic Entities arising from or related in any way to the collection and use of payments made by such claimant to the Archdiocese under the GIF, including any claims arising from the administration by the Archdiocese of the GIF.

**(b) Treatment**. The Reorganized Debtor will assume the Archdiocese's participation in the GIF and all liabilities to Class 3 claimants on the Effective Date. The Reorganized Debtor will continue to sponsor the GIF and will cause to be paid claims and administrative expenses under the GIF in accordance with the Archdiocese's prior practices.

### 6.3      NON-SETTLING INSURERS.

**(a) Preservation of Rights and Obligations.**

(1) In the event: (i) a Class 6 Claim is pursued in state or federal court by a Class 6 claimant against the Archdiocese or Reorganized Debtor, or (ii) the Trust asserts an objection to or otherwise seeks a determination of liability as to a Class 6 Claim, then the Archdiocese, Reorganized Debtor, the Trust and each Non-Settling Insurer shall retain any and all legal and factual defenses that may exist in respect of such Class 6 Claim and all coverage defenses. The rights, duties and obligations of each Non-Settling Insurer and the Archdiocese or Reorganized Debtor under the Insurance Policies with respect to such Class 6 Claim are not impaired, altered, reduced, or diminished by: (a) any distribution to Class 6 claimants pursuant to this Plan, the Trust Agreement, and the Trust Distribution Plan; (b) the transfer and assignment of the Archdiocese's Transferred Insurance Interests in the Insurance Policies issued by the Non-Settling Insurers; (c) releases granted to Settling Insurers under the Plan; or (d) any other provision of this Plan, the Trust Agreement, or the Trust Distribution Plan. Non-Settling Insurers retain any defenses that they would be able to raise if the claim for coverage were brought by the Archdiocese or Reorganized Debtor, except any defense (1) related to the transfer of Transferred Insurance Interests to the Trust; (2) effected by operation of bankruptcy law as a result of confirmation; or (3) based on facts determined by the Bankruptcy Court in connection with the confirmation.

**(d) This Plan is Neutral as to Insurance Policies**. For the avoidance of doubt, solely with respect to the Non-Settling Insurers, nothing in the Plan, the Trust Agreement, the Trust Distribution Plan, the Confirmation Order, or any other order of the Bankruptcy Court to the contrary (including any other provision that purports to be preemptory or supervening or grants a release): (i) shall affect, impair, or prejudice the rights and defenses of any Non-Settling Insurer, the Archdiocese, the Reorganized Debtor, the Trust, or any other insureds under any

DM3\4695830.1

Insurance Policy in any manner, including any defenses to any claim for insurance; (ii) shall constitute a settlement or resolution of the Archdiocese's or Reorganized Debtor's liability to a claimant; (iii) shall in any way operate to, or have the effect of, impairing or having any res judicata, collateral estoppel, or other preclusive effect on, any party's legal, equitable, or contractual rights or obligations under any insurance policy in any respect; or (v) shall otherwise determine the application or non-application of any provision of any Insurance Policy and any such rights and obligations shall be determined under the Insurance Policy and applicable law.

DM3\4695830.1

IX.    **Objection 16:**

**4.3    GENERAL INSURANCE FUND (CLASS 3).**

**(a)  Definition**. A "Class 3 Claim" means an allowed claim against the Archdiocese held by Catholic Entities arising from or related in any way to the collection and use of payments made by such claimant to the Archdiocese under the GIF, including any claims arising from the administration by the Archdiocese of the GIF.

**(b)  Treatment**. The Reorganized Debtor will assume the Archdiocese's participation in the GIF and all liabilities to Class 3 claimants on the Effective Date. The Reorganized Debtor will continue to sponsor the GIF and will cause to be paid claims and administrative expenses under the GIF in accordance with the Archdiocese's prior practices.

**<u>Plan, Exhibit D, The Archdiocese of Saint Paul and Minneapolis Trust Agreement</u>**

**Section 2.1**

The Trust Assets shall include …$5,000,000 representing the value of the General Insurance Fund….

DM3\4695830.1

**X.** **Objections 17 and 18:**

**4.15 NON-CREDIBLY ACCUSED PRIEST SUPPORT PAYMENTS (CLASS 15).**

**(a) Definition.** A "Class 15 Claim" means a claim for support or maintenance by any inactive Archdiocesan Priest who is not a Credibly Accused Priest.

**(b) Treatment.** The Archdiocese has disclaimed any liability under civil law for Class 15 Claims and holders of Class 15 Claims shall receive no distribution under this Plan on account of such claims. Notwithstanding the fact that Class 15 Claims receive no distribution, the Reorganized Debtor shall honor its post-Effective Date obligations with respect to non-credibly accused inactive priests in accordance with the Archdiocese's prior practices.

**4.16 CREDIBLY ACCUSED PRIEST SUPPORT PAYMENTS (CLASS 16)**

**(a) Definition**. A "Class 16 Claim" means a claim for support or maintenance by an inactive or active Archdiocesan Priest who is a Credibly Accused Priest.

**(b) Treatment**. All payments due or to become due to the holder of a Class 16 claim shall be forfeited to the Trust and the Reorganized Debtor shall make all such payments directly to the Trust.

64

**XI.    Objection 19:**

**4.6 PENDING TORT CLAIMS (CLASS 6).**

**(a) Definition**. A "Class 6 Claim" means a Pending Tort Claim.

**(b) Summary.** …**Distribution from the Trust, however, does not preclude or affect claims or recoveries by Class 6 claimants against the Archdiocese, the Reorganized Debtor or Non-Settling Insurers.** The Trust shall fund the defense of the Archdiocese and the Reorganized Debtor as against any Litigation Claims brought by Class 6 Claimants, but only to the extent that the Archdiocese or Reorganized Debtor is not defended or otherwise reimbursed for its defense expenses by any Insurer. **The Trust shall advance funding or indemnify the Archdiocese and the Reorganized Debtor with respect to any judgments or settlements of any Litigation Claims brought by Class 6 claimants**, but only to the extent that such judgments or settlements are not funded, or the Archdiocese or the Reorganized Debtor is not indemnified for them, by any Insurer. The Trust shall pursue recoveries against any Non-Settling Insurers in respect of the Transferred Insurance Interests. … **The Class 6 Claims will not be released or discharged against the Archdiocese or Reorganized Debtor until such claims are settled with the Archdiocese or Reorganized Debtor and its Insurers or are fully adjudicated**, resolved and subject to Final Order …

***

(emphasis added).

**6.3 NON-SETTLING INSURERS**.

**(a) Preservation of Rights and Obligations.**

(1) In the event: (i) a Class 6 Claim is pursued in state or federal court by a Class 6 claimant against the Archdiocese or Reorganized Debtor, or (ii) the Trust asserts an objection to or otherwise seeks a determination of liability as to a Class 6 Claim, then the Archdiocese, Reorganized Debtor, the Trust and each Non-Settling Insurer shall retain any and all legal and factual defenses that may exist in respect of such Class 6 Claim and all coverage defenses. **The rights, duties and obligations of each Non-Settling Insurer and the Archdiocese or Reorganized Debtor under the Insurance Policies with respect to such Class 6 Claim are not impaired, altered, reduced, or diminished by: (a) any distribution to Class 6 claimants pursuant to this Plan, the Trust Agreement, and the Trust Distribution Plan;** (b) the transfer and assignment of the Archdiocese's Transferred Insurance Interests in the Insurance Policies issued by the Non-Settling Insurers; (c) releases granted to Settling Insurers under the Plan; or (d) any other provision of this Plan, the Trust Agreement, or the Trust Distribution Plan. Non-Settling Insurers retain any defenses that they would be able to raise if the claim for coverage were brought by the Archdiocese or Reorganized Debtor,

DM3\4695830.1

except any defense (1) related to the transfer of Transferred Insurance Interests to the Trust; (2) effected by operation of bankruptcy law as a result of confirmation; or (3) based on facts determined by the Bankruptcy Court in connection with the confirmation.

*** 

(emphasis added).

66

XII.    **Objection 20:**

**4.6 PENDING TORT CLAIMS (CLASS 6).**

**(a) Definition**. A "Class 6 Claim" means a Pending Tort Claim.

**(b) Summary.** …**Distribution from the Trust, however, does not preclude or affect claims or recoveries by Class 6 claimants against the Archdiocese, the Reorganized Debtor or Non-Settling Insurers.** The Trust shall fund the defense of the Archdiocese and the Reorganized Debtor as against any Litigation Claims brought by Class 6 Claimants, but only to the extent that the Archdiocese or Reorganized Debtor is not defended or otherwise reimbursed for its defense expenses by any Insurer. **The Trust shall advance funding or indemnify the Archdiocese and the Reorganized Debtor with respect to any judgments or settlements of any Litigation Claims brought by Class 6 claimants**, but only to the extent that such judgments or settlements are not funded, or the Archdiocese or the Reorganized Debtor is not indemnified for them, by any Insurer. The Trust shall pursue recoveries against any Non-Settling Insurers in respect of the Transferred Insurance Interests. … **The Class 6 Claims will not be released or discharged against the Archdiocese or Reorganized Debtor until such claims are settled with the Archdiocese or Reorganized Debtor and its Insurers or are fully adjudicated**, resolved and subject to Final Order …

**\*\*\***

(emphasis added).

**4.7 FUTURE TORT CLAIMS (CLASS 7)**.

**(a) Definition**. A Class 7 Claim means a Future Tort Claim ("Class 7 Claim").

**(b) Treatment**. **Liability for Class 7 Claims shall be assumed by the Reorganized Debtor**. … The **Class 7 Claims will not be released against the Archdiocese or Reorganized Debtor until such Class 7 Claims are settled with the Archdiocese or Reorganized Debtor and its Insurers, or until such Class 7 Claims are fully adjudicated and determined and subject to Final Order…** (emphasis added)

DM3\4695830.1

**XIII.   Objection 22:**

**4.6 PENDING TORT CLAIMS (CLASS 6).**

**(a) Definition**. A "Class 6 Claim" means a Pending Tort Claim.

**(b) Summary.** …**Distribution from the Trust, however, does not preclude or affect claims or recoveries by Class 6 claimants against the Archdiocese, the Reorganized Debtor or Non-Settling Insurers.** The Trust shall fund the defense of the Archdiocese and the Reorganized Debtor as against any Litigation Claims brought by Class 6 Claimants, but only to the extent that the Archdiocese or Reorganized Debtor is not defended or otherwise reimbursed for its defense expenses by any Insurer. **The Trust shall advance funding or indemnify the Archdiocese and the Reorganized Debtor with respect to any judgments or settlements of any Litigation Claims brought by Class 6 claimants**, but only to the extent that such judgments or settlements are not funded, or the Archdiocese or the Reorganized Debtor is not indemnified for them, by any Insurer. The Trust shall pursue recoveries against any Non-Settling Insurers in respect of the Transferred Insurance Interests. … **The Class 6 Claims will not be released or discharged against the Archdiocese or Reorganized Debtor until such claims are settled with the Archdiocese or Reorganized Debtor and its Insurers or are fully adjudicated**, resolved and subject to Final Order …

**\*\*\***

(emphasis added).

**6.2(a) TREATMENT OF CLASS 6 CLAIMS.**

**(a) Trust Liability.**   On the Effective Date, the Trust shall automatically and without further act or deed assume all liability for preserving, managing and distributing Trust Assets to Class 6 claimants pursuant to the Trust Distribution Plan. The Trust does not assume any liabilities of the Archdiocese or Reorganized Debtor . . ..

**\*\*\***

**6.2(c) TREATMENT OF CLASS 6 CLAIMS.**

**(c) Distributions to Qualified Claimants**. The Tort Claims Reviewer shall determine whether a Class 6 Claimant is entitled to a distribution under the Trust Distribution Plan ("Qualified Claimant"). For all Qualified Claimants, the Tort Claims Reviewer will determine the number of points to be assigned to the Qualified Claimant pursuant to the Trust Distribution Plan. The Trust will notify every Qualified Claimant of his or her assigned number of points and will mail every Qualified Claimant a Claim Resolution Agreement, attached as Exhibit E. In order to receive any distribution from the Trust, the Qualified Claimant must

DM3\4695830.1

execute the Claim Resolution Agreement and mail it back to the Tort Claims Reviewer by First Class Mail, Postage Paid. In the Claim Resolution Agreement, the Class 6 Claimant shall release any Settling Insurer from further liability on the Class 6 Claims and waive any right to pursue a direct action under Minn. Stat. § 60A.08, subd. 6 or other applicable law against any Settling Insurer…

**(d) Election**. No later than thirty (30) business days after a Class 6 claimants is notified of his or her status as a Qualified Claimant and the number of his or her assigned points under the Trust Distribution Plan, the Qualified Claimant shall elect in writing one of the following treatment alternatives:

(1) **Treatment of a Qualified Claimant Pursuant to Trust Distribution Plan**. A Qualified Claimant may elect to have his or her Class 6 Claim be treated as a "Distribution Plan Claim". By accepting a partial distribution, a Distribution Plan Claimant does not waive any rights against the Archdiocese or Reorganized Debtor and other parties with respect to the Class 6 Claim(s) and will be entitled to future distributions if additional Trust Proceeds become available from settlements with Non-Settling Insurers or from judgments awarded and collected by the Trust or Litigation Claimants, until such Distribution Plan Claimant has received the full amount of damages awardable to such Distribution Plan Claimant under the terms of the Trust Distribution Plan. A Class 6 Claimant electing treatment as a Distribution Plan Claimant retains the right to pursue (a) a monetary judgment against the Archdiocese or Reorganized Debtor, as well as any third person, for his or her Class 6 Claim for its full amount according to proof; and (b) a direct action against any Non-Settling Insurer to the extent allowed by applicable law, including Minn. Stat. § 60A.08, subd. 6. …

or

(2) **Treatment of a Qualified Claimant as a Litigation Claimant**. A Qualified Claimant that elects treatment as a litigation claim ("Litigation Claimant") will have the same rights as Distribution Plan Claimants to initial and future distributions from the Trust up to the full damages awardable to such Distribution Plan Claimant under the terms of the Trust Distribution Plan. A Litigation Claimant that recovers a judgment or settlement will also be entitled to an additional award as set forth in Section 6.2(i) below. A Litigation Claimant retains the right to pursue (a) a monetary judgment against the Archdiocese or Reorganized Debtor, as well as any third person, for his or her Class 6 Claim for its full amount according to proof; and (b) a direct action against any Non-Settling Insurer to the extent allowed by applicable law, including Minn. Stat. § 60A.08, subd. 6 (each a "Litigation Claim"). A Litigation Claimant's recovery on a Litigation Claim is limited as provided herein.

***

**(f) The Trust retains the right to pursue Non-Settling Insurers for the** Archdiocese's and Reorganized Debtor's liability to Class 6 Claimants regardless

DM3\4695830.1

of whether the Class 6 Claimants elect treatment as Distribution Plan Claimants or Litigation Claimants.

DM3\4695830.1

## XIV.   Objection 24:

### 4.6 PENDING TORT CLAIMS (CLASS 6).

**(a) Definition**. A "Class 6 Claim" means a Pending Tort Claim.

**(b) Summary.** …**Distribution from the Trust, however, does not preclude or affect claims or recoveries by Class 6 claimants against the Archdiocese, the Reorganized Debtor or Non-Settling Insurers.** The Trust shall fund the defense of the Archdiocese and the Reorganized Debtor as against any Litigation Claims brought by Class 6 Claimants, but only to the extent that the Archdiocese or Reorganized Debtor is not defended or otherwise reimbursed for its defense expenses by any Insurer. **The Trust shall advance funding or indemnify the Archdiocese and the Reorganized Debtor with respect to any judgments or settlements of any Litigation Claims brought by Class 6 claimants**, but only to the extent that such judgments or settlements are not funded, or the Archdiocese or the Reorganized Debtor is not indemnified for them, by any Insurer. The Trust shall pursue recoveries against any Non-Settling Insurers in respect of the Transferred Insurance Interests. … **The Class 6 Claims will not be released or discharged against the Archdiocese or Reorganized Debtor until such claims are settled with the Archdiocese or Reorganized Debtor and its Insurers or are fully adjudicated**, resolved and subject to Final Order …

\*\*\*

(emphasis added).

### 6.2(c) TREATMENT OF CLASS 6 CLAIMS.

**(c) Distributions to Qualified Claimants**. The Tort Claims Reviewer shall determine whether a Class 6 Claimant is entitled to a distribution under the Trust Distribution Plan ("Qualified Claimant"). For all Qualified Claimants, the Tort Claims Reviewer will determine the number of points to be assigned to the Qualified Claimant pursuant to the Trust Distribution Plan. The Trust will notify every Qualified Claimant of his or her assigned number of points and will mail every Qualified Claimant a Claim Resolution Agreement, attached as Exhibit E. In order to receive any distribution from the Trust, the Qualified Claimant must execute the Claim Resolution Agreement and mail it back to the Tort Claims Reviewer by First Class Mail, Postage Paid. In the Claim Resolution Agreement, the Class 6 Claimant shall release any Settling Insurer from further liability on the Class 6 Claims and waive any right to pursue a direct action under Minn. Stat. § 60A.08, subd. 6 or other applicable law against any Settling Insurer…

### EXHIBIT E, Claim Resolution Agreement,

71

72

## XV.    Objection 25:

### 6.1 THE TRUST

**(c)    Appointment of Trustee as Estate Representative to Enforce Insurance Interests and Obtain Insurance Recoveries**. If the Bankruptcy Court does not enter a Final Order approving the assignment and transfer of the Transferred Insurance Interests to the Trust, then pursuant to the provisions of Section 1123(b)(3)(B) of the Bankruptcy Code, the Trustee is hereby appointed as the representative of the Archdiocese's Estate for the purpose of retaining and enforcing all of the Archdiocese's and the Estate's interests under the Non-Settling Insurers' Insurance Policies against the Non-Settling Insurers with respect to the Class 6 Claims. Any recoveries on such interests by the Trustee will be paid to the Trust. The determination of whether the appointment of the Trust as the Archdiocese's and the Estate's representative is valid, and does not defeat or impair the insurance coverage otherwise provided by Non-Settling Insurers, shall be made by the Bankruptcy Court at the confirmation hearing. If a party in interest (which, for this purpose, shall include the Non-Settling Insurers) fails to timely file an objection to the proposed appointment by the deadline for filing objections to confirmation of this Plan, that party in interest shall be deemed to have irrevocably consented to the appointment and will be forever barred from asserting that the appointment in any way affects the ability of the Trust to pursue Non-Settling Insurers, or any of them, for insurance coverage. …If the Trust brings an action against a Non-Settling Insurer to assert any claim or to determine the Non-Settling Insurer's obligation to provide coverage for any Class 6 Claim, the Non- Settling Insurer may raise any defense to coverage as if the action had been brought by the Archdiocese or the Reorganized Debtor, except any defense (1) regarding the appointment; (2) effected by operation of law because of confirmation of this Plan; or (3) based on res judicata or collateral estoppel related to facts determined by the Bankruptcy Court…

### 16.20 SUCCESSORS AND ASSIGNS.

This Plan shall be binding upon and inure to the benefit of the Archdiocese and its successors and assigns, including the Reorganized Debtor.  The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator successor, or assign of such entity.

DM3\4695830.1

## XVI.   Objection 27:

**6.1(b)(4) The** determination of whether the assignment and transfer of the Transferred Insurance Interests provided for in this Section is valid, and does not void, defeat or impair the insurance coverage issued by the Non-Settling Insurers, shall be made by the Bankruptcy Court at the confirmation hearing. If a party in interest (which, for this purpose, shall include Non-Settling Insurers) fails to timely file an objection to the proposed assignment and transfer of the Transferred Insurance Interests or other terms of the Plan related to the Insurance Policies by the date set to file such objections, that party in interest shall be deemed to have irrevocably consented to the assignment and transfer of Transferred Insurance Interests and other Plan terms related to the Insurance Policies and will be forever barred from asserting that the assignment and transfer of the Transferred Insurance Interests or other Plan terms affect the ability of the Trust or Class 6 claimants to pursue the Non-Settling Insurers, or any of them, for insurance coverage. In the event that the Bankruptcy Court enters a Final Order that the assignment and transfer of the Transferred Insurance Interests is valid and does not defeat or impair coverage of the Non-Settling Insurers, following the Effective Date, the Archdiocese and Reorganized Debtor shall not be relieved of any obligations under the Non-Settling Insurers' Insurance Policies. In order to ensure that the Archdiocese and Reorganized Debtor will abide by applicable obligations under the Insurance Policies, any release, discharge and/or injunction issued as a result of this Plan or in connection with this bankruptcy shall not encompass any claim by the Trust that the Archdiocese and/or Reorganized Debtor breached obligations under the Insurance Policies thereby causing the Trust to suffer damages, including in the amount of the insurance coverage lost as a result of the breach, and such a claim shall be an allowed claim for breach of contract against the Reorganized Debtor.

DM3\4695830.1

## XVII.  Objection 29:

**6.1 THE TRUST**

**(c)  Appointment of Trustee as Estate Representative to Enforce Insurance Interests and Obtain Insurance Recoveries**. If the Bankruptcy Court does not enter a Final Order approving the assignment and transfer of the Transferred Insurance Interests to the Trust, then pursuant to the provisions of Section 1123(b)(3)(B) of the Bankruptcy Code, the Trustee is hereby appointed as the representative of the Archdiocese's Estate for the purpose of retaining and enforcing all of the Archdiocese's and the Estate's interests under the Non-Settling Insurers' Insurance Policies against the Non-Settling Insurers with respect to the Class 6 Claims. Any recoveries on such interests by the Trustee will be paid to the Trust. The determination of whether the appointment of the Trust as the Archdiocese's and the Estate's representative is valid, and does not defeat or impair the insurance coverage otherwise provided by Non-Settling Insurers, shall be made by the Bankruptcy Court at the confirmation hearing. If a party in interest (which, for this purpose, shall include the Non-Settling Insurers) fails to timely file an objection to the proposed appointment by the deadline for filing objections to confirmation of this Plan, that party in interest shall be deemed to have irrevocably consented to the appointment and will be forever barred from asserting that the appointment in any way affects the ability of the Trust to pursue Non-Settling Insurers, or any of them, for insurance coverage. …If the Trust brings an action against a Non-Settling Insurer to assert any claim or to determine the Non-Settling Insurer's obligation to provide coverage for any Class 6 Claim, the Non- Settling Insurer may raise any defense to coverage as if the action had been brought by the Archdiocese or the Reorganized Debtor, except any defense (1) regarding the appointment; (2) effected by operation of law because of confirmation of this Plan; or (3) based on res judicata or collateral estoppel related to facts determined by the Bankruptcy Court.…

**Section 6.1(c)(1)(i)** At the reasonable request of the Trust, the Reorganized Debtor will assert its Interests against a Non-Settling Insurer, including, but not limited to, by filing a lawsuit for recovery of policy proceeds. The Reorganized Debtor will cooperate and assist the Trust in enforcing any right or prosecuting any claim based on the Transferred Insurance Interests. This cooperation includes, but is not limited to, providing access to documents and electronic information and providing clergy, employees, agents, and volunteers to testify in depositions and at trial. If the Reorganized Debtor fails to cooperate and assist the Trust as set forth herein, then any release, discharge and/or injunction issued as a result of this Reorganization Plan or in connection with this bankruptcy shall not encompass any claim by the Trust that the Archdiocese and/or Reorganized Debtor breached obligations owed to the Trustee hereunder thereby causing the Trust to suffer damages, including in the amount of the insurance coverage lost as a result of the breach, and such a claim shall be an allowed claim for breach of contract against the Reorganized Debtor.

DM3\4695830.1

**8.4 RIGHTS AND RESPONSIBILITIES OF TRUSTEE.**

(a) The Trustee shall be deemed the Estate's representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights, powers, authority, responsibilities, and benefits specified in this Plan and the Trust Agreement, including the powers of a trustee under Sections 704, 1108 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004 (including commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges)…

DM3\4695830.1

## XVIII. Objection 30:

**8.4(a)(3)** Any and all rights to the following shall be transferred to the Trust upon the Effective Date, and shall be preserved prior to the Effective Date by the Debtor for the benefit of the Trust… (3) Any and all rights and powers and agreements necessary to permit the Trust to collect past-due assessments owed by Archdiocesan Parishes…

DM3\4695830.1

## XIX.   Objection 31:

**15.3 IDENTITY OF OFFICERS OF REORGANIZED DEBTOR**. In accordance with §
1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the Persons proposed to
serve as the corporate Members of the Reorganized Debtor and the persons proposed to serve as
directors and officers of the Reorganized Debtor on and after the Effective Date are set forth on
Exhibit J.

DM3\4695830.1

## XX.   Objection 32:

**16.8(a)  By the Bankruptcy Court**. …the Bankruptcy Court shall retain… (ii) original, but not exclusive, jurisdiction to hear and determine all core proceedings arising under the Bankruptcy Code or arising in this Chapter 11 case, and (iii) original, but not exclusive, jurisdiction to hear and make proposed findings of fact and conclusions of law in any non-core proceedings related to this Chapter 11 case and this Plan, including matters concerning the interpretation, implementation, consummation, execution, or administration of this Plan. Subject to, but without limiting the generality of the foregoing, the Bankruptcy Court's post-Effective Date jurisdiction shall include jurisdiction…

(6) over matters related to the assets of the Estate or of the Trust, including the terms of the Trust or the recovery, liquidation, or abandonment of Trust Assets; …

(18) over disputes regarding the Archdiocese's, the Trustee's, or any Insurer's rights and duties in connection with the defense of Litigation Claims under Section 6.2(f)…

79