UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

The Archdiocese of Saint Paul and
Minneapolis,

                     Debtor.

ORDER DENYING
CONFIRMATION OF DEBTOR'S
PLAN DATED AND FILED ON
DECEMBER 19, 2016

BKY 15-30125

At Minneapolis, Minnesota, December 28, 2017.

       This case is before the court on legal objections[1] to confirmation of the debtor's plan dated December 19, 2016.  Appearances were noted on the record.

       For reasons stated below, confirmation of the debtor's plan is denied.

**1.**      **Objection of the Crosier Fathers and Brothers Province, Inc., and Crosier Fathers of Onamia**

       While the Crosiers filed a document entitled "Objection," nowhere in the objection does it actually object to confirmation of the debtor's plan or state any basis for denying confirmation.  Their objection is overruled.

**2.**      **Objection by the Estate of Nancy J. Galatowitsch**

       Joseph L. Galatowitsch, the personal representative of the probate estate of Nancy J. Galatowitsch has filed an objection.  He objects because the debtor's plan provides that "in order to be eligible for participation and claim liquidation under this TDP [trust distribution plan], each tort claimant must be alive as of the date of Plan Confirmation."  For the most part, the debtor's plan is consistent with Minnesota law.  Minnesota law provides that "a cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists, except as

---

[1] In order to save time and attorney's fees, a hearing was held to consider strictly legal issues.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *12/28/2017*
Lori Vosejpka, Clerk, by LH

provided in section 573.02." Minn. Stat. § 573.01 (2017). So, most of Galatowitsch's claim died with her. When she died, her claims for pain, suffering, psychic damage, trauma, and other damages also died. However, the exception mentioned in section 573.02 provides that an action for special damages may continue to be asserted by a trustee appointed for such purpose. Minn. Stat. § 573.02 Subdiv. 2. (2017). Special damages are those damages to which an exact dollar amount can be assigned–such as medical expenses or lost wages. *Beaudry v. State Farm Auto. Ins. Co.,* 518 N.W.2d 11, 12, n. 1 (Minn. 1994).

At least seven sexual abuse claimants have died since filing their proofs of claim and as this case drags on, it seems inevitable that more will die. No one has sought the appointment of a trustee for any of the seven. However, the debtor's plan needs to make a provision for these claims for special damages by the trustees for deceased claimants. The objection of Joseph Galatowitsch as personal representative for the Estate of Nancy J. Galatowitsch is sustained.

**3.**     **Objections of North American Banking Company and Bremer Bank**

North American Banking Company and Bremer Bank make similar and legally identical objections to confirmation of the debtor's plan. The debtor owns the properties upon which Totino-Grace High School and Benilde-St. Margaret's High School are located. Both properties are subject to long term leases with the respective high schools. Both high schools have loans which are secured by mortgages on the properties owned by the debtor. While the debtor is not liable for the mortgage debts, since the creditors' claims are secured by properties of the debtor, both banks have allowable claims. 11 U.S.C. § 502(a). Since the claims are secured by property of the estate, they are secured claims. 11 U.S.C. § 506(a)(1). Since the debtor's plan makes no provision for these secured claims, its plan may not be confirmed and the objections of North American Banking Company and Bremer Bank are sustained.

**4.     Objections by the Committee of Unsecured Creditors**

    **A. Channeling Injunction and Third-Party Releases**

The committee of unsecured creditors objects to provisions in the debtor's plan that seeks to protect non-debtor entities from sexual abuse litigation through a third-party release or channeling injunction. The committee asks me to follow courts that prohibited third-party releases and prevent the debtor from protecting the non-debtor entities. It argues, in the alternative, that even if I follow those courts that have allowed third-party releases, the debtor should still not be allowed such relief because it has not satisfied the strict requirements imposed by courts that have allowed third-party releases.

The debtor proposes to pay the claims of individuals who have been the subject of sexual abuse by individuals employed by or connected to the Archdiocese by creating a trust from which their claims would be paid. The trust will be funded from the Plan Implementation Account. The Plan Implementation Account will be funded from various sources. The Archdiocese will contribute approximately $13,175,000.00 in cash, a piece of real estate it refers to as AUSMAR and which it values at approximately $366,000.00, the proceeds from the sale of a ring that it values at $230,000.00, plus cash from its general insurance fund of somewhere between $5,000,000.00 and $6,000,000.00. In addition, insurance companies which provide liability insurance to the Archdiocese will contribute, by way of various settlements with the Archdiocese, $92,450,00.00. The trust would also include a claim of $14,200,000.00 in the Home Insurance Company's liquidation proceedings. Insurance companies providing liability insurance to parishes and other entities will contribute $13,732,500.00. The trust would obtain the rights to the claims of the Archdiocese and others against five insurance companies which

have not reached settlements with the debtors. The money in the Plan Implementation Account, after paying administrative expenses which now exceed $7,000,000.00, will be paid to the trust.

The claims of individuals who have suffered sexual abuse would be channeled to the trust. The debtor, the other entities, the settling insurers, and others would be protected by an injunction preventing such claims being asserted against them. This channeling injunction is sometimes referred to as a third-party release. It is this channeling injunction to which the creditors committee objects.

The courts are split on whether to allow a debtor to include a third-party release in a plan of reorganization.

**1. Circuits that Allow Non-debtor Release.**

The Second, Fourth, Sixth and Eleventh Circuits have explicitly approved the use of non-debtor releases in reorganization plans.

*a. The Fourth Circuit*

The Fourth Circuit approved a plan that released non-debtor third-parties in the *A.H. Robins* mass tort bankruptcy case of the Dalkon Shield contraceptive device manufacturer. *Menard-Sandford v. Mabey (In re A.H. Robins Co., Inc.)*, 880 F.2d 694 (4th Cir. 1989). Over the objection of certain personal injury claimants who voted against the plan, the bankruptcy court confirmed a plan that included a release of claims against the debtor's directors, attorneys and insurers who were potential joint tortfeasors with the debtor and channeled those claims to a trust. The bankruptcy court held that a suit against the released parties would affect the reorganization in one way or another, including by way of indemnity or contribution. *Id.* at 701.

4

It held that section 105(a) gives the court the "power to issue any order, process or judgment that is necessary or appropriate to carry out the provision of this title and confers equitable powers upon the courts." *Id.* The Fourth Circuit considered the following five factors in approving the non-debtor release.

> (1)The reorganization plan, which included the injunction, was approved by over 94% of the claimants; (2) The plan provided for full payments of creditors' claims; (3) The injunction affected only about 1.5% of the claimants; (4) The release was "essential" to the plan that claimants either resort to the source of funds for them in the plan or not be permitted to interfere with the reorganization and thus with all other creditors; and (5) The entire reorganizations hinged on the debtor being free from indirect claims such as suits against parties who would have indemnity or contribution claims against the debtor.

*Id*. at 702.

### b. The Second Circuit

In 1992, the Second Circuit approved a settlement agreement that released non-debtor third-parties in the bankruptcy case of the securities brokerage firm Drexel Burnham Lambert Group resulting from the junk bond collapse and class action suits. *SEC v. Drexel Burnham Lambert Group, Inc., (In re Drexel Burnham Lambert Group, Inc),* 960 F.2d 285 (2nd Cir. 1992). The settlement agreement enjoined some of the class from bringing future actions against the debtor's directors and officers.

The court relied on *In re A.H. Robins*, and held that "a court may enjoin a creditor from suing a third-party, provided the injunction plays an important part in the debtor's reorganization plan. *Id.* at 293. The court held that "the settlement agreement is unquestionably an essential element of [the debtor's] ultimate reorganization. In turn, the injunction is a key component of

the settlement agreement." *Id*. The injunction was essential because it limited the number of lawsuits that may be brought against the debtor's former directors and officers. *Id*.

In 2005, the Second Circuit set out factors that will guide courts in determining whether a non-debtor release is appropriate. *Deutsche Bank v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*)*,* 416 F.3d 136 (2nd Cir. 2005). Certain creditors in that case appealed the bankruptcy court order confirming a plan, arguing that the plan improperly released and shielded certain non-debtors from suit by the creditors.

The Second Circuit held, consistent with *Drexel*, that a court may enjoin a creditor from suing a third party provided the injunction plays an important part in the debtor's reorganization plan. *Id.* at 142. A non-debtor release may be approved where there is a finding of truly unique circumstances, which include: (1) global settlement; (2) massive liabilities against the debtor and co-liable parties; (3) substantial financial contributions from non-debtor co-liable parties provided compensation to claimants in exchange for the releases of their liabilities; and (4) the release made the reorganization feasible. *Id.* The court remanded the case because the bankruptcy court's findings were insufficient to show truly unusual circumstances and that the release terms were important to the success of the plan.

### c.  *The Eleventh Circuit*

The Eleventh Circuit ruled on the non-debtor release issue in *Munford v. Mundford, Inc. (In re Munford, Inc.),* 97 F.3d 449 (11th Cir. 1996). The debtor entered into a settlement agreement to settle claims against one of the defendants in an adversary proceeding in exchange for the bankruptcy court's issuance of a protective order permanently enjoining the officers, directors, shareholders and the non-settling defendants from pursing contribution or

6

indemnification claims against the settling defendant pursuant to Rules of Bankr. P. 9019(a), 11 U.S.C. § 105(a) and Fed. R. of Civ. P. 16. *Id.* at 452. The bankruptcy court approved the settlement agreement and the non-settling defendants appealed arguing that the bankruptcy court did not have subject matter jurisdiction over the non-settling defendants' unasserted state law contribution and indemnity claims and that the bankruptcy court did not have authority to enter the settlement's bar order.

The Eleventh Circuit held that the bankruptcy court had jurisdiction over the non-settling defendants' claims in order to enter a settlement bar order because there was a 'nexus' between the barred claims and the bankruptcy estate. *Id*. at 454. It also held that section 105(a) and Fed. Rule of Civ. Pr. 16 taken together provide ample authority for the bankruptcy court to enter a bar order in aid of settlement when such bar orders play an integral role in facilitating settlement. *Id.* at 455. The court laid out three justifications for such bar order: (1) public policy strongly favors pretrial settlement of all types of litigation; (2) litigation costs are particularly burdensome on a bankruptcy estate given the financial instability of the estate; and (3) bar orders play an integral role in facilitating settlement. *Id*.

### d. The Sixth Circuit

The Sixth Circuit also approved a release of non-debtors in a plan of reorganization in a case involving class action personal injury claims against a supplier and manufacturer of silicone gel breast implants. *Class Five Nevada Claimants v. Dow Corning Corp. (In re Dow Corning Corp.),* 280 F. 3d 648 (6th Cir. 2001). The plan required Dow's insurers and shareholders to make available funds to a trust in exchange for releasing them from their liability on claims arising out of settled personal injury claims, permanently enjoining any party holding a claim

7

released against Dow from bringing an action related to that claim against Dow's insurers or shareholders. The court held:

> [T]he Bankruptcy Code does not explicitly prohibit or authorize a bankruptcy court to enjoin a non-consenting creditor's claims against a non-debtor to facilitate a reorganization plan. However, bankruptcy courts, "as courts of equity, have broad authority to modify creditor-debtor relationships"... Consistent with section 105(a)'s broad grant of authority, the Code allows bankruptcy courts considerable discretion to approve plans of reorganization. Section 1123(b)(6) permits a reorganization plan to "include any appropriate provision not inconsistent with the applicable provisions of this title."

*Id.* at 656. (internal citations omitted). The court held that such injunction is not inconsistent with the Code but enjoining a non-consenting creditor's claim is only appropriate in 'unusual circumstances.' Seven factors help determine whether enjoining a non-consenting creditor's claim against a non-debtor is appropriate:

> (1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2) the non-debtor has contributed substantial assets to the reorganization; (3) the injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4) the impacted class, or classes, has overwhelmingly voted to accept the plan; (5) the plan provides a mechanism to pay for all, or substantially all of the class or classes affected by the injunction; (6) the plan provides an opportunity for those claimants who choose not to settle to recover in full; and (7) the bankruptcy court made a record of specific factual finding that support its conclusions.

*Id*. at 658.  The court remanded the case because the record did not include sufficient findings of fact on some of these factors and the court made erroneous finding on others.

**2. Circuits that Require Consent for Third-party Releases**

Some circuits allow the use of releases of non-debtors in reorganization plans, but require the consent by all parties.

### a. The D.C. Circuit

*In re AOV Industries, Inc*, the D.C. Circuit held that a plan can properly include provisions that are based upon individual creditors executing voluntary releases of guarantees. 792 F.2d 1140 (D.C. Cir. 1986). However, in this case "there is a disparate treatment when members of a common class are required to tender more valuable consideration-be it their claim against specific property of the debtor or some other cognizable chose in action in exchange for the same percentage of recovery." *Id.* at 1152. It held that to the extent that a creditor was called upon to release a unique and direct claim in order to participate in the fund, the creditor was subjected to unequal treatment in violation of 11 U.S.C. 1123(a)(4). *Id*.

### b. The Seventh Circuit

In *the Matter of Specialty Equipment Co.,* the Seventh Circuit affirmed the bankruptcy court's order confirming a plan of reorganization that released third-party non-debtors when each creditor voted to accept the plan. 3 F.3d 1043 (7th Cir. 1993). A group of creditors who were holders of debentures issued by the chapter 11 debtor objected to confirmation of a plan that provided for the release of third party non-debtors by each creditor voting to accept that plan. The court held that "as a preliminary matter… a bankruptcy court does have the power to determine the legality of provisions, including releases, incorporated into a reorganization plan." *Id.* at 1045. It stated that though section 524(e) has been interpreted to preclude the discharge of guarantors, the statute does not by its specific word preclude releases that are accepted and

9

confirmed as an integral part of the reorganization. *Id.* It stated that "unlike the injunction created by the discharge of a debt, a consensual release does not inevitably bind individual creditors. It binds only those creditors voting in favor of the plan of reorganization." *Id.*

### 3. Circuits Where Non-debtor Releases are Neither Allowed nor Disallowed but May Be Possible.

Some courts have neither allowed nor disallowed a third-party release but described circumstances under which such releases may be appropriate.

#### a. The Fifth Circuit

In *Feld v. Zale Corp., (The Matter of Zale Corp)*, the debtor, the committee of unsecured creditor, the debtor's directors, other third parties and insurers settled claims against the debtor's directors and officers. 62 F.3d 746 (5th Cir. 1995). The plan released third-party claims against other third parties. The bankruptcy court approved the settlement and certain third-parties whose claims were released appealed.

The Fifth Circuit held that the non-debtor release provisions were beyond the scope of the bankruptcy court's subject matter jurisdiction. It held that the bankruptcy court did not have the subject matter jurisdiction to enjoin the tort claims against non-debtors because the claims were not paid out of the estate; the claims would not have affected the bankruptcy estate even if it affects the debtor. The court held that permanent injunctions of third-party claims could be appropriate when the claims are channeled to a trust to allow recovery from separate assets as opposed to simply releasing them and leaving them without any remedy.

### b. *The Third Circuit*

In an apparent retreat from its decision in *First Fidelity Bank v. McAteer (In re McAteer)*, 985 F.2d 114 (3rd Cir. 1993), the Third Circuit in *Gillman v. Continental Airlines (In re Continental Airlines)*, reversed the bankruptcy court's confirmation of a plan because the court did not make specific findings regarding its jurisdiction, substantive legal authority or factual basis to justify the release provision of the plan that permanently enjoined shareholders' lawsuits against debtor's present and former directors. 203 F.3d 203 (3rd Cir. 2000). Because it was not made an issue on appeal, the court did not rule on the issue of non-consensual releases and permanent injunctions of non-debtor obligations. The court specifically and narrowly held that the provision in the debtor's plan releasing and permanently enjoining plaintiff's lawsuit against the non-debtor defendants was not appropriate even under the most flexible tests for non-debtor release established by other circuits, such as in extraordinary situations like the mass tort claims against parties who contributed substantial assets to a trust to which those claims were channeled. *Id*. at 216. It held that "the hallmarks of permissible non-consensual releases-fairness, necessity to the reorganization, and specific factual findings to support these conclusions are absent here." *Id*. at 214. It held that there were no findings of fact whether release was fair to the appellants (or they were given reasonable consideration) and necessary to the debtor's reorganization.

### 4. Circuits Where Non-debtor Release is Not Allowed

### a. *The Tenth Circuit*

The Tenth Circuit rejected a non-debtor release in *Landsing Diversified Pro. v. First National Bk. and Trust Co. of Tulsa (In re Western Real Estate Fund)*. 922 F.2d 592 (10th Cir.

11

1990). The bankruptcy court granted an injunction against a party who sued a third-party that settled with a debtor.

The Tenth Circuit looked at other circuits that allowed non-debtor releases and noted that those circuits "do not support the issuance of an injunction with respect to state proceedings brought against a non-debtor who simply may seek indemnification from yet another non-debtor." *Id.* at 599. The permanent injunction improperly insulated non-debtors in violation of section 524(e). It held that discharge injunction provided for in section 524(a) already frees the debtor from potential derivative claims, such as indemnification or subrogation, which might arise from the creditor's post-confirmation attempts to recover the discharged debt from others. *Id.* at 600. A temporary injunction against the third-party was warranted during the pendency of the bankruptcy case but not permanent injunction.

### b. The Ninth Circuit

In *Undehill v. Royal,* the Ninth Circuit held that the bankruptcy court has no power to discharge the liabilities of a non-debtor even pursuant to the consent of creditors as part of a reorganization plan. 769 F.2d 1426 (9th Cir. 1985). It held that the broad language of 524(e) limits the scope of a discharge so that it does not affect the liability of any other entity." *Id* at 1432.

In *American Hardwoods, Inc. v. Deutsche Credit Corp.*, the court affirmed the bankruptcy court's denial of a permanent injunction against a creditor for the benefit of third-party non-debtor principals of the debtor for debts they personally guaranteed. 885 F.2d 621 (9th Cir. 1989). The court held the bankruptcy court has no power to discharge the liabilities of a debtor's guarantor. The bankruptcy court can affect only the relationships of debtors and

creditors and has no power to affect the obligations of guarantors. Section 524(e) limits the court's equitable power under section 105 to order the discharge of the liabilities of non-debtors. The court held that a release and permanent injunction are indistinguishable from a bankruptcy discharge. The court held that even if it were to apply *In re A.H. Robins*, the result would be the same because of the lack of the unusual facts present in that case.

In *Resorts International v. Lawenshuss (In re Lowenschuss),* the Ninth Circuit affirmed the district court's decision that vacated the bankruptcy court's order approving a global release provision in the plan which released claims against non-debtors. 67 F.3d 1394 (9th Cir. 1995). The court held that section 524(e) without exception "precludes bankruptcy courts from discharging the liabilities of non-debtors" *Id*. at 1401. The general equitable power as provided in section 105 does not permit the bankruptcy court to discharge the liabilities of non-debtors. The court cited its *American Hardwood* decision as "clear language…where we expressly declined to adopt the approach set forth in *in re A.H. Robins*." *Id*. at 1402. It held the bankruptcy court lacks the power to confirm a plan of reorganization which does not comply with applicable provisions of the Bankruptcy Code.

### 5. A Rule For This Case

First of all, this is not a question of jurisdiction. Subject matter jurisdiction is grounded in 28 U.S.C. § 1334 which grants the court jurisdiction over bankruptcy cases and proceedings that arise under the Bankruptcy Code, arise in a bankruptcy case or are related to a bankruptcy case. There can be no doubt that confirming a plan and issuing the proposed channeling injunction fall within the ambit of one or more of these grants of jurisdiction.

Sexual abuse victims have filed claims and been served with copies of the debtor's plan, so there can similarly be no doubt that the court has personal jurisdiction over them and their claims.

The real question is whether the provisions in the debtor's plan and the enforcement or the implementation of the plan by the channeling injunction are illegal as violative of the Bankruptcy Code or for some other reason.

Second, while the Ninth and Tenth Circuit cases are frequently cited for the proposition that third party releases are never allowed, I doubt that is what the cases really stand for.  It has always been true that a creditor is free to release or otherwise forego the liability of any party, either outside bankruptcy or as part of a bankruptcy plan.  For example, occasionally in a plan, a creditor of a corporate debtor will, as part of a plan, release the liability of an individual officer, director, or guarantor of the corporate debtor.  Certainly it is free to do that and could hardly be error for a bankruptcy court to confirm a plan that had such a provision which had been agreed to by the creditor.  A case like this one is much more dramatic, of course, because there are so many claimants and the claims that they are being asked to give up are far from ordinary commercial claims.  However, if every single sexual abuse victim who filed a claim, also affirmatively accepted the debtor's plan, I doubt that we would be having this discussion.  Certainly such a plan would be confirmable, absent other infirmities.  So the question really becomes:  can a creditor, as part of a chapter 11 plan, be forced to give up its claim against a non-debtor?  If so, under what circumstances?

Third, a confirmed plan with such a provision does not violate the Bankruptcy Code as some courts have suggested.  Clearly, § 524(a) creates an injunction only as to debts owed by the

14

debtor and § 524(e) makes it clearer that the "discharge of the debt of the debtor does not affect the liability of any other entity, or the property of any other entity for, such debts."  From that, it is clear that the debts, if any, of the Catholic entities to the sexual abuse victim would not be discharged by §§ 1141 or 524.  But neither of those sections or any other sections prohibit such a provision in a plan nor make a plan containing such provision, per se, unconfirmable.  I agree with the Sixth Circuit when it said:

> The Bankruptcy Codes does not explicitly prohibit or authorize a bankruptcy court to enjoin a non-consenting creditor's claims against a non-debtor to facilitate a reorganization plan.  *In re Continental Airlines,* 203 F.3d 203, 211 (3d. Cir. 2000).  However, bankruptcy courts, "as courts of equity, have broad authority to modify creditor-debtor relationships."  *United States v. Energy Resources Co.,* 495 U.S. 545, 549, 110 S. Ct. 2139, 109 L.Ed.2d 580 (1990).  For example, section 105(a) of the Bankruptcy Code grants a bankruptcy court the broad authority to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. §105(a).  This section grants the bankruptcy court the power to take appropriate equitable measures needed to implement other sections of the Code.  *See In re Granger Garage, Inc.,* 921 F.2d 74, 77 (6th Cir. 1990).

*In re Dow Corning Corp., supra* at 656.  I conclude, therefore, that such provisions are permissible and that plans containing third party releases can be confirmed under appropriate circumstances.

I agree that the circumstances under which they should be confirmed, should be the exception and approved only in rare circumstances.  As stated by the Second Circuit, "no case has tolerated non debtor releases absent the finding of circumstances that may be characterized as unique." *In re Metro Media Fiber*, 416 F.3d at 142.  Borrowing some of the standards from some of the Courts of Appeals that have addressed this issue, I conclude that to confirm such a plan, the debtor must show (1) large or numerous liabilities against the debtor and the co-liable

15

parties to be released, (2) a substantial contribution from the non-debtor co-liable parties, (3) the importance of the third party releases to the reorganization process, and (4) significant acceptance of the plan by the group of creditors who are being asked to give up their claims against third parties. In this context, significant certainly means more than the half required by § 1126 for a class to accept a plan. I cannot and need not decide how much more at this point.

While I think that the first three criteria have been met in this case, clearly the fourth has not. In fact, the class of sexual abuse victims has overwhelmingly rejected the debtor's plan. The creditors committee's objection on this issue is sustained.

### A. The Debtor's Compliance With the Applicable Provisions of the Bankruptcy Code

In its preliminary objection to confirmation, the creditors committee had a list of provisions of the Bankruptcy Code that it claimed the debtor did not comply with--some of which did not even apply to the debtor. It now focuses on § 704(a)(7)'s requirement that a trustee and thus a debtor-in-possession is required to "furnish such information concerning the estate and the estate's administration as is requested by a party in interest." This objection is pretextual at best. Clearly, the committee and the debtor are adversaries in this case, more so every day. When there is an actual contested matter, the committee has a full panoply of discovery options available to it. If it is simply looking for information, it can make a request for an examination under Fed. R. Bankr. P. 2004. This objection is overruled.

### B. Good Faith

Throughout this case, attacks on the debtor's honesty, veracity, good faith, and general bona fides have been go-to arguments for the committee. So far these allegations have been baseless and have certainly not been helpful in resolving the case. The same is true here. In

16

large part, this objection is based on the debtor's treatment of sexual abuse victims prior to filing this case. While the record in this case reflects only some of this conduct, the public record certainly demonstrates that for decades the response by officials of the Archdiocese to the sexual abuse of children was disgraceful. That same record indicates that the debtor is taking steps to do better and to remedy some of those wrongs. The fact that the committee finds those attempts to be insufficient may well prompt its constituents to reject the debtor's plan, but it certainly is not evidence of the debtor's bad faith.

Another major basis for the committee's charges of bad faith is the committee's contention that the debtor could pay more. Whether that is factually true remains to be seen. However, a debtor's failure to pay creditors the as much as they want is hardly unheard of and is, in fact, probably the rule rather than the exception. The vast majority of chapter 11 cases are resolved by compromise, with the debtor left feeling it is paying more than it can afford or is legally required to and creditors left feeling they should have or could have received more. Again, the debtor and committee are adversaries in this case. While a perception by the committee that the debtor is able to contribute more to unsecured creditors is grounds for objecting to confirmation, it is not an indication that a plan is not proposed in good faith.

Other examples of the debtor's lack of good faith are similarly based on the committee's disagreement with the debtor. It is also offended that the debtor settled with some insurers without its agreement. I reject the committee's apparent position that anytime the debtor disagrees with the committee, that the debtor must be acting in bad faith and overrule its objection to the good faith of the debtor's plan.

CONCLUSION

Based on the foregoing, I conclude that the debtor's plan is unconfirmable,

THEREFORE, IT IS ORDERED: Confirmation of the debtor's plan dated and filed on December 19, 2016, is denied.

/e/ Robert J. Kressel

ROBERT J. KRESSEL
UNITED STATES BANKRUPTCY JUDGE