IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:

Case No. 15-30125

THE ARCHDIOCESE OF SAINT PAUL
AND MINNEAPOLIS

Chapter 11

Debtor.

---

## THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF THE ARCHDIOCESE OF SAINT PAUL AND MINNEAPOLIS

---

BRIGGS AND MORGAN
Richard D. Anderson (#002306)
Charles B. Rogers (#130588)
Lauren E. Lonergan (#143443)
Benjamin E. Gurstelle (#0389968)
2200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
randerson@briggs.com
crogers@briggs.com
llonergan@briggs.com
bgurstelle@briggs.com
Telephone: 612-977-8400
Facsimile: 612-977-8650

Attorneys for The Archdiocese Of
Saint Paul and Minneapolis, Debtor and
Debtor in Possession

STINSON LEONARD STREET
Robert T. Kugler (#194116)
Edwin H. Caldie (#388930)
Phillip J. Ashfield (#388990)
Brittany M. Michael (#397592)
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
robert.kugler@stinson.com
ed.caldie@stinson.com
phillip.ashfield@stinson.com
brittany.michael@stinson.com
Telephone: 612-335-1500
Facsimile: 612-335-1657

Attorneys for the Official Committee of
Unsecured Creditors for the
Archdiocese of Saint Paul and
Minneapolis

Dated: September 19, 2018

# TABLE OF CONTENTS

ARTICLE I DEFINITIONS AND INTERPRETATION .................................................................1
1.1.   DEFINED TERMS ......................................................................1
1.2.   INTERPRETATION ...................................................................14
1.3.   TIME PERIODS ........................................................................15
1.4.   EXHIBITS AND SCHEDULES ..................................................15

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS ....................................................16
2.1.   ADMINISTRATIVE CLAIMS ...................................................16
2.2.   STATUTORY FEES ....................................................................17
2.3.   PRIORITY TAX CLAIMS ..........................................................17

ARTICLE III CLASSIFICATION OF CLAIMS ........................................................................17
3.1.   SUMMARY ................................................................................17
3.2.   CLASSIFICATION AND VOTING ............................................18

ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS .........................................................19
4.1.   PRIORITY CLAIMS (CLASS 1) .................................................19
4.2.   GOVERNMENTAL UNIT CLAIMS (CLASS 2) .........................19
4.3.   GIF AND AMBP CLAIMS (CLASS 3) ........................................19
4.4.   ARCHDIOCESE OF SAINT PAUL AND MINNEAPOLIS PRIESTS' PENSION PLAN CLAIMS (CLASS 4) ...............................20
4.5.   ARCHDIOCESE OF SAINT PAUL AND MINNEAPOLIS LAY EMPLOYEES' PENSION PLAN CLAIMS (CLASS 5) .................20
4.6.   TORT CLAIMS OTHER THAN FUTURE TORT CLAIMS (CLASS 6)...........20
4.7.   FUTURE TORT CLAIMS (CLASS 7)...........................................22
4.8.   INTER-PARISH LOAN FUND AND ASSESSMENT OVERPAYMENT CLAIMS (CLASS 8) ..........................................23
4.9.   TRADE VENDOR CLAIMS (CLASS 9A and 9B) ........................24
4.10.  SECURED CLAIM OF PREMIER BANK (CLASS 10)..................25
4.11.  GUARANTY CLAIMS (CLASS 11) .............................................25
4.12.  HASELBERGER CLAIM (CLASS 12) .........................................25
4.13.  ABUSE RELATED CONTINGENT CLAIMS (CLASS 13).............25
4.14.  OTHER UNSECURED CLAIMS (CLASS 14)...............................26
4.15.  PENALTY CLAIMS (CLASS 15) .................................................26
4.16.  PRIEST SUPPORT PAYMENTS (CLASS 16)...............................26

-i-

# TABLE OF CONTENTS

(continued)

**Page**

4.17. SECURED CLAIM OF NORTH AMERICAN BANKING COMPANY BANK (CLASS 17) .................................................................26

4.18. SECURED CLAIM OF BREMER BANK (CLASS 18) ....................................27

ARTICLE V MEANS OF IMPLEMENTATION OF THE PLAN ...........................................27

5.1. TRUST FORMATION AND FUNDING .............................................................27

5.2. PAYMENT OF PROFESSIONAL FEES .............................................................30

5.3. PAYMENT AND TREATMENT OF CLAIMS OTHER THAN TORT CLAIMS ...........................................................................................................30

5.4. APPROVAL OF SECTION 363 SALES ..............................................................30

5.5. APPROVAL OF SETTLEMENT AGREEMENTS ..............................................30

5.6. PAYMENTS EFFECTIVE UPON TENDER .......................................................31

ARTICLE VI TRUST ........................................................................................................31

6.1. ESTABLISHMENT OF TRUST .........................................................................31

6.2. ALLOCATIONS WITHIN AND DISTRIBUTIONS AND PAYMENTS FROM THE TRUST ...........................................................................................31

6.3. TAX MATTERS ..................................................................................................32

6.4. APPOINTMENT OF THE TRUSTEE ................................................................32

6.5. RIGHTS AND RESPONSIBILITIES OF TRUSTEE .........................................32

6.6. SPECIAL DISTRIBUTION CONDITIONS .......................................................33

6.7. INVESTMENT POWERS; PERMITTED CASH EXPENDITURES .................37

6.8. REGISTRY OF BENEFICIAL INTERESTS ......................................................37

6.9. NON-TRANSFERABILITY OF INTERESTS ....................................................37

6.10. TERMINATION ..................................................................................................37

6.11. IMMUNITY; LIABILITY; INDEMNIFICATION .............................................37

6.12. TREATMENT OF TORT CLAIMS ....................................................................39

ARTICLE VII SETTLING INSURERS ..................................................................................41

7.1. INSURANCE SETTLEMENT AGREEMENTS .................................................41

7.2. RESOLUTION OF CLAIMS INVOLVING SETTLING INSURERS ...............41

7.3. THE SETTLING INSURERS' PAYMENTS .......................................................41

7.4. JUDGMENT REDUCTION ................................................................................41

7.5. ADDITIONAL DOCUMENTATION; NON-MATERIAL MODIFICATIONS ...............................................................................................42

7.6. TRUST INDEMNIFICATION OBLIGATIONS. ................................................42

-ii-

# TABLE OF CONTENTS

(continued)

**Page**

7.7.   CATHOLIC ENTITY/ OTHER INSURED ENTITY/ SEMINARIES WAIVER/ CONSENT/ FEES ...............................................43

7.8.   DEBTOR WAIVER AND RELEASE OF CLAIMS ..........................................44

7.9.   PROTECTED PARTY INJUNCTION DEFENSE COSTS. ..............................45

ARTICLE VIII ESTIMATIONS/ASSESSMENTS ...................................................45

8.1.   ESTIMATIONS/ASSESSMENTS ARE NOT BINDING ...............................45

ARTICLE IX OTHER SETTLEMENTS EMBODIED IN PLAN ...........................45

9.1.   AMBP SETTLEMENT.....................................................................................45

9.2.   RILEY FUND SETTLEMENT ........................................................................46

9.3.   GIF SETTLEMENT ..........................................................................................46

9.4.   HIGH SCHOOLS LAND SALE SETTLEMENT ..........................................47

ARTICLE X INSURANCE POLICIES......................................................................48

10.1.   CONTINUATION OF INSURANCE POLICIES ...........................................48

ARTICLE XI PROCEDURES FOR GENERAL CLAIMS ADMINISTRATION ....48

11.1.   RESERVATION OF RIGHTS TO OBJECT TO NON-TORT CLAIMS...........48

11.2.   OBJECTIONS TO NON-TORT CLAIMS .........................................................48

11.3.   DETERMINATION OF CLAIMS ...................................................................49

11.4.   NO DISTRIBUTIONS PENDING ALLOWANCE..........................................49

11.5.   CLAIM ESTIMATION.....................................................................................49

ARTICLE XII DISTRIBUTIONS UNDER THE PLAN ..........................................50

12.1.   PAYMENT DATE.............................................................................................50

12.2.   UNDELIVERABLE DISTRIBUTIONS ..........................................................50

12.3.   SETOFFS .........................................................................................................50

12.4.   NO INTEREST ON CLAIMS..........................................................................50

12.5.   WITHHOLDING TAXES ................................................................................51

ARTICLE XIII EFFECTIVENESS OF THE PLAN..................................................51

13.1.   CONDITIONS TO OCCURRENCE OF EFFECTIVE DATE..........................51

13.2.   NOTICE OF EFFECTIVE DATE....................................................................51

13.3.   EFFECT OF NON-OCCURRENCE OF CONDITIONS..................................51

ARTICLE XIV EFFECTS OF CONFIRMATION ....................................................52

14.1.   DISSOLUTION OF COMMITTEES ...............................................................52

14.2.   DISCHARGE AND INJUNCTION .................................................................52

-iii-

# TABLE OF CONTENTS

(continued)

Page

14.3. CHANNELING INJUNCTION ..........................................................52

14.4. EXCULPATION; LIMITATION OF LIABILITY .............................54

14.5. SETTLING INSURER SUPPLEMENTAL INJUNCTION ..................54

14.6. INSURANCE SETTLEMENT AGREEMENT INJUNCTIONS ........55

14.7. TIMING.............................................................................................55

14.8. NO BAR ON CERTAIN CLAIMS ...................................................55

ARTICLE XV INCORPORATION OF CHILD PROTECTION PROTOCOLS.......56

15.1. RAMSEY COUNTY AGREEMENT ................................................56

ARTICLE XVI THE REORGANIZED DEBTOR ................................................56

16.1. CONTINUED CORPORATE EXISTENCE ......................................56

16.2. VESTING OF ASSETS .....................................................................56

16.3. IDENTITY OF OFFICERS OF REORGANIZED DEBTOR .............56

16.4. FURTHER AUTHORIZATION .........................................................57

ARTICLE XVII MISCELLANEOUS PROVISIONS.................................................57

17.1. RETENTION OF JURISDICTION....................................................57

17.2. BANK MORTGAGES AND LIENS .................................................59

17.3. CONTINUATION OF FUTURE CLAIMANT REPRESENTATIVE...............59

17.4. ASSUMPTION OF EXECUTORY CONTRACTS ...........................60

17.5. INDEMNIFICATION OF MEMBERS, MANAGERS, OFFICERS, AND EMPLOYEES..............................................................................60

17.6. LEASE CLAIM INDEMNITY ..........................................................60

17.7. DEFENSE AND INDEMNITY FOR COVERED NON-TORT CLAIMS..........60

17.8. RESERVATION OF RIGHTS ............................................................61

17.9. NON-APPEALABLE ORDER ..........................................................61

17.10. AMENDMENTS AND MODIFICATIONS.......................................61

17.11. U.S. TRUSTEE REPORTS ................................................................61

17.12. NO WAIVER ....................................................................................61

17.13. TAX EXEMPTION ...........................................................................61

17.14. NON-SEVERABILITY .....................................................................62

17.15. REVOCATION .................................................................................62

17.16. CONTROLLING DOCUMENTS .....................................................62

17.17. GOVERNING LAW..........................................................................62

CORE/3003233.0002/140935489.11

## TABLE OF CONTENTS
(continued)

**Page**

17.18. NOTICES ..................................................................................62

17.19. FILING OF ADDITIONAL DOCUMENTS ....................................................63

17.20. POWERS OF OFFICERS ..................................................................63

17.21. DIRECTION TO A PARTY ................................................................63

17.22. SUCCESSORS AND ASSIGNS ..............................................................63

17.23. CERTAIN ACTIONS ....................................................................63

17.24. FINAL DECREE ........................................................................64

17.25. PLAN AS SETTLEMENT COMMUNICATION ...................................................64

17.26. OTHER RIGHTS ........................................................................64

ARTICLE XVIII BANKRUPTCY RULE 9019 REQUEST ..................................................64

ARTICLE XIX CONFIRMATION REQUEST............................................................64

## EXHIBITS AND SCHEDULES

| | |
|---|---|
| EXHIBIT A | RESERVED |
| EXHIBIT B | RESERVED |
| EXHIBIT C | GUARANTY OBLIGATIONS |
| EXHIBIT D | TRUST AGREEMENT AND TRUST DISTRIBUTION PROCEDURES |
| EXHIBIT E | RELEASE |
| EXHIBIT F | RESERVED |
| EXHIBIT G | RESERVED |
| EXHIBIT H | LIST OF CURRENT PARISHES |
| EXHIBIT I | KNOWN ARCHDIOCESE ENTITY INSURANCE POLICIES |
| EXHIBIT J | OFFICERS AND DIRECTORS OF REORGANIZED DEBTOR |
| EXHIBIT K | SETTLEMENT AGREEMENT WITH RAMSEY COUNTY ATTORNEY'S OFFICE |
| EXHIBIT L(1) | LIST OF ARCHDIOCESAN SETTLING INSURERS |
| EXHIBIT L(1)-A | FIRST LIST OF KNOWN ARCHDIOCESE SETTLING INSURER ENTITY POLICIES |
| EXHIBIT L(2) | LIST OF PARISH SETTLING INSURERS |
| EXHIBIT L(3) | LIST OF SEMINARY SETTLING INSURERS |
| EXHIBIT M | LIST OF CATHOLIC ENTITIES |
| EXHIBIT N | SECOND LIST OF KNOWN ARCHDIOCESE SETTLING INSURER ENTITY POLICIES AND LIST OF OTHER INSURED ENTITIES |
| SCHEDULE 1 | LIST OF CLASS 3 CLAIMANTS |
| SCHEDULE 2 | LIST OF CLASS 8 CLAIMANTS |
| SCHEDULE 3 | TRADE VENDOR CLAIMS |

CORE/3003233.0002/140935489.11

## INTRODUCTION

The Official Committee of Unsecured Creditors and the Archdiocese of Saint Paul and Minneapolis, the debtor and debtor in possession in the above-captioned Chapter 11 case, propose this Joint Chapter 11 Plan of Reorganization (the "Plan") pursuant to the provisions of the Bankruptcy Code.

All creditors are encouraged to consult the disclosure statement for the Chapter 11 Plan of Reorganization (the "Disclosure Statement"), before voting to accept or reject this Plan. Among other information, the disclosure statement contains discussions of the Archdiocese of Saint Paul and Minneapolis (the "Archdiocese" or "Debtor"), events prior to and during this Chapter 11 case, and a summary and analysis of the Plan. No solicitation materials, other than the disclosure statement, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

The Bankruptcy Court has scheduled the confirmation hearing for approval of the Plan at 10 a.m. on September 25, 2018.

# ARTICLE I
## DEFINITIONS AND INTERPRETATION

      **1.1.**    **DEFINED TERMS.** For the purposes of the Plan, except as expressly provided, all capitalized terms not otherwise defined herein  have the meanings ascribed to them below:

1. "Abuse" means (i) any actual or alleged sexual conduct, misconduct, abuse, or molestation, including actual or alleged "sexual abuse" as that phrase is defined in Minnesota Statutes Section 541.073(1); (ii) indecent assault or battery, rape, lascivious behavior, undue familiarity, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm; (iii) contacts or interactions of a sexual nature; or (iv) assault, battery, corporal punishment, or other act of physical, psychological, or emotional abuse, humiliation, intimidation, or misconduct.

2. "Administrative Claim" means a claim for costs and expenses of administration that is allowable and entitled to priority under Sections 503, 507 (a)(2), or 507 (b) of the Bankruptcy Code, including any post-petition tax claims, any actual and necessary expenses of preserving the Estate, any actual and necessary expenses of operating the business of the Debtor, all Professional Claims, and any fees or charges assessed against the Estate under 28 U.S.C. § 1930.

3. "Allowed Professional Claim" means a Professional Claim for which the Bankruptcy Court has entered an Order, which has become a Non-Appealable Order allowing the relevant Fee Application.

4. "AMBP" or "Archdiocese Medical and Dental Plan" means the Archdiocese medical and dental benefit plan described in the motion filed by the Archdiocese with the Bankruptcy Court on or about January 16, 2015 (Docket No. 15).

5. "Annual Appeal" means Catholic Annual Appeal Foundation.

6. "Approval Order" means an order of the Bankruptcy Court approving one or more Insurance Settlement Agreements as such order may be awarded, modified, or supplemented.

7. "Archdiocese" and "Archdiocesan" refers to the Archdiocese of St. Paul and Minneapolis, which is the diocesan corporation formed pursuant to Minnesota Statutes Section 315.16 that is the public juridic person of the Roman Catholic Archdiocese of Saint Paul and Minneapolis, as now constituted or as it may have been constituted, and the Estate (pursuant to section 541 of the Bankruptcy Code).

8. "Archdiocesan Insurance Policy(ies)" means a) all policies or certificates of insurance listed on Exhibit L(1)-A or Exhibit N; and b) any and all other known and unknown contracts, binders, certificates, or policies of insurance, including all of the insurance policies mentioned or referred to in any Archdiocese Insurance Settlement Agreement, in effect on or before the Effective Date that were issued to, allegedly issued to, or for the benefit of, or subscribed on behalf or that otherwise actually, allegedly, or potentially insure, the Archdiocese or any of its predecessors in interest, successors or assigns, and that

-1-

actually, allegedly, or could potentially afford coverage with respect to any Tort Claim; provided, however, that if a contract, binder, certificate, or policy of insurance that is not identified on either  Exhibit L(1)-A or Exhibit N and was not issued or subscribed on behalf of or allegedly issued to or subscribed on behalf of the Archdiocese insures or covers both the Archdiocese and any other Person, such contract, binder, certificate, or policy of insurance, as applicable, is an "Archdiocesan Insurance Policy" to the extent it insures or covers the Archdiocese but not to the extent it insures or covers any other Person. With respect to the Certificates issued by Catholic Mutual Relief Society of America ("Catholic Mutual"), the "Archdiocesan Insurance Policies" means the Certificates issued by Catholic Mutual to The Church of the Guardian Angels of Chaska, Minnesota and the Church of the Assumption of Richfield, Minnesota and the Catholic Mutual Certificates listed on Exhibit L(1)-A (and on Exhibit I) to the extent coverages under such certificates are released by the Archdiocese Insurance Settlement Agreement between Catholic Mutual and the Archdiocese.

9.    "Archdiocese Insurance Settlement Agreements" means the settlement agreements between the Archdiocese and/or the Archdiocese Parties and the Archdiocesan Settling Insurers (including the settlement agreement between and among the Archdiocese, the Archdiocesan Parishes, St. Paul Seminary, and Travelers Casualty and Surety Company, hereinafter the "Travelers Settlement Agreement") that will be filed separately as plan supplements and be approved by an order of the Bankruptcy Court that becomes a Non-Appealable Order.

10.  "Archdiocese Other Insured Entities" means any Person, including those Persons listed on Exhibit N, insured or covered or allegedly insured or covered under an Archdiocesan Settling Insurer Entity Policy that was issued or allegedly issued to the Archdiocese, but only with respect to any Claim that would be covered or alleged to be covered under that Archdiocese Settling Insurer Entity Policy but for an Archdiocese Insurance Settlement Agreement, including Tort Claims based on alleged Abuse that occurred in whole or in part during the effective periods of that Archdiocesan Settling Insurer Entity Policy. Notwithstanding the foregoing, "Archdiocese Other Insured Entities" does not include the Archdiocese, the Parishes, or the Seminaries.

11.   "Archdiocesan Parishes" means all past and present parishes of or in the Archdiocese, including any current Diocese of New Ulm parish that was previously a parish of the Archdiocese but only for the time period prior to joining the Diocese of New Ulm. "Archdiocesan Parishes" includes all the parishes identified on Exhibit H.

12.  "Archdiocese Parties" means collectively the Archdiocese and, in their capacity as such: (i) each of the past, present, and future parents, subsidiaries, merged companies, divisions, and acquired companies of the Archdiocese; (ii) any and all named insureds, insureds, additional insureds, covered party, additional covered party, and Protected Person (as such term is defined in the Catholic Mutual Certificates)  under the Archdiocesan Settling Insurer Entity Policies; (iii) each of the foregoing Persons' respective past, present, and future parents, subsidiaries, merged companies, divisions, and acquired companies; (iv) each of the foregoing Persons' respective predecessors, successors, and assigns; and (v) any and all past and present employees, officers, directors, shareholders, principals,

-2-

teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or Persons bound by monastic vows, volunteers, agents, attorneys, and representatives of the Persons identified in the foregoing subsections (i)-(iv). Nothing in the foregoing is intended to suggest that such Persons are "employees" or agents of the Archdiocese or subject to its control. An individual who perpetrated an act of Abuse that forms the basis of a Tort Claim is not an Archdiocese Party as to that Tort Claim. No religious order, diocese, or archdiocese, other than the Archdiocese itself, is an Archdiocese Party, except to the extent such religious order, diocese, or archdiocese is an Archdiocese Other Insured Entity.

13. "Archdiocesan Priest" means a priest ordained by the Archdiocese.

14. "Archdiocesan Settling Insurers" means the Persons listed on Exhibit L(1) whose Insurance Settlement Agreements are approved by an order of the Bankruptcy Court and such order becomes a Non-Appealable Order.

15. "Archdiocesan Settling Insurer Entities" means the Archdiocesan Settling Insurers and each of their past, present and future parents, subsidiaries, affiliates, and divisions; each of the foregoing Persons' respective past, present and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, including the Persons released pursuant to the respective Insurance Settlement Agreements; each of the foregoing Persons' respective past, present and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through or in concert with them.

16. "Archdiocesan Settling Insurer Entity Policies" means any and all Archdiocesan Insurance Policies issued, subscribed to, or underwritten in whole or in part or allegedly issued, subscribed to, or underwritten in whole or in part by an Archdiocesan Settling Insurer Entity.

17. "Archdiocese Entity Insurance Policies" mean the insurance policies that are listed on Exhibit I.

18. "Archdiocese of Saint Paul and Minneapolis Lay Employees' Pension Plan" means the noncontributory multiple employer defined benefit pension plan for the benefit of the Archdiocese's full-time lay employees, together with the employees of those participating employers located within the boundaries of the Archdiocese that chose to adopt the pension plan.

19. "Archdiocese of Saint Paul and Minneapolis Priests' Pension Plan" means the contributory multiple employer defined benefit pension plan for the benefit of priests incardinated in the Archdiocese.

-3-

20. "Assets" of the Archdiocese or the Estate means, collectively, any and all property of the Archdiocese or the Estate, respectively, of every kind and character, wherever located, whether real or personal, tangible or intangible, and specifically including cash (including the residual balance of any reserves established under the Plan, but not the Trust) and Causes of Action.

21. "Ballot" means the ballot, the form of which has been approved by the Bankruptcy Court, accompanying the disclosure statement provided to each holder of a claim entitled to vote to accept or reject the Plan.

22. "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified in Title 11 of the United States Code.

23. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Minnesota.

24. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as currently promulgated.

25. "Beneficiary" means a Class 6 claimant whose claim is not disallowed by the Bankruptcy Court and whose claims are payable under the Trust Distribution Plan; or a Class 7 claimant whose claim is payable under the Trust Distribution Plan when such claimant asserts his or her Class 7 Claims.

26. "Canon Law" means the Code of Canon Law of the Roman Catholic Church, as codified in 1983 and as may hereafter be amended, and all binding universal and particular laws of the Roman Catholic Church.

27. "Catholic Entities" means the Archdiocesan Parishes and those Persons listed on Exhibit M.

28. "Cause of Action" or "Causes of Action" means—except as provided otherwise in the Plan, the Confirmation Order, or any document, instrument, release, or other agreement entered into in connection with the Plan—all claims, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages, judgments, third-party claims, counterclaims, and cross claims of the Archdiocese or its Estate, the Committees, or the Trust (as successor to the Archdiocese or its Estate), including an action that is or may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date against any Person based on law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown,  any action brought pursuant to Sections 522, 541-45, 547-51, and 553 of the Bankruptcy Code; provided, however, that any affirmative defense or cross-claim asserted with respect to a claim shall not be deemed a Cause of Action to the extent that it seeks to disallow or reduce, or is offset against, such claim.

29. "Channeled Claim(s)" means any Tort Claim, any Related Insurance Claim, or any other Claim against any of the Protected Parties or the Settling Insurer Entities that, directly or

-4-

indirectly, arises out of, relates to, or is in connection with any Tort Claim, any Related Insurance Claim, any Class 13 Claims, any Medicare Claim, and any Claim covered by the Channeling and Supplemental Insurer Injunctions in Article XIV.

30. "Channeling Injunction" means the injunction imposed pursuant to Section 14.3 of the Plan.

31.  "Claim" means any past, present or future claim, demand, action, request, cause of action, suit, proceeding or liability of any kind or nature whatsoever, whether at law or equity, known or unknown, actual or alleged, asserted or not asserted, suspected or not suspected, anticipated or unanticipated, accrued or not accrued, fixed or contingent, which has been or may be asserted by or on behalf of any Person, whether seeking damages (including compensatory, punitive or exemplary damages) or equitable, mandatory, injunctive, or any other type of relief, including cross-claims, counterclaims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights, causes of action or orders, and any other claim within the definition of "claim" in section 101(5) of the Bankruptcy Code.

32. "Claim Filing Date" means August 3, 2015.

33. "Committees" means the UCC and Parish Committee.

34. "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

35. "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code which becomes a Non-Appealable Order.

36. "Covered Non-Tort Claim" means any Claim, other than Tort Claims, Related Insurance Claims, or Medicare Claims, for which the Archdiocese, a Catholic Entity, Other Insured Entity, or Seminary would otherwise have coverage under a Settling Insurer Entity Policy but as a result of the sale, transfer, or release by the Debtor, the Catholic Entity or Seminary of such Settling Insurer Entity Policy in connection with an Insurance Settlement Agreement, the Archdiocese, Catholic Entity, Other Insured Entity, or Seminary does not have insurance coverage for such Claim(s).

37. "Disputed" when used with respect to a claim against the Archdiocese or property of the Archdiocese, means a claim:  (i) designated as disputed, contingent or unliquidated in the Debtor's Schedules; (ii) which is the subject of an objection, appeal, or motion to estimate that has been or will be timely filed by a party in interest and which objection, appeal, or motion has not been determined by a Non-Appealable Order; or (iii) which during the period prior to the deadline fixed by the Plan or the Bankruptcy Court for objecting to such claim, is in excess of the amount scheduled as other than disputed, unliquidated, or contingent. The processes for handling "Disputed Claims" do not apply to Class 6 or Class 7 Claims. In the event that any part of a claim is Disputed, such claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under the Plan unless

CORE/3003233.0002/140935489.14

the Debtor or the Reorganized Debtor, as applicable, and the holder thereof agree otherwise. To the extent the term "Disputed" is used in the Plan with respect to a specified class of claims or an unclassified category of claims (i.e., "Disputed [class designation/unclassified claim category] Claim"), the resulting phrase shall mean a Disputed Claim of the specified class or unclassified category of claims.

38. "Distribution Plan Claimants" are Tort Claimants who elect to have their Tort Claim treated by the Tort Claims Reviewer pursuant to the Trust Distribution Plan.

39. "District Court" means the United States District Court for the District of Minnesota.

40. "Effective Date" means the date upon which the conditions in Article XIII of the Plan have been satisfied.

41. "Estate" means the estate created in this Chapter 11 case pursuant to Section 541 of the Bankruptcy Code.

42. "Exculpated Parties" means collectively, (i) the Archdiocese Parties, the Estate, and the Committees; (ii) the respective officers, directors, employees, members, attorneys, financial advisors, members of subcommittees of the board of directors, volunteers, and members of consultative bodies and councils formed under Canon Law of the persons identified in the preceding clause including with respect to their service or participation in an outside board on which they serve at the request of the Archdiocese or the Archbishop, in their capacity as such; (iii) the trustees of the AMBP with respect to the settlement described in Article IX below and (iv) professionals of a Person identified in the preceding clause (i), (ii) or (iii).

43. "Extra-Contractual Claim" means any Claim against any of the Settling Insurer Entities based, in whole or in part, on allegations that any of the Settling Insurer Entities acted in bad faith or in breach of any express or implied duty, obligation or covenant, contractual, statutory or otherwise, including any Claim on account of alleged bad faith; failure to act in good faith; violation of any express or implied duty of good faith and fair dealing; violation of any unfair claims practices act or similar statute, regulation, or code; any type of alleged misconduct; or any other act or omission of any of the Settling Insurer Entities of any type for which the claimant seeks relief other than coverage or benefits under a policy of insurance. Extra-Contractual Claims include: (i) any claim that, directly or indirectly, arises out of, relates to, or is in connection with any of the Settling Insurer Entities' handling of any Claim or any request for insurance coverage, including any request for coverage for any Claim, including any Tort Claim, Class 3 Claim, or Class 12 Claim; (ii) any Claim that, directly or indirectly, arises out of, relates to, or is in connection with any of the Settling Insurer Entity Policies, or any contractual duties arising therefrom, including any contractual duty to defend any of the Protected Parties against any Claim, including any Tort Claims, Class 3 Claim, or Class 12 Claim; and (iii) any Claim that directly or indirectly, arises out of, relates to, or is in connection with the conduct of the Settling Insurer Entities with respect to the negotiation of Insurance Settlement Agreements and the Plan.

-6-

44. "Fee Application" means an application filed with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules for payment of a Professional Claim.

45. "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

46. "Future Claimant Representative" means Judge Michael R. Hogan in accordance with the Bankruptcy Court's February 14, 2017 Order (ECF Doc. 969) and any successor or such other person appointed by the Bankruptcy Court or otherwise.

47. "Future Tort Claim" means any Tort Claim that was neither filed, nor deemed filed, by May 25, 2016, and is held by (i) an individual who was at the time of the Petition Date under a disability recognized by Minn. Stat. § 541.15, subds. 1, 2 and 3 (or other applicable law suspending the running of the limitation period, if any, other than Minn. Stat. § 541.15, subd. 4); (ii) an individual who experienced Abuse through and including the Effective Date and whose Claim is timely under Minn. Stat. § 541.073 subd. 2 as amended in 2013; (iii) an individual who has a Tort Claim that was barred by the statute of limitations as of the Claims Filing Date but is no longer barred by the applicable statute of limitations for any reason, including the enactment of legislation that revises previously time-barred Tort Claims; or (iv) any other individual or class of individuals the Future Tort Claim Representative can identify that would have a Tort Claim on or prior to the Effective Date.

48. "Future Tort Claimant" means the holder of a Future Tort Claim, the estate of a deceased individual who held a Future Tort Claim, or the personal executor or personal representative of the estate of a deceased individual who held a Future Tort Claim, as the case may be.

49. "Future Tort Claim Reserve Fund" means the reserve established for the benefit of Future Tort Claimants pursuant to Section 6.2(b) of the Plan.

50. "GIF" or "General Insurance Fund" means the General Insurance Fund Program maintained by the Archdiocese for hazard and liability claims and workers' compensation claims, as described in the motion filed by the Archdiocese with the Bankruptcy Court on January 16, 2015 (Docket No. 11).

51. "High Schools" means Benilde-St. Margaret's School and De La Salle High School, both organized under Minnesota Statutes Chapter 317A, and Grace High School, d/b/a Totino-Grace High School organized under Minnesota Statutes Chapter 333A.

52. "Insurance Coverage Adversary Proceeding" means the Adversary Proceeding against the Continental Insurance Company and others, commenced by the Archdiocese in Minnesota federal district court and referred to the Bankruptcy Court as Adv. Proceeding No. 15-03013.

53. "Insurance Settlement Agreements" means (i) the Archdiocese Insurance Settlement Agreements, (ii) the settlement agreements between the Archdiocesan Parishes (including any Catholic Entities) and the Parish Settling Insurers; and (iii) the settlement agreements between the Seminaries and Seminary Settling Insurers.

CORE/3003233.0002/140935489.14

54.  "Inter-Parish Loan Fund" means the deposit and loan program established by the Archdiocese to fund loans to participating parishes.

55.  "Interest" means all liens, Claims, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief.

56.  "Lease" means the lease agreement entered into between the Archdiocese and IAF Beacon I, LLC dated as of February 29, 2016, under which the Archdiocese will lease certain office space located at 777 Forest Street, Saint Paul, Minnesota, including all exhibits thereto.

57.  "Lien" means any mortgage, lien, pledge, security interest or other charge or encumbrance or security device of any kind in, upon, or affecting any Asset of the Debtor as contemplated by Section 101(37) of the Bankruptcy Code.

58.  "Medicare Claims" means any and all Claims relating to Tort Claims by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA and pursuing Claims under MSP, including Claims for reimbursement of payments made to Tort Claimants who recover or receive any distribution from the Trust and Claims relating to reporting obligations.

59.  "Medicare Trust Fund" means a U.S. Treasury-held trust fund account from which Medicare is funded or from which Medicare disbursements are paid, including the Hospital Insurance Trust Fund and the Supplementary Medical Insurance (SMI) Trust Fund.

60.  "MMSEA" means § 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L.110-173)", which imposes reporting obligations on those Persons with payment obligations under the MSP.

61.  "MSP" means 42 U.S.C. § 1395y et seq., or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto.

62.  "Non-Appealable Order" means an order, judgment, or other decree (including any modification or amendment thereof) that remains in effect and is final and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which, if such an appeal, writ of certiorari, review, reargument, or rehearing has been sought, (a) appeal, certiorari, review, reargument, or rehearing has been denied or dismissed and the time to take any further appeal or petition for certiorari, review, reargument, or rehearing has expired; or (b) such order has been affirmed by the highest court to or in which such order was appealed, reviewed, reargued, or reheard, or that granted certiorari, and the time to take any further appeal or petition for certiorari, review, reargument, or rehearing has expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of

-8-

the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a "Non-Appealable Order."

63.   "Other Insured Entities" means the Archdiocese Other Insured Entities, the "Parish Other Insured Entities" (as defined in the Travelers Settlement Agreement), and the "Seminary Other Insured Entities" (as defined in the Travelers Settlement Agreement).

64.    "Parish Committee" means the Official Parish Committee established by the United States Trustee on or about May 14, 2015 (Docket No. 220).

65.   "Parish Insurance Policy(ies)" means any and all known and unknown contracts, binders, certificates, or policies of insurance in effect on or before the Effective Date that were issued to, allegedly issued to, or for the benefit of, or that otherwise actually, allegedly, or potentially insure, an Archdiocesan Parish or any of its predecessors in interest, successors or assigns and that actually, allegedly, or could potentially afford coverage with respect to a Tort Claim; provided, however, that if a contract, binder, certificate, or policy of insurance that was not issued or allegedly issued to an Archdiocesan Parish insures or covers both an Archdiocesan Parish and another Person, that a contract, binder, certificate, or policy of insurance is a "Parish Insurance Policy" to the extent it insures or covers an Archdiocesan Parish, but not to the extent it insures or covers any other Person. For the avoidance of doubt, "Parish Insurance Policies" does not include any Archdiocesan Insurance Policy that was issued or allegedly issued to the Archdiocese.

66.   "Parish Parties" means collectively the Catholic Entities and, in their capacity as such: (i) each of the past, present, and future parents, subsidiaries, merged companies, divisions, and acquired companies of the Catholic Entities; (ii) each of the foregoing Persons' respective past, present, and future parents, subsidiaries, merged companies, divisions, and acquired companies; (iii) each of the foregoing Persons' respective predecessors, successors, and assigns; and (iv) any and all past and present employees, officers, directors, shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or Persons bound by monastic vows, volunteers, agents, attorneys, and representatives of the Persons identified in the foregoing subsections (i)-(iii). Nothing in the foregoing is intended to suggest that such Persons are "employees" or agents of a Catholic Entity or subject to its control. An individual who perpetrated an act of Abuse that forms the basis of a Tort Claim is not a Parish Party as to that Tort Claim. No religious order, diocese, or archdiocese is a Parish Party, except to the extent such religious order, diocese, or archdiocese is a "Parish Other Insured Entity" (as defined in the Travelers Settlement Agreement).

67.   "Parish Settling Insurers" means the persons listed on Exhibit L(2).

68.   "Parish Settling Insurer Entities" means the Parish Settling Insurers and each of their past, present and future parents, subsidiaries, affiliates, and divisions; each of the foregoing Persons' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies; each of the foregoing Persons' respective past, present and future directors, officers,

CORE/3003233.0002/140935489.14

shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through or in concert with them.

69. "Parish Settling Insurer Entity Policies" means any and all Parish Insurance Policies issued by a Parish Settling Insurer Entity.

70. "Penalty Claims" means a Claim against the Archdiocese, whether secured or unsecured, for any fine, penalty or forfeiture, or for multiple, exemplary or punitive damages, arising before the Petition Date, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim.

71. "Person" means any individual or entity, including any corporation, limited liability company, partnership, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, proprietorship, association, joint stock company, joint venture, estate, trust, trustee, personal executor or personal representative, unincorporated association, or other entity, including any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof and any other individual or entity within the definition of (i) "person" in section 101(41) of the Bankruptcy Code; or (ii) "entity" in section 101(15) of the Bankruptcy Code.

72. "Petition Date" means January 16, 2015, the date on which the Archdiocese commenced the Chapter 11 case.

73. "Plan" means this joint Chapter 11 plan of reorganization, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

74. "Plan Proponents" means the Archdiocese and the UCC.

75. "Priority Tax Claim" means a claim of a governmental unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

76. "Pro Rata" means, with respect to any distribution on account of any allowed claim in any class, the ratio of (i) the amount of such allowed claim to (ii) the sum of (a) all allowed claims in such class and (b) the aggregate maximum of all allowed Claims in such class.

77. "Professional" means any professional employed or to be compensated pursuant to §§ 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

78. "Professional Claim" means a claim for compensation for services and/or reimbursement of expenses pursuant to §§ 327, 328, 330, 331, or 503(b) of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Chapter 11 case.

-10-

79. "Proof of Claim" means a proof of claim filed in the Chapter 11 case pursuant to § 501 of the Bankruptcy Code and/or pursuant to any order of the Bankruptcy Court, together with supporting documents.

80. "Protected Party" means any of the Archdiocese Parties, the Reorganized Debtor, the High Schools, the Seminary Parties, the Annual Appeal, Catholic Youth Camp, Catholic Youth Center and the Parish Parties and, solely to the extent of and in their capacity as such, their respective predecessors and successors, and all of the foregoing Persons' past, present, and future members, shareholders, trustees, officers, directors, officials, employees, agents, representatives, servants, contractors, consultants, volunteers, attorneys, professionals, insiders, subsidiaries, merged or acquired companies or operations, and their successors and assigns; but an individual who perpetrated an act of Abuse that forms the basis of a Tort Claim is not a Protected Party for that Tort Claim. Protected Party also includes (a) the Other Insured Entities and (b) solely to the extent of and in their capacity as such, the Other Insured Entities' respective predecessors and successors, and all of the foregoing Person's, past, present, and future members, shareholders, trustees, officers, directors, officials, employees, agents, representatives, servants, contractors, consultants, volunteers, attorneys, professionals, insiders, subsidiaries, merged or acquired companies or operations, and their successors and assigns. For the avoidance of doubt, and as more fully set forth in the definition of "Archdiocese Other Insured Entities," "Parish Other Insured Entities" (as defined in the Travelers Settlement Agreement), and "Seminary Other Insured Entities" (as defined in the Travelers Settlement Agreement), "Other Insured Entities," are Protected Parties only as to certain Claims, including only certain Tort Claims. For the avoidance of doubt, no religious order, diocese or archdiocese other than the Archdiocese itself is a Protected Party except to the extent the religious order, diocese or archdiocese is an Other Insured Entity.

81. "Ramsey County Agreement" means the civil settlement agreement between the Archdiocese and the Ramsey County Attorney's Office, as amended in conjunction with the dismissal of the Ramsey County criminal action against the Archdiocese, attached as Exhibits K, K(1), and K(2).

82. "Region" means the region served by the Archdiocese, which consists of 12 greater Twin Cities metro-area counties in Minnesota, including Ramsey, Hennepin, Anoka, Carver, Chisago, Dakota, Goodhue, Le Sueur, Rice, Scott, Washington, and Wright counties.

83. "Related Insurance Claim" means any Claim by any Person against any Protected Party or a Settling Insurer Entity, including an Extra-Contractual Claim, that, directly or indirectly, arises from, relates to, or is in connection with a Tort Claim, including any such Claim for defense, indemnity, contribution, subrogation, or similar relief or any direct action or claim, including an action or claim under Minn. Stat. § 60A.08, subd. 8.

84. "Reorganization Assets" means, collectively, all Assets of the Debtor and the Estate. For the avoidance of doubt, the Reorganization Assets do not include the Trust Assets.

85. "Reorganized Debtor" means the Archdiocese, on and after the Effective Date.

-11-

86. "Secured Claim" means a claim that is secured by a Lien on, or security interest in, property of the Debtor, or that has the benefit of rights of setoff under § 553 of the Bankruptcy Code, but only to the extent of the value of the creditor's interest in the Debtor's interest in such property, or to the extent of the amount subject to setoff, which value shall be determined by the Bankruptcy Court pursuant to Sections 506(a), 553, or 1129(b)(2)(A )(i)(II) of the Bankruptcy Code, as applicable.

87. "Seminaries" means The Saint Paul Seminary and St. John Vianney Seminary.

88. "Seminary Insurance Policy(ies)" means any and all known and unknown contracts, binders, certificates, or policies of insurance in effect on or before the Effective Date that were issued to, allegedly issued to, or for the benefit of, or that otherwise actually, allegedly, or potentially insure, a Seminary or any of its predecessors in interest, successors or assigns and that actually, allegedly, or could potentially afford coverage with respect to a Tort Claim; provided, however, that if a contract, binder, certificate, or policy of insurance that was not issued or allegedly issued to a Seminary insures or covers both a Seminary and any other Person, that contract, binder, certificate, or policy of insurance is a "Seminary Insurance Policy" to the extent it insures or covers  a Seminary, but not to the extent it insures or covers any other Person.  For the avoidance of doubt, "Seminary Insurance Policies" does not include any Archdiocesan Insurance Policy that was issued or allegedly issued to the Archdiocese.

89. "Seminary Settling Insurers" means the insurers listed on Exhibit L3.

90. "Seminary Settling Insurer Entities" means the Seminary Settling Insurers and each of their past, present and future parents, subsidiaries, affiliates, and divisions; each of the foregoing Persons' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies; each of the foregoing Persons' respective past, present and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through or in concert with them.

91. "Seminary Settling Insurer Entity Policies" means any and all Seminary Insurance Policies issued by a Seminary Settling Insurer Entity.

92. "Seminary Parties" means collectively the Seminaries and, in their capacity as such: (i) each of the past, present, and future parents, subsidiaries, merged companies, divisions, and acquired companies of the Seminaries; (ii) each of the foregoing Persons' respective past, present, and future parents, subsidiaries, merged companies, divisions, and acquired companies; (iii) each of the foregoing Persons' respective predecessors, successors, and assigns; and (iv) any and all past and present employees, officers, directors, shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or Persons bound by monastic vows, volunteers, agents, attorneys, and representatives of the Persons identified in the foregoing subsections (i)-(iii). Nothing in the foregoing is intended to suggest that such Persons are "employees" or

-12-

agents of the Seminaries or subject to its control. An individual who perpetrated an act of Abuse that forms the basis of a Tort Claim is not a Seminary Party as to that Tort Claim. No religious order, diocese, or archdiocese is a Seminary Party, except to the extent such religious order, diocese, or archdiocese is a "Seminary Other Insured Entity" (as defined in the Travelers Settlement Agreement).

93. "Settling Insurers" means the Archdiocesan Settling Insurers, the Parish Settling Insurers, the Seminary Settling Insurers and Roger A. Sevigny, Insurance Commissioner of the State of New Hampshire, solely in his capacity as Liquidator of the Home Insurance Company.

94. "Settling Insurer Entities" means the Archdiocesan Settling Insurer Entities, the Parish Settling Insurer Entities, and the Seminary Settling Insurer Entities.

95. "Settling Insurer Entity Policies" mean the Archdiocesan Settling Insurer Entity Policies, the Parish Settling Insurer Entity Policies, and the Seminary Settling Insurer Entity Policies.

96. "Supplemental Settling Insurer Injunction" means the injunction imposed pursuant to Section 14.5 of the Plan.

97. "Supplemental Plan Documents" means, collectively, the documents included (or to be included) in the supplemental appendix to the Plan and filed with the Bankruptcy Court at least 14 days prior to the confirmation hearing.

98. "Tort Claimant" means the holder of a Tort Claim.

99. "Tort Claim" means any Claim against any of the Protected Parties that arises out of, relates to, results from, or is in connection with, in whole or in part, directly or indirectly, Abuse that took place in whole or in part prior to the Effective Date, including any such Claim that seeks monetary damages or any other relief, under any theory of liability, including vicarious liability; *respondeat superior*; any fraud-based theory, including fraud in the inducement; any negligence-based or employment-based theory, including negligent hiring, supervision, retention or misrepresentation; any other theory based on misrepresentation, concealment, or unfair practice; contribution; indemnity; public or private nuisance; or any other theory, including any theory based on public policy or any acts or failures to act by any of the Protected Parties or any other Person for whom any of the Protected Parties are allegedly responsible, including any such Claim asserted against any of the Protected Parties in connection with the Reorganization Case. "Tort Claim" includes any Future Tort Claim.

100. "Tort Claims Reviewer" means the Person, including the designee of such person or entity, who will assess Class 6 and Class 7 Claims under the Trust Distribution Plan.

101. "Trust" means the trust created for the benefit of Tort Claimants in accordance with the Plan and Confirmation Order and the Trust Agreement.

-13-

102. "Trust Agreement" or "Trust Documents" shall mean the trust agreement establishing the Trust, as may be amended, together with such additional documents as may be executed in connection with the Trust Agreement.

103. "Trust Assets" means the cash and other assets to be transferred to the Trust under Article V of the Plan.

104. "Trust Distribution Plan" means the Trust Distribution Plan established under the Trust Agreement.

105. "Trustee" means the Person appointed as Trustee of the Trust in accordance with the terms of the Plan, the Confirmation Order, and the Trust Agreement, or any successor appointed in accordance with the terms of the Plan, Confirmation Order, and the Trust Agreement.

106. "UCC" means the Official Committee of Unsecured Creditors appointed in this Chapter 11 case, as such committee may be constituted from time to time.

107. "U.S. Trustee" means the Office of the United States Trustee for Region 12, which includes the District of Minnesota.

108. "Unimpaired" means, with respect to a class of claims, that such class is not Impaired.

109. "Unsecured Claims" means claims which are not secured by any property of the Debtor's Estate and which are not part of any other class defined in this Plan.

    **1.2.    INTERPRETATION.** For purposes of the Plan:

    **(a)**    any term that is not defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable;

    **(b)**    the terms "including" or "include(s)" are intended to be illustrative and not exhaustive, and shall be construed as "including, but not limited to" or "include(s), but is not limited to";

    **(c)**    whenever the context requires, terms shall include the plural as well as the singular number, and the masculine gender shall include the feminine and the feminine gender shall include the masculine;

    **(d)**    the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply;

    **(e)**    unless the context should otherwise require, all references to documents to be filed shall refer to filing with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules;

    **(f)**    any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and

conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(g)    any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented;

(h)    unless otherwise specified, all references in the Plan to "Articles," "Sections," "Schedules" and "Exhibits" are references to Articles, Sections, Schedules and Exhibits of or to the Plan;

(i)    the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;

(j)    captions and headings to Articles and Sections are inserted for ease of reference only and shall not be considered a part of the Plan or otherwise affect the interpretation of the Plan; and

(k)    the Plan supersedes all prior plans, drafts of the Plan, and all prior negotiations, agreements, and understandings with respect to the Plan, evidence of which shall not affect the interpretation of any provision of the Plan.

**1.3.    TIME PERIODS**. In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. Enlargement of any period of time prescribed or allowed by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

**1.4.    EXHIBITS AND SCHEDULES**.

(a)    All Exhibits and Schedules to the Plan (including any Supplemental Plan Documents) (with the Plan, the "Plan Documents") are hereby incorporated by reference and made part of the Plan as if set forth fully herein.

(b)    The Exhibits to the Plan include the following:

| | |
|---|---|
| Exhibit A: | [RESERVED] |
| Exhibit B: | [RESERVED] |
| Exhibit C: | Guaranty Obligations |
| Exhibit D: | Trust Agreement and Trust Distribution Protocol |
| Exhibit E: | Release |
| Exhibit F: | [RESERVED] |
| Exhibit G: | [RESERVED] |
| Exhibit H: | List of Current Parishes |
| Exhibit I: | Known Archdiocese Entity Insurance Policies |
| Exhibit J: | Officers and Directors of Reorganized Debtor |
| Exhibit K: | Settlement Agreement with Ramsey County Attorney's Office |

-15-

Exhibit K(1):     Amendment to Settlement Agreement with Ramsey County Attorney's Office
Exhibit K(2):     Dismissal Pursuant to Rule 30.01
Exhibit L(1):     Archdiocesan Settling Insurers
Exhibit L(1)-A:   First List of Known Archdiocese Settling Insurer Entity Policies
Exhibit L(2):     Parish Settling Insurers
Exhibit L(3):     Seminary Settling Insurers
Exhibit M:        List of Catholic Entities
Exhibit N:        Second List of Known Archdiocese Settling Insurer Entity Policies and List of Other Insured Entities

**(c)**     The Schedules to the Plan include the following:

Schedule 1:     List of Class 3 Claimants
Schedule 2:     List of Class 8 Claimants
Schedule 3:     List of Trade Vendor Claims

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

**2.1.     ADMINISTRATIVE CLAIMS**. As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims including Professional Claims, and Priority Tax Claims shall not be classified for the purposes of voting or receiving distributions under the Plan. Rather, all such claims shall be treated separately as unclassified claims on the terms set forth in this Article.

**(a)     Treatment.** Each holder of an allowed Administrative Claim, excluding Professional Claims, against the Archdiocese shall receive, in full satisfaction, settlement, release, and extinguishment of such claim, an amount from the Reorganized Debtor equal to the allowed amount of such Administrative Claim, unless the holder agrees in writing to other treatment of such claim. Each holder of an allowed Professional Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such claim, an amount from the Trust equal to the allowed amount of such Professional Claim, unless the holder agrees in writing to other treatment of such claim and subject to the provisions of Section 5.2 of this Plan, except that the Trust shall assume and pay the allowed amount of any claim for substantial contribution or expenses under Section 503(b)(3) of the Bankruptcy Code made by a committee member, a committee professional, or an attorney for a Class 6 Claimant.

**(b)     Administrative Filing Deadline**.

(1)     Except as otherwise set forth in this Plan, requests for allowance and payment of Administrative Claims must be filed and served no later than thirty (30) days after a notice of the Effective Date is filed with the Bankruptcy Court (the "Administrative Claims Filing Deadline"). Administrative Claims holders, excluding Professional Claims, that do not file a request for payment by

-16-

the Administrative Claims Filing Deadline shall be forever barred from asserting such claims against the Archdiocese, the Reorganized Debtor, any Settling Insurer Entity (to the extent applicable), the Trust, or any of their property.

(2)     All objections to the allowance of Administrative Claims (excluding Professional Claims) must be served and filed by any parties-in-interest no later than fourteen (14) days after the Administrative Claim Filing Deadline (the "Administrative Claim Objection Deadline"). If no objection to the applicable Administrative Claim is filed on or before the Administrative Claim Objection Deadline, such Administrative Claim will be deemed allowed. For the avoidance of doubt, the Administrative Claim Objection Deadline established by this subparagraph shall control over any contrary deadline set forth in any requests for payment of Administrative Claims.

**(c)     Professional Claim Filing Deadline.**

All Professionals or other Persons holding a Professional Claim for services rendered on or before the Effective Date (including, among other things, any compensation requested by any Professional or any other Person for making a substantial contribution in the Chapter 11 case) shall file and serve an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than thirty (30) days after a notice of the Effective Date is filed (the "Professional Claim Filing Deadline").

**2.2.     STATUTORY FEES**. All fees due and payable pursuant to 28 U.S.C. § 1930 and not paid prior to the Effective Date shall be paid by the Reorganized Debtor from ongoing operations as soon as practicable after the Effective Date. After the Effective Date, the Trust shall pay quarterly fees to the U.S. Trustee until the Chapter 11 case is closed. The Reorganized Debtor shall file post-Confirmation Date quarterly reports in conformance with the U.S. Trustee guidelines. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which will be deemed Administrative Claims against the Debtor and its Estate. The Reorganized Debtor shall remain responsible for any unpaid fees and reports.

**2.3.     PRIORITY TAX CLAIMS**. With respect to each allowed Priority Tax Claim not paid prior to the Effective Date, the Reorganized Debtor shall (i) pay such claim in cash as soon as practicable after the Effective Date from its ongoing operations, or (ii) provide such other treatment agreed to by the holder of such allowed Priority Tax Claim and the Archdiocese or Reorganized Debtor, as applicable, in writing, provided such treatment is no less favorable to the Archdiocese than the treatment set forth in clause (i) of this sentence.

**ARTICLE III**
**CLASSIFICATION OF CLAIMS**

**3.1.     SUMMARY.** The categories of claims listed below classify claims (except for Administrative Claims and Priority Tax Claims) for all purposes, including voting, confirmation of the Plan, and distribution pursuant to the Plan.

-17-

| CLASS | DESCRIPTION | IMPAIRMENT | VOTING |
|---|---|---|---|
| 1 | Priority Claim | Unimpaired | No |
| 2 | Governmental Unit Claims | Unimpaired | No |
| 3A | General Insurance Fund Claims | Impaired | Yes |
| 3B | Medical and Dental Benefit Claims | Impaired | Yes |
| 4 | Archdiocese of Saint Paul and Minneapolis Priests' Pension Plan Claims | Unimpaired | No |
| 5 | Archdiocese of Saint Paul and Minneapolis Lay Employees' Pension Plan Claims | Unimpaired | No |
| 6 | Tort Claims Other Than Future Tort Claims | Impaired | Yes |
| 7 | Future Tort Claims | Impaired | Yes |
| 8 | Inter-Parish Loan Fund and Assessment Overpayment Claims | Impaired | Yes |
| 9 | Trade Vendors and General Unsecured Creditors<br>- Class 9A Convenience Claims<br>- Class 9B | Impaired<br>Impaired | Yes<br>Yes |
| 10 | Secured Claim of Premier Bank | Unimpaired | No |
| 11 | Guaranty Claims | Unimpaired | No |
| 12 | Haselberger Claim | Impaired | Yes |
| 13 | Abuse Related Contingent Claims | Impaired | Yes |
| 14 | Other Unsecured Claims | Impaired | Yes |
| 15 | Penalty Claims | Impaired | Deemed to Reject |
| 16 | Priest Support Payments | Unimpaired | No |
| 17 | Secured Claim of North American Banking Company | Unimpaired | No |
| 18 | Secured Claim of Bremer Bank | Unimpaired | No |

**3.2.    CLASSIFICATION AND VOTING**. The claims against the Debtor shall be classified as specified above (other than Administrative Claims and Priority Tax Claims, which shall be unclassified and treated in accordance with Article II). Consistent with Section 1122 of the Bankruptcy Code, a claim is classified by the Plan in a particular class only to the extent the claim is within the description of the class, and a claim is classified in a different class to the extent it is within the description of that different class.

-18-

**ARTICLE IV**
**TREATMENT OF CLASSIFIED CLAIMS**

**4.1.    PRIORITY CLAIMS (CLASS 1).**

(a)    **Definition.** A Class 1 Claim means an allowed claim described in, and entitled to priority under Sections 507(a) and 503(b)(9) of the Bankruptcy Code other than an Administrative Claim or a Priority Tax Claim.

(b)    **Treatment.** Unless the holder of an allowed Class 1 Claim and the Archdiocese or the Reorganized Debtor (as applicable) agree to a different treatment, the Reorganized Debtor shall pay each such allowed Class 1 Claim in full, in cash, without interest, from ongoing operations on the later of the Effective Date (or as soon thereafter as is practicable) and the date a Class 1 Claim becomes an allowed claim (or as soon thereafter as is practicable).

**4.2.    GOVERNMENTAL UNIT CLAIMS (CLASS 2).**

(a)    **Definition.** A "Class 2 Claim" means an allowed claim of Governmental Units not otherwise included in Article II or Section 4.1 above.

(b)    **Treatment.** Unless the holder of an allowed Class 2 Claim and the Archdiocese or the Reorganized Debtor (as applicable) agree to a different treatment, the Reorganized Debtor shall pay each such allowed Class 2 Claim in full, in cash, without interest, from ongoing operations on the later of the Effective Date (or as soon thereafter as is practicable) and the date a Class 2 Claim becomes an allowed claim (or as soon thereafter as is practicable).

**4.3.    GIF AND AMBP CLAIMS (CLASS 3).**

(a)    **General Insurance Fund Claims (Class 3A).**

(1)    **Definition.** A Class 3A Claim means the claims against the Archdiocese held by the entities listed on Schedule 1 as GIF participants arising from or related in any way to the collection and use of contributions and premiums and other payments made by such claimants to the Archdiocese under the GIF, including any claims arising from the administration or sponsorship by the Archdiocese of the GIF.

(2)    **Treatment.** The Archdiocese will assume its participation in the GIF for the continued benefit of Class 3A claimants. The Archdiocese will continue to sponsor the GIF and will cause to be paid claims, insurance premiums for coverage purchased by the GIF, and administrative expenses under the GIF to the extent of available funds in the GIF in accordance with prior practices, and the GIF Settlement described in Section 9.3 below.

(b)    **AMBP: Medical and Dental Benefit Claims (Class 3B).**

CORE/3003233.0002/140935489.14

(1)     **Definition.** A Class 3B Claim means the claims against the Archdiocese held by the entities listed on Schedule 1 as AMBP participants arising from or related in any way to the collection and use of contributions and premiums and other payments made by such claimants to the AMBP, including any claims arising from the administration or sponsorship by the Archdiocese of the AMBP.

(2)     **Treatment.** The Archdiocese will assume its participation in the AMBP for the continued benefit of Class 3B claimants. The Archdiocese will continue to sponsor the AMBP and will cause to be paid claims and administrative expenses under the AMBP to the extent of available funds in the AMBP in accordance with prior practices, and the AMBP Settlement described in Section 9.1 below.

**4.4.     ARCHDIOCESE OF SAINT PAUL AND MINNEAPOLIS PRIESTS' PENSION PLAN CLAIMS (CLASS 4).**

(a)     **Definition.** A Class 4 Claim means any claim against the Archdiocese for liability arising under the Archdiocese of Saint Paul and Minneapolis Priests' Pension Plan.

(b)     **Treatment**. The Archdiocese, along with a number of other entities, participates in, and contributes to, the Archdiocese of Saint Paul and Minneapolis Priests' Pension Plan (the "Priest Plan"). The Archdiocese will assume its participation in the Priest Plan and will continue to meet its obligations under the Priest Plan as they become due. The Archdiocese will not make any payment with respect to any Claim filed in this Chapter 11 case with respect to Class 4 Claims.

**4.5.     ARCHDIOCESE OF SAINT PAUL AND MINNEAPOLIS LAY EMPLOYEES' PENSION PLAN CLAIMS (CLASS 5).**

(a)     **Definition.** A Class 5 Claim means any claim against the Archdiocese for liability arising under the Archdiocese of Saint Paul and Minneapolis Lay Employees' Pension Plan.

(b)     **Treatment.** The Archdiocese, along with a number of other entities, participates in, and contributes to, the Archdiocese of Saint Paul and Minneapolis Lay Employees' Pension Plan (the "Lay Plan"). The Archdiocese will assume its participation in the Lay Plan, and will continue to meet its obligations under the Lay Plan as they become due. The Archdiocese will not make any payment with respect to any Claim filed in this Chapter 11 case with respect to Class 5 Claims.

**4.6.     TORT CLAIMS OTHER THAN FUTURE TORT CLAIMS (CLASS 6)**

(a)     **Definition.** A Class 6 Claim means a Tort Claim other than a Future Tort Claim ("Class 6 Claim").  A "Class 6 Claimant" shall mean a holder of a Class 6 Claim.

-20-

**(b)     Summary.** The Plan creates a Trust to fund payments to Class 6 Claimants entitled to such payments under the Plan, Trust Agreement and Trust Distribution Plan. Class 6 Claimants' share of the Trust Assets as provided by the Trust Distribution Plan is the only amount, if any, they will be entitled to receive from the Protected Parties and Settling Insurer Entities. Distribution from the Trust does not preclude claims or recoveries by Tort Claimants against Persons who are not Protected Parties or Settling Insurer Entities for the liability of such Persons not attributable to the causal fault or share of liability of Protected Parties or Settling Insurer Entities under the Settling Insurer Entity Policies. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with the Abuse that forms the basis of a Tort Claim shall not be liable for any Protected Party's share of causal liability or fault.

**(c)     Reservation.** Except with respect to the Protected Parties and the Settling Insurer Entities, nothing in the Plan is intended to affect, diminish, or impair the rights of any Tort Claimant against any Person named or that could be named as a defendant in a lawsuit based on the Abuse that forms the basis for his or her Tort Claim except that the rights of Tort Claimants against third-parties, including joint tortfeasors, does not include the right of Tort Claimants to collect or to obtain a reallocation of the share of any judgment initially allocated to a Protected Party to any third-party based on the causal fault or share of liability of Protected Parties. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with a Tort Claim shall not be liable for any Protected Party's share of liability or fault. Under no circumstances will the reservation of such Tort Claimant's rights against any other Person impair the discharge, Channeling Injunctions, or Settling Insurer Supplemental Injunction with respect to any Protected Party, the Reorganized Debtor or Settling Insurer Entities.

**(d)     Treatment.** The Protected Parties' and Settling Insurer Entities' liability for and obligation to pay, if any, Class 6 Claims shall be assigned to and assumed by the Trust. Each Class 6 Claim will be estimated solely for purposes of voting. The Protected Parties and the Settling Insurer Entities shall have no further liability in connection with Class 6 Claims.

**(e)     Release and Certification.** No Class 6 Claimant shall receive any payment on any award unless and until such Class 6 Claimant has executed the Release and Medicare Certification attached as Exhibit E to this Plan. Notwithstanding the foregoing, nothing in this Article requires any Tort Claimant to release any Claims against any joint tortfeasor who is not a Protected Party, and such Claims are reserved. But in no event may a Tort Claimant collect on that portion of any judgment or obtain any reallocation of any judgment based on the causal fault or share of liability of any Protected Parties. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with the Abuse that forms the basis of a Tort Claim shall be provided by the Trustee with a copy of the executed Release and Medicare Certification upon reasonable request and provision of an appropriate, executed confidentiality agreement and shall not be liable for any Protected Parties' share of liability or fault. The release of these Class 6 Claims is pursuant to the principles set forth in *Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963) and *Frey v. Snelgrove*, 269 N.W.2d

-21-

918 (Minn. 1978). The Trust shall be obligated to provide copies of the Tort Claimants' releases and certifications to any of the Protected Parties upon request.

**4.7.    FUTURE TORT CLAIMS (CLASS 7).**

(a)    **Definition.** A Class 7 Claim means a Future Tort Claim ("Class 7 Claim"). A "Class 7 Claimant" shall mean a holder of a Class 7 Claim.

(b)    **Summary.** The Plan creates a Trust to fund payments to Class 7 Claimants entitled to such payments under the Plan, Trust Agreement and Trust Distribution Plan. Class 7 Claimants' share of the Trust Assets as provided by the Trust Distribution Plan is the only amount, if any, they will be entitled to receive from the Protected Parties and Settling Insurer Entities. Distribution from the Trust does not preclude claims or recoveries by Tort Claimants against Persons who are not Protected Parties or Settling Insurer Entities for the liability of such Persons not attributable to the causal fault or share of liability of Protected Parties or Settling Insurer Entities under the Settling Insurer Entity Policies. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with the Abuse that forms the basis of a Tort Claim shall not be liable for any Protected Party's share of liability or fault.

(c)    **Reservation.** Except with respect to the Protected Parties and the Settling Insurer Entities, nothing in the Plan is intended to affect, diminish, or impair the rights of any Future Tort Claimant against any Person named or that could be named as a defendant in a lawsuit based on the Abuse that forms the basis of his or her Future Tort Claim except that the rights of Future Tort Claimants against third-parties, including joint tortfeasors, does not include the right of Future Tort Claimants to collect or to obtain a reallocation of the share of any judgment initially allocated to a Protected Party to any third-party based on the causal fault or share of liability of Protected Parties. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with the Abuse that forms the basis of a Future Tort Claim shall not be liable for any Protected Party's share of liability or fault. Under no circumstances will the reservation of such Future Tort Claimant's rights against any other Person impair the discharge, Channeling Injunctions, or Settling Insurer Supplemental Injunction with respect to any Protected Party, the Reorganized Debtor or Settling Insurer Entities.

(d)    **Treatment.** The Protected Parties' and Settling Insurer Entities' liability for and obligation to pay, if any, Class 7 Claims shall be assigned to and assumed by the Trust. The Protected Parties and the Settling Insurer Entities shall have no further liability therefor. Class 7 Claimants shall provide sufficient information to allow the Tort Claims Reviewer to make an evaluation of the Class 7 Claim pursuant to the factors in the Trust Distribution Plan.

(e)    **Determination of Class 7 Claims.** Class 7 Claims will be solely determined by the Tort Claims Reviewer in accordance with the Tort Claims Allocation Protocol, and shall be a Channeled Claim to be paid solely from the Trust and Trust Assets.

-22-

**(f)**    **Release and Certification.** No Class 7 Claimant shall receive any payment on any award unless and until such Class 7 Claimant has executed the Release and Medicare Certification attached as <u>Exhibit E</u> to this Plan.. Notwithstanding the foregoing, nothing in this Article requires any Future Tort Claimant to release any Claims against any joint tortfeasor who is not a Protected Party or a Settling Insurer Entity and such Claims are reserved. But in no event may a Class 7 Claimant collect on that portion of any judgment or obtain reallocation of any judgment based on the causal fault or share of liability of any Protected Party. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with a Future Tort Claim shall be provided by the Trustee with a copy of the executed Release and Medicare Certification upon reasonable request and provision of an appropriate, executed confidentiality agreement and shall not be liable for any Protected Parties' share of liability or fault. The release of these Class 7 Claims is pursuant to the principles set forth in <u>*Pierringer v. Hoger*</u>, 124 N.W.2d 106 (Wis. 1963) and <u>*Frey v. Snelgrove*</u>, 269 N.W.2d 918 (Minn. 1978). The Trust shall be obligated to provide copies of the Tort Claimants' releases and certifications to any of the Protected Parties upon request.

**4.8.    INTER-PARISH LOAN FUND AND ASSESSMENT OVERPAYMENT CLAIMS (CLASS 8)**.

**(a)    Definition**. A Class 8 Claim means any claim against the Archdiocese for unpaid deposits made to the Inter-Parish Loan Fund (the "IPLF") and for Parish assessment overpayments made by any Archdiocesan Parish prior to the Petition Date as set forth on Schedule 2.

**(b)    Treatment**. Unless otherwise agreed by an individual claimant and the Archdiocese:

(1)    An Archdiocesan Parish that owes assessments to the Archdiocese as of the Effective Date in an amount in excess of the claim of such Archdiocesan Parish in Class 8 will be entitled to a reduction in the balance of past due assessments payable by such Archdiocesan Parish in an amount equal to the amount of such parish's Class 8 Claim. Archdiocesan Parishes subject to this paragraph (1) will receive no other distribution in connection with such Class 8 Claim and will remain liable for the full amount of assessments due from and after the Effective Date and the balance of unpaid assessments as of the Effective Date, as reduced in accordance with this paragraph.

(2)    The claim of the Archdiocesan Parishes who hold Class 8 Claims in excess of the balance of assessments payable by such parish as of the Effective Date will be reduced by the amount of the unpaid assessment due by such Archdiocesan Parish, if any. The remaining balance of the Class 8 Claim will be satisfied by a credit against the assessments that would otherwise be due by such Archdiocesan Parish from and after the Effective Date. The credit contemplated in this paragraph will be applied on a quarterly basis against future assessments, as determined by the Archdiocese in accordance with its general practice in calculating assessments, until such time as the Class 8 Claim of such

-23-

Archdiocesan Parish has been satisfied in full, without interest. By way of example, an Archdiocesan Parish with a Class 8 Claim (net of any past due assessments) in the amount of $500,000 shall not be required to pay post-Effective Date assessments to the Archdiocese until the Class 8 Claim has been satisfied in full through the credit and reduction contemplated in this paragraph (2).

(c)     The credit and reductions contemplated under this Section 4.8 shall be noted by the Archdiocese in its assessment notice to Class 8 Claimants, which calculation shall be conclusive absent manifest error. Holders of Class 8 Claims shall have no interest in amounts payable to the Archdiocese by Archdiocesan Parishes obligated pursuant to deposits made under the Inter-Parish Loan Fund and shall have no interest in amounts payable to the Archdiocese by Archdiocesan Parishes who are liable to the Archdiocese for advances previously made under the Inter-Parish Loan Fund. The Archdiocese shall be entitled to deduct from any distribution to any holder of a Class 8 Claim any amounts payable by such Archdiocesan Parish to the Archdiocese.

## 4.9.     TRADE VENDOR CLAIMS (CLASS 9A and 9B).

(a)     **Definition**. A Class 9A Claim (a "Class 9A Convenience Claim") means an allowed claim against the Archdiocese for goods and services supplied to the Archdiocese prior to the Petition Date, as set forth on <u>Schedule 3</u>, that is: (i) in the amount of $1,000 or less, or (ii) reduced by the holder to $1,000 on the ballot. Class 9A Convenience Claims shall not include any claims classified and treated under any other class under the Plan.

(b)     **Treatment**. The holders of Class 9A Convenience Claims shall receive, directly from the Reorganized Debtor, payment in full of such allowed claim, without interest, within 30 days following the Effective Date. The Archdiocese estimates that the total payment to creditors in Class 9A will equal approximately $50,000.

(c)     **Definition.** A Class 9B Claim means any allowed claim against the Archdiocese for goods and services supplied to the Archdiocese prior to the Petition Date, as set forth on Schedule 3, that is: (i) in the amount in excess of $1,000, and (ii) has not been reduced to $1,000 by election on the ballot. Class 9B claims shall not include any claims classified and treated under any other class under the Plan.

(d)     **Treatment.** The holders of Class 9B Claims shall receive, directly from the Reorganized Debtor, payment in full of such allowed Class 9 Claim, without interest, in two equal installments. The first installment shall be due within 90 days following the Effective Date. The second installment shall be due and payable within 180 days following the Effective Date.

-24-

**4.10.    SECURED CLAIM OF PREMIER BANK (CLASS 10)**.

    **(a)    Definition**. Class 10 Claim means the claim of Premier Bank under the mortgage executed by the Archdiocese in favor of Premier Bank, as renewed on May 16, 2011, describing and encumbering the Cathedral of Saint Paul.

    **(b)    Treatment**. The mortgage interest of the holder of the Class 10 Claim shall remain undisturbed and the holder of such claim may exercise any and all rights and remedies against the collateral referenced in such mortgage, available to the holder.

**4.11.    GUARANTY CLAIMS (CLASS 11)**.

    **(a)    Definition**. Class 11 Claims mean the guaranty claims arising out of the prepetition guaranties executed by the Archdiocese as described on Exhibit C to the Plan.

    **(b)    Treatment**. The guaranty obligations in Class 11 shall remain undisturbed and the holders of such guaranties shall be entitled to exercise all legal rights and remedies available to such holders. Holders of Class 11 Claims shall be deemed to have waived any right to accelerate the underlying debt secured by such guaranty agreement solely as a result of the Archdiocese's financial condition at the commencement of this Chapter 11 case.

**4.12.    HASELBERGER CLAIM (CLASS 12)**.

    **(a)    Definition.** Class 12 Claim means, to the extent allowed, the claim of Jennifer Haselberger (Claim No. 668).

    **(b)    Treatment.** The holder of the Class 12 Claim shall receive payment of their Pro Rata share of the sum of up to $50,000 to be paid from the Trust Account as soon as practicable after all Class 12 Claims have been allowed or disallowed.

**4.13.    ABUSE RELATED CONTINGENT CLAIMS (CLASS 13)**

    **(a)    Definition.** A Class 13 Claim means (i) Claims for contribution, indemnity or reimbursement arising out of or related to the Archdiocese's liability to pay or defend any Class 6 or Class 7 Claim, and (ii) the Claims of any insurers or other Persons who are subrogated to the Claims identified in Section 4.13(a)(i).

    **(b)    Treatment.** Claims in Class 13 shall be allowed or disallowed in accordance with Section 502(e)(1) of the Bankruptcy Code, and Class 13 Claims will receive no distribution under the Plan and will be channeled to the Trust.  The treatment of Class 13 Claims shall include the release and certification procedures contemplated under Sections 4.6 and 4.7 above. The Plan does not allow Tort Claimants to collect that portion of any judgment or obtain reallocation of any judgment based on the causal fault or share of liability of any Protected Party. Any Person that is or was alleged to be a joint tortfeasor with any of the Protected Parties in connection with a Tort Claim shall not be liable for any Protected Party's share of liability or fault.

-25-

**4.14.   OTHER UNSECURED CLAIMS (CLASS 14)**.

     **(a)   Definition**. A Class 14 Claim means (1) any claim arising out of the rejection of any executory contract, or (2) any Unsecured Claim that is not included in another class under the Plan and is not listed as disputed, contingent or unliquidated on the Debtor's schedules filed in connection with this Chapter 11 case ("Debtor's Schedules") or as to which the holder of such claim timely filed a claim.

     **(b)   Treatment**. The holders of Class 14 Claims shall receive payment of their Pro Rata share of the sum of up to $10,000 to be paid from the Reorganized Debtor as soon as practicable after all Class 14 Claims have been allowed or disallowed.

**4.15.   PENALTY CLAIMS (CLASS 15)**.

     **(a)   Definition.** A Class 15 Claim means any Claim, other than a Tort Claim, against the Archdiocese, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the Petition Date, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such Class 15 Claim.

     **(b)   Treatment.** Holders of Class 15 Claims shall not receive or retain any property under the Plan on account of such Class 15 Claims.

**4.16.   PRIEST SUPPORT PAYMENTS (CLASS 16)**.

     **(a)   Definition**. A Class 16 Claim means any claim of any inactive Archdiocesan Priest for support or maintenance.

     **(b)   Treatment**. The Archdiocese disclaims any liability under civil law for Class 16 Claims and holders of Class 16 Claims shall receive no distribution under the Plan on account of such claims. However, the Plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest. Notwithstanding the fact that Class 16 Claims receive no distribution, the Archdiocese intends to honor its post-Effective Date obligations under Canon Law with respect to inactive priests in accordance with prior practices.

**4.17.   SECURED CLAIM OF NORTH AMERICAN BANKING COMPANY BANK (CLASS 17)**.

     **(a)   Definition**. Class 17 Claim means the claim of North American Banking Company relating to the mortgage in favor of North American Banking Company describing and encumbering real property located at 1350 Gardena Avenue, NE, Fridley, Minnesota.

     **(b)   Treatment**. The mortgage interest of the holder of the Class 17 Claim shall remain undisturbed and the holder of such claim may exercise any and all rights and remedies against the collateral referenced in such mortgage, available to the holder.

**4.18.**   **SECURED CLAIM OF BREMER BANK (CLASS 18)**.

**(a)**   **Definition**. Class 18 Claim means the claim of Bremer Bank, National Association relating to the mortgage in favor of Bremer Bank describing and encumbering real property located at 2501 State Highway 100, St. Louis Park, Minnesota.

**(b)**   **Treatment**. The mortgage interest of the holder of the Class 18 Claim shall remain undisturbed and the holder of such claim may exercise any and all rights and remedies against the collateral referenced in such mortgage, available to the holder.

<div align="center">

**ARTICLE V**
**MEANS OF IMPLEMENTATION OF THE PLAN**

</div>

**5.1.**   **TRUST FORMATION AND FUNDING**.

**(a)**   **Purpose, Formation and Assets.** The Trust shall be established for the purposes of assuming liability of Protected Parties and Settling Insurer Entities for Channeled Claims and receiving, liquidating, and distributing Trust Assets in accordance with this Plan and the Trust Distribution Plan. The proposed Trust Agreement is attached hereto as Exhibit D.

**(b)**   **Funding.**

(1)   **Summary.** This Plan will be funded from the sources and in the manner set forth in this Section. In addition to the contributions described herein, the Catholic Entities, Other Insured Entities, and Seminaries will waive certain claims against the Archdiocese and Settling Insurer Entities, including the Related Insurance Claims and contribution and indemnity claims referenced in Section 4.13.

(2)   **Contributions.** Cash and other assets with an expected value of $210,290,724 (the "Settlement Amount") will be paid or transferred, as applicable, to the Trust Account as provided in the Plan and as described herein.

(i)   **Debtor Cash Contribution**. The Debtor will transfer $23,475,000 to the Trust Account within two business days after the Confirmation Order has become a Non-Appealable Order (the "Debtor Cash Contribution"). The Debtor Cash Contribution will be primarily comprised of funds from the following sources.

1.   Cash from (a) non-restricted cash accounts held by the Archdiocese, (b) the account established to hold the proceeds derived from the sale of Archdiocese properties during the course of this Chapter 11 case, (c) the proceeds of the settlement of the Riley Fund dispute contemplated in Article IX, and (d) the proceeds from the sale of jewelry and other personal property.

<div align="center">-27-</div>

2.      The GIF Tort Claim Contribution Amount, in the total amount of $6,000,000, which shall be paid in accordance with the terms of the settlement contemplated in Article IX.

(ii)      **Debtor Assignment of Certain Assets**.  In addition to the Debtor Cash Contribution referenced above, the Debtor will assign to the Trust, and will pay over to the Trust, the proceeds of the interests referenced herein as and when such proceeds become available:

1.      **Ward Estate**. The Archdiocese shall assign to the Trust its interest in the Estate of Austin Ward, including its interest in the net proceeds payable to the Archdiocese from the sale of property owned by Ausmar Development Company LLC.

2.      **Workers' Compensation Deposit**. The Archdiocese shall assign to the Trust its interest, if any, in any excess amount held by the Minnesota Department of Commerce (the "Department") relating to the Archdiocese's self-insurance requirements under Section 79A.04(s) of the Minnesota Statutes. By statute, the Archdiocese has no right or title to the deposit. The Archdiocese believes, however, that the deposit may be subject to reduction following confirmation of the Plan. The Archdiocese agrees to cooperate with the Trustee to make a good faith effort to obtain the Department's consent to a reduction in the deposit following Plan confirmation. The balance of the deposit, if any, returned to the Archdiocese with the consent of the Department shall be promptly paid over to the Trust, to the extent such excess amounts are returned to the Archdiocese.

(iii)      **Debtor Note**. The Debtor will execute a note to the Trust for a total of $5,000,000, to be paid in annual installments of $1,000,000 per year, beginning 365 days following the Confirmation Date. The note shall not bear interest.

(iv)      **AMBP Settlement.** The AMBP Settlement Amount, in the total amount of $4,000,000, which shall be paid in accordance with the terms of the settlement contemplated in Article IX, which will also constitute a portion of the contribution of Catholic Entities.

(v)      **Proceeds from High School Sales.** Net proceeds from the $4,000,000 sale of real estate to the High Schools, in accordance with the terms of the settlement and sale contemplated in Article IX.

(vi)      **Archdiocese Home Liquidation Claim.** The Archdiocese shall assign to the Trust within one business day of the Confirmation Order becoming a Non-Appealable Order its claim in the liquidation proceeding of The Home Insurance Company (State of New Hampshire,

-28-

Merrimack Superior Court, Docket No. 217-2003-EQ-00106) in the amount of $14,200,000.

(vii) **Archdiocesan Settling Insurer Settlement Amounts.** Each Archdiocesan Settling Insurer shall pay to the Trust the sums set forth in their respective Insurance Settlement Agreement (the "Insurance Settlement Amounts") within the time set forth in their respective Insurance Settlement Agreements. In addition, all rights to receive payment of the Insurance Settlement Amounts under the Insurance Settlement Agreement shall be assigned to the Trust.

(vii) **Cash Contributions of Catholic Entities, Seminaries, Parish Settling Insurers and Seminary Settling Insurers.** Within ten days of the Confirmation Order becoming a Non-Appealable Order, the Catholic Entities and the Seminaries shall each pay to the Trust their separately agreed-upon contribution amounts. Each Parish Settling Insurer and Seminary Settling Insurer shall pay to the Trust within thirty days of the Effective Date the amount required by its respective Insurance Settlement Agreement. The total amount that will be paid to the Trust by the Catholic Entities, the Seminaries, the Parish Settling Insurers, and the Seminary Settling Insurers is $22,255,724. The payment obligations of the Catholic Entities, the Seminaries, the Parish Settling Insurers, and the Seminary Settling Insurers are several, not joint. Each Parish Settling Insurer and Seminary Settling Insurer is only required to pay the amount required by its respective Insurance Settlement Agreement. Also within ten days of the Confirmation Order becoming a Non-Appealable Order, the Archdiocesan Parishes shall assign to the Trust their claim in the liquidation proceeding of Home Insurance Company (State of New Hampshire, Merrimack Superior Court, Docket No. 217-2003-EQ-00106) in the amount of $1,500,000.

(viii) **Further Contributions of the Catholic Entities, Seminaries and the Other Insured Entities.** The contributions by the Catholic Entities, Seminaries and Other Insured Entities shall also include: (A) the consent to disallowance of all contribution and indemnity claims filed by such Catholic Entities and Other Insured Entities in this Chapter 11 case, all Class 3 Claims, any other claims against the Archdiocese, and all Related Insurance Claims, (B) consent of the Catholic Entities to the transfer of AMBP proceeds contemplated above, and (C) the consent of the Catholic Entities to the transfer the GIF proceeds as contemplated above. In consideration of the contributions referenced in subparagraph (vii) and this (viii), and in further consideration of the AMBP settlement and the GIF settlement referenced above and in Article IX, the Archdiocese agrees that it shall not increase the rate of assessments for Archdiocesan Parishes for a period of two (2) years following the Effective Date.

-29-

(c)    **Vesting**. On the Effective Date, all Trust Assets shall vest in the Trust, and the Archdiocese and other Protected Parties shall be deemed for all purposes to have transferred all Interests in the Trust Assets to the Trust. On the Effective Date, or as soon as practicable thereafter, the Reorganized Debtor or any other Protected Party, as applicable, shall take all actions reasonably necessary to transfer any Trust Assets to the Trust. Upon the transfer of control of Trust Assets in accordance with this paragraph, the Archdiocese and other Protected Parties shall have no further interest in or with respect to the Trust Assets.

**5.2.    PAYMENT OF PROFESSIONAL FEES**. The Trust shall pay all unpaid Allowed Professional Claims within seven (7) days after the later of the Effective Date or the Bankruptcy Court's order on such claims and shall pay or reimburse the Archdiocese for costs and expenses of publication of the notices of insurance settlement and plan confirmation within seven (7) days after the Effective Date, including the fees of the consultant employed in connection with the publication process. Professionals can elect to become a "Contributing Professional" by contributing up to ten percent (10%) of their previously unpaid Allowed Professional Claims to the Trust for distribution to Class 6 and Class 7 Claimants (the "Contributing Professionals' Funding"). Currently, the Contributing Professionals are: Stinson Leonard Street LLP.

**5.3.    PAYMENT AND TREATMENT OF CLAIMS OTHER THAN TORT CLAIMS.** Payments due to creditors on account of Allowed Non-Tort Claims will be paid pursuant to the terms of the Plan.

**5.4.    APPROVAL OF SECTION 363 SALES**. On or before the Effective Date, the Bankruptcy Court shall have (a) approved, either through separate order(s) or in the Confirmation Order, the Debtor's sale under Bankruptcy Code § 363, free and clear of all Interests, including all Liens, Claims, and encumbrances, of (i) the Archdiocesan Settling Insurer Entity Policies required to be purchased by the Archdiocesan Settling Insurers under the Archdiocese Insurance Settlement Agreements, and (ii) any other Interests in any policies or certificates issued by Settling Insurer Entities to be purchased pursuant to the requirements of the Archdiocese Insurance Settlement Agreements, and such order(s) shall have become a Non-Appealable Order(s); and (b) granted the Archdiocesan Settling Insurer Entities the protections available under Bankruptcy Code § 363(m).

**5.5.    APPROVAL OF SETTLEMENT AGREEMENTS**. Pursuant to Bankruptcy Code § 105 and in consideration for the classification, distributions, and other benefits provided under the Plan, including, inter alia, (i) the commitment by the Debtor to fund the Debtor's obligations under the Plan, (ii) the Archdiocese Insurance Settlement Agreements, and (iii) the commitment of the Catholic Entities, Seminaries, Parish Settling Insurers, and Seminary Settling Insurers to make contributions to the Trust, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims against the Debtor. On or before the Effective Date, the Bankruptcy Court shall have entered an order, which shall have become a Non-Appealable Order, approving such global compromise. The Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the other Archdiocese Parties, Parish Parties, the Seminary Parties, the Other Insured Entities, the Tort Claimants, including Future Tort Claimants, holders of other Claims, the Settling Insurer

-30-

Entities, and other parties in interest, and are fair, equitable, and within the range of reasonableness, and an appropriate exercise of each such Person's business judgment under the applicable laws of corporate governance. The entry of the Confirmation Order, once it becomes a Non-Appealable Order, may constitute the order approving the compromises and settlements required under this Section. For avoidance of any doubt, the settlement agreements solely between Archdiocesan Parishes and Parish Settling Insurers and settlements agreements solely between the Seminary and the Seminary Settling Insurers do not require Bankruptcy Court approval.

**5.6.   PAYMENTS EFFECTIVE UPON TENDER**. Whenever the Plan requires payment to be made to a creditor, such payment will be deemed made and effective upon tender thereof by the Trustee, the Debtor, or the Reorganized Debtor to the creditor to whom payment is due. If any creditor refuses a tender, the amount tendered and refused will be held by the Trust, the Debtor or the Reorganized Debtor for the benefit of that creditor pending final adjudication of the dispute. However, when and if the dispute is finally adjudicated and the creditor receives the funds previously tendered and refused, the creditor will be obliged to apply the funds in accordance with the Plan as of the date of the tender; and while the dispute is pending and after adjudication thereof, the creditor will not have the right to claim interest or other charges or to exercise any other rights which would be enforceable by the creditor, if the Trust, the Debtor or the Reorganized Debtor failed to pay the tendered payment.

## ARTICLE VI
## TRUST

**6.1.   ESTABLISHMENT OF TRUST.** On the Confirmation Date, the Trust shall be established in accordance with the Trust Documents. The Trust is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Debtor is the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3). The Trust Documents, including the Trust Agreement, are incorporated herein by reference.

**6.2.   ALLOCATIONS WITHIN AND DISTRIBUTIONS AND PAYMENTS FROM THE TRUST**.

   **(a)   General Corpus.** The following distributions and payments will be made from the general corpus of the trust:

      **(1)   Distributions.** Distributions on Class 6 Claims as determined by the Tort Claims Reviewer in accordance with this Plan, the Trust Agreement, and the Trust Distribution Plan.

      **(2)   Tort Claims Reviewer and Future Tort Claim Representative.** The Trustee shall retain the Tort Claims Reviewer. Fees payable to the Tort Claims Reviewer for review of Class 6 Claims shall be paid from the Trust. Fees payable to the Tort Claims Reviewer for review of Class 7 Claims shall be paid

-31-

from the Future Tort Claims Reserve Fund. The Future Tort Claim Representative's fees shall be paid from the Future Tort Claims Reserve Fund.

(3)   **Administrative Fees.** All fees, costs and expenses of administering the Trust as provided in the Plan and the Trust Agreement including: (i) as reasonably necessary to meet current liabilities and to maintain the value of the respective Assets of the Trust; (ii) to pay reasonable administrative expenses (including any taxes imposed on the Trust and any professional fees); and (iii) to satisfy other liabilities incurred by the Trust in accordance with the Plan or the Trust Agreement.

(4)   **Indemnity.** The Trust's obligations, if any, to defend, indemnify or hold harmless any Person expressly set out in the Plan shall be made from the corpus of the Trust. For the avoidance of doubt, the Trust's indemnification obligation as to Tort Claims and Related Insurance Claims includes the obligation to reimburse any insurers who are not Settling Insurer Entities for the share of defense costs paid or payable by such other insurers that are allocable to Settling Insurer Entities under Minnesota law for the same Tort Claim. Nothing in the foregoing is intended to suggest that such other insurers have such a claim against any Settling Insurer Entities.

(b)   **Future Tort Claim Reserve Fund.** The Trustee, in consultation with the Future Tort Claims Representative, shall establish a reserve, subject to approval by the Bankruptcy Court.

**6.3.   TAX MATTERS.** The Trust shall not be deemed to be the same legal entity as the Archdiocese, but only the assignee of certain assets of the Archdiocese and a representative of the Estate for delineated purposes within the meaning of Section 1123(b)(3) of the Bankruptcy Code. The Trust is expected to be tax exempt. The Trustee shall file such income tax and other returns and documents as are required to comply with the applicable provisions of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1 et seq., as may be amended, and the regulations promulgated thereunder, 31 C.F.R. §§ 900 et seq., and Minnesota law and the regulations promulgated thereunder, and shall pay from the Trust all taxes, assessments, and levies upon the Trust, if any.

**6.4.   APPOINTMENT OF THE TRUSTEE.** The initial Trustee has been identified in Exhibit D to this Plan. The Trustee shall commence serving as the Trustee on the Confirmation Date; provided, however, that the Trustee shall be permitted to act in accordance with the terms of the Trust Agreement from such earlier date, as authorized by the Archdiocese and the UCC, and shall be entitled to seek compensation in accordance with the terms of the Trust Agreement and the Plan.

**6.5.   RIGHTS AND RESPONSIBILITIES OF TRUSTEE**

(a)   The Trustee shall be deemed the Estate's representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights, powers, authority, responsibilities, and benefits specified in the Plan and the Trust Agreement,

including the powers of a trustee under Sections 704, 108 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004 (including commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges). If there is any inconsistency or ambiguity between the Confirmation Order and the Trust Agreement with respect to Trustee's authority to act, the provisions of the Trust Agreement shall control. Among other things, the Trustee: (1) shall liquidate and convert to cash the Trust Assets, make timely distributions and not unduly prolong the duration of the Trust; (2) may request an expedited determination of taxes of the Trust under Section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Trust for all taxable periods through the dissolution of the Trust; and (3) may retain professionals, including legal counsel, accountants, financial advisors, auditors, and other agents on behalf of the Trust, and at the Trust's sole expense, as necessary or desirable to carry out the obligations of the Trustee hereunder and under the Trust Agreement.

(b)    Notwithstanding the foregoing, the Archdiocese, the Reorganized Debtor, and the Trust acting for itself and on behalf the Estate, shall be deemed to have waived, effective upon the Effective Date:

i.    Any and all claims under Sections 547, 548, 549 and 550 of the Bankruptcy Code for the recovery of any sums paid to any Person who provided goods and services to the Archdiocese in the ordinary course of business prior to the Effective Date;

ii.    Any and all claims and Causes of Action: (i) seeking the substantive consolidation of the Archdiocese and any other Person or an order deeming any such Person and the Archdiocese to be an "alter-ego" of the other or any other similar claim or Cause of Action; (ii) to avoid, set aside or recover any payment or other transfer made to any Person under Sections 547, 548, 549, and 550 of the Bankruptcy Code; and (iii) any proceeding to avoid or set aside any interest of a Person in property under Section 544 of the Bankruptcy Code.

The Confirmation Order shall state that, without the permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced in any forum other than the Bankruptcy Court against the Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Trustee.

### 6.6.    SPECIAL DISTRIBUTION CONDITIONS.

(a)    It is the position of Plan Proponents that neither the Protected Parties, the Trust, nor the Settling Insurer will have any reporting obligations in respect of their contributions to the Trust, or in respect of any payments, settlements, resolutions, awards, or other claim liquidations by the Trust, under the reporting provisions of MSP or MMSEA. Prior to making any payments to any Tort Claimants, the Trust shall seek a statement or ruling from the United States Department of Health and Human Services ("HHS") that neither the Trust, the Protected Parties, nor the Settling Insurers have any reporting obligations under MMSEA with respect to payments to the Trust by the

-33-

Protected Parties or the Settling Insurers or payments by the Trust to Tort Claimants. Unless and until there is definitive regulatory, legislative, or judicial authority (as embodied in a Non-Appealable Order from the United States Court of Appeals for the Eighth Circuit or the United States Supreme Court), or a letter from the Secretary of Health and Human Services confirming that the Protected Parties and the Settling Insurers have no reporting obligations under MMSEA with respect to any settlements, payments, or other awards made by the Trust or with respect to contributions the Protected Parties and the Settling Insurers have made or will make to the Trust, the Trust shall, at its sole expense, in connection with the implementation of the Plan, act as a reporting agent for the Protected Parties and the Settling Insurers, and shall timely submit all reports that would be required to be made by the Protected Parties or any of the Settling Insurers under MMSEA on account of any Claims settled, resolved, paid, or otherwise liquidated by the Trust or with respect to contributions to the Trust, including reports that would be required if the Protected Parties and the Settling Insurers were determined to be "applicable plans" for purposes of MMSEA, or any of the Protected Parties and the Settling Insurers were otherwise found to have MMSEA reporting requirements. The Trust, in its role as reporting agent for the Protected Parties and the Settling Insurers, shall follow all applicable guidance published by Centers for Medicare and Medicaid Services ("CMS") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

**(b)**     If the Trust is required to act as a reporting agent for the Protected Parties or the Settling Insurers pursuant to the previous provision, the Trust shall provide a written certification to each of the Protected Parties and the Settling Insurers within ten (10) business days following the end of each calendar quarter, confirming that all reports to CMS required by the previous section have been submitted in a timely fashion, and identifying (a) any reports that were rejected or otherwise identified as noncompliant by CMS, along with the basis for such rejection or noncompliance, and (b) any payments to Medicare Beneficiaries that the Trust did not report to CMS.

**(c)**     With respect to any reports rejected or otherwise identified as noncompliant by CMS, the Trust shall, upon request by any Protected Party or any of the Settling Insurers, promptly provide copies of the original reports submitted to CMS, as well as any response received from CMS with respect to such reports; provided, however, that the Trust may redact from such copies the names, Social Security numbers other than the last four digits, health insurance claim numbers, taxpayer identification numbers, employer identification numbers, mailing addresses, telephone numbers, and dates of birth of the injured parties, Tort Claimants, guardians, conservators, and/or other personal representatives, as applicable. With respect to any such reports, the Trust shall reasonably undertake to remedy any issues of noncompliance identified by CMS and resubmit such reports to CMS, and, upon request by the Protected Parties or the Settling Insurers, provide the Protected Parties or the Settling Insurers copies of such resubmissions; provided, however, that the Trust may redact from such copies the names, Social Security numbers other than the last four digits, health insurance claim numbers, taxpayer identification numbers, employer identification numbers, mailing addresses, telephone numbers, and dates of birth of the injured parties, Tort Claimants, guardians, conservators, and/or other personal representatives, as applicable. In the event the Trust is

-34-

unable to remedy any issue of noncompliance, the provisions of Section 6.6 (g). shall apply.

**(d)**      If the Trust is required to act as a reporting agent for the Protected Parties or the Settling Insurers pursuant to the provisions of Section 6.6 (a), with respect to each Claim of a Medicare Beneficiary that was paid by the Trust and not disclosed to CMS, the Trust shall, upon request by the Archdiocese or any of the Settling Insurers, promptly provide the last four digits of the Tort Claimant's Social Security number, the year of the Tort Claimant's birth and any other information that may be necessary in the reasonable judgment of the Protected Parties or any of the Settling Insurers to satisfy their obligations, if any, under MMSEA, as well as the basis for the Trust's failure to report the payment. In the event the Protected Parties or any of the Settling Insurers inform the Trust that it disagrees with the Trust's decision not to report a Claim paid by the Trust, the Trust shall promptly report the payment to CMS. All documentation relied upon by the Trust in making a determination that a payment did not have to be reported to CMS shall be maintained for a minimum of six (6) years following such determination.

**(e)**      If the Trust is required to act as a reporting agent for the Protected Parties or the Settling Insurers pursuant to the provisions of Section 6.6 (a), the Trust shall make the reports and provide the certifications required by Sections 6.6 (a) and (b) until such time as the Protected Parties and each of the Settling Insurers determine, in their reasonable judgment, that they have no further legal obligation under MMSEA or otherwise to report any settlements, resolutions, payments, or liquidation determinations made by the Trust or contributions to the Trust. Furthermore, following any permitted cessation of reporting, or if reporting has not previously commenced due to the satisfaction of one or more of the conditions set forth in Section 6.6 (a), and if the Protected Parties or any of the Settling Insurers reasonably determines, based on subsequent legislative, administrative, regulatory, or judicial developments, that reporting is required, then the Trust shall promptly perform its obligations under Sections (a) and (b)

**(f)**      Section 6.6(a) is intended to be purely prophylactic in nature, and does not imply, and shall not constitute an admission, that the Protected Parties and/or the Settling Insurers are in fact "applicable plans" within the meaning of MMSEA, or that they have any legal obligation to report any actions undertaken by the Trust or contributions to the Trust under MMSEA or any other statute or regulation.

**(g)**      In the event that CMS concludes that reporting done by the Trust in accordance with Section (a) is or may be deficient in any way, and has not been corrected to the satisfaction of CMS in a timely manner, or if CMS communicates to the Trust, the Protected Parties or any of the Settling Insurers a concern with respect to the sufficiency or timeliness of such reporting, or there appears to the Protected Parties or any of the Settling Insurers a reasonable basis for a concern with respect to the sufficiency or timeliness of such reporting or non-reporting based upon the information received pursuant to Section 6.6 (b), (c), or (d), or other credible information, then each of the Protected Parties and the Settling Insurers shall have the right to submit its own reports to CMS under MMSEA, and the Trust shall provide to any party that elects to file its own

-35-

reports such information as the electing party may require in order to comply with MMSEA, including the full reports filed by the Trust pursuant to Section 6.6 (a) without any redactions. The Protected Parties and the Settling Insurers shall keep any information they receive from the Trust pursuant to this Section 6.6 (g) confidential and shall not use such information for any purpose other than meeting obligations under MMSEA.

(h)    Notwithstanding any other provisions hereof, the Trust shall not be required to report as required by this Section until each Person on whose behalf the Trust is required to report shall have provided its Medicare Reporting Number, if one exists. Moreover, the Trust shall have no indemnification obligation under (k) of this Section to such Person for any penalty, interest, or sanction with respect to a Claim that may arise solely on account of such Person's failure timely to provide its Medicare Reporting Number, if one exists, to the Trust in response to a timely request by the Trust for such Medicare Reporting Number. However, nothing herein relieves the Trust from its reporting obligations with respect to each Person who provides the Trust with its Medicare Reporting Number. The Trust shall indemnify each Archdicoese Party, Catholic Entity, or Settling Insurer for any failure to report payments to Medicare eligible Tort Claimants on behalf of Persons who have supplied Medicare Reporting Numbers, if any exists.

(i)    In connection with the implementation of the Plan, the Trustee(s) of the Trust shall obtain prior to remittance of funds to Tort Claimants' counsel or the Tort Claimant, if pro se, in respect of any Tort Claim a certification from the Tort Claimant to be paid that said Tort Claimant has or will provide for the payment and/or resolution of any obligations owing or potentially owing under MSP relating to such Tort Claim; otherwise the Trust shall withhold from any payment to the Tort Claimant funds sufficient to assure that any obligations owing or potentially owing under MSP relating to such Tort Claim are paid to CMS. The Trust shall provide a quarterly certification of its compliance with this Section to each of the Protected Parties and the Settling Insurers, and permit reasonable audits by such Persons, no more often than quarterly, to confirm the Trust's compliance with this Section. For the avoidance of doubt, the Trust shall be obligated to comply with the requirements of this Section regardless of whether the Protected Parties or any of the Settling Insurers elects to file its own reports under MMSEA pursuant to Section 6.6 (g).

(j)    Compliance with the provisions of this Section shall be a material obligation of the Trust in favor of the Settling Insurers under any settlement agreements between any of those insurers and Archdiocese, which authorizes funding to the Trust.

(k)    The Trust shall defend, indemnify and hold harmless the Protected Parties and the Settling Insurers from any Medicare Claims, and any Claims related to the Trust's obligations under this Section

(l)    The Trust shall establish a "Medicare Holdback" and such Medicare Holdback shall consist of the proceeds of the Archdiocese Home Liquidation Claim (as described in Section 5.1(b)(2)(vi)). The Trust shall not distribute any portion of the Medicare Holdback until such time as the Medicare Procedures (defined below) are

-36-

completed by the Trust.  The "Medicare Procedures" to be completed by the Trust are as follows: (i) immediately upon confirmation, the Trustee shall make a query to the Social Security Administration (the "SSA Query"), with respect to each Tort Claimant, to determine whether each Tort Claimant is eligible to receive, is receiving, or has received Medicare benefits ("Medicare Eligible"); (ii) within ten (10) calendar days after the Confirmation Date, the Trust shall provide to the Settling Insurers, and, if requested, the Archdiocese, information sufficient to allow the Settling Insurers to perform their own SSA queries to the extent they wish to do so; (iii) in the event that one or more Tort Claimants is/are identified through the SSA Query process as Medicare Eligible, the Trust shall complete a query to the CMS for each such Tort Claimant to determine whether any payment ("Conditional Payment") made pursuant to Section 1395y(b)(2)(B) of the MSPA has been made to or on behalf of that Tort Claimant arising from or relating to treatment for Abuse; (iv) if any Conditional Payment has been made to or on behalf of that Tort Claimant, the Trustee shall, within the time period called for by the MSPA, reimburse the appropriate Medicare Trust Fund for the appropriate amount, and submit the required information for that Tort Claimant to the appropriate agency of the United States government; and (c) upon resolution of all CMS inquiries or matters relating to Sections 6.6(l)(iii) and (iv) above, the Medicare Holdback shall be immediately available for distribution by the Trust.  The Trustee's obligation to make the reimbursements required by Section 6.6(iv) above and to indemnify the Settling Insurers with respect to Medicare Claims, Tort Claims, and Related Insurance Claims is not limited to the amount of the Medicare Holdback.

**6.7.   INVESTMENT POWERS; PERMITTED CASH EXPENDITURES.** All funds held by the Trust shall be invested in cash or short-term highly liquid investments that are readily convertible to known amounts of cash as more particularly described in the Trust Agreement. The Trustee may expend the cash of the Trust.

**6.8.   REGISTRY OF BENEFICIAL INTERESTS.** To evidence the beneficial interest in the Trust of each holder of such an interest, the Trustee shall maintain a registry of beneficiaries.

**6.9.   NON-TRANSFERABILITY OF INTERESTS.** Any transfer of an interest in the Trust shall not be effective until and unless the Trustee receives written notice of such transfer.

**6.10.   TERMINATION.** The Trust shall terminate after its liquidation, administration and distribution of the Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth herein or in the Trust Agreement. The Trust shall terminate no later than the eighth (8th) anniversary of the Effective Date.

**6.11.   IMMUNITY; LIABILITY; INDEMNIFICATION**

**(a)**   Neither the Reorganized Debtor or its respective member, designees, or professionals, nor the Trustee or any duly designated agent or representative of the Trustee, nor their respective employees, shall be liable for the act or omission of any other member, designee, agent, or representative of such Trustee, except that the Trustee

-37-

shall be liable for its specific acts or omissions resulting from such Trustee's misconduct, gross negligence, fraud, or breach of the fiduciary duty of loyalty. The Trustee may, in connection with the performance of its functions and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors, and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, the Trustee shall not be under any obligation to consult with its attorneys, accountants, financial advisors, or agents, and its determination not to do so shall not result in the imposition of liability on the Trustee unless such determination is based on the Trustee's recklessness, gross negligence, willful misconduct, or fraud.

(b)     No recourse shall ever be had, directly or indirectly, against the Trustee personally, or against any employee, contractor, agent, attorney, accountant or other professional retained in accordance with the terms of the Trust Agreement or the Plan by the Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or Trust Agreement whatsoever executed by the Trustee in implementation of this Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the Trustee under the Plan for any purpose authorized by the Trust Agreement or the Plan, it being expressly understood and agreed that all such liabilities, covenants, and Trust Agreements of the Trust whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Trust Assets or such part thereof as shall under the term of any such Trust Agreement be liable therefore or shall be evidence only of a right of payment out of the Trust Assets. Notwithstanding the foregoing, the Trustee may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud; and if liability on such grounds is established, recourse may be had directly against the Trustee. The Trust shall not be covered by a bond.

(c)     The Trust shall defend, indemnify and hold the Trustee, its officers, directors, agents, representatives, and employees to the fullest extent that a corporation or trust organized under the laws of Minnesota entitled to indemnify and defend its directors, trustees, officers and employees against any and all liabilities, expenses, claims, damages or losses incurred by them in the performance of their duties hereunder.

(1)     Additionally, the Reorganized Debtor, and each of their respective agents, who was or is a party, or is threatened to be made a party to any threatened or pending judicial, administrative or arbitrative action, by reason of any act or omission of the Trust or Trustee or respective agents, with respect to: (i) the Chapter 11 case and any act or omission undertaken by them prior to the commencement thereof, (ii) the assessment or liquidation of any Class 6 and Class 7 Claims, (iii) the administration of the Trust and the implementation of the Trust Distribution Plan, or (iii) any and all activities in connection with the Trust Agreement, shall be indemnified and defended by the Trust, to the fullest extent that a corporation or trust organized under the laws of Minnesota is from time to time entitled to indemnify and defend its officers, directors, trustees and employees, against reasonable expenses, costs and fees (including attorneys' fees

-38-

and costs), judgments, awards, amounts paid in settlement and liabilities of all kinds incurred by the Debtor or Reorganized Debtor, and their respective professionals, officers, and directors, in connection with or resulting from such action, suit or proceeding, provided such expenditures have been approved by the Trust in advance such approval not to be unreasonably withheld.

(2)     Reasonable expenses, costs, and fees (including attorneys' fees and costs) incurred by or on behalf of a Trustee, the Debtor, the Reorganized Debtor, and their respective agents in connection with any action, suit or proceeding, whether civil, administrative, or arbitrative, from which they are entitled to be indemnified by the Trust, shall be paid by the Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of such Trustee, the Debtor, the Reorganized Debtor, and their respective agents, to repay such amount in the event that it shall be determined ultimately by Non-Appealable Order that such Trustee, the Debtor, the Reorganized Debtor, and their respective professionals, officers and directors is not entitled to be indemnified by the Trust.

## 6.12.   TREATMENT OF TORT CLAIMS

**(a)     TRUST LIABILITY**. On the Effective Date, the Trust shall automatically and without further act or deed assume i) all liability, if any, of the Protected Parties and Settling Insurer Entities in respect of Channeled Claims, subject to Section 17.7; and ii) the responsibility for preserving and managing Trust Assets and distributing Trust Assets. The Trust shall defend and indemnify the Protected Parties and the Settling Insurer Entities in respect of Tort Claims, Related Insurance Claims, and Medicare Claims.

**(b)     ASSESSMENT**.

(1)     Each Tort Claim will be assessed by the Tort Claims Reviewer in accordance with the Trust Distribution Plan to determine whether the Tort Claimant is entitled to a distribution under the Trust. The Archdiocese or the Reorganized Debtor shall reasonably cooperate with the Tort Claims Reviewer and the Trustee as requested by the Tort Claims Reviewer or the Trustee in connection with any inquiries by either in the administration of the Trust Distribution Plan.

(2)     Each Tort Claimant may elect, in lieu of assessment by the Tort Claims Reviewer, to have his Tort Claim treated pursuant to the convenience claim process as provided by the Trust Distribution Plan ("Convenience Claim").

**(c)     DISTRIBUTIONS TO TORT CLAIMANTS**. Tort Claimants electing to be treated as a Distribution Plan Claimant, who the Tort Claims Reviewer determines to be entitled to a distribution, and Tort Claimants electing treatment as Convenience Claimants will both receive their distributions from the Trust in the amount(s) and at the time(s) provided for in the Trust Distribution Plan. Any payment on a Tort Claim

CORE/3003233.0002/140935489.14

constitutes payment for damages on account of personal physical injuries or sickness arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended. For the avoidance of doubt, Tort Claimants' recovery on their Class 6 and Class 7 Claims shall be limited to the distributions they are entitled to, if any, from the Trust under the Trust Distribution Plan, and they shall not be entitled to collect personally or otherwise any additional amounts whatsoever on their Tort Claims from any Protected Party or any Protected Party's assets, or from any Settling Insurer Entities or Settling Insurer Entities' assets, even if they are denied a distribution pursuant to the Trust Distribution Plan. For the avoidance of doubt, the Future Tort Claims Reserve Fund shall be the sole source of payment to Class 7 Claimants on account of Class 7 Claims.

(d)     **DISMISSAL OF PENDING LITIGATION**. Within 21 days after Effective Date, all Claims arising out of or related to Tort Claims asserted in any lawsuit against any Protected Party currently pending in state court shall be dismissed with prejudice and without fees or costs being recoverable against any Protected Party or by any Protected Party against the Tort Claimant.

(e)     **RELEASE**. Prior to any Tort Claimant receiving a payment from the Trust, the claimant shall sign the Release and Medicare Certification attached as Exhibit E.

(f)     **OBJECTIONS DEEMED WITHDRAWN**. Any objection asserted by the Archdiocese to a Tort Claim pending as of the Effective Date is deemed withdrawn without prejudice. Whether and the extent to which any Settling Insurer who filed an objection prior to the Effective Date is entitled to have filed such objection and to continue to assert such objection after the Effective Date shall be determined by the Bankruptcy Court in accordance with applicable procedures.

(g)     **OBJECTIONS AND LITIGATION AFTER THE EFFECTIVE DATE**. As of the Effective Date, the Trustee shall have the sole and exclusive right to object to Tort Claims. The Reorganized Debtor shall have no right to object to any Tort Claims after confirmation of the Plan.

(h)     **CLAIM WITHDRAWAL**. A Tort Claimant may withdraw his or her Tort Claim at any time on written notice to the Trustee. If withdrawn, (a) the Tort Claim will be withdrawn with prejudice and may not be reasserted, and such Tort Claimant shall still be subject to the Discharge Injunction, the Channeling Injunctions, and the Supplemental Insurer Injunction as provided by this Plan; and (b) any reserve maintained by the Trust on account of such Tort Claim shall revert to the Trust as a Trust Asset for distribution in accordance with the Plan and Trust Distribution Plan.

(i)     **COUNSELING FUND**. Consistent with the Ramsey County Agreement, Tort Claimants may use their distributions to access ongoing reasonable and appropriate counseling at their own discretion.

CORE/3003233.0002/140935489.14

## ARTICLE VII
## SETTLING INSURERS

**7.1.    INSURANCE SETTLEMENT AGREEMENTS.** Once the Bankruptcy Court issues an order approving the Archdiocese Insurance Settlement Agreements in accordance with Section 5.4 and 5.5 and such order(s) becomes a Non-Appealable Order(s), the Archdiocese Insurance Settlement Agreements shall automatically be, and hereby are, incorporated by reference and made part of the Plan as if set forth fully herein.  Upon the Confirmation Order becoming a Non-Appealable Order, the Insurance Settlement Agreements are fully binding on the Trust, Protected Parties, the Reorganized Debtor, all Committees, Settling Insurer Entities, the Future Claimant Representative, the Tort Claimants, and parties in interest, and any of the foregoing Persons' successors.

**7.2.    RESOLUTION OF CLAIMS INVOLVING SETTLING INSURERS.** The Confirmation Order shall provide that within 10 days of the Effective Date, the Archdiocese and the Archdiocesan Settling Insurers shall effect dismissal with prejudice of their claims against each other in the Insurance Coverage Adversary Proceeding, with each side to bear its own fees and costs.

**7.3.    THE SETTLING INSURERS' PAYMENTS**. The Settling Insurers will pay to the Trust the sums set forth in their respective Insurance Settlement Agreement within the time set forth in their respective Insurance Settlement Agreements.

**7.4.    JUDGMENT REDUCTION**.

**(a)**    In any proceeding, suit, or action to recover or obtain insurance coverage or proceeds for a Tort Claim from an insurer that is not a Settling Insurer Entity ("Other Insurer"), the following shall apply:

**(1)**    If the Trust, a Protected Party, a Tort Claimant, or any other Person bound by the Plan obtains a judgment against the Other Insurer, the judgment shall automatically be reduced by the amount, if any, that all Settling Insurer Entities would have been liable to pay such Other Insurer as a result of the Other Insurer's Related Insurance Claim against a Settling Insurer Entity(ies).  To ensure that such a reduction is accomplished, (a) the Person pursuing the related insurance claim  (whether the Trust, the Protected Parties, a Tort Claimant, or any other Person bound by the Plan) shall inform the Other Insurer of the existence of this judgment reduction provision at the time a claim is first asserted against the Other Insurer; (b) the Other Insurer's Related Insurance Claim against a Settling Insurer Entity may be asserted as a defense in any proceeding, suit, or action to obtain insurance coverage or proceeds from that Other Insurer for a Tort Claim; and (c) to the extent the Other Insurer's Related Insurance Claim against a Settling Insurer Entity is determined to be valid by the court presiding over such action, the liability of the Other Insurer shall be reduced dollar for dollar by the amount so determined.

-41-

(2)    If, for any reason, any Other Insurer asserts a claim against a Settling Insurer Entity that it is entitled to obtain a sum certain from any of the Settling Insurer Entities as a result of a Related Insurance Claim, the Person who obtained a judgment or settlement against the Other Insurer shall reduce its judgment or Claim against, or settlement with, such Other Insurer to the extent necessary to satisfy such Related Insurance Claims against the Settling Insurer Entities. To ensure that such a reduction is accomplished, the Settling Insurer Entities shall be entitled to assert this provision as a defense to any action against them brought by any Other Insurer and shall be entitled to request that the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect the Settling Insurer Entities from any liability for the Related Insurance Claim.

(b)    As provided in the Insurance Settlement Agreements, each Settling Insurer agrees that it will not pursue any Related Insurance Claim that it might have against any Other Insurer who does not assert a Related Insurance Claim against a corresponding Settling Insurer Entity. Notwithstanding the foregoing, if a Person pursues a Related Insurance Claim against a Settling Insurer Entity, then such Settling Insurer Entity shall be free to assert its Related Insurance Claims against such Person.

(c)    As provided in the Insurance Settlement Agreements, the Reorganized Debtor and the Trust shall use their best efforts to obtain, from all Other Insurers with which they execute a settlement agreement after the Effective Date, agreements similar to those contained in this Section.

**7.5.    ADDITIONAL        DOCUMENTATION;        NON-MATERIAL MODIFICATIONS**. From and after the Effective Date, the Reorganized Debtor and the Settling Insurers shall be authorized to enter into, execute, adopt, deliver, or implement all notes, contracts, security agreements, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the settlements contained in this Article without further order of the Bankruptcy Court. Additionally, the Reorganized Debtor and the Settling Insurers may make technical or immaterial alterations, amendments, modifications, or supplements to the terms of any Insurance Settlement Agreement. A class of Claims that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or supplemented under this Section, if the proposed alteration, amendment, modification, or supplement does not materially and adversely change the treatment of the Claims within such class. An order of the Bankruptcy Court approving any amendment or modification made pursuant to this Section shall constitute an order in aid of consummation of the Plan and shall not require the re-solicitation of votes on the Plan.

**7.6.    TRUST INDEMNIFICATION OBLIGATIONS.** From and after the Effective Date, the Trust shall defend, indemnify, and hold harmless the Settling Insurer Entities with respect to any and all Tort Claims, Medicare Claims, and Related Insurance Claims, including: all Tort Claims and Related Insurance Claims made by (i) any Person claiming to be insured (as a named insured, additional insured, or otherwise) under any Settling Insurer Entity Policies; (ii) any Person who has made, will make, or can make a Tort Claim or Related Insurance Claim; and (iii) any Person who has actually or allegedly acquired or been assigned the right to make a

-42-

CORE/3003233.0002/140935489.14

Claim under any Settling Insurer Entity Policies. The Settling Insurer Entities shall have the right to defend any Claims identified in this section and shall do so in good faith. The Settling Insurer Entities may undertake the defense of any Claim on receipt of such Claim. The Settling Insurer Entities shall notify the Trust as soon as practicable of any Claims identified in this section and of their choice of counsel. The Settling Insurer Entities' defense of any Claims shall have no effect on the obligations of the Trust, as applicable, to indemnify the Settling Insurer Entities for such Claims, as set forth in this section. The Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by the Settling Insurer Entities in defending such Claims. In defense of any such Claims, the Settling Insurer Entities may settle or otherwise resolve a Claim consistent with the terms of this Plan and with the prior consent of the indemnifying party, which consent shall not be unreasonably withheld.

**7.7.  CATHOLIC ENTITY/ OTHER INSURED ENTITY/ SEMINARIES WAIVER/ CONSENT/ FEES**.

(a)     **In consideration** of the releases and Channeling Injunction and other covenants set forth herein, subject to the occurrence of the Effective Date, each of the Archdiocese Parties:

(1)     Irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Claims and/or Interests they have or might have now or in the future against the other Protected Parties, the Reorganized Debtor, and the Settling Insurer Entities with respect to any and all Related Insurance Claims, any contribution, subrogation, indemnification, or other similar Claim arising from or relating to Tort Claims, and any Settling Insurer Entity Policies; and

(2)     Consents to the sale of Archdiocese Parties' Claims and/or Interests, if any, in the Settling Insurer Entity Policies in accordance with this Insurance Settlement Agreements and to the contribution of the proceeds from such sale and settlement to the Trust, as provided in the Plan.

(b)     In consideration of the releases and Channeling Injunction and other covenants set forth herein, subject to the occurrence of the Effective Date, each of the Catholic Entities:

(1)     Irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Interests they have or might have now or in the future against the other Protected Parties, the Reorganized Debtor, and the Settling Insurer Entities with respect to any and all Related Insurance Claims, any contribution and indemnity claims arising from or relating to Tort Claims, and any Settling Insurer Entity Policies; and

(2)     Consents to the sale of such Catholic Entity's interests, if any, in the Archdiocese Settling Insurer Entity Policies in accordance with the

-43-

Archdiocese Insurance Settlement Agreements and to the contribution of the proceeds from such sales and settlements to the Trust, as provided in the Plan.

(c)     In consideration of the releases and Channeling Injunction and other covenants set forth herein, subject to the occurrence of the Effective Date, each of the Other Insured Entities:

(1)     Irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Interests they have or might have now or in the future against the other Protected Parties, the Reorganized Debtor, and the Settling Insurer Entities in connection with the Settling Insurer Entity Policies with respect to any and all Related Insurance Claims, and any contribution and indemnity claims arising from or relating to Tort Claims; and

(2)     Consents to the sale of such Other Insured Entity's Interests, if any, in the Archdiocesan Settling Insurer Entity Policies in accordance with the applicable Archdiocese Insurance Settlement Agreements and to the contribution of the proceeds from such sales and settlements to the Trust, as provided in the Plan.

(d)     In consideration of the releases and Channeling Injunction and other covenants set forth herein, subject to the occurrence of the Effective Date, each of the Seminaries:

(1)     Irrevocably and unconditionally, without limitation, releases, acquits, forever discharges, and waives any Interests they have or might have now or in the future against the other Protected Parties, the Reorganized Debtor, and the Settling Insurer Entities with respect to any and all Related Insurance Claims, and any contribution and indemnity claims arising from or relating to Tort Claims, and any Settling Insurer Entity Policies; and

(2)     Consents to the sale of such Seminaries' Interests, if any, in the Archdiocesan Settling Insurer Entity Policies in accordance with the applicable Archdiocese Insurance Settlement Agreements and to the contribution of the proceeds from such sales and settlements to the Trust, as provided in the Plan.

(e)     Nothing in Sections 7.7(a) through 7.7(c) shall be construed to bar either (a) a Claim based on Abuse against a Person who is not a Protected Party or a Settling Insurer Entity or (b) a Claim by such Person for insurance coverage in connection with a Claim described in the foregoing subsection (a) under an insurance policy other than the Settling Insurer Entity Policies.

**7.8.     DEBTOR WAIVER AND RELEASE OF CLAIMS.** In consideration of any payments to be made by the Archdiocesan Settling Insurers and other consideration provided by each Archdiocesan Settling Insurer, upon payment by the Archdiocesan Settling Insurers of their respective settlement amounts under the corresponding Archdiocesan Insurance Settlement Agreements, the Archdiocese Parties irrevocably and unconditionally, without limitation, release,

-44-

acquit, forever discharge, and waive any Interests they have or might have now or in the future (a) under the Settling Insurer Entity Policies; (b) against the Settling Insurer Entities with respect to any Channeled Claim; and (c) against the Catholic Entities, Other Insured Entities and the Seminaries with respect to any Channeled Claim.

**7.9.    PROTECTED PARTY INJUNCTION DEFENSE COSTS.** The Trust will indemnify any Protected Party for all reasonable attorneys' fees and costs (pre-approved by the Trust) incurred by such Protected Party in upholding, defending, or enforcing the protection of the Channeling Injunction and Supplemental Insurer Injunction except as to Covered Non-Tort Claims.

## ARTICLE VIII
## ESTIMATIONS/ASSESSMENTS

**8.1.    ESTIMATIONS/ASSESSMENTS ARE NOT BINDING.** Estimations of Class 6 Claims for purposes of voting, and the determination of qualification, assignment of points, and payment of distributions of Tort Claims under the Trust Distribution Plan:

> **(a)**    shall not (i) constitute an admission of liability by any Person with respect to such Claims; (ii) have any res judicata or collateral estoppel effect on any Person; (iii) constitute a settlement, release, accord, satisfaction, or novation of such Claims; (iv) be used by any third-party as a defense to any alleged joint liability; or (v) otherwise prejudice any rights of the Trust, Protected Parties, Settling Insurer Entities, and Tort Claimants in all other contexts or forums; and

> **(b)**    shall not be deemed to constitute a determination of liability of any Person;

> **(c)**    The rights of the parties under any Archdiocese Insurance Settlement Agreements shall be determined exclusively under the applicable Archdiocese Insurance Settlement Agreements and those provisions of the applicable Approval Order approving such Archdiocese Insurance Settlement Agreements, and the Confirmation Order.

## ARTICLE IX
## OTHER SETTLEMENTS EMBODIED IN PLAN

**9.1.    AMBP SETTLEMENT**.  Ownership of certain monies in the AMBP is disputed. The Archdiocese and the trustees of the AMBP have agreed to resolve this dispute upon payment by the AMBP to the Archdiocese of the sum of $4,000,000 from the reserve accounts established under the AMBP. Amounts payable under Section 5.1(b) in respect to the AMBP represent a portion of the payments previously made by Catholic Entities to the AMBP and represent an additional contribution by the Catholic Entities, including Parishes, as participants in the AMBP. The payment will be made to the Archdiocese within one business day of the Confirmation Order becoming a Non-Appealable Order and the Archdiocese will promptly pay this amount to the Trust as a component of the Debtor Cash Contribution contemplated under Section 5.1(b) of the Plan, which payment shall be free and clear of any interest of the Archdiocese or AMBP or the Estate of the Archdiocese.  In consideration of this settlement, the Archdiocese agrees that it shall

not increase the rate of assessments for parishes for a period of two (2) years following the Effective Date.  This settlement shall be effective upon entry of the Confirmation Order. The payment contemplated under this Section shall represent a settlement and compromise of any and all claims of the Archdiocese, creditors of the Archdiocese in this case, any other party-in-interest, or the Estate to any amounts held in the AMBP.

In addition, to the extent permitted under applicable law, the Reorganized Debtor shall cooperate with the trustees of the AMBP following the Effective Date to convert the AMBP to a VEBA Trust (or similar trust mechanism).  Notwithstanding anything to the contrary contained herein, neither the Archdiocese nor the trustees of the AMBP shall be required to enter into any trust or other arrangement that will require that the AMBP, or any successor trust mechanism, provide coverage for services or procedures contrary to the teachings of the Catholic Church. The Archdiocese, in cooperation with the trustees of the AMBP, reserves the right to seek the termination of the AMBP if the conversion of the AMBP is impossible or proves to be unreasonably expensive or impractical or in the event that it becomes impossible or impractical to maintain rates for the AMBP in an amount sufficient to pay future claims.  The Archdiocese shall also reasonably cooperate with the trustees of the AMBP to investigate and pursue alternative mechanisms for administration of the AMBP and shall solicit proposals from qualified third party providers for such services.

**9.2.    RILEY FUND SETTLEMENT**. The Archdiocese and the Cathedral of Saint Paul (the "Cathedral Corporation") have asserted competing claims to a trust fund (the "Riley Fund") created by William C. Riley under a will dated September 16, 1929. In order to facilitate confirmation of this Plan and to advance their respective missions, the Archdiocese and the Cathedral Corporation have agreed to the following settlement, which shall be effective once the Confirmation Order becomes a Non-Appealable Order: In exchange for a release of any and all Claims and Causes of Action against the Cathedral Corporation, the Cathedral Corporation shall waive its claim to the entire balance of the Riley Fund (approximately $2,594,264.83) (the "Riley Settlement Amount"). The Archdiocese, which currently holds the Riley Fund, shall pay the Riley Settlement Amount to the Trust within one business day of the Confirmation Order becoming a Non-Appealable Order. The release shall be immediately effective without further action once the Confirmation Order becomes a Non-Appealable Order. The Cathedral Corporation and the Archdiocese shall each retain their respective rights and obligations under the existing lease of the Cathedral of Saint Paul.

**9.3.    GIF SETTLEMENT**.  Within one business day of the Confirmation Order becoming a Non-Appealable Order, the Reorganized Debtor will cause the GIF to pay $6,000,000 to the Trust (the "GIF Tort Claim Contribution Amount").  The Archdiocese has set participant premiums for the GIF for the period through June 30, 2019.  The Archdiocese anticipates that premiums will be sufficient to pay all known claims and incurred but not reported claims (other than Tort Claims), plus administrative expenses, expenses related to maintaining workers compensation reserves and deposits, and premiums for reinsurance ("GIF Claims and Expenses") and the GIF Tort Claim Contribution Amount.  The Archdiocese shall not alter premiums to the GIF prior to June 30, 2019, except to the extent necessary to pay GIF Claims and Expenses and the minimum GIF Tort Claim Contribution Amount.  The GIF Tort Claim Contribution Amount will be deemed to be in satisfaction of claims of participants related to Tort Claims and as additional consideration for the Channeling Injunction set forth in this Plan.  Any amount not

-46-

required to be paid to the Trust under this subparagraph shall be held in the GIF for administration in accordance with prior practices.  Except as provided herein, any claims related to the GIF, including any claims arising from prior contribution to the GIF, will be disallowed and receive no distribution.

      **9.4.    HIGH SCHOOLS LAND SALE SETTLEMENT**. Confirmation of the Plan shall constitute (i) authorization for the conveyance by the Archdiocese to the High Schools of the property interests described below for a gross consideration of $4,000,000, (ii) approval of the High School Purchase Agreements referenced below, and (iii) authorization for the Archdiocese to execute such documents and instruments as may be required to consummate the proposed sales, including a restriction or condition requiring the real property to be used by the High Schools, their successor and assigns, for Catholic educational purposes unless waived, released or terminated by the Archdiocese (the "Conveyance"). The restriction will not be binding on current or future lienholders.

      The interests to be conveyed include any and all interest the Archdiocese may have in the real property upon which each of the High Schools' campuses are located, together with any interest of the Archdiocese in any related fixtures, leases and other contracts, furniture and improvements used in the operation of the High Schools. The Conveyance shall be made under Section 363 and shall be free and clear of all liens, interests and encumbrances, except (i) all existing leases between the Archdiocese and each of the High Schools; (ii) mortgages of record; (iii) such liens and encumbrances as may be accepted by the parties. The proposed aggregate purchase price of $4,000,000 shall represent a net payment to the Archdiocese and shall not be subject to reduction or deduction for any operating, mortgage, title or other cost or expense.

      The proposed sale shall be made pursuant to the terms and condition set forth in the purchase and settlement agreements (the "High School Purchase Agreements") entered into among the High Schools and the Archdiocese. The High School Purchase Agreements shall include an allocation of the purchase price among the High Schools and shall include such other provisions, including a mutual release of claims, as may be agreed upon by the parties.

      The Archdiocese agrees that the Trust may enforce the High School Purchase Agreement to the extent provided by applicable law.  Additionally, under the High School Purchase Agreements, the Archdiocese shall assume all costs related to the enforcement of the buyers under the High School Purchase Agreements, including attorneys' fees, provided that the Archdiocese approves the retention of counsel (such approval not to be unreasonably withheld).  The Archdiocese shall also indemnify the Trust for damages and costs caused by any delay by the High Schools in the payment of the purchase price under of the High School Purchase Agreements, including interest and the costs associated with any additional distributions the Trust is required to make due to the delay, but not including punitive, consequential and non-economic costs or damages.

      The Conveyance shall be by quit claim deed on an "as is," "where is" basis. The Archdiocese shall file the High School Purchase Agreements with the Bankruptcy Court at least 21 days prior to the Confirmation Hearing.

CORE/3003233.0002/140935489.14

As a condition to the purchase contemplated under this Section 9.4, the High Schools shall be included as Protected Parties under the Plan.

## ARTICLE X
## INSURANCE POLICIES

**10.1.  CONTINUATION OF INSURANCE POLICIES.** Except to the extent any Archdiocesan Entity Insurance Policies are bought back as set forth in and pursuant to any Insurance Settlement Agreements or as otherwise provided by the terms of the Plan, all Archdiocese Entity Insurance Policies shall, as applicable, either be deemed assumed by the Reorganized Debtor pursuant to Sections 365, 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code, to the extent such Archdiocese Entity Insurance Policy is or was an executory contract of the Archdiocese, or continued in accordance with its terms pursuant to Section 1123(a)(5)(A) of the Bankruptcy Code, to the extent such Insurance Policy is not an executory contract of the Archdiocese, such that each of the parties' contractual, legal, and equitable rights under each such Archdiocese Entity Insurance Policy shall remain unaltered. All such Archdiocese Entity Insurance Policies are listed on Exhibit I. To the extent that any or all such Archdiocese Entity Insurance Policies are considered to be executory contracts, then the Plan shall constitute a motion to assume such Archdiocese Entity Insurance Policies in connection with the Plan. Subject to the occurrence of the Effective Date, the Confirmation Order shall approve such assumption pursuant to §§ 365(a), 1123(a)(5)(A), and 1123(b)(2) of the Bankruptcy Code and include a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtor, the Estate, and all parties in interest in this Chapter 11 case. Unless otherwise determined by the Bankruptcy Court pursuant to an order which becomes a Non-Appealable Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Archdiocese existing as of the Effective Date with respect to any Archdiocese Entity Insurance Policy. The Archdiocese reserves the right to seek rejection of any Archdiocese Entity Insurance Policy or other available relief prior to the Effective Date.

## ARTICLE XI
## PROCEDURES FOR GENERAL CLAIMS ADMINISTRATION

**11.1.  RESERVATION OF RIGHTS TO OBJECT TO NON-TORT CLAIMS**. Unless a Claim is expressly described as an allowed Claim pursuant to or under the Plan, or otherwise becomes an allowed Claim prior to the Effective Date, upon the Effective Date, the Reorganized Debtor or the Trustee, as applicable, shall be deemed to have a reservation of any and all rights, Interests, and objections of the Archdiocese, the UCC, or the Estate to any and all Claims and motions or requests for the payment of or on account of Claims, whether administrative expense, priority, secured, or unsecured, including any and all rights, Interests and objections to the validity or amount of any and all alleged Claims, Liens, and Interests, whether under the Bankruptcy Code, other applicable law, or contract. The failure to object to any Claim in this Chapter 11 case shall be without prejudice to the Reorganized Debtor's or the Trustee's, as applicable, right to contest or otherwise defend against such Claim in the Bankruptcy Court as set forth in this Section when and if such Claim is sought to be enforced by the holder of such Claim.

**11.2.  OBJECTIONS TO NON-TORT CLAIMS**. Prior to the Effective Date, the Archdiocese shall have the authority to pursue any objection to the allowance of any non-Tort

CORE/3003233.0002/140935489.14

Claim. From and after the Effective Date, the Reorganized Debtor or the Trustee, as applicable, will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making distributions, if any, with respect to non-Tort Claims (including those claims that are subject to objection by the Archdiocese as of the Effective Date); provided, however, that nothing in this Section shall affect the right of any party-in-interest (including the Reorganized Debtor and the Trustee) to object to any non-Tort Claim to the extent such objection is otherwise permitted by the Bankruptcy Code, the Bankruptcy Rules, and this Plan. Further, nothing in this Section shall prohibit the Trustee from objecting to or establishing procedures for the allowance or treatment of non-Tort Claims. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, any objections by the Reorganized Debtor or the Trustee to non-Tort Claims will be filed and served not later than thirty (30) days after the later of: (i) the Effective Date, or (ii) the date such claim is filed. Such deadline or any Bankruptcy Court approved extension thereof, may be extended upon request by the Reorganized Debtor or the Trustee by filing a motion without any requirement to provide notice to any Person, based upon a reasonable exercise of the Reorganized Debtor's or the Trustee's business judgment. A motion seeking to extend the deadline to object to any claim shall not be deemed an amendment to the Plan.

**11.3.    DETERMINATION OF CLAIMS**. From and after the Effective Date, any claim that is not a Tort Claim or a Class 14 Claim, and as to which a Proof of Claim or motion or request for payment was timely filed in this Chapter 11 case, or deemed timely filed by order of the Bankruptcy Court, may be determined and (so long as such determination has not been stayed, reversed, or amended, as to which determination (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired, (and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending)), liquidated pursuant to: (i) an order of the Bankruptcy Court; (ii) applicable bankruptcy law; (iii) agreement of the parties without the need for Bankruptcy Court approval; (iv) applicable non-bankruptcy law; or (v) the lack of (a) an objection to such claim, (b) an application to equitably subordinate such claim, and (c) an application to otherwise limit recovery with respect to such claim, filed by the Archdiocese, the Reorganized Debtor, or any other party in interest on or prior to any applicable deadline for filing such objection or application with respect to such claim. Any such claim so determined and liquidated shall be deemed to be an allowed claim for such liquidated amount and shall be satisfied in accordance with the Plan. Nothing contained in this Section shall constitute or be deemed a waiver of any claims, rights, Interests, or Causes of Action that the Debtor, the Reorganized Debtor or the Trust may have against any Person in connection with or arising out of any claim or claims, including any rights under 28 U. S .C. § 157.

**11.4.  NO DISTRIBUTIONS PENDING ALLOWANCE.** No payments or distributions will be made with respect to a Disputed Claim, or any portion thereof, unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by an order which has become a Non-Appealable Order, and the Disputed Claim has become an allowed claim.

**11.5.  CLAIM ESTIMATION.** To effectuate distributions pursuant to the Plan and avoid undue delay in the administration of the Chapter 11 case, with respect to Disputed Claims, the Archdiocese (if prior to the Effective Date) and the Reorganized Debtor or the Trustee (on and after the Effective Date), after notice and a hearing (which notice may be limited to the holder of such Disputed Claim), shall have the right to seek an order of the Bankruptcy Court or the District

-49-

Court, pursuant to Section 502(c) of the Bankruptcy Code, estimating or limiting the amount of: (i) property that must be withheld from or reserved for distribution purposes on account of such Disputed Claim(s), (ii) such claim for allowance or disallowance purposes, or (iii) such claim for any other purpose permitted under the Bankruptcy Code; provided, however, that the Bankruptcy Court or the District Court, as applicable, shall determine: (y) whether such claims are subject to estimation pursuant to Section 502(c) of the Bankruptcy Code, and (z) the timing and procedures for such estimation proceedings, if any, such matters being beyond the scope of the Plan.

## ARTICLE XII
## DISTRIBUTIONS UNDER THE PLAN

**12.1.   PAYMENT DATE.** Whenever any payment or distribution to be made under the Plan shall be due on a day other than a business day, such payment or distribution shall instead be made, without interest, on the immediately following business day.

**12.2.   UNDELIVERABLE DISTRIBUTIONS.** If payment or distribution to the holder of an allowed non-Tort claim under the Plan is returned for lack of a current address for the holder or otherwise, the Reorganized Debtor or the Trustee, as applicable, shall file with the Bankruptcy Court the name, if known, and last known address of the holder and the reason for its inability to make payment. All allowed claims paid as provided in this Section shall be deemed addressed to the same extent as if payment or distribution had been made to the holder of the allowed claim with no recourse to the Reorganized Debtor or the Trustee, as applicable, or property of the Reorganized Debtor or the Trustee. If, after the passage of six (6) months, the payment or distribution still cannot be made, the Reorganized Debtor or the Trustee, as applicable, shall make the payment to the Trust. All allowed claims paid as provided in this Section shall be deemed satisfied and released, with no recourse to the Reorganized Debtor or the Trustee, as applicable, or property of the Reorganized Debtor or the Trustee, as applicable, upon payment to the Trust, to the same extent as if payment or distribution has been made to the holder of the allowed claim.

**12.3.   SETOFFS**. The Reorganized Debtor or the Trustee, as applicable, may, to the extent permitted under applicable law, set off against any allowed claim and the distributions to be made pursuant to the Plan on account of such allowed claim, the claims, rights and Causes of Action of any nature that the Reorganized Debtor or the Trustee, as applicable, may hold against the holder of such allowed claim that are not otherwise waived, released or compromised in accordance with the Plan; provided, however, that neither such a setoff nor the allowance of any claim hereunder shall constitute a waiver or release by the Reorganized Debtor or the Trustee, as applicable, of any such claims, rights, and Causes of Action that the Reorganized Debtor or the Trustee, as applicable, possesses against such holder.

**12.4.   NO INTEREST ON CLAIMS**. Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a post-petition agreement in writing between a claimant and the Archdiocese, the Reorganized Debtor, or the Trust, and approved by an order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any claim, and claimant shall not be entitled to interest accruing on or after the Petition Date on any claim. In addition, and without limiting the foregoing or any other provision of the Plan, Confirmation Order, or Trust Agreement, interest shall not accrue on or be paid on any Disputed Claim in respect of the period

-50-

from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an allowed claim.

**12.5.    WITHHOLDING TAXES.** The Reorganized Debtor and the Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. As a condition to making any distribution under the Plan, the Reorganized Debtor and the Trust may require that the holder of an allowed claim provide such holder's taxpayer identification number and such other information and certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

### ARTICLE XIII
### EFFECTIVENESS OF THE PLAN

**13.1.    CONDITIONS TO OCCURRENCE OF EFFECTIVE DATE.** The Plan shall not become effective unless and until each of the following conditions shall have been satisfied in full in accordance with the provisions specified below:

        **(a)    Entry of Confirmation Order.** The Confirmation Order has become a Non-Appealable Order;

        **(b)    Insurance Settlement Agreements.** The Archdiocese, the Catholic Entities, the Other Insured Entities, and the Seminaries, as applicable, and the Settling Insurers shall have executed their respective Insurance Settlement Agreements and the Bankruptcy Court shall have issued an order(s) approving the Archdiocese Insurance Settlement Agreements and such order(s) have become Non-Appealable Order(s).

        **(c)    The Trust**. The Trust shall have been formed; and

        **(d)    Debtor Payments.** The payments and assignments discussed in Section 5.1(b)(2)(i-iv) shall have been received by the Trust.

**13.2.    NOTICE OF EFFECTIVE DATE.** The Plan Proponents shall file a Notice of Effective Date with the Bankruptcy Court within three (3) days after the occurrence of the Effective Date. Such notice will include all relevant deadlines put into effect by the occurrence of the Effective Date.

**13.3.    EFFECT OF NON-OCCURRENCE OF CONDITIONS**. If substantial consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the disclosure statement will: (i) constitute a waiver or release of any claims by or against the Protected Parties or the Settling Insurer Entities; (ii) prejudice in any manner the rights of the Protected Parties, the Trust or the Settling Insurer Entities; or (iii) constitute an admission, acknowledgement, offer, or undertaking by the Protected Parties or the Settling Insurer Entities in any respect, including but not limited to, in any proceeding or case against the Debtor; or (iv) be admissible in any action, proceeding or case against the Protected Parties or Settling Insurer Entities in any court or other forum.

-51-

**ARTICLE XIV**
**EFFECTS OF CONFIRMATION**

**14.1.    DISSOLUTION OF COMMITTEES**. On the Effective Date, the Committees shall dissolve automatically, whereupon their members, Professionals and agents shall be released from any further duties and responsibilities in this Chapter 11 case and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective orders entered during this Chapter 11 case, including any orders regarding confidentiality issued by the Bankruptcy Court or mediator, which shall remain in full force and effect according to their terms, provided that such parties shall continue to have a right to be heard with respect to any and all applications for Professional Claims.

**14.2.    DISCHARGE AND INJUNCTION**.

Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date, pursuant to Section 1141(d) of the Bankruptcy Code, the Archdiocese shall be discharged from any and all Claims that arose prior to the Effective Date, including all Tort Claims and Related Insurance Claims, and including interest, if any, on any of the foregoing, regardless of whether it is alleged to have accrued before or after the Petition Date (each a "Discharged Claim"). For the avoidance of doubt, "Discharged Claim" includes any disallowed claim. All Persons who have held or asserted, hold or assert, or may in the future hold or assert a Discharged Claim shall be permanently stayed, enjoined, and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Discharged Claim, including: (i) commencing or continuing in any manner, any action or any other proceeding of any kind with respect to any Discharged Claim against the Archdiocese, the Reorganized Debtor, or property of the Reorganized Debtor; (ii) seeking the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Archdiocese, the Reorganized Debtor, or property of the Reorganized Debtor, with respect to any Discharged Claim; (iii) creating, perfecting, or enforcing any encumbrance or lien of any kind against the Archdiocese, the Reorganized Debtor, or property of the Reorganized Debtor with respect to any Discharged Claim; (iv) asserting any setoff right of contribution, indemnity, subrogation, or recoupment of any kind against any obligation due to the Reorganized Debtor with respect to any Discharged Claim; and (v) taking any action, in any manner and in any place whatsoever, that does not conform to or comply with provisions of the Plan. In the event any Person takes any action that is prohibited by, or is otherwise inconsistent with the provisions of this injunction, the Plan or confirmation order, then, upon notice to the Bankruptcy Court by an affected party, the action or proceeding in which the claim of such Person is asserted will automatically be transferred to the Bankruptcy Court or the District Court for enforcement of the Plan. In a successful action to enforce the injunctive provisions of this Section in response to a willful violation thereof the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

**14.3.    CHANNELING INJUNCTION**. Channeling Injunction Preventing Prosecution of Channeled Claims Against Protected Parties and Settling Insurer Entities.

-52-

**(a)      In consideration of the undertakings of the Protected Parties and Settling Insurer Entities under the Plan, their contributions to the Trust, and other consideration, and pursuant to their respective settlements with the Debtor and to further preserve and promote the agreements between and among the Protected Parties and any Settling Insurer Entities, and pursuant to Section 105 of the Bankruptcy Code:**

**(1)      any and all Channeled Claims are channeled into the Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts as established under the Plan and the Trust Agreement as the sole and exclusive remedy for all holders of Channeled Claims; and**

**(2)      all Persons who have held or asserted, hold or assert, or may in the future hold or assert any Channeled Claims are hereby permanently stayed, enjoined, barred and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim against the Protected Parties or Settling Insurer Entities, including:**

**(i)      commencing or continuing in any manner any action or other proceeding of any kind with respect to any Channeled Claim against any of the Protected Parties or Settling Insurer Entities or against the property of any of the Protected Parties or Settling Insurer Entities;**

**(ii)      enforcing, attaching, collecting or recovering, by any manner or means, from any of the Protected Parties or Settling Insurer Entities, or the property of any of the Protected Parties or Settling Insurer Entities, any judgment, award, decree, or order with respect to any Channeled Claim against any of the Protected Parties, Settling Insurer Entities, or any other Person;**

**(iii)      creating, perfecting or enforcing any lien of any kind relating to any Channeled Claim against any of the Protected Parties or the Settling Insurer Entities, or the property of the Protected Parties or the Settling Insurer Entities; and**

**(iv)      asserting, implementing or effectuating any Channeled Claim of any kind against:**

**1.      any obligation due any of the Protected Parties or Settling Insurer Entities;**

**2.      any of the Protected Parties or Settling Insurer Entities; or**

CORE/3003233.0002/140935489.14

3.    **the property of any of the Protected Parties or Settling Insurer Entities.**

The Channeling Injunction is an integral part of the Plan and is essential to the Plan's consummation and implementation. It is intended that the channeling of the Channeled Claims as provided in this Section 14.3 shall inure to the benefit of the Protected Parties and Settling Insurer Entities. In a successful action to enforce the injunctive provisions of this Section in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing.

## 14.4.    EXCULPATION; LIMITATION OF LIABILITY.

**From and after the Effective Date, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party shall be released from, any claim, Cause of Action or liability to any other Exculpated Party, to any holder of a claim, or to any other party in interest, for any act or omission that occurred during and in connection with this Chapter 11 case or in connection with the preparation and Filing of this Chapter 11 case, the formulation, negotiation, or pursuit of confirmation of the Plan, the consummation of the Plan, and the administration of the Plan or the property to be distributed under the Plan, except for claims, Causes of Action or liabilities arising from the gross negligence, willful misconduct, fraud, or breach of the fiduciary duty of loyalty of any Exculpated Party, in each case subject to determination of such by Non-Appealable Order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan. Without limiting the generality of the foregoing, the Archdiocese and its officers, board and committee members, employees, attorneys, financial advisors, and other Professionals shall be entitled to and granted the benefits of Section 1125(e) of the Bankruptcy Code and the Channeling Injunction.**

## 14.5.    SETTLING INSURER SUPPLEMENTAL INJUNCTION.

**Supplemental Injunction Preventing Prosecution of Claims Against Settling Insurer Entities.**

**Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and in consideration of the undertakings of the Settling Insurers pursuant to the Insurance Settlement Agreements, including the Settling Insurers' purchases of insurance policies or Interests in insurance policies from the Archdiocese, Other Insured Entities, Seminaries, and Catholic Entities pursuant to Section 363(f) of the Bankruptcy Code:**

**Any and all Persons who have held, now hold or who may in the future hold any Interests (including all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Tort Claimants, perpetrators, other insurers, and all others holding Interests of any kind or nature whatsoever, including those Claims released or to be released pursuant to the Insurance Settlement Agreements) against any of the Protected Parties or the Settling Insurer Entities, that directly or**

-54-

indirectly arise from, relate to or is in connection with any of the Settling Insurer Entity Policies, any Claim that would have been covered under a Settling Insurer Entity Policy but for an Insurance Settlement Agreement, any Tort Claim, Related Insurance Claim, Class 3 Claims, Class 12 Claims, Class 13 Claims, Class 14 Claims, or Claim Nos. 502, 503, and 668 are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Interest against the Settling Insurer Entities, the Settling Insurer Entity Policies, or Protected Parties, including:

      (a)    Commencing or continuing in any manner any action or other proceeding against the Settling Insurer Entities or the Protected Parties or the property of the Settling Insurer Entities or Protected Parties;

      (b)    Enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, award, decree or order against the Settling Insurer Entities or Protected Parties or the property of the Settling Insurer Entities or Protected Parties;

      (c)    Creating, perfecting, or enforcing any lien of any kind against the Settling Insurer Entities or Protected Parties or the property of the Settling Insurer Entities or Protected Parties;

      (d)    Asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due the Settling Insurer Entities or Protected Parties or the property of the Settling Insurer Entities or Protected Parties; and

      (e)    Taking any action, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan.

All claims described in this Section 14.5 shall be channeled to the Trust. This injunction shall not apply to any reinsurance claim.

**14.6.   INSURANCE SETTLEMENT AGREEMENT INJUNCTIONS**. Any injunction, discharge, or release contained in an Archdiocese Insurance Settlement Agreements is (a) incorporated in all respects into this Plan by this express reference thereto, (b) deemed fully set forth in this Plan, (c) approved by the Bankruptcy Court, and (d) in addition to the injunctions, discharges, and releases expressly set forth in this Plan.

**14.7.   TIMING**. The injunctions, releases, and discharges to which any Settling Insurer Entity is entitled pursuant to such Insurance Settlement Agreement, the Plan, the Confirmation Order, the Approval Orders, and the Bankruptcy Code shall only become effective when the Trust receives payment in full from the corresponding Settling Insurer(s) pursuant to the terms of such Settling Insurer's Insurance Settlement Agreement, and the other provisions set forth in Section 13.1 are fully met.

**14.8.   NO BAR ON CERTAIN CLAIMS**. Notwithstanding the foregoing, nothing in this Article 14 shall be construed to bar either (a) a Claim based on Abuse against a Person who is

-55-

not a Protected Party or a Settling Insurer Entity or (b) a Claim by such Person for insurance coverage in connection with a Claim described in the foregoing subsection (a) under an insurance policy other than the Settling Insurer Entity Policies.

## ARTICLE XV
## INCORPORATION OF CHILD PROTECTION PROTOCOLS

**15.1.     RAMSEY COUNTY AGREEMENT**. The Ramsey County Agreement is incorporated into the Plan, provided that the Ramsey County Attorney shall retain exclusive authority to enforce the agreement. To reflect and implement the Reorganization Plan contemplated herein, and in furtherance of the goals of creating safe environments, the Debtor and the UCC will meet and confer regarding potential additions to the Ramsey County Agreement, including protocols and services.

## ARTICLE XVI
## THE REORGANIZED DEBTOR

**16.1.     CONTINUED CORPORATE EXISTENCE**. The Archdiocese will, as the Reorganized Debtor, continue to exist after the Effective Date as a separate entity in accordance with Minn. Stat. Section 315.16 having tax-exempt status under 26 U.S.C. § 501(c)(3) under applicable law and without prejudice to any right to alter or terminate such existence under applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith.

**16.2.     VESTING OF ASSETS**. In accordance with Sections 1141 and 1123(a)(5) of the Bankruptcy Code, and except as otherwise provided in the Plan or the Confirmation Order, the Reorganization Assets shall vest in the Reorganized Debtor (or such other entity or entities specified by the Debtor in a Supplemental Plan Document, and subject to approval by the Bankruptcy Court at the confirmation hearing) on the Effective Date free and clear of all liens, claims, and interests of creditors, including successor liability claims. On and after the Effective Date, the Reorganized Debtor may operate and manage its affairs and may use, acquire, and dispose of property without notice to any Person, and without supervision or approval by the Bankruptcy Court and free of any restrictions imposed by the Bankruptcy Code, Bankruptcy Rules, or the Bankruptcy Court, other than those restrictions expressly imposed by the Plan or the Confirmation Order. Notwithstanding the foregoing, or any other provision of this Plan, confirmation of this Plan shall not disturb the mortgage or other lien interests of any party with a lien interest in real estate constituting part of the Reorganization Assets, including, without limitation, the mortgage interest of Bremer Bank, National Association in the property located at 2501 State Highway 100, St. Louis Park, Minnesota, and the mortgage interest of North American Banking Company in the property located at 1350 Gardena Avenue NE, Fridley, Minnesota, which interests (together with the interests in Class 10) shall be retained following confirmation of this Plan.

**16.3.     IDENTITY OF OFFICERS OF REORGANIZED DEBTOR**. In accordance with § 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the Persons proposed to serve as the corporate Members of the Reorganized Debtor and the persons proposed to serve

as directors and officers of the Reorganized Debtor on and after the Effective Date are set forth on Exhibit J.

**16.4.    FURTHER AUTHORIZATION**. The Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions, rulings, and other assistance as it deems necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan.

<div align="center">

**ARTICLE XVII**
**MISCELLANEOUS PROVISIONS**

</div>

**17.1.    RETENTION OF JURISDICTION**

(a)    **By the Bankruptcy Court**. Pursuant to Sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and 28 U.S.C. Sections 1334 and 157, on and after the Effective Date, the Bankruptcy Court shall retain: (i) original and exclusive jurisdiction over this Chapter 11 case, (ii) original, but not exclusive, jurisdiction to hear and determine all core proceedings arising under the Bankruptcy Code or arising in this Chapter 11 case, and (iii) original, but not exclusive, jurisdiction to hear and make proposed findings of fact and conclusions of law in any non-core proceedings related to this Chapter 11 case and the Plan, including matters concerning the interpretation, implementation, consummation, execution, or administration of the Plan. Subject to, but without limiting the generality of the foregoing, the Bankruptcy Court's post-Effective Date jurisdiction shall include jurisdiction:

(1)    over disputes concerning the ownership of claims;

(2)    over disputes concerning the distribution or retention of assets under the Plan;

(3)    over objections to claims, motions to allow late-filed claims, and motions to estimate claims;

(4)    over proceedings to determine the extent, validity, or priority of any Lien asserted against property of the Archdiocese, the Estate, or Trust, or property abandoned or transferred by the Archdiocese, the Estate, or the Trust;

(5)    over motions to approve Insurance Settlement Agreements entered into after the Effective Date by the Trustee;

(6)    over matters related to the assets of the Estate or of the Trust, including the terms of the Trust, or the recovery, liquidation, or abandonment of Trust Assets;

(7)    the removal of the Trustee and the appointment of a successor Trustee;

(8)    over matters relating to the subordination of claims;

<div align="center">

-57-

</div>

(9)    to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(10)    to consider and approve modifications of or amendments to the Plan, to cure any defects or omissions or to reconcile any inconsistencies in any order of the Bankruptcy Court, including the Confirmation Order;

(11)    to issue orders in aid of execution, implementation, or consummation of the Plan, including the issuance of orders enforcing any and all releases and injunctions issued under or pursuant to this Plan and any Archdiocesan Insurance Settlement Agreement;

(12)    over disputes arising from or relating to the Plan, the Confirmation Order, or any agreements, documents, or instruments executed in connection therewith;

(13)    over requests for allowance of payment of claims entitled to priority under Sections 507(a)(2) and 503(b)(9) of the Bankruptcy Code and any objections thereto;

(14)    over all Fee Applications;

(15)    over matters concerning state, local, or federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(16)    over conflicts and disputes among the Trust, the Reorganized Debtor, and holders of claims, including holders of Class 6 or Class 7 Claims;

(17)    over disputes concerning the existence, nature, or scope of the Archdiocese's discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(18)    to issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the Plan, the Archdiocese or its property, the Reorganized Debtor or its property, the Estate or its property, the Trust or its property, Trustee, the Professionals, or the Confirmation Order;

(19)    to enter a Final Decree closing the Chapter 11 case;

(20)    to enforce all orders previously entered by the Bankruptcy Court; and

CORE/3003233.0002/140935489.14

(21)     over any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to this Chapter 11 case or the Plan.

(b)     **By the District Court.** Pursuant to Sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, and 28 U.S.C. Section 1334, on and after the Effective Date, the District Court shall retain original, but not exclusive, jurisdiction to hear and determine all matters arising under the Bankruptcy Code or arising in or related to this Chapter 11 case.

(c)     **Actions to Collect Amounts Owed Pursuant to the Plan.** Notwithstanding anything to the contrary in this Section, the Archdiocese, the Reorganized Debtor and the Trustee may, but are not required to, commence an adversary proceeding to collect amounts owed pursuant to the Plan for any settlements embodied in the Plan or later approved by the Bankruptcy Court, which are not paid in accordance with this Plan. Any such action may be commenced by filing a motion in aid of confirmation with the Bankruptcy Court.

(d)     **Case Closure.** The existence and continued operation of the Trust shall not prevent the Bankruptcy Court from closing this Chapter 11 case. In an action involving the Trust, any costs incurred in reopening the Chapter 11 case, including any statutory fees will be paid by the Trustee from the Trust Assets in accordance with an order of the Bankruptcy Court.

## 17.2.   BANK MORTGAGES AND LIENS

(a)     **North American Banking Company**. Notwithstanding anything to the contrary in this Plan, all Liens and security interests grated by the Debtor in favor of North American Banking Company, including without limitation the lien evidenced by that certain Amended and Restated Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement dated April 10, 2014, executed and delivered by the Debtor in favor of North American Banking Company, shall remain in full force and effect.

(b)     **Bremer Bank**. Notwithstanding anything to the contrary in this Plan, all Liens and security interests grated by the Debtor in favor of Bremer Bank, including without limitation the lien evidenced by that certain Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement dated June 23, 2011, executed and delivered by the Debtor in favor of Bremer Bank, shall remain in full force and effect.

## 17.3.   CONTINUATION OF FUTURE CLAIMANT REPRESENTATIVE.
Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Future Claimant Representative shall continue until the funds in the Future Claimant Reserve Fund are completely distributed as provided in the Plan or as directed by a future order of the Bankruptcy Court, or otherwise. In the absence of a Future Claimant Representative, the Trustee shall act on behalf of Class 7 Claimants in accordance with the Plan and Trust Agreement.

-59-

**17.4.    ASSUMPTION OF EXECUTORY CONTRACTS**. On the Effective Date, except for any executory contract: (i) that was previously rejected by an order of the Bankruptcy Court or otherwise pursuant to Section 365 of the Bankruptcy Code; or (ii) that is subject to a pending motion to reject before the Bankruptcy Court, and except as otherwise provided in the Plan, Confirmation Order, or Insurance Settlement Agreements, each executory contract entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms, shall be assumed pursuant to Sections 365 and 1123 of the Bankruptcy Code, effective as of the Confirmation Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumption pursuant to Sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Any cure payment shall be promptly paid by the Reorganized Debtor.

**17.5.    INDEMNIFICATION OF MEMBERS, MANAGERS, OFFICERS, AND EMPLOYEES.** The obligation of the Archdiocese to indemnify any individual serving at any time on or prior to the Effective Date, as one of its officers, employees, council members or volunteers by reason of such individual's service in such capacity, to the extent provided in any of the Archdiocese's constituent documents or by a written agreement with the Debtor or under the laws of the State of Minnesota pertaining to the Archdiocese, will be deemed and treated as Executory Contracts that are assumed by the Reorganized Debtor, pursuant to the Plan and Bankruptcy Code Section 365 as of the Effective Date. Notwithstanding the foregoing, under no circumstances will the Archdiocese or the Reorganized Debtor assume or be responsible for any alleged indemnification of any Person against whom the Archdiocese has determined or may, in the future, determine, that there are credible allegations of Abuse asserted against such Person or such Person has or may have engaged in some other conduct that would excuse the Reorganized Debtor from providing any indemnification to such Person.

**17.6.    LEASE CLAIM INDEMNITY.** The Reorganized Debtor will fully indemnify the Debtor's estate, and any successor to the Debtor's estate, including but not limited to any trust formed for the benefit of creditors, from and for any claim(s) arising out of the breach of the Lease asserted after confirmation, regardless of whether such claim(s) arise(s) before or after the confirmation of a plan by the Debtor.

**17.7.    DEFENSE AND INDEMNITY FOR COVERED NON-TORT CLAIMS**. After the Effective Date, the Reorganized Debtor will defend and indemnify any Catholic Entity, Other Insured Entity, or Seminary with respect to any Covered Non-Tort Claim and will defend and indemnify the Settling Insurers Entities with respect to all Channeled Claims that are not Tort Claims, Related Insurance Claims, or Medicare Claims.  As to any Claim against the Trust that qualifies as a Covered Non-Tort Claim, the Reorganized Debtor will also undertake on behalf of the Trust the enforcement of the injunctions set forth in Article XIV, will defend the Covered Non-Tort Claim, and, if judgment is entered on such Claim, will indemnify the Trust for any liability for such Claim.  The Reorganized Debtor may not seek insurance coverage for the Claims defended or indemnified under this section from the Settling Insurers under any Settling Insurer Entity Policy. Nothing in this provision or any other Plan provision is intended to suggest that any Person is entitled to obtain a judgment on a Covered Non-Tort Claim or other Channeled Claim, that such judgment would be covered under any Settling Insurer Entity Policy, or that any Person is entitled to seek coverage for such judgment against any Protected Party or Settling Insurer Entity in violation of the Discharge, Channeling Injunction, or Supplemental Insurer

-60-

Injunction. For the avoidance of doubt, nothing contained in this Section or the Plan is intended to provide, expand, modify or add coverage for the Archdiocese or any other Protected Party under any Archdiocesan Insurance Policy to cover the Archdiocese's indemnification of any Covered Non-Tort Claims.

**17.8.    RESERVATION OF RIGHTS.** In accordance with the provisions of this Plan, the Archdiocese reserves the right to sell property of the Estate or compromise Causes of Action on behalf of the Estate at any time prior to the Effective Date, subject to Bankruptcy Court approval. Notice of any such sale or compromise sought as part of the Plan shall be filed as a Supplemental Plan Document, and approval of such sale or settlement shall be considered at the confirmation hearing or as soon thereafter as is practicable.

**17.9.    NON-APPEALABLE ORDER**. Except as otherwise expressly provided in the Plan, any requirement in the Plan for a Non-Appealable Order may be jointly waived by the Plan Proponents upon written notice to the Bankruptcy Court provided that Plan Proponents first obtain the consent of all Archdiocesan Settling Insurers.

**17.10.   AMENDMENTS AND MODIFICATIONS**. The Plan Proponents may jointly modify the Plan at any time prior to the confirmation hearing in accordance with Section 1127(a) of the Bankruptcy Code. After the Confirmation Date and prior to substantial consummation, the Plan Proponents may jointly modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code by filing a motion on notice as required under the applicable Bankruptcy Rules, and the solicitation of all creditors and other parties in interest shall not be required unless directed by the Bankruptcy Court. Notwithstanding the foregoing, no modification to the Plan shall be made without the consent of the Settling Insurers.

**17.11.   U.S. TRUSTEE REPORTS**. From the Effective Date until the case is closed, the Reorganized Debtor shall, within thirty (30) days of the end of each fiscal quarter, file with the Bankruptcy Court and submit to the U.S. Trustee, quarterly reports setting forth all receipts and disbursements as required by the U.S. Trustee guidelines. The Reorganized Debtor will not be required to file monthly operating reports or provide copies of bank account statements.

**17.12.   NO WAIVER**. The failure of the Archdiocese to object to any claim for purposes of voting shall not be deemed a waiver of the Archdiocese's, the Reorganized Debtor's, or the Trustee's right to object to such claim, in whole or in part.

**17.13.   TAX EXEMPTION**. Pursuant to Section 1146 of the Bankruptcy Code, the delivery or recording of an instrument of transfer on or after the Confirmation Date shall be deemed to be made pursuant to and under the Plan, including any such acts by the Archdiocese (if prior to the Effective Date), and the Reorganized Debtor (if on or after the Effective Date), including any subsequent transfers of property by the Reorganized Debtor, and shall not be taxed under any law imposing a stamp tax, transfer tax, state deed tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order and the Plan, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp, tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

CORE/3003233.0002/140935489.14

**17.14. NON-SEVERABILITY.** Except as specifically provided herein, the terms of the Plan constitute interrelated compromises and are not severable, and no provision of the Plan may be stricken, altered, or invalidated, except by amendment of the Plan by the Plan Proponents.

**17.15. REVOCATION**. The Plan Proponents reserve the right to revoke and withdraw the Plan prior to the Confirmation Date, provided they first obtain the consent of all Archdiocesan Settling Insurers, in which case the Plan shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Archdiocese, the UCC, or any other Person or to prejudice in any manner the rights of the Archdiocese, the UCC, or any other Person in any further proceedings involving the Archdiocese, or be deemed an admission by any party, including with respect to the amount or allowance of any claim or the value of any property of the Estate.

**17.16. CONTROLLING DOCUMENTS**. In the event and to the extent that any provision of the Plan or Trust Agreement is inconsistent with any provision of the disclosure statement, the provisions of the Plan or Trust Agreement, as applicable, shall control and take precedence. In the event and to the extent that any provision of the Trust Agreement (other than provisions relating to the Trustee's authority to act) is inconsistent with any provision of this Plan, this Plan shall control and take precedence. In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of the Plan or the Trust Agreement, the provisions of the Confirmation Order shall control and take precedence. To the extent that any provision of the Plan, the Trust Agreement, or the Confirmation Order is inconsistent with the Archdiocese Insurance Settlement Agreements, the Archdiocese Insurance Settlement Agreements control.

**17.17. GOVERNING LAW**. Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure), and unless specifically stated, the rights, duties, and obligations arising under the Plan, any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control) shall be governed by, and construed and enforced in accordance with, the laws of the State of Minnesota, without giving effect to conflicts of law principles.

**17.18. NOTICES.** Any notices or requests by parties in interest under or in connection with the Plan shall be in writing and served either by: (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

If to the Archdiocese or the Reorganized Debtor:

> Joseph F. Kueppers
> Chancellor for Civil Affairs
> Office of the Chancellor for Civil Affairs
> Archdiocese of Saint Paul and Minneapolis
> 777 Forest Street
> Saint Paul, MN 55106
> Telephone No.:  (651) 291-4400

-62-

Facsimile No.:  (651) 290-1629

with a copy to:        Briggs and Morgan
                       2200 IDS Center
                       80 South Eighth Street
                       Minneapolis, Minnesota  55402-2157
                       Attn:   Richard D. Anderson
                               Charles B. Rogers
                       Telephone No.:  612-977-8400
                       Facsimile No.:  612-977-8650

If to the Trust or the Trustee:

                       Berkeley Research Group, LLC
                       250 Pehle Avenue, Suite 301
                       Saddle Brook, NJ 07663
                       Attn:   John Esposito
                       Telephone No.: 201-587-7100

**17.19. FILING OF ADDITIONAL DOCUMENTS.** At any time before substantial consummation, the Archdiocese, the Trust, or the Reorganized Debtor, as appropriate, may file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, or otherwise to comply with applicable law.

**17.20. POWERS OF OFFICERS.** The officers of the Archdiocese or the Reorganized Debtor, as the case may be, shall have the power to enter into or execute any documents or agreements that they deem reasonable and appropriate to effectuate the terms of the Plan.

**17.21. DIRECTION TO A PARTY.** On and after the Effective Date, the Trust or the Reorganized Debtor, as applicable, may apply to the Bankruptcy Court for entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by the Plan, and to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of the Plan.

**17.22. SUCCESSORS AND ASSIGNS.** The Plan shall be binding upon and inure to the benefit of the Archdiocese and its successors and assigns, including the Reorganized Debtor. The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator successor, or assign of such entity.

**17.23. CERTAIN ACTIONS.** By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the officers of the Archdiocese under the Plan, including: (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (b) the adoption, execution, and

-63-

implementation of other matters provided for under the Plan involving the Archdiocese or organizational structure of the Archdiocese shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant applicable non-bankruptcy law, without any requirement of further action by the officers of the Archdiocese.

**17.24.  FINAL DECREE**. Once the Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the Reorganized Debtor, Trustee or such other party as the Bankruptcy Court may designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a Final Decree to close the Chapter 11 case.

**17.25.  PLAN AS SETTLEMENT COMMUNICATION**. The Plan furnishes or offers or promises to furnish (or accepts or offers or promises to accept) valuable consideration in compromising or attempting to compromise claims and Causes of Action that are Disputed as to validity or amount (including Tort Claims and the Insurance Litigation), except as otherwise provided above. Accordingly, the Plan, the disclosure statement, and any communications regarding the Plan or the disclosure statement are subject in all respects to Federal Rule of Evidence 408 and any comparable provision(s) of applicable state law precluding their use as evidence of liability for, or the validity or invalidity of, any Disputed claim or Cause of Action. Nothing herein or in any Confirmed Plan is intended to constitute a compromise of Tort Claims.

**17.26.  OTHER RIGHTS**. Except as expressly set forth in this Plan, nothing in the Plan shall preclude any Person from asserting in any proceeding, or against any award or judgment entered in such proceeding, any and all rights that may be accorded under Minnesota law, or any other applicable statutory or common law, of contribution, indemnity, reduction, credit, or setoff, arising from the settlement and resolution of the Tort Claims.

<div align="center">

**ARTICLE XVIII**
**<u>BANKRUPTCY RULE 9019 REQUEST</u>**

</div>

Pursuant to Bankruptcy Rule 9019 and through the Plan, the Plan Proponents request approval of all compromises and settlements included in the Plan.

<div align="center">

**ARTICLE XIX**
**<u>CONFIRMATION REQUEST</u>**

</div>

The Plan Proponents request confirmation of the Plan under Section 1129 of the Bankruptcy Code with respect to any impaired class that does not accept the Plan or is deemed to reject the Plan.

<div align="center">

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

</div>

[Signature page for Plan of Reorganization]

Respectfully submitted,

THE     OFFICIAL     COMMITTEE     OF
UNSECURED CREDITORS

_____

By: James Keenan
Its: Chairperson

THE ARCHDIOCESE OF SAINT PAUL AND
MINNEAPOLIS

By: _____

Its: _____

CORE/3003233.0002/140935489.14

**EXHIBIT A**

**[RESERVED]**

**EXHIBIT B**

**[RESERVED]**

# EXHIBIT C

## GUARANTY OBLIGATIONS

| NAME AND ADDRESS OF CREDITOR | CO-DEBTOR(S) |
|---|---|
| Premier Bank<br>2866 White Bear Ave<br>Maplewood MN 55109 | The Cathedral of St. Paul<br>239 Selby Ave<br>St. Paul MN 55102<br><br>Blessed Sacrament Catholic Church<br>2119 Stillwater Ave<br>St. Paul MN 55119 |
| Wells Fargo Bank, N.A.<br>7900 Xerxes Avenue South<br>Bloomington MN 55413 | Catholic Eldercare on Main<br>817 Main Street NE<br>Minneapolis MN 55413 |
| Catholic United Financial<br>3499 Lexington Ave N<br>St Paul MN 55126 | Church of St. Andrew, Elysian<br>PO Box 261<br>Elysian MN 56028-0261<br><br>Immaculate Heart of Mary, Minnetonka<br>13505 Excelsior Blvd.<br>Minnetonka MN 55345-4999<br><br>Sacred Heart Church<br>4087 W Broadway Ave<br>Minneapolis MN 55422<br><br>St. Gregory the Great Church<br>PO Box 609<br>North Branch MN 55056-0609<br><br>St. John the Baptist Ch, Excelsior (7/15/93)<br>680 Mill Street<br>Excelsior MN 55331-3243<br><br>St. John Vianney Church<br>789 17th Ave N<br>South St. Paul MN 55075-1497<br><br>St. Joseph the Worker, Maple Grove<br>7180 Hemlock Lane |

C-2

-

| | |
|---|---|
| | Maple Grove MN 55369-5597<br><br>St. Jude of the Lake, Mahtomedi<br>700 Mahtomedi Ave<br>Mahtomedi MN 55115-1698 |
| U.S. Bank National Association<br>EP-MN-WS3C<br>60 Livingston Avenue<br>St Paul MN 55107 | Holy Family High School<br>8101 Kochia Lane<br>Victoria MN 55386 |
| Catholic Order of Foresters<br>355 West Shuman Boulevard<br>Naperville IL 60566 | Our Lady of the Lake Church<br>2385 Commerce Blvd.<br>Mound MN 55364-1496<br><br>St. Gerard Majella Church<br>9600 Regent Ave N<br>Brooklyn Park MN 55443 |
| Knights of Columbus<br>261 8th St E<br>St Paul MN 55101 | St. Alphonsus Church, Brooklyn Center<br>7025 Halifax Ave N<br>Brooklyn Center MN 55429-1394<br><br>St. Michael Church, Prior Lake<br>16311 Duluth Ave SE<br>Prior Lake MN 55372 |
| US Bank<br>Mail Station BC-MN-H030<br>800 Nicollet Mall<br>Minneapolis MN 55402 | St. Ambrose of Woodbury<br>4125 Woodbury Drive<br>Woodbury MN 55129 |
| Catholic Finance Corp<br>5826 Blackshire Path<br>Inver Grove Heights MN 55076 | St. Peter Church, Mendota<br>PO Box 50679<br>Mendota MN 55150-0679<br><br>Risen Christ School<br>1120 East 37th St<br>Minneapolis MN 55407 |

C-3

-

EXHIBIT D

TRUST AGREEMENT

TRUST AGREEMENT

THE ARCHDIOCESE OF SAINT PAUL AND MINNEAPOLIS
TRUST AGREEMENT

This TRUST AGREEMENT is made and entered in *In re The Archdiocese of Saint Paul and Minneapolis* ("Archdiocese") (Bankr. D. Minn.), Case No. 15-30125, by and between the Archdiocese of Saint Paul and Minneapolis, and Berkeley Research Group ("Trustee").  This Trust Agreement is entered into pursuant to the Joint Chapter 11 Plan of Reorganization of the Archdiocese of Saint Paul and Minneapolis (the "Plan").  Unless otherwise specifically defined herein, capitalized terms used in this Trust Agreement shall have the meanings assigned to them in the Plan.  Terms defined in the Bankruptcy Code, and not otherwise specifically defined in the Plan or herein, when used herein, have the meanings attributed to them in the Bankruptcy Code.

## RECITALS

A.     On the Petition Date, the Archdiocese filed a voluntary petition under chapter 11 of the Bankruptcy Code.  The Archdiocese continued in possession of its property and has continued to operate and manage its business as debtor in possession pursuant to Sections 1107(a) and 1108 of Title 11 of the United States Code (the "Bankruptcy Code").

B.     It is anticipated that in 2018, the Bankruptcy Court will enter an order confirming the Plan (the "Confirmation Order").

C.     The Plan anticipates the existence of the Trust and the transfer and assignment to the Trust of the Trust Assets.

D.     Pursuant to the Plan, the Trust is to use the Trust Assets to pay the Professional Claims, Statutory Claims, Class 6, Class 7 Claims, and Class 12 Claims (together the "Trust Claims"), and meet indemnity and other obligations in accordance with the provisions of the Plan.

E.     The Trust is established for the benefit of the Beneficiaries and is intended to qualify as a liquidating trust within the meaning of Treasury Regulation § 301.7701-4(d).

F.     Pursuant to the Plan and the anticipated Confirmation Order, the Trustee was duly appointed as a representative of the Estate pursuant to Sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code.

G.     The Trust is intended to qualify as a "grantor trust" for federal income tax purposes and the Trustee shall administer and maintain the Trust in compliance with all relevant guidelines regarding liquidating trusts issued by the Internal Revenue Service (the "IRS").

D-1

**NOW, THEREFORE**, pursuant to the Plan and the Confirmation Order, in consideration of the premises and the provisions in the Plan, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, it is agreed as follows:

<div align="center">

**ARTICLE I**
**AGREEMENT OF TRUST**

</div>

**1.1.   CREATION AND NAME**.  The Debtor hereby creates a trust known as "The Archdiocese of Saint Paul and Minneapolis Settlement Trust," which is the Trust provided for in the Plan.

**1.2.   PURPOSE**.  The purpose of the Trust is to assume responsibility for preserving, managing and distributing Trust Assets to the holders of Trust Claims in accordance with the Trust Agreement and the requirements of the Plan.

**1.3.   TRANSFER OF ASSETS**.   Pursuant to the Plan and upon entry of the Confirmation Order, the Archdiocese will irrevocably transfer, absolutely grant, assign, convey, set over and deliver to the Trustee, and at such times as set forth in the Plan, all of its right, title and interest in and to the Trust Assets to be held in trust and for the uses and purposes stated herein and in the Plan.  The Trustee hereby agrees to accept and hold the Trust Assets in trust for the Beneficiaries subject to the terms of this Trust Agreement and the Plan.  The Trustee is hereby authorized to file with governmental authorities any documents necessary or helpful to establish the Trust.

**1.4.   IRREVOCABILITY**.  The Trust is irrevocable.  The Reorganized Debtor shall not alter, amend, revoke or terminate the Trust.  The Reorganized Debtor shall have no power or authority to direct the Trustee to return any of the Trust Assets to the Reorganized Debtor. The Trustee shall nevertheless have the power to amend this Trust for the purpose of conforming this Trust to the provisions of the Confirmation Order.

**1.5.   BENEFICIARIES**.  The Beneficiaries of the Trust are:

**(a)**   Holders of Professional and Statutory Claims;

**(b)**   Class 6 Claimants whose claims are not disallowed by the Bankruptcy Court and whose claims are payable under the Trust Distribution Plan;

**(c)**   Class 7 Claimants whose claims are payable under the Trust Distribution Plan as and when such claimants assert their Class 7 Claims; and

**(d)**   Class 12 Claimants;

**(e)**   Settling Insurer Entities and the Archdiocese to the extent they are indemnified by the Trust.

**1.6.   ACCEPTANCE OF ASSETS AND ASSUMPTION OF LIABILITIES.**

<div align="center">

D-2

</div>

(a)    In furtherance of the purposes of the Trust, the Trustee hereby accepts the trusteeship of the Trust created by this Trust Agreement and the grant, assignment, transfer, conveyance and delivery of assets to the Trust, subject to the terms and conditions set forth in this Trust Agreement, the Plan and the Confirmation Order.

(b)    In furtherance of the purposes of the Trust, the Trustee, on behalf of the Trust, hereby expressly assumes all responsibility for preserving, managing and distributing Trust Assets to the Beneficiaries. The Class 6 and Class 7 Claims will be evaluated by the Tort Claims Reviewer in accordance with the Trust Distribution Plan ("TDP"), attached to the Plan as Exhibit E. Except as otherwise provided in this Trust Agreement, the TDP or the Plan, the Trustee shall have all defenses, cross-claims, offsets and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding Beneficiary Claims that the Archdiocese has or would have had under applicable law.

(c)    The Trustee shall have all the rights, powers and duties set forth in this Trust Agreement, the TDP and the Plan, and available under applicable law, for accomplishing the purposes of the Trust. The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose of the Trust and in accordance with applicable law. The Trustee shall have the authority to bind the Trust within the limitations set forth herein but shall for all purposes hereunder be acting in the capacity as Trustee, and not individually.

(d)    In furtherance of the purposes of the Trust, the Trustee assumes responsibility for: (a) making payments to Beneficiaries; (b) receiving, collecting, liquidating, maintaining and distributing the Trust Assets; and (c) fulfilling all other obligations of the Trust under this Trust Agreement and the Plan. The Trust will be administered consistent with the liquidating purpose of the Trust and with no objective to continue or to engage in the conduct of a trade or business, except to the extent reasonably necessary to preserve the liquidation value of the Trust Assets or as otherwise provided in the Plan.

(e)    **Source of Payments**. All Trust expenses and all liabilities of the Trust with respect to Beneficiary Claims shall be payable solely by the Trustee out of the Trust Assets.

## ARTICLE II
## CORPUS OF THE TRUST

**2.1.    TRUST COMPOSITION**.    The Trust Assets shall include all property transferred to the Trust pursuant to the Plan and future orders of the Bankruptcy Court, including (but not limited to) all rights of every kind, nature and description transferred to the Trust pursuant to Section 5.1 of the Plan, future orders of the Bankruptcy Court, or otherwise belonging to the Trust.

D-3

**2.2.    TRANSFER TO TRUSTEE**.  From and after the Effective Date of the Plan, pursuant to, and at such times set forth in the Plan, title to and all rights and interests in the Trust Assets shall be transferred to the Trustee free and clear of all Liens, claims, encumbrances or Interests of any kind in such property of any other Person (including all Liens, claims, encumbrances or Interests of creditors of or holders of claims against or Interests in the Archdiocese) in accordance with Sections 1123, 1141 and 1146(a) of the Bankruptcy Code, except as otherwise expressly provided for in the Plan.  The Trustee, on behalf of the Trust, shall receive the Trust Assets when they are transferred to the Trust.

**2.3.    TRUSTEE'S RIGHT TO AND TITLE AND INTEREST IN TRUST ASSETS**.  Upon the transfer of the Trust Assets, the Trustee succeeds to all of the Archdiocese's, Reorganized Entity's, and the Estate's right to and title and Interest in the Trust Assets, and the Archdiocese, Reorganized Entity, and the Estate will have no further right to or title or Interest in or with respect to the Trust Assets or this Trust, except as provided herein, in the Plan or the Confirmation Order.

**2.4.    NO TAX ON TRANSFERS TO TRUST**.  Pursuant to Section 1146(a) of the Bankruptcy Code, the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Trust, including any deeds, bills of sale or assignments executed in connection with any transfer to the Trust, or receipt, or disposition/sale of assets by the Trust contemplated by the Plan, shall not be subject to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax or other similar tax.

**2.5.    SPENDTHRIFT PROVISION**.  To the fullest extent permitted by law, neither the principal nor income of the Trust, in whole or part, shall be subject to any legal or equitable claims of creditors of any Beneficiary or others, nor to legal process, nor be voluntarily or involuntarily transferred, assigned, anticipated, pledged or otherwise alienated or encumbered except as may be ordered by the Bankruptcy Court.

**2.6.    TRUST CORPUS**.  The entirety of the Trust's corpus shall be available to pay eligible Beneficiary Claims and authorized Trust expenses.  The Trust Corpus shall be allocated, administered, and distributed as provided in the Plan.

**2.7.    FUTURE TORT CLAIM RESERVE FUND**.  The Trustee, in consultation with the Future Tort Claims Representative, shall establish a reserve, subject to approval by the Bankruptcy Court.

<div align="center">

**ARTICLE III**
**POWERS AND DUTIES OF TRUSTEE**

</div>

**3.1.    POWERS AND DUTIES**.  The Trustee shall have, in addition to any other powers and discretions conferred on the Trustee by applicable trust law (to the extent not inconsistent with applicable Bankruptcy law and/or the Plan), the Plan and other provisions in this instrument, the following powers and discretions:

<div align="center">

D-4

</div>

**(a)**     To act as custodian of, receive, control, manage, liquidate, monetize and dispose of all Trust Assets for the benefit of the Beneficiaries as the Trustee deems appropriate to accomplish the purpose of the Trust, in accordance with the terms of this Trust Agreement, the Plan and the Confirmation Order;

**(b)**     To abandon any property, including any chose in action, which it determines in its reasonable discretion to be of *de minimis* value or of more burden than value to the Trust;

**(c)**     To protect and enforce the rights in and to the Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

**(d)**     To enter into contracts in the course of administering the Trust Assets for liquidation and in conjunction with their disposition under this Trust Agreement and the Plan;

**(e)**     To open and maintain bank accounts on behalf of the Trust, deposit funds therein and draw checks thereon, as appropriate under this Trust Agreement, the Plan and the Confirmation Order;

**(f)**     To obtain all reasonably necessary insurance coverage with respect to any property that is or may in the future become a Trust Asset;

**(g)**     To incur on behalf of the Trust, and pay from the assets of the Trust, all fees, costs and expenses of administering the Trust as provided in this Trust Agreement and the Plan.  These fees, costs and expenses include:  (a) the fees of bankruptcy management companies; (b) the fees and costs of Professionals employed by the Trustee, such as the Tort Claims Reviewer, investment advisors, accountants, agents, managers, attorneys-at-law, actuaries or auditors; and (c) the premiums charged by insurers, including, but not limited to, professional liability insurers;

**(h)**     In accordance with the Plan and the evaluation of the Tort Claims Reviewer pursuant to the TDP, to make distributions to Beneficiaries;

**(i)**     In its discretion, to rely on the authenticity of the signature of the Tort Claims Reviewer, and the accuracy of the information set forth by, and the reasonableness of the determination of, the Tort Claims Reviewer in the administration of the TDP and assessment of the Class 6 and Class 7 Claims without any verification or confirmation;

**(j)**     In its discretion, as a party in interest, to seek enforcement of any provision of the Plan pertaining to the Trust;

**(k)**     To retain any attorney-at-law, Tort Claims Reviewer, consultant, expert, accountant, investment advisor, bankruptcy management company or such other agents

D-5

and advisors as are necessary and appropriate to effectuate the purpose of, and maintain and administer, the Trust and shall be entitled to rely on advice given by such advisors within his, her, or its areas of competence;

(l)     To make, sign, execute, acknowledge and deliver any documents that may be necessary or appropriate to effectuate the purpose of the Plan and/or the Trust or to maintain and administer the Trust;

(m)     To seek the examination of any Person under, and subject to, the provisions of the Bankruptcy Rules, including Bankruptcy Rule 2004;

(n)     To file a motion with the Bankruptcy Court, with notice to the parties in interest, for a modification of the provisions of this Trust Agreement if the Trustee determines that such modification is necessary to conform to legal and/or administrative requirements and to the purpose of the Trust;

(o)     Upon any event terminating the Trust, to defer distribution of property from the Trust for a reasonable time needed to wind up the affairs of the Trust, including time needed to provide for payment of debts and expenses, although Beneficiaries' rights to distributions shall vest immediately;

(p)     To comply with Bankruptcy Code Section 345 with regard to the investment of Trust Assets.  The Trustee is relieved of any obligation to diversify;

(q)     To establish such accounts, funds and reserves, as required by the Plan, for ease of administration.  Nothing in this provision shall restrict the Trustee's authority to pool such accounts, funds or reserves for investment purposes or require separate bank accounts for such accounts, funds or reserves;

(r)     To be responsible for only that property delivered to it and have no duty to make, nor incur any liability for failing to make, any search for unknown property or liabilities;

(s)     To comply with the special distribution conditions outlined in Section 6.6 of the Plan.

**3.2.    LIMITATIONS ON THE TRUSTEE.**  Notwithstanding anything in this Trust Agreement to the contrary, the Trustee shall not do or undertake any of the following:

(a)     To guaranty any debt;

(b)     To loan Trust Assets;

(c)     To make any transfer or distribution of Trust Assets other than those authorized by this Trust Agreement, the Plan or the Confirmation Order;

(d)     To engage in any trade or business;

D-6

(**e**)    To engage in any investments or activities inconsistent with the treatment of the Trust as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d).

## ARTICLE IV
## TERMINATION OF THE TRUST

**4.1.    WHEN TERMINATION SHALL OCCUR**.  The Trustee shall terminate the Trust after its liquidation and the administration and distribution of the Trust Assets in accordance with this Trust Agreement and the Plan and the Trustee's full performance of all other duties and functions set forth in this Trust Agreement and the Plan.  The Trust shall terminate no later than (b) the eighth (8th) anniversary of the Effective Date.

**4.2.    TERMINATION PROCEDURES**.  After termination of the Trust and solely for the purpose of liquidating and winding up its affairs, the Trustee shall continue to act as Trustee until its duties hereunder have been fully performed.  The Trustee shall retain the books, records, documents and files that shall have been delivered to or created by the Trustee until distribution of all the Trust Assets.  For purposes of this provision Trust Assets will be deemed distributed when the total amount remaining in the Trust is less than $50,000.  At the Trustee's discretion, all of such books, records, documents and files may be destroyed at any time following the later of: (a) the first anniversary of the final distribution of the Trust Assets; and (b) the date until which the Trustee is required by applicable law to retain such books, records, documents and files; provided that, notwithstanding the foregoing, the Trustee shall not destroy or discard any books, records, documents or files relating to the Trust without giving the Reorganized Debtor and the Beneficiaries reasonable prior written notice thereof.

**4.3.    TERMINATION DISTRIBUTION**.  Upon termination of the Trust, provided that all fees and expenses of the Trust have been paid or provided for in full, the Trustee will deliver all funds and other investments remaining in the Trust, if any, including any investment earnings thereon to a charity supporting survivors of childhood sexual abuse as set forth in the Confirmation Order.

**4.4.    DISCHARGE, EXCULPATION AND EXONERATION**.  Upon termination of the Trust and accomplishing of all activities described in this Article, the Trustee and its professionals shall be discharged and exculpated from liability (except for acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law or fraud of the Trustee or his designated agents or representatives).  The Trustee may, at the expense of the Trust, seek an Order of the Bankruptcy Court confirming the discharges, exculpations and exoneration referenced in the preceding sentence.

## ARTICLE V
## IMMUNITY, LIABILITY AND INDEMNIFICATION OF TRUSTEE

**5.1.    LIMITATIONS ON LIABILITY**.  Neither the Trustee nor any of its duly designated agents or representatives or Professionals shall be liable for any act or omission taken or omitted to be taken by the Trustee in good faith, other than acts or omissions resulting from the

D-7

recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud of the Trustee or its designated agents or representatives. The Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys-at-law, accountants, financial advisors and agents and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons. Notwithstanding such authority, the Trustee shall be under no obligation to consult with its attorneys-at-law, accountants, financial advisors or agents, and its good faith determination not to do so shall not result in the imposition of liability on the Trustee, unless such determination is based on the Trustee's recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud.

   **5.2.** **NO RECOURSE AGAINST TRUSTEE PERSONALLY**. No recourse shall ever be had, directly or indirectly, against the Trustee personally, or against any employee, contractor, agent, attorney-at-law, accountant or other Professional retained in accordance with the terms of this Trust Agreement or the Plan by the Trustee, by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or trust agreement whatsoever executed by the Trustee in implementation of this Trust Agreement or the Plan, or by reason of the creation of any indebtedness by the Trustee under the Plan for any purpose authorized by this Trust Agreement or the Plan, it being expressly understood and agreed that any such promise, contract, instrument, undertaking, obligation, covenant or trust agreement entered into by the Trustee, whether in writing or otherwise, shall be enforceable only against and be satisfied only out of the Trust Assets and shall be evidence only of a right of payment out of the Trust Assets. Notwithstanding the foregoing, the Trustee may be held liable for its recklessness, gross negligence, willful misconduct, knowing and material violation of law, or fraud; and if liability on such grounds is established, recourse may be had directly against the Trustee. The Trust will not be covered by a bond.

   **5.3.** **INDEMNIFICATION**. The Trustee, using Trust Assets, shall defend, indemnify and hold harmless the Trustee, its officers, directors, agents, representatives and employees to the fullest extent that a corporation or trust organized under the laws of Minnesota is entitled to defend, indemnify and hold harmless its trustees, officers, directors, agents, representatives and employees against any and all costs (including attorneys' fees and costs), judgments, awards, amounts paid in settlement, liabilities, expenses, claims, damages or losses incurred by them in the performance of their duties hereunder; provided that neither the Trustee nor its officers, directors, agents, representatives or employees shall be defended, indemnified or held harmless in any way for any liability, expense, claim, damage or loss for which they are ultimately liable under Section 5.1.

   **5.4.** **OTHER DUTIES, OBLIGATIONS, INDEMNIFICATION.** The Trust will also assume all duties, obligations and indemnification responsibilities outlined in the Plan and Insurance Settlement Agreements.

<div align="center">

**ARTICLE VI**
**COMPENSATION AND EXPENSE REIMBURSEMENT OF TRUSTEE AND ITS AGENTS**

</div>

<div align="center">D-8</div>

**6.1.    TRUSTEE COMPENSATION**.   The Trustee shall be entitled to receive compensation from the Trust Assets as detailed in Exhibit 2.

**6.2.    COMPENSATION OF TRUSTEE'S AGENTS**.   Any Person retained by the Trustee pursuant to this Trust Agreement or the Plan will be entitled to reasonable compensation for services rendered.

**6.3.    REIMBURSEMENT OF EXPENSES**.   Any and all reasonable and necessary costs and expenses incurred by the Trustee and any Person retained by the Trustee, in performing its respective duties under this Trust Agreement, will be reimbursed by the Trustee from the Trust Assets.

<div align="center">

**ARTICLE VII**
**SUCCESSOR TRUSTEES**

</div>

**7.1.    VACANCY CAUSED BY TRUSTEE RESIGNATION OR REMOVAL**.

**(a)**    The Trustee may resign at any time upon thirty (30) days' written notice to be filed with the Bankruptcy Court.  The Trustee shall, within thirty (30) days after such resignation takes effect, deliver to the successor Trustee all of the Trust Assets which were in the possession of the Trustee along with a complete list of Trust Assets and a complete accounting of all transactions engaged by the Trustee while serving as such.

**(b)**    The Bankruptcy Court may remove a Trustee upon finding that the Trustee has engaged in a serious breach of fiduciary duty.  The removal will take effect upon the date the Bankruptcy Court specifies.  In the event of removal, the Trustee shall, within thirty (30) days after such removal takes effect, deliver to the successor Trustee all of the Trust Assets which were in the possession of the Trustee along with a complete list of Trust Assets and a complete accounting of all transactions engaged in by the Trustee while serving as such**.**

**7.2.    OUTGOING TRUSTEE OBLIGATIONS**.  In the event of the resignation or removal of the Trustee, the outgoing Trustee shall:

**(a)**    Execute and deliver by the effective date of resignation or removal such documents, instruments, records and other writings as may be reasonably requested by the successor Trustee to effect such resignation or removal and the conveyance of the Trust Assets then held by the resigning or removed Trustee to the successor Trustee;

**(b)**    Deliver to the successor Trustee all documents, instruments, records and other writings relating to the Trust Assets as may be in the possession or under the control of the resigning or removed Trustee; and

**(c)**    Otherwise assist and cooperate in effecting the assumption of the resigning or removed Trustee's obligations and functions by the successor Trustee.

<div align="center">

D-9

</div>

**(d)**     The resigning, removed or departed Trustee hereby irrevocably appoints the successor Trustee (and any interim trustee) as its attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such resigning or removed Trustee is obligated to perform under this Trust Agreement.  Such appointment shall not be affected by the subsequent disability or incompetence of the Trustee making such appointment.  The Bankruptcy Court also may enter such orders as are necessary to effect the termination of the appointment of the Trustee and the appointment of the successor Trustee.

**7.3.     APPOINTMENT OF SUCCESSOR TRUSTEE.**  Any vacancy in the office of Trustee shall be filled by the nomination of a majority of the members of the UCC (notwithstanding dissolution of the UCC on the Effective Date), subject to the approval of the Bankruptcy Court, after notice and a hearing.  If at least three (3) members of the UCC do not participate in the nomination of a successor Trustee within thirty (30) days after the Trustee resigns or becomes unable to serve, the counsel for the majority of Tort Claimants shall designate a successor after notice to Beneficiaries and a hearing.

**7.4.     PRESERVATION OF RECORD OF CHANGES IN TRUSTEES**.  A copy of each instrument of resignation, removal, appointment and acceptance of appointment shall be attached to an executed counterpart of this Trust Agreement.

## ARTICLE VIII
## TRUSTEE REPORTING AND DISCHARGE

**8.1.     ANNUAL ACCOUNTINGS**.  The Trustee shall prepare, at least annually, and upon termination of the Trust, a written accounting of the administration of the Trust listing the current assets (with fair market values) and detailing all transactions that occurred during the period covered by such accounting.  Each such accounting shall be filed with the Bankruptcy Court.  Copies of such accounting shall be available to Beneficiaries upon request.

**8.2.     APPROVAL OF ACCOUNTINGS AND DISCHARGE OF THE TRUSTEE**. The Trustee may file with the Bankruptcy Court a motion for approval of any accounting described in Section 8.1.  Upon the entry of an order of the Bankruptcy Court approving any such accounting, the Trustee shall be discharged from all liability, with respect to all assets listed and transactions detailed in such accounting, to the Trust, any Beneficiary or any Person who or which has had or may then or thereafter have a claim against the Trust for acts or omissions in the Trustee's capacity as the Trustee or in any other capacity contemplated by this Trust Agreement or the Plan.

## ARTICLE IX
## SECTION 468B SETTLEMENT FUND

**9.1.     GENERALLY**.

**(a)**     In accordance with the Plan, the Trustee will take all reasonable steps to ensure that the Trust will qualify as, and remain, a "Designated" or "Qualified"

CORE/3003233.0002/140935489.8

10923048v2

settlement fund within the meaning of § 468B of the Internal Revenue Code of 1986, as amended (the "Tax Code"), and the regulations promulgated pursuant thereto. The Archdiocese is the "transferor" within the meaning of Treasury Regulation Section 1.468B-1(d)(1). The Trustee shall be classified as the "administrator" within the meaning of Treasury Regulation Section 1.468B-2(k)(3).

(b)     It is further intended that the transfers to the Trust will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Tax Code and Treasury Regulation Section 1.461- 1 (a)(2).

**9.2.     EMPLOYER IDENTIFICATION NUMBER**. Upon establishment of the Trust, the Trustee shall apply for an employer identification number for the Trust in accordance with Treasury Regulation Section 1.468B-2(k)(4).

**9.3.     RELATION-BACK ELECTION**. If applicable, the Trustee and the Archdiocese shall fully cooperate in filing a relation-back election under Treasury Regulation Section 1.468B-1(j)(2), to treat the Trust as coming into existence as a settlement fund as of the earliest possible date.

**9.4.     FILING REQUIREMENTS**. The Trustee shall cause to be filed, on behalf of the Trust, all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulation Section 1.468B-2(k)(1). The Archdiocese or Reorganized Debtor shall file an election statement(s) satisfying the requirements of Treasury Regulation Section 1.468B-1(k)(2)(ii) so that the Trust is treated as a grantor trust under Section 671 of the Tax Code and the regulations promulgated thereunder. The election statement shall be included with the Trust's first timely filed trust income tax return. The Archdiocese or Reorganized Debtor shall supply to the Trustee and to the Internal Revenue Service the statement described in Treasury Regulation Section 1.468B-3(e)(2) no later than February 15th of the year following each calendar year in which the Archdiocese or Reorganized Debtor makes a transfer to the Trust.

**9.5.     BROAD POWERS OF THE TRUSTEE**. The Trustee is empowered to take all actions, including such actions as may be consistent with those expressly set forth above, as the Trustee deems necessary to reasonably ensure that the Trust is treated as a "Designated" or "Qualified" settlement fund under Section 468B of the Tax Code and the regulations promulgated pursuant thereto. Further, the Trustee may, unilaterally and without court order, amend, either in whole or in part, any administrative provision of this Trust Agreement which causes unanticipated tax consequences or liabilities inconsistent with the foregoing.

**ARTICLE X**
**BENEFICIARIES**

**10.1.     NAMES AND ADDRESSES**. The Trustee shall keep a register (the "Register") in which the Trustee shall at all times maintain the names and addresses of the Beneficiaries and the awards made to the Beneficiaries pursuant to the Plan. The Trustee may rely upon this Register for the purposes of delivering distributions or notices. In preparing and maintaining this Register, the Trustee may rely on the name and address of each holder of a Claim as set forth in a

D-11

proof of claim filed by such holder, or proper notice of a name or address change, which has been delivered by such Beneficiary to the Trustee. The Trustee may deliver distributions and notices to counsel for any Beneficiary identified in such Beneficiary's proof of claim or proper notice of a name or address change.

**10.2. RIGHTS OF BENEFICIARIES**. The rights of a Beneficiary under this Trust Agreement shall, upon the death or incapacity of an individual Beneficiary, pass to the legal representative of such Beneficiary. A Beneficiary shall have no title to, right to, possession of, management of, or control of the Trust Assets, or any right to call for a partition or division of the Trust Assets. Title to all the Trust Assets shall be vested in the Trustee, and the sole interest of the Beneficiaries shall be the rights and benefits given to such Persons under this Trust Agreement and the Plan.

**10.3. TAX IDENTIFICATION NUMBERS**. The Trustee may require any Beneficiary to furnish to the Trustee the Beneficiary's employer or taxpayer identification number or social security number as assigned by the IRS, and such other records or documents necessary to satisfy the Trustee's tax reporting obligations (including, but not limited to, certificates of non-foreign status). The Trustee may condition the payment of any distribution to any Beneficiary upon receipt of such number and records or documents.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

**11.1. PLAN INCORPORATION**. The Plan and the Confirmation Order, including the Plan's Miscellaneous Provisions, are incorporated into this Trust Agreement.

**11.2. NOTICES**. All notices or deliveries required or permitted hereunder shall be given as directed in the Plan, to the following:

If to the Trust or Trustee:

Berkeley Research Group
Attn: John P. Esposito, Managing Director
250 Pehle Avenue, Suite 301
Saddle Brook, NJ 07663

If to a Beneficiary:

Counsel who signed the Beneficiary's Proof of Claim or, for an unrepresented claimant, to the address for the claimant provided in the Proof of Claim.

**11.3. WAIVER**. No failure or delay of any party to exercise any right or remedy pursuant to this Trust Agreement shall affect such right or remedy or constitute a waiver by such party of any right or remedy pursuant thereto. Resort to one form of remedy shall not constitute a waiver of alternative remedies.

**11.4.    REIMBURSEMENT OF COSTS**. If the Trustee or the Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Trust Agreement or the enforcement thereof, the Trustee or the Trust, as the case may be, shall be entitled to collect any and all costs, reasonable and documented out-of-pocket expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action.

**11.5.    ENTIRETY OF TRUST AGREEMENT**. This Trust Agreement supersedes any and all prior oral discussions and agreements with respect to the subject matter hereof.  This Trust Agreement, together with the Exhibits hereto, the Plan, and the Confirmation Order, contain the sole and entire Trust Agreement and understanding with respect to the matters addressed therein.

**11.6.    COUNTERPARTS**. This Trust Agreement may be executed in two or more counterparts, with the same effect as if all signatures on such counterparts appeared on one document, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**11.7.    CAPTIONS**. The captions of Articles and Sections are included for convenience only and are to be disregarded in interpreting this Trust Agreement.

**11.8.    INDEPENDENT LEGAL AND TAX COUNSEL**. All parties to this Trust Agreement have been represented by counsel and advisors (collectively referred to as "Counsel") of their own selection in this matter.  Consequently, the parties agree that the language in all parts of this Trust Agreement shall in all cases be construed as a whole according to its fair meaning and neither strictly for nor against any party.  It is specifically acknowledged and understood that this Trust Agreement has not been submitted to, nor reviewed or approved by, the Internal Revenue Service or the taxing authorities of any state or territory of the United States of America.

**11.9.    APPLICABLE LAW.** This Trust Agreement shall be administered under, governed by, and enforced according to the laws of the State of Minnesota applicable to contracts and trust agreements made and to be performed therein, except that all matters of federal tax law and the Trust's compliance with Section 468B of the Tax Code and Treasury Regulations thereunder shall be governed by federal tax law, and all matters of federal bankruptcy law shall be governed by federal bankruptcy law.

**11.10.    TERMINATION.**  This Trust Agreement shall terminate and be deemed void *ab anitio* if a Confirmation Order is not entered consistent with the Plan.

IN WITNESS WHEREOF, the Archdiocese and the Trustee execute this Trust Agreement as of the date set forth in the opening paragraph.

**Trustee:**

_____

By: _____

Printed Name: _____

D-13

Title: _____

**The Archdiocese of Saint Paul and Minneapolis**

_____

By: _____

Printed Name: _____

Title: _____

D-14

**EXHIBIT 1**

**THE ARCHDIOCESE OF SAINT PAUL AND MINNEAPOLIS
TRUST DISTRIBUTION PLAN**

**ARTICLE I
DEFINITIONS**

1.1 **CAPITALIZED TERMS**. Capitalized terms used in this Distribution Plan shall have the meanings given them in the Plan, the Trust Agreement, or the Bankruptcy Code, unless otherwise defined herein, and such definitions are incorporated in this Distribution Plan by reference.

**ARTICLE II
RULES OF INTERPRETATION AND GENERAL GUIDELINES**

2.1. **PURPOSE**. This Distribution Plan is designed to provide guidance to the Tort Claims Reviewer in determining the amount of each Tort Claim under the Plan by assigning to each such Claim a value pursuant to the Evaluation Factors below.

2.2. **GENERAL PRINCIPLES**. As a general principle, this Distribution Plan intends to set out a procedure that provides substantially the same treatment to holders of similar Tort Claims. The range of values set forth in the Evaluation Factors below and the discretion given to the Tort Claims Reviewer to determine and to adjust the value to be assigned to a particular Tort Claim are intended to reflect the relative values of Tort Claims.

2.3. **SOLE AND EXCLUSIVE METHOD**. The Evaluation Factors set forth below shall be the sole and exclusive method by which the holder of a Tort Claim may seek allowance and distribution of such Claim. Although the factors collectively comprise the methodology that must be applied in reviewing Claims, the Tort Claims Reviewer may, as indicated below, take into account considerations in addition to those identified herein when evaluating a Claim within the parameters of the delineated factors.

2.4. **INTERPRETATION**. The terms of the Plan shall prevail if there is any discrepancy between the terms of the Plan and the terms of these Procedures.

2.5. **CONFIDENTIALITY AND PRIVILEGE**. All information that the Tort Claims Reviewer receives from any source about any Tort Claimant shall be held in strict confidence and shall not be disclosed absent an Order of the Bankruptcy Court or the written consent of the Tort Claimant (or such Claimant's counsel of record). All information the Tort Claims Reviewer receives from any Tort Claimant (including from counsel to such Claimant) shall be subject to a mediation privilege and receipt of such information by the Tort Claims Reviewer shall not constitute a waiver of any attorney-client privilege or attorney work-product claim or any similar privilege or doctrine.

**2.6.    TORT CLAIMS REVIEWER**. Roger Kramer is the Tort Claims Reviewer. The Tort Claims Reviewer shall conduct a review of each of the Tort Claims and, according to the guidelines set forth below, shall make determinations upon which individual monetary distributions will be made subject to the Plan and the Trust Agreement.

<div align="center">

**ARTICLE III**
**PROCEDURE**

</div>

**3.1.    ALLOWANCE OF A TORT CLAIM**. A Tort Claim shall be allowed if the Tort Claims Reviewer determines the Tort Claimant proved his or her claim by a preponderance of the evidence. If necessary, the Tort Claims Reviewer can ask for additional information to make this determination. The Tort Claimant may refuse such a request at his or her own risk. If a Tort Claim is allowed, the Tort Claims Reviewer shall determine the amount of such Tort Claim by assigning such Tort Claim a value pursuant to the Evaluation Factors. The Tort Claims Reviewer may consider the credibility of the Tort Claimant and the facts alleged in support of the Claim and, in the Tort Claims Reviewer's sole discretion, reduce or deny the Tort Claim. After all Tort Claims have been evaluated pursuant to the Evaluation Factors, the Trustee shall determine the dollar value for each Tort Claim based on the Tort Claimant's pro rata share of the total points assigned to all Tort Claimants and the available funds for distribution after accounting for necessary holdbacks including, but not limited to, Trust operating expenses, the Future Tort Claim Reserve Fund, and the Medicare Holdback. The Trustee shall then make payment to Tort Claimants in accordance with the Trustee's powers and duties under Section 3.1(h) of the Trust Agreement.

**3.2.    PROOF OF ABUSE**. The Tort Claims Reviewer shall consider all of the facts and evidence presented by the Tort Claimant in the Tort Claimant's filed proof of claim. Tort Claimants may supplement their filed proof of claims to provide additional information to the Tort Claims Reviewer until a plan is confirmed. Tort Claimants shall have no later than ten (10) days from the Confirmation Date to provide the Tort Claims Reviewer with any additional information.

**3.3.    DETERMINATIONS BY THE TORT CLAIMS REVIEWER**. The Tort Claims Reviewer or the Trustee shall notify each Tort Claimant in writing of the monetary distribution with respect to the Tort Claimant's claim, which distribution may be greater or smaller than the actual distribution to be received based on the outcome of any reconsideration claims. The Tort Claims Reviewer's determination shall be final unless the Tort Claimant makes a timely request for the point award to be reconsidered by the Tort Claims Reviewer. The Tort Claimant shall not have a right to any other appeal of the Tort Claims Reviewer's point award.

**3.4.    REQUESTS FOR RECONSIDERATION**. The Tort Claimant may request reconsideration by delivering a written request for reconsideration to the Tort Claims Reviewer within ten (10) calendar days after the date of mailing of the notice of the preliminary monetary distribution. Each written request must be accompanied by a check for the reconsideration fee, four hundred dollars ($400). The Tort Claimant, with the request for reconsideration, may submit

additional evidence and argument in support of such request. The Tort Claimant's monetary distribution amount may go up or down as a result of his or her request for reconsideration. The Tort Claims Reviewer shall have sole discretion to determine how to respond to the request for reconsideration. The Tort Claims Reviewer's determination of such request for reconsideration shall be final and not subject to any further reconsideration, review or appeal by any party, including a court.

**3.5.    DECEASED ABUSE SURVIVOR**. The Tort Claims Reviewer shall review the claim of a deceased Tort Claimant without regard to the Claimant's death, except that the Tort Claims Reviewer may require evidence that the person submitting the claim on behalf of the decedent is authorized to do so.

## ARTICLE IV
## GUIDELINES FOR ALLOCATION FOR ABUSE SURVIVOR CLAIMS

**4.1.    EVALUATION FACTORS**. Each Tort Claim will be evaluated by the Tort Claims Reviewer. Each Claim will be assigned points according to the following system.

**(a)    Abuser Profile**. Point values should be assigned in

(1)    40 points should be assigned if the abuser is on the Archdiocese's "Credibly Accused" list and the abuse occurred after the Archdiocese's adoption of the Charter for the Protection of Children and Young People.

(2)    15 points should be assigned if the abuser is on the Archdiocese's "Credibly Accused" list;

(3)    10 points should be assigned if the abuser is on any list of credibly accused besides the Archdiocese's list; and

(4)    5 points should be assigned if the abuser was accused by other Tort Claimants but is not on any list.

If the Tort Claimant was abused by more than one abuser, the Tort Claims Reviewer shall assign points based on the abuser that earns the highest number of points under the Abuser Profile.

**(b)    Nature of Abuse & Circumstances**. A point value ranging from 0 to 40 should be allocated for this section. Considerations should include, but are not limited to, the following factors:

(1)    The duration and/or frequency of the abuse;

(2)     Type of abuse: e.g. penetration, attempted penetration, masturbation, oral sex, touching under the clothing, touching over the clothing, kissing, sexualized talk;

(3)     Circumstances of abuse:

(i)     grooming behaviors including but not limited to special privileges, special activities, and attention, social relationship with parents, personal relationship with claimant, opportunity to experience sports or activities, isolation from others, use of alcohol or illicit drugs by abuser or claimant or use of or exposure to pornography;

(ii)     coercion or threat or use of force or violence, stalking;

(iii)     relationship of claimant to perpetrator including but not limited to whether claimant was a parishioner or student, held perpetrator in high regard, whether perpetrator was in position of trust, whether perpetrator had unsupervised access to claimant, and whether claimant valued relationship with perpetrator;

(iv)     multiple perpetrators involved in sexual misconduct;

(v)     location of abuse, including but not limited to isolated location, Tort Claimant's home, rectory, church, cabin, orphanage, boarding school, trip.

(c)     **Impact of the Abuse**. Overall, this category looks to how the abuse impacted the claimant. This includes how the abuse impacted the claimant's mental health, physical health, spiritual well-being, inter-personal relationships, vocational capacity or success, academic capacity or success, and whether the abuse at issue resulted in legal difficulties for the claimant. Some of these considerations may include the below factors, but the below list is not intended to be exhaustive. A point value ranging from 0 to 40 should be allocated for this section.

The Tort Claim Review should consider, along with any and all other relevant factors, whether the abuse at issue manifested, or otherwise led the claimant to experience, or engage in behaviors resulting from:

(1)     Mental Health Issues: This includes but is not limited to anxiety, depression,   post-traumatic stress disorder, substance abuse, addiction, embarrassment, fear, flashbacks, nightmares, sleep issues, sleep disturbances, exaggerated startle response, boundary issues, self-destructive behaviors, guilt, grief, homophobia, hostility, humiliation, anger, isolation, hollowness, regret,

shame, isolation, sexual addiction, sexual problems, sexual identity confusion, low self-esteem or self-image, bitterness, suicidal ideation and suicide attempts.

(2)    Physical Health Issues: This includes but is not limited to physical manifestations of emotional distress, gastrointestinal issues, headaches, high blood pressure, physical manifestations of anxiety, erectile dysfunction, heart palpitations, sexually-transmitted diseases, physical damage caused by acts of abuse, reproductive damage, self-cutting and other self-injurious behavior.

(3)    Spiritual Wellbeing: This includes but is not limited to loss of faith in God, loss of faith and trust in religion and spiritual distress.

(4)    Interpersonal Relationships: This includes but is not limited to problems with authority figures, hypervigilance, sexual problems, marital difficulties, problems with intimacy, lack of trust, isolation, betrayal, impaired relations, secrecy, social discreditation and isolation; damage to family relationships, and fear of children or parenting;

(5)    Vocational Capacity: This includes but is not limited to under- and un-employment, difficulty with authority figures, difficulty changing and maintaining employment, feeling of unworthiness or guilt related to financial success.

(6)    Academic Capacity: This includes but is not limited to school behavior problems.

(7)    Legal Difficulties: This includes but is not limited to criminal difficulties, bankruptcy, fraud.

(8)    Future Impact: The Tort Claims Reviewer shall award an additional 35 points to Claimants who were abused by Credibly Accused priests and were under 21 at the adoption of the Child Victims Act.

(d)    **Claimant Involvement**. The Tort Claims Reviewer shall consider that all Claimants have benefited from the work and cost incurred by those Claimants who have previously asserted claims against the Archdiocese and have participated in the legal and factual development of claims against the Archdiocese. A point value ranging from 0 to 5 should be allocated for this section.

The Tort Claim Review should consider factors including but not limited to whether the Claimant has filed a lawsuit; whether the Claimant and/or the Claimant's family has been subject to a deposition, mediation or interview; whether the Claimant has participated on the committee representing survivors; and whether the Claimant

participated in publicizing the issue of clergy sex abuse which has benefitted all claimants.

(e)    **Pending Lawsuit.** If the Tort Claimant has a pending state court lawsuit related to the abuse against a Catholic Entity, the Tort Claims Reviewer shall award the Tort Claimant an additional 30 points.  Further, if the Tort Claimant was a party to the criminal charges brought against the Archdiocese by Ramsey County, the Tort Claims Reviewer shall award an additional 35 points.

## ARTICLE V
## ADDITIONAL PROVISIONS

5.1.    **REDUCTION**. If the Tort Claimant's abuser(s) belonged to a religious order, the Tort Claimant's final monetary distribution shall be reduced by thirty-three percent (33%).  If the reduction result is not a whole number, the Tort Claims Reviewer should round up to the nearest whole number.

If a Tort Claimant is also a clergy abuser in another allowed Tort Claim, then his points will be reduced by the number of points allocated to his victim(s).

5.2.    **MINIMUM PAYMENT**. Notwithstanding anything to the contrary herein or in the Plan, every holder of an allowed Tort Claim shall receive a distribution of at least $50,000, unless the Claim is disallowed in its entirety by an Order of the Bankruptcy Court or a decision by the Tort Claims Reviewer.

# EXHIBIT E

## RELEASE AND MEDICARE CERTIFICATION

**To be entitled to receive any compensation under the Plan, you must execute and deliver this Release and the Medicare Certification.**

1. All capitalized terms in this Release And Medicare Certification are defined terms in the Joint Plan and they have the meanings ascribed to them in the Joint Plan.

2. In consideration of the promise of the Trust to make me a distribution, the amount payable to me under the Trust Distribution Plan, and other valuable consideration, I, for myself and my heirs, successors, and assigns:

   a. Hereby fully, finally, and completely release, remise, acquit, and forever discharge the Settling Insurer Entities with respect to the Settling Insurer Entity Policies from any and all past, present, and future Claims that, directly or indirectly, arise out of, relate to, or are in connection with the i) Tort Claims; ii) Related Insurance Claims; iii) the Settling Insurer Entity Policies; and iv) all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Reorganization Case.

   b. Hereby covenant (i) not to sue or seek recovery or relief of any kind from the Protected Parties or Settling Insurer Entities in connection with any and all past, present, and future Claims that, directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims, Related Insurance Claims, the Settling Insurer Entity Policies, or the Reorganization Case; (ii) to forever and irrevocably discharge that fraction, portion or percentage of damages I claim to have suffered in connection with any Abuse which is by trial or other disposition determined to be the causal fault or responsibility, if any, of any Protected Party; (iii) to voluntarily reduce any judgment that I may ever obtain against any Person relating to the same Abuse at issue in the Tort Claims or other claims of abuse or neglect in an amount reflecting that fraction, portion or percentage of damage or injury that I suffered due to the causal fault or responsibility, if any, of any Protected Party; (iv) that filing of this Release and Medicare Certification with any court by any Protected Party shall satisfy that fraction, portion or percentage of any judgment that may be rendered in my favor attributable to any Protected Party's causal fault or  responsibility; (v) that I will not seek a reallocation of the causal fault or causal responsibility of any Protected Party to any other Person whether assessed by reason of judgment or settlement; and (vi) this Release and Medicare Certification extinguishes any potential liability of any Protected Party

for contribution or indemnity to any Person who has been or may be held liable to me for any Tort Claim.

3.    I have been provided with copies of the Disclosure Statement, the Joint Plan and the exhibits thereto and have been given an opportunity to review such documents.

4.    I expressly reserve and retain my rights to recover from any Person for liability for any Abuse except as provided in this Release and Medicare Certification do not intend that payment by the Trust constitutes full compensation for the damage alleged in my Tort Claim(s).

5.    I intend the foregoing undertakings to accord with the principles set forth in Pierringer v. Hoger, 124 N.W.2d 106 (Wis. 1963) and Frey v. Snelgrove, 269 N.W.2d 918 (Minn. 1978).

6.    I understand and agree that any payment by the Trust to me does not constitute an admission of liability of any kind or nature by the Archdiocese, the Reorganized Debtor, the Trust, any Settling Insurer Entity or any Protected Party.

7.    I consent to, and agree to be bound by, the Discharge and the Injunctions set forth in Article XIV of the Joint Plan, including the injunctive relief for the benefit of the Settling Insurer Entities and Protected Parties.  I also approve of the Insurance Settlement Agreements embodied in the Joint Plan.

8.    I understand that payment from the Trust constitutes damages on account of personal physical injuries or sickness arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

9.    I represent and warrant that I have not assigned or otherwise transferred any interest in my Tort Claim(s).

10.    I have or will provide for the payment and/or resolution of any obligations owing or potentially owing under the Medicare Secondary Payer Statue relating to my Tort Claim(s).

11.    I consent to the release of information relating to my Medicare entitlement from the Social Security Administration and CMS to the Trustee and all other professionals retained by the Trust, and further authorize the Trustee and other Trust professionals to execute on my behalf any requests, including consents for release of information, for information relating to my Medicare entitlement and any obligations owing or potentially owing under the Medicare Secondary Payer Statute relating to my Tort Claim(s), from the Social Security Administration and CMS.

12.    This Release and Medicare Certification shall be binding upon my successors, heirs, agents and representatives.

TO BE COMPLETED BY TORT CLAIMANT:

Name of Tort Claimant: _____

By: _____

Signature: _____

Dated: _____

Claim Number(s): _____

**EXHIBIT F**

**[RESERVED]**

CORE/3003233.0002/140935489.14

# EXHIBIT G

# [RESERVED]

CORE/3003233.0002/140935489.11

## EXHIBIT H

### LIST OF CURRENT PARISHES

| Parish | Address |
|---|---|
| The Church of All Saints of Lakeville, Minnesota, including the parish school | 19795 Holyoke Ave<br>Lakeville, MN 55044 |
| The Church of the Annunciation of Hazelwood, Minnesota | 4996 Hazelwood Ave<br>Northfield, MN 55057-4255 |
| The Church of the Annunciation of Minneapolis, including the parish school, and including The Church of the Visitation in Minneapolis. | 509 54th St W<br>Minneapolis, MN 55419 |
| The Church of the Ascension of Norwood, Minnesota | 323 Reform St N<br>Norwood Young America, MN 55368 |
| The Church of the Ascension of Minneapolis, Minnesota, including the parish school and the former parish of The Church of St. Philip of Minneapolis, Minnesota | 1723 Bryant Ave N<br>Minneapolis, MN 55411 |
| The Church of the Assumption | 51 7th St W<br>St. Paul, MN 55102 |
| The Church of the Assumption of Richfield, Minnesota | 305 East 77th St<br>Richfield, MN 55423-4312 |
| Basilica of St. Mary of Minneapolis | 88 17th St. N.<br>P.O. Box 50010<br>Minneapolis, MN 55405 |
| The Church of the Blessed Sacrament of St. Paul, including The Church of St. Thomas the Apostle, of St. Paul, Minnesota | 2119 Stillwater Ave<br>St. Paul, MN 55119 |
| The Cathedral of Saint Paul, including the former parish of The Church of St. Vincent of St. Paul, Minnesota | 239 Selby Ave<br>St. Paul, MN 55102 |
| The Church of Christ the King of Minneapolis | 5029 Zenith Ave S<br>Minneapolis, MN 55410 |
| The Church of All Saints of Minneapolis | 435 4th St NE<br>Minneapolis, MN 55413-2037 |
| The Church of Corpus Christi of Saint Paul | 2131 Fairview Ave N<br>Roseville, MN 55113 |
| The Catholic Church of Divine Mercy of Faribault, including the parish school, and the former parishes of The Church of the Immaculate Conception of Faribault Minnesota, The Church of the Sacred Heart of Faribault, Minnesota, and The Church of St. Lawrence of Faribault, MN. | 139 Mercy Drive<br>Faribault, MN 55021 |
| The Church of The Epiphany of Coon Rapids, Minnesota, including the parish school | 1900 111th Ave NW<br>Coon Rapids, MN 55433-3728 |

G-1

| Parish | Address |
|---|---|
| The Church of Gichitwaa Kateri | 3045 Park Ave<br>Minneapolis, MN 55407-1517 |
| The Church of the Good Shepherd, of Minneapolis, Minnesota, including the parish school | 145 Jersey Ave S<br>Golden Valley, MN 55426-1527 |
| The Church of the Guardian Angels of Oakdale, Minnesota | 8260 Hudson Blvd<br>Lake Elmo, MN 55042 |
| Church of the Guardian Angels of Chaska, Minn including the parish school | 218 Second St W<br>Chaska, MN 55318-1813 |
| The Church of the Holy Childhood, St. Paul, Minnesota | 1435 Midway Pkwy<br>St. Paul, MN 55108-2419 |
| The Church of the Holy Cross of Minneapolis, Minnesota, including the Church of Saint Anthony of Padua, Church of Saint Hedwig of Minneapolis, and the former parish of The Church of Saint Clement. | 1621 University Ave NE<br>Minneapolis, MN 55413-1231 |
| The Church of the Holy Family of St. Louis Park, including the parish school | 5900 Lake St W<br>Saint Louis Park, MN 55416-2033 |
| The Church of the Holy Name of Minneapolis | 3637 11th Ave S<br>Minneapolis, MN 55407-2625 |
| The Church of the Holy Name of Jesus of Medina, Minnesota, including the parish school | 155 County Rd 24<br>Wayzata, MN 55391-9614 |
| Dominican Fathers Holy Rosary Church | 2424 - 18th Ave S<br>Minneapolis, MN 55404 |
| The Church of the Holy Spirit of St. Paul, Minnesota, including the parish school | 515 Albert St S<br>St. Paul, MN 55116-1611 |
| The Church of the Holy Trinity, including the former parishes of The Church of St. Columbkille of Belle Creek, Minnesota and The Church of St. Mary of Belvidere, Minnesota | 308 4th St N<br>Goodhue, MN 55027 |
| The Church of the Holy Trinity of Waterville, Minnesota | 506 Common St<br>Waterville, MN 56096-1513 |
| The Church of the Holy Trinity of South St. Paul, including the parish school and The Church of St. Augustine of South St. Paul, Minnesota. | 749 6th Ave S<br>South St. Paul, MN 55075-3034 |
| The Church of the Immaculate Conception | 116 Alabama St SE<br>Lonsdale, MN 55046-0169 |
| The Church of the Immaculate Conception of Watertown, Minnesota | 109 Angel Ave NW<br>Watertown, MN 55388-0548 |
| The Church of the Immaculate Conception of Columbia Heights, including the parish school | 4030 Jackson St NE<br>Columbia Heights, MN 55421-2929 |

| Parish | Address |
|---|---|
| The Church of the Immaculate Conception of Marysburg, Minnesota | 27528 Patrick St<br>Madison Lake, MN 56063-4117 |
| The Church of the Immaculate Heart of Mary of Glen Lake, Minnesota | 13505 Excelsior Blvd<br>Minnetonka, MN 55345-4913 |
| The Church of the Incarnation of Minneapolis, including Sargado Corazon de Jesus | 3817 Pleasant Ave<br>Minneapolis, MN 55409-1228 |
| The Church of Lumen Christi, including The Church of Saint Therese of St. Paul, The Church of Saint Gregory the Great of Saint Paul, Minnesota, and the Church of Saint Leo of St. Paul, Minnesota. | 2055 Bohland Ave<br>St. Paul, MN 55116 |
| The Church of Mary, Mother of the Church of Burnsville, Minnesota | 3333 East Cliff Rd<br>Burnsville, MN 55337-3306 |
| The Catholic Church of Mary Queen of Peace, including the parish school and the former parishes of the Church of Saint Martin of Rogers and The Church of St. Walberg, of Hasson | 21304 Church Ave<br>Rogers (Hassan Township), MN 55374-9189 |
| The Church of the Maternity of the Blessed Virgin, Saint Paul, Minnesota, including parish school and former parish of The Church of St. Andrews of St. Paul Minnesota | 1414 Dale St N<br>St. Paul, MN 55117-4153 |
| The Church of the Most Holy Redeemer of Montgomery, Minnesota, including the parish school and The Church of St. Canice of Kilkenny, Minnesota | 206 Vine Ave W<br>Montgomery, MN 56069-1063 |
| The Church of the Most Holy Trinity of Wesely, Minnesota | 4939 Washington St<br>Veseli, MN 55046-4007 |
| The Church of The Nativity, of Cleveland, Minnesota, including the parish school | 200 West Main St<br>Cleveland, MN 56017-0187 |
| The Church of the Nativity of Our Lord, including the parish school | 1900 Wellesley Ave<br>St. Paul, MN 55105-1617 |
| The Church of the Nativity of the Blessed Virgin, Oxboro, Minnesota, including parish school | 9900 Lyndale Ave S<br>Bloomington, MN 55420-4733 |
| The Church of Our Lady of Grace, in Edina, Minnesota, including the parish school and The Church of the Most Holy Trinity of St. Louis Park, Minnesota | 5071 Eden Ave<br>Edina, MN 55436 |
| The Church of Our Lady of Guadalupe of Saint Paul, Minnesota | 401 Concord St<br>St. Paul, MN 55107-2475 |
| The Church of Our Lady of Lourdes of St. Anthony, Minnesota | 1 Lourdes Place<br>Minneapolis, MN 55414-1018 |
| The Church of Our Lady of Mount Carmel of Minneapolis | 701 Fillmore St NE<br>Minneapolis, MN 55413-2525 |

| Parish | Address |
|---|---|
| The Church of Our Lady of Peace, including the parish school, The Church of St. Kevin and The Catholic Church of the Resurrection of Minneapolis | 5426 12th Ave S<br>Minneapolis, MN 55417-2505 |
| The Church of Our Lady of the Lake of Mound, Minn., including the parish school | 2385 Commerce Blvd<br>Mound, MN 55364-1427 |
| The Church of Our Lady of the Prairie, Belle Plaine, including the parish school, the former parish of The Church of Sacred Heart of Belle Plaine, Minnesota and the former parish of The Church of Saints Peter and Paul of Belle Plaine, Minn. | 212 N Chestnut St<br>Belle Plaine, MN 56011 |
| The Church of Our Lady of Victory of Minneapolis | 5155 Emerson Ave N<br>Minneapolis, MN 55430-3414 |
| The Church of Pax Christi of Eden Prairie | 12100 Pioneer Trail<br>Eden Prairie, MN 55347-4208 |
| The Church of the Presentation of the Blessed Virgin Mary of Saint Paul, including the parish school | 1725 Kennard St<br>Maplewood, MN 55109-4603 |
| The Church of the Risen Savior, of Apple Valley | 1501 County Rd 42 E<br>Burnsville, MN 55306-4723 |
| The Church of the Sacred Heart in St. Paul | 840 6th St E<br>St. Paul, MN 55106-4543 |
| The Church of the Sacred Heart of Rush City Minnesota | 425 Field Ave PO Box 45<br>Rush City, MN 55069 |
| The Church of the Sacred Heart, including the parish school | 4087 West Broadway Ave<br>Robbinsdale, MN 55422-2232 |
| The Church of St. Cyril of Minneapolis, Minnesota (also known as the Church of Ss. Cyril and Methodius) | 1315 2nd St NE<br>Minneapolis, MN 55413-1131 |
| Parish of Saints Joachim and Anne of Shakopee, Minnesota, formerly known as St. Mary of Shakopee, Saint Mark's Church of Shakopee, Scott County and The Church of Saint Mary of the Purification of Marystown, Minn. | 2700 17th Ave E<br>Shakopee, MN 55379-4443 |
| The Church of. SS. Peter and Paul of Medina, Minnesota | 145 Railway St E, P.O. Box 96<br>Loretto, MN 55357-0096 |
| The Church of St. Adalbert, of St. Paul, Minnesota | 265 Charles Ave<br>St. Paul, MN 55103-2005 |
| The Church of St. Agatha of Vermillion, Minnesota | 3700 160th St E<br>Rosemount, MN 55068-2007 |
| The Church of St. Agnes of St. Paul, Minnesota, including the parish school | 535 Thomas Ave<br>St. Paul, MN 55103 |

| Parish | Address |
|---|---|
| The Church of Saint Albert | 11400 57th St NE, P.O. Box 127<br>Albertville, MN 55301-0127 |
| The Church of Saint Albert the Great, of Minneapolis, Minn., including former parish of The Church of Our Lady of Perpetual Help of Minneapolis, Minnesota and the former parish of the Church of Saint Austin of Minneapolis, Minnesota | 2836 33rd Ave S<br>Minneapolis, MN 55406-1626 |
| The Church of St. Alphonsus, of Brooklyn Center, Minnesota, including the parish school | 7025 Halifax Ave N<br>Brooklyn Center, MN 55429-1375 |
| The Church of Saint Ambrose of Woodbury, including the parish school (formerly located in St. Paul, Minnesota) | 4125 Woodbury Dr.<br>Woodbury, MN 55129-9627 |
| The Church of St. Andrew of Elysian, Minnesota | 305 Park Ave NE<br>Elysian, MN 56028-0261 |
| The Church of St. Andrew Kim | 1850 Mississippi River Blvd<br>St. Paul, MN 55116-2644 |
| The Church of Saint Anne – Saint Joseph Hien | 2627 Queen Ave N<br>Minneapolis, MN 55411-1792 |
| The Church of St. Anne of Hamel, Minnesota | 200 Hamel Rd, P.O. Box 256<br>Hamel, MN 55340-0256 |
| The Church of St Anne of LeSueur, Minnesota, including the parish school and the former parish of Church of St. Thomas of Derrynane | 217 N 3rd St<br>Le Sueur, MN 56058-1808 |
| The Church of Saint Bartholomew of Wayzata, including the parish school | 630 Wayzata Blvd E<br>Wayzata, MN 55391-1704 |
| The Church of Saint Bernard of St Paul Minnesota | 1160 Woodbridge St.<br>St. Paul, MN 55117-4491 |
| The Church of St. Bernard, of Benton, Minnesota, including the parish school | 212 Church St E<br>Cologne, MN 55322-9552 |
| The Church of St. Bonaventure, of Bloomington, Minnesota | 901 90th St E<br>Bloomington, MN 55420-3801 |
| The Church of St. Boniface | 629 2nd St NE<br>Minneapolis, MN 55413-1905 |
| The Church of St. Boniface of St. Bonifacius, Minn. | 4025 Main St<br>Saint Bonifacius, MN 55375-0068 |
| The Church of Saint Bridget of Minneapolis, including the Church of Saint Austin of Minneapolis, Minnesota | 3811 Emerson Ave N<br>Minneapolis, MN 55412-2038 |
| The Church of St. Bridget of Sweden, of Lindstrom, Minnesota | 13060 Lake Blvd, P.O. Box 754<br>Lindstrom, MN 55045-0754 |

| Parish | Address |
|---|---|
| The Church of St. Casimir of St. Paul, Minnesota | 934 Geranium Ave E<br>St. Paul, MN 55106-2610 |
| The Church of St. Catherine of Spring Lake, Minnesota | 24425 Old Highway 13 Blvd<br>Jordan, MN 55352 |
| The Church of St. Cecilia of St. Paul | 2357 Bayless Place<br>St. Paul, MN 55114-1105 |
| The Church of St. Charles Borromeo of Minneapolis, Minnesota, including the parish school | 2739 Stinson Blvd NE<br>Saint Anthony, MN 55418-3124 |
| The Church of Saint Charles, Bayport, Minnesota | 409 3rd St N<br>Bayport, MN 55003-1044 |
| The Church of Saint Columba of St. Paul, Minn. | 1327 LaFond Ave<br>St. Paul, MN 55104-2035 |
| The Church of St Dominic of Northfield Minnesota, including the parish school | 216 Spring St N<br>Northfield, MN 55057-1431 |
| The Church of St. Edward, of Bloomington, Minnesota | 9401 Nesbitt Ave S<br>Bloomington, MN 55437-1943 |
| The Church of St. Elizabeth Ann Seton, Hastings, Minnesota, including the parish school and the former parishes of  The Church of Guardian Angels, Hastings, Minnesota and The Church of St. Boniface of Hasting, Minnesota | 2035 15th St W<br>Hastings, MN 55033-9294 |
| The Church of Saint Frances Cabrini of Minneapolis, Minnesota | 1500 Franklin Ave SE<br>Minneapolis, MN 55414-3649 |
| The Church of St. Francis de Sales of St. Paul, Minnesota including Child Care Center & Preschool, and The Church of St. James of St. Paul | 650 Palace Ave<br>St. Paul, MN 55102-3540 |
| The Church of St. Francis of Assisi | 16770 13th St S<br>Lake St Croix Beach, MN 55043-9756 |
| The Church of Saint Francis Xavier of Franconia, Minnesota | 25267 Redwing Ave<br>Shafer, MN 55074 |
| The Church of St. Francis of Buffalo, Minnesota, including the parish school | 300 First Ave NW<br>Buffalo, MN 55313-5042 |
| The Parish of Saint Gabriel the Archangel of Hopkins, Minnesota, including St. Joseph of Hopkins and Saint John the Evangelist of Interlachen Park | 6 Interlochen Rd<br>Hopkins, MN 55343-8548 |
| The Church of St. Genevieve of Centerville, Minnesota including The Church of St. John the Baptist of Hugo | 7087 Goiffon Rd<br>Centerville, MN 55038-9125 |
| The Church of Saint George of Long Lake | 133 Brown Rd N<br>Long Lake, MN 55356-9560 |

| Parish | Address |
|---|---|
| The Church of St. Gerard | 9600 Regent Ave N<br>Brooklyn Park, MN 55443-1401 |
| The Church of Saint Gregory | 38725 Forest Blvd<br>North Branch, MN 55056-0609 |
| The Church of Saint Hedwig of Minneapolis | 129 29th Ave. NE<br>Minneapolis, MN 55418 |
| The Church of St. Helena of Minneapolis, including parish school | 3204 43rd St E<br>Minneapolis, MN 55406-3858 |
| The Church of St. Henry of Monticello, Minn | 1001 7th St E<br>Monticello, MN 55362-8805 |
| The Church of Saint Henry of Sharon, Minnesota | 165 N. Waterville Ave.<br>Le Center, MN 56057 |
| The Church of Saint Hubert of Chanhassen Minn, including parish school | 8201 Main St<br>Chanhassen, MN 55317-9647 |
| The Church of St. Ignatius of French Lake, Minnesota | 35 Birch St E<br>Annandale, MN 55302-0126 |
| The Church of St. Jerome, Maplewood, Minnesota including parish school | 380 Roselawn Ave E<br>Maplewood, MN 55117-2033 |
| The Church of Saint Joan of Arc in Minneapolis | 4537 3rd Ave S<br>Minneapolis, MN 55419-5111 |
| The Church of St. John Neumann | 4030 Pilot Knob Rd<br>Eagan, MN 55122-1814 |
| The Church of St. John the Baptist of Dayton Minnesota | 18380 Columbus St, P.O. Box 201<br>Dayton, MN 55327-0201 |
| The Church of St. John the Baptist of Byrnesville, Minnesota, including parish school | 4625 West 125th St<br>Savage, MN 55378-1357 |
| The Church of St. John Baptist, including parish school | 835 2nd Ave NW<br>New Brighton, MN 55112-6842 |
| The Church of Saint John the Baptist of Jordan Minn., including parish school | 313 East 2nd St<br>Jordan, MN 55352-1447 |
| Church of St. John the Baptist of Excelsior, Minnesota, including parish school | 680 Mill St<br>Excelsior, MN 55331-3272 |
| The Church of St. John of Vermillion Minnesota, including parish school | 106 Main St W<br>Vermillion, MN 55085-0008 |
| St. John's Church of Little Canada, Minnesota, including parish school | 380 Little Canada Rd E<br>Little Canada, MN 55117-1627 |
| The Church of Saint John Vianney in South Saint Paul, Minnesota | 789 17th Ave North<br>South St. Paul, MN 55075 |
| The Church of St. Joseph | 8701 36th Ave N<br>New Hope, MN 55427-1769 |

| Parish | Address |
|---|---|
| The Church of Saint Joseph of West Saint Paul, Minnesota | 1154 Seminole Ave<br>West St. Paul, MN 55118-2020 |
| The Church of St. Joseph, of Red Wing Minnesota | 426 8th St W<br>Red Wing, MN 55066-3410 |
| The Church of Saint Joseph of Taylors Falls | 490 Bench St<br>Taylors Falls, MN 55084-0234 |
| The Church of Saint Joseph of Waconia, Minn., including parish school | 41 1st St E<br>Waconia, MN 55387-1526 |
| The Church of St. Joseph, of Rosemount Minnesota, including parish school | 13900 Biscayne Ave W<br>Rosemount, MN 55068-3451 |
| The Church of St. Joseph, of Miesville, Minnesota, in the Township of Douglas, including parish school | 23955 Nicolai Ave E<br>Hastings, MN 55033-9650 |
| Church of St. Joseph of Rice Lake, Minnesota | 171 Elm St<br>Lino Lakes, MN 55014-1271 |
| The Church of St. Joseph the Worker, Maple Grove, Minnesota | 7180 Hemlock Lane N<br>Maple Grove, MN 55369-5569 |
| The Church of St. Jude of the Lake in the Town of Lincoln, including parish school | 700 Mahtomedi Ave<br>Mahtomedi, MN 55115-1673 |
| The Church of Saint Katharine Drexel, Ramsey, Minnesota | 7101 143rd Ave NW<br>Ramsey, MN 55303-6001 |
| The Church of St. Lawrence of Minneapolis, Minnesota | 1203 5th St SE<br>Minneapolis, MN 55414-2030 |
| The Church of St. Leonard of Port Maurice, of Minneapolis, Minnesota | 3949 Clinton Ave S<br>Minneapolis, MN 55409-1635 |
| The Church of St. Louis, of St. Paul Minnesota | 506 Cedar St<br>St. Paul, MN 55101-2245 |
| The Church of St. Luke of Clearwater, Minnesota | 17545 Huber Ave NW<br>Clearwater, MN 55320-0249 |
| The Church of Saint Margaret Mary, of Minneapolis, Minnesota | 2323 Zenith Ave N<br>Golden Valley, MN 55422-3853 |
| The Church of St. Mark of St. Paul, Minnesota, including parish school | 2001 Dayton Ave<br>St. Paul, MN 55104-5804 |
| The Church of St. Mary, of St. Paul Minnesota | 261 8th St E<br>St. Paul, MN 55101-2307 |
| The Church of St. Mary of Le Center, Minnesota | 165 Waterville Ave N<br>Le Center, MN 56057-1524 |
| The Church of St. Mary, of New Trier, Minnesota | 8433 239th St E<br>Hampton, MN 55031-9766 |
| The Church of St. Mary of Stillwater | 423 5th St S<br>Stillwater, MN 55082-4982 |

| Parish | Address |
|---|---|
| The Church of St Mary of Waverly Minnesota | 606 Elm Ave<br>Waverly, MN 55390-0278 |
| The Church of St. Mary, Minnesota (also known as the Church of St. Mary of Czestochowa) | 1867 95th St SE<br>Delano, MN 55328-8208 |
| The Church of St. Mary of the Lake, of Medicine Lake, Minnesota | 105 Forestview Ln N<br>Plymouth, MN 55441-5910 |
| The Church of St. Mary of the Lake, of White Bear, Minnesota | 4690 Bald Eagle Ave<br>White Bear Lake, MN 55110-3441 |
| The Church of St. Matthew of St. Paul, Minnesota | 490 Hall Ave<br>St. Paul, MN 55107-2845 |
| The Church of St. Mathias of Hampton, Minnesota | 23315 Northfield Blvd<br>Hampton, MN 55031-9667 |
| The Church of Saint Maximilian Kolbe, including parish school, formerly known as The Church of St. Peter, of Delano, Minnesota and The Church of St. Joseph of Delano | 204 South River St.<br>PO Box 470<br>Delano, MN 55328 |
| The Church of St. Michael | 411 Court Avenue<br>P.O. Box 357<br>Gaylord, MN 55334 |
| The Church of St. Michael of Farmington, Minnesota | 22120 Denmark Ave<br>Farmington, MN 55024 |
| The Church of Saint Michael of Kenyon, Minnesota | 108 Bullis St<br>Kenyon, MN 55946-1156 |
| The Church of St. Michael, of Pine Island Minnesota | 451 5th St SW<br>Pine Island, MN 55963-6761 |
| The Church of St. Michael of St. Paul Minnesota | 337 Hurley St E<br>West St. Paul, MN 55118-1605 |
| The Church of St. Michael, of Stillwater Minnesota | 611 3rd St S<br>Stillwater, MN 55082-4908 |
| The Church of St. Michael, of Frankfort, Minnesota, including parish school | 11300 Frankfurt Pkwy NE<br>Saint Michael, MN 55376-4550 |
| The Church of St. Michael of Prior Lake, including parish school | 16311 Duluth Ave SE<br>Prior Lake, MN 55372-2423 |
| The Church of Saint Nicholas of Carver Minn. | 412 4th St W<br>Carver, MN 55315-0133 |
| St. Nickolaus Church of New Market Scott County Minnesota | 51 Church St<br>New Market, MN 55054-0009 |
| The Church of St. Odilia, of Shoreview, Minnesota, including parish school | 3495 Victoria St N<br>Shoreview, MN 55126-3813 |
| St. Olaf's Catholic Church of Minneapolis, Minnesota | 215 South 8th St<br>Minneapolis, MN 55402-2803 |

| Parish | Address |
|---|---|
| The Church of Saint Pascal Baylon, St. Paul, Minnesota, including parish school, and the former parish of The Church of St. John of St. Paul, Minnesota | 1757 Conway St<br>St. Paul, MN 55106-5929 |
| The Church of St. Patrick of Inver Grove, Minnesota | 3535 72nd St E<br>Inver Grove Heights, MN 55076-2627 |
| The Church of St. Patrick of Edina, Minnesota | 6820 St. Patrick's Lane<br>Edina, MN 55439-1631 |
| The Church of, St. Patrick, of Shieldsville Minnesota | 7525 Dodd Rd<br>Faribault, MN 55021-7431 |
| The Church of St. Patrick of Cedar Lake, Minnesota | 24425 Old Highway 13 Blvd<br>Jordan, MN 55352-9604 |
| The Church of St. Patrick of Cedar Creek, Minnesota | 19921 Nightingale St NW<br>Oak Grove, MN 55011-9243 |
| The Church of St. Patrick of St. Paul Minnesota | 1095 DeSoto St<br>St. Paul, MN 55130-3704 |
| The Church of Saint Paul of Zumbrota, Minnesota | 749 Main St S<br>Zumbrota, MN 55992-1608 |
| The Church of Saint Paul | 1740 Bunker Lake Blvd NE<br>Ham Lake, MN 55304-7040 |
| The Church of Saint Peter of Richfield, Minnesota, including parish school of Blessed Trinity | 6730 Nicollet Ave<br>Richfield, MN 55423-2464 |
| The Church of St. Peter, of Mendota, Minnesota | 1405 Hwy 13<br>Mendota, MN 55150-0679 |
| The Church of Saint Peter, including parish school | 1250 Shore Dr. S<br>Forest Lake, MN 55025-1933 |
| The Church of St. Peter of North St. Paul, including parish school and the former parish The Church of the Holy Redeemer | 2600 Margaret St N<br>North St. Paul, MN 55109-2361 |
| The Church of St. Peter Claver Minnesota, including parish school | 375 Oxford St N<br>St. Paul, MN 55104-4734 |
| The Church of St. Pius of Cannon Falls, Minnesota | 410 Colvill St W<br>Cannon Falls, MN 55009-2441 |
| The Church of St. Pius X of White Bear, Minnesota | 3878 Highland Ave<br>White Bear Lake, MN 55110-4240 |
| The Church of Saint Raphael in Crystal, Minnesota, including parish school | 7301 Bass Lake Rd<br>Crystal, MN 55428-3826 |
| The Church of Saint Richard, of Richfield, Minnesota | 7540 Penn Ave S<br>Richfield, MN 55423-3629 |
| The Church of St. Rita of Cottage Grove, Minnesota | 8694 80th St S<br>Cottage Grove, MN 55016-2012 |

| Parish | Address |
|---|---|
| The Church of Saint Rose of Lima of Rosetown, Minnesota, including parish school | 2048 Hamline Ave N<br>Roseville, MN 55113-5855 |
| The Church of St. Stanislaus of Saint Paul, Minnesota | 398 Superior St<br>St. Paul, MN 55102-2925 |
| The Church of St. Stephen of Minneapolis, Minnesota | 2211 Clinton Ave<br>Minneapolis, MN 55404-3656 |
| The Church of St. Stephen, of Anoka, Minnesota, including parish school | 525 Jackson St<br>Anoka, MN 55303-2353 |
| The Church of Saint Therese of Deephaven, including parish school | 18323 Minnetonka Blvd<br>Deephaven, MN 55391-3231 |
| The Church of St. Thomas Aquinas in St. Paul Park, Minnesota | 920 Holly Ave<br>St. Paul Park, MN 55071-1418 |
| The Church of St. Thomas Becket | 4455 S Robert Trail<br>Eagan, MN 55123-2038 |
| The Church of Saint Thomas More, including parish school, The Church of the Immaculate Heart of Mary, St. Paul, Minnesota and former parish of Church of St. Luke, St. Paul Minnesota | 1079 Summit Ave<br>St. Paul, MN 55105-3004 |
| The Church of St. Thomas of Minneapolis | 2914 W 44th St<br>Minneapolis, MN 55410-1551 |
| The Church of St. Thomas, of Corcoran, Minnesota | 20000 County Rd 10<br>Corcoran, MN 55340-9501 |
| The Church of Saint Timothy of Blaine | 707 89th Ave NE<br>Blaine, MN 55434-2304 |
| The Church of St. Timothy of Maple Lake, Minnesota, including parish school | 8 Oak Ave N<br>Maple Lake, MN 55358-2457 |
| The Church of Saint Victoria of Victoria, Minn. | 8228 Victoria Dr.<br>Victoria, MN 55386-9692 |
| The Church of St. Vincent de Paul, of Osseo, Minnesota, including parish school | 9100 93rd Ave N<br>Brooklyn Park, MN 55445-1407 |
| The Church of St. Wenceslaus, of New Prague, Minnesota, including parish school, Saint Scholastica Church of Heidelberg, Minnesota, The Church of Saint John the Evangelist of Union Hill, Minn., The Church of St. Joseph, and Church of Saint Benedict, of St. Benedict. | 215 Main St E<br>New Prague, MN 56071-1832 |
| The Church of Saint William of Fridley, Minnesota | 6120 5th St NE<br>Fridley, MN 55432-5033 |
| Transfiguration Church of Oakdale, Minnesota, including parish school | 6133 15th St N<br>Oakdale, MN 55128-4201 |

## EXHIBIT I

### KNOWN ARCHDIOCESE ENTITY INSURANCE POLICIES

| Insurer | Policy No. | Dates | Type / Comment |
|---------|-----------|-------|----------------|
| The Catholic Mutual Relief Society of America 10843 Old Mill Road Omaha, NE 68154-2600 | 7922 8140 8140 8589 | 9/1/87 - 9/1/89 9/1/89 - 9/1/90 9/1/90 - 9/1/92 9/1/92 - present | Primary & Umbrella Claims Made (Settled Only in Part) |
| Arrowood Indemnity Company as successor to Royal Indemnity Company | RTI 114937 RTY 114998 | 7 /1/67-7/1/68 7/1/68-7/1/71 | Primary - Policies issued to Brothers of the Christian Schools naming Diocese of Saint Paul and Minneapolis as additional insured |
| Appalachian Insurance Company Attn:  Norma Newell FM Global Corporate Offices 270 Central Avenue Johnston, RI 02919 | 70008 | 7/1/68-7/1/71 | Umbrella - Policy issued to Brothers of the Christian Schools |
| Lamorak Insurance Company as successor to Employers' Liability Assurance Corp. | E22-8501-032 | 3/15/67-7/1/68 | Umbrella – Policy E22-8501-032 issued to Brothers of the Christian Schools |
| Centennial Insurance Company in Liquidation New York Liquidation Bureau 110 William Street New York, NY 10038 | 291696527 291713899 287014764 | 9/1/80 - 9/1/83 9/1/83 - 9/1/86 9/1/86 – 9/1/87 | |
| The Hartford Steam Boiler Inspection and Insurance Co. | 8589 | | |
| Preferred Professional Insurance Co. | MAU0033558-00 | | Auto |

| Insurer | Policy No. | Dates | Type / Comment |
|---|---|---|---|
| K&K Insurance | FXP0000026004800 | | Youth Accident |
| Midwest Employers Casualty Co. | EWC008191 | 7/1/14 - 7/1/15 | Excess W/C and Employers Liability Indemnity |
| Workers' Compensation Reinsurance Co. | 30219 | 1/1/15 - 12/31/15 | Workers Comp |
| Sovereign Marine & General Insurance Company Limited c/o KPMG LLP 15 Canada Square Canary Wharf, London, E14 5GL | SLC5744 (Part of London Market) | 9/1/80 - 9/1/83 | |
| Northwestern National of Milwaukee Wisconsin, as successor to Bellefonte Insurance Company 9277 Centre Pointe Drive, Suite 140 West Chester, OH 45069 | SLC5742 (Part of London Market) | 9/1/80 - 9/1/81 | |

**EXHIBIT J**

**OFFICERS AND DIRECTORS OF REORGANIZED DEBTOR**

| Name | Title |
|---|---|
| Most Reverend Bernard A. Hebda | Archbishop |
| Most Reverend Andrew Cozzens | Auxiliary Bishop |
| Very Reverend Charles V. Lachowitzer | Moderator of the Curia |
| Joseph Kueppers | Chancellor for Civil Affairs |
| Thomas Mertens | Chief Financial Officer |
| John F. Bierbaum | Board of Directors - member |
| Peter Daly, M.D. | Board of Directors - member |
| Karen Rauenhorst | Board of Directors - member |
| Rev. Stephen Ulrick | Board of Directors - member |
| Brian Short | Board of Directors - member |

**EXHIBIT K**

**SETTLEMENT AGREEMENT WITH RAMSEY COUNTY ATTORNEY'S OFFICE**

STATE OF MINNESOTA

COUNTY OF RAMSEY

DISTRICT COURT

SECOND JUDICIAL DISTRICT
JUVENILE COURT DIVISION

-----------------------------------------------------------------

In the Matter of the Welfare of:

    VICTIM-1, a child identified in police reports;

    VICTIM-2, a child identified in police reports; and

    VICTIM-3, a child identified in police reports.

Respondent:
      The Archdiocese of Saint Paul and Minneapolis,
               a Minnesota corporation,
      226 Summit Avenue
      St. Paul, MN  55102
      651-291-4400

MNCIS Group:
Court File No.: 62-JV-15-1674
CA File No.: 2138749

**STIPULATION TO
STAY PROCEEDINGS**

-----------------------------------------------------------------

    The parties, having reached settlement in the above-captioned matter to further their respective and mutual interests in protecting minors from sexual abuse, and recognizing the complexity of the captioned matter, and without any admission of liability,

    IT IS HEREBY STIPULATED by and between the parties, through their respective undersigned counsel, as follows:

    1.      that the parties have entered into a Settlement Agreement ("Agreement"), which is contingent upon approval of the United States Bankruptcy Court;

    2.      that the Agreement is intended to further the statutory goals of Minn. Stat. § 260C.335;

    3.      that further proceedings in the above-captioned matter be stayed for thirty-six (36)

1

months, the agreed-upon term of the Agreement, from the date of approval by the United States

Bankruptcy Court;

    4.    that the Court retain jurisdiction of the above-captioned matter during the pending

thirty-six (36) month period;

    5.    that the parties appear before the Court at approximately six-month (6 month)

intervals over the term of the Agreement to report to the Court on the ongoing status,

implementation and progress of the Agreement;

    6.    that the parties agree that no other or further claims or crossclaims shall be brought

by any party in the above-captioned matter, except for litigation to enforce the Agreement should

that become necessary;

    7.    that the Agreement is attached to this stipulation; and

    8.    that the parties agree this stipulation and the Agreement are public documents.

Respectfully submitted,

FREDRIKSON AND BYRON, P.A.

Dated: 12/12/15

By: _____
Joseph T. Dixon (#0283903)
Andrew F. Johnson (#0390783)
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
612-492-7000
Facsimile: 612-492-7077
jdixon@fredlaw.com
ajohnson@fredlaw.com

2

Dated: 12/17/15

JOHN J. CHOI
RAMSEY COUNTY ATTORNEY

By: _____

John J. Choi (#257175)
Ramsey County Attorney
John T. Kelly (#214098)
First Assistant County Attorney
Thomas E. Ring (#25082X)
Assistant County Attorney
Stephanie L. Wiersma (#395741)
Assistant County Attorney
Office of the Ramsey County Attorney
345 Wabasha Street North, Suite 120
St. Paul, MN  55102
651-266-3222

3

In re:  Welfare of Victim 1, Victim 2 and Victim 3
Court File No.:  62-JV-15-1674
Stipulation to Stay Proceedings

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered by and between The Archdiocese of St. Paul and Minneapolis, a Minnesota corporation, and the Ramsey County Attorney ("RCAO").

## RECITALS

WHEREAS, the Parties agree that the Archdiocese shall seek to create and foster an organizational culture in which everyone becomes and remains vigilant about achieving an overall aspirational goal that no child ever again be the victim of clergy sexual abuse.

WHEREAS, the RCAO initiated the Civil Action on June 3, 2015 petitioning the Court for an order that the Archdiocese show cause why it should not be subject to the jurisdiction of the Court for contributing to a child's need for protection or services; and

WHEREAS, the Court found probable cause to support issuance of the order requested by the RCAO; and

WHEREAS, the Archdiocese has taken and is taking steps to substantially enhance its Safe Environment Program; and

WHEREAS, the Archdiocese denies that it is contributing to a child's need for protection or services; and

WHEREAS, the Archdiocese initiated Bankruptcy Proceedings before the Civil Action was brought, and now seeks to pursue resolution of the Civil Action in a prudent manner consistent with the protection of assets available for creditors; and

WHEREAS, the RCAO seeks to protect the community and hold individuals and organizations accountable for injurious conduct as required by law and the interests of justice; and

WHEREAS, the Parties agree that this Agreement will advance their mutual interests in the protection of minors beyond what may otherwise be obtained through further litigation; and

NOW, THEREFORE, the Parties, in consideration of the promises and mutual undertakings contained in this Agreement, here promise their respective best efforts to achieve with deliberate speed the following terms and conditions of settlement:

1

# AGREEMENT

A. **Definitions.**   The Parties have defined certain terms used within this Agreement that are provided below:

"Adult Volunteer" means an adult volunteer for the Archdiocese or a Parish or School who has regular or unsupervised contact with unrelated minors.

"Archbishop" means the sitting Archbishop of St. Paul and Minneapolis (or the appointed Apostolic Administrator).

"Archdiocese" means that certain corporate entity formed, maintained and existing under Minnesota Section 315.16 with Minnesota Business Name: "The Archdiocese of St. Paul and Minneapolis".

"Archdiocese Territory" means the twelve (12) counties of the greater Twin Cities metropolitan area: Ramsey, Hennepin, Washington, Dakota, Anoka, Carver, Wright, Scott, Chisago, LeSueur, Rice, and Goodhue; and those persons outside the geographical territory over whom the Archdiocese has the ability to direct or control.

"Auxiliary Bishop(s)" means the Most Rev. Andrew H. Cozzens and any other titular bishop assigned to and serving the Archdiocese.

"Bankruptcy Proceedings" means the Chapter 11 Bankruptcy case captioned *In re: The Archdiocese of Saint Paul and Minneapolis, Debtor* before the United States Bankruptcy Court for the District of Minnesota, Bankruptcy Case No.: 15-30125.

"Board" means the duly constituted serving Board of Directors of the Archdiocese.

"Civil Action" means that certain civil proceeding initiated by the RCAO on June 3, 2015 that has been assigned case file number 62-JV-15-1674 by the Ramsey County District Court.

"Clergy" means any persons ordained – bishops, priests, and deacons – who administer the rites of the Catholic Church.

"Cleric" means a member of the Clergy.

"Code of Conduct" means the Code of Conduct for Clergy, the Code of Conduct for Church Personnel, the Code of Conduct for Adult Volunteers, and the Code of Conduct for Youth Volunteers, as applicable.

"Court" means the Ramsey County (Minnesota) District Court.

2

"Director" means the Archdiocese employee responsible for managing Archdiocese processes for handling allegations of clergy misconduct and for leading the Office of Ministerial Standards and Safe Environment.

"Ministerial Review Board" means the advisory, consultative body assembled to advise the Archbishop and his staff regarding clergy misconduct. The Ministerial Review Board may also review and offer recommendations regarding Archdiocese policies and processes relating to misconduct.

"Parish" means a parish within the Archdiocese Territory that is Archdiocese-recognized as Catholic.

"Parties" means the Archdiocese and the Ramsey County Attorney.

"Pastor" means a Parish pastor or a parochial administrator, as the case may be.

"Policies" means Archdiocese policies relating to the sexual abuse of minors, including the Codes of Conduct for Catholic Church clergy, employees, and volunteers.

"POMS Program" (or its equivalent) means the Archdiocese's internal program for clergy the Archdiocese desires to have supervised.

"RCAO" means the Ramsey County Attorney or the Office of the Ramsey County Attorney.

"Safe Environment Program" means all policies, procedures, and programming that contributes to the protection of minors.

"School" means a primary school or a secondary school within the Archdiocese Territory that is Archdiocese-recognized as Catholic.

"Seminary" or "Seminaries" means the St. Paul Seminary, St. John Vianney Seminary, or both.

B. **Basis for Civil Action.**    The factual basis for the Civil Action as alleged by the RCAO is contained in the Petition for Order to Show Cause.

C. **Statement of the Archdiocese.**    The Archdiocese may choose to issue a public statement relating to entering this Agreement, both in writing and through public statements of its representatives. The RCAO agrees that such statements, if made by the Archdiocese, would not be admissible as evidence in any proceeding between the RCAO and Archdiocese.

D. **Letter of Apology; Meeting with Victims.**    The Archbishop shall send a private letter of apology to the victims and family of this action through their respective counsel. In that letter, he will offer to meet with the victims and their family. The RCAO agrees that this letter would not be admissible as evidence in any proceeding between the RCAO and Archdiocese.

3

E.  **Conference for Restorative Justice and Reconciliation**.    Within eighteen (18) months of
confirmation of a plan of reorganization, or dismissal of the Bankruptcy Proceedings, the
Archdiocese will convene and participate in a one-day "Conference for Restorative Justice and
Reconciliation" (the "Conference") at an appropriate location to be determined. The invitees
shall include, at a minimum, victims of sexual abuse, those interested and relevant stakeholders
of the Archdiocese, as well as those interested and relevant stakeholders within those dioceses
that constitute the Ecclesiastical Province of St. Paul and Minneapolis. A planning committee
will include representatives of the Archdiocese and the RCAO, and the hosting institution as
applicable. The Conference will be funded by the Archdiocese.

F.  **Restorative Justice Sessions.**    The Archbishop and the Auxiliary Bishop also agree to
participate in mutually agreed upon restorative justice sessions to be convened by the Parties
during a two-year period following the last date of execution of this Agreement. These sessions
are contemplated to include meetings with victims and their families, as a victim or his/her
family may request

G.  **Safe Environment Compliance Standards**.    The Archdiocese agrees to continue its ongoing
efforts to improve its Safe Environment Program and, as may be required by this Agreement, to
enhance its program to meet each of these standards within the timeframes specified below:

1.  **Continuance of Efforts**

    1.1.    The Archdiocese agrees that the compliance standards provided herein are intended
    by the Parties to enhance and to improve its Safe Environment Program.

    1.2.    The Archdiocese shall continue to implement those recommendations made by the
    Safe Environment and Ministerial Standards Task Force in its "Report and
    Recommendations to Protect Children from Clergy Sexual Abuse" as submitted to the
    Episcopal Vicar for Ministerial Standards on March 31, 2014, that are incorporated
    herein.

2.  **Oversight**

    2.1.    Board of Directors. The Board shall be knowledgeable about the content of the
    Policies and operation of the Safe Environment Program and shall exercise
    reasonable oversight with respect to the effectiveness of said program.

        a.   The Board's Audit Committee (or the Board as a whole) shall meet with the
        Director as often as it determines necessary to assess and evaluate the Safe
        Environment Program at the highest level of the Archdiocese, but in any event,
        no less than once every six months.  Formal written agendas and minutes of this
        committee shall be maintained as part of the corporate records.

    2.2.    Archbishop. The Archbishop shall be knowledgeable about the content of the
    Policies and operation of the Safe Environment Program and shall exercise
    reasonable oversight with respect to implementation, operation, and assessed
    effectiveness of said program.

4

2.3.   <u>Ministerial Review Board</u>. The Ministerial Review Board shall be knowledgeable about the content of the Policies and operation of the Safe Environment Program and shall provide consultation, guidance, and support to the program.

2.4.   <u>Director of Ministerial Standards and Safe Environment</u>. The Director has the duties and responsibilities and that authority that is defined in the Job Description as presently maintained by the Archdiocese. Among other things:

   a.   the Director is responsible for continuing to develop, implement, and revise as necessary the policies and procedures for preventing, responding to, and ensuring the reporting of allegations of child abuse; and

   b.   the Director shall support and coordinate the activities of the Ministerial Review Board, the POMS Program, the Victim Advocacy Office, and the Office for the Protection of Children and Youth.

3.   **Policies and Procedures**

3.1.   The Archdiocese shall create a comprehensive set of documents encompassing all Policies relating to the protection of minors. This comprehensive set of documents shall be organized and readily available on its website.

   a.   The Policies shall be written and formatted so they are easy to read and understand.

   b.   The Policies shall define key terms.

      i.   The Policies shall define what behavior constitutes misconduct involving minors, including, without limitation, sexual exploitation of minors and sexual harassment of minors.

      ii.   The Policies shall define what constitutes child abuse. The definitions shall include at a minimum the definitions of sexual and physical abuse as defined in Minn. Stat. § 626.556.

      iii.   The Policies shall define what constitutes a "credible allegation" and "substantiated claim."

   c.   Among any other instructional formats it may choose to employ, the Archdiocese shall also provide in written form examples of what constitutes misconduct involving a minor as part of training or training-related materials, including what is considered "appropriate" vs. "inappropriate" physical contact.

3.2.   The Archdiocese shall include guidelines for the acceptable use of technology within its policies:

   a.   The policy will grant the Archdiocese the ability to inspect, review, audit, intercept, or access all matters on systems of the Archdiocese, including employee e-mail, voicemail, and computer systems at any time, with or without notice.

   b.   Guidelines shall include how to properly use social media and cellular phones, including text messaging.

5

3.3.   The Policies shall continue to prohibit Archdiocese employees and Adult Volunteers from being alone (*i.e.*, out of sight of at least one other adult) with any unrelated minor while serving as an employee or volunteer of the Archdiocese or a Parish, subject to common sense exceptions, such as emergency situations, interactions with a minor that are incidental and not extended, parents transporting their children or other related individuals, and employees or volunteers transporting the children of friends and neighbors. This paragraph does not apply to employees and volunteers providing services in or for Schools or providing Catholic education.

3.4.   The Policies shall continue to prohibit clergy from being alone with any unrelated minor except when a cleric is hearing confession in a confessional, and except for common sense exceptions such as emergency situations or circumstances where interaction is incidental and not extended.

3.5.   The Policies shall continue to prohibit: (a) clergy from traveling alone with or taking overnight trips alone with any unrelated minor; and (b) clergy from sleeping in the same private space (*e.g.*, room, tent, bed, etc.) with any unrelated minor.

4. **Acknowledgement of Policies**

4.1.   Within thirty (30) days of assignment of a cleric to continuing ministry within the Archdiocese Territory, the Archdiocese shall collect and maintain an acknowledgment form (or electronic record) certifying that such cleric has received the Policies, understands the Policies, and will comply with the Policies.

4.2.   Within thirty (30) days of the commencement of any employment or continuing volunteer service, the Archdiocese shall collect and maintain an acknowledgment form (or electronic record) from all Archdiocese employees and Archdiocese Adult Volunteers certifying that he/she has received the Policies, understands the Policies, and will comply with the Policies.

4.3.   The Policies shall include the Code of Conduct acknowledgement forms for clergy, employees, and Adult Volunteers. Those required to acknowledge the Code of Conduct must acknowledge receipt of the Code, their understanding of the Code, and their agreement to comply with the Code. The acknowledgement forms will refer to the reporting requirements under the Policies. The acknowledgement may be completed electronically.

4.4.   The Archbishop shall request that within thirty (30) days of a seminarian's commencement of study, each Seminary will collect and maintain an acknowledgment form (or electronic record) from each seminarian certifying that he has received the Policies, understands the Policies, and will comply with the Policies. The Office of the Director shall request no less than annually that each Seminary will furnish the Director with records demonstrating compliance with this requirement. If the Seminary fails to provide such records as requested, the Director shall within a reasonable time notify the Archbishop and the Board of Trustees of the Seminary in writing.

6

4.5.    The Archbishop shall request that within thirty (30) days of the commencement of any employment or volunteer service, all Parishes and Schools will collect and maintain an acknowledgment form (or electronic record) from each of their respective employees, and Adult Volunteers certifying that he/she has received the Policies, understands the Policies, and will comply with the Policies. The Office of the Director shall request no less than annually that each Parish and School furnish the Director with records demonstrating compliance with this requirement. If a Parish or School fails to provide such records as requested, the Director shall within a reasonable time notify the Archbishop and the Board of Trustees of such Parish or School in writing.

4.6.    The Office of the Director shall maintain the acknowledgement forms (or records) for each cleric. Such files may be kept electronically.

4.7.    The Archbishop shall request that each Parish, School, and Seminary maintain the acknowledgement forms (or records) for each employee, Adult Volunteer, or seminarian, and that said forms (or records) be subject to review by the Director. Such files may be kept electronically.

## 5. Safe Environment: Essential 3 Requirements

5.1.    The Policies shall define who is required to complete the Essential 3 requirements.

   a.   The Essential 3 requirements are: (1) Acknowledgement of the Code of Conduct; (2) specialized child protection training (such as VIRTUS or its equivalent); and (3) a criminal background check.

   b.   In accordance with the Policies, those required to complete the Essential 3 requirements include, but are not limited to:

      i.   clergy (active or retired) who have been granted permission by the Archbishop to conduct continuing ministry within the Archdiocese Territory for more than thirty (30) days;

      ii.  employees and Adult Volunteers providing service to the Archdiocese or a School or Parish (including, but not limited to principals, assistant principals, teachers, school counselors, librarians, coaches, school nurses, staff of preschools, youth religious programs and youth activities, directors of youth religious education programs, or maintenance employees);

      iii. seminarians who have commenced their study at a Seminary; and

      iv.  seminarians who are working for a School or Parish.

   c.   Parents who volunteer with their child's programs or activities, such that they have regular or unsupervised contact with unrelated minors, must fulfill Essential 3 requirements.

5.2.    Where reasonably feasible, the Archdiocese shall provide Safe Environment training and materials to Parishes and Schools in the principal languages of those who attend such School or Parish.

Settlement Agreement between The Archdiocese of St. Paul and Minneapolis and Ramsey County Attorney
Ramsey County District Court File No.: 62-JV-15-1674
County Attorney File No.: 2138749

5.3.   The Archdiocese shall provide Parishes and Schools with a volunteer application form for Adult Volunteers. Unless prohibited by law, these forms shall include questions regarding: (1) whether the applicant has a criminal history; (2) whether the applicant has ever been the subject of a criminal investigation involving an allegation of sexual abuse; (3) whether a civil or criminal complaint has ever been filed against the applicant alleging physical abuse or sexual abuse by the applicant; (4) whether the applicant has ever failed to report sexual abuse as required by law or policy; (5) whether the applicant has ever had employment terminated or has otherwise been disciplined for reasons relating to allegations of inappropriate conduct with minors, child abuse, or sexual misconduct of any kind; and (6) the applicant's history of volunteering with minors within the previous five (5) years.

   a.   The Archdiocese shall request that Adult Volunteers do not begin volunteer services within a Parish or School until the volunteer application has been completed.

5.4.   The Director shall have the authority to refer employees or Adult Volunteers of the Archdiocese to attend any additional Safe Environment program(s) or training(s).

5.5.   The Director shall request that each Seminary, Parish, and School that utilizes the services of a third-party person or entity under circumstances where that third-party has regular or unsupervised contact with minors be made aware of the existence of the Policies and the option to attend Safe Environment training.

5.6.   The Office of the Director of Safe Environment shall maintain an electronic registry of clergy compliance with the Essential 3 requirements.

   a.   The Office of the Director shall continue its development of an electronic database to monitor compliance with the Essential 3 requirements and shall maintain a registry of compliance in such electronic database.

   b.   The Office of the Director shall request an annual certification from each Parish pastor and a member of the Parish or School board of trustees that each respective Parish or School is in compliance with the Essential 3 requirements for each employee and Adult Volunteer at the Parish or School. If the Parish or School fails to provide the requested certification, the Director shall within a reasonable time notify the Archbishop and send a letter of notice to both the full Parish or School board of trustees and the Parish council.

   c.   For each Parish and School, the Office of the Director shall annually review clergy compliance with the Essential 3 and shall within a reasonable time send a letter of clergy non-compliance, if applicable, to the relevant board of trustees.

   d.   The Director shall request an annual certification from the rector and a member of the board of trustees of each Seminary that the Seminary is in compliance with the Essential 3 requirements for all seminarians, affiliated clergy members, employees, and Adult Volunteers. If the Seminary fails to provide the requested certification, the Director shall within a reasonable time notify the Archbishop and send a letter of notice to the Seminary's full board of trustees.

8

**Essential 3:  Code of Conduct**

5.7. The Code of Conduct shall define key terms.

5.8. The Code of Conduct shall contain a provision prohibiting the viewing of pornographic materials on, or taking pornographic materials onto, the property of the Archdiocese, a Parish or a School.

5.9. The Code of Conduct shall contain a provision prohibiting the showing of pornographic material to minors and prohibiting the illegal provision of alcohol, tobacco, or drugs to minors.

5.10. The Code of Conduct shall contain a provision for pastoral counselors and spiritual directors that addresses and defines proper boundaries and improper conduct, including physical contact, with the persons they counsel.

    a. The Code of Conduct shall contain a provision stating that clergy are responsible for establishing and maintaining clear, appropriate boundaries in counseling relationships.

5.11. The Code of Conduct shall contain provisions on how to report unethical or unprofessional conduct.

5.12. The Archdiocese shall develop and distribute appropriate training relating to the Code of Conduct for use at the start of employment or volunteer service, or within sixty (60) days of a material revision of the Code of Conduct.

**Essential 3:  Background Checks**

5.13. The Archdiocese shall develop an enhanced background check policy.

5.14. The policy shall state that all members of the clergy, employees, and Adult Volunteers within the Archdiocese Territory are subject to the background check policy as follows:

    a. Clergy shall be subject to background checks upon their initial assignment within the Archdiocese Territory, and no less than every five (5) years thereafter.

    b. A Cleric's service in excess of thirty (30) days may only continue after such cleric has successfully completed a criminal background check.

    c. Clergy shall be required to report to the Director any arrest or citation involving conduct that violates the Archdiocese Policies and the Director shall gather available, relevant documentation and assess whether the particular matter should be forwarded to the Archbishop or the Ministerial Review Board, or both.

    d. If a prospective employee will have regular or unsupervised contact with minors, such employment may only start after an individual has successfully completed a criminal background check.

    e. An Adult Volunteer may only start his/her service after having completed a criminal background check.

9

5.15. In recognition of developing technological advancements that can improve the accuracy of background checks, the Archdiocese will meet and confer with the RCAO to explore the feasibility of a background check results policy that requires fingerprinting as a component of the background check process.

5.16. The background check policy shall provide criteria for evaluating the results of a background check and provide guidance for determining what constitutes disqualifying offenses for employment and volunteer positions.

    a. If the background check reveals a criminal history, the applicant may be given the opportunity to provide an explanation, submit additional information, or challenge its accuracy.

    b. The following factors should be considered before deciding whether or not to offer or deny employment or acceptance as a volunteer: (1) the length of time since conviction; (2) the nature of the crime; (3) the relationship of the crime to the duties to be performed; (4) the number and kind of convictions; (5) rehabilitation efforts; and (6) history of other employment or volunteer activity.

5.17. The Archdiocese shall request that its third-party vendor that provides background checks to the Archdiocese, Parishes, and Schools inform the requesting entity of any prior background checks performed on the same individual.

5.18. The Archdiocese shall request that Parishes, Schools, and Seminaries follow the recommended Archdiocese background check policy. If the Parish, School, or Seminary refuses to follow the Archdiocese background check policy, the Director shall within a reasonable time notify the Archbishop and the board of trustees of the respective Parish, Seminary, or School in writing.

5.19. Background checks for clergy, Archdiocese employees, and Archdiocese Adult Volunteers shall be maintained by the Director.

5.20. The Archbishop shall request that each Seminary, Parish, and School maintain background check files for Seminarians, their respective employees and Adult Volunteers.

**Essential 3: VIRTUS Training**

5.21. The Archdiocese shall continue its policy that all those required to comply with the Essential 3 shall complete VIRTUS training within thirty (30) days of the start of service.

5.22. The Archdiocese shall continue to provide VIRTUS training (or its equivalent) no less than every three years to all clergy, all employees, and all Adult Volunteers.

5.23. The Archdiocese shall evaluate periodically the VIRTUS training materials (or its equivalent) to provide updated training to all clergy, employees, and Adult Volunteers.

10

6. **Reporting Abuse**

6.1. The Policies shall clearly state that a report to the Archdiocese does not relieve the individual from reporting known or suspected abuse as is required under Minnesota law.

   a. The Policy shall contain a section dedicated to civil mandatory reporting requirements, including the following guidance: (1) who must report; (2) what must be reported; (3) to whom the report must be made.

   b. The Archdiocese shall continue its policy that clerics, employees, and Adult Volunteers shall be trained on mandatory reporting obligations within thirty (30) days of their hire and shall receive refresher updates at least every three (3) years thereafter.

6.2. The Policies shall also require an employee or an Adult Volunteer serving within the Archdiocese Territory who has reason to suspect sexual abuse of a minor that would be subject to mandatory reporting under Minn. Stat. § 626.556 shall immediately notify civil authorities as defined therein (within 24 hours).

6.3. The Policies shall clearly define the proper reporting channels for reports made under ¶¶ 6.1 and 6.2. The policies shall state:

   a. the first report of suspected abuse of a minor shall be to civil authorities as defined in Minn. Stat. § 626.556;

   b. any person, other than the victim, who makes a report to civil authorities shall be required to report the same information without undue delay to the Director. The Director shall then promptly notify the Archbishop or his designee;

      i. The Director shall notify or confirm that law enforcement has been notified as required by law and the Policies. The Director shall complete written documentation relating to the report.

   c. if authorized by law enforcement, and the suspected abuse occurred at or during a Parish/School activity or involves Parish/School personnel or volunteers, the Director shall notify the principal or pastor of the Parish/School, unless the suspected abuse involves the pastor or principal, in which case the Director shall notify the Parish or School board of trustees;

      i. The pastor, school principal, agency director, or other person in charge of the location should complete written documentation of the report and the actions taken.

   d. if the abuse involves a cleric, the Director shall request all relating written reports from the Seminary, Parish, or School.

6.4. When the Archdiocese receives a report of child sexual abuse and makes a mandated report to law enforcement pursuant to Minnesota statute, the Archdiocese shall not conduct an internal investigation, and will not interfere in any way with law enforcement until law enforcement concludes its investigation, closes its file without investigation, or authorizes the Archdiocese to take action.

11

6.5.   The Policies shall include the rights of the person who makes an allegation. This policy shall ensure that the person making the allegation is provided with: (1) an adequate explanation of the Archdiocese's overall process and procedures for dealing with allegations of child sexual abuse, including its policy on reporting to civil authorities; (2) advice that the Archdiocese shall endeavor to conduct its investigation with appropriate discretion and, to the extent possible, protect the privacy and reputations of both the person reporting as well as the person about whom the report was made; and (3) a timely response to inquiries and, as necessary, periodic update(s) as to the status or resolution of the report.

6.6.   The Archdiocese shall provide Parishes and Schools materials for making a complaint, including print materials in the principal language in which the liturgy is celebrated.

6.7.   The Archdiocese shall establish a policy that prohibits retaliation against any cleric, employee, Adult Volunteer, parishioner, or other individual who in good faith reports sexual abuse of a minor or suspicions of sexual misconduct.

6.8.   The Archdiocese shall publish in the Catholic Spirit no less than four (4) times per year for the term of this Agreement a statement urging those subject to sexual abuse of a minor to contact law enforcement to make a report of the abuse.

6.9.   The Archdiocese shall continue to provide information in writing to Seminaries, Parishes, and Schools regarding the prevention of abuse, training to identify signs of abuse, statements that the abused are not at fault and encouraging the reporting of abuse.

6.10.  If there is an allegation of sexual abuse of a minor involving the Archbishop or any Auxiliary Bishop, in addition to the notifications set forth above, the Director shall within a reasonable time notify the Board.

## 7.  Clergy and other Employees

7.1.   The Archdiocese shall use reasonable efforts not to include among personnel of the Archdiocese having substantial authority any individual whom the organization knew, or should have known through the exercise of due diligence, has engaged in sexual misconduct with minors.

7.2.   In each case where a cleric has been found not guilty of criminal conduct by civil authorities, or has been investigated by civil authorities without prosecution, the Archdiocese shall make an independent inquiry into and determination of the given cleric's fitness for ministry.

7.3.   The Archdiocese shall not assign a cleric for a position in public ministry or a position that provides access to minors, who has a substantiated claim or pending credible allegation of sexual abuse of a minor against him, or who is otherwise deemed unsuitable for ministry.

   a.   Where there have been allegations of sexual abuse of a minor by a cleric, fitness for ministry determinations are to be made by the Archbishop upon

12

recommendations from the Director and the Ministerial Review Board. If the Archbishop, after considering these recommendations, determines a cleric is unfit for ministry based on a substantiated claim of sexual abuse of a minor, the Archdiocese shall not recommend such cleric to another religious organization, and shall notify an inquiring organization of the determination regarding fitness for ministry.

7.4. If a cleric seeks assignment, transfer, or residence outside of the Archdiocese Territory, the Archdiocese shall seek permission from the cleric to make available for review by the receiving diocese, religious community, or organization a complete copy of his clergy file and any other Archdiocese files materially related to the cleric. If the cleric permits review, the Archdiocese shall provide such receiving entity access to the complete clergy file and any other Archdiocese files materially related to the cleric. If the cleric refuses review or limits review of the complete file or any other Archdiocese files materially related to the cleric, the Archdiocese shall notify the receiving entity that the cleric refused access or is limiting access.

   a. The Archdiocese shall disclose any credible allegation of sexual abuse of a minor to any diocese, Catholic entity, or secular employer that inquires about the existence of any allegation of sexual abuse of a minor with respect to any past or present cleric of the Archdiocese to the extent that such disclosure is allowed by federal and state law. The Archdiocese shall also disclose the status or resolution of that allegation as reflected in its records to the extent allowed by federal and state law.

7.5. The Archdiocese shall not recommend, and shall have a policy that prohibits a cleric or Archdiocese employee from recommending, an employee for a position that provides access to minors if the employee has a substantiated claim or pending credible allegation of sexual abuse of a minor against him or her.

7.6. The Archdiocese shall continue to work with the Seminaries to prevent clergy sexual abuse of minors.

   a. The Archdiocese shall provide Safe Environment resources and training no less than annually to seminarians at the St. Paul Seminary.

   b. The Office of the Director of Safe Environment shall be a resource for each Seminary regarding selection, evaluation, and formation of seminary candidates.

7.7. The Archbishop shall request that each Parish, School, and Seminary designate a Safe Environment Coordinator to oversee the Parish, School, or Seminary program for screening, selecting, and supervising those working in the Parish, School, or Seminary who will have regular or unsupervised contact with minors. The Office of the Director of Safe Environment shall provide training to such coordinators upon their assumption of those responsibilities and then no less than every three years thereafter.

   a. The Director shall request confirmation that a Safe Environment Coordinator has been designated in each Parish, School, and Seminary.

13

     b.  If a Parish, School, or Seminary fails to confirm the designation of a Safe Environment Coordinator, the Director shall within a reasonable time notify the Archbishop and the board of trustees of the particular Parish, School, or Seminary in writing that a local Safe Environment Coordinator has not been designated.

## 8. Website

8.1.   After bankruptcy plan confirmation, or dismissal from the Bankruptcy Proceedings, or by December 31, 2016, whichever comes first, the Archdiocese shall consult with web developers to improve the Safe Environment resources on its website.

8.2.   The Safe Environment website shall prominently display how to report an incident of sexual abuse.

8.3.   To the extent reasonably feasible, the Archdiocese web page shall provide contact information or links to law enforcement agencies within the Archdiocese Territory.

8.4.   The Archdiocese Sexual Abuse Policy shall be easily accessible through a link on the Safe Environment website.

8.5.   The Safe Environment website shall contain all Policies. The Policies shall be easily accessible.

8.6.   The Archdiocese Safe Environment website shall be periodically updated as needed to remain current.

## 9. Communications

9.1.   The Archdiocese shall provide assistance to Pastors and principals so that they may appropriately respond to media inquiries and provide media response designed to reassure the community that abuse allegations are taken seriously and that the Archdiocese cooperates fully with civil authorities.

9.2.   The Archdiocese shall make public disclosures of any future credible allegations of clergy sexual abuse of a minor that occurred in the Archdiocese Territory involving a cleric who is still living. The Archdiocese will encourage all potential victims to come forward.

9.3.   The Policies shall require that all Archdiocese employees use their Archdiocese-issued e-mail account when sending any communication related to their job functions.

9.4.   The Archdiocese shall continue to make public disclosures of substantiated claims of sexual abuse of minors by clerics and pending credible allegations of sexual abuse of minors by clerics that are under investigation. In each case of a substantiated claim, the Archdiocese will add the name of the cleric to the disclosure section of its website. Public disclosures under this paragraph shall be made as soon as reasonably practicable but, in any event, no later than forty-five (45) days after the relevant determination. The Archdiocese will also share this information with the public by issuing and posting a press release on its website.

14

9.5.   With regard to a substantiated claim of sexual abuse of a minor by a cleric, at the conclusion of the canonical process for determination of clerical status, documents pertaining to the accusation of sexual abuse of a minor and the Archdiocese's response to the claim shall be made accessible to the public.

## 10. Ministerial Review Board

10.1.   The Director shall consider recommendations by the RCAO in the appointment of members to the Ministerial Review Board.

10.2.   The Ministerial Review Board shall abide by written policies governing its conduct.

    a.   The policies shall define what types of issues are to be reviewed by the Ministerial Review Board.

    b.   The policies shall include guidelines the Ministerial Review Board will follow when making recommendations in each case. These policies shall be made available to the public.

    c.   The policies shall provide that the Director will advise the members of the Ministerial Review Board of the final action by the Archdiocese in each case after the board's review and recommendation.

10.3.   Minutes shall be taken at each Ministerial Review Board Meeting. Minutes shall be retained and filed by the Director and shall include: (1) date and times of meetings; (2) identification of all attendees; (3) a listing of agenda items; (4) a brief summary of any advisory assessments on clergy; and (5) a brief summary of consultation by the board on any other matter.

10.4.   The Ministerial Review Board shall provide its expertise and assist as requested with developing policies and appropriate mechanisms to further ensure the protection of minors.

10.5.   In addition to ¶ 10.1, the Director shall consult with members of the Ministerial Review Board and the Victim Assistance Coordinator to identify candidates for a vacancy on the Ministerial Review Board. The Director shall recommend candidates to the Archbishop, who shall appoint board members in consultation with the Director.

10.6.   The names and credentials of the Ministerial Review Board members shall be provided to the RCAO.

## 11. POMS Program

11.1.   In accordance with the zero-tolerance policy set forth in the Charter for the Protection of Children and Young People established by the United States Conference of Catholic Bishops, the Archdiocese shall not use the POMS Program to mitigate risk to minors, but instead shall rely on an assessment of fitness for ministry involving the Director, the Ministerial Review Board, and the Archbishop.

15

    a.   In all cases regarding an assessment of fitness for ministry, the Ministerial Review Board may seek additional information or may recommend limits on ministry service as necessary to promote a safe environment for minors.

11.2.  If the Archdiocese has determined that the POMS Program is or remains appropriate for a clergy member with allegations of sexual misconduct involving minor(s), the Archdiocese shall notify the RCAO of that determination, providing the name and address of the cleric in question and providing such further information and other cooperation as the RCAO may reasonably request.

11.3.  Before a recommendation is made to discharge a cleric from the POMS Program, the Ministerial Review Board shall undertake a full review of the cleric's file.

    a.   The Ministerial Review Board shall document its recommendation regarding discharge from the POMS Program, and that recommendation shall be placed in the cleric's file.

    b.   If the cleric was the subject of a substantiated claim of sexual abuse of a minor, the Director shall advise the RCAO if such cleric is discharged from the POMS Program.

## 12. Record Keeping

12.1.  By December 31, 2016, the Archdiocese shall formulate policies for the acceptable use of Archdiocese computers and electronic devices, the screening of electronic devices, and the retention of documents and electronically stored information. The policies shall address the following:

    a.   The Archdiocese shall maintain a record of electronic devices (computers, laptops, tablets, etc.) that are Archdiocese property in the possession of clergy, employees, or Adult Volunteers.

    b.   When the Archdiocese has reasonable cause to believe that a cleric, an Archdiocese employee or volunteer has violated policies relating to electronic devices or their usage in a manner that involves sexual misconduct with a minor, the Archdiocese shall secure the electronic device for evidentiary value.

    c.   If the Archdiocese learns of the existence of a computer or other electronic communications device that may have relevance to, or possible evidentiary value in, a law enforcement investigation of clergy sexual abuse of a minor, the Director shall promptly notify the appropriate law enforcement agency having jurisdiction.

    d.   The Archdiocese shall develop a written policy regarding the handling of evidence, including computers or electronic devices that relates to any internal Archdiocese Safe Environment investigation.

12.2.  The Office of the Director shall maintain records relating to clergy and the Safe Environment Program.

12.3.  The Office of the Director shall maintain records of the training sessions and educational requirements required under the Policies.

16

12.4. The Archdiocese shall maintain files for all clergy.

12.5. The Archdiocese shall have a policy to not destroy clergy files.

12.6. Files may be maintained electronically.

12.7. Clergy files shall contain the following records:

    a. signed documents as required under the Policies;

    b. copies of all returned background checks;

    c. internal memoranda or documentation regarding clergy misconduct;

    d. records of any allegation of sexual abuse of a minor;

    e. records of any mandatory report made to law enforcement about the cleric;

    f. records of any internal investigation;

    g. records relating to review by the Ministerial Review Board; and

    h. information pertaining to the POMS Program, if applicable.

## 13. Other

13.1. The Archdiocese shall support and encourage the reporting of abuse both on its website and in print documents posted in Parishes and Schools. The website or documents shall seek to educate the general public on the reporting of clergy misconduct and the protection afforded those who make good-faith reports.

13.2. In instances where a claim of sexual abuse of a minor is substantiated, if requested, Archdiocese leadership shall meet with the victim/survivor or his or her support person(s) as may be reasonably arranged, with due respect for the needs of the victim/survivor.

13.3. In instances where a claim of sexual abuse of a minor is substantiated, if requested by the victim/survivor, the Archbishop shall, on behalf of the Archdiocese, send a personally signed letter of apology to the victim/survivor in the context of a Minnesota Rule of Civil Procedure 408 settlement communication.

13.4. The Archdiocese shall continue to maintain an independent mechanism where concerns regarding misconduct or suspected misconduct can be reported. The mechanism should provide for 24/7 access and allow reports to be made by phone or through a confidential web-based reporting mechanism.

13.5. The Archdiocese shall explore the need for and feasibility of a "Clergy Assistance Plan" that provides clerics with an ability to seek help in times of need or personal crisis, including from an outside provider and in a manner that provides anonymity if desired.

13.6. The Archdiocese shall not enter into confidentiality agreements regarding allegations of sexual abuse of minors unless requested by the victim and noted in the text of the agreement.

17

13.7.  The Archdiocese shall request removal of photos and any visible honors (such as a plaque honoring that cleric individually or naming of a building or hall in that cleric's honor) from public display for each cleric with a substantiated claim of sexual abuse of a minor. This does not prevent the Archdiocese from displaying photos of a cleric with a substantiated claim of abuse if that photo or the words accompanying it clearly indicate that the cleric had a substantiated claim of sexual abuse of a minor asserted against him.

13.8.  The Archdiocese agrees to have in place at a point no later than expiration of this Agreement an ombudsperson to provide an outside resource for victims of sexual abuse.

13.9.  The Archdiocese shall have a policy to provide law enforcement in the appropriate jurisdiction with the known residential address of each cleric having a substantiated claim or pending credible allegation of sexual abuse of a minor.

13.10. Within one hundred twenty (120) days of the effective date of this Agreement, the Archdiocese shall develop a model policy for use by Parishes requiring notification to the board of trustees of a Parish where clergy are permitting long-term residents in rectories. The Archbishop shall request that the Parish board of trustees adopt the model policy.

13.11. The Director shall have an adequate budget so that the Director unilaterally or the Ministerial Review Board as a body may retain outside legal counsel solely regarding the matters of ministerial standards and safe environment. Under this exclusive defined authority, the Director and the Ministerial Review Board shall not be required to confer with or rely only upon internal legal services of the Archdiocese. To the extent legal fees will exceed the Director's budget, financial expenditures are subject to approval by the Board and the Archdiocese Finance Council (and the Bankruptcy Court during the pendency of the Bankruptcy Proceedings) if necessary.

13.12. In the event the position of Director becomes vacant, the Archbishop will consult with the Ministerial Review Board and the Board regarding candidates to fill the position of Director.

a.  If practicable, the current Director shall provide notice to the Ministerial Review Board and the Archbishop of his or her intent to separate from employment as early as practicable to permit a comprehensive, effective search for his or her replacement.

## 14. Compliance

14.1.  The Archdiocese shall institute a reasonable timeline for compliance with the Policies and shall define the corrective and disciplinary measures to be used where clergy, seminarians, employees, or volunteers of the Archdiocese fail to adhere to policy requirements.

a.  Clergy members who are non-compliant with the requirements of the Essential 3 as set forth above shall, at a minimum, be removed from service involving

18

regular or unsupervised contact with minors until they have completed all requirements.

   b.  The Archdiocese shall request that Parishes, Seminaries, and Schools remove Parish/Seminary/School employees and Adult Volunteers who are non-compliant with the requirements of the Essential 3 from service involving regular or unsupervised contact with minors until they have completed all requirements.

        i.  Upon learning of non-compliance, the Director shall promptly notify the Archbishop and the Parish, Seminary or School board of trustees if an employee or Adult Volunteer has not been removed from his or her job or position.

14.2.  Outside Audit.  The Archdiocese shall on an annual basis for the term of this Agreement retain an independent firm with demonstrated competencies to conduct an annual compliance audit of the Safe Environment Program and this Agreement. The Archdiocese shall select the audit firm subject to the approval of the RCAO, which shall not unreasonably withhold approval.  During pendency of the Bankruptcy Proceedings, the retention of the audit firm will be subject to Bankruptcy Court approval.

   a.  A written retention agreement with the audit firm shall explicitly state that the audit report will be provided to the RCAO.  The Archdiocese shall consent to the RCAO having unrestricted access to the auditing personnel, both during and for a reasonable period  after each audit, as well as access to work papers and underlying supporting documents the RCAO may request to review.

   b.  The first annual outside audit will cover the period from the last date of execution of this Agreement through June 30, 2017.  Fiscal-year auditing shall occur thereafter. This Agreement contemplates two (2) fiscal year outside compliance audits.

   c.  The results of each audit shall be provided to the Archbishop, other members of the Board, the Director, members of the Archdiocese Finance Council, the Chairman of the Presbyteral Council, members of the Ministerial Review Board, Chancellor for Civil Affairs, Chancellor for Canonical Affairs, the RCAO, and any other persons who in the Director's judgment should receive the report.

   d.  Within sixty (60) days of the completion of each required annual audit, the Director shall cause the audit report to be made available on the Archdiocese Safe Environment website and, concurrently, arrange to have a fair executive summary of the report published in the Catholic Spirit publication (with information on how the readership may access or obtain the entire report). The Archdiocese shall issue a public statement each year at the time the audit report is available for review and may otherwise distribute the report in any other manner.

19

     e.  Beyond demonstrating compliance with this Agreement, the annual audit report is to be considered by the Parties as a means to further evaluate and continuously improve the Safe Environment Program within the Archdiocese.

14.3.  <u>Internal Audit</u>. The Archdiocese shall conduct periodic internal reviews to evaluate its Safe Environment Program.

     a.  After confirmation of a plan of reorganization or dismissal from the Bankruptcy Proceedings, the Director shall engage an external consultant to assess its effectiveness.

14.4.  The Director shall request to conduct periodic audits of Parishes, Seminaries, and Schools. A request to audit shall be made of each Parish, Seminary, or School at least once every seven (7) years. During each year of the term of this Agreement, the Director shall request to audit no less than fifteen percent (15%) of the total Parishes of the Archdiocese Territory. If a Parish, Seminary, or School refuses the audit request, the Director shall notify within a reasonable time the Archbishop and the applicable board of trustees in writing.

14.5.  The Archbishop shall request that the Parish, Seminary, or School conduct an external review of procedures for both Safe Environment and finance compliance each time there is a change of pastor or other leader, in the case of Seminary or School, and request that the results of that review be provided to the Director.

**H.  <u>Victims Fund</u>.**   The Archdiocese shall seek as part of its bankruptcy plan to establish a fund for the ongoing and future counseling for victims of clergy sexual abuse that occurred at any time within the Archdiocese Territory, including Victim 1, Victim 2, and Victim 3, such that they might have access to ongoing reasonable and appropriate counseling. In this regard, the Parties specifically contemplate and agree that Victim 1, Victim 2, Victim 3 (as referred to in the Petition for Order to Show Cause) and their immediate family, to the extent they have a cognizable claim, will benefit from any fund established as part of the bankruptcy process.

**I.  <u>Bankruptcy Proceedings</u>.**   The Archdiocese is subject to certain limits and restrictions as a debtor-in-possession in the Bankruptcy Proceedings. As part of this Agreement, the Archdiocese shall move for Bankruptcy Court approval of this Agreement at the earliest practicable time, but no later than January 31, 2016. This Agreement shall not be effective until such time as it is approved by the United States Bankruptcy Court. To the extent the Archdiocese is required to expend funds outside the ordinary course of business as a result of this Agreement, the Archdiocese shall seek approval for such expenditures from the bankruptcy court.

**J.  <u>Obligations Survive Bankruptcy</u>.**   The parties specifically agree that the terms and conditions specified herein shall be described in the Archdiocese's Chapter 11 disclosure statement and be fully incorporated into its Chapter 11 plan, and if approved in the Bankruptcy Proceedings shall survive on and after the date the Archdiocese is discharged from the Bankruptcy Proceedings.

20

K. **Non-solicitation**.   Nothing in this Agreement shall be construed as a solicitation of a plan of reorganization in violation of the Bankruptcy Code.

L. **Breach of this Agreement; Opportunity to Cure; Attorney's Fees**.   If the RCAO determines in its reasonable judgment at any time during the term of this Agreement that the Archdiocese is in material breach of this Agreement, the RCAO will serve (as "serve" is defined under the Minnesota Rules of Civil Procedure) a Notice of Breach upon the Archdiocese, with copies mailed to the Archbishop, Secretary of the Board, and Director. The Archdiocese shall then have a period of twenty-eight (28) calendar days after service in which to cure.

If after the twenty-eight (28) calendar days the RCAO continues to have cause to believe the Archdiocese has materially breached this Agreement, the RCAO may initiate legal proceedings in the Court to enforce this Agreement by any legal or equitable means it deems available, including, without limitation, contempt of court, specific performance, or breach of contract.

If the Court determines the Archdiocese breached this Agreement, it shall enter an appropriate order against the Archdiocese and, as part of that order, may award the RCAO the value of its reasonable attorney's fees incurred in litigating the breach.

In the event the RCAO is required to enforce this Agreement, its exercise of remedies for breach of this Agreement is agreed by the Parties to be an exercise of its police and regulatory powers.

M. **Term of Agreement**.   This Agreement begins upon its approval by the United States Bankruptcy Court and runs for thirty-six (36) months following such approval. The Parties agree, however, that the protection of minors from sexual abuse is a core need, expectation and operational function of the Archdiocese such that, irrespective of the Bankruptcy Proceedings but subject to the specific exceptions noted herein, each will begin work to achieve the terms and conditions of this Agreement with deliberate speed using their respective best efforts upon execution of this Agreement. Except as otherwise provided herein, the Archdiocese further agrees that to the extent it has/had not already done so, it will come into substantial compliance with the Safe Environment Compliance Standards defined herein within twelve (12) months of the last date of execution below.

N. **Changes to Agreement**.   This agreement may be amended by the Parties in writing. In the event either the Archdiocese or the RCAO desire to change any term, condition or requirement of this Agreement, the Parties agree to meet and confer in good faith over the changes one or the other may propose.

O. **Invalidity**.   If any one or more of the terms, conditions or requirements of this Agreement are deemed unenforceable or invalid by the Court, the enforceability, validity and legality of the remaining provisions shall not in any way be affected or impaired thereby.

P. **Dismissal of Civil Action**.   Upon expiration of this Agreement, the RCAO agrees to move to dismiss the Civil Action with prejudice.

21

Q. **Governing Law; Venue**.   This Agreement shall be governed by, construed and interpreted consistent with Minnesota law. Any litigation between the Parties relating to this Agreement shall be before the Court.

R. **No use**.   This Agreement is to be considered independent in all respects from any other matter, and shall not be admissible into evidence in any proceeding except the above-referenced juvenile case and Bankruptcy Proceedings for purposes of its approval.

S. **Counterparts**.   This Agreement may be signed in counterparts, any of which shall be deemed an original but all of which shall constitute the same Agreement.

T. **Statement of Authority**.   The Board of Directors of the Archdiocese has approved this Agreement as reflected in the attached Board Resolution, which therein authorizes the Archbishop as President of the Board of the Archdiocese or the Apostolic Administrator, as well as the Secretary of the Corporation to enter into and execute this Agreement for and on behalf of the Archdiocese. The Archdiocese further represents that this Agreement has been entered into after appropriate consultation with the Archdiocese Finance Council and the Archdiocese College of the Consultors.

Settlement Agreement between The Archdiocese of St. Paul and Minneapolis and Ramsey County Attorney
Ramsey County District Court File No.: 62-JV-15-1674
County Attorney File No.: 2138749

IN WITNESS WHEREOF, the Archdiocese and the RCAO execute this Agreement on and as of the date(s) indicated below:

Dated: _12/17/2015_

THE ARCHDIOCESE OF ST. PAUL AND
MINNEAPOLIS, a Minnesota corporation

By: _____

Its _PRESIDENT_

BARBARA ANN DAWSON
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES 01/31/2018

Subscribed and sworn to before me
this _17th_ day of December, 2015.

_____
Notary Public

By: _____

Its _____

BARBARA ANN DAWSON
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES 01/31/2018

Subscribed and sworn to before me
this _17th_ day of December, 2015.

_____
Notary Public

Registered Office:
226 Summit Avenue
St. Paul, Minnesota  55102

APPROVED:

FREDRIKSON AND BYRON, P.A.

Dated: _12/17/15_

By: _____
Joseph T. Dixon (#0283903)
Andrew F. Johnson (#0390783)
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402
612-492-7000
Facsimile:  612-492-7077
jdixon@fredlaw.com
ajohnson@fredlaw.com

23

Dated: **12 · 17 · 15**

JOHN J. CHOI
RAMSEY COUNTY ATTORNEY

By: _____

John J. Choi (#257175)
    Ramsey County Attorney
John T. Kelly (#214098)
    First Assistant County Attorney
Thomas E. Ring (#25082X)
    Assistant County Attorney
Stephanie L. Wiersma (#395741)
    Assistant County Attorney
Office of the Ramsey County Attorney
345 Wabasha Street North, Suite 120
St. Paul, MN 55102
651-266-3222

24

Settlement Agreement between The Archdiocese of St. Paul and Minneapolis and Ramsey County Attorney
Ramsey County District Court File No.: 62-JV-15-1674
County Attorney File No.: 2138749

## RESOLUTION OF THE BOARD OF DIRECTORS OF THE ARCHDIOCESE OF SAINT PAUL AND MINNEAPOLIS

The Board of Directors of the Archdiocese of Saint Paul and Minneapolis, by majority vote, adopted the following resolution on the 16th day of December, 2015 at a special meeting of the Board of Directors of the Archdiocese of Saint Paul and Minneapolis that (a) was properly organized by Archbishop Bernard A. Hebda, Apostolic Administrator of the Archdiocese, pursuant to Article 6 of the bylaws, and (b) where a quorum was present.

WHEREAS, on or about June 5, 2015 the Ramsey County Attorney's office (RCAO) commenced a Civil Action against the Archdiocese focused on protecting children; and

WHEREAS, the Archdiocese has taken and is taking steps to substantially enhance its Safe Environment Program; and

WHEREAS, the Archdiocese and RCAO desire to resolve all matters with respect to said Civil Action by entering into the attached Agreement which is incorporated herein by reference and made a part hereof.

NOW THEREFORE BE IT RESOLVED THAT the Board of Directors, having reviewed discussed and considered a proposed Settlement Agreement dated December 11, 2015 does hereby

1. Authorize Archbishop Hebda and his designees to complete any final negotiations of the Settlement Agreement, and

2. Authorize and direct the President and the Secretary of this Corporation to execute a final Settlement Agreement, and

3. Direct the Archbishop and the Archdiocese bankruptcy counsel to seek approval of the Settlement Agreement by the United States Bankruptcy Court.

## CERTIFICATION OF CORPORATE SECRETARY

The undersigned Corporate Secretary of the Archdiocese of Saint Paul and Minneapolis does hereby certify that the above Resolution was duly adopted and approved by the Board of Directors of the Archdiocese on 16th day of December, 2015.

Mr. Joseph F. Kueppers
Corporate Secretary of the Archdiocese of Saint Paul and Minneapolis

STATE OF MINNESOTA

COUNTY OF RAMSEY

DISTRICT COURT

SECOND JUDICIAL DISTRICT
JUVENILE COURT DIVISION

----------------------------------------------------------------

MNCIS Group:
Court File No.: 62-JV-15-1674
CA File No.: 2138749

In the Matter of the Welfare of:

    VICTIM-1, a child identified in police reports;

    VICTIM-2, a child identified in police reports; and

    VICTIM-3, a child identified in police reports.

Respondent:
    The Archdiocese of Saint Paul and Minneapolis,
             a Minnesota corporation,
    226 Summit Avenue
    St. Paul, MN  55102
    651-291-4400

**AMENDMENT TO
SETTLEMENT AGREEMENT**

----------------------------------------------------------------

    The Archdiocese of St. Paul and Minneapolis, a Minnesota corporation ("Archdiocese"),

and the Ramsey County Attorney ("RCAO") hereby modify and amend that certain Settlement

Agreement between them dated December 17, 2015 ("Agreement"), pursuant to Paragraph N

therein, as follows:

1.    The RECITALS are deleted and the following inserted in their place:

<u>RECITALS</u>

    WHEREAS, the Parties agree that the Archdiocese shall seek to create and foster
an organizational culture in which everyone becomes and remains vigilant about
achieving an overall aspirational goal that no child ever again be the victim of
clergy sexual abuse; and

    WHEREAS, the RCAO initiated the Civil Action on June 3, 2015 petitioning the
Court for an order that the Archdiocese show cause why it should not be subject
to the jurisdiction of the Court for contributing to a child's need for protection or
services; and

1

**EXHIBIT K(1)**

WHEREAS, the Court found probable cause to support issuance of the order requested by the RCAO; and

WHEREAS, the Archdiocese has taken and is taking steps to substantially enhance its Safe Environment Program; and

WHEREAS, the Archdiocese initiated Bankruptcy Proceedings before the Civil Action was brought, and now seeks to pursue resolution of the Civil Action in a prudent manner consistent with the protection of assets available for creditors; and

WHEREAS, the RCAO seeks to protect the community and hold individuals and organizations accountable for injurious conduct as required by law and the interests of justice; and

WHEREAS, the Archdiocese admits wrongdoing as set forth herein; and

WHEREAS, the Parties agree that this Agreement will advance their mutual interests in the protection of minors beyond what may otherwise be obtained through further litigation.

NOW, THEREFORE, the Parties, in consideration of the promises and mutual undertakings contained in this Agreement, here promise their respective best efforts to achieve with deliberate speed the following terms and conditions of settlement:

2.    Paragraph B is deleted and the following inserted in its place:

   **B. <u>Basis for Civil Action.</u>**    The factual basis for the Civil Action as alleged by the RCAO is contained in the Petition for Order to Show Cause, a copy of which is attached to the Agreement.

3.    Paragraph C is deleted and the following inserted in its place:

   **C. <u>Admission of Wrongdoing and Statement of the Archdiocese.</u>**    The Archdiocese agrees as follows:

      Curtis Wehmeyer was a priest in this Archdiocese. The Archdiocese admits that it failed to adequately respond and prevent the sexual abuse of Victim 1, Victim 2, and Victim 3. The Archdiocese failed to keep the safety and wellbeing of these three children ahead of protecting the interests of Curtis Wehmeyer and the Archdiocese. The actions and omissions of the Archdiocese failed to prevent the abuse that resulted in

2

the need for protection and services for these three children.

The Archdiocese shall issue a public statement relating to execution of this Amendment to Settlement Agreement, both in writing and through public statements of its representatives. The RCAO agrees that such statements would not be admissible as evidence.

4.   Paragraph F is amended to add the following second paragraph:

Further, the Archdiocese through Archbishop Hebda agrees to participate in at least three (3) restorative justice sessions to be determined by the RCAO.

5.   Paragraph 10.1 is deleted and the following inserted in its place:

10.1 The RCAO will recommend one individual for appointment to the Ministerial Review Board and the Director shall not unreasonably reject that recommendation. The Director shall thereafter consider recommendations that may be made by the RCAO in the appointment of members to the Ministerial Review Board.

6.   Paragraph 13.6 is deleted and the following inserted in its place:

13.6 <u>Confidentiality Agreements</u>. The Archdiocese shall not enter into confidentiality agreements regarding allegations of sexual abuse of minors unless requested by the victim and noted in the text of the agreement.

With respect to any settlement agreement preceding the effective date of this Amendment to Settlement Agreement, the Archdiocese releases any victim of alleged sexual abuse from any confidentiality obligation that may exist in any settlement agreement entered into with the Archdiocese. The Archdiocese shall make a public statement within thirty (30) days of the effective date of this Amendment to Settlement Agreement that it has released any alleged victim of sexual abuse from any confidentiality obligation attributable to any earlier settlement agreement with the Archdiocese.

7.   Paragraphs 13.11 and 13.12 are deleted and the following inserted in their place:

13.11 <u>Position of Director</u>. The Archdiocese shall maintain the position, authority and responsibilities of the Director until at least February 1, 2020. It thereafter pledges its intent and commitment to maintain the same or a substantially similar position going forward thereafter.

a.   The Director shall have an adequate budget so that the Director unilaterally or the Ministerial Review Board as a body may retain outside

3

legal counsel solely regarding the matters of ministerial standards and safe environment. Under this exclusive defined authority, the Director and the Ministerial Review Board shall not be required to confer with or rely only upon internal legal services of the Archdiocese. To the extent legal fees will exceed the Director's budget, financial expenditures are subject to approval by the Board and the Archdiocese Finance Council (and the Bankruptcy Court during the pendency of the Bankruptcy Proceedings) if necessary.

    b.  In the event the position of Director becomes vacant prior to February 1, 2020, the Archbishop will consult with the Board, the Ministerial Review Board, and the RCAO regarding a successor to fill the position of Director.

        1.  If practicable, the current Director shall provide notice to the Ministerial Review Board and the Archbishop of his intent to separate from employment as early as practicable to permit a comprehensive, effective search for his replacement.

8.     Paragraph 14.2(b) is deleted and the following inserted in its place:

    b.  The first annual outside audit will cover the period from the last date of execution of the Agreement through June 30, 2017. Fiscal-year auditing shall occur thereafter. The Agreement as amended contemplates three (3) fiscal year outside compliance audits.

9.     Paragraph H (Victims Fund) is amended to add the following second paragraph:

The Archdiocese represents that it has included the establishment of a Victims Fund as part of its Plan for Reorganization filed May 26, 2016 in the Bankruptcy Proceedings. Should such a fund not exist at discharge from the Bankruptcy Proceedings, the Archdiocese agrees to meet and confer with the RCAO regarding the provision of ongoing and future counseling or treatment, as such counseling or treatment may then be appropriate, for any of Victim 1, Victim 2, Victim 3 or a member of their immediate family.

10.    The first sentence of Paragraph M (Term of Agreement) is deleted and the following inserted in its place:

This Agreement was approved by the United States Bankruptcy Court on January 28, 2016 and runs until February 1, 2020.

11.    This Amendment is effective upon execution.

4

IN WITNESS WHEREOF, the Archdiocese and the RCAO execute this Amendment to Settlement Agreement on and as of the date(s) indicated below:

Dated: _July 19, 2016_

THE ARCHDIOCESE OF ST. PAUL AND MINNEAPOLIS, a Minnesota corporation

By: _Bernard A. Hebda_
    Bernard A. Hebda
    Its President

Subscribed and sworn to before me this _19th_ day of July, 2016.

_Barbara Ann Dawson_
Notary Public

BARBARA ANN DAWSON
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES 01/31/2018

Subscribed and sworn to before me this _19th_ day of July, 2016.

_Barbara Ann Dawson_
Notary Public

BARBARA ANN DAWSON
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES 01/31/2018

By: _Joseph F. Kueppers_
    Joseph F. Kueppers
    Its Secretary

Registered Office:
    226 Summit Avenue
    St. Paul, Minnesota  55102

APPROVED AS TO FORM:

FREDRIKSON AND BYRON, P.A.

Dated: _July 19, 2016_

By: _____
    Joseph T. Dixon (#0283903)
    Andrew F. Johnson (#0390783)
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402
612-492-7000
Facsimile: 612-492-7077
jdixon@fredlaw.com
ajohnson@fredlaw.com

5

Dated: _7 - 19 - 16_

JOHN J. CHOI
RAMSEY COUNTY ATTORNEY

By: _____

    John J. Choi (#257175)
        Ramsey County Attorney
    John T. Kelly (#214098)
        First Assistant County Attorney
    Thomas E. Ring (#25082X)
        Assistant County Attorney
    Stephanie L. Wiersma (#395741)
        Assistant County Attorney
Office of the Ramsey County Attorney
345 Wabasha Street North, Suite 120
St. Paul, MN  55102
651-266-3222

6

# EXHIBIT L(1)

## LIST OF ARCHDIOCESAN SETTLING INSURERS

| |
|---|
| The Catholic Mutual Relief Society of America (only with respect to claims covered by the Catholic Mutual Settlement Agreement); |
| The Home Insurance Company in Liquidation; |
| State Farm Fire and Casualty Company; |
| American Home Assurance Company; |
| The Continental Insurance Company, as successor by merger to The Fidelity and Casualty Company of New York; |
| Continental Casualty Company; |
| American Casualty Company of Reading, PA.; |
| National Fire Insurance Company of Hartford; |
| Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company); |
| Northfield Insurance Company; |
| St. Paul Surplus Lines Insurance Company; |
| St. Katherine Insurance Company PLC (now known as Travelers Insurance Company Limited); |
| Lamorak Insurance Company as successor to Employers' Liability Assurance Corp. |
| Fireman's Fund Insurance Company; |
| The Hartford Accident and Indemnity Company; |
| TIG Insurance Company, as successor to International Insurance Company; |
| 21st Century Centennial Insurance Company f/k/a Colonial Penn Insurance Company; |
| Interstate Fire & Casualty Co.; |
| National Surety Corporation; |
| Certain Underwriters at Lloyd's, London subscribing to Policies SL3721, SL3722, SL3723, ISL3115, ISL3116, ISL3117, ISL3675, ISL3613, ISL3614, and ISL3615; Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of (Excess Insurance Company Ltd and/or London & Edinburgh Insurance Company Ltd as successor to London & Edinburgh General Insurance Company Ltd)), Riverstone Insurance (UK) Limited (as successor in interest to Sphere Drake Insurance Ltd.), Riverstone Management Limited for and on behalf of Markel International Insurance Company Limited (formerly known as Terra Nova Insurance Company Limited), CX Reinsurance Company Ltd. (formerly known as CNA Reinsurance of London Ltd.), Dominion Insurance Company Ltd., Stronghold Insurance Company Limited, Japan Nipponkoa Insurance Company of Europe Limited (formerly known as The Yasuda Fire & Marine Insurance Company of Europe Ltd. and also known as Yasuda Fire & Marine Insurance Company (U.K.)), and those insurers subscribing to Insurance Policy Nos. SLC5743, ICO4076, ICO5200, and ICO5402 |

**EXHIBIT L(1)–A**

**KNOWN ARCHDIOCESE SETTLING INSURER ENTITY INSURANCE POLICIES**

| Insurer | Policy No. | Dates | Type / Comment |
|---|---|---|---|
| AIG Property Casualty (for American Home Assurance Company) 175 Water Street, 18th Floor New York, NY 10038 | CE2598055 BE3374208 | 8/17/69 - 8/17/72 8/17/72 - 8/17/75 | Umbrella |
| The Catholic Mutual Relief Society of America 10843 Old Mill Road Omaha, NE 68154-2600 | 7922 8140 8140 8589 | 9/1/87 - 9/1/89 9/1/89 - 9/1/90 9/1/90 - 9/1/92 9/1/92 - present | Primary & Umbrella Claims Made (Settled Only in Part) |
| CNA (for The Fidelity and Casualty Company of New York) (for National Fire and Insurance Company) (for Continental Casualty Company) 333 South Wabash Avenue Chicago, IL 60604 | 174758 XP128258/74084 HO4527587 RDU9799786 1861803 9797772 | 1943-1946 8/1/52 - 8/1/55 8/16/63 - 8/16/66 8/17/66 - 8/17/69 6/18/74-8/1/74 | Primary Primary Umbrella |
| Fireman's Fund Insurance Company 777 San Marin Drive Novato, CA 94998 | GAC312672 CL331931 | 8/1/55 - 8/1/58 8/1/58 - 8/1/61 | Primary |
| The Hartford Accident and Indemnity Company One Hartford Plaza Hartford, CT 06155-0001 | 41C549216 | 8/1/70 - 8/1/73 | Primary |
| Interstate Fire & Casualty Co. 33 West Monroe Street Chicago, IL 60603 | 183152670 830170075 830172570 | 9/1/80 - 9/1/84 9/1/84 - 9/1/85 9/1/85 - 9/1/86 | Umbrella |

L(2)-3-

| Insurer | Policy No. | Dates | Type / Comment |
|---|---|---|---|
| Certain Underwriters at Lloyd's, London subscribing to Policies SL3721, SL3722, SL3723, ISL3115, ISL3116, ISL3117, ISL3675, ISL3613, ISL3614, and ISL3615; Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of (Excess Insurance Company Ltd and/or London & Edinburgh Insurance Company Ltd as successor to London & Edinburgh General Insurance Company Ltd)), Riverstone Insurance (UK) Limited (as successor in interest to Sphere Drake Insurance Ltd.), Riverstone Management Limited for and on behalf of Markel International Insurance Company Limited (formerly known as Terra Nova Insurance Company Limited), Dominion Insurance Company Ltd., Stronghold Insurance Company Limited, Sompo Japan Nipponkoa Insurance Company of Europe Limited (formerly known as The Yasuda Fire & Marine Insurance Company of Europe Ltd. and also known as Yasuda Fire & Marine Insurance Company (U.K.)), CX Reinsurance Company Ltd. (formerly known as CNA Reinsurance of London Ltd.), **[and those insurers subscribing to Insurance Policy Nos. SLC5743, ICO4076, ICO5200, and ICO5402]** | SL3721 / SLC5742<br>SL3722 / SLC5743<br>SL3723 / SLC5744<br>ISL3115 / ICO4074<br>ISL3116 / ICO4075<br>ISL3117 / ICO4075<br>ISL3675 / ICO5200<br>ISL3613 / ICO5387<br>ISL3614<br>ISL3615 / ICO5402 | 9/1/80 - 9/1/83<br>"<br>"<br>9/1/83 - 9/1/86<br>"<br>9/1/83-9/1/85<br>9/1/85 - 9/1/86<br>9/1/86 - 9/1/87<br>"<br>" | Various |
| National Surety Corporation<br>777 San Martin Drive<br>Novato, CA 94945 | XLX1488368 | 9/1/84-9/1/85 | Umbrella |

L(2)-4-

| Insurer | Policy No. | Dates | Type / Comment |
|---|---|---|---|
| Lamorak Insurance Company as successor to Employers' Liability Assurance Corp. | 618657<br>769213 | 8/1/43-8/1/46<br>8/1/46-8/1/49 | |
| State Farm Fire and Casualty Company<br>One State Farm Plaza<br>Bloomington, IL 61710 | SM23839120<br><br>93-010482 | 8/75 - 8/77 (upon information and belief)<br>8/77 - 8/78 (upon information and belief) | Primary |
| Swiss Re America Corp as administrator for 21st Century Centennial Insurance Company, formerly known as Colonial Penn Insurance Company<br>3 Beaver Valley Road<br>Wilmington, DE 19803-1115 | XL150030<br>XL150079 | 9/1/85 - 9/1/86<br>9/1/86 - 9/1/87 | Umbrella |
| TIG Insurance Company, as successor to International Insurance Company<br>250 Commercial Street, Suite 5000<br>Manchester, NH 03101 | GA114938 | 8/1/67 - 8/1/70 | Primary |
| Travelers Casualty and Surety Company<br>(for Aetna Casualty & Surety Insurance Company)<br>One Tower Square<br>Hartford, CT 06183 | 37AL188420<br>37SM802875FCA<br>37SM802875FCA7<br>37SM10285FCA<br>37SM15868FCA<br><br>37XS1768WCA<br>37XS2046WCA<br>37XS2401WCA<br>37XS2831WCA<br>37XS3399WCA | 8/1/73 - 8/1/74<br>8/1/74 - 8/1/77<br>8/1/77 - 8/1/78<br>8/1/78 - 8/1/79<br>8/1/79 - 7/1/80<br><br>8/17/75 - 8/17/76<br>8/17/76 - 8/17/77<br>8/17/77 - 8/17/78<br>8/17/78 - 7/1/79<br>7/1/79 - 7/1/80 | Primary<br><br><br><br><br><br>Umbrella |
| Travelers<br>(for Northfield Insurance Company)<br>385 Washington Street<br>St. Paul, MN 55101 | EL85004 | 9/1/85 - 9/1/86 | Umbrella |

L(2)-5-

| Insurer | Policy No. | Dates | Type / Comment |
|---|---|---|---|
| Travelers (for St. Paul Surplus) | SUO5500535 | 9/1/86 - 9/1/87 | Umbrella |
| The Home Insurance Company in Liquidation6th Floor61 BroadwayNew York, NY 10006-2504 | 54010 63810 | 8/1/61 - 8/1/64 8/1/64 - 8/1/67 | |

L(2)-6-

CORE/3003233.0002/140935489.14

## EXHIBIT L(2)

### LIST OF PARISH SETTLING INSURERS

| |
|---|
| ACE (INA and Aetna Ins. Co.) |
| ARGO Insurance d/b/a Great Central Ins. Co. |
| Arrowood Indemnity Company as successor to Royal Indemnity Company |
| Auto-Owners Insurance Company |
| BITCO General Insurance Corporation f/k/a Bituminous Casualty Corporation and BITCO National Insurance Company f/k/a Bituminous Fire and Marine Insurance Company |
| The Catholic Mutual Relief Society of America |
| Chubb & Son, Great Northern Insurance Company and Federal Insurance Company |
| Church Mutual Insurance Co. |
| Continental Casualty Company; The Continental Insurance Company; The National Fire Insurance Co. of Hartford successor by merger to Transcontinental Insurance Company; The Continental Insurance Company, successor by merger to the Glens Falls Insurance Company and successor by merger to the Fidelity and Casualty Company of New York |
| Continental Western Group (for Continental Western Insurance Company, Western Mutual Insurance Company, Tri-State Mutual Insurance Company and Tri-State Insurance Company of Minnesota) |
| Crum & Forster Companies, TIG Insurance Company, United States Fire Insurance Company, International Insurance Company, and North River Insurance Company |
| Fireman's Fund Insurance Co. (American Insurance Company) |
| GEICO General Insurance Company (Houston General) |
| Great American Insurance Company, Great American Assurance Company, Anchor Casualty Insurance Company, Queen City Insurance Company, Agricultural Insurance Company, American Empire Insurance Company, American National Fire Insurance Company, and Great American Insurance Company of New York. |
| Hartford Financial Services Group, Inc., Hartford Accident and Indemnity Company, Hartford Fire Insurance Company, Hartford Casualty Company, New York Underwriters Insurance Company and New York Casualty Company |
| The Home Insurance Company in Liquidation |
| Bedivere Insurance Company as successor to General Accident Insurance Company; Lamorak Insurance Company as successor to the Employers' Group of Insurance Companies |
| Liberty Mutual Insurance (General Ins. Co. of America; SAFECO Ins.; Ohio Casualty; Tower Ins. Co.) |
| Motorists Commercial Mutual Ins. Co. (American Hardware; Iowa Mutual) |
| Ohio Farmers Ins. Co. and Westfield Insurance Company |
| Sentry Insurance  (Hardware Mutual) |
| State Farm Fire and Casualty Company |
| Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company); Travelers Indemnity Company; St. Paul Fire and Marine Insurance Company;  United States Fidelity and Guaranty Company; Phoenix Insurance Company; St. Paul Surplus Lines Insurance Company; Northfield Insurance Company; St. Katherine Insurance Company PLC (now known as Travelers Insurance Company Limited). |

CORE/3003233.0002/140935489.14

| |
|---|
| Western National Ins. (Mutual Creamery; Farmer's Home Mutual Ins.) |
| Zurich North America (Assurance; Maryland Casualty Co; Northern Ins. Co. of NY) |

L(2)-8-

## EXHIBIT L(3)

### LIST OF SEMINARY SETTLING INSURERS

| |
|---|
| Fidelity and Guaranty Insurance Underwriters, Inc.; Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company); and St. Paul Guardian Insurance Company |
| Continental Casualty Company, its affiliates, and their predecessors, successors, and assigns. |

CORE/3003233.0002/140935489.11

11002952v1

# EXHIBIT M

## LIST OF CATHOLIC ENTITIES

| Catholic Entity | Address |
|---|---|
| The Church of All Saints of Lakeville, Minnesota, including the parish school | 19795 Holyoke Ave<br>Lakeville, MN 55044 |
| The Church of the Annunciation of Hazelwood, Minnesota | 4996 Hazelwood Ave<br>Northfield, MN 55057-4255 |
| The Church of the Annunciation of Minneapolis, including the parish school, and including The Church of the Visitation in Minneapolis. | 509 54th St W<br>Minneapolis, MN 55419 |
| The Church of the Ascension of Norwood, Minnesota | 323 Reform St N<br>Norwood Young America, MN 55368 |
| The Church of the Ascension of Minneapolis, Minnesota, including the parish school and the former parish of The Church of St. Philip of Minneapolis, Minnesota | 1723 Bryant Ave N<br>Minneapolis, MN 55411 |
| The Church of the Assumption | 51 7th St W<br>St. Paul, MN 55102 |
| The Church of the Assumption of Richfield, Minnesota | 305 East 77th St<br>Richfield, MN 55423-4312 |
| Basilica of St. Mary of Minneapolis | 88 17th St. N.<br>P.O. Box 50010<br>Minneapolis, MN 55405 |
| The Church of the Blessed Sacrament of St. Paul, including The Church of St. Thomas the Apostle, of St. Paul, Minnesota | 2119 Stillwater Ave<br>St. Paul, MN 55119 |
| Blessed Trinity Catholic School of Richfield, Minnesota | 6720 Nicollet Ave S<br>Richfield, MN 55423-3629  and<br>6730 Nicollet Ave S<br>Richfield, MN 55423 |
| Carondelet Catholic School, formerly known as Christ the King-St. Thomas the Apostle School | 3210 51st St W<br>Minneapolis, MN 55410-2110 |
| The Cathedral of Saint Paul, including the former parish of The Church of St. Vincent of St. Paul, Minnesota | 239 Selby Ave<br>St. Paul, MN 55102 |
| The Catholic Cemeteries | 2105 Lexington Ave. South<br>Mendota Heights, MN 55120 |
| The Church of Christ the King of Minneapolis | 5029 Zenith Ave S<br>Minneapolis, MN 55410 |
| The Church of All Saints of Minneapolis | 435 4th St NE<br>Minneapolis, MN 55413-2037 |

| Catholic Entity | Address |
|---|---|
| Community of Saints Regional Catholic School | 335 East Hurley Ave<br>West St. Paul, MN 55118 |
| The Church of Corpus Christi of Saint Paul | 2131 Fairview Ave N<br>Roseville, MN 55113 |
| The Catholic Church of Divine Mercy of Faribault, including the parish school, and the former parishes of The Church of the Immaculate Conception of Faribault Minnesota, The Church of the Sacred Heart of Faribault, Minnesota, and The Church of St. Lawrence of Faribault, MN. | 139 Mercy Drive<br>Faribault, MN 55021 |
| The Church of The Epiphany of Coon Rapids, Minnesota, including the parish school | 1900 111th Ave NW<br>Coon Rapids, MN 55433-3728 |
| Faithful Shepherd Catholic School | 3355 Columbia Dr.<br>Eagan, MN 55121-4202 |
| Frassati Catholic Academy | 4690 Bald Eagle Ave.<br>White Bear Lake, MN 55110 |
| The Church of Gichitwaa Kateri | 3045 Park Ave<br>Minneapolis, MN 55407-1517 |
| The Church of the Good Shepherd, of Minneapolis, Minnesota, including the parish school | 145 Jersey Ave S<br>Golden Valley, MN 55426-1527 |
| The Church of the Guardian Angels of Oakdale, Minnesota | 8260 Hudson Blvd<br>Lake Elmo, MN 55042 |
| Church of the Guardian Angels of Chaska, Minn including the parish school | 218 Second St W<br>Chaska, MN 55318-1813 |
| Highland Catholic School | 2017 Bohland Ave<br>St. Paul, MN 55116-1911 |
| The Church of the Holy Childhood, St. Paul, Minnesota | 1435 Midway Pkwy<br>St. Paul, MN 55108-2419 |
| The Church of the Holy Cross of Minneapolis, Minnesota, including the Church of Saint Anthony of Padua, Church of Saint Hedwig of Minneapolis, and the former parish of The Church of Saint Clement. | 1621 University Ave NE<br>Minneapolis, MN 55413-1231 |
| Holy Cross Catholic School | 6100 37th St. W.<br>Webster, MN 55088 |
| The Church of the Holy Family of St. Louis Park, including the parish school | 5900 Lake St W<br>Saint Louis Park, MN 55416-2033 |
| The Church of the Holy Name of Minneapolis | 3637 11th Ave S<br>Minneapolis, MN 55407-2625 |
| The Church of the Holy Name of Jesus of Medina, Minnesota, including the parish school | 155 County Rd 24<br>Wayzata, MN 55391-9614 |

M-2-

| Catholic Entity | Address |
|---|---|
| Dominican  Fathers Holy Rosary Church & School | 2424 - 18th Ave S<br>Minneapolis, MN 55404 |
| The Church of the Holy Spirit of St. Paul, Minnesota, including the parish school | 515 Albert St S<br>St. Paul, MN 55116-1611 |
| The Church of the Holy Trinity, including the former parishes of The Church of St. Columbkille of Belle Creek, Minnesota and The Church of St. Mary of Belvidere, Minnesota | 308 4th St N<br>Goodhue, MN 55027 |
| The Church of the Holy Trinity of Waterville, Minnesota | 506 Common St<br>Waterville, MN 56096-1513 |
| The Church of the Holy Trinity of South St. Paul, including the parish school and The Church of St. Augustine of South St. Paul, Minnesota. | 749 6th Ave S<br>South St. Paul, MN 55075-3034 |
| The Church of the Immaculate Conception | 116 Alabama St SE<br>Lonsdale, MN 55046-0169 |
| The Church of the Immaculate Conception of Watertown, Minnesota | 109 Angel Ave NW<br>Watertown, MN 55388-0548 |
| The Church of the Immaculate Conception of Columbia Heights, including the parish school | 4030 Jackson St NE<br>Columbia Heights, MN 55421-2929 |
| The Church of the Immaculate Conception of Marysburg, Minnesota | 27528 Patrick St<br>Madison Lake, MN 56063-4117 |
| The Church of the Immaculate Heart of Mary of Glen Lake, Minnesota | 13505 Excelsior Blvd<br>Minnetonka, MN 55345-4913 |
| The Church of the Incarnation of Minneapolis, including Sargado Corazon de Jesus | 3817 Pleasant Ave<br>Minneapolis, MN 55409-1228 |
| The Church of Lumen Christi, including The Church of Saint Therese of St. Paul, The Church of Saint Gregory the Great of Saint Paul, Minnesota, and the Church of Saint Leo of St. Paul, Minnesota. | 2055 Bohland Ave<br>St. Paul, MN 55116 |
| The Church of Mary, Mother of the Church of Burnsville, Minnesota | 3333 East Cliff Rd<br>Burnsville, MN 55337-3306 |
| The Catholic Church of Mary Queen of Peace, including the parish school and the former parishes of the Church of Saint Martin of Rogers and The Church of St. Walberg, of Hasson | 21304 Church Ave<br>Rogers (Hassan Township),<br>MN 55374-9189 |
| The Church of the Maternity of the Blessed Virgin, Saint Paul, Minnesota, including parish school and former parish of The Church of St. Andrews of St. Paul Minnesota | 1414 Dale St N<br>St. Paul, MN 55117-4153 |

M-3-

| Catholic Entity | Address |
|---|---|
| The Church of the Most Holy Redeemer of Montgomery, Minnesota, including the parish school and The Church of St. Canice of Kilkenny, Minnesota | 206 Vine Ave W Montgomery, MN 56069-1063 |
| The Church of the Most Holy Trinity of Wesely, Minnesota | 4939 Washington St Veseli, MN 55046-4007 |
| The Church of The Nativity, of Cleveland, Minnesota, including the parish school | 200 West Main St Cleveland, MN 56017-0187 |
| The Church of the Nativity of Our Lord, including the parish school | 1900 Wellesley Ave St. Paul, MN 55105-1617 |
| The Church of the Nativity of the Blessed Virgin, Oxboro, Minnesota, including parish school | 9900 Lyndale Ave S Bloomington, MN 55420-4733 |
| Notre Dame Academy | 13505 Excelsior Blvd Minnetonka, MN 55345-4913 |
| The Church of Our Lady of Grace, in Edina, Minnesota, including the parish school and The Church of the Most Holy Trinity of St. Louis Park, Minnesota | 5071 Eden Ave Edina, MN 55436 |
| The Church of Our Lady of Guadalupe of Saint Paul, Minnesota | 401 Concord St St. Paul, MN 55107-2475 |
| The Church of Our Lady of Lourdes of St. Anthony, Minnesota | 1 Lourdes Place Minneapolis, MN 55414-1018 |
| The Church of Our Lady of Mount Carmel of Minneapolis | 701 Fillmore St NE Minneapolis, MN 55413-2525 |
| The Church of Our Lady of Peace, including the parish school, The Church of St. Kevin and The Catholic Church of the Resurrection of Minneapolis | 5426 12th Ave S Minneapolis, MN 55417-2505 |
| The Church of Our Lady of the Lake of Mound, Minn., including the parish school | 2385 Commerce Blvd Mound, MN 55364-1427 |
| The Church of Our Lady of the Prairie, Belle Plaine, including the parish school, the former parish of The Church of Sacred Heart of Belle Plaine, Minnesota and the former parish of The Church of Saints Peter and Paul of Belle Plaine, Minn. | 212 N Chestnut St Belle Plaine, MN 56011 |
| The Church of Our Lady of Victory of Minneapolis | 5155 Emerson Ave N Minneapolis, MN 55430-3414 |
| The Church of Pax Christi of Eden Prairie | 12100 Pioneer Trail Eden Prairie, MN 55347-4208 |
| St. John Paul II Catholic Preparatory School | 1630 4th St. NE Minneapolis, MN 55413 |

CORE/3003233.0002/140935489.11

11002952v1

| Catholic Entity | Address |
|---|---|
| The Church of the Presentation of the Blessed Virgin Mary of Saint Paul, including the parish school | 1725 Kennard St<br>Maplewood, MN 55109-4603 |
| Risen Christ Catholic School | 1120 37th St East<br>Minneapolis, MN 55407-2759 |
| The Church of the Risen Savior, of Apple Valley | 1501 County Rd 42 E<br>Burnsville, MN 55306-4723 |
| The Church of the Sacred Heart in St. Paul | 840 6th St E<br>St. Paul, MN 55106-4543 |
| The Church of the Sacred Heart of Rush City Minnesota | 425 Field Ave PO Box 45<br>Rush City, MN 55069 |
| The Church of the Sacred Heart, including the parish school | 4087 West Broadway Ave<br>Robbinsdale, MN 55422-2232 |
| The Society for the Propagation of the Faith, Incorporated (a/k/a Center for Mission) | 328 Kellogg Blvd<br>West St. Paul, MN 55102 |
| The Church of St. Cyril of Minneapolis, Minnesota (also known as the Church of Ss. Cyril and Methodius) | 1315 2nd St NE<br>Minneapolis, MN 55413-1131 |
| Parish of Saints Joachim and Anne of Shakopee, Minnesota, including parish school, formerly known as St. Mary of Shakopee, Saint Mark's Church of Shakopee, Scott County and The Church of Saint Mary of the Purification of Marystown, Minn. | 2700 17th Ave E<br>Shakopee, MN 55379-4443 |
| The Church of. SS. Peter and Paul of Medina, Minnesota | 145 Railway St E, P.O. Box 96<br>Loretto, MN 55357-0096 |
| The Church of St. Adalbert, of St. Paul, Minnesota | 265 Charles Ave<br>St. Paul, MN 55103-2005 |
| The Church of St. Agatha of Vermillion, Minnesota | 3700 160th St E<br>Rosemount, MN 55068-2007 |
| The Church of St. Agnes of St. Paul, Minnesota, including the parish school | 535 Thomas Ave<br>St. Paul, MN 55103 |
| The Church of Saint Albert | 11400 57th St NE, P.O. Box 127<br>Albertville, MN 55301-0127 |
| The Church of Saint Albert the Great, of Minneapolis, Minn., including former parish of The Church of Our Lady of Perpetual Help of Minneapolis, Minnesota and the former parish of the Church of Saint Austin of Minneapolis, Minnesota | 2836 33rd Ave S<br>Minneapolis, MN 55406-1626 |
| The Church of St. Alphonsus, of Brooklyn Center, Minnesota, including the parish school | 7025 Halifax Ave N<br>Brooklyn Center, MN 55429-1375 |

M-5-

| Catholic Entity | Address |
|---|---|
| The Church of Saint Ambrose of Woodbury, including the parish school (formerly located in St. Paul, Minnesota) | 4125 Woodbury Dr. Woodbury, MN 55129-9627 |
| The Church of St. Andrew of Elysian, Minnesota | 305 Park Ave NE Elysian, MN 56028-0261 |
| The Church of St. Andrew Kim | 1850 Mississippi River Blvd St. Paul, MN 55116-2644 |
| The Church of Saint Anne – Saint Joseph Hien | 2627 Queen Ave N Minneapolis, MN 55411-1792 |
| The Church of St. Anne of Hamel, Minnesota | 200 Hamel Rd, P.O. Box 256 Hamel, MN 55340-0256 |
| The Church of St Anne of LeSueur, Minnesota, including the parish school and the former parish of Church of St. Thomas of Derrynane | 217 N 3rd St Le Sueur, MN 56058-1808 |
| The Church of Saint Bartholomew of Wayzata, including the parish school | 630 Wayzata Blvd E Wayzata, MN 55391-1704 |
| The Church of Saint Bernard of St Paul Minnesota | 1160 Woodbridge St. St. Paul, MN 55117-4491 |
| The Church of St. Bernard, of Benton, Minnesota, including the parish school | 212 Church St E Cologne, MN 55322-9552 |
| The Church of St. Bonaventure, of Bloomington, Minnesota | 901 90th St E Bloomington, MN 55420-3801 |
| The Church of St. Boniface | 629 2nd St NE Minneapolis, MN 55413-1905 |
| The Church of St. Boniface | 551 Main Street Stewart, MN |
| The Church of St. Boniface of St. Bonifacius, Minn. | 4025 Main St Saint Bonifacius, MN 55375-0068 |
| The Church of Saint Bridget of Minneapolis, including the Church of Saint Austin of Minneapolis, Minnesota | 3811 Emerson Ave N Minneapolis, MN 55412-2038 |
| The Church of St. Bridget of Sweden, of Lindstrom, Minnesota | 13060 Lake Blvd, P.O. Box 754 Lindstrom, MN 55045-0754 |
| The Church of St. Casimir of St. Paul, Minnesota | 934 Geranium Ave E St. Paul, MN 55106-2610 |
| The Church of St. Catherine of Spring Lake, Minnesota | 24425 Old Highway 13 Blvd Jordan, MN 55352 |
| The Church of St. Cecilia of St. Paul | 2357 Bayless Place St. Paul, MN 55114-1105 |

M-6-

CORE/3003233.0002/140935489.11

| Catholic Entity | Address |
|---|---|
| The Church of St. Charles Borromeo of Minneapolis, Minnesota, including the parish school | 2739 Stinson Blvd NE<br>Saint Anthony, MN 55418-3124 |
| The Church of Saint Charles, Bayport, Minnesota | 409 3rd St N<br>Bayport, MN 55003-1044 |
| The Church of Saint Columba of St. Paul, Minn. | 1327 LaFond Ave<br>St. Paul, MN 55104-2035 |
| St. Croix Catholic School | 621 3rd St. S.<br>Stillwater, MN 55082-4908 |
| The Church of St Dominic of Northfield Minnesota, including the parish school | 216 Spring St N<br>Northfield, MN 55057-1431 |
| The Church of St. Edward, of Bloomington, Minnesota | 9401 Nesbitt Ave S<br>Bloomington, MN 55437-1943 |
| The Church of St. Elizabeth Ann Seton, Hastings, Minnesota, including the parish school and the former parishes of  The Church of Guardian Angels, Hastings, Minnesota and The Church of St. Boniface of Hasting, Minnesota | 2035 15th St W<br>Hastings, MN 55033-9294 |
| The Church of Saint Frances Cabrini of Minneapolis, Minnesota | 1500 Franklin Ave SE<br>Minneapolis, MN 55414-3649 |
| The Church of St. Francis de Sales of St. Paul, Minnesota including Child Care Center & Preschool, and The Church of St. James of St. Paul | 650 Palace Ave<br>St. Paul, MN 55102-3540 |
| The Church of St. Francis of Assisi | 16770 13th St S<br>Lake St Croix Beach, MN 55043-9756 |
| The Church of Saint Francis Xavier of Franconia, Minnesota | 25267 Redwing Ave<br>Shafer, MN 55074 |
| The Church of St. Francis of Buffalo, Minnesota, including the parish school | 300 First Ave NW<br>Buffalo, MN 55313-5042 |
| The Parish of Saint Gabriel the Archangel of Hopkins, Minnesota, including St. Joseph of Hopkins and Saint John the Evangelist of Interlachen Park | 6 Interlochen Rd<br>Hopkins, MN 55343-8548 |
| The Church of St. Genevieve of Centerville, Minnesota including The Church of St. John the Baptist of Hugo | 7087 Goiffon Rd<br>Centerville, MN 55038-9125 |
| The Church of Saint George of Long Lake | 133 Brown Rd N<br>Long Lake, MN 55356-9560 |
| The Church of St. Gerard | 9600 Regent Ave N<br>Brooklyn Park, MN 55443-1401 |
| The Church of Saint Gregory | 38725 Forest Blvd<br>North Branch, MN 55056-0609 |

M-7-

| Catholic Entity | Address |
|---|---|
| The Church of Saint Hedwig of Minneapolis | 129 29th Ave. NE<br>Minneapolis, MN 55418 |
| The Church of St. Helena of Minneapolis, including parish school | 3204 43rd St E<br>Minneapolis, MN 55406-3858 |
| The Church of St. Henry of Monticello, Minn | 1001 7th St E<br>Monticello, MN 55362-8805 |
| The Church of Saint Henry of Sharon, Minnesota | 165 N. Waterville Ave.<br>Le Center, MN 56057 |
| The Church of Saint Hubert of Chanhassen Minn, including parish school | 8201 Main St<br>Chanhassen, MN 55317-9647 |
| The Church of St. Ignatius of French Lake, Minnesota | 35 Birch St E<br>Annandale, MN 55302-0126 |
| The Church of St. Jerome, Maplewood, Minnesota including parish school | 380 Roselawn Ave E<br>Maplewood, MN 55117-2033 |
| The Church of Saint Joan of Arc in Minneapolis | 4537 3rd Ave S<br>Minneapolis, MN 55419-5111 |
| The Church of St. John Neumann | 4030 Pilot Knob Rd<br>Eagan, MN 55122-1814 |
| The Church of St. John the Baptist of Dayton Minnesota | 18380 Columbus St, P.O. Box 201<br>Dayton, MN 55327-0201 |
| The Church of St. John the Baptist of Byrnesville, Minnesota, including parish school | 4625 West 125th St<br>Savage, MN 55378-1357 |
| The Church of St. John Baptist, including parish school | 835 2nd Ave NW<br>New Brighton, MN 55112-6842 |
| The Church of Saint John the Baptist of Jordan Minn., including parish school | 313 East 2nd St<br>Jordan, MN 55352-1447 |
| Church of St. John the Baptist of Excelsior, Minnesota, including parish school | 680 Mill St<br>Excelsior, MN 55331-3272 |
| The Church of St. John of Vermillion Minnesota, including parish school | 106 Main St W<br>Vermillion, MN 55085-0008 |
| St. John's Church of Little Canada, Minnesota, including parish school | 380 Little Canada Rd E<br>Little Canada, MN 55117-1627 |
| The Church of Saint John Vianney in South Saint Paul, Minnesota | 789 17th Ave North<br>South St. Paul, MN 55075 |
| The Church of St. Joseph | 8701 36th Ave N<br>New Hope, MN 55427-1769 |
| The Church of Saint Joseph of West Saint Paul, Minnesota | 1154 Seminole Ave<br>West St. Paul, MN 55118-2020 |
| The Church of St. Joseph, of Red Wing Minnesota | 426 8th St W<br>Red Wing, MN 55066-3410 |

M-8-

| Catholic Entity | Address |
|---|---|
| The Church of Saint Joseph of Taylors Falls | 490 Bench St<br>Taylors Falls, MN 55084-0234 |
| The Church of Saint Joseph of Waconia, Minn., including parish school | 41 1st St E<br>Waconia, MN 55387-1526 |
| The Church of St. Joseph, of Rosemount Minnesota, including parish school | 13900 Biscayne Ave W<br>Rosemount, MN 55068-3451 |
| The Church of St. Joseph, of Miesville, Minnesota, in the Township of Douglas, including parish school | 23955 Nicolai Ave E<br>Hastings, MN 55033-9650 |
| Church of St. Joseph of Rice Lake, Minnesota | 171 Elm St<br>Lino Lakes, MN 55014-1271 |
| The Church of St. Joseph the Worker, Maple Grove, Minnesota | 7180 Hemlock Lane N<br>Maple Grove, MN 55369-5569 |
| The Church of St. Jude of the Lake in the Town of Lincoln, including parish school | 700 Mahtomedi Ave<br>Mahtomedi, MN 55115-1673 |
| The Church of Saint Katharine Drexel, Ramsey, Minnesota | 7101 143rd Ave NW<br>Ramsey, MN 55303-6001 |
| The Church of St. Lawrence of Minneapolis, Minnesota | 1203 5th St SE<br>Minneapolis, MN 55414-2030 |
| The Newman Center and Chapel | 1203 5th St SE<br>Minneapolis, MN 55414-2030 |
| The Church of St. Leonard of Port Maurice, of Minneapolis, Minnesota | 3949 Clinton Ave S<br>Minneapolis, MN 55409-1635 |
| The Church of St. Louis, of St. Paul Minnesota | 506 Cedar St<br>St. Paul, MN 55101-2245 |
| The Church of St. Luke of Clearwater, Minnesota | 17545 Huber Ave NW<br>Clearwater, MN 55320-0249 |
| The Church of Saint Margaret Mary, of Minneapolis, Minnesota | 2323 Zenith Ave N<br>Golden Valley, MN 55422-3853 |
| The Church of St. Mark of St. Paul, Minnesota, including parish school | 2001 Dayton Ave<br>St. Paul, MN 55104-5804 |
| The Church of St. Mary, of St. Paul Minnesota | 261 8th St E<br>St. Paul, MN 55101-2307 |
| The Church of St. Mary of Le Center, Minnesota | 165 Waterville Ave N<br>Le Center, MN 56057-1524 |
| The Church of St. Mary, of New Trier, Minnesota | 8433 239th St E<br>Hampton, MN 55031-9766 |
| The Church of St. Mary of Stillwater | 423 5th St S<br>Stillwater, MN 55082-4982 |
| The Church of St Mary of Waverly Minnesota | 606 Elm Ave<br>Waverly, MN 55390-0278 |

M-9-

| Catholic Entity | Address |
|---|---|
| The Church of St. Mary, Minnesota (also known as the Church of St. Mary of Czestochowa) | 1867 95th St SE<br>Delano, MN 55328-8208 |
| The Church of St. Mary of the Lake, of Medicine Lake, Minnesota | 105 Forestview Ln N<br>Plymouth, MN 55441-5910 |
| The Church of St. Mary of the Lake, of White Bear, Minnesota | 4690 Bald Eagle Ave<br>White Bear Lake, MN 55110-3441 |
| The Church of St. Matthew of St. Paul, Minnesota | 490 Hall Ave<br>St. Paul, MN 55107-2845 |
| The Church of St. Mathias of Hampton, Minnesota | 23315 Northfield Blvd<br>Hampton, MN 55031-9667 |
| The Church of Saint Maximilian Kolbe, including parish school, formerly known as The Church of St. Peter, of Delano, Minnesota and The Church of St. Joseph of Delano | 204 South River St.<br>PO Box 470<br>Delano, MN 55328 |
| The Church of St. Michael of Farmington, Minnesota | 22120 Denmark Ave<br>Farmington, MN 55024 |
| The Church of Saint Michael of Kenyon, Minnesota | 108 Bullis St<br>Kenyon, MN 55946-1156 |
| The Church of St. Michael, of Pine Island Minnesota | 451 5th St SW<br>Pine Island, MN 55963-6761 |
| The Church of St. Michael of St. Paul Minnesota | 337 Hurley St E<br>West St. Paul, MN 55118-1605 |
| The Church of St. Michael, of Stillwater Minnesota | 611 3rd St S<br>Stillwater, MN 55082-4908 |
| The Church of St. Michael, of Frankfort, Minnesota, including parish school | 11300 Frankfurt Pkwy NE<br>Saint Michael, MN 55376-4550 |
| The Church of St. Michael of Prior Lake, including parish school | 16311 Duluth Ave SE<br>Prior Lake, MN 55372-2423 |
| The Church of Saint Nicholas of Carver Minn. | 412 4th St W<br>Carver, MN 55315-0133 |
| St. Nickolaus Church of New Market Scott County Minnesota | 51 Church St<br>New Market, MN 55054-0009 |
| The Church of St. Odilia, of Shoreview, Minnesota, including parish school | 3495 Victoria St N<br>Shoreview, MN 55126-3813 |
| St. Olaf's Catholic Church of Minneapolis, Minnesota | 215 South 8th St<br>Minneapolis, MN 55402-2803 |
| The Church of Saint Pascal Baylon, St. Paul, Minnesota, including parish school, and the former parish of The Church of St. John of St. Paul, Minnesota | 1757 Conway St<br>St. Paul, MN 55106-5929 |

CORE/3003233.0002/140935489.11

11002952v1

| Catholic Entity | Address |
|---|---|
| The Church of St. Patrick of Inver Grove, Minnesota | 3535 72nd St E<br>Inver Grove Heights, MN 55076-2627 |
| The Church of St. Patrick of Edina, Minnesota | 6820 St. Patrick's Lane<br>Edina, MN 55439-1631 |
| The Church of, St. Patrick, of Shieldsville Minnesota | 7525 Dodd Rd<br>Faribault, MN 55021-7431 |
| The Church of St. Patrick of Cedar Lake, Minnesota | 24425 Old Highway 13 Blvd<br>Jordan, MN 55352-9604 |
| The Church of St. Patrick of Cedar Creek, Minnesota | 19921 Nightingale St NW<br>Oak Grove, MN 55011-9243 |
| The Church of St. Patrick of St. Paul Minnesota | 1095 DeSoto St<br>St. Paul, MN 55130-3704 |
| The Church of Saint Paul of Zumbrota, Minnesota | 749 Main St S<br>Zumbrota, MN 55992-1608 |
| The Church of Saint Paul | 1740 Bunker Lake Blvd NE<br>Ham Lake, MN 55304-7040 |
| The Church of Saint Peter of Richfield, Minnesota, including parish school of Blessed Trinity | 6730 Nicollet Ave<br>Richfield, MN 55423-2464 |
| The Church of St. Peter, of Mendota, Minnesota | 1405 Hwy 13<br>Mendota, MN 55150-0679 |
| The Church of Saint Peter, including parish school | 1250 Shore Dr. S<br>Forest Lake, MN 55025-1933 |
| The Church of St. Peter of North St. Paul, including parish school and the former parish The Church of the Holy Redeemer | 2600 Margaret St N<br>North St. Paul, MN 55109-2361 |
| The Church of St. Peter Claver Minnesota, including parish school | 375 Oxford St N<br>St. Paul, MN 55104-4734 |
| The Church of St. Pius of Cannon Falls, Minnesota | 410 Colvill St W<br>Cannon Falls, MN 55009-2441 |
| The Church of St. Pius X of White Bear, Minnesota | 3878 Highland Ave<br>White Bear Lake, MN 55110-4240 |
| The Church of Saint Raphael in Crystal, Minnesota, including parish school | 7301 Bass Lake Rd<br>Crystal, MN 55428-3826 |
| The Church of Saint Richard, of Richfield, Minnesota | 7540 Penn Ave S<br>Richfield, MN 55423-3629 |
| The Church of St. Rita of Cottage Grove, Minnesota | 8694 80th St S<br>Cottage Grove, MN 55016-2012 |
| The Church of Saint Rose of Lima of Rosetown, Minnesota, including parish school | 2048 Hamline Ave N<br>Roseville, MN 55113-5855 |
| The Church of St. Stanislaus of Saint Paul, Minnesota | 398 Superior St<br>St. Paul, MN 55102-2925 |

CORE/3003233.0002/140935489.11

11002952v1

| Catholic Entity | Address |
| --- | --- |
| The Church of St. Stephen of Minneapolis, Minnesota | 2211 Clinton Ave<br>Minneapolis, MN 55404-3656 |
| The Church of St. Stephen, of Anoka, Minnesota, including parish school | 525 Jackson St<br>Anoka, MN 55303-2353 |
| The Church of Saint Therese of Deephaven, including parish school | 18323 Minnetonka Blvd<br>Deephaven, MN 55391-3231 |
| St. Thomas Academy | 949 Mendota Heights Rd.<br>Mendota Heights, MN 55118 |
| The Church of St. Thomas Aquinas in St. Paul Park, Minnesota | 920 Holly Ave<br>St. Paul Park, MN 55071-1418 |
| The Church of St. Thomas Becket | 4455 S Robert Trail<br>Eagan, MN 55123-2038 |
| The Church of Saint Thomas More, including parish school, The Church of the Immaculate Heart of Mary, St. Paul, Minnesota and former parish of Church of St. Luke, St. Paul Minnesota | 1079 Summit Ave<br>St. Paul, MN 55105-3004 |
| The Church of St. Thomas of Minneapolis | 2914 W 44th St<br>Minneapolis, MN 55410-1551 |
| The Church of St. Thomas, of Corcoran, Minnesota | 20000 County Rd 10<br>Corcoran, MN 55340-9501 |
| The Church of Saint Timothy of Blaine | 707 89th Ave NE<br>Blaine, MN 55434-2304 |
| The Church of St. Timothy of Maple Lake, Minnesota, including parish school | 8 Oak Ave N<br>Maple Lake, MN 55358-2457 |
| The Church of Saint Victoria of Victoria, Minn. | 8228 Victoria Dr.<br>Victoria, MN 55386-9692 |
| The Church of St. Vincent de Paul, of Osseo, Minnesota, including parish school | 9100 93rd Ave N<br>Brooklyn Park, MN 55445-1407 |
| The Church of St. Wenceslaus, of New Prague, Minnesota, including parish school, Saint Scholastica Church of Heidelberg, Minnesota, The Church of Saint John the Evangelist of Union Hill, Minn., The Church of St. Joseph, and Church of Saint Benedict, of St. Benedict. | 215 Main St E<br>New Prague, MN 56071-1832 |
| The Church of Saint William of Fridley, Minnesota | 6120 5th St NE<br>Fridley, MN 55432-5033 |
| Transfiguration Church of Oakdale, Minnesota, including parish school | 6133 15th St N<br>Oakdale, MN 55128-4201 |

M-12-

# EXHIBIT N

## LIST OF KNOWN ARCHDIOCESE OTHER INSURED ENTITIES

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| All Parishes, Schools, Cemeteries and Other Agencies under specific names owned or operated by the Archdiocese of St. Paul and Minneapolis and all other directly connected organizations<br>(as listed on Exhibit M of Plan) | Nat'l Surety policy number XLX 1488368 (9/1/84-9/1/85); Northfield Insurance Companies policy number EL 85004 (11/7/85-9/1/86);  St. Paul Surplus Lines Insurance Company policy number SUO 5500535 (9/1/86-9/1/87); Colonial Penn Policy numbers XL 150030 (9/1/85-9/1/86) and XL150079 (9/1/86-9/1/87). |
| Catholic Cemeteries, individually and as successor in interest to:  Calvary Cemetery, Gethsemane Cemetery (including Assumption Cemetery), Resurrection Cemetery, St. Anthony's Cemetery, and St. Mary's Cemetery<br>2105 Lexington Ave S.<br>Mendota Heights, MN 55120 | Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55); Fireman's Fund policy numbers GAC312672 (8/1/55-8/1/58) and  CL331931 (8/1/58-8/1/61); International policy number GA114938 (8/1/67-8/1/70); American Home policy numbers CE2598055 (8/17/69-8/17/72) and BE3374208 (8/17/72-8/17/75); American Casualty policy number 1861802 (6/1-8/1/74); Hartford Accident and Indemnity Company policy 41 C 549216 (8/1/70-8/1/73); and Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company)  policy numbers 37AL188420 (8/1/73 - 8/1/74), 37SM802875FCA  (8/1/74 - 8/1/77), 37SM802875FCA7 (8/1/77 - 8/1/78), 37SM10285FCA (8/1/78 - 8/1/79), 37SM15868FCA (8/1/79 - 7/1/80), 37XS1768WCA (8/17/75 - 8/17/76), 37XS2046WCA (8/17/76 - 8/17/77), 37XS2401WCA (8/17/77 - 8/17/78), 37XS2831WCA (8/17/78 - 7/1/79), and 37XS3399WCA (7/1/79 - 9/1/80); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| Calvary Cemetery (St. Paul)<br>Part of Catholic Cemeteries | The Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55); Fireman's Fund policy numbers GAC312672 (8/1/55-8/1/58) and CL331931 (8/1/58-8/1/61); International Insurance policy number GA114938 (8/1/67-8/1/70); Hartford Accident and Indemnity Company policy 41 C 549216 (8/1/70-8/1/73); Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) policy number 37AL188420 (8/1/73 - 8/1/74); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Assumption Cemetery (New Hope)<br>Part of Gethsemane Cemetery, which is part of Catholic Cemeteries | Hartford Accident and Indemnity Company policy 41 C 549216 (8/1/70-8/1/73);  Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company)  policy number 37AL188420 (8/1/73 - 8/1/74); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Gethsemane Cemetery (New Hope)<br>Part of Catholic Cemeteries | Fireman's Fund policy number CL331931 (8/1/58-8/1/61); International policy number GA114938 (8/1/67-8/1/70); Hartford Accident and Indemnity Company policy 41C549216 (8/1/70-8/1/73); Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) policy number 37AL188420 (8/1/73 - 8/1/74); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |

N-2

-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| Resurrection Cemetery (Mendota Heights) Part of Catholic Cemeteries | Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55); Fireman's Fund policy numbers GAC312672 (8/1/55-8/1/58) and  CL331931 (8/1/58-8/1/61); International policy number GA114938 (8/1/67-8/1/70); Hartford Accident and Indemnity Company policy 41 C 549216 (8/1/70-8/1/73); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| St. Anthony's Cemetery (Minneapolis) Part of Catholic Cemeteries | Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55); Fireman's Fund policy numbers GAC312672 (8/1/55-8/1/58) and CL331931 (8/1/58-8/1/61); International policy number GA114938 (8/1/67-8/1/70); Hartford Accident and Indemnity Company policy 41 C 549216 (8/1/70-8/1/73);  Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company)  policy number 37AL188420 (8/1/73 - 8/1/74); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| St. Mary's Cemetery (Minneapolis) Part of Catholic Cemeteries | Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55); Fireman's Fund policy numbers GAC312672 (8/1/55-8/1/58) and CL331931 (8/1/58-8/1/61); International policy number GA114938 (8/1/67-8/1/70); Hartford Accident and Indemnity Company policy 41 C 549216 (8/1/70-8/1/73);  Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company)  policy number 37AL188420 (8/1/73 - 8/1/74); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |

N-3

-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| Catholic Charities of The Archdiocese of Saint Paul and Minneapolis as successor in interest to St. Joseph's Home for Children (f/k/a Minneapolis Catholic Boys' Home, f/k/a Minneapolis Catholic Orphan Asylum, and f/k/a St. Joseph's German Catholic Orphan Society); Seton Residence (f/k/a St. Paul Catholic Orphan Asylum and f/k/a Catholic Infants Home); Catholic Social Service of Saint Paul (f/k/a known as Bureau of Catholic Charities of Saint Paul, Inc.)<br>1200 2nd Avenue S.<br>Minneapolis, MN 55403 | Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55); Fireman's Fund policy numbers GAC312672 (8/1/55-8/1/58) and CL331931(8/1/58-8/1/61); Continental Casualty Company policy RDU9799786 (8/17/66-8/17/69); International Insurance policy number GA114938 (8/1/67-8/1/70); Hartford Accident and Indemnity Company policy 41 C 549216 (8/1/70-8/1/73); American Home policy numbers CE2598055 (8/17/69-8/17/72) and  BE3374208 (8/17/72-8/17/75); Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) policy numbers 37SM10285FCA (8/1/78 - 8/1/79), 37SM15868FCA (8/1/79 - 7/1/80), 37XS1768WCA (8/17/75 - 8/17/76), 37XS2046WCA (8/17/76 - 8/17/77), 37XS2401WCA (8/17/77 - 8/17/78), 37XS2831WCA (8/17/78 - 7/1/79), and 37XS3399WCA (7/1/79 - 9/1/80); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Diocesan Bureau of Catholic Charities, Inc. n/k/a Catholic Charities | Continental Casualty Company policy number RDU9799786 (8/17/66-8/17/69);  International policy number GA114938 (8/1/67-8/1/70); Hartford Accident and Indemnity Company policy 41 C 549216 (8/1/70-8/1/73); American Home policy number E2598055 (8/17/69-8/17/72); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Catholic Infants Home, St. Paul n/k/a Catholic Charities | Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55); Fireman's Fund policy numbers GAC312672 (8/1/55-8/1/58) and CL331931 (8/1/58-8/1/61); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |

N-4

-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| Minneapolis Catholic Boys Home f/k/a Mpls Catholic Orphans Asylum n/k/a Catholic Charities | Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55); Continental Casualty Company policy number RDU9799786 (8/17/66-8/17/69);  Fireman's Fund policy numbers GAC312672 (8/1/55-8/1/58) and CL331931 (8/1/58-8/1/61); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| St. Joseph's Home for Children n/k/a Catholic Charities | Fireman's Fund policy number CL331931 (8/1/58-8/1/61); American Home policy numbers CE2598055 (8/17/69-8/17/72) and BE3374208 (8/17/72-8/17/75); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| St. Paul Catholic Orphans Asylum n/k/a Catholic Charities | Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55); Continental Casualty Company policy number RDU9799786 (8/17/66-8/17/69); Fireman's Fund policy number GAC312672 (8/1/55-8/1/58) and CL331931 (8/1/58-8/1/61); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |

N-5

-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| St. Joseph's German Catholic Orphan Society n/k/a Catholic Charities | Continental Casualty Company policy number RDU9799786 (8/17/66-8/17/69); American Home policy numbers CE2598055 (8/17/69-8/17/72) and BE3374208 (8/17/72-8/17/75); and Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company)  policy numbers 37SM10285FCA (8/1/78 - 8/1/79), 37SM15868FCA (8/1/79 - 7/1/80), 37XS1768WCA (8/17/75 - 8/17/76), 37XS2046WCA (8/17/76 - 8/17/77), 37XS2401WCA (8/17/77 - 8/17/78), 37XS2831WCA (8/17/78 - 7/1/79), and 37XS3399WCA (7/1/79 - 9/1/80); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Seton Residence n/k/a Catholic Charities | International policy number GA114938 (8/1/67-8/1/70); American Home policy numbers CE2598055 (8/17/69-8/17/72) and BE3374208 (8/17/72-8/17/75); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |

N-6

-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| Archbishop Ireland Education Fund, Inc. Dissolved in 1997 | Continental Casualty Company policy number RDU9799786 (8/17/66-8/17/69);  International policy number GA114938 (8/1/67-8/1/70); Hartford Accident and Indemnity Company policy 41 C 549216 (8/1/70-8/1/73); American Home policy numbers CE2598055 (8/17/69-8/17/72) and BE3374208 (8/17/72-8/17/75); Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company)  policy numbers 37AL188420 (8/1/73 - 8/1/74),  37SM802875FCA (8/1/74 - 8/1/77), 37SM10285FCA (8/1/78 - 8/1/79), 37SM15868FCA (8/1/79 - 7/1/80), 37XS1768WCA (8/17/75 - 8/17/76), 37XS2046WCA (8/17/76 - 8/17/77), 37XS2401WCA (8/17/77 - 8/17/78), 37XS2831WCA (8/17/78 - 7/1/79), and 37XS3399WCA (7/1/79 - 9/1/80); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Archbishop's Appeal Committee Not separately incorporated from Archdiocese | American Casualty Company of Reading, PA policy number 1861802 (6/1-8/1/74);  Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company)  policy numbers 37AL188420 (8/1/73 - 8/1/74), 37SM802875FCA (8/1/74 - 8/1/77), 37SM802875FCA7 (8/1/77 - 8/1/78), and 37SM15868FCA (8/1/79 - 7/1/80); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |

N-7
-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| Archdiocesan Council of Catholic Women<br>Not separately incorporated from Archdiocese | American Casualty Company of Reading, PA policy number 1861802 (6/1-8/1/74); Hartford Accident and Indemnity Company policy 41 C 549216 (8/1/70-8/1/73);  Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company)  policy numbers 37AL188420 (8/1/73 - 8/1/74), 37SM802875FCA (8/1/74 - 8/1/77), 37SM802875FCA7 (8/1/77 - 8/1/78), 37SM10285FCA (8/1/78 - 8/1/79), 37SM15868FCA (8/1/79 - 7/1/80), 37XS1768WCA (8/17/75 - 8/17/76), 37XS2046WCA (8/17/76 - 8/17/77), 37XS2401WCA (8/17/77 - 8/17/78), 37XS2831WCA (8/17/78 - 7/1/79), and 37XS3399WCA (7/1/79 - 9/1/80); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Archdiocesan Development Office and Annual Catholic Appeal<br>Not separately incorporated from Archdiocese | Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) policy number 37SM10285FCA (8/1/78 - 8/1/79); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Center for Growth in Priestly Ministry<br>Not separately incorporated from Archdiocese | Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) policy numbers 37SM10285FCA (8/1/78 - 8/1/79), and 37SM15868FCA (8/1/79 - 7/1/80); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |

N-8

-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| CommonBond Communities (f/k/a Community Development Corporation for the Archdiocese of Saint Paul and Minneapolis, and f/k/a Urban Affairs Community Development Corporation, Inc.) 1080 Montreal Avenue St Paul, MN 55116 | Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) policy numbers 37AL188420 (8/1/73 - 8/1/74), 37SM802875FCA (8/1/74 - 8/1/77), 37SM802875FCA7 (8/1/77 - 8/1/78), 37SM10285FCA (8/1/78 - 8/1/79), 37SM15868FCA (8/1/79 - 7/1/80), 37XS1768WCA (8/17/75 - 8/17/76), 37XS2046WCA (8/17/76 - 8/17/77), 37XS2401WCA (8/17/77 - 8/17/78), 37XS2831WCA (8/17/78 - 7/1/79), 37XS3399WCA (7/1/79 - 9/1/80); American  Casualty policy number 1861802 (6/1-8/1/74); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Confraternity of Christian Doctrine of the Archdiocese of Saint Paul, Inc. Dissolved in 1972 | Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55); Continental Casualty Company policy number RDU9799786 (8/17/66-8/17/69); American Casualty Company of Reading, PA policy number 1861802 (6/1-8/1/74); Fireman's Fund policy numbers GAC312672 (8/1/55-8/1/58) and CL331931 (8/1/58-8/1/61); International policy number GA114938 (8/1/67-8/1/70); Hartford Accident and Indemnity Company policy 41 C 549216 (8/1/70-8/1/73); American Home policy number CE2598055 (8/17/69-8/17/72), Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company)  policy numbers 37SM802875FCA (8/1/74 - 8/1/77), and 37SM802875FCA7 (8/1/77 - 8/1/78); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |

N-9

-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| Consultation Services Center<br>Not separately incorporated from Archdiocese | American Casualty Company of Reading, PA policy number 1861802 (6/1-8/1/74);  Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company)  policy numbers 37AL188420 (8/1/73 - 8/1/74), 37SM802875FCA (8/1/74 - 8/1/77), 37SM802875FCA7 (8/1/77 - 8/1/78), 37SM10285FCA (8/1/78 - 8/1/79), and 37SM15868FCA (8/1/79 - 7/1/80); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Crossroads Resource Center<br>Not separately incorporated from Archdiocese | American Casualty Company of Reading, PA policy number 1861802 (6/1-8/1/74);  Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company)  policy numbers 37SM802875FCA (8/1/74 - 8/1/77) and 37SM802875FCA7 (8/1/77 - 8/1/78); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Catholic Youth Center, Minneapolis<br>Not separately incorporated from Archdiocese | Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55); Fireman's Fund policy numbers GAC312672 (8/1/55-8/1/58) and CL331931 (8/1/58-8/1/61); International policy number GA114938 (8/1/67-8/1/70); Hartford Accident and Indemnity Company policy 41 C 549216 (8/1/70-8/1/73); Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company)  policy numbers 37AL188420 (8/1/73 - 8/1/74), 37SM802875FCA (8/1/74 - 8/1/77), 37SM802875FCA7 (8/1/77 - 8/1/78), 37SM10285FCA (8/1/78 - 8/1/79), and 37SM15868FCA (8/1/79 - 7/1/80); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |

N-10
-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| Catholic Youth Center, St. Paul<br>Not separately incorporated from Archdiocese | Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55); American Casualty Company of Reading, PA policy number 1861802 (6/1-8/1/74); Fireman's Fund policy numbers GAC312672 (8/1/55-8/1/58) and CL331931 (8/1/58-8/1/61); International policy number GA114938 (8/1/67-8/1/70); Hartford Accident and Indemnity Company policy 41 C 549216 (8/1/70-8/1/73); Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company)  policy numbers 37AL188420 (8/1/73 - 8/1/74), 37SM802875FCA (8/1/74 - 8/1/77), 37SM802875FCA7 (8/1/77 - 8/1/78),  37SM10285FCA (8/1/78 - 8/1/79), and 37SM15868FCA (8/1/79 - 7/1/80); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Diocesan Bureau of Education<br>Not separately incorporated from Archdiocese | American Casualty Company of Reading, PA policy number 1861802 (6/1-8/1/74);  Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company)  policy numbers 37AL188420 (8/1/73 - 8/1/74), 37SM802875FCA (8/1/74 - 8/1/77), 37SM802875FCA7 (8/1/77 - 8/1/78), 37SM10285FCA (8/1/78 - 8/1/79), and 37SM15868FCA (8/1/79 - 7/1/80); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |

N-11

-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| Manalive Program<br>Dissolved in 1997 | Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) policy numbers 37SM802875FCA7 (8/1/77 - 8/1/78), 37SM10285FCA (8/1/78 - 8/1/79), 7SM15868FCA (8/1/79 - 7/1/80), 37XS2046WCA (8/17/76 - 8/17/77), 37XS2401WCA (8/17/77 - 8/17/78), 37XS2831WCA (8/17/78 - 7/1/79), and 37XS3399WCA (7/1/79 - 9/1/80); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Metropolitan Tribunal<br>Not separately incorporated from Archdiocese | American Casualty Company of Reading, PA policy number 1861802 (6/1-8/1/74); Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) policy numbers 37AL188420 (8/1/73 - 8/1/74), 37SM802875FCA (8/1/74 - 8/1/77), 37SM10285FCA (8/1/78 - 8/1/79), and 37SM15868FCA (8/1/79 - 7/1/80); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Minneapolis Communication Center Inc.<br>Dissolved in 1997 | Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) policy numbers 37SM802875FCA (8/1/74 - 8/1/77), 37SM802875FCA7 (8/1/77 - 8/1/78), and 37SM10285FCA (8/1/78 - 8/1/79); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| The Newman Center and Chapel<br>(f/k/a Newman Hall)<br>1203 5th St SE<br>Minneapolis, MN 55414 | Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |

N-12
-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| Pearson Education Developmental Education (f/k/a Pearson Education-Drug Education) Dissolved in 2005 | Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) policy numbers  37SM10285FCA (8/1/78 - 8/1/79), 37SM15868FCA (8/1/79 - 7/1/80), 37XS2401WCA (8/17/77 - 8/17/78), and 37XS2831WCA (8/17/78 - 7/1/79); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Priest Senate and Presbytery Not separately incorporated from Archdiocese | Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) policy number 37SM15868FCA (8/1/79 - 7/1/80); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Saint Camillus House Not separately incorporated from Archdiocese | Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55); Fireman's Fund policy numbers GAC312672 (8/1/55-8/1/58) and CL331931 (8/1/58-8/1/61); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |

N-13

-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| The Society for the Propagation of the Faith, Incorporated (f/k/a Center for Mission) 777 Forest Street St. Paul, Minnesota 55106 | Continental Casualty Company policy number RDU9799786 (8/17/66-8/17/69); American Casualty Company of Reading, PA policy number 1861802 (6/1-8/1/74);  International policy number GA114938 (8/1/67-8/1/70); Hartford Accident and Indemnity Company policy 41 C 549216 (8/1/70-8/1/73); American Home policy numbers CE2598055 (8/17/69-8/17/72) and BE3374208 (8/17/72-8/17/75); Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company)  policy numbers 37AL188420 (8/1/73 - 8/1/74), 37SM802875FCA (8/1/74 - 8/1/77),  37SM802875FCA7 (8/1/77 - 8/1/78), 37SM10285FCA (8/1/78 - 8/1/79), 37SM15868FCA (8/1/79 - 7/1/80), 37XS1768WCA (8/17/75 - 8/17/76), 37XS2046WCA (8/17/76 - 8/17/77), 37XS2401WCA (8/17/77 - 8/17/78), 37XS2831WCA (8/17/78 - 7/1/79), 37XS3399WCA (7/1/79 - 9/1/80); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| St. Wilhelmina's Home Not separately incorporated from Archdiocese | Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55); Fireman's Fund policy numbers GAC312672 (8/1/55-8/1/58) and CL331931 (8/1/58-8/1/61); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Tabernacle Society Not separately incorporated from Archdiocese | Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) policy number 37AL188420 (8/1/73 - 8/1/74); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |

N-14
-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| Vocation Center<br>Not separately incorporated from Archdiocese | Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) policy numbers 37SM10285FCA (8/1/78 - 8/1/79), 37SM15868FCA (8/1/79 - 7/1/80), 37XS2401WCA (8/17/77 - 8/17/78),  37XS2831WCA (8/17/78 - 7/1/79), and 37XS3399WCA (7/1/79 - 9/1/80); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| The Chancery Office<br>Not separately incorporated from Archdiocese | Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) policy number 37SM10285FCA (8/1/78 - 8/1/79) |
| Members of the Archdiocese undertaking special responsibilities while acting within the scope of their duties | Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) 37SM802875FCA7 (8/1/77 - 8/1/78) |
| Community Chest and Council of Hennepin County and successors in interest but "solely as respects the ownership, maintenance or use of the premises located at 46th Street and 10th Avenue South, Minneapolis, Minnesota (known as the Minneapolis Catholic Orphan Asylum) all operations necessary or incidental thereto, except operations on other premises owned, rented or controlled by the additional insured..., is included as an additional insured under this policy as though named in Item 1 of the declarations" of Fidelity and Casualty Company of New York policy number XP128258. | Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| The City of St. Paul "but only as respects the event known as the Catholic Education Congress to be held November 8 and November 9, 1974" according to American Home policy BE3374208 | American Home policy number BE3374208 (8/17/72-8/17/75); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Clapp Thomsson Company, but only as respects to location #21 of International policy number GA114938<br>Dissolved in 1998 | International policy number GA114938(8/1/67-8/1/70) ; and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |

N-15
-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| Special School District #1 of Minneapolis Minnesota "but only as respects Automobile Liability" according to American Home policy number BE3374208 | American Home policy number BE3374208 (8/17/72-8/17/75); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| St. Paul Public School District ("but only in respect of liability arising out of the operations of one school bus operated by the Corpus Christi School Bus Co.") | St. Paul Surplus Lines Insurance Company policy number SUO 5500535 (9/1/86-9/1/87) |
| Christian Brothers of the Midwest (n/k/a The Brothers of the Christian Schools) Under Fireman's Fund policy number CL331931 Certificate #3, Cretin High School, 495 Hamline Avenue, St. Paul, Minnesota; Certificate #4 DeLaSalle High School, 25-30 West Island Avenue, Minneapolis Minnesota; and Certificate #8 James J. Hill High School, Maplewood, MN 7650 S. County Line Road Burr Ridge, IL 60527 | Fireman's Fund policy number CL331931 (8/1/1958-8/1/1961) |
| Crosier Fathers (now known as Crosier Fathers of Onamia) "but only as respects location #41 on Schedule 1" of International policy number GA114938 104 Crosier Drive N. PO Box 500 Onamia, MN 56359 | International policy number GA114938 (8/1/1967-8/1/1970); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Cretin-Derham Hall (f/k/a Cretin High School) 550 S. Albert Street St. Paul, MN 55116 | Fidelity and Casualty Company of New York Policy No. XP128258/74084 (8/1/52-8/1/55); Fireman's Fund Ins. Co. policy numbers GAC312672 (8/1/55-8/1/58) and CL331931(8/1/58-8/1/61); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |

N-16

-

CORE/3003233.0002/140935489.11

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| De La Salle High School<br>1 De La Salle Drive,<br>Minneapolis, MN 55401 | Fidelity and Casualty Company of New York Policy No. XP128258/74084 (8/1/52-8/1/55); Fireman's Fund Ins. Co. policy numbers GAC312672 (8/1/55-8/1/58) and CL331931 (8/1/58-8/1/61); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Diocesan Teachers' College and successors in interest | Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55); Fireman's Fund policy numbers GAC312672 (8/1/55-8/1/58) and CL331931 (8/1/58-8/1/61); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Hill-Murray School (f/k/a Hill High School)<br>2625 Larpenteur Avenue E.<br>Maplewood, MN 55109 | Fireman's Fund policy numbers GAC312672 (8/1/55-8/1/58) and CL331931 (8/1/58-8/1/61); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |

N-17

-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| Nazareth Hall College & Seminary, Inc. Dissolved in 1997 | Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55); Continental Casualty Company policy number RDU9799786 (8/17/66-8/17/69);  Fireman's Fund policy number CL331931 (8/1/58-8/1/61); International policy number GA114938 (8/1/67-8/1/70); Hartford Accident and Indemnity Company policy 41 C 549216 (8/1/70-8/1/73); American Home policy numbers CE2598055 (8/17/69-8/17/72), and  BE3374208 (8/17/72-8/17/75); Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) policy numbers 37SM10285FCA (8/1/78 - 8/1/79), 37SM15868FCA (8/1/79 - 7/1/80), 37XS1768WCA (8/17/75 - 8/17/76), 37XS2046WCA (8/17/76 - 8/17/77), 37XS2401WCA (8/17/77 - 8/17/78), 37XS2831WCA (8/17/78 - 7/1/79), and 37XS3399WCA (7/1/79 - 9/1/80); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| Regina High School (Not separately incorporated from Archdiocese) and Dominican Sisters of Sinsinawa solely in connection with Regina High School. | International policy number GA114938 (8/1/67-8/1/70); American Home Policy Number BE3374208 (8/17/72-8/17/75); Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company)  policy numbers 37XS1768WCA (8/17/75 - 8/17/76), 37XS2046WCA (8/17/76 - 8/17/77), 37XS2401WCA (8/17/77 - 8/17/78), 37XS2831WCA (8/17/78 - 7/1/79), and 37XS3399WCA (7/1/79 - 9/1/80); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |

N-18
-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| The Saint Paul Seminary<br>2660 Summit Avenue<br>St. Paul, Minnesota 55105 | Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company) policy number 37SM802875FCA7 (8/1/77 - 8/1/78); and any other policy insuring or allegedly insuring such entities that was issued to the Archdiocese and also insures the Archdiocese as a Named Insured with an effective period expiring on or before September 1, 1980 |
| The Church of the Annunciation of Hazelwood, Minnesota<br>4996 Hazelwood Ave<br>Northfield, MN 55057 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61) |
| The Church of the Ascension of Norwood, Minnesota<br>323 Reform St N<br>Norwood Young America, MN 55368 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61) |
| Church of St. Peter of North St. Paul, including St. Mary's Cemetery (f/k/a Ascension Cemetery)<br>2600 Margaret St N<br>North St. Paul, MN 55109 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61); International policy number GA114938 (8/1/67-8/1/70) |
| The Cathedral of Saint Paul (individually and successor in interest to Cathedral School)<br>239 Selby Ave<br>St. Paul, MN 55102 | Cathedral: Fireman's Fund policy number CL331931 (8/1/58-8/1/61); American Home policy numbers CE2598055 (8/17/69-8/17/72) and BE3374208 (8/17/72-8/17/75); Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company)  policy numbers 37AL188420 (8/1/73 - 8/1/74), 37SM802875FCA (8/1/74 - 8/1/77), 37SM802875FCA7 (8/1/77 - 8/1/78), 37SM10285FCA (8/1/78 - 8/1/79), 37SM15868FCA (8/1/79 - 7/1/80), 37XS1768WCA (8/17/75 - 8/17/76), 37XS2046WCA (8/17/76 - 8/17/77), 37XS2401WCA (8/17/77 - 8/17/78), 37XS2831WCA (8/17/78 - 7/1/79), and 37XS3399WCA (7/1/79 - 9/1/80)<br>Cathedral School: Travelers Casualty and Surety Company (formerly known as Aetna Casualty and Surety Company)  policy number 37AL188420 (8/1/73 - 8/1/74) |
| The Church of Corpus Christi of Saint Paul<br>2131 Fairview Ave N<br>Roseville, MN 55113 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61) |

N-19

-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| The Church of the Immaculate Conception of Columbia Heights<br>4030 Jackson St NE<br>Columbia Heights, MN 55421 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61) |
| The Church of Saint Thomas More (as successor to Immaculate Heart of Mary, St. Paul and St. Luke, St. Paul)<br>1079 Summit Ave<br>St. Paul, MN 55105 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61); International policy number GA114938 (8/1/67-8/1/70) |
| The Church of Our Lady of Grace, in Edina, Minnesota (as successor to Most Holy Trinity, St. Louis Park)<br>5071 Eden Ave<br>Edina, MN 55436 | International policy number GA114938 (8/1/67-8/1/70) |
| The Church of the Nativity of Our Lord<br>1900 Wellesley Ave<br>St. Paul, MN 55105 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61); International policy number GA114938 (8/1/67-8/1/70) |
| The Church of Saint Anne – Saint Joseph Hien<br>2627 Queen Ave N<br>Minneapolis, MN 55411 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61) |
| The Church of St. Bonaventure, of Bloomington, Minnesota<br>901 90th St E<br>Bloomington, MN 55420 | International policy number GA114938 (8/1/67-8/1/70) |
| The Church of Saint Albert the Great, of Minneapolis, Minn. (as successor to St. Elizabeth, Minneapolis)<br>2836 33rd Ave S<br>Minneapolis, MN 55406 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61) |
| The Church of St. Francis of Assisi<br>16770 13th St S<br>Lake St Croix Beach, MN 55043 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61) |
| The Church of Saint Joseph of West Saint Paul,Minnesota<br>1154 Seminole Ave<br>West St. Paul, MN 55118 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61) |
| The Church of Our Lady of Peace (as successor to St. Kevin, Minneapolis)<br>5426 12th Ave S<br>Minneapolis, MN 55417 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61) |

N-20
-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| The Church of St. Leonard of Port Maurice, of Minneapolis, Minnesota<br>3949 Clinton Ave S<br>Minneapolis, MN 55409 | International policy number GA114938 (8/1/67-8/1/70) |
| The Church of St. Patrick of Edina, Minnesota (as successor to St. Martin, Minneapolis)<br>6820 St. Patrick's Lane<br>Edina, MN 55439 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61) |
| The Church of St. Mary, of St. Paul Minnesota<br>261 8th St E<br>St. Paul, MN 55101 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61) |
| St. Nickolaus Church of New Market Scott County Minnesota (also known as St. Nicholas)<br>51 Church St<br>New Market, MN 55054 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61) |
| The Church of St. Odilia, of Shoreview, Minnesota<br>3495 Victoria St N<br>Shoreview, MN 55126 | International policy number GA114938 (8/1/67-8/1/70) |
| The Church of St. Patrick of Cedar Lake, Minnesota and The Church of St. Catherine of Spring Lake, Minnesota<br>24425 Old Highway 13 Blvd<br>Jordan, MN 55352 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61) |
| The Church of St. Peter Claver Minnesota<br>375 Oxford St N<br>St. Paul, MN 55104 | Fidelity and Casualty Company of New York policy number XP128258/74084 (8/1/52-8/1/55) |
| The Church of St. Peter, of Mendota, Minnesota<br>1405 Hwy 13<br>Mendota, MN 55150 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61) |
| The Church of Saint Richard, of Richfield, Minnesota7540 Penn Ave S<br>Richfield, MN 55423 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61) |
| The Church of St. Rita of Cottage Grove, Minnesota<br>8694 80th St S<br>Cottage Grove, MN 55016 | International policy number GA114938 (8/1/67-8/1/70) |
| The Church of Lumen Christi (as successor to St. Therese, St. Paul)<br>2055 Bohland Ave.<br>St. Paul, MN 55116 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61) |

N-21
-

| Entity Name, Address and Insured Interest | Policy Number(s) and Insured Year(s) |
|---|---|
| The Church of the Blessed Sacrament of St. Paul (as successor to St. Thomas the Apostle, St. Paul)<br>2119 Stillwater Ave<br>St. Paul, MN 55119 | Fireman's Fund policy number CL331931 (8/1/58-8/1/61) |

N-22

-

**SCHEDULE 1**

**LIST OF CLASS 3 CLAIMANTS**

| Entity | Address | GIF Participant | AMBP Participant |
|---|---|---|---|
| Academy of Holy Angels | 6600 Nicollet Ave S<br>Richfield, MN 55423 | | X |
| The Church of All Saints of Lakeville, Minnesota, including the parish school | 19795 Holyoke Ave<br>Lakeville, MN 55044 | X | X |
| The Church of All Saints of Minneapolis | 435 4th St. NE<br>Minneapolis, MN 55413-2037 | X | X |
| The Church of the Annunciation of Minneapolis, including the parish school | 509 W 54th St.<br>Minneapolis, MN 55419-1818 | X | X |
| The Church of the Annunciation of Hazelwood, Minnesota | 4996 Hazelwood Ave.<br>Northfield, MN 55057-4255 | X | X |
| The Church of the Ascension of Minneapolis, Minnesota, including the parish school | 1723 Bryant Ave N<br>Minneapolis, MN 55411 | X | X |
| The Church of the Ascension of Norwood, Minnesota | 323 Reform Street N<br>Norwood, MN 55368 | X | X |
| The Church of the Assumption | 51 West. 7th Street<br>St. Paul, MN 55102 | X | X |
| The Church of the Assumption of Richfield, Minnesota | 305 East. 77th St.<br>Richfield, MN 55423 | X | X |
| Basilica of St. Mary of Minneapolis | 88 17th St. N<br>P.O. Box 50010<br>Minneapolis, MN 55405 | X | X |
| The Church of the Blessed Sacrament of St. Paul | 2119 Stillwater Ave<br>St. Paul, MN 55119 | X | X |
| Blessed Trinity Catholic School of Richfield, Minnesota | 6720 Nicollet Ave S<br>Richfield, MN 55423 | X | X |
| Carondelet Catholic School | 3210 W 51St. St.<br>Minneapolis, MN 55410 | X | X |
| The Cathedral of Saint Paul | 239 Selby Ave<br>St. Paul, MN 55102-1891 | X | X |
| The Catholic Cemeteries | 2105 Lexington Ave South<br>Mendota Heights, MN 55120 | X | X |

| Entity | Address | GIF Participant | AMBP Participant |
|---|---|---|---|
| Catholic Community Foundation of Minnesota | 2610 University Ave W Court West Suite 500 St. Paul, MN 55114 | X | X |
| Catholic Finance Corporation | 5826 Blackshire Path Inver Grove Heights, MN 55076 | X | X |
| Catholic Senior Services, Inc. c/o St. Therese of New Hope | 8000 Bass Lake Rd New Hope, MN 55428 | X | X |
| Catholic Services Appeal Foundation | 12805 Hwy 55 #210 Plymouth, MN 55441 | | X |
| The Church of Christ the King of Minneapolis | 5029 Zenith Ave S Minneapolis, MN 55410 | X | X |
| The Church of SS. Peter and Paul of Medina, Minnesota | 145 Railway Street P.O. Box 96 Loretto, MN 55357 | X | X |
| Community of Saints Regional Catholic School | 335 East Hurley Street West St. Paul, MN 55118 | X | X |
| The Companions of Christ | 2137 Marshall Avenue Saint Paul, MN 55104 | X | |
| The Church of Corpus Christi of Saint Paul | 2131 Fairview Ave N Roseville, MN 55113 | X | X |
| The Catholic Church of Divine Mercy of Faribault, including the parish school and cemetery | 139 Mercy Drive Faribault, MN 55021 | X | X |
| The Church of The Epiphany of Coon Rapids, Minnesota, including the parish school | 1900 - 111th Ave NW Coon Rapids, MN 55433-4298 | X | X |
| Faithful Shepherd Catholic School | 3355 Columbia Drive Eagan, MN 55121-4202 | X | X |
| Franciscan Brothers of Peace, Incorporated | 1289 LaFond Ave St. Paul, MN 55104 | | X |
| Frassati Catholic Academy | 4690 Bald Eagle Ave White Bear Lake, MN 55110 | X | X |
| The Church of Gichitwaa Kateri | 3045 Park Ave Minneapolis, MN 55407 | X | X |
| The Church of the Good Shepherd, of Minneapolis, Minnesota, including parish school | 145 Jersey Ave S Golden Valley, MN 55426 | X | X |

Schedule 1-2

-

CORE/3003233.0002/140935489.14

| Entity | Address | GIF Participant | AMBP Participant |
|---|---|---|---|
| The Church of the Guardian Angels of Oakdale, Minnesota | 8260 4th St. N<br>Oakdale, MN 55128 | X | X |
| The Church of the Guardian Angels, of Chaska, Minn. | 215 W 2nd St.<br>Chaska, MN 55318-1898 | X | X |
| Highland Catholic School | 2017 Bohland Ave<br>St. Paul, MN 55116 | X | X |
| The Church of the Holy Childhood, St. Paul, Minnesota | 1435 Midway Parkway<br>St. Paul, MN 55108-2419 | X | X |
| The Church of the Holy Cross of Minneapolis, Minnesota | 1621 University Avenue NE<br>Minneapolis, MN 55413 | X | X |
| Holy Cross Catholic School | 6100 37th St. W<br>Webster, MN 55088 | X | X |
| The Church of the Holy Family of St. Louis Park, including the parish school | 5900 West Lake St.<br>St. Louis Park, MN 55416 | X | X |
| The Church of the Holy Name of Minneapolis | 3637 - 11th Ave S<br>Minneapolis, MN 55407 | X | X |
| The Church of the Holy Name of Jesus of Medina, Minnesota, including the parish school | 155 Cty Rd 24<br>Wayzata, MN 55391 | X | X |
| Dominican Fathers Holy Rosary Church & School | 2424 - 18th Ave S<br>Minneapolis, MN 55404 | | X |
| The Church of the Holy Spirit of St. Paul, Minnesota, including the parish school | 515 Albert St. S<br>St. Paul, MN 55116 | X | X |
| The Church of the Holy Trinity | 308 4th St N<br>Goodhue, MN 55027 | X | X |
| The Church of the Holy Trinity of South St. Paul, including the parish school | 749 - 6th Ave S<br>South St. Paul, MN 55075 | X | X |
| The Church of the Holy Trinity of Waterville, Minnesota | 506 Common Street<br>Waterville, MN 56096 | X | X |
| The Church of the Immaculate Conception of Watertown, Minnesota | 109 Angel Ave. NW<br>P.O. Box 548<br>Watertown, MN 55388 | X | X |

Schedule 1-3
-

| Entity | Address | GIF Participant | AMBP Participant |
|---|---|---|---|
| The Church of the Immaculate Conception of Columbia Heights, including the parish school | 4030 Jackson St. NE Columbia Heights, MN 55421 | X | X |
| The Church of the Immaculate Conception | 116 Alabama St. SE P.O. Box 169 Lonsdale, MN 55046-0169 | X | X |
| The Church of the Immaculate Conception of Marysburg, Minnesota | 27528 Patrick Street Madison Lake, MN 56063 | X | X |
| The Church of the Immaculate Heart of Mary of Glen Lake, Minnesota | 13505 Excelsior Blvd. Minnetonka, MN 55345-4999 | X | X |
| The Church of the Incarnation of Minneapolis, including Sargado Corazon de Jesus | 3817 Pleasant Ave. S. Minneapolis, MN 55409-1228 | X | X |
| The Church of Lumen Christi | 2055 Bohland Ave. St. Paul, MN 55116 | X | X |
| The Church of Mary, Mother of the Church of Burnsville, Minnesota | 3333 Cliff Road East. Burnsville, MN 55337 | X | X |
| The Catholic Church of Mary Queen of Peace, including the parish school | 21304 Church Ave Rogers, MN 55374 | X | X |
| The Church of the Maternity of the Blessed Virgin, Saint Paul, Minnesota, including parish school | 1414 North Dale Street St. Paul, MN 55117 | X | X |
| Minnesota Catholic Conference | 475 University Ave W St. Paul, MN 55103 | | X |
| The Church of the Most Holy Redeemer of Montgomery, Minnesota, including the parish school | 206 Vine Ave West. Montgomery, MN 56069 | X | X |
| The Church of the Most Holy Trinity of Wesely, Minnesota | 4939 Washington St. Veseli, MN 55046-4007 | X | X |
| The Church of The Nativity, of Cleveland, Minnesota, including the parish school | 200 West Main St. PO Box 187 Cleveland, MN 56017-0187 | X | X |

Schedule 1-4

-

CORE/3003233.0002/140935489.14

| Entity | Address | GIF Participant | AMBP Participant |
|---|---|---|---|
| The Church of the Nativity of the Blessed Virgin, Oxboro, Minnesota, including parish school | 9900 Lyndale Ave S Bloomington, MN 55420-4797 | X | X |
| The Church of the Nativity of Our Lord, including the parish school | 1900 Wellesley Ave. St. Paul, MN 55105 | X | X |
| Notre Dame Academy | 13505 Excelsior Blvd Minnetonka, MN 55345 | X | X |
| The Church of Our Lady of Grace, in Edina, Minnesota, including the parish school | 5071 Eden Ave. Edina, MN 55436 | X | X |
| The Church of Our Lady of Guadalupe of Saint Paul, Minnesota | 401 Concord St. St. Paul, MN 55107 | X | X |
| The Church of Our Lady of Lourdes of St. Anthony, Minnesota | 1 Lourdes Place Minneapolis, MN 55414-1062 | X | X |
| The Church of Our Lady of Mount Carmel of Minneapolis | 701 Fillmore St. NE Minneapolis, MN 55413-2525 | X | X |
| The Church of Our Lady of Peace, including the parish school | 5426 - 12th Ave. S Minneapolis, MN 55417 | X | X |
| The Church of Our Lady of the Lake of Mound, Minn., including the parish school | 2385 Commerce Blvd. Mound, MN 55364-1496 | X | X |
| The Church of Our Lady of the Prairie, Belle Plaine, including the parish school | 212 N Chestnut St. Belle, Plaine, MN 56011 | X | X |
| The Church of Our Lady of Victory of Minneapolis | 5155 Emerson Ave N Minneapolis, MN 55430 | X | X |
| Parish of Saints Joachim and Anne of Shakopee, Minnesota, including parish school and cemetery | 2700 17th Ave E Shakopee, MN 55379 | X | X |
| The Church of Pax Christi of Eden Prairie | 12100 Pioneer Trail Eden Prairie, MN 55347-4208 | X | X |
| St. John Paul II Catholic Preparatory School | 1630 - 4th St. NE Minneapolis, MN 55413 | X | X |

Schedule 1-5
-

| Entity | Address | GIF Participant | AMBP Participant |
|---|---|---|---|
| The Church of the Presentation of the Blessed Virgin Mary of Saint Paul, including the parish school | 1725 Kennard St. Maplewood, MN 55109 | X | X |
| Risen Christ Catholic School | 1120 East. 37th St. Minneapolis, MN 55407 | X | X |
| The Church of the Risen Savior of Apple Valley | 1501 East. Cty. Rd 42 Burnsville, MN 55306-4723 | X | X |
| The Church of the Sacred Heart of Rush City Minnesota | 425 Field Avenue P.O. Box 45 Rush City, MN 55069 | X | X |
| The Church of the Sacred Heart, including the parish school | 4087 West Broadway Robbinsdale, MN 55422-2293 | X | X |
| The Church of the Sacred Heart in St. Paul | 840 East. 6th Street St. Paul, MN 55106 | X | X |
| The Society for the Propagation of the Faith, Incorporated (a/k/a Center for Mission) | 328 Kellogg Blvd . West St. Paul, MN 55102 | X | X |
| The Church of St. Cyril of Minneapolis, Minnesota | 1315 2nd St. NE Minneapolis, MN 55413-1131 | X | X |
| The Church of St. Adalbert, of St. Paul, Minnesota | 265 Charles Ave. St. Paul, MN 55103 | X | X |
| The Church of St. Agatha of Vermillion, Minnesota | 3700 160 St. E. Rosemount, MN 55068-2007 | X | |
| The Church of St. Agnes of St. Paul, Minnesota, including the parish school | 535 Thomas Ave. St. Paul, MN 55103 | X | X |
| The Church of Saint Albert | 11400 57th St. NE, P.O. Box 127 Albertville, MN 55301-0127 | X | X |
| The Church of Saint Albert the Great, of Minneapolis, Minn. | 2836  33rd Ave S Minneapolis, MN 55406 | X | X |
| The Church of St. Alphonsus, of Brooklyn Center, Minnesota, including the parish school | 7025 Halifax Ave N Brooklyn Center, MN 55429-1394 | X | X |

Schedule 1-6

-

| Entity | Address | GIF Participant | AMBP Participant |
|---|---|---|---|
| The Church of Saint Ambrose of Woodbury, including the parish school | 4125 Woodbury Drive Woodbury, MN 55129 | X | X |
| The Church of St. Andrew of Elysian, Minnesota | 305 Park Ave NE PO Box 261 Elysian, MN 56028-0261 | X | |
| The Church of St. Andrew Kim | 1850 Mississippi River Blvd. S St. Paul, MN 55116 | X | X |
| The Church of St. Anne of Hamel, Minnesota | 200 Hamel Road P.O. Box 256 Hamel, MN 55340 | X | X |
| The Church of St Anne of LeSueur, Minnesota, including the parish school | 511 N 4th St. Le Sueur, MN 56058 | X | X |
| The Church of Saint Anne – Saint Joseph Hien | 2627 Queen Ave N Minneapolis, MN 55411 | X | X |
| The Church of Saint Bartholomew of Wayzata, including the parish school | 630 East. Wayzata Blvd. Wayzata, MN 55391 | X | X |
| The Church of Saint Bernard of St Paul Minnesota | 1160 Woodbridge St. St. Paul, MN 55117-4491 | X | X |
| The Church of St. Bernard, of Benton, Minnesota, including the parish school | 212 Church St. E Cologne, MN 55322 | X | X |
| The Church of St. Bonaventure, of Bloomington, Minnesota | 901 E 90th St. Bloomington, MN 55420 | X | X |
| The Church of St. Boniface of St. Bonifacius, Minn. | 4025 Main St. P.O. Box 68 St. Bonifacius, MN 55375 | X | X |
| The Church of St. Boniface | 629 - 2nd Street NE Minneapolis, MN 55413 | X | X |
| The Church of Saint Bridget of Minneapolis | 3811 Emerson Ave N Minneapolis, MN 55412 | X | X |
| The Church of St. Bridget of Sweden, of Lindstrom, Minnesota | 13060 Lake Blvd P.O. Box 754 Lindstrom, MN 55045 | X | X |
| The Church of St. Casimir of St. Paul, Minnesota | 934 East. Geranium Ave St. Paul, MN 55106 | X | X |
| The Church of St. Catherine of Spring Lake, Minnesota | 24425 Old Highway 13 Jordan, MN 55352 | X | |

Schedule 1-7

-

| Entity | Address | GIF Participant | AMBP Participant |
|---|---|---|---|
| The Church of St. Cecilia of St. Paul | 2357 Bayless Place St. Paul, MN 55114 | X | X |
| The Church of St. Charles Borromeo of Minneapolis, Minnesota, including the parish school | 2739 Stinson Blvd Minneapolis, MN 55418-3214 | X | X |
| The Church of Saint Charles, Bayport, Minnesota | 409 N 3rd St. Bayport, MN 55003 | X | X |
| The Church of Saint Columba of St. Paul, Minn. | 1327 LaFond Avenue St. Paul, MN 55104 | X | X |
| St. Croix Catholic School | 621 S 3rd St. Stillwater, MN 55082 | X | X |
| The Church of St Dominic of Northfield Minnesota | 216 Spring St. N Northfield, MN 55057 | X | X |
| The Church of St. Edward, of Bloomington, Minnesota | 9401 Nesbitt Ave S Bloomington, MN 55437 | X | X |
| The Church of St. Elizabeth Ann Seton, Hastings, Minnesota, including parish school | 2035 W 15th St. Hastings, MN 55033-9294 | X | X |
| The Church of Saint Frances Xavier Cabrini of Minneapolis, Minnesota | 1500 Franklin Ave SE Minneapolis, MN 55414 | X | X |
| The Church of St. Francis de Sales of St. Paul, Minnesota | 650 Palace Ave St. Paul, MN 55102 | X | X |
| The Church of St. Francis of Assisi | 16770 13th St. S Lake St. Croix Beach, MN 55043-9757 | X | X |
| The Church of St. Francis of Buffalo, Minnesota | 300 1st Ave. NW Buffalo, MN 55313 | X | X |
| The Church of Saint Francis Xavier of Franconia, Minnesota | 25267 Redwing Ave Shafer, MN 55074 | X | |
| The Parish of Saint Gabriel the Archangel of Hopkins, Minnesota | 6 Interlochen Road Hopkins, MN 55343 | X | X |
| The Church of St. Genevieve of Centerville, Minnesota | 7087 Goiffon Road Centerville, MN 55038-9719 | X | X |
| The Church of Saint George of Long Lake | 133 North Brown Road Long Lake, MN 55356 | X | X |

Schedule 1-8
-

| Entity | Address | GIF Participant | AMBP Participant |
|---|---|---|---|
| The Church of St. Gerard | 9600 Regent Ave. N<br>Brooklyn Park, MN 55443 | X | X |
| The Church of Saint Gregory | 38725 Forest Blvd.<br>P.O. Box 609<br>North Branch, MN 55056-0609 | X | X |
| The Church of Saint Hedwig of Minneapolis | 129 29th Ave. NE<br>Minneapolis, MN 55418 | X | X |
| The Church of St. Helena of Minneapolis, including parish school | 3204 E 43rd St.<br>Minneapolis, MN 55406 | X | X |
| The Church of St. Henry of Monticello, Minn | 1001 7th St. E<br>Monticello, MN 55362 | X | X |
| The Church of Saint Henry of Sharon, Minnesota | 165 N Waterville Ave.<br>Le Center, MN  56057 | X | |
| The Church of Saint Hubert of Chanhassen Minn, including parish school | 8201 Main St.<br>Chanhassen, MN 55317-9647 | X | X |
| The Church of St. Ignatius of French Lake, Minnesota | 35 Birch St. E.<br>P.O. Box 126<br>Annandale, MN 55302-0126 | X | X |
| The Church of St. Jerome, Maplewood, Minnesota, including parish school | 380 Roselawn Ave. E<br>Maplewood, MN 55117-2097 | X | X |
| The Church of Saint Joan of Arc in Minneapolis | 4537 - 3rd Ave. S<br>Minneapolis, MN 55409 | X | X |
| The Church of St. John Neumann | 4030 Pilot Knob Road<br>Eagan, MN 55122-1898 | X | X |
| The Church of St. John Baptist | 835 - 2nd Ave. NW<br>New Brighton, MN 55112 | X | X |
| The Church of St. John the Baptist of Dayton Minnesota | 18380 Columbus Street<br>Dayton, MN 55327 | X | X |
| Church of St. John the Baptist of Excelsior, Minnesota, including parish school | 680 Mill Street<br>Excelsior, MN 55331-3243 | X | X |
| The Church of Saint John the Baptist of Jordan Minn., including parish school | 313 East Second Street<br>Jordan, MN 55352-1447 | X | X |
| The Church of St. John the Baptist of Byrnesville, Minnesota, including parish school | 4625 W 125th St.<br>Savage, MN 55378-1357 | X | X |

Schedule 1-9
-

| Entity | Address | GIF Participant | AMBP Participant |
|---|---|---|---|
| The Church of St. John of Vermillion Minnesota, including parish school | 106 W Main Street<br>P.O. Box 8<br>Vermillion, MN  55085-0008 | X | X |
| St. John's Church of Little Canada, Minnesota | 380 East Little Canada Road<br>Little Canada, MN 55117-1699 | X | X |
| The Church of Saint John Vianney in South Saint Paul, Minnesota | 789 - 17th Ave N<br>South St. Paul, MN 55075-1497 | X | X |
| St. John Vianney Seminary | 2115 Summit Ave #5024<br>St. Paul, MN 55105-1095 | | X |
| Church of St. Joseph of Rice Lake, Minnesota | 171 Elm Street<br>Lino Lakes, MN 55014 | X | X |
| The Church of St. Joseph, of Miesville, Minnesota, in the Township of Douglas, including parish school | 23955 Nicolai Ave E<br>Hastings, MN 55033 | X | X |
| The Church of St. Joseph, of Red Wing Minnesota | 426  8th St.<br>Red Wing, MN 55066 | X | X |
| The Church of St. Joseph, of Rosemount Minnesota, including parish school | 13900 Biscayne Ave W<br>Rosemount, MN 55068 | X | X |
| The Church of Saint Joseph of Taylors Falls | 490 Bench St<br>P.O. Box 234<br>Taylors Falls, MN 55084-0234 | X | X |
| The Church of Saint Joseph of West Saint Paul, Minnesota | 1154 Seminole Ave W<br>West. St. Paul, MN 55118-2097 | X | X |
| The Church of Saint Joseph of Waconia, Minn., including parish school | 41 E First St.<br>Waconia, MN 55387-1597 | X | X |
| The Church of St. Joseph | 8701 - 36th Ave N<br>New Hope, MN 55427-1769 | X | X |
| The Church of St. Joseph the Worker, Maple Grove, Minnesota | 7180 Hemlock Lane<br>Maple Grove, MN 55369-5597 | X | X |
| The Church of St. Jude of the Lake in the Town of Lincoln, including parish school | 700 Mahtomedi Ave<br>Mahtomedi, MN 55115-1698 | X | X |
| The Church of Saint Katharine Drexel, Ramsey, Minnesota | 7101 143rd Ave NW<br>Ramsey, MN 55303 | X | X |

Schedule 1-10

-

| Entity | Address | GIF Participant | AMBP Participant |
|---|---|---|---|
| The Church of St. Lawrence of Minneapolis, Minnesota | 1203 5th St. SE Minneapolis, MN 55414 | X | X |
| The Church of St. Leonard of Port Maurice, of Minneapolis, Minnesota | 3949 Clinton Ave S Minneapolis, MN 55409-1635 | X | X |
| The Church of St. Louis, of St. Paul Minnesota | 506 Cedar St. St. Paul, MN 55101 | X | X |
| The Church of St. Luke of Clearwater, Minnesota | 17545 Huber Ave NW Clearwater, MN 55320 | X | X |
| The Church of Saint Margaret Mary, of Minneapolis, Minnesota | 2323 Zenith Ave N Golden Valley, MN 55422 | X | X |
| The Church of St. Mark of St. Paul, Minnesota, including parish school | 2001 Dayton Ave St. Paul, MN 55104 | X | X |
| The Church of St. Mary, of New Trier, Minnesota | 8433 - 239th Street New Trier, MN 55031 | X | X |
| The Church of St. Mary of Stillwater | 423 South Fifth St. Stillwater, MN 55082 | X | X |
| The Church of St. Mary, of St. Paul Minnesota | 261 East. 8th Street St. Paul, MN 55101 | X | X |
| The Church of St Mary of Waverly Minnesota | 607 Elm Ave P.O. Box 278 Waverly, MN 55390 | X | X |
| The Church of St. Mary of Le Center, Minnesota | 165 N Waterville Ave Le Center, MN 56057 | X | X |
| The Church of St. Mary, Minnesota (also known as the Church of St. Mary of Czestochowa) | 1867 95th St. SE Delano, MN  55328-8208 | X | X |
| The Church of St. Mary of the Lake, of White Bear, Minnesota | 4690 Bald Eagle Ave White Bear Lake, MN 55110 | X | X |
| The Church of St. Mary of the Lake, of Medicine Lake, Minnesota | 105 Forestview Lane North Plymouth, MN 55441-5999 | X | X |
| The Church of St. Mathias of Hampton, Minnesota | 23315 Northfield Blvd. Hampton, MN 55031 | X | X |
| The Church of St. Matthew of St. Paul, Minnesota | 490 Hall Ave St. Paul, MN 55107-2845 | X | X |

Schedule 1-11
-

| Entity | Address | GIF Participant | AMBP Participant |
|---|---|:---:|:---:|
| The Church of Saint Maximilian Kolbe, including parish school | 204 South River St. PO Box 470 Delano, MN 55328 | X | X |
| The Church of St. Michael of Farmington, Minnesota | 22120 Denmark Ave Farmington, MN 55024 | X | X |
| The Church of St. Michael, of Stillwater Minnesota | 611 South 3rd Street Stillwater, MN 55082 | X | X |
| The Church of St. Michael of St. Paul Minnesota | 337 East Hurley Street W. St. St. Paul, MN 55118 | X | X |
| The Church of St. Michael of Prior Lake, including parish school | 16311 Duluth Ave SE Prior Lake, MN 55372 | X | X |
| The Church of St. Michael, of Frankfort, Minnesota | 11300 Frankfort Pkwy NE St. Michael, MN 55376 | X | X |
| The Church of Saint Michael of Kenyon, Minnesota | 108 Bullis St. Kenyon, MN 55946-1156 | X | X |
| St. Michael Cemetery Bayport | 409 Third St. N Bayport, MN  55003-1044 | X | |
| The Church of St. Michael, of Pine Island Minnesota | 451 5th St. SW Pine Island, MN 55963 | X | X |
| St. Nickolaus Church of New Market Scott County Minnesota | 51 Church St P.O. Box 9 Elko New Market, MN 55020-0009 | X | X |
| The Church of Saint Nicholas of Carver Minn. | 412 4th St W P.O. Box 133 Carver, MN 55315-0133 | X | X |
| The Church of St. Odilia, of Shoreview, Minnesota, including parish school | 3495 Victoria St. N Shoreview, MN 55126 | X | X |
| St. Olaf's Catholic Church of Minneapolis, Minnesota | 215 South 8th Street Minneapolis, MN 55402 | X | X |
| The Church of Saint Pascal Baylon, St. Paul, Minnesota, including parish school | 1757 Conway St. St. Paul, MN 55106-5999 | X | X |
| The Church of St. Patrick of Cedar Creek, Minnesota | 19921 Nightingale St. NW Oak Grove, MN 55011-9243 | X | X |
| The Church of St. Patrick of Inver Grove, Minnesota | 3535 - 72nd Street East Inver Grove Heights, MN 55076 | X | X |

Schedule 1-12

-

| Entity | Address | GIF Participant | AMBP Participant |
|---|---|---|---|
| The Church of St. Patrick of St. Paul Minnesota | 1095 DeSoto St. St. Paul, MN 55130 | X | X |
| The Church of St. Patrick of Edina, Minnesota | 6820 St. Patrick Lane Edina, MN 55439 | X | X |
| The Church of St. Patrick of Cedar Lake, Minnesota | 24425 Old Highway 13 Jordan, MN 55352 | X | X |
| The Church of, St. Patrick, of Shieldsville Minnesota | 7525 Dodd Road Faribault, MN 55021-7431 | X | X |
| The Church of Saint Paul of Zumbrota, Minnesota | 749 South Main Street Zumbrota, MN 55992 | X | X |
| The Church of Saint Paul | 1740 Bunker Lake Blvd. NE Ham Lake, MN 55304 | X | X |
| The Church of Saint Peter, including parish school | 1250 S Shore Dr Forest. Lake, MN 55025 | X | X |
| The Church of St. Peter of North St. Paul, including parish school | 2600 N Margaret St. North St. Paul, MN 55109 | X | X |
| The Church of St. Peter, of Mendota, Minnesota | 1405 Hwy 13 P.O. Box 50679 Mendota, MN 55150-0679 | X | X |
| The Church of Saint Peter of Richfield, Minnesota, including parish school | 6730 Nicollet Ave S Richfield, MN 55423 | X | X |
| The Church of St. Peter Claver Minnesota, including parish school | 375 Oxford St. N St. Paul, MN 55104 | X | X |
| The Church of St. Pius of Cannon Falls, Minnesota | 410 Colvill Ave W Cannon Falls, MN 55009-0367 | X | X |
| The Church of St. Pius X of White Bear, Minnesota | 3878 Highland Ave White Bear Lake, MN 55110-4299 | X | X |
| The Church of Saint Raphael in Crystal, Minnesota, including parish school | 7301 Bass Lake Road CrySt.al, MN 55428 | X | X |
| The Church of Saint Richard, of Richfield, Minnesota | 7540 Penn Ave S Richfield, MN 55423-3696 | X | X |
| The Church of St. Rita of Cottage Grove, Minnesota | 8694 - 80th St. Cottage Grove, MN 55016 | X | X |

Schedule 1-13

-

| Entity | Address | GIF Participant | AMBP Participant |
|---|---|---|---|
| The Church of Saint Rose of Lima of Rosetown, Minnesota, including parish school | 2048 Hamline Ave N Roseville, MN 55113 | X | X |
| The Church of St. Stanislaus of Saint Paul, Minnesota | 398 Superior St. St. Paul, MN 55102 | X | X |
| The Church of St. Stephen of Minneapolis, Minnesota | 2211 Clinton Ave S Minneapolis, MN 55404-3694 | X | X |
| The Church of St. Stephen, of Anoka, Minnesota, including parish school | 525 Jackson St. Anoka, MN 55303 | X | X |
| The Church of Saint Therese of Deephaven, including parish school | 18323 Minnetonka Blvd. Deephaven, MN 55391 | X | X |
| St. Thomas Academy | 949 Mendota Heights Rd. Mendota Heights, MN 55120-1426 | X | |
| The Church of Saint Thomas Aquinas in St. Paul Park, Minnesota | 920 Holley Ave St. Paul Park, MN 55071-1497 | X | X |
| The Church of St. Thomas Becket | 4455 South Robert Trail Eagan, MN 55123 | X | X |
| The Church of Saint Thomas More, including parish school | 1079 Summit Ave St. Paul, MN 55105 | X | X |
| St. Thomas More Catholic School | 1065 Summit Ave St. Paul, MN 55105 | X | X |
| The Church of St. Thomas, of Corcoran, Minnesota | 20000 County Road 10 Corcoran, MN 55340 | X | X |
| The Church of St. Thomas of Minneapolis | 2914 W 44th St. Minneapolis, MN 55410 | X | X |
| The Church of St. Timothy of Maple Lake, Minnesota, including parish school | 8 Oak Ave N Maple Lake, MN 55358 | X | X |
| The Church of Saint Timothy of Blaine | 707 - 89th Ave NE Blaine, MN 55434-2399 | X | X |
| The Church of Saint Victoria of Victoria, Minn. | 8228 Victoria Dr. Victoria, MN 55386-9692 | X | X |
| The Church of St. Vincent de Paul, of Osseo, Minnesota, including parish school | 9100 - 93rd Ave N Brooklyn Park, MN 55445-1407 | X | X |

Schedule 1-14
-

| Entity | Address | GIF Participant | AMBP Participant |
|---|---|---|---|
| The Church of St. Wenceslaus, of New Prague, Minnesota, including parish school | 215 East. Main Street New Prague, MN 56071-1837 | X | X |
| The Church of Saint William of Fridley, Minnesota | 6120 - 5th Street NE Fridley, MN 55432 | X | X |
| Transfiguration Church of Oakdale, Minnesota, including parish school | 6133 15th St. N Oakdale, MN 55128-4201 | X | X |
| Twin Cities TEC (also known as To Encounter Christ of the Archdiocese of St. Paul-Minneapolis, Minnesota, Inc.) | 337 E Hurley St. West. St. Paul, MN  55118-1605 | X | |

Schedule 1-15

-

**SCHEDULE 2**

**LIST OF CLASS 8 CLAIMANTS**

| **PARISH** | **CLAIM AMOUNT** |
|---|---|
| All Saints Lakeville | $6,981.00 |
| St. Therese Church Deephaven | $50,502.83 |
| St. Francis Cabrini Church | $52,956.10 |
| St. Anne/St. Joseph Hein Minneapolis | $496,459.89 |
| SS Cyril and Methodious Church in Minneapolis | $72,404.19 |
| St. Pius X Catholic Church | $107,211.45 |

# SCHEDULE 3

# TRADE VENDOR CLAIMS

| CREDITOR NAME AND ADDRESS | AMOUNT OF CLAIM | CREDITOR NAME AND ADDRESS | AMOUNT OF CLAIM |
|---|---|---|---|
| A P GRAPH INC 9605 GIRARD AVE S BLOOMINGTON MN 55431 | 28.22 | BEERY NOBLE, EILEEN 20 EAST ELMWOOD PLACE MINNEAPOLIS MN 55419 | 100.00 |
| ABP HARRY FLYNN CATECHETICAL 2260 SUMMIT AVE ST PAUL MN 55105 | 250.00 | BELIAN, JOHN 1635 CHATHAM AVE ARDEN HILLS MN 55112 | 300.00 |
| ACRE 1757 CONWAY STREET ST PAUL MN 55106 | 3,846.62 | BERRY COFFEE CO 14825 MARTIN DRIVE EDEN PRAIRIE MN 55344-2009 | 153.29 |
| ACUMEN PSYCHOLOGY 821 RAYMOND AVE #130C ST PAUL MN 55114 | 850.00 | BEST WESTERN PLUS KELLY IN ST PAUL 161 SAINT ANTHONY AVE SAINT PAUL MN 55103-2397 | 505.65 |
| ADVANCED FILING CONCEPTS 3761 DUNLAP ST N ARDEN HILLS MN 55112 | 140.00 | BLACKBAUD PO BOX 930256 ATLANTA GA 31193-0256 | 359.70 |
| ALL SAINTS CHURCH 435 4TH ST NE MINNEAPOLIS MN 55413-2037 | 680.00 | BOCA CHICA RESTAURANT 11 CESAR CHAVEZ ST PAUL MN 55107 | 85.02 |
| ALPHA SERVICES INDUSTRIES INC 2712 FREMONT AVE S MINNEAPOLIS MN 55408-1122 | 3,472.59 | BODY & SOUL INC 5408 MORGAN AVENUE SOUTH MINNEAPOLIS MN 55419 | 50.00 |
| AMOS PALMER, SUSAN 1717 GRAMSIE RD ARDEN HILLS MN 55112-2863 | 150.00 | BORN-SELLY, PATRICIA 4445 ALDRICH AVE S MINNEAPOLIS MN 55419 | 400.00 |
| AMSAN 13924 COLLECTION CENTER DR CHICAGO IL 60693-3924 | 381.12 | BRAUN, JANE 202 THOMPSON AVENUE EAST SAINT PAUL MN 55118 | 900.00 |
| ANCHOR PAPER CO 480 BROADWAY ST SAINT PAUL MN 55101 | 744.30 | BURI, JOHN 2285 STEWART AVE #1308 SAINT PAUL MN 55116-3154 | 100.00 |
| ARCASEARCH PO BOX 59 PAYNESVILLE MN 56352 | 694.30 | BURKE, EUGENE E 599 PORTLAND AVE ST PAUL MN 55102 | 450.00 |
| ARCIENEGA DOMINGUEZ, SILVIA 1272 MAGNOLIA - #1 SAINT PAUL MN 55106 | 393.91 | CANON LAW PROFESSIONALS LLC 29 LOWER COPELAND HILL RD FEURA BUSH NY 12067 | 850.00 |
| ARROW PONTIAC 1111 EAST HWY 110 INVER GROVE HEIGHTS MN 55077 | 40.12 | CANON LAW SOCIETY UK IRELAND CANON LAW ABSTRACTS GALLOWAY AYR SCOTLAND KA7 2ST GREAT BRITAIN | 205.00 |
| BASILICA OF ST MARY PO BOX 50010 MINNEAPOLIS MN 55405 | 1,921.89 | | |
| BAUER, JOHN 226 SUMMIT AVE ST PAUL MN 55102 | 45.00 | CARONDELET CENTER 1890 RANDOLPH AVENUE ST PAUL MN 55105 | 70.00 |
| BAUER, RANDALL 14600 IODINE CT NW RAMSEY MN 55303 | 214.65 | CATHOLIC DEFENSE LEAGUE 3499 LEXINGTON AVE N ST PAUL MN 55126 | 200.00 |
| BEAUDET, CHRISTOPHER 609 MAPLE PARK DR MENDOTA HEIGHTS MN 55118 | 1,600.00 | CATHOLIC NEWS SERVICE PO BOX 96428 WASHINGTON DC 20090-6428 | 9,695.48 |
| BEAULIEU, SIMON PO BOX 6973 MINNEAPOLIS MN 55406 | 100.00 | CATHOLIC UNIVERSIT OF AMERICA OFFICE OF ENROLLMENT, MCMAHON HALL #10 WASHINGTON DC 20064 | 88.92 |
| BECKER, JASON 224 22ND AVENUE SOUTH SAINT PAUL MN 55075 | 100.00 | | |

| CREDITOR NAME AND ADDRESS | AMOUNT OF CLAIM | CREDITOR NAME AND ADDRESS | AMOUNT OF CLAIM |
|---|---|---|---|
| CENTERPOINT ENERGY<br>PO BOX 4671<br>HOUSTON TX 77210-4671 | 454.61 | DEXON COMPUTER INC<br>9201 E BLOOMINGTON FRWY - STE BB<br>MINNEAPOLIS MN 55420 | 204.00 |
| CENTURYLINK<br>P O BOX 91154<br>SEATTLE WA 98111-9254 | 42.40 | DILL, TIFFANY<br>226 SUMMIT AVE<br>ST PAUL MN 55102 | 20.00 |
| CHLEBECK, DENNIS<br>1773 ASHLAND AVE<br>SAINT PAUL MN 55104-6036 | 690.52 | DIOCESE BISMARCK<br>520 NORTH WASHINGTON STREET<br>BISMARCK ND 58502-1137 | 1,272.33 |
| CHRIST KING RETREAT CENTER<br>621 S FIRST AVENUE<br>BUFFALO MN 55313 | 1,037.50 | DIOCESE FARGO<br>5201 BISHOPS BLVD STE A<br>FARGO, ND 58104 | 300.00 |
| CITY OF SAINT PAUL<br>375 JACKSON ST, SUITE 220<br>SAINT PAUL MN 55101-1806 | 700.00 | DIOCESE OF WINONA<br>55 W SANBORN<br>PO BOX 588<br>WINONA MN 55987 | 300.00 |
| COBORN'S INC<br>DBA COBORNSDELIVERS<br>SAINT CLOUD MN 56302-1502 | 1,561.75 | DISANTO'S FORT ROAD FLORIST<br>262 FORT ROAD<br>ST PAUL MN 55102 | 435.67 |
| COMMERS CONDITIONED WATER<br>9150 W 35W SERVICE DR NE<br>BLAINE MN 55449-6745 | 29.95 | DOMINICAN COMM ST ALBERT GREAT<br>2836 33rd AVE S<br>MINNEAPOLIS MN 55406 | 800.00 |
| CONLEY, PATRICK<br>239 SELBY AVE<br>ST PAUL MN 55102 | 100.00 | DUFNER, THOMAS<br>226 SUMMIT AVE<br>ST PAUL MN 55102 | 100.00 |
| CONNECTNOW FORMS<br>P O BOX 681<br>TARRYTOWN NY 10591-0681 | 874.92 | ECM PUBLISHERS INC<br>4095 COON RAPIDS BLVD<br>COON RAPIDS MN 55433-2523 | 6,544.57 |
| CONWAY, KRISTA<br>7106 BOVEY AVE<br>INVER GROVE HEIGHTS MN 55076 | 40.00 | EVERT, JASON<br>2257 S JUNIPER ST<br>LAKEWOOD CO 80228 | 12.00 |
| CRM VERTEX<br>1405 PRAIRIE PKWY SUITE A<br>WEST FARGO ND 58078 | 750.00 | EVOLVING SOLUTIONS<br>3989 COUNTY RD 116<br>HAMEL, MN 55340 | 787.50 |
| CROSSTOWN MECHANICAL INC.<br>3115 LONG LAKE ROAD<br>ST. PAUL, MN  55113 | 301.00 | EXPONENTS INC<br>946 FAIRMOUNT AVE<br>ST PAUL MN 55105 | 393.75 |
| CULLIGAN BOTTLED WATER<br>DEPT 8511<br>MINNEAPOLIS MN 55480-7743 | 61.95 | FAITHFUL & TRUE MINISTRIES INC<br>15798 VENTURE LN<br>EDEN PRAIRIE MN 55344 | 495.00 |
| CYBER ADVISORS INC<br>11324 86TH AVENUE NORTH<br>MAPLE GROVE MN 55369 | 750.00 | FATHER J ERICH RUTTEN<br>2115 SUMMIT AVE # 4042<br>ST PAUL MN 55105 | 100.00 |
| CYBERSOURCE CORPORATION<br>PO BOX 742842<br>LOS ANGELES CA 90074-2842 | 375.00 | FEDEX<br>PO BOX 94515<br>PALATINE IL 60094-4515 | 672.95 |
| DAIKIN APPLIED<br>24827 NETWORK PL<br>CHICAGO IL 60673 | 538.45 | FELHABER LARSON FENLON VOGT P.A.<br>PO BOX 860034<br>MINNEAPOLIS MN 55486-0034 | 5,224.50 |
| DANIELLE ALEXANDER DESIGN LLC<br>276 LAKEVIEW TERRACE BLVD<br>WACONIA, MN 55387 | 150.00 | FILTRATION SYSTEM INC<br>3943 MEADOWBROOK RD<br>ST LOUIS PARK MN 55426 | 202.68 |
| DESHANE, JAMES<br>4321 BROOK LANE<br>ST LOUIS PARK MN 55416 | 75.00 | FITZGERALD, THOMAS P<br>226 SUMMIT AVE<br>ST PAUL MN 55102 | 190.00 |
| DESIGN A BUNCH<br>8400 NORMANDALE LAKE BLVD - #12<br>BLOOMINGTON MN 55437-1078 | 400.00 | | |

| CREDITOR NAME AND ADDRESS | AMOUNT OF CLAIM | CREDITOR NAME AND ADDRESS | AMOUNT OF CLAIM |
|---|---|---|---|
| FLEUR DE LIS 516 SELBY AVENUE ST PAUL MN 55102 | 1,379.65 | IDAHO CATHOLIC REGISTER 1501 FEDERAL WAY STE 400 BOISE ID 83705 | 350.00 |
| FLOEDER, JOHN 2260 SUMMIT AVE ST PAUL MN 55105 | 200.00 | IMHP BURNSVILLE P O BOX 64317 SAINT PAUL MN 55164-0317 | 1,650.00 |
| FOLEY CONSULTING INC 2405 ESSINGTON RD #98 JOLIET IL 60435-1200 | 3,590.12 | IMMACULATE CONCEPTION CHURCH PO BOX 169 LONSDALE MN 55046-0169 | 258.43 |
| FRATTALLONE'S HARDWARE INC 3527 LEXINGTON AVE N ARDEN HILLS MN 55126 | 94.17 | IND SCHOOL DIST 279 11200 93RD AVE N MAPLE GROVE MN 55369 | 50.00 |
| FRONT LINE SYSTEMS INC P O BOX 337 EXCELSIOR MN 55331-0337 | 481.25 | INSTITUTE FOR DIACONATE FORMATION 2260 SUMMIT AVE SAINT PAUL MN 55105 | 500.00 |
| FSSP ST PETER'S HOUSE ELMHURST TOWNSHIP PA 18444 | 2,000.00 | INTEGRA TELECOM PO BOX 2966 MILWAUKEE WI 53201 | 692.50 |
| G & K SERVICES ST PAUL PO BOX 842385 BOSTON MA 02284-2385 | 394.80 | J S BURKE & ASSOCIATES LLC 947 EAST COUNTY RD D #102 ST PAUL MN 55109 | 42.38 |
| GATICA, VIVIANA V 328 KELLOGG BLVD W SAINT PAUL MN 55102 | 310.00 | JANZ, JONATHAN PROVIDENCE ACADEMY 15100 SCHMIDT LK RD PLYMOUTH MN 55446 | 100.00 |
| GE CAPITAL PO BOX 31001-0273 PASADENA CA 91110-0273 | 351.45 | JESUIT NOVITIATE 1035 SUMMIT AVE ST PAUL MN 55105 | 708.22 |
| GEMOLOGICAL RESOURCE INC 224 DEERPATH CT STILLWATER, MN 55082 | 1,575.00 | JOHNSON, AMY M 32024 CTY RD 13 SALOL MN 56756 | 20.00 |
| GERLACH, MICHELLE 328 KELLOGG BLVD ST PAUL MN 55102 | 1,050.00 | JOHNSON, JOSEPH 226 SUMMIT AVE ST PAUL MN 55102 | 160.00 |
| GJENGDAHL, NELS 226 SUMMIT AVE ST PAUL MN 55102 | 50.00 | KAT-KEY'S LOCK & SAFE CO 249 E 7TH STREET ST PAUL MN 55101-2346 | 89.80 |
| GOPHER STATE ONE CALL 18946 LAKE DR E CHANHASSEN MN 55317 | 2.90 | KELLY, JONATHAN 226 SUMMIT AVE ST PAUL MN 55102 | 45.00 |
| GREATAMERICA FINANCIAL SVCS CORP (formerly Loffler Companies, Inc.) PO BOX 660831 DALLAS, TX 75266-0831 | 228.97 | KENNEY, WILLIAM 226 SUMMIT AVE ST PAUL MN 55102 | 190.00 |
| HD SUPPLY FACILITIES MAINTENANCE PO BOX 509058 SAN DIEGO CA 92150-9058 | 447.60 | KLEMOND, SUSAN K 527 MANOMIN AVE SAINT PAUL MN 55107 | 600.00 |
| HEALING HOUSE OF SAINT PAUL 338 SNELLING AVE S SAINT PAUL MN 55105 | 405.00 | KOSTELC, CHRISTOPHER G HOLY NAME OF JESUS 155 CTY RD 24 WAYZATA MN 55391 | 100.00 |
| HOREJSI, DEBRA JOY DBA GINGKO GARDENS AND LAWNS 4283 DENT AVE WEBSTER MN 55088 | 250.00 | KOWALSKI GRAND MARKET INC 33 S. SYNDICATE AVE SAINT PAUL MN 55105 | 15,417.06 |
| | | KRATOCHVIL, MICHAEL 554 SPRINGHILL RD VADNAIS HEIGHTS MN 55127 | 975.72 |

| CREDITOR NAME AND ADDRESS | AMOUNT OF CLAIM |
|---|---|
| KUETTEL, MATTHEW<br>200 N MISSISSIPPI RIVER<br>SAINT PAUL MN 55104 | 137.50 |
| LACANNE, STEVEN<br>ST LEONARD PORT MAURICE<br>3949 CLINTON AVE S<br>MINNEAPOLIS MN  55409-1635 | 85.00 |
| LARAMIE COUNTY<br>ADMINISTRATION<br>510 W 29TH ST<br>CHEYENNE, WY 82001 | 870.00 |
| LARKIN HOFFMAN<br>8300 NORMAN CENTER DR - #1000<br>BLOOMINGTON MN 55437-1060 | 152.00 |
| LOCKWOOD SALES<br>16401 ARGON ST NW<br>ANDOVER MN 55304 | 1,486.25 |
| LOFFLER<br>1101 EAST 78TH ST STE 200<br>BLOOMINGTON MN 55420 | 4,307.26 |
| LOFFLER COMPANIES INC<br>PO BOX 660831<br>DALLAS TX 75266-0831 | 562.27 |
| LOGOS MANAGEMENT SOFTWARE INC<br>825 VICTORS WAY - STE 200<br>ANN ARBOR MI 48108-2830 | 692.00 |
| LUND, KRISTINA<br>FIRE STATION #14 PROF BLDG<br>ST PAUL MN 55104 | 1,325.00 |
| MARTIN, MICHAEL<br>19655  325TH ST<br>SHAFER MN 55074 | 600.00 |
| MCDONOUGH, THOMAS<br>226 SUMMIT AVE<br>ST PAUL MN 55102 | 360.00 |
| MCDOWELL AGENCY INC<br>1101 N SNELLING AVE<br>ST PAUL MN 55108 | 113.00 |
| MCQUILLAN, PATRICIA A<br>512 MONTCALM PL<br>SAINT PAUL MN 55116 | 149.36 |
| MDWST CNTR PERSONAL FAMILY DEV<br>2854 HIGHWAY 55 STE 130<br>EAGAN MN 55121 | 1,185.00 |
| MEJIA, ALICIA<br>7791 HEMINGWAY AVE S<br>COTTAGE GROVE, MN 55016 | 200.00 |
| METRO SALES INC<br>1620 E 78TH STREET<br>MINNEAPOLIS, MN  55423-4637 | 6,485.09 |
| MEYERS, NATHANIEL R<br>OUR LADY OF GRACE<br>EDINA MN 55436-2308 | 20.00 |

| CREDITOR NAME AND ADDRESS | AMOUNT OF CLAIM |
|---|---|
| MICHAUD, THOMAS<br>DIVINE MERCY CATHOLIC CHURCH<br>139 MERCY DR<br>FARIBAULT MN 55021 | 200.00 |
| MIDWEST ARCHIVES CONFERENCE<br>4440 PGA BOULEVARD STE 600<br>PALM BEACH GARDENS FL 33410 | 89.00 |
| MINNEAPOLIS FINANCE DEPARTMENT<br>PO BOX 77028<br>MINNEAPOLIS MN 55480 | 136.78 |
| MINNESOTA COACHES INC<br>101 E 10TH ST  SUITE 300<br>HASTINGS MN 55033 | 3,971.91 |
| MINNESOTA SEASONS<br>7111 STILLWATER BLVD N<br>OAKDALE MN 55128 | 2,529.00 |
| MN AEYC-MN SACA<br>1000 WESTGATE DR #252<br>ST PAUL  MN  55114 | 800.00 |
| MOLLNER, CATHERINE<br>2550 UNIV AVE W STE 435<br>ST PAUL MN 55114 | 1,012.50 |
| MOORE, ELIZABETH<br>4049 10TH AVE S<br>MINNEAPOLIS MN 55407 | 100.00 |
| MSGR ALOYSIUS CALLAGHAN<br>ST PAUL SEMINARY SCHOOL OF DIVINITY<br>2260 SUMMIT AVE<br>ST PAUL  MN 55105 | 150.00 |
| NCDVD<br>440 W NECK RD<br>HUNTINGTON NY 11743 | 1,228.00 |
| NEVIN, MICHAEL<br>14670 55TH ST NE<br>SAINT MICHAEL MN 55376 | 300.00 |
| NFOCUS CONSULTING<br>1594 HUBBARD DR<br>LANCASTER OH 43130-8124 | 975.85 |
| NORTHWESTERN FRUIT COMPANY<br>616 PINE STREET<br>ST PAUL MN 55130 | 650.95 |
| NORTON, SARAH<br>1136 JACKSON ST<br>SAINT PAUL MN 55117 | 26.73 |
| NYGAARD, ROBERT<br>6451 207TH AVE NE<br>WYOMING  MN  55092 | 560.80 |
| OFFICEMAX INCORPORATED<br>75 REMITTANCE DR  #2698<br>CHICAGO IL 60675-2698 | 3,069.10 |
| O'GRADY, KELLEN E<br>2115 SUMMIT AVE<br>SAINT PAUL MN 55105 | 80.00 |

| CREDITOR NAME AND ADDRESS | AMOUNT OF CLAIM | CREDITOR NAME AND ADDRESS | AMOUNT OF CLAIM |
|---|---|---|---|
| O'KEEFE, WILLIAM 247 THIRD AVE S MINNEAPOLIS  MN  55415 | 737.50 | REV MARK WEHMANN 226 SUMMIT AVE ST PAUL MN 55102 | 100.00 |
| OPPENHEIMER WOLFF DONNELLY 222 S 9TH ST - STE 2000 MINNEAPOLIS MN 55402-3362 | 418.95 | REV MICHAEL JOHNSON ATTN HOLY REDEEMER COLLEGE 3112 7TH STREET NE WASHINGTON DC 20017 | 65.12 |
| ORGAN, DEBORAH A. 224 HOWELL ST N ST PAUL MN 55104 | 400.00 | REV MICHAEL STEVENS 328 KELLOGG BLVD W ST PAUL MN  55102 | 100.00 |
| ORTEGA, AMANDA 8012 SCOTT BLVD COTTAGE GROVE MN 55016 | 116.50 | REV PETER A LAIRD 226 SUMMIT AVE ST PAUL MN 55102 | 100.00 |
| OUR LADY GRACE CHURCH 5071 EDEN AVE EDINA  MN  55436 | 160.32 | REV TROY PRZYBILLA 226 SUMMIT AVE ST PAUL MN  55102 | 100.00 |
| PALEN/KIMBALL COMPANY MI-98 MINNEAPOLIS MN 55480-1414 | 210.00 | RICE, RICHARD M 8717 BAXTER WY INVER GROVE HEIGHTS MN 55076 | 140.00 |
| PARISHSOFT 825 VICTORS WAY - STE 200 ANN ARBOR MI 48108-2830 | 253.00 | RODRIGUEZ RUIZ, LEAH 1425 LONE OAK RD EAGAN MN 55121 | 1,028.76 |
| PAUL DAVID PRODUCTIONS, LLC 7365 WEST SHORELINE DR WACONIA MN 55387 | 2,538.60 | RODRIGUEZ, MARTA 328 KELLOGG BLVD W ST PAUL MN 55102 | 104.79 |
| PAUL J LANE PH D 24445 HAWTHORNE BLVD - STE 100 TORRANCE CA 90505 | 1,000.00 | RON KELLER & ASSOCIATES 2550 E MEDICINE LAKE BLVD PLYMOUTH  MN  55441 | 900.00 |
| PEOPLES ELECTRICAL COMPANY 277 E FILLMORE AVE ST PAUL MN 55107 | 2,073.23 | RUMJUNGLE MEDIA INC 5295 EDEN RD MOUND  MN  55364 | 5,205.87 |
| PHOENIX PROCESS CONSULTANTS 5912 WEST 25TH STREET SAINT LOUIS PARK MN 55416 | 785.00 | SALINAS, HILDA 246 E PAGE ST ST PAUL  MN  55107 | 200.00 |
| PREMIER LOCATING INC 2034 COUNTY ROAD 35 WEST BUFFALO MN 55313 | 113.75 | SAMS CLUB PO BOX 530981 ATLANTA GA 30353-0981 | 1,051.47 |
| PREMIUM WATERS INC P O BOX 9128 MINNEAPOLIS MN 55480-9128 | 102.69 | SANTER, LEAH 1401 HIGHLAND PKWY SAINT PAUL MN 55116 | 100.00 |
| PRICE, KRISTINA 1647 EDGEWOOD ROAD WINONA MN 55987 | 2,040.00 | SCHMIDT, MARY-CATHERINE 140 BELVIDERE ST W WEST ST PAUL MN 55118 | 20.00 |
| PRINTASTIK 5249 W 73RD ST - STE C EDINA MN 55439-2214 | 393.29 | SCHNEIDER, LEO 226 SUMMIT AVE ST PAUL MN 55102 | 360.00 |
| PROFORMA PO BOX 640814 CINCINNATI OH 45264 | 3,562.54 | SHILLING, HAROLD HSHILLING BLANCHARDVILLE WI 53516 | 165.00 |
| QUIGLEY, MARY 13225 CROCUS ST NW COON RAPIDS  MN  55448-1221 | 625.00 | SHYPKOWSKI, KRISTI 4696 47TH ST S UNIT C FARGO, ND 58104 | 65.00 |
| RAPP, JACQUELINE 17050TOP HILL RD FAIRDALE, KY 40118-9428 | 150.00 | SILENT KNIGHT SECURITY GROUP 9057 LYNDALE AVENUE SOUTH BLOOMINGTON MN 55420 | 285.00 |
| REV KEVIN MCDONOUGH 226 SUMMIT AVE ST PAUL MN  55102 | 140.00 | | |

| CREDITOR NAME AND ADDRESS | AMOUNT OF CLAIM | CREDITOR NAME AND ADDRESS | AMOUNT OF CLAIM |
|---|---|---|---|
| SIOUX FALLS MARRIAGE TRIBUNAL 523 NORTH DULUTH AVENUE SIOUX FALLS SD 57104 | 400.00 | SWEEZO, SUSAN SLS INTERPRETING SERVICES 2342 BENJAMIN ST NE MINNEAPOLIS  MN  55418 | 160.00 |
| SLUSSER, MICHAEL 226 SUMMIT AVE ST PAUL MN 55102 | 25.30 | SYSCO MINNESOTA INC PO BOX 49730 BLAINE MN 55449-0730 | 774.36 |
| SRS ST FRANCIS 6832 CONVENT BLVD SYLVANIA  OH  43560 | 1,175.00 | TEAMWORKS INTL INC 7037 20TH AVE S CENTERVILLE MN  55038 | 8,175.02 |
| ST AGNES CHURCH 535 THOMAS AVENUE SAINT PAUL MN 55103 | 2,133.67 | THE LAUNDRY DOCTOR 662 SELBY AVE ST PAUL, MN 55104 | 46.40 |
| ST CROIX CLEANERS 5843 NEAL AVE N STILLWATER MN 55082 | 16.38 | THE VISITOR ST CLOUD CHANCERY SAINT CLOUD MN 56302-1068 | 905.00 |
| ST FRANCIS DE SALES 650 PALACE AVE SAINT PAUL MN 55102-3540 | 250.00 | THOMAS LIQUOR STORE 1941 GRAND AVE AT PRIOR ST PAUL MN 55105 | 99.00 |
| ST JOSEPH CHURCH 171 ELM STREET LINO LAKES MN 55014 | 438.26 | TIBESAR, LEO J 226 SUMMIT AVE ST PAUL MN 55102 | 300.00 |
| ST MICHAEL CHURCH 22120 DENMARK AVENUE FARMINGTON MN 55024-0227 | 6,017.00 | TOP 20 TRAINING 1873 STANFORD AVE SAINT PAUL MN 55105 | 5,200.00 |
| ST PATRICKS GUILD 1554 RANDOLPH AVE ST PAUL MN 55105 | 189.85 | TWIN CITY TREE SERVICE INC 981 LYDIA DR W ROSEVILLE  MN 55113 | 225.00 |
| ST PAUL SEMINARY SCHOOL OF DIVINITY 2260 SUMMIT AVE ST PAUL  MN  55105 | 27,053.90 | UNIVERSITY ST THOMAS MAIL 5002 ST PAUL MN 55105-1078 | 4,214.37 |
| ST PAUL STAMP WORKS INC 87 EMPIRE DRIVE SAINT PAUL MN 55103-1856 | 34.75 | VECTOR DELIVERY SERVICE 5747 GLENWOOD AVE #5 GOLDEN VALLEY MN 55422 | 1,972.90 |
| ST PAUL TRAINING LLP P O BOX 17311 SAINT PAUL MN 55117-0311 | 450.00 | VERNON COMPANY DEPT C  ONE PROMOTION PLACE NEWTON IA 50208-2065 | 61.32 |
| ST PETER CHURCH 1405 HIGHWAY 13 MENDOTA MN 55150-0679 | 353.90 | WABASHA DELI 32 E FILLMORE ST PAUL  MN  55107 | 1,558.72 |
| ST PETER'S PONTIFICAL INSTITUTE STUDIES IN CHURCH LAW BANGALORE  560 055 INDIA | 95.00 | WAGENBACH, ANDREW 2503 16TH AVE E NORTH ST PAUL  MN  55109 | 95.22 |
| ST STEPHEN CHURCH 525 JACKSON ST ANOKA MN 55303 | 800.00 | WALKER, THOMAS 226 SUMMIT AVE ST PAUL MN 55102 | 240.00 |
| STANLEY CONVERGENT SECURITY DEPT CH 10651 PALATINE IL 60055 | 84.84 | WALL STREET JOURNAL PO BOX 7007 CHICOPEE MA 01021-9985 | 12.00 |
| STAPLES ADVANTAGE DEPT DET CHICAGO IL 60696-3689 | 185.04 | WAY POINT INC 4760 WHITE BEAR PKWY STE 201 WHITE BEAR LAKE MN 55110 | 4,195.53 |
| SWANFELD, PAULINE M 1810 BERWICK CIR DULUTH MN 55811 | 648.00 | WEHRLY, JOHN 2812 ANTHONY LANE SOUTH - #200 ST ANTHONY MN 55418 | 82.50 |
| | | WESTERN STATES ENVELOPE & LABEL PO BOX 205216 DALLAS TX 75320-5216 | 907.65 |

| CREDITOR NAME AND ADDRESS | AMOUNT OF CLAIM |
|---|---|
| WINTRHOP WEINSTINE PA<br>225 S 6TH ST STE 3500<br>MINNEAPOLIS MN 55402 | 1,086.80 |
| WISC PROVINCE SOCIETY JESUS<br>2900 11TH AVE S #1017-19<br>MINNEAPOLIS MN 55407-5171 | 50.00 |
| WOLD MORRISON PA<br>247 THIRD AVE S<br>MINNEAPOLIS MN 55415 | 22,575.00 |

| CREDITOR NAME AND ADDRESS | AMOUNT OF CLAIM |
|---|---|
| XCEL ENERGY<br>PO BOX 9477<br>MINNEAPOLIS MN 55484 | 34.56 |
| XDD MN LLC<br>WORKSOURCE #164<br>KANSAS CITY MO 64141-4378 | 835.00 |

Schedule 3-8