## SETTLEMENT, RELEASE AND BUYBACK AGREEMENT

This Settlement, Release and Buyback Agreement ("Agreement") is hereby made by, between and among the Archdiocese Parties, the Parish Parties, and Catholic Mutual Relief Society of America ("Catholic Mutual").[1]

## RECITALS

WHEREAS, individuals have asserted certain Tort Claims against the Archdiocese and Parish Parties;

WHEREAS, Catholic Mutual allegedly issued or may have issued Archdiocese Certificates to the Archdiocese Parties and certain Parish Certificates to the Parish Parties;

WHEREAS, certain disputes between the Archdiocese Parties and the Catholic Mutual Parties have arisen and/or may arise in the future regarding the nature and scope of coverage, if any, to the Archdiocese Parties under the Archdiocese Certificates in connection with Tort Claims (the "Archdiocese Coverage Disputes"), including those disputes at issue in the lawsuits captioned *Archdiocese of Saint Paul and Minneapolis vs. The Continental Insurance Company, et al.* pending in the United States Bankruptcy Court for the District of Minnesota ("Bankruptcy Court"), Adv. Pro. No. 15-3013;

WHEREAS, certain disputes between the Parish Parties and the Catholic Mutual Parties have arisen and/or may arise in the future concerning the nature and scope of their responsibilities, if any, to provide coverage to the Parish Parties under the Parish in connection with Tort Claims (the "Parish Coverage Disputes", together with the Archdiocese Coverage Disputes, the "Coverage Disputes");

WHEREAS, the Archdiocese filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota (Case No. 15-30125) (the "Reorganization Case") on January 16, 2015 (the "Petition Date");

WHEREAS, the Parties, without any admission of liability or concession of the validity of the positions or arguments advanced by each other, now wish to compromise and resolve fully and finally any and all Coverage Disputes, and all Claims and Interests through and including the Effective Date of the Plan relating to the Certificates, Tort Claims and all other disputes between and among them;

WHEREAS, through this Agreement, (i) the Archdiocese Parties and Parish Parties intend to provide the Catholic Mutual Parties with the broadest possible release and protection with respect to the Tort Claims and as to the Claims and Causes of Action that are the subject of

---

[1] Except as otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Plan (as defined herein).

10959626v4

141560844.5

the Coverage Disputes; (ii) the Parish Parties intend to provide the Catholic Mutual Parties the broadest possible buyback and release with respect to the Parish Certificates, and (iii) Catholic Mutual Parties shall have no further obligations of any kind now or in the future to the Archdiocese Parties, Parish Parties or the Tort Claimants for the Tort Claims or the Claims which are the subject of the Coverage Disputes and that arose or occurred on or before the Effective Date pursuant to this Agreement and the Plan, and Catholic Mutual shall have no further obligations as of the Plan Effective Date or thereafter of any kind under the Parish Certificates;

WHEREAS, as part of the compromise and resolution of such disputes, the Parties wish to effect a sale of the Parish Certificates to Catholic Mutual pursuant to 11 U.S.C. § 363; and

NOW, THEREFORE, in consideration of the foregoing recitals and of the mutual covenants contained in this Agreement, the sufficiency of which is hereby acknowledged, and intending to be legally bound, subject to the approval of the Bankruptcy Court, the Parties hereby agree as follows:

## 1. DEFINITIONS

1.1   As used in this Agreement, the following terms shall have the meaning ascribed to them below. Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan or given to them in the Bankruptcy Code, as applicable.

1.1.1   "Assumption" means The Church of the Assumption of Richfield, Minnesota.

1.1.2   "Archdiocese Certificates" means any and all known and unknown binders, certificates issued or allegedly issued by Catholic Mutual to the Archdiocese, including those certificates identified in Exhibit A hereto.

1.1.3   "Catholic Mutual Parties" means Catholic Mutual and, solely in the capacity as such, i) each of its past, present and future parents, subsidiaries, affiliates, and divisions; ii) each of their respective past, present, present and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

1.1.4   "Certificates" means the Archdiocese Certificates and the Parish Certificates.

2

1.1.5   "Execution Date" means the date on which the Agreement is executed by all of the Parties.

1.1.6   "Guardian Angels" means The Church of the Guardian Angels of Chaska, Minnesota.

1.1.7   "Parish Certificates" means any and all known and unknown binders or certificates issued or allegedly issued by Catholic Mutual to Assumption or Guardian Angels, including those certificates identified in Exhibit B hereto and those otherwise acknowledged by Catholic Mutual.  For the avoidance of doubt "Parish Certificates" do not include "Archdiocese Certificates".

1.1.8   "Parish Parties" refers to Guardian Angels and Assumption and, solely in their capacity as such, (i) each of the past, present, and future parents, subsidiaries, merged companies, divisions, and acquired companies of Guardian Angels and Assumption; (ii) any and all named covered party, named insured, insureds, additional insureds, and Protected Person (as such term is defined in the Parish Certificates) under the Parish Certificates; (iii) each of the foregoing Persons' respective past, present, and future parents, subsidiaries, merged companies, divisions and acquired companies; (iv) each of the foregoing Persons' respective predecessors, successors and assigns; and (v) any and all past and present employees, officers, directors, shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or religious, volunteers, agents, attorneys, and representatives of the Persons identified in the foregoing subsections (i)-(iii), in their capacity as such. Nothing in the foregoing is intended to suggest that such Persons are "employees" or agents of Guardian Angels and Assumption or subject to their control.  An individual who perpetrated an act of Abuse that forms the basis of a Tort Claim is not a Parish Party with respect to that Tort Claim. No religious order, diocese or archdiocese is a Parish Party.

1.1.9   "Parties" means the Archdiocese Parties, the Parish Parties and the Catholic Mutual Parties, and "Party" refers to them individually.

1.1.10   "Plan" refers to the Joint Chapter 11 Plan of Reorganization of the Archdiocese of Saint Paul and Minneapolis [Dkt. No. 1198] and any amendment thereto.

1.1.11   "Released Interests" shall mean (i) all coverage of any kind or nature under Archdiocese Certificates for Claims against the Archdiocese that may have been asserted or arose on or before the Effective Date of the Plan; (ii) all coverage of any kind or nature under the Archdiocese Certificates for Claims against

3

10959626v4

141560844.5

Archdiocese Parties that may have been asserted or arose on or before the Effective Date of the Plan based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way relating to the filing, resolution, administration, funding or discharge of the Reorganization Case; (iii) all coverage of any kind or nature under the Archdiocese Certificates for Tort Claims including but not limited to Tort Claims against the Archdiocese Parties, Catholic Entities and Other Insured Entities (to the extent such Other Insured Entities are covered under the Archdiocese Certificates); (iv) all coverage of any kind or nature under the Archdiocese Certificates for all Channeled Claims including but not limited to Related Insurance Claims and Medicare Claims; and (v) all Interests or any kind or nature under, arising out of or related to the Parish Certificates.  As to Catholic Entities other than the Parish Parties, "Released Interests" does not include coverage afforded the Catholic Entities under the Archdiocese Certificates for Claims other than Tort Claims and Claims arising out of or related to the Reorganization Case as more fully described in above in this subsection.

1.1.12 "Released Parties" means the Catholic Mutual Parties, the Archdiocese Parties, the Catholic Entities, Other Insured Entities and Parish Parties. For the avoidance of doubt, Other Insured Entities are "Released Parties" only with respect to Tort Claims against them based on alleged Abuse during the effective periods of the Archdiocesan Certificate which Claims are covered under the Archdiocese Certificates, if any.

1.1.13 "Settlement Amount" means the sum of $14.1 million dollars.

## 2.   SETTLEMENT TERMS

A.   Plan

2.1 The Plan, Confirmation Order and any subsequent amendments thereto, shall be in all respects consistent with this Agreement and shall not deprive the Catholic Mutual Parties of any right or benefit under this Agreement or otherwise adversely affect the Interests of the Catholic Mutual Parties under this Agreement, and must, in form and substance, be acceptable to Catholic Mutual.

2.2 The Plan and Confirmation Order shall set a date by which all Claims arising, asserted or occurring from the Petition Date through and including the Effective Date must be filed pursuant to the Plan ("Administrative Claim Filing Date") or be forever barred and discharged, and such Claims shall nevertheless constitute Channeled Claims subject to the Channeling Injunction and Supplemental Settling Insurer Injunction.  The Archdiocese shall provide notice of the Administrative Claim Filing Date in form and substance acceptable to Catholic Mutual, as provided in Section 2.1.27 hereof.

4

2.3  In the Reorganization Case, the Archdiocese or UCC shall seek and obtain entry of a Confirmation Order in form and substance acceptable to the Catholic Mutual Parties, such approval shall not be unreasonably withheld, that: (i) approves the Plan pursuant to section 1129 of the Bankruptcy Code and any other applicable provision of the Bankruptcy Code; (ii) contains and approves the Channeling Injunction; (iii) contains and approves the Supplemental Settling Insurer Injunction; (iv) provides that this Agreement is binding on the Trust, the Reorganized Debtor, and any successors of the Trust or Reorganized Debtor; and (v) provides all releases and protections to the Catholic Mutual Parties against Tort Claims that are afforded to Settling Insurers (as defined in the Plan), including all protections against Tort Claims that are afforded to any other Settling Insurers under the Plan.

2.4  In seeking to obtain the Confirmation Order, the Archdiocese must: (i) seek a confirmation hearing within a reasonable time; (ii) urge the Bankruptcy Court to overrule any objections and confirm the Plan; and (iii) take all reasonable steps to defend against any appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the Confirmation Order.

2.5  The Plan shall provide, and the Parties agree that to the extent that any provision of the Plan, Confirmation Order or Trust Agreement is inconsistent with this Agreement, this Agreement shall control.

2.6  The Plan shall provide that each Other Insured Entity, irrevocably and unconditionally, without limitation, releases, acquits, forever discharges and waives any Claims they have or might have now or in the future against the Archdiocese Parties, the Reorganized Debtor and Catholic Mutual Parties, with respect to i) any and all Tort Claims, Related Insurance Claims and any other contribution or indemnity claims arising from or relating to Tort Claims to the extent they are Other Insured Entities as to such Claims or covered under an Archdiocese Certificate or Parish Certificate; and ii) Released Interests.

2.7  The Plan shall provide that each other Settling Insurer and all Tort Claimants irrevocably, unconditionally, without limitation, releases, acquits, forever discharges and waives any Claims they have or may have now or in the future against the Archdiocese Parties, the Reorganized Debtor and the Catholic Mutual Parties, with respect to i) any and all Tort Claims, Related Insurance Claims and any other contribution or indemnity claims arising from or relating to Tort Claims to the extent they are covered under an Archdiocese Certificate or Parish Certificate; and ii) Released Interests.

10959626v4

141560844.5

B.     Settlement Amount

2.8  Catholic Mutual's obligation to pay the Settlement Amount is conditioned on: (i) the Confirmation Order and Approval Order (as hereinafter defined) becoming Non-Appealable Orders, in form and substance acceptable to Catholic Mutual except that such acceptance shall not be unreasonably withheld; and (ii) all Conditions to the Occurrence of the Effective Date under the Plan (as set forth in Section 13.1 thereof, the "Conditions to Effectiveness") have been satisfied and confirmed in writing by the Reorganized Debtor to Catholic Mutual.

2.9  In full and final settlement of all Released Interests under and arising out of the Certificates, and in exchange for the protection afforded Catholic Mutual as a Settling Insurer under the Plan (including the Channeling Injunction and Supplemental Settling Insurer Injunction), Catholic Mutual shall pay the Settlement Amount to the Trust within ten (10) days after each of the Conditions to Effectiveness have been satisfied and the Archdiocese or Trustee delivers to Catholic Mutual written directions as to transmission of the payment.  The Settlement Amount shall be held in the Trust, as set forth herein.

2.10 The Settlement Amount is the total amount the Catholic Mutual Parties are and shall ever be obligated to pay on account of any and all Released Interests.  The consideration to be provided by the Catholic Mutual Parties pursuant to this Agreement (including the Settlement Amount) constitutes a fair and reasonable exchange for the consideration granted to the Catholic Mutual Parties in this Agreement (including the releases, Channeling Injunction and Supplemental Settling Insurer Injunction), and the consideration to be provided by the Archdiocese Parties to the Catholic Mutual Parties pursuant to the Plan (including the releases and injunctions therein)) constitutes a fair and reasonable exchange for the consideration granted to the Archdiocese Parties in this Agreement (including the Settlement Amount).  The Catholic Mutual Parties are not acting as volunteers in paying the Settlement Amount, and the Catholic Mutual Parties' payment of the Settlement Amount reflects potential liabilities and obligations to the Archdiocese Parties of amounts the Catholic Mutual Parties allegedly are obligated to pay on account of any and all Claims released and/or enjoined herein or under the Plan.

C.     Channeling Injunction and Supplemental Injunction

2.11 The Catholic Mutual Parties shall be beneficiaries of and protected by the Channeling Injunction in Section 14.3 of the Plan, with only such modifications as are acceptable to the Catholic Mutual Parties, such acceptance shall not be unreasonably withheld, pursuant to section 105(a) of the Bankruptcy Code, barring and permanently enjoining all Persons who have held or asserted, or may in the future hold or assert Channeled Claims from taking any action, directly or indirectly, for purposes of

6

asserting, enforcing, or attempting to assert or enforce any Channeled Claim against any Catholic Mutual Party and channeling such Channeled Claims to the Trust, to which all Channeled Claims are channeled as the sole and exclusive source of payment of any such Channeled Claims.

2.12 Catholic Mutual is a Settling Insurer Entity under the Plan and shall be a beneficiary of and protected under the Supplemental Settling Insurer Injunction in Section 14.5 of the Plan, barring and permanently enjoining all Persons who have held or asserted, or may in the future hold or assert any Released Interest against a Protected Party or the Catholic Mutual Parties from taking any action, directly or indirectly, for purposes of asserting, enforcing, or attempting to assert or enforce any such Released Interest against any Catholic Mutual Party pursuant to section 14.5 of the Plan, with only such modifications as are acceptable to the Catholic Mutual Parties, except that such acceptance shall not be unreasonably withheld, pursuant to sections 105(a) of the Bankruptcy Code.

D.      Releases and Covenant Not to Sue

2.13 The Parties shall cease all litigation against each other in any and all Coverage Disputes; provided, however, that each party may take whatever steps that, in its sole judgment, are necessary to defend its interests as long as it remains a party in such coverage litigation, including the Coverage Disputes.

2.14 The Archdiocese shall use its best efforts to promptly obtain the dismissal of other Claims, if any, against the Catholic Mutual Parties by any other Settling Insurer in any coverage litigation, including the Coverage Disputes.

2.15 The Archdiocese Parties and Catholic Mutual Parties covenant not to sue each other until (a) the Confirmation Order becomes a Non-Appealable Order, at which time this covenant is superseded by the releases and injunctions provided in the Plan and the Confirmation Order, or (b) the date on which this Agreement is terminated under Section 2E below.  As of the date the Confirmation Order becomes a Non-Appealable Order, the Archdiocese Parties will withdraw all outstanding tenders of Tort Claims to Catholic Mutual for defense and indemnity.  Except for Claims against the Archdiocese Parties for occurrences arising after the Effective Date, the Archdiocese Parties will not tender any Tort Claims to the Catholic Mutual Parties and will not request the Catholic Mutual Parties to fund any judgments, settlements, or defense costs for such Tort Claims.

2.16 Except as expressly provided in this Agreement, and subject to applicable defenses under the applicable Certificates and law, the Catholic Mutual Parties shall have no obligation to pay, handle, object, or otherwise respond to Tort Claims made or

7

that occurred or arose through and until the Effective Date unless this Agreement is terminated under Section 2E.

2.17 Upon payment by Catholic Mutual of the Settlement Amount:

2.17.1 The Archdiocese, on behalf of itself and the other Archdiocese Parties, fully, finally, and completely remises, releases, acquits, and forever discharges the Catholic Mutual Parties and any of their reinsurers or retrocessionaires solely in their capacity as such from any and all past, present, and future Claims arising, asserted, occurring, continuing, whether known or unknown through, until and including the Effective Date, as to the Released Interests.

2.17.2 The Parishes, on behalf of themselves and the Parish Parties, fully, finally, and completely remise, release, acquit, and forever discharge the Catholic Mutual Parties and any of their reinsurers or retrocessionaires solely in their capacity as such from any and all past, present, and future Claims arising, asserted, occurring, continuing, whether known or unknown through and after the Effective Date, as to the Released Interests.

2.18    The Plan shall provide that all Settling Insurers, Other Insured Entities and Catholic Mutual shall fully, finally, and completely remise, release, acquit, and forever discharge each other from any and all past, present and future Claims, that, directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims or Certificates, including any and all Channeled Claims, Extra-Contractual Claims, Related Insurance Claims, and reimbursement obligations for Conditional Payments; and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Archdiocese' Reorganization Case.  This release specifically includes all Claims, Future Tort Claims and Interests that are or may be based in whole or in part on Tort Claims asserted, continuing, whether known or unknown, under or relating to the Certificates.

2.19    From and after the first day on which the Confirmation Order becomes a Non-Appealable Order, the Archdiocese Parties and Parish Parties shall not assert against the Catholic Mutual Parties any Claim with respect to any matter, conduct, transaction, occurrence, fact, or other circumstance that, directly or indirectly, arises out of, relates to, or is in connection with any Released Interest and that arose or occurred on or before the Effective Date of the Plan.

2.20    All of the releases and other benefits provided in this Agreement and the Plan by the Archdiocese Parties to the Catholic Mutual Parties shall be at least as favorable to the Catholic Mutual Parties as the Archdiocese has provided other Settling Insures in other Insurance Settlement Agreement in the Reorganization Case as well as under the Plan.  With the exception that the scope of the Released Interests which are released under this Agreement

8

is narrower than the Archdiocese has provided  other Archdiocesan Settling Insurers under Insurance Settlement Agreements and the Archdiocese is not agreeing that Catholic Mutual may buyback the Archdiocese Certificates.  Subject to the foregoing exception, if the Archdiocese enters into any agreement with any other Archdiocesan Settling Insurer in the Reorganization Case that provides any Archdiocesan Settling Insurer with releases or other benefits that are more favorable than those contained in this Agreement to Catholic Mutual or the Catholic Mutual Parties, then this Agreement shall be deemed to be modified to provide the Catholic Mutual Parties with those more favorable releases and/or benefits.

2.21    Neither the releases nor any other provisions in this Agreement are intended to apply to or have any effect on the Catholic Mutual Parties' right to reinsurance recoveries under any reinsurance treaties, certificates, or contracts that cover losses arising under or in connection with the Certificates or any other binder or certificate issued by the Catholic Mutual Parties.

E.    Termination

2.22    The Archdiocese or Catholic Mutual may terminate this Agreement by providing ten (10) days written notice to the other Party, respectively, if:

2.22.1 The Bankruptcy Court (a) dismisses the Reorganization Case, or converts the case to a case under chapter 7 of the Bankruptcy Code; (b) does not approve this Agreement, the Channeling Injunction and the Supplemental Settling Insurer Injunction by entry of an order in form and substance acceptable to Catholic Mutual; or (c) denies approval of this Agreement, the Channeling Injunction or Supplemental Insurer Injunction, and any of the foregoing orders become Non-Appealable Orders;

2.22.2 The Effective Date does not occur within ninety (90) days of the Confirmation Order and Approval Order (as hereinafter defined) becoming Non-Appealable Orders; or

2.22.3 The agreement of Catholic Mutual and the Archdiocese that the Archdiocese should seek dismissal of its Reorganization Case.

2.22.4 The Archdiocese and Catholic Mutual agree in writing to the termination of this Agreement.

2.23    In the event termination occurs under Section 2.21 above, the Agreement will be void *ab initio*, including but not limited to the obligation to pay the Settlement Amount, and the Certificates shall remain in full force and effect, with all rights, remedies and defenses held by Catholic Mutual preserved by Catholic Mutual.

10959626v4

141560844.5

F.   Judgment Reduction, Indemnification, Cooperation and Affirmative Undertakings

2.24    With respect to Section 7.4 (Judgment Reduction) of the Plan, the Parties agree that Catholic Mutual is a Settling Insurer, entitled to the judgment reduction, protections and provisions of Section 7.4 of the Plan, which terms are hereby expressly incorporated and applicable to Catholic Mutual as a Settling Insurer.

2.25    From and after the Effective Date, the Trust (as defined by the Plan) or the Reorganized Debtor, to the extent provided in and subject to the Plan's terms, shall defend, indemnify, and hold harmless the Catholic Mutual Parties with respect to any and all Claims relating to or arising out of the Released Interests as more fully set forth in the Plan, including all Tort Claims made by (i) any Person claiming to be a covered party or protected party (as a named covered party, additional covered party or protected party, or otherwise) under any of the Certificates; (ii) any Person who has made, will make, or can make a Tort Claim or Related Insurance Claim; (iii) claims by other insurers for contribution, subrogation, indemnification or other similar relief; and (iv) any Person who has actually or allegedly acquired or been assigned the right to make a Tort Claim under any Certificate including any such Claims released or resolved hereunder or under the Plan.  This indemnification includes Claims made by Persons over whom the Archdiocese Parties, Parish Parties or Other Insured Entities do not have control, including any other Person that asserts Claims against or rights to coverage under any of the Certificates.  Catholic Mutual shall have the right to tender defense of any Claims identified in this paragraph and shall do so in good faith.  Catholic Mutual may undertake the defense of any Claim to be indemnified by the Trust on receipt of such Claim.  Catholic Mutual agrees to notify the Trust, as applicable, as soon as practicable of any Claims identified in this paragraph and of its choice of counsel.  The Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by the Catholic Mutual Parties in defending such Claims.  Catholic Mutual may settle or otherwise resolve a Claim consistent with the terms of the Plan and with the prior consent of the Trust, which consent shall not be unreasonably withheld.  Catholic Mutual's defense, settlement, or other resolution of any Claims pursuant to this paragraph and Agreement shall not diminish the Trust's obligations to indemnify and hold the Catholic Mutual Parties harmless for such Claims, as set forth herein.

2.26    If any proceedings are commenced to invalidate or prevent the enforcement or implementation of any of the provisions of this Agreement or the Plan (including the Channeling Injunction, Supplemental Settling Insurer Injunction and all releases herein), the Parties agree to cooperate fully to oppose such proceedings.  In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any other Person to invalidate, interpret, or prevent the validation or enforcement, or carrying out, of all or any of the provisions of this Agreement, the Parties mutually agree, represent, warrant, and covenant to cooperate fully in opposing such action or proceeding.

10

       1.1.1    The Parties will take such steps and execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability.

      2.27    The Parties shall cooperate with each other in connection with the Plan, the Confirmation Order and the Archdiocese's Reorganization Case.  Such cooperation shall include consulting with each other upon reasonable request concerning the status of proceedings and providing each other with copies of reasonably requested pleadings, notices, proposed orders, and other documents relating to such proceedings as soon as reasonably practicable prior to any submission thereof to the Bankruptcy Court.

      2.28    Prior to entry of the Confirmation Order, the Archdiocese shall oppose any motion to lift any stay pursuant to section 362 of the Bankruptcy Code as to any Tort Claim.  If the Bankruptcy Court lifts the stay as to any Tort Claim prior to entry of the Confirmation Order, the Catholic Mutual shall have the right, but not the duty, to defend the Archdiocese and other Archdiocese Parties insured under the Certificates against that Tort Claim subject to a reservation of rights and with counsel of Catholic Mutual's choosing.  If Catholic Mutual does not defend against the Tort Claim, the Archdiocese, Parish Parties, and other Archdiocese Parties insured under the Certificates shall defend against the Tort Claim and comply with the terms of the stay relief order.  Catholic Mutual, to the extent, if any, required under the Certificates in the absence of this Agreement, shall pay the reasonable and necessary costs and expenses incurred by counsel for the Archdiocese, Parish Parties or other Archdiocese Parties insured under the Certificates in defending such Tort Claims. The Archdiocese Parties and Parish Parties will cooperate with Catholic Mutual in connection with the defense of any Tort Claim to the extent required by the Certificates and applicable law.  Any actions taken by Catholic Mutual pursuant to this Section, including in connection with the defense of any Tort Claim, shall be subject to a reservation of all of Catholic Mutual's rights and defenses, including any such rights or defenses reserved in prior or contemporaneous correspondence. Any amounts incurred or paid by Catholic Mutual in connection with the defense of or indemnification of any Tort Claim shall be deducted from the amount that Catholic Mutual is required to pay as the Settlement Amount pursuant to this Agreement.  If the amount paid by Catholic Mutual in connection with the defense and indemnification equals the Settlement Amount, then Catholic Mutual will automatically be relieved of any obligations it might have had with respect to the defense or indemnification of any Tort Claim and may withdraw from the defense and stop paying for defense costs without any further obligations with respect to the defense or indemnification of the Archdiocese, Parish Parties or other Archdiocese Parties insured under the Certificates with respect to any Claims then in suit or any others that may thereafter be brought.  In such event, the Archdiocese shall ensure that all claims are otherwise defended and that no default is entered to the extent feasible.

      2.29    If any Person attempts to prosecute a Channeled Claim against any of the Catholic Mutual Parties prior the date on which the Bankruptcy Orders become Non-Appealable Orders,

10959626v4

141560844.5

then promptly following notice to do so from the Catholic Mutual Party against whom the Claim is asserted, the Archdiocese will file a motion and supporting papers to obtain an order from the Court, pursuant to Bankruptcy Code §§ 362 and 105(a), protecting the Catholic Mutual Party from any such Claims until this Agreement is terminated pursuant to Section 2E.

G.   Reservation of Rights

2.30   This Agreement and the Plan represent a compromise of disputed Claims and shall not be deemed an admission or concession of liability, culpability, wrongdoing, or insurance coverage. All related discussions, negotiations, and all prior drafts of this Agreement shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions. Any evidence of the negotiations or discussions associated with this Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, except that they shall be admissible to the extent they would have otherwise been admissible, absent this Agreement, in (i) an action or proceeding to enforce the terms of this Agreement, including any use as contemplated herein, or (ii) any possible action or proceeding between any of the Catholic Mutual Parties and any of their reinsurers. This Agreement shall not be used as evidence or in any other manner, in any court or dispute resolution proceeding, to create, prove, or interpret the Catholic Mutual Parties' obligations under any of the Certificates or any other binder or certificate issued by the Catholic Mutual Parties, with respect to any Claims against any of the Catholic Mutual Parties.

2.31   Nothing contained in this Agreement shall be deemed or construed to constitute (i) an admission by any of the Catholic Mutual Parties that the Archdiocese Parties, Parish Parties, or any other Person that was or is entitled to any coverage under the Certificates or any other binder or certificate issued by the Catholic Mutual Parties or as to the validity of any of the positions that have been or could have been asserted by the Archdiocese Parties or Parish Parties, (ii) an admission by the Archdiocese Parties or Parish Parties as to the validity of any of the positions or defenses to coverage that have been or could have been asserted by the Catholic Mutual Parties or any Claims that have been or could have been asserted by the Archdiocese Parties or Parish Parties against the Catholic Mutual Parties, or (iii) an admission by the Archdiocese Parties, Parish Parties or the Catholic Mutual Parties of any liability whatsoever with respect to any of the Tort Claims.

2.32   Each Party shall be responsible for its own fees and costs incurred in connection with the Reorganization Case, this Agreement, and the negotiation, drafting and implementation of the Plan (and all related agreements and documents).

2.33   Neither the releases herein nor any release in or under the Plan or Confirmation Order are intended to apply to or have any effect on the Catholic Mutual Parties' right to reinsurance recoveries under any reinsurance treaties, certificates, or contracts that cover losses

10959626v4

141560844.5

arising under or in connection with the Certificates or any other binder or certificate issued by the Catholic Mutual Parties.

2.34    Nothing herein is intended to, and shall not be construed to, release, waive, relinquish, or otherwise affect the Parties' rights and obligations under this Agreement.

H.    Notice

2.35    The Archdiocese shall cause notice of the hearing on Bankruptcy Court approval of this Agreement and the Plan confirmation hearing to be published nationally and locally in accordance with and consistent with the notice proposed by the *Joint Motion for an Order Approving Certain Procedures to Provide Notice of Insurer Settlements*, at Docket No. 1204 in the Reorganization Case or by such other means as is acceptable to Catholic Mutual.

I.    Continuation of Certificates

2.36    Except as set forth in this Agreement, the Plan and Confirmation Order shall have no effect on Archdiocese's coverage under and subject to the terms of Certificates (and any endorsements thereto) in effect as of the Effective Date, issued by Catholic Mutual to the Archdiocese for Claims that may occur or arise after the Effective Date. All Certificates issued or allegedly issued by Catholic Mutual to the Parish Parties shall be sold and conveyed to Catholic Mutual pursuant to this Agreement and the Plan pursuant to section 363 of the Bankruptcy Code, such that immediately upon the Effective Date, the Parish Certificates shall be null and void and unenforceable by the Parish Parties or any other Person as against the Catholic Mutual Parties.

J.    Approval Motion and Approval Order

2.37    Within ten (10) days after the Execution Date, the Archdiocese or UCC shall file a motion, in a form and substance acceptable to Catholic Mutual ("Approval Motion") that seeks the entry of an order under sections 105 and 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 6004 and 9019 and/or under such other provisions thereof as may be applicable, assuming and approving this Agreement and authorizing the Parties to undertake the settlement and the transactions contemplated by this Agreement ("Approval Order").

2.38    The Approval Motion shall seek Bankruptcy Court Approval of: (a) the assignment, sale and buy-back of the Parish Certificates to Catholic Mutual pursuant to § 363 of the Bankruptcy Code; and (b) the Agreement.

2.39    If any Person files an objection to the Approval Motion, the Archdiocese shall file a written response, in a form and substance acceptable to Catholic Mutual (which acceptance shall not be unreasonably withheld) and shall take all reasonable steps to defend against any

13

appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the Approval Order.

2.40    No payment shall be made to any Tort Claimant from the Settlement Amount until (a) the Approval Order is a Non-Appealable Order, and (b) the Plan is confirmed and the Confirmation Order becomes a Non-Appealable Order in the Reorganization Case that contains, and the Bankruptcy Court approves, the Channeling Injunction and the Supplemental Settling Insurer Injunction in conformity with this Agreement.

K.    Buyback of Parish Certificates

2.41    In consideration of being a Protected Party under the Channeling Injunction under the Plan, and in exchange for the releases and other injunctive relief provided to the Parish Parties in this Agreement and under the Approval Order and Plan, the Parish Parties hereby (a) assign all right, title and interest in the Parish Certificates to the Archdiocese, effective as of the date the Confirmation Order becomes a Non-Appealable Order; and (b) relinquish any interest in or right to, and hereby assign to the Archdiocese, for contribution to the Archdiocese as provided in any Plan, any portion of the Settlement Payment the Parish Parties would have been entitled to as consideration for the sale and buy-back of the Parish Certificates to the Catholic Mutual Parties as set forth herein and in the Plan.

2.42    From and after the first day on which Approval Order and Confirmation Order are Non-Appealable Orders, Catholic Mutual hereby buys back the Parish Certificates, free and clear of all Interests of all Persons, including all Interests of the Archdiocese Parties, Parish Parties, any other Person claiming coverage by, through or on behalf of any of the Archdiocese Parties, Parish Parties, Catholic Mutual, any other insurer, and any Tort Claimant in the Parish Certificates.  This sale is pursuant to sections 363(b), (f), and (m) of the Bankruptcy Code.  The Parties acknowledge and agree, and the Approval Order shall find and conclude, that: (a) Catholic Mutual Parties are good faith purchasers of the Parish Certificates and Interests within the meaning of section 363(m) of the Bankruptcy Code; (b) the consideration exchanged constitutes a fair and reasonable settlement of the Parties' disputes and of their respective rights and obligations relating to the Parish Certificates and Interests and constitutes reasonably equivalent value; (c) the releases in this Agreement and the policy buyback comply with the Bankruptcy Code and applicable non-bankruptcy laws; (d) upon entry of the Approval Order and Confirmation Order as Non-Appealable Orders, the Parish Policies and Interests shall be terminated and of no further force and effect; (e) Catholic Mutual's payment of the Settlement Amount constitutes the Catholic Mutual Parties' full and complete performance of any and all obligations under the Parish Policies and with respect to the foregoing Interests, including any performance owed to the Archdiocese Parties or Parish Parties, and exhausts all limits of liability of Parish Certificates and with respect to the foregoing Interests; (f) all Interests the Archdiocese Parties or Parish Parties may have had, may presently have, or in the future may have in the Parish Certificates that were issued to the Parish Parties and all Interests are

14

released pursuant to this Agreement; and (g) the Archdiocese Parties and Parish Parties accept the Settlement Amount in full and complete satisfaction of all the Catholic Mutual Parties' past, present, and future obligations, including any obligations to any of the Archdiocese Parties or Parish Parties under the Parish Certificates or arising therefrom, as to any and all Claims for insurance coverage or policy benefits of any nature whatsoever arising out of or related in any way to the Parish Certificates, whether legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, and regardless of whether or not such Claims arise from, relate to, or are in connection with the Channeled Claims, the Reorganization Case, or otherwise under the Parish Certificates.

## 3. REPRESENTATIONS AND WARRANTIES OF THE PARTIES

3.1 Catholic Mutual, the Archdiocese Parties and Parish Parties each further represent and warrant, as applicable, the following:

3.1.1 To the extent it is a corporation, including a non-profit corporation, or other legal entity, it has the requisite power and authority to enter into this Agreement and to perform the obligations contemplated by this Agreement, subject only to approval of the Bankruptcy Court;

3.1.2 This Agreement has been thoroughly negotiated and analyzed by counsel to the Parties and executed and delivered in good faith, pursuant to arm's length negotiations and for value and valuable consideration. Each person signing this Agreement hereby represents that they have the requisite authority to bind the Persons they represent;

3.1.3 The Archdiocese Parties and Parish Parties hereby represent and warrant that they have not and will not assign any Interests in the Certificates or any other binder or certificate issued by Catholic Mutual;

3.1.4 The Archdiocese Parties and Parish Parties hereby represent and warrant that they are the owners of the Certificates (as applicable) and that no other Person has legal title to the Certificates.

3.1.5 The Archdiocese Parties and Parish Parties hereby represent and warrant that they have not in any way assisted, and shall not in any way assist, any Person in the establishment of any Claim against the Catholic Mutual Parties.

3.2 The Person(s) executing this Agreement represent and warrant that they have the requisite authority to execute this Agreement on behalf of such Party (including the Archdiocese Parties and Parish Parties), as the case may be and to provide the releases identified in this Agreement. Notwithstanding the foregoing, nothing herein is

15

intended to suggest or should be construed to mean that any Person included in this definition is owned, directed, supervised or controlled by the Archdiocese.

3.3 The Parties have each completed a reasonable search for evidence of any certificates issued by Catholic Mutual, respectively, to the Archdiocese or the Parish Parties that would afford coverage with respect to any Tort Claim. Other than the Certificates or alleged certificates identified in [Exhibits A and B], no such certificates have been identified. Notwithstanding the foregoing, nothing in this Agreement or the Plan, including any schedules or exhibits thereto, shall be construed as or deemed to be an admission or evidence that any binder, certificate, or policy of insurance was in fact issued and/or affords coverage in connection with any Tort Claims.

## 4. MISCELLANEOUS

4.1 The Parties will take such steps and execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability.

4.2 The Parties shall cooperate with each other in connection with the Approval Motion, the Approval Order, the Confirmation Order, the Plan and the Reorganization Case. Such cooperation shall include consulting with each other upon reasonable request concerning the status of proceedings and providing each other with copies of reasonably requested pleadings, notices, proposed orders, and other documents relating to such proceedings as soon as reasonably practicable prior to any submission thereof to the Bankruptcy Court.

4.3 This Agreement constitutes a single integrated written contract that expresses the entire agreement and understanding between and among the Parties.

4.4 This Agreement may be modified only by a written amendment signed by the Parties, and approved by the UCC or Trust, such approval shall not be unreasonably withheld, and no waiver of any provision of this Agreement or of a breach thereof shall be effective unless expressed in a writing signed by the waiving Party. The waiver by any Party of any of the provisions of this Agreement or of the breach thereof shall not operate or be construed as a waiver of any other provision or breach.

4.5 By entering into this Agreement, none of the Parties has waived or shall be deemed to have waived any rights, obligations, or positions they have asserted or may in the future assert in connection with any matter outside the scope of this Agreement. No part of this Agreement, its negotiation, or its performance may be used in any manner in any action, suit, or proceeding as evidence of the rights, duties, or obligations of the Parties with respect to matters outside the scope of this Agreement. All actions taken and statements made by the Parties or by their representatives,

16

relating to this Agreement or participation in this Agreement, including its development and implementation, shall be without prejudice or value as precedent and shall not be used as a standard by which other matters may be judged.

4.6  None of the Parties shall make any public statements or disclosures (i) regarding each other's rationale or motivation for negotiating or entering into this Agreement, or (ii) asserting or implying in any way that the Parties acted improperly or in violation of any duty or obligation, express or implied, in connection with any matter arising out of, relating to, or in connection with the Certificates or any other binder or certificate issued by the Catholic Mutual Parties, including handling of or involvement in connection with the Tort Claims or the resolution of the Tort Claims.

4.7  Neither this Agreement nor the rights and obligations set forth in this Agreement shall be assigned without the prior written consent of the other Parties.

4.8  Section titles and/or headings contained in this Agreement are included only for ease of reference and shall have no substantive effect.

4.9  This Agreement was jointly drafted by the Parties and the language of all parts of this Agreement shall in all cases be construed as a whole according to its meaning and not strictly for or against any of the Parties.

4.10 All notices, demands, or other communication to be provided pursuant to this Agreement shall be in writing and sent by e-mail and Federal Express or other overnight delivery service, costs prepaid, to the Parties at the addresses set forth below, or to such other person or address as any of them may designate in writing from time to time:

If to the Archdiocese Parties:

> Joseph F. Kueppers
> Chancellor for Civil Affairs
> Office of the Chancellor for Civil Affairs
> Archdiocese of Saint Paul and Minneapolis
> 777 North Forest Street
> St. Paul, MN 55106
> Email: kueppersj@archspm.org

> With a copy to:

> Lauren E. Lonergan
> Charles B. Rogers
> Briggs and Morgan, P.A.

10959626v4

141560844.5

2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Fax: 612-977-8650
Email: llonergan@briggs.com

If to Catholic Mutual:

Michael Lee
Catholic Mutual Group
Corporate/Claims Compliance Director
10843 Old Mill Road
Omaha, NE 68154
Email:  mlee@catholicmutual.org

With a copy to:

David Spector
Everett J. Cygal
Schiff Hardin LLP
233 S. Wacker Drive
Suite 6600
Chicago, IL 60606
Fax: 312-258-5600
Email: dspector@schiffhardin.com
Email: ecygal@schiffhardin.com

and

Louis T. DeLucia
Schiff Hardin LLP
666 Fifth Avenue
17th Floor
New York, NY 10103
Fax: 212-753-5044
Email: ldelucia@schiffhardin.com
Email:  afiedler@schiffhardin.com

4.11    All notices, demands, or other communication to be provided pursuant to this Agreement prior to entry of the Confirmation Order shall also be sent by e-mail and Federal Express or other overnight delivery service, costs prepaid, to the recipients identified herein.

10959626v4

141560844.5

4.12 This Agreement may be executed in multiple counterparts, all of which together shall constitute one and the same instrument.  This Agreement may be executed and delivered by facsimile or other electronic image, which facsimile or other electronic image counterparts shall be deemed to be originals.

4.13 All of the Persons included in the definition of Catholic Mutual Parties, the Trust, and the Trustee are intended beneficiaries of this Agreement.  Except as set forth in the preceding sentence or otherwise set forth in this Agreement, there are no third-party beneficiaries of this Agreement.

4.14 The following rules of construction shall apply to this Agreement:

4.14.1  Unless the context of this Agreement otherwise requires: (i) words of any gender include each other gender; (ii) words using the singular or plural number also include the plural or singular number, respectively; (iii) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire Agreement; and (iv) the words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation."

4.14.2  References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions regardless of whether specifically referenced in this Agreement.

4.14.3  The wording of this Agreement was reviewed by legal counsel for each of the Parties, and each of them had sufficient opportunity to propose and negotiate changes prior to its execution. The wording of this Agreement shall not be construed in favor of or against any Person.

4.14.4  The use of the terms "intend," "intended," or "intent," when describing the intention of the Parties, as the case may be, shall not be construed to create a breach of this Agreement when the stated intent is not achieved.

4.15 The Bankruptcy Court in the Reorganization Case shall retain exclusive jurisdiction to interpret and enforce the provisions of this Agreement, which shall be construed in accordance with Minnesota law.

4.16 This Agreement and the Archdiocese's obligations under this Agreement shall be binding on the Archdiocese and the Reorganized Debtor and shall survive the entry of an order approving or confirming the Plan, or dismissal of the Reorganization Case.

19

4.17 To the extent there is any ambiguity, difference, or inconsistency, between this Agreement and the Plan, or any other document, the terms of this Agreement shall control.

4.18 This Agreement shall be effective on the Execution Date.

[Remainder of page left blank intentionally]

20

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of Archdiocese of Saint Paul and Minneapolis,**

By: _____

Date: __8/27/2018_____

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of CATHOLIC MUTUAL (as defined herein)**

By: _____

Title: _____

Date: _____

Witness: _____

21

     IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of Archdiocese of Saint Paul and Minneapolis,**

By:_____

Date:_____

     IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of CATHOLIC MUTUAL (as defined herein)**

By: _____

Title: _Presiðent & CEO_____

Date: _8/28/2018_____

Witness: _____

21

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of ASSUMPTION (as defined herein)**

By: *Michael Kueber*

Title: *Pastor of the Church of the Assumption*

Date: *8/28/2018*

Witness:_____

22

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of GUARDIAN ANGELS (as defined herein)**

By: _F. Wilton Gail_

Title: _PASTOR_

Date: _9/21/18_

Witness: _[signature]_

23

*In re The Archdiocese of Saint Paul and Minneapolis*
Case No. 15-30125
Catholic Mutual Relief Society of America
Settlement Agreement

| EXHIBIT A | |
|---|---|
| **Identified Catholic Mutual Certificates Issued to the Archdiocese of St. Paul and Minneapolis** | |
| **SMP** | **Coverage Year(s)** |
| 7922 | 9/1/1987 – 9/1/1988 |
| 7922 | 9/1/1988 – 9/1/1989 |
| 8140 | 9/1/1989 – 9/1/1990 |
| 8140 | 9/1/1990 – 9/1/1991 |
| 8140 | 9/1/1991 – 9/1/1992 |
| 8589 | 9/1/1992 – 9/1/1993 |
| 8589 | 9/1/1993 – 7/1/1994 |
| 8589 | 7/1/1994 – 7/1/1995 |
| 8589 | 7/1/1995 – 7/1/1996 |
| 8589 | 7/1/1996 – 7/1/1997 |
| 8589 | 7/1/1997 – 7/1/1998 |
| 8589 | 7/1/1998 – 7/1/1999 |
| 8589 | 7/1/1999 – 7/1/2000 |
| 8589 | 7/1/2000 – 7/1/2001 |
| 8589 | 7/1/2001 – 7/1/2002 |
| 8589 | 7/1/2002 – 7/1/2003 |
| 8589 | 7/1/2003 – 7/1/2004 |
| 8589 | 7/1/2004 – 7/1/2005 |
| 8589 | 7/1/2005 – 7/1/2006 |
| 8589 | 7/1/2006 – 7/1/2007 |
| 8589 | 7/1/2007 – 7/1/2008 |
| 8589 | 7/1/2008 – 7/1/2009 |
| 8589 | 7/1/2009 – 7/1/2010 |
| 8589 | 7/1/2010 – 7/1/2011 |
| 8589 | 7/1/2011 – 7/1/2012 |
| 8589 | 7/1/2012 – 7/1/2013 |
| 8589 | 7/1/2013 – 7/1/2014 |
| 8589 | 7/1/2014 – 7/1/2015 |
| 8589 | 7/1/2015 – 7/1/2016 |
| 8589 | 7/1/2016 – 7/1/2017 |
| 8589 | 7/1/2017 – 7/1/2018 |
| 8589 | 7/1/2018 – 7/1/2019 |
| | |

*In re The Archdiocese of Saint Paul and Minneapolis*
Case No. 15-30125
Catholic Mutual Relief Society of America
Settlement Agreement

| EXHIBIT B | |
|---|---|
| **Identified Catholic Mutual Certificates Issued to a Parish Party, as defined in the Settlement Agreement** | |
| **Parish** | **Certificate No., Coverage Year(s)** |
| Church of the Assumption, Minneapolis, MN | SMP 6344, 2/1/1978 – 2/1/1981 (Cancelled effective 9/1/1980) |
| Guardian Angels Church, Chaska, MN | SMP 6372, 3/20/1978 – 3/20/1981 (Cancelled effective 9/1/1980) |

CH2\21141571.1