UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bankruptcy Case No.  15-30125 |
| The Archdiocese of Saint Paul and Minneapolis, | Chapter 11 Case |
| Debtor. | |

**UNSWORN DECLARATION OF THOMAS J. MERTENS IN SUPPORT OF THE THIRD AMENDED JOINT PLAN OF REORGANIZATION OF THE ARCHDIOCESE OF SAINT PAUL AND MINNEAPOLIS**

I, Thomas J. Mertens, declare under penalty of perjury as follows:

1. I am over the age of 18 and competent to make this declaration.

2. I have personal knowledge of the facts set forth herein; or I have obtained knowledge of the facts stated herein by reviewing the relevant books, business records, and documents created and maintained as part of the debtor's regular business practices and in the ordinary course of business. All such business records are made by persons with knowledge of the relevant facts, or made from information transmitted by persons with knowledge of the relevant facts, at or near the time of the relevant acts, events, or conditions to which the business records relate. If called upon to testify, I could and would do so as stated herein.

3. I am the Chief Financial Officer of The Archdiocese of Saint Paul and Minneapolis, a Minnesota religious corporation.  As Chief Financial Officer, I am familiar with the facts and circumstances concerning the financial affairs and operations of the debtor. I am also familiar with the facts of this bankruptcy case, the extent and nature of the involvement of the Official Committee of Unsecured Creditors in the drafting of this plan and in this chapter 11 case generally, the claims made and filed against the debtor in this case, and the scope, outcome,

negotiations, and other general circumstances and events surrounding the confidential mediation ordered by this court.

4. I make this declaration in support of the Third Amended Joint Plan of Reorganization of the Archdiocese of Saint Paul and Minneapolis, for which the debtor and the Official Committee of Unsecured Creditors are joint proponents.

5. I will attend and offer testimony at the hearing to consider confirmation of the plan on September 25, 2018.

6. I am generally familiar with and participated in the drafting of the joint plan and disclosure statement in this case and am familiar with all other documents pertaining to the joint plan.

7. The second amended disclosure statement filed in this case [ECF No. 1224] provides an accurate overview of the debtor's operations and the insurance policies and claims at issue in this case.

8. The second amended disclosure statement includes as exhibits a liquidation analysis, a five-year forecast of revenue and expenses, and an unaudited statement of financial activities.

9. Based on my involvement in the financial affairs of the debtor throughout the entirety of this case and before, it is my opinion that the payments called for under the joint plan can be made by the debtor.

10. Although the debtor has committed many of its assets to the funding of the joint plan, the debtor will retain sufficient funds to continue its operations and its charitable mission and expects to be able to continue to fund its operations and mission and continuing obligations under the plan based on its projected revenue and expenses going forward.

11. I have been advised of the Bankruptcy Code requirements necessary to be able to confirm a plan of reorganization, and, to the extent that such requirements relate to factual matters, I address those requirements below.

12. I am aware that an official committee of unsecured creditors was appointed at the beginning of this chapter 11 case and that the five members of such committee are survivors of clergy abuse. I have been generally advised of the requirements of the Bankruptcy Code and I have also been advised regarding the role and statutory duties of official committees of unsecured creditors under the Bankruptcy Code.

13. I believe that the joint plan complies with all applicable provisions of the Bankruptcy Code. I further believe that, to the best of my knowledge and understanding, the debtor and the committee as proponents of the joint plan have complied with applicable provisions of the Bankruptcy Code in all respects. To the best of my knowledge, the joint proponents have also complied, and continue to comply with all orders of the court to the extent such orders required some action or compliance on the part of those parties.

14. The joint plan is the result of extensive negotiations, including between and among the debtor, the committee, counsel for abuse claimants, dozens of insurers, nearly 200 parishes, and many other non-debtor Catholic entities. I have knowledge of this history and of the actions, interactions, and dealings of both the debtor and the committee in connection with these activities. Based on that knowledge, to the best of my knowledge and understanding, the debtor and the committee have both acted in good faith and, in addition, both proponents now propose their joint plan in good faith.

15. Every claim against the debtor of which I am aware is addressed and treated in the joint plan.

16. I understand that all payments for services, costs, or expenses in connection with the reorganization cases have been subject to, or will continue to be subject to, the approval of this court as reasonable and appropriate.

17. The identity of all officers and directors of the debtor, including the undersigned declarant, as well as the trustee of the trust created under the plan, have been fully disclosed to all creditors and parties in interest. Accordingly, the plan proponents have each disclosed the identity and affiliations of all individuals proposed to serve, after confirmation of the joint plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan. I further believe such appointments, or continuances, to be consistent with the interests of creditors, the reorganized debtor, and public policy.

18. The debtor is not subject to the control of any governmental regulatory commissions.

19. With respect to each impaired class of claim and interest entitled to vote, I understand, as of the date of this declaration, that Classes 3A (General Insurance Fund Claims), 3B (Medical and Dental Benefit Claims), 6 (Tort Claims Other Than Future Tort Claims), 7 (Future Tort Claims), 8 (Inter-Parish Loan Fund Claims), 9 (Trade Vendor Claims), 12 (Haselberger Claim), and 13 (Abuse Related Contingent Claims) have voted to accept the plan. All of the vote totals for the above classes were determined without including any acceptances of the joint plan by any insider. No votes were cast in Class 14 (Other Unsecured Claims), no proofs of claim were filed as to such class, and I am not otherwise aware of any Class 14 claims.

20. I am not aware of any secured creditor who made election under 11 U.S.C. § 1111(b)(2) as I understand that provision of the Bankruptcy Code.

11115783v1

21. With respect to any and all administrative claims, and other claims as referred to under 11 U.S.C. § 1129(a)(9), the debtor is prepared to pay all of such claims that have been allowed by the court in full on the effective date, unless otherwise agreed to by a particular claimant or otherwise ordered by the court. The debtor has already made interim payments to certain administrative claimants pursuant to orders entered by the court in this case.

22. I do not believe that confirmation is likely to be followed by liquidation or further financial reorganization. The joint plan provides for the tort claimants to receive monetary compensation, and certain rights to payment, through a trust. The trust will be funded by payments and the liquidation of certain payment rights identified in the plan from the debtor, insurers, parishes, and others. All monetary and non-momentary commitments in the joint plan are consensual. The trust includes a fund by which qualifying unknown tort claimants may also receive monetary compensation without need for further court intervention and without need for the debtor or other contributing parties to expend further funds in this regard. The financial affairs of the debtor have been reorganized in a manner that should permit the debtor to continue operating well into the future on a cash flow positive basis. I believe that the debtor will continue to meet future funding needs based on the resolution of the matters that gave rise to this bankruptcy filing through this joint plan.

23. Any and all fees payable under § 1930 of Title 28, as determined by the court at the hearing on confirmation of the plan or otherwise, either have been paid or will be promptly paid on the effective date.

24. Any retiree benefits for which the debtor is responsible are addressed and will continue in accordance with the terms of the joint plan.

25. The debtor is not responsible for any domestic support obligations.

26. To the best of my knowledge, all transfers of property under the joint plan, including any property or payment to the Trust, will comply with the applicable state laws (and other, non-bankruptcy law, as applicable) that govern the transfer of such property.

27. Although I am not a lawyer, I am aware of the provisions of the Bankruptcy Code that preclude an involuntary petition against a nonprofit entity and preclude the involuntary conversion of a nonprofit debtor's chapter 11 case to a chapter 7 case. It is also my understanding that these restrictions would apply to whether a nonprofit debtor can be forced to liquidate in a chapter 11 case. As such, the debtor's position is that the best interest of creditors analysis under 11 U.S.C. § 1129(a)(7)(A)(ii) does not apply to these cases. In any case, I believe that the joint plan is in the best interests of creditors in that, as explained in the liquidation analysis attached to the disclosure statement for the joint plan, in a liquidation scenario, creditors would receive less than they will receive under the joint plan. For example, in a liquidation, there would be no insurance settlements or other settlements that provide funding for the joint plan, there would be no non-debtor contributions that are provided for under the joint plan, and any potential recovery of such monies would possibly require years of litigation at a great cost to the estate. Any recovery of assets from insurers or other non-debtor entities in a liquidation scenario is speculative. I believe it is also unlikely that all tort claimants would be willing to resolve their claims in a hypothetical chapter 7 liquidation. Therefore, I believe that it is unlikely that the amount of those collective claims as ultimately determined by a state or federal court would exceed the amount that will be funded to the trust under the joint plan. In addition, the administrative costs to administer a chapter 7 case, renegotiate a large number of insurance settlements, or to litigate related claims, would be significant. Accordingly, based upon the liquidation analysis, the range of settlements achieved, the debtor's financial history and

condition, I believe that creditors will not receive less under the joint plan than they would receive in a hypothetical liquidation of the debtor.

28. I believe the plan is fair and equitable with regard to each class of secured claims, in that secured claims of Premier Bank (Class 10), North American Banking Company (Class 17), and Bremer Bank (Class 18) are not impaired and their respective liens are retained and their respective rights remain unchanged by the joint plan.

29. With regard to each class of unsecured creditors, I believe that the joint plan is fair and equitable, in that, except for Class 14 discussed below, each impaired class of unsecured creditors has voted to accept the plan.

30. The overwhelming majority of the unsecured class of tort claimants (Class 6) and the future claims representative representing Class 7 have voted to accept the joint plan. This acceptance is paramount because this case and the joint plan are primarily focused on addressing the claims of this group of creditors.

31. No votes were received from creditors in Class 14 (Other Unsecured Claims). I am not aware of any claims filed by any creditor that would qualify for membership in this class of claims. In any case, I believe that the joint plan is fair and equitable to such class of claimants because no junior class receives a distribution under the plan.

32. I believe that the plan does not discriminate unfairly against any impaired, non-accepting class of creditors because no class of equal rank and priority is treated differently without reasonable justification.

33. I am aware that the joint plan includes third party-releases and injunctions for certain non-debtor entities contributing funds and other assets to the joint plan. I believe that the third-party releases and injunctions are appropriate in this case because: (1) there is an identity

of interest between the debtor and the third parties receiving the benefit of the releases; (2) the non-debtors receiving the benefits of the releases have contributed substantial assets to the reorganization; (3) the injunctions are essential to reorganization; without it, there would be no joint plan because, to the best of my knowledge, contributions from non-debtor parties including insurers and parishes would not have made absent such provisions; (4) a substantial majority of the creditors affected by the releases have agreed to such injunction; specifically, the impacted classes (Class 6 and Class 7), have "overwhelmingly" voted to accept the proposed plan treatment – 398 class 6 claimants voted to accept and 2 voted to reject, and the class 7 claims representative voted to accept; and (5) the plan provides a mechanism to pay the claims of the classes affected by the injunction.

34. To the best of my knowledge, as of the date of this declaration, no objections to confirmation of the joint plan, formal or informal, have been lodged.

35. Based on the facts I have stated herein, and my review and understanding of the confirmation requirements, I believe that the debtor and the committee as joint proponents, and the plan that they jointly propose, satisfy or have satisfied each of the Bankruptcy Code's requirements for confirmation.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 24, 2018

By: _____
Thomas J. Mertens
Chief Financial Officer
The Archdiocese of Saint Paul and Minneapolis

11115783v1